IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MONA ABOUZIED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:17-CV-2399 |
| | § | |
| APPLIED OPTOELECTRONICS, INC, | § | |
| CHIH-HSIANG (THOMPSON) LIN, and | § | |
| STEFAN J. MURRY, | § | |
| | § | |
| Defendants. | § | |

## O R D E R

Pending before the Court are Applied Investor Group's Motion for Appointment of Lead Plaintiff and Lead Counsel, **(Instrument No. 5)**, and Lawrence Rougier's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel. **(Instrument No. 8)**. The Court held the motion hearing on January 19, 2018 at 9:30 a.m.

### I.

### A.

Defendant Applied Optoelectronics, Inc. ("Optoelectronics") develops and manufactures advanced optical products for use in broadband and fiber access networks. (Instrument No. 1 at 3). Optoelectronics is incorporated in Delaware and headquartered in Sugar Land, Texas. *Id.* The companies securities trade on the NASDAQ Global Market under the ticker symbol "AAOI." *Id.*

Plaintiff Mona Abouzied filed a security class action suit on behalf of a proposed class of purchasers of AAOI securities between July 13, 2017 through August 3, 2017, inclusive of both dates ("Class Period"). (Instrument No. 1 at 2). The Complaint alleges that on July 13, 2017,

Optoelectronics issued a press release announcing its preliminary financial results for the second quarter of 2017. *Id.* at 4. The Complaint alleges that Defendants made false and/or misleading statements and/or failed to disclose: (1) a major customer (Amazon) was reducing its purchases of Optoelectronic's 40G receivers; (2) the loss of Amazon's business would have a severe negative impact on Optoelectronic's financial performance; and (3) as a result of the foregoing, Optoelectronic's public statements were materially false and misleading at all relevant times. (Instruments No. 1 at 6; No. 14 at 4). After trading hours had ended on August 3, 2017, Optoelectronics announced its final financial results which included the negative news about Amazon. (Instrument No. 1 at 6-7). As a result, Optoelectronic's shares fell by $33.39 per share from its previous closing price, or more than 34%, to close at $64.60 per share on August 4, 2017. *Id.* at 7.

## B.

Plaintiff Mona Abouzied filed the class action suit on August 5, 2017. (Instrument No. 1). On August 16, 2017, a related action was filed, *Ludwig v. Applied Optoelectronics, Inc. et al.*, No. 4:17-cv-2512 (S.D. Tex.) (Miller, J.). (Instrument No. 9 at 4). On October 3, 2017, the Court consolidated the *Ludwig* Action with the present action, *Abouzied v. Applied Optoelectronics, Inc. et al.*, No. 4:17-cv-2399. Another similar action was filed on September 11, 2017 before the U.S. District Court for the Eastern District of New York: *Rizzo v. Applied Optoelectronics, Inc., et al.*, No. 1:17-cv-5313. (Instrument No. 18 at 6 n.2). That case was later dismissed on October 17, 2017. *Id.*

On October 4, 2017, five different parties moved for appointment as lead plaintiffs and approval of lead plaintiffs' selection of counsel. The first movant is Applied Investor Group which consists of movants Amir and Patricia Fakharzadeh, Kristen and Gregory Knight, Stephen

Rakower, and Amnuey and Helen Chiemprabha. (Instrument No. 5 at 1). The group consists of three married couples and one unrelated individual. (Instrument No. 18 at 7 n.4). Moreover, Kristen Knight moves on behalf of five entities: (1) the Dale E. Bartch Irrevocable Life Insurance Trust; (2) the Dale and Cheryl Bartch Family Trust; (3) the Kristen L. Bartch Family Ltd. Partnership; (4) the Fiona Carolyn Knight Trust; and (5) the Elisabeth Valerie Knight Trust. (Instrument No. 7-2).

The second party moving for appointment as lead plaintiff is Lawrence Rougier ("Rougier"). (Instrument No. 8). The third party to move for appointment as lead plaintiff was Philip R. Deubler, Jr. ("Deubler"). (Instrument No. 10). On January 19, 2018, Deubler withdrew his motion. The fourth party to move for appointment as lead plaintiff was Daniel Sisto ("Sisto"). (Instrument No. 11). On January 19, 2018, the Court denied Sisto's motion for want of prosecution. The fifth party to move for appointment as lead plaintiff was Jay C. Weenig ("Weenig"). (Instrument No. 14). On October 25, 2017, Weenig withdrew his motion. (Instrument No. 17).

## II.

The Private Securities Litigation Reform Act ("PSLRA") establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). The plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of his right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). The notice must advise that any member of the purported class mut file a motion for appointment as lead plaintiff within 60 days after the date on which the notice is published. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff Mona

Abouzied published such a notice in *Business Wire* on August 5, 2017. (Instrument No. 9-5). The notice announced that the statutory deadline to submit applications for appointment as lead plaintiff was October 4, 2017. *Id.*

The PSLRA states that as soon as practicable after consolidation, a court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA provides a "rebuttable presumption" that the most adequate plaintiff to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint of made a motion in response to a notice . . . ;
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

A member of the potential class can rebut the presumption by providing proof that the presumptively most adequate plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Moreover, the party moving for appointment as lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of common law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the lead plaintiff satisfies the requirements of Rule 23, a court need not raise its inquiry to the level required in ruling on a motion for class certification— a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *Id.* at 437; *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997).

## A.

Each of the movants filed motions for appointment as lead plaintiff within 60 days after the date on which Plaintiff Abouzied published the notice to potential class members. Moreover, each of the movants has submitted sworn shareholder certifications asserting that they are willing to serve as representatives of the class and are willing to provide testimony at deposition and trial, if necessary. Accordingly, the moving parties satisfy the first requirement to serve as lead plaintiffs for the class.

## B.

The PSLRA does not specify how a court should decide which plaintiff has the "largest financial interest" in the relief sought. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). Some courts apply a four-factor inquiry first proposed in *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036 at \*5 (N.D. Ill. Aug. 11 1997); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. Feb. 15, 2002) (Harmon, J.). The four factors relevant to the inquiry are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *In re Enron*, 206 F.R.D. at 440. Of these four factors, courts tend to place the greatest emphasis on the financial loss suffered by the plaintiffs. *Id.*; *In re Fuwei Films*,

247 F.R.D. at 436; *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 at *4 (N.D. Ill. Mar. 15, 2005) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").

Applied Investor Group alleges total losses of $2,049,571.35 in connection with the all of the group members' purchases of Optoelectronics securities. (Instrument No. 19 at 2). Rougier alleges total losses of $417,690. (Instrument No. 9 at 8). Applied Investor Group also purchased more total shares and expended more net funds than Lawrence Rougier. (Instruments No. 7-3; No. 9-3). Therefore, Applied Investor Group has the largest financial interest in the relief sought.

## C.

The parties do not dispute that their claims are typical of the claims or defenses of the class as required by Rule 23. Rougier challenges, however, the adequacy of Applied Investor Group and asserts that Applied Investor Group constitutes an impermissible group of unrelated individuals. (Instrument No. 18 at 7). Specifically, Applied Investor Group is made up of seven individuals who, besides the married couples, lack a pre-litigation relationship. (Instrument No. 18 at 9). Rougier contends that Kristen Knight moved for appointment as co-lead plaintiff although she is the representative of four trusts and a limited partnership, which the court should regard as separate and distinct interests from Kristen Knight for the purposes of defining "largest financial interests." (Instrument No. 24 at 5). Rougier further asserts that Applied Investor Group is too large and unwieldy to serve as a cohesive group and cannot therefore meet the adequacy requirement of Rule 23. (Instrument No. 18 at 15-16). Rougier also contends that any request by individuals from Applied Investor Group to be broken down into a subgroup makes the group inadequate because it demonstrates that those members would not hesitate to make a decision for their own benefit. *Id.* at 17.

Applied Investor Group contends that its movants purchased more shares of Optoelectronics during the class period and suffered the greatest financial loss by a large margin. (Instrument No. 19 at 4). Applied Investor Group further asserts that grouping is a nonissue in this case because two members of the Applied Investor Group, Kristen and Gregory Knight and Stephen Rakower have the top two largest *individual* financial interests in this action, respectively. *Id.* at 5. Applied Investor Group asserts that Kristen and Gregory Knight, in their individual capacities, suffered a financial loss of approximately $420,000, and Stephen Rakower suffered a financial loss of $522,573. *Id.* at 2. Applied Investor Group further contends that the movants have filed a Joint Declaration attesting to their understanding of the responsibilities as lead plaintiff and their agreement to work together as a group prior to the filing of the motion. *Id.* at 5.

The Fifth Circuit case, *Berger v. Compaq Comput. Corp.*, 257 F.3d 475 (5th Cir. 2001), raises this concern about the appointment of a group of investors to serve as lead plaintiffs:

> Although the appointment of such a large group [39 individuals] to serve as lead plaintiff is not before this court, it is notable that the Securities and Exchange Commission has taken the position that a group of investors appointed to serve as lead plaintiffs ordinarily should comprise no more than three to five persons. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999). In that case, the district court refused to appoint a twenty-member group, citing the "particular concern [which] arises when lead plaintiff status is sought by a 'group' of persons who were previously unaffiliated, each of whom have [*sic* ] suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation." *Id.* Likewise, in *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000), the court concluded that "the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the [PSLRA] and serves the purpose behind its enactment[.]"

*Id.* at 478 n.2. Although the case law within the Fifth Circuit is sparse, there is some precedent in the Southern District of Texas following the "strictest approach," which requires that a group appointed as lead plaintiff should consist of no more than five individuals. *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (Harmon, J.) ("[T]his Court finds that the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002) (Harmon, J.) ("The SEC has indicated that generally a group of investors appointed as Lead Plaintiffs should be no larger than three to five persons."); *see also In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) ("[A] court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers . . . . ordinarily this should be no more than three to five persons, a number that will facilitate joint decisionmaking and also help to assure that each group member has a sufficiently large stake in the litigation.").

Additionally, some courts "permit a group Lead Plaintiff only where it involves a 'small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person.'" *In re Landry's Seafood Rest., Inc.*, 2000 WL 33999467 at *4 (S.D. Tex. Mar. 30, 2000) (Harmon, J.) (quoting *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153-54 (N.D. Cal. 1999)). Where unrelated members of a group move for appointment as lead plaintiff, courts consider: (1) the existence of a pre-litigation relationship among the members; (2) the group members' participation in the litigation so far; (3) plans for cooperation; (4) the sophistication of the group members; and (5) whether the group members chose outside counsel, and not vice versa. *See*

*Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911 at *6 (E.D. Tex. 2014). The general rationale behind a small, cohesive group is to prevent "lawyer-driven" litigation with counsel recruiting members that have no relationship to each other and less of a stake in the litigation. *Enron*, 206 F.R.D. at 442; *Baan*, 186 F.R.D. at 224. The movant must demonstrate the cohesiveness of its purported group. *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009); *Enron*, 206 F.R.D. at 441.

Applied Investor Group currently consists of twelve movants: three married couples and one unrelated individual. Moreover, Kristen Knight, one of the movants, moves as a representative for five different entities. The three couples and the one individual have no pre-litigation relationship with each other based on more than the losing investments at issue in this case. The movants have filed a Joint Declaration attesting that they agree to function as a cohesive group and provide a basic plan for working together in this litigation. (Instrument No. 20-1). For instance, the Joint Declaration states that the movants "have a dedicated conference call line for this case. We also have a group email list available to us in order to communicate with each other with or without counsel present." *Id.* at 4. However, Applied Investor Group admits that the movants "agreed to proceed together because we each suffered significant losses in our investments in Applied Optoelectronics, Inc. and would like the opportunity to participate in this action as Lead Plaintiffs." *Id.* at 5. Based on the evidence provided and the statements by counsel at the hearing, it appears that legal counsel for the group cobbled the movants together. *See Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273 at *3 (D. Ariz. Apr. 7, 2008) ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

Applied Investor Group argues that if the Court is inclined to appoint only one member of the Applied Investor Group as Lead Plaintiff, each member of the group stands ready and willing to serve as sole-Lead Plaintiff. (Instruments No. 23 at 7; No. 20-1 at 5). Applied Investor Group has specifically noted that member Stephen Rakower, who suffered a total financial loss of $522,573, and member Kristen and Gregory Knight, who individually suffered a total financial loss of approximately $420,000, both have a larger financial interest than any other competing movant. (Instrument No. 19 at 3).

Rougier asserts that since the individual members of the Applied Investor Group have moved together, the Court should not allow them to desert the remainder of the group and seek lead plaintiff appointment independently. (Instrument No. 18 at 17). Rougier further contends that no individual member of Applied Investor Group moved for appointment as sole-lead plaintiff by the October 4, 2017 deadline. *Id.* at 18.

Both members of Applied Investor Group, Stephen Rakower and Kristen and Gregory Knight, each have greater financial losses than Rougier. However, within the Fifth Circuit, courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff. *See Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911 at *6 (E.D. Tex. Feb. 28, 2014) ("Because Mr. Webb [a group member] did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group."); *Buettgen*, 263 F.R.D. at 382 ("[T]he Buettgen Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate. Such a 'willingness to abandon the group only suggests how loosely it was put together.'" (quoting *Tsirekidze*, 2008 WL 942273 at *3)). Neither Stephen Rakower nor the Knights has moved for appointment as sole-lead plaintiff. Therefore, the Court

will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group.

The PSLRA operates to ensure that plaintiffs control the litigation, not the lawyers. *Enron*, 206 F.R.D. at 442. The Applied Investor Group has failed to show that its group has a pre-litigation relationship based on more than the losing investments at issue in this case. Instead, counsel for the Applied Investor Group cobbled together a group of unrelated people and gave them a common name. While members of the group submitted a Joint Declaration asserting their desire to together litigate the case as lead plaintiffs, the Joint Declaration provides no mechanism for resolving disputes. Indeed, the movants assert that each stands ready and willing to abandon the group and serve as sole-lead plaintiff. The Court finds that Applied Investor Group is not the most adequate plaintiff.

Lawrence Rougier is the movant with the next highest financial interest. The Court finds that Rougier meets the typicality and adequate representation requirements of Rule 23. Rougier demonstrated he purchased shares of Optoelectronics during the class period, as did the other class members, which subsequently lost significant value as a result of Defendants' alleged conduct. Rougier asserts that he is not subject to any special defenses which Defendants might assert against him nor has Applied Investor Group noted any. Finally, there is no evidence of any conflicts between Rougier and other class members. Rougier has established that he is the presumed most adequate plaintiff.

Accordingly the Court GRANTS Lawrence Rougier's Motion for Appointment as Lead Plaintiff. (Instrument No. 6).

## III.

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's selection when necessary to "protect the interests of the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa). Rougier seeks to appoint Levi & Korsinsky, LLP as lead counsel and Kendall Law Group, PLLC as liaison counsel. (Instrument No. 9 at 10). Rougier has submitted the resumes of the firms that attest to the firms' experience in the area of securities litigation. The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action.

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Applied Investor Group's Motion for Appointment of Lead Plaintiff and Lead Counsel is **DENIED, (Instrument No. 5),** and Lawrence Rougier's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel **(Instrument No. 8) is GRANTED.**

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 22nd day of January, 2018, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**