## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MONA ABOUZIED, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br><br>Defendants. | Case No. 4:17-cv-02399 |
| GAURAV TANEJA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br><br>Defendants. | Case No. 4:18-cv-3544 |
| DAVIN POKOIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:18-cv-3722 |

| | |
|---|---|
| STEPHEN MCGRATH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:18-cv-3914 |

**DECLARATION OF JAMIE J. MCKEY IN SUPPORT OF MOTION OF LAWRENCE ROUGIER FOR CONSOLIDATION OF RELATED ACTIONS**

I, JAMIE J. MCKEY, declare and state as follows:

1.      My name is Jamie J. McKey. I am over the age of 18, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein and they are true and correct to the best of my knowledge.

2.      I am an attorney at Kendall Law Group, PLLC, liaison counsel for Lead Plaintiff Lawrence Rougier in the above-captioned action, and a member of the Bar of the State of Texas.

3.      I respectfully submit this Declaration in support of Lead Plaintiff Lawrence Rougier's Motion to Consolidate Related Cases, dated November 1, 2018, attaching true and correct copies of the following:

4.      Attached hereto as Exhibit A are true and correct copies of the initial complaints filed in *Taneja v. Applied Optoelectronics, Inc. et al.*, Case No. 4:18-cv-03544-SL (S.D. Tex.), *Pokoik v. Applied Optoelectronics, Inc. et al.*, Case No. 4:18-cv-03722-LR (S.D. Tex.) (the "*Pokoik* Action"), and *McGrath v. Applied Optoelectronics, Inc. et al.*, Case No. 4:18-cv-03914-LR (S.D. Tex.) (altogether the "Related Actions").

5.      Attached hereto as Exhibit B is a true and correct copy of the First Consolidated Amended Class Action Complaint ("Amended Complaint") filed by Lead Plaintiff Lawrence Rougier in *Abouzied v. Applied Optoelectronics, Inc. et al.*, Case No. 4:17-cv-02399 (S.D. Tex.) (the "Consolidated Securities Action").

6.      Attached hereto as Exhibit C is a true and correct copy of the September 27, 2018, 9/27/2018 Loop Capital Markets Report on Applied Optoelectronics, Inc.

7.      Attached hereto as Exhibit D is a true and correct copy of a November 1, 2018 StreetInsider.com article quoting Rosenblatt analyst Jun Zhang's report on Applied Optoelectronics, Inc.

8.      Attached hereto as Exhibit E is a true and correct copy of the Proposed Corrected Lead Plaintiff Notice.

9.      Attached hereto as Exhibit F is a true and correct copy of the notice of pendency of the Related Actions, published on October 1, 2018 (the "*Taneja* Notice").

10.     Attached hereto as Exhibit G is a true and correct copy of the Memorandum of Law in Support of Intervention and Stay of PSLRA Lead Plaintiff deadline, filed by Pomerantz LLP counsel for plaintiff in the *Pokoik Action* in *City of Westland Police and Fire Retirement System v. Philip Morris International Inc., et al*., Case No. 1:18-cv-08049-RA (S.D.N.Y.).

11.     Attached hereto in a compendium are true and correct copies of the following:

| Tab No. | Description | App. No. |
|---|---|---|
| 1. | *Abouzied v. Applied Optoelectronics, Inc.,* No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) | 6-11 |
| 2. | *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09-MDL-2058-DC, 2010 U.S. Dist. LEXIS 37799 (S.D.N.Y. Apr. 9, 2010) | 12-14 |
| 3. | *City of Westland Police and Fire Retirement System v. Philip Morris International Inc. et al*., Case No. 1:18-cv-08049-RA (S.D.N.Y) | 15-20 |
| 4. | *Craig v. Centurylink Inc.,* No. 3:17-CV-01005, 2017 U.S. Dist. LEXIS 174512 (W.D. La. Oct. 19, 2017) | 21-23 |
| 5. | *In re Enron Corp. Sec., Derivative ERISA Litig.*, No. MDL-1446, 2007 U.S. Dist. LEXIS 8812 (S.D. Tex. Feb. 7, 2007) | 24-33 |
| 6. | *Firefighters Pension & Relief Fund v. Bulmahn*, No. 13-3935, 2014 U.S. Dist. LEXIS 136175 (E.D. La. Sep. 26, 2014) | 34-40 |
| 7. | *Lafrance v. City of New Orleans*, No. 16-14439, 2017 U.S. Dist. LEXIS 150446 (E.D. La. June 19, 2017) | 41-46 |
| 8. | *Lynn v. Terrebonne Gen. Med. Ctr.*, No. 87-1920, 1989 U.S. Dist. LEXIS 1535 (E.D. La. Feb. 14, 1989) | 47-48 |

| 9. | *Miller v. Ventro Corp.,* No. C-01-01287-SBA, 2001 U.S. Dist. LEXIS 26027 (N.D. Cal. Nov. 28, 2001) | 49-67 |
|---|---|---|
| 10. | *Mitchell v. Complete Mgmt., Inc.,* No. 99-CV-1454-DAB, 1999 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 17, 1999) | 68-75 |
| 11. | *Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.,* No. 6:16-CV-01243-RWS, 2017 U.S. Dist. LEXIS 186657 (E.D. Tex. June 23, 2017) | 76-81 |
| 12. | *Pemex Exploración y Producción v. BASF Corp.,* No. H-10-1997, 2011 U.S. Dist. LEXIS 160512 (S.D. Tex. Oct. 4, 2011) | 81-88 |
| 13. | *In re Plains All Am. Pipeline, L.P. Sec. Litig.,* No. H:15-cv-02404, 2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015) | 89-94 |
| 14. | *In re ShengdaTech, Inc. Secs. Litig.,* No. 11-CV-1918-TPG, 2011 U.S. Dist. LEXIS 141695 (S.D.N.Y. Dec. 6, 2011) | 95-98 |
| 15. | *In re Signet Jewelers Ltd Sec. Litig.,* No. 1:16-cv-06728-JMF, ECF No. 100 (S.D.N.Y. Jan. 7, 2018) | 99-115 |
| 16. | *Stitt v. On Deck Capital, Inc.,* No. 15-CV-6126-AT, 2016 U.S. Dist. LEXIS 30507 (S.D.N.Y. Feb. 17, 2016) | 116-119 |
| 17. | *In re Sunbeam Sec. Litig.,* No. 98-8258, 1998 U.S. Dist. LEXIS 21490 (S.D. Fla. Dec. 4, 1998) | 120-126 |
| 18. | *In re UBS AG Sec. Litig.,* 07-cv-11225-RJS, Order, Dkt. No. 97 (S.D.N.Y. Apr. 7, 2009) | 127-129 |

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 7th of November, 2018, in Dallas Texas.

/s/ *Jamie J. McKey*
Jamie J. McKey

 Neutral

As of: October 30, 2018 2:32 PM Z

## *Abouzied v. Applied Optoelectronics, Inc.*

United States District Court for the Southern District of Texas, Houston Division

January 22, 2018, Decided; January 22, 2018, Filed, Entered

CASE NO. 4:17-CV-2399

**Reporter**

2018 U.S. Dist. LEXIS 16801 *; 2018 WL 539362

MONA ABOUZIED, Plaintiff, v. APPLIED OPTOELECTRONICS, INC, CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY, Defendants.

## Core Terms

lead plaintiff, Investor, appointment, movants, financial interest, asserts, largest, financial loss, individuals, parties, notice, rule requirements, pre-litigation, securities, unrelated, shares, class member, group member, satisfies, sole-lead, contends, courts, losses

**Counsel:  [*1]** For Mona Abouzied, Plaintiff: Laura Kirstine Rogers, R. Dean Gresham, Steckler Gresham Cochran PLLC, Dallas, TX.

For Chad Ludwig, Consol Plaintiff: Willie C Briscoe, LEAD ATTORNEY, The Briscoe Law Firm, PLLC, Dallas, TX; Joseph Alexander Hood, II, Pomerantz LLP, New York, NY.

For Applied Optoelectronics, Inc., Chih-Hsiang Thompson Lin, Stefan J. Murry, Defendants: Michael C Holmes, LEAD ATTORNEY, Vinson & Elkins, Dallas, TX; Amy Tankersley Perry, Vinson Elkins, Dallas, TX; Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX.

For Amir Fakharzadeh, Patricia Fakharzadeh, Thomas Edmons, Gregory Knight, Kristen Knight, Stephen Rakower, Amnuey Chiemprabha, Helen Chiemprabha, Movants: Phillip Kim, LEAD ATTORNEY, The Rosen Law Firm, P.A., New York, NY; R. Dean Gresham, Steckler Gresham Cochran PLLC, Dallas, TX.

For Lawrence Rougier, Movant: Jamie J McKey, LEAD ATTORNEY, Kendall Law Group LLP, Dallas, TX; Joe Kendall, Kendall Law Group, LLP, Dallas, TX; Shannon L. Hopkins, PRO HAC VICE, Levi & Korsinsky, LLP, Stamford, CT.

For Philip R. Deubler, Jr., Movant: Andrew M Edison, LEAD ATTORNEY, Edison, McDowell & Hetherington,

LLP, Houston, TX.

For Daniel Sisto, Movant: Thomas E Bilek, LEAD ATTORNEY, The **[*2]** Bilek Law Firm LLP, Houston, TX.

For Jay C. Weenig, Movant: Roger B Greenberg, LEAD ATTORNEY, Sponsel Miller Greenberg PLLC, Houston, TX.

**Judges:** VANESSA D. GILMORE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** VANESSA D. GILMORE

## Opinion

<u>ORDER</u>

Pending before the Court are Applied Investor Group's Motion for Appointment of Lead Plaintiff and Lead Counsel, **(Instrument No. 5)**, and Lawrence Rougier's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel. **(Instrument No. 8)**. The Court held the motion hearing on January 19, 2018 at 9:30 a.m.

**I.**

**A.**

Defendant Applied Optoelectronics, Inc. ("Optoelectronics") develops and manufactures advanced optical products for use in broadband and fiber access networks. (Instrument No. 1 at 3). Optoelectronics is incorporated in Delaware and headquartered in Sugar Land, Texas. *Id.* The companies securities trade on the NASDAQ Global Market under the ticker symbol "AAOI." *Id.*

Plaintiff Mona Abouzied filed a security class action suit on behalf of a proposed class of purchasers of AAOI securities between July 13, 2017 through August 3, 2017, inclusive of both dates ("Class Period"). (Instrument No. 1 at 2). The Complaint alleges that on July 13, 2017, Optoelectronics **[\*3]** issued a press release announcing its preliminary financial results for the second quarter of 2017. *Id.* at 4. The Complaint alleges that Defendants made false and/or misleading statements and/or failed to disclose: (1) a major customer (Amazon) was reducing its purchases of Optoelectronic's 40G receivers; (2) the loss of Amazon's business would have a severe negative impact on Optoelectronic's financial performance; and (3) as a result of the foregoing, Optoelectronic's public statements were materially false and misleading at all relevant times. (Instruments No. 1 at 6; No. 14 at 4). After trading hours had ended on August 3, 2017, Optoelectronics announced its final financial results which included the negative news about Amazon. (Instrument No. 1 at 6-7). As a result, Optoelectronic's shares fell by $33.39 per share from its previous closing price, or more than 34%, to close at $64.60 per share on August 4, 2017. *Id.* at 7.


**B**.

Plaintiff Mona Abouzied filed the class action suit on August 5, 2017. (Instrument No. 1). On August 16, 2017, a related action was filed, *Ludwig v. Applied Optoelectronics, Inc. et al.*, No. 4:17-cv-2512 (S.D. Tex.) (Miller, J.). (Instrument No. 9 at 4). On October 3, 2017, **[\*4]** the Court consolidated the *Ludwig* Action with the present action, *Abouzied v. Applied Optoelectronics, Inc. et al.*, No. 4:17-cv-2399. Another similar action was filed on September 11, 2017 before the U.S. District Court for the Eastern District of New York: *Rizzo v. Applied Optoelectronics, Inc., et al.*, No. 1:17-cv-5313. (Instrument No. 18 at 6 n.2). That case was later dismissed on October 17, 2017. *Id.*

On October 4, 2017, five different parties moved for appointment as lead plaintiffs and approval of lead plaintiffs' selection of counsel. The first movant is Applied Investor Group which consists of movants Amir and Patricia Fakharzadeh, Kristen and Gregory Knight, Stephen Rakower, and Amnuey and Helen Chiemprabha. (Instrument No. 5 at 1). The group consists of three married couples and one unrelated individual. (Instrument No. 18 at 7 n.4). Moreover, Kristen Knight moves on behalf of five entities: (1) the Dale E. Bartch Irrevocable Life Insurance Trust; (2) the

Dale and Cheryl Bartch Family Trust; (3) the Kristen L. Bartch Family Ltd. Partnership; (4) the Fiona Carolyn Knight Trust; and (5) the Elisabeth Valerie Knight Trust. (Instrument No. 7-2).

The second party moving for appointment **[\*5]** as lead plaintiff is Lawrence Rougier ("Rougier"). (Instrument No. 8). The third party to move for appointment as lead plaintiff was Philip R. Deubler, Jr. ("Deubler"). (Instrument No. 10). On January 19, 2018, Deubler withdrew his motion. The fourth party to move for appointment as lead plaintiff was Daniel Sisto ("Sisto"). (Instrument No. 11). On January 19, 2018, the Court denied Sisto's motion for want of prosecution. The fifth party to move for appointment as lead plaintiff was Jay C. Weenig ("Weenig"). (Instrument No. 14). On October 25, 2017, Weenig withdrew his motion. (Instrument No. 17).


**II**.

The Private Securities Litigation Reform Act ("PSLRA") establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *15 U.S.C. §78u-4(a)(1)*. The plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of his right to file a motion for appointment as lead plaintiff. *15 U.S.C. §78u-4(3)(A)(i)*. The notice must advise that any member of the purported class mut file a motion for appointment as lead plaintiff within **[\*6]** 60 days after the date on which the notice is published. *15 U.S.C. §78u-4(3)(A)(i)*. Plaintiff Mona Abouzied published such a notice in *Business Wire* on August 5, 2017. (Instrument No. 9-5). The notice announced that the statutory deadline to submit applications for appointment as lead plaintiff was October 4, 2017. *Id.*

The PSLRA states that as soon as practicable after consolidation, a court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. The PSLRA provides a "rebuttable presumption" that the most adequate plaintiff to serve as lead plaintiff is the "person or group of persons" that:

    (aa) has either filed the complaint of made a motion in response to a notice . . . ;

    (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*.

A member of the potential class can rebut the presumption by providing proof that the presumptively most adequate plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

Moreover, the party moving for appointment **[*7]** as lead plaintiff must "otherwise satisfy the requirements of *Rule 23 of the Federal Rules of Civil Procedure*." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)*. *Rule 23(a)* provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of common law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the lead plaintiff satisfies the requirements of *Rule 23*, a court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that the movant satisfies the requirements of *Rule 23* is sufficient. *In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 439 (S.D.N.Y. 2008)*. Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *Id. at 437*; *Gluck v. Cellstar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997)*.

**A.**

Each of the movants filed motions for appointment as lead plaintiff within 60 days after the date on which Plaintiff Abouzied published the notice to potential class members. Moreover, each of the movants has submitted sworn shareholder certifications asserting **[*8]** that they are willing to serve as representatives of the class and are willing to provide testimony at deposition and trial, if necessary. Accordingly, the moving parties satisfy the first requirement to serve as lead plaintiffs for the class.

**B.**

The PSLRA does not specify how a court should decide which plaintiff has the "largest financial interest" in the relief sought. *In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008)*. Some courts apply a four-factor inquiry first proposed in *Lax v. First Merch. Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11 1997)*; *In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. Feb. 15, 2002)* (Harmon, J.). The four factors relevant to the inquiry are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *In re Enron, 206 F.R.D. at 440*. Of these four factors, courts tend to place the greatest emphasis on the financial loss suffered by the plaintiffs. *Id.*; *In re Fuwei Films, 247 F.R.D. at 436*; *In re Bally Total Fitness Sec. Litig., 2005 U.S. Dist. LEXIS 6243, 2005 WL 627960 at *4 (N.D. Ill. Mar. 15, 2005)* ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").

Applied Investor Group alleges total losses of $2,049,571.35 in connection with the all of the group members' purchases of Optoelectronics securities. (Instrument No. 19 at 2). Rougier alleges total losses of $417,690. (Instrument No. 9 at 8). Applied Investor **[*9]** Group also purchased more total shares and expended more net funds than Lawrence Rougier. (Instruments No. 7-3; No. 9-3). Therefore, Applied Investor Group has the largest financial interest in the relief sought.

**C.**

The parties do not dispute that their claims are typical of the claims or defenses of the class as required by *Rule 23*. Rougier challenges, however, the adequacy of Applied Investor Group and asserts that Applied Investor Group constitutes an impermissible group of unrelated individuals. (Instrument No. 18 at 7). Specifically, Applied Investor Group is made up of seven individuals who, besides the married couples, lack a pre-litigation relationship. (Instrument No. 18 at 9). Rougier contends that Kristen Knight moved for appointment as co-lead plaintiff although she is the representative of four trusts and a limited partnership, which the court should regard as separate and distinct interests from Kristen Knight for the purposes of defining "largest financial interests." (Instrument No. 24 at 5).

2018 U.S. Dist. LEXIS 16801, *9

Rougier further asserts that Applied Investor Group is too large and unwieldy to serve as a cohesive group and cannot therefore meet the adequacy requirement of *Rule 23.* (Instrument No. 18 at **[*10]** 15-16). Rougier also contends that any request by individuals from Applied Investor Group to be broken down into a subgroup makes the group inadequate because it demonstrates that those members would not hesitate to make a decision for their own benefit. *Id.* at 17.

Applied Investor Group contends that its movants purchased more shares of Optoelectronics during the class period and suffered the greatest financial loss by a large margin. (Instrument No. 19 at 4). Applied Investor Group further asserts that grouping is a nonissue in this case because two members of the Applied Investor Group, Kristen and Gregory Knight and Stephen Rakower have the top two largest *individual* financial interests in this action, respectively. *Id.* at 5. Applied Investor Group asserts that Kristen and Gregory Knight, in their individual capacities, suffered a financial loss of approximately $420,000, and Stephen Rakower suffered a financial loss of $522,573. *Id.* at 2. Applied Investor Group further contends that the movants have filed a Joint Declaration attesting to their understanding of the responsibilities as lead plaintiff and their agreement to work together as a group prior to the filing of the motion. *Id.* at 5.

The Fifth Circuit case, *Berger v. Compaq Comput. Corp., 257 F.3d 475 (5th Cir. 2001)*, raises **[*11]** this concern about the appointment of a group of investors to serve as lead plaintiffs:

> Although the appointment of such a large group [39 individuals] to serve as lead plaintiff is not before this court, it is notable that the Securities and Exchange Commission has taken the position that a group of investors appointed to serve as lead plaintiffs ordinarily should comprise no more than three to five persons. *See In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999).* In that case, the district court refused to appoint a twenty-member group, citing the "particular concern [which] arises when lead plaintiff status is sought by a 'group' of persons who were previously unaffiliated, each of whom have [*sic* ] suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation." *Id.* Likewise, in *In re Waste Mgmt., Inc. Sec. Litig., 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000)*, the court concluded that "the strictest approach, requiring at maximum a small

> group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the [PSLRA] and serves the purpose behind its enactment[.]"

*Id. at 478 n.2.* Although the case law within the Fifth Circuit is sparse, there is some precedent **[*12]** in the Southern District of Texas following the "strictest approach," which requires that a group appointed as lead plaintiff should consist of no more than five individuals. *In re Waste Mgmt., Inc. Sec. Litig., 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000)* (Harmon, J.) ("[T]his Court finds that the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment."); *In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 442 (S.D. Tex. 2002)* (Harmon, J.) ("The SEC has indicated that generally a group of investors appointed as Lead Plaintiffs should be no larger than three to five persons."); *see also In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999)* ("[A] court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers . . . . ordinarily this should be no more than three to five persons, a number that will facilitate joint decisionmaking and also help to assure that each group member has a sufficiently large stake in the litigation.").

Additionally, some courts "permit a group Lead Plaintiff only where it involves a 'small number of members that share such an identity of characteristics, distinct from those **[*13]** of almost all other class members, that they can almost be seen as being the same person.'" *In re Landry's Seafood Rest., Inc. 2000 U.S. Dist. LEXIS 7005, 2000 WL 33999467 at *4 (S.D. Tex. Mar. 30, 2000)* (Harmon, J.) (quoting *Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1153-54 (N.D. Cal. 1999)).* Where unrelated members of a group move for appointment as lead plaintiff, courts consider: (1) the existence of a pre-litigation relationship among the members; (2) the group members' participation in the litigation so far; (3) plans for cooperation; (4) the sophistication of the group members; and (5) whether the group members chose outside counsel, and not vice versa. *See Marcus v. J.C. Penney Co., Inc., 2014 U.S. Dist. LEXIS 197529, 2014 WL 11394911 at *6 (E.D. Tex. 2014).* The general rationale behind a small, cohesive group is to prevent "lawyer-driven" litigation with counsel recruiting members that have no

relationship to each other and less of a stake in the litigation. *Enron, 206 F.R.D. at 442*; *Baan, 186 F.R.D. at 224*. The movant must demonstrate the cohesiveness of its purported group. *Buettgen v. Harless, 263 F.R.D. 378, 381 (N.D. Tex. 2009)*; *Enron, 206 F.R.D. at 441*.

Applied Investor Group currently consists of twelve movants: three married couples and one unrelated individual. Moreover, Kristen Knight, one of the movants, moves as a representative for five different entities. The three couples and the one individual have no pre-litigation relationship with each other based on more than the losing investments at issue in this case. The movants have filed a Joint Declaration attesting **[*14]** that they agree to function as a cohesive group and provide a basic plan for working together in this litigation. (Instrument No. 20-1). For instance, the Joint Declaration states that the movants "have a dedicated conference call line for this case. We also have a group email list available to us in order to communicate with each other with or without counsel present." *Id.* at 4. However, Applied Investor Group admits that the movants "agreed to proceed together because we each suffered significant losses in our investments in Applied Optoelectronics, Inc. and would like the opportunity to participate in this action as Lead Plaintiffs." *Id.* at 5. Based on the evidence provided and the statements by counsel at the hearing, it appears that legal counsel for the group cobbled the movants together. *See Tsirekidze v. Syntax-Brillian Corp., 2008 U.S. Dist. LEXIS 118562, 2008 WL 942273 at *3 (D. Ariz. Apr. 7, 2008)* ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

Applied Investor Group argues that if the Court is inclined to appoint only one member of the Applied Investor Group as Lead Plaintiff, each member of the group stands ready and willing to serve as sole-Lead Plaintiff. (Instruments No. 23 at 7; No. 20-1 at 5). **[*15]** Applied Investor Group has specifically noted that member Stephen Rakower, who suffered a total financial loss of $522,573, and member Kristen and Gregory Knight, who individually suffered a total financial loss of approximately $420,000, both have a larger financial interest than any other competing movant. (Instrument No. 19 at 3).

Rougier asserts that since the individual members of the Applied Investor Group have moved together, the Court should not allow them to desert the remainder of the group and seek lead plaintiff appointment independently. (Instrument No. 18 at 17). Rougier

further contends that no individual member of Applied Investor Group moved for appointment as sole-lead plaintiff by the October 4, 2017 deadline. *Id.* at 18.

Both members of Applied Investor Group, Stephen Rakower and Kristen and Gregory Knight, each have greater financial losses than Rougier. However, within the Fifth Circuit, courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff. *See Marcus v. J.C. Penney Co., Inc., 2014 U.S. Dist. LEXIS 197529, 2014 WL 11394911 at *6 (E.D. Tex. Feb. 28, 2014)* ("Because Mr. Webb [a group member] did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group."); *Buettgen, 263 F.R.D. at 382* ("[T]he Buettgen **[*16]** Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate. Such a 'willingness to abandon the group only suggests how loosely it was put together.'" (quoting *Tsirekidze, 2008 U.S. Dist. LEXIS 118562, 2008 WL 942273 at *3))*. Neither Stephen Rakower nor the Knights has moved for appointment as sole-lead plaintiff. Therefore, the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group.

The PSLRA operates to ensure that plaintiffs control the litigation, not the lawyers. *Enron, 206 F.R.D. at 442*. The Applied Investor Group has failed to show that its group has a pre-litigation relationship based on more than the losing investments at issue in this case. Instead, counsel for the Applied Investor Group cobbled together a group of unrelated people and gave them a common name. While members of the group submitted a Joint Declaration asserting their desire to together litigate the case as lead plaintiffs, the Joint Declaration provides no mechanism for resolving disputes. Indeed, the movants assert that each stands ready and willing to abandon the group and serve as sole-lead **[*17]** plaintiff. The Court finds that Applied Investor Group is not the most adequate plaintiff.

Lawrence Rougier is the movant with the next highest financial interest. The Court finds that Rougier meets the typicality and adequate representation requirements of *Rule 23*. Rougier demonstrated he purchased shares of Optoelectronics during the class period, as did the other class members, which subsequently lost significant value as a result of Defendants' alleged conduct. Rougier asserts that he is not subject to any special defenses which Defendants might assert against

him nor has Applied Investor Group noted any. Finally, there is no evidence of any conflicts between Rougier and other class members. Rougier has established that he is the presumed most adequate plaintiff.

Accordingly the Court GRANTS Lawrence Rougier's Motion for Appointment as Lead Plaintiff. (Instrument No. 6).

**III**.

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4(a)(3)(B)(v)*. The Court should only interfere with a lead plaintiff's selection when necessary to "protect the interests of the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)*. Rougier seeks to appoint Levi & Korsinsky, **[*18]** LLP as lead counsel and Kendall Law Group, PLLC as liaison counsel. (Instrument No. 9 at 10). Rougier has submitted the resumes of the firms that attest to the firms' experience in the area of securities litigation. The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action.

**IV**.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Applied Investor Group's Motion for Appointment of Lead Plaintiff and Lead Counsel is **DENIED, (Instrument No. 5)**, and Lawrence Rougier's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel **(Instrument No. 8)** is **GRANTED**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 22nd day of January, 2018, at Houston, Texas.

/s/ Vanessa D. Gilmore

**VANESSA D. GILMORE**

**UNITED STATES DISTRICT JUDGE**

⚠ Caution
As of: October 30, 2018 2:33 PM Z

# *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litigation*

United States District Court for the Southern District of New York

April 9, 2010, Decided; April 9, 2010, Filed

Master File No. 09 MDL 2058 (DC)

**Reporter**
2010 U.S. Dist. LEXIS 37799 *

IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE AND EMPLOYMENT RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION; THIS DOCUMENT RELATES TO: ALL SECURITIES ACTIONS

**Subsequent History:** Complaint dismissed at, in part, Motion denied by *In re Bank of Am. Corp. Secs, 757 F. Supp. 2d 260, 2010 U.S. Dist. LEXIS 89199 (S.D.N.Y., Aug. 27, 2010)*

**Prior History:** *In re Bank of Am. Corp. Secs, 2009 U.S. Dist. LEXIS 108322 (S.D.N.Y., Nov. 16, 2009)*

## Core Terms

Consolidated, Securities, lead plaintiff, appointment, cases, class action, holders, options, lead counsel, merger

**Counsel:** **[*1]** Plaintiffs' Lead Counsel for Consolidated Securities Class Action: KAPLAN FOX & KILSHEIMER LLP, By: Donald R. Hall, Jr., Esq., Frederic Scott Fox, Esq., Robert N. Kaplan, Esq., New York, New York, BERNSTEIN, LITOWITZ, BERGER & GROSSMAN LLP, By: Gerald H. Silk, Esq., Salvatore J. Graziano, Esq., Noam Mandel, Esq., New York, New York, BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP, By: Sean M. Handler, Esq., Radnor, pennsylvania.

Counsel for Plaintiffs Iron Workers of Western Pennsylvania Pension Plan and MARTA/ATU Local 732 Employees Retirement Plan: COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP, By: Samuel H. Rudman, Esq., David A. Rosenfeld, Esq., Melville, New York.

Counsel for Plaintiff Charles N. Dornfest: BRAGAR WEXLER EAGEL & SQUIRE, P.C., By: Jeffrey H. Squire, Esq., Raymond A. Brager, Esq., New York, New York.

Counsel for Plaintiffs Kenneth and Joanna Ciullo:

ZWERLING, SCHACHTER & ZWERLING LLP, By: Robin F. Zwerling, Esq., Richard A. Speirs, Esq., Justin M. Tarshis, Esq., New York, New York.

Attorneys for Defendants: WACHTELL, LIPTON, ROSEN & KATZ, By: Peter C. Hein, Esq., Eric M. Roth, Esq., Andrew Houston, Esq., Jonathan E. Goldin, Esq., Keola Robert whittaker, Esq., New York, New York, **[*2]** DAVIS POLK & WARDWELL, By: Lawrence Portnoy, Esq., Charles S. Duggan, Esq., Douglas K. Yatter, Esq., New York, New York; DEBEVOISE & PLIMPTON LLP, By: Gary W. Kubek, Esq., New York, New York, DECHERT LLP, By: Andrew Levander, Esq., David Hoffner, Esq., New York, New York, By: Jennie Boehm Krasner, Princeton, New Jersey; CRAVATH, SWAINE & MOORE LLP, By: Robert D. Joffe, Esq., Richard W. Clary, Esq., Julie A. North, Esq., New York, New York; PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, By: Charles E. Davidow, Esq., Washington, D.C., By: Brad S. Karp, Esq., New York, New York; SULLIVAN & CROMWELL LLP, By: Richard C. Pepperman II, Esq., New York, New York; SHEARMAN & STEARLING LLP, By: Stuart Baskin, Esq., Adam S. Hakki, Esq., Herbert S. Washer, Esq., Terence Gilroy, Esq., New York, New York.

**Judges:** DENNY CHIN, United States District Judge.

**Opinion by:** DENNY CHIN

## Opinion

***MEMORANDUM DECISION***

**CHIN, District Judge**

On June 30, 2009, the Court issued an opinion (the "Opinion") ordering, among other things, the consolidation of the Securities Actions, the appointment

of the Public Pension Funds as lead plaintiffs for the Securities Actions, and the appointment of their lawyers as lead counsel for the Securities Actions. *In re Bank of America Corp. Sec., Derivative, & ERISA Litig., 258 F.R.D. 260 (S.D.N.Y. June 30, 2009).* [*3] The Public Pension Funds ("Lead Plaintiffs") brought claims on behalf of purchasers of Bank of America Corporation ("BoA") common stock or preferred securities -- but not purchasers of options or debt securities. The complaint alleged that BoA and other defendants made false and misleading statements in connection with the merger between BoA and Merrill Lynch & Co., Inc. ("Merrill").

Several issues have arisen, which the Court now resolves as follows:

## 1. *Additional Class Actions*

In the Opinion, the Court ruled that "[f]uture cases raising common questions of law and fact filed in this Court or transferred to this Court will also be consolidated into the appropriate consolidated [securities, derivative, or ERISA] case." *258 F.R.D. at 268.* In an order dated July 29, 2009, implementing the securities aspects of the Opinion (the "Consolidation Order"), the Court consolidated thirteen securities cases into the "Consolidated Securities Action" and ordered that:

> Each new securities case that relates to or arises out of the subject matter of the Securities Actions which is filed in, or transferred to, this Court, shall be consolidated with the Consolidated Securities Action, and this Order shall [*4] apply thereto, unless a party objects to consolidation, as provided herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application.

(Consolid. Order P 9).

On December 22, 2009, the Iron Workers of Western Pennsylvania Pension Plan and MARTA/ATU Local 732 Employees Retirement Plan (the "Iron Workers plaintiffs") filed a class action complaint on behalf of holders of debt securities against Boa and other defendants for alleged misstatements and omissions in connection with BoA's merger with Merrill. (No. 09 Civ. 10394). On February 22, 2010, the Iron Workers plaintiffs filed a motion for appointment as lead plaintiffs and the appointment of their attorneys as lead counsel.

On January 3, 2010, Charles Dornfest filed a class action complaint on behalf of options investors against BoA and other defendants for alleged misstatements and omissions in connection with BoA's merger with Merrill. (No. 10 Civ. 275). Dornfest moved for appointment to be lead plaintiff on March 15, 2010.

On March 2, 2010, Kenneth and Joanna [*5] Ciullo filed a complaint asserting the rights of options investors, based on the same facts and events surrounding the BoA merger with Merrill. (No. 10 Civ. 1673). On March 16, 2010, the Ciullos moved for consolidation with the Dornfest action only, and for appointment as lead plaintiffs.

Lead Plaintiffs oppose the motions, arguing that they are vested with the authority to decide what claims to assert against which defendants for what class period.

The Iron Workers plaintiffs, Dornfest, and the Ciullos point out that Lead Plaintiffs sue only on behalf of stock holders, and that Lead Plaintiffs have elected not to sue on behalf of options holders or bond holders. The question before the Court is whether these additional cases should be consolidated into the Consolidated Securities Actions, or whether the options and bond cases may proceed as separate class actions on a related but not consolidated basis with the Consolidated Securities Actions.

The motions of the Iron Workers plaintiffs, Dornfest, and the Ciullos are denied, and *Iron Workers, Dornfest,* and *Ciullo* are consolidated into the Consolidated Securities Actions. The requests for the appointment of additional lead plaintiffs and [*6] additional lead counsel are denied.

First, *Iron Workers, Dornfest,* and *Ciullo* arise out of the same facts and circumstances relating to BoA's acquisition of Merrill as are at issue in the Consolidated Securities Actions. The cases are substantially similar and, except perhaps with respect to damages, raise the same issues of fact and law. Hence, the three cases should be consolidated into the Consolidated Securities Actions.

Second, in a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class. *See Hevesi v. Citigroup Inc., 366 F.3d 70, 82 n.13 (2d Cir. 2004)* ("any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff -- namely, to empower one or several investors with a

2010 U.S. Dist. LEXIS 37799, *6

major stake in the litigation to exercise control over the litigation as a whole"); *In re Bank of America, 258 F.R.D. at 268*. Lead Plaintiffs have the authority to decide what claims to assert on behalf of securities holders. Permitting other plaintiffs to bring **[*7]** additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead Plaintiffs' ability and authority to manage the Consolidated Securities Actions.

Third, while it is true that the Lead Plaintiffs have not yet asserted claims on behalf of holders of debt securities or options, they advise that they are still assessing whether to do so. Two members of the Lead Plaintiffs purchased BoA bonds and suffered significant losses -- substantially greater losses than those sustained by the Iron Workers. Lead Plaintiffs surely have incentive to bring these claims if there is a meritorious basis for doing so. Lead Plaintiffs should be given the opportunity to make this decision. *See In re Lehman Bros. Sec. & ERISA Litig.*, 09 MDL 2017 (LAK), Pretrial Order No. 9 (S.D.N.Y. Apr. 24, 2009) (attached to Castaldo Decl. in *Dornfest* as Ex. 4).

Finally, the plaintiffs in *Iron Workers, Dornfest*, and *Ciullo* are free to pursue their claims as individual cases -- but not as class actions.

*Iron Workers* (No. 09 Civ. 10394), *Dornfest* (No. 10 Civ. 275), and *Ciullo* (No. 10 Civ. 1673) are hereby consolidated into the Consolidated Securities Actions (No. 09 MDL 2058). **[*8]** The motions of the plaintiffs in these three cases for appointment as lead plaintiffs and the appointment of their counsel as lead counsel are denied.

## 2. *Additional Individual Actions*

On March 16, 2010, Stichting Pensionfonds ABP ("ABP") filed an action against BoA and other defendants based on the same facts and events surrounding the BoA merger with Merrill. (No. 10 Civ. 2284). ABP's action is brought as an individual action, and not as a class action. The ABP action may proceed as an individual action, related to, but not consolidated with, the Consolidated Securities Actions. ABP is directed to respond to defendants' motion to dismiss by April 23, 2010. Defendants are directed to file any reply papers by April 30, 2010.

SO ORDERED.

Dated: New York, New York

April 9, 2010

/s/ Denny Chin

DENNY CHIN

United States District Judge

---

**End of Document**

# US District Court Civil Docket

## U.S. District - New York Southern
## (Foley Square)

## 1:18cv8049

## City of Westland Police And Fire Retirement System v. Philip Morris International Inc et al

### This case was retrieved from the court on Tuesday, November 06, 2018

| | | | |
|---|---|---|---|
| Date Filed: | **09/04/2018** | Class Code: | **OPEN** |
| Assigned To: | **Judge Ronnie Abrams** | Closed: | |
| Referred To: | | Statute: | **15:78m(a)** |
| Nature of suit: | **Securities (850)** | Jury Demand: | **Plaintiff** |
| Cause: | **Securities Exchange Act** | Demand Amount: | **$0** |
| Lead Docket: | **None** | NOS Description: | **Securities** |
| Other Docket: | **1:18cv08814** | | |
| Jurisdiction: | **Federal Question** | | |

| Litigants | Attorneys |
|---|---|
| City of Westland Police And Fire Retirement System<br>Plaintiff | David Avi Rosenfeld<br>ATTORNEY TO BE NOTICED<br>Robbins Geller Rudman & Dowd LLP (LI)<br>58 South Service Road Suite 200<br>Melville, NY 11747<br>USA<br>631-367-7100<br>Fax: 631-367-1173<br>Email:Drosenfeld@rgrdlaw.Com<br><br>Robert Daniel Gerson<br>ATTORNEY TO BE NOTICED<br>Robbins Geller Rudman & Dowd LLP (LI)<br>58 South Service Road Suite 200<br>Melville, NY 11747<br>USA<br>(631) 367-7100<br>Fax: (631) 367-1173<br>Email:Rgerson@rgrdlaw.Com<br><br>Samuel Howard Rudman<br>ATTORNEY TO BE NOTICED<br>Robbins Geller Rudman & Dowd LLP (LI)<br>58 South Service Road Suite 200<br>Melville, NY 11747<br>USA<br>(631) 367-7100<br>Fax: (631) 367-1173<br>Email:Srudman@rgrdlaw.Com |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| | |
|---|---|
| Greater Pennsylvania Carpenters' Pension Fund<br>Movant | Christopher J. Keller<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Labaton Sucharow, LLP<br>140 Broadway<br>New York, NY 10005<br>USA<br>(212) 907-0853<br>Fax: (212) 883-7053<br>Email:Ckeller@labaton.Com |
| Teamsters Local 710 Pension Fund<br>Movant | David Avi Rosenfeld<br>ATTORNEY TO BE NOTICED<br>Robbins Geller Rudman & Dowd LLP (LI)<br>58 South Service Road Suite 200<br>Melville, NY 11747<br>USA<br>631-367-7100<br>Fax: 631-367-1173<br>Email:Drosenfeld@rgrdlaw.Com |
| Philip Morris International Inc<br>Defendant | |
| Andre Calantzopoulos<br>Defendant | |
| Martin G. King<br>Defendant | |
| Jacek Olczak<br>Defendant | |
| Wayne Gilchrist<br>Interested Party | Naumon A Amjed<br>ATTORNEY TO BE NOTICED<br>Kessler Topaz Meltzer and Check LLP<br>280 King Of Prussia Road<br>Radnor, PA 19087<br>USA<br>610-667-7706<br>Email:Namjed@ktmc.Com |
| Union Asset Management Holding AG<br>Intervenor | Jeremy Alan Lieberman<br>ATTORNEY TO BE NOTICED<br>Pomerantz LLP<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br>USA<br>(212)-661-1100<br>Fax: (212)-661-8665<br>Email:Jalieberman@pomlaw.Com<br><br>Joseph Alexander Hood , II<br>ATTORNEY TO BE NOTICED<br>Pomerantz LLP<br>600 Third Avenue<br>New York, NY 10016<br>USA<br>(212)-661-1100<br>Email:Ahood@pomlaw.Com |

| Date | # | Proceeding Text |
|---|---|---|
| 09/04/2018 | 1 | FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR - COMPLAINT against Andre Calantzopoulos, Martin King, Jacek Olczak, Philip Morris International Inc. (Filing Fee $ 400.00, Receipt Number 0208-15526979)Document filed by City of Westland Police and Fire Retirement System.(Rudman, Samuel) Modified on 9/5/2018 (jgo). (Entered: 09/04/2018) |
| 09/04/2018 | 2 | CIVIL COVER SHEET filed. (Attachments: # 1 Schedule A - List of Defendants/Counties)(Rudman, Samuel) (Entered: 09/04/2018) |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.<br>***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| 09/04/2018 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by City of Westland Police and Fire Retirement System.(Rudman, Samuel) (Entered: 09/04/2018) |
|---|---|---|
| 09/04/2018 | 4 | FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST As To -   REQUEST FOR ISSUANCE OF SUMMONS as to Martin King, re: 1 Complaint. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) Modified on 9/5/2018 (jgo). (Entered: 09/04/2018) |
| 09/04/2018 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Philip Morris International Inc., re: 1 Complaint. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/04/2018) |
| 09/04/2018 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to Jacek Olczak, re: 1 Complaint. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/04/2018) |
| 09/04/2018 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Andre Calantzopoulos, re: 1 Complaint. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/04/2018) |
| 09/04/2018 | 8 | NOTICE of OF FILING OF COMPLAINT ATTACHMENT (PLAINTIFF CERTIFICATION) re: 1 Complaint. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/04/2018) |
| 09/05/2018 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Samuel Howard Rudman. The party information for the following party/parties has been modified: City of Westland Police and Fire Retirement System; Martin G. King. The information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error; party text was omitted;. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Samuel Howard Rudman to RE-FILE Document No. 1 Complaint. The filing is deficient for the following reason(s): due to party modification, the wrong party/parties whom the pleading is against were selected;. Re-file the pleading using the event type Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | | ***NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Samuel Howard Rudman. The following case opening statistical information was erroneously selected/entered: Fee Status code due (due);. The following correction(s) have been made to your case entry: the Fee Status code has been modified to pd (paid);. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Ronnie Abrams. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | | Magistrate Judge Henry B. Pitman is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | | Case Designated ECF. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | 9 | COMPLAINT against Andre Calantzopoulos, Martin G. King, Jacek Olczak, Philip Morris International Inc. Document filed by City of Westland Police and Fire Retirement System.(Rudman, Samuel) (Entered: 09/05/2018) |
| 09/05/2018 | 10 | ELECTRONIC SUMMONS ISSUED as to Andre Calantzopoulos. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | 11 | ELECTRONIC SUMMONS ISSUED as to Jacek Olczak. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | 12 | ELECTRONIC SUMMONS ISSUED as to Philip Morris International Inc. (jgo) (Entered: 09/05/2018) |
| 09/05/2018 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Samuel Howard Rudman to RE-FILE Document No. 4 Request for Issuance of Summons. The filing is deficient for the following reason(s): party name on 'as to' docket entry text does not exactly match initial pleading caption;. Re-file the document using the event type Request |

for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (jgo) (Entered: 09/05/2018)

| 09/05/2018 | 13 | REQUEST FOR ISSUANCE OF SUMMONS as to Martin G. King, re: 9 Complaint. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/05/2018) |

| 09/06/2018 | 14 | ELECTRONIC SUMMONS ISSUED as to Martin G. King. (dnh) (Entered: 09/06/2018) |

| 09/07/2018 | 15 | ORDER: Members of the purported class have until 60 days from Plaintiff's filing of the required notice to move the Court to serve as lead plaintiffs. Opposition to any motion for appointment of lead plaintiff shall be served and filed by November 20, 2018. Accordingly it is hereby: ORDERED that a conference shall be held on November 30, 2018 at 12:00 p.m. in Courtroom 1506 of the United States Courthouse, 40 Foley Square, New York, New York 10007 to consider any motions for appointment of lead plaintiff and lead counsel and for consolidation. IT IS FURTHER ORDERED that the named plaintiff shall promptly serve a copy of this Order on each of the Defendants and demonstrate service on the docket. SO ORDERED. Motions due by 11/20/2018. (Signed by Judge Ronnie Abrams on 9/7/2018) (rj) (Entered: 09/10/2018) |

| 09/07/2018 | | Set/Reset Deadlines as to Motion Hearing set for 11/30/2018 at 12:00 PM in Courtroom 1506, 40 Foley Square, New York, NY 10007 before Judge Ronnie Abrams. (rj) (Entered: 09/10/2018) |

| 09/11/2018 | 16 | AFFIDAVIT OF SERVICE. Andre Calantzopoulos served on 9/7/2018, answer due 9/28/2018. Service was accepted by Christopher M. Nolan, Assistant General Counsel. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/11/2018) |

| 09/11/2018 | 17 | AFFIDAVIT OF SERVICE. Jacek Olczak served on 9/7/2018, answer due 9/28/2018. Service was accepted by Christopher M. Nolan, Assistant General Counsel. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/11/2018) |

| 09/11/2018 | 18 | AFFIDAVIT OF SERVICE. Martin G. King served on 9/7/2018, answer due 9/28/2018. Service was accepted by Christopher M. Nolan, Assistant General Counsel. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/11/2018) |

| 09/11/2018 | 19 | AFFIDAVIT OF SERVICE. Philip Morris International Inc served on 9/7/2018, answer due 9/28/2018. Service was accepted by Christopher M. Nolan, Assistant General Counsel. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/11/2018) |

| 09/11/2018 | 20 | AFFIDAVIT OF SERVICE of Order re: Lead Plaintiff Briefing served on Philip Morris International Inc, Andre Calantzopoulos, Jacek Olczak, Martin G. King on September 10, 2018. Service was made by Mail. Document filed by City of Westland Police and Fire Retirement System. (Rudman, Samuel) (Entered: 09/11/2018) |

| 10/06/2018 | 21 | NOTICE OF APPEARANCE by Jeremy Alan Lieberman on behalf of Union Asset Management Holding AG. (Lieberman, Jeremy) (Entered: 10/06/2018) |

| 10/06/2018 | 22 | MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline. Document filed by Union Asset Management Holding AG.(Lieberman, Jeremy) (Entered: 10/06/2018) |

| 10/06/2018 | 23 | MEMORANDUM OF LAW in Support re: 22 MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline. . Document filed by Union Asset Management Holding AG. (Lieberman, Jeremy) (Entered: 10/06/2018) |

| 10/06/2018 | 24 | DECLARATION of Jeremy A. Lieberman in Support re: 22 MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline.. Document filed by Union Asset Management Holding AG. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Lieberman, Jeremy) (Entered: 10/06/2018) |

| 10/06/2018 | 25 | PROPOSED ORDER. Document filed by Union Asset Management Holding AG. Related Document Number: 22 [[Proposed] Order Granting Motion of Union Asset Management Holding AG to Stay PSLRA Lead Plaintiff Motion Deadline]. (Lieberman, Jeremy) Proposed Order to be reviewed by Clerk's Office staff. (Entered: 10/06/2018) |

| 10/06/2018 | 26 | PROPOSED ORDER. Document filed by Union Asset Management Holding AG. Related Document Number: 22 [[Proposed] Order Granting Motion of Union Asset Management Holding AG to Intervene Pursuant to Fed R. Civ. P. 24]. (Lieberman, Jeremy) Proposed Order to be reviewed by Clerk's Office staff. (Entered: 10/06/2018) |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| | | |
|---|---|---|
| 10/06/2018 | 27 | NOTICE OF APPEARANCE by Joseph Alexander Hood, II on behalf of Union Asset Management Holding AG. (Hood, Joseph) (Entered: 10/06/2018) |
| 10/09/2018 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 26 Proposed Order, 25 Proposed Order, was reviewed and approved as to form. (dt) (Entered: 10/09/2018) |
| 10/16/2018 | 28 | LETTER MOTION for Conference   addressed to Judge Ronnie Abrams from Jeremy A. Lieberman dated October 16, 2018. Document filed by Union Asset Management Holding AG.(Lieberman, Jeremy) (Entered: 10/16/2018) |
| 10/19/2018 | 29 | ORDER granting 28 Letter Motion for Conference. Application granted. A conference regarding Union's motion to intervene and to stay the Lead Plaintiff motion deadline shall be held on October 31, 2018 at 2:00 p.m. in courtroom 1506 of 40 Foley Square, New York, N.Y. Any opposition to Union's motion shall be filed no later than October 26, 2018. The Clerk of Court is respectfully directed to file this endorsed letter on dockets 18-cv-8049 and 18-cv-8814. SO ORDERED. (Signed by Judge Ronnie Abrams on 10/19/2018) (yv) (Entered: 10/19/2018) |
| 10/19/2018 | | Set/Reset Deadlines as to (22 in 1:18-cv-08049-RA) MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline., (13 in 1:18-cv-08814-UA) MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline. Motion Hearing set for 10/31/2018 at 02:00 PM in Courtroom 1506, 40 Centre Street, New York, NY 10007 before Judge Ronnie Abrams. (yv) (Entered: 10/19/2018) |
| 10/23/2018 | 30 | NOTICE OF APPEARANCE by David Avi Rosenfeld on behalf of City of Westland Police and Fire Retirement System. (Rosenfeld, David) (Entered: 10/23/2018) |
| 10/25/2018 | 31 | NOTICE OF APPEARANCE by Robert Daniel Gerson on behalf of City of Westland Police and Fire Retirement System. (Gerson, Robert) (Entered: 10/25/2018) |
| 10/26/2018 | 32 | MEMORANDUM OF LAW in Opposition re: 22 MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline. . Document filed by City of Westland Police and Fire Retirement System. (Rosenfeld, David) (Entered: 10/26/2018) |
| 10/26/2018 | 33 | DECLARATION of David A. Rosenfeld in Opposition re: 22 MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline.. Document filed by City of Westland Police and Fire Retirement System. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Rosenfeld, David) (Entered: 10/26/2018) |
| 10/29/2018 | 34 | LETTER addressed to Judge Ronnie Abrams from Jeremy A. Lieberman dated October 29, 2018 Document filed by Union Asset Management Holding AG.(Lieberman, Jeremy) (Entered: 10/29/2018) |
| 10/30/2018 | | Set/Reset Hearings: The Motion Hearing scheduled for October 31, 2018 at 2:00 is adjourned to November 2, 2018 at 01:00 PM in Courtroom 1506, 40 Centre Street, New York, NY 10007 before Judge Ronnie Abrams. (arc) (Entered: 10/30/2018) |
| 10/30/2018 | 35 | NOTICE OF APPEARANCE by Naumon A Amjed on behalf of Wayne Gilchrist. (Amjed, Naumon) (Entered: 10/30/2018) |
| 10/30/2018 | 36 | LETTER addressed to Judge Ronnie Abrams from Naumon A. Amjed dated October 30, 2018 re: In Response to Union Letter Dated October 29, 2018. Document filed by Wayne Gilchrist.(Amjed, Naumon) (Entered: 10/30/2018) |
| 11/01/2018 | 37 | MEMO ENDORSEMENT on re: (36 in 1:18-cv-08049-RA) Letter Response to Union Letter Dated October 29, 2018, filed by Wayne Gilchrist, (15 in 1:18-cv-09856-UA) Letter Response to Union Letter Dated October 29, 2018, filed by Wayne Gilchrist. ENDORSEMENT: Plaintiff is permitted to appear at the November 2, 2018 conference regarding Union's motion to intervene and to stay the lead plaintiff deadline in the Westland action. SO ORDERED. (Signed by Judge Ronnie Abrams on 11/1/18) (yv) (Entered: 11/01/2018) |
| 11/02/2018 | | Minute Entry for proceedings held before Judge Ronnie Abrams: Motion Hearing held on 11/2/2018 re: 22 MOTION to Intervene   Notice of Motion and Motion of Union Asset Management Holding AG for: (1) Intervention Pursuant to Fed. R. Civ. P. 24; and (2) Stay of PSLRA Lead Plaintiff Motion Deadline. filed by Union Asset Management Holding AG. (Court Reporter Martha Martin) (arc) (Entered: 11/02/2018) |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| 11/05/2018 | 38 | MOTION to Appoint Greater Pennsylvania Carpenters' Pension Fund to serve as lead plaintiff(s) and for Consolidation, and Approval of Selection of Lead Counsel. Document filed by Greater Pennsylvania Carpenters' Pension Fund.(Keller, Christopher) (Entered: 11/05/2018) |
|---|---|---|
| 11/05/2018 | 39 | MEMORANDUM OF LAW in Support re: 38 MOTION to Appoint Greater Pennsylvania Carpenters' Pension Fund to serve as lead plaintiff(s) and for Consolidation, and Approval of Selection of Lead Counsel. . Document filed by Greater Pennsylvania Carpenters' Pension Fund. (Keller, Christopher) (Entered: 11/05/2018) |
| 11/05/2018 | 40 | DECLARATION of Christopher J. Keller in Support re: 38 MOTION to Appoint Greater Pennsylvania Carpenters' Pension Fund to serve as lead plaintiff(s) and for Consolidation, and Approval of Selection of Lead Counsel.. Document filed by Greater Pennsylvania Carpenters' Pension Fund. (Attachments: # 1 Exhibit A - Certification, # 2 Exhibit B - Loss Analysis, # 3 Exhibit C - Notice (Westland Police Action), # 4 Exhibit D - Notice (GPCPF Action), # 5 Exhibit E - Labaton Sucharow Firm Resume)(Keller, Christopher) (Entered: 11/05/2018) |
| 11/05/2018 | 41 | PROPOSED ORDER. Document filed by Greater Pennsylvania Carpenters' Pension Fund. Related Document Number: 38 . (Keller, Christopher) Proposed Order to be reviewed by Clerk's Office staff. (Entered: 11/05/2018) |
| 11/05/2018 | 42 | MOTION to Consolidate Cases 18-cv-9856 ., MOTION to Appoint Teamsters Local 710 Pension Fund to serve as lead plaintiff(s) Teamsters Local 710 Pension Fund's Notice of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel. Document filed by Teamsters Local 710 Pension Fund.(Rosenfeld, David) (Entered: 11/05/2018) |
| 11/05/2018 | 43 | PROPOSED ORDER. Document filed by Teamsters Local 710 Pension Fund. Related Document Number: 42 . (Rosenfeld, David) Proposed Order to be reviewed by Clerk's Office staff. (Entered: 11/05/2018) |
| 11/05/2018 | 44 | MEMORANDUM OF LAW in Support re: 42 MOTION to Consolidate Cases 18-cv-9856 . MOTION to Appoint Teamsters Local 710 Pension Fund to serve as lead plaintiff(s) Teamsters Local 710 Pension Fund's Notice of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel . Document filed by Teamsters Local 710 Pension Fund. (Rosenfeld, David) (Entered: 11/05/2018) |
| 11/05/2018 | 45 | DECLARATION of David A. Rosenfeld in Support re: 42 MOTION to Consolidate Cases 18-cv-9856 . MOTION to Appoint Teamsters Local 710 Pension Fund to serve as lead plaintiff(s) Teamsters Local 710 Pension Fund's Notice of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel. Document filed by Teamsters Local 710 Pension Fund. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Rosenfeld, David) (Entered: 11/05/2018) |
| 11/05/2018 | 46 | MOTION to Consolidate Cases 18-cv-08814 and 18-cv-09856 ., MOTION to Appoint Union Asset Management Holding AG to serve as lead plaintiff(s) ., MOTION to Approve Counsel . Document filed by Union Asset Management Holding AG. (Attachments: # 1 Text of Proposed Order)(Lieberman, Jeremy) (Entered: 11/05/2018) |
| 11/05/2018 | 47 | MEMORANDUM OF LAW in Support re: 46 MOTION to Consolidate Cases 18-cv-08814 and 18-cv-09856 . MOTION to Appoint Union Asset Management Holding AG to serve as lead plaintiff(s) . MOTION to Approve Counsel . . Document filed by Union Asset Management Holding AG. (Lieberman, Jeremy) (Entered: 11/05/2018) |
| 11/05/2018 | 48 | DECLARATION of Jeremy A. Lieberman in Support re: 46 MOTION to Consolidate Cases 18-cv-08814 and 18-cv-09856 . MOTION to Appoint Union Asset Management Holding AG to serve as lead plaintiff(s) . MOTION to Approve Counsel .. Document filed by Union Asset Management Holding AG. (Attachments: # 1 Exhibit A - Declarations of Assignment, # 2 Exhibit B - Press Release, # 3 Exhibit C - ISS Notice, # 4 Exhibit D - Greater PA Notice, # 5 Exhibit E - Certification, # 6 Exhibit F - Loss Chart, # 7 Exhibit G - Firm Resume)(Lieberman, Jeremy) (Entered: 11/05/2018) |
| 11/05/2018 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 43 Proposed Order was reviewed and approved as to form. (ad) (Entered: 11/06/2018) |
| 11/05/2018 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 41 Proposed Order was reviewed and approved as to form. (ad) (Entered: 11/06/2018) |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

 Neutral
As of: October 30, 2018 2:33 PM Z

# *Craig v. Centurylink Inc.*

United States District Court for the Western District of Louisiana, Monroe Division

October 19, 2017, Decided; October 19, 2017, Filed

CIVIL ACTION 3:17-CV-01005

**Reporter**
2017 U.S. Dist. LEXIS 174512 *

BENJAMIN CRAIG VERSUS CENTURYLINK INC., et al.

**Subsequent History:** Motion denied by, Motion granted by, Motion denied by *Case v. CenturyLink Inc., 2017 U.S. Dist. LEXIS 174514 (W.D. La., Oct. 20, 2017)*

## Core Terms

consolidate, cases, appointment, Securities, stock

**Counsel:** **[*1]** For Benjamin Craig, individually and on behalf of all others similarly situated, Plaintiff: Adam M Apton, LEAD ATTORNEY, Levi & Korinsky (DC), Washington, DC; Nicholas Ian Porritt, PRO HAC VICE, Levi & Korinsky (DC), Washington, DC.

For K B C Asset Management N V, Plaintiff: James Parkerson Roy, LEAD ATTORNEY, John Parkerson Roy, Domengeaux Wright et al (LAF), Lafayette, LA; Andrew P Arnold, Gregg S Levin, James M Hughes, PRO HAC VICE, Motley Rice (SC), Mt Pleasant, SC; William H Narwold, PRO HAC VICE, Motley Rice (CT), Hartford, CT.

For City of Detroit Police & Fire Retirement System, Laborers Pension Trust Fund - Detroit & Vicinity Plaintiffs: Jason W Burge, Fishman Haygood, New Orleans, LA.

For State of Oregon, on behalf of Oregon Public Employee Retirement Fund, Plaintiff: Fred W Sartor, Jr, LEAD ATTORNEY, George M Snellings, IV, Nelson Zentner et al, Monroe, LA; Avi Josefson, Gerald H Silk, Michael D Blatchley, PRO HAC VICE, Bernstein Litowitz et al (NY), New York, NY; Keil M Mueller, Keith S Dubanevich, PRO HAC VICE, Stoll Stoll et al, Portland, OR.

For Amalgamated Bank, as Trustee for the LongView Collective Investment Fund, Plaintiff: Andrew Allen Lemmon, Lemmon Law Firm, Hahnville, **[*2]** LA.

For Don J Scott, Consol Plaintiff: Matthew E Lundy,

LEAD ATTORNEY, Lundy Lundy et al (LC), Lake Charles, LA.

For Amarendra Thummeti, Consol Plaintiff: Jeremy Alan Lieberman, LEAD ATTORNEY, Joseph Alexander Hood, II, Pomerantz, New York, NY; Patrick V Dahlstrom, Pomerantz (IL), Chicago, IL.

For CenturyLink Inc, Glen F Post, III, R Stewart Ewing, Jr, David J Cole, Defendants: Thomas M Hayes, III, LEAD ATTORNEY, Brandon Wade Creekbaum, Hayes Harkey et al, Monroe, LA; George Edward Anhang, Lyle Roberts, PRO HAC VICE, Cooley (DC), Washington, DC.

For Sona Andresian, Movant: Patrick W Pendley, Pendley Baudin & Coffin, Plaquemine, LA.

For Allen Feldman, Mark D Alger, Tae Yi, Essex Lacy, Art Kleppen, Movants: Tracy W Houck, Houck & Riggle, Ruston, LA.

**Judges:** Joseph H.L. Perez-Montes, United States Magistrate Judge. JUDGE HICKS.

**Opinion by:** Joseph H.L. Perez-Montes

## Opinion

### MEMORANDUM ORDER

Potential class plaintiffs filed Motions to Consolidate (Docs. 25, 26, 28, 29) similar cases against Defendant CenturyLink, Inc. and related Defendants for violations of the Securities Exchange Act of 1934. For the following reasons the Motions to Consolidate (Docs. 25, 26, 28, 29) are GRANTED.

### I. **Background**

Before the Court is a complaint **[*3]** filed pursuant to the

*Securities Exchange Act of 1934 (15 U.S.C. § 78aa, et seq.)* by Plaintiff Benjamin Craig ("Craig"), individually and on behalf of all others similarly situated. The named Defendants are CenturyLink, Inc. ("CenturyLink") (its common stock is traded on the New York Stock Exchange ("NYSE")), Glen F. Post III ("Post") (the CEO and President of CenturyLink Inc. at all relevant times), and R. Stewart Ewing, Jr. ("Ewing") (CFO, Executive Vice President, and Assistant Secretary of CenturyLink Inc. at all relevant times).

Craig alleges a federal securities class action on behalf of all investors who purchased or otherwise acquired CenturyLink common stock between March 1, 2013 and June 16, 2017 (the "Class Period"). Craig alleges that CenturyLink publicly issued materially false and misleading statements and omitted material facts regarding its compliance with applicable laws and regulations, causing its stock prices to artificially inflate. Craig alleges that he and other investors suffered significant losses and damages when the truth as to CenturyLink's unlawful business practices emerged and its stock prices fell.

Craig seeks certification of the class action, appointment of himself as class **[*4]** representative, appointment of his attorney as lead counsel, a jury trial, compensatory damages, costs (including expert fees), attorney fees, and injunctive relief.

This case was originally filed in the Southern District of New York (Doc. 1). On stipulation of the parties and a finding that the case could have originally been brought in the Western District of Louisiana, Monroe Division, the case was ordered transferred to the Western District of Louisiana (Doc. 8).

A related stockholder suit, Scott v. CenturyLink, No. 17-1033 (W.D. La.) ("Scott"), was filed in the United States District Court for the Western District of Louisiana, Monroe Division. That case is also a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired CenturyLink securities between March 1, 2013 and June 19, 2017. In Scott, Plaintiff Don J. Scott ("Scott") named as Defendants CenturyLink, Post, Ewing, and David D. Cole ("Cole"). Scott also seeks certification of his suit as a class action, appointment of Scott as class representative, appointment of Scott's counsel as Class Counsel, damages, costs, attorney fees, and injunctive relief (Doc. 1).

Two other stockholder **[*5]** suits have been filed against CenturyLink in the Western District of Louisiana

(Monroe Division): Thummeti v. CenturyLink, et al., 3:17-cv-01065 (W.D. La.); Barbree, et al. v. Bejar, et al., No. 3:17-cv-01177 (W.D. La.). Barbree has since been voluntarily dismissed (Barbree, No. 3:17-cv-01177, Doc. 3). Thus, to date, there are three stockholder actions against CenturyLink in the Western District of Louisiana.

In August 2017, KBC Asset Management NV ("KBC"), a potential class plaintiff, filed a "Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel" (Doc. 25). KBC asked the Court to consolidate the Craig and Scott cases.

Similar motions were filed by other potential class plaintiffs, the Police and Fire Retirement System of the City of Detroit, and the Laborer's Pension Trust Fund—Detroit and Vicinity (Doc. 26), the State of Oregon (Doc. 28), and Amalgamated Bank, as Trustee for the Long View Collective Investment Fund (Doc. 29).

## II. Law and Analysis

According to *15 U.S.C. § 78u-4(a)(3)(B)(ii)*, "[i] f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate **[*6]** those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph."

Consolidation of cases is governed by *Fed. R. Civ. P. 42(a)*, which states:

> If actions before the court involve a common question of law or fact, the court may:
>
> > (**1**) join for hearing or trial any or all matters at issue in the actions;
> >
> > (**2**) consolidate the actions; or
> >
> > (**3**) issue any other orders to avoid unnecessary cost or delay.

The Fifth Circuit has urged district judges "to make good use of *Rule 42(a)* in order to expedite . . . trial and eliminate unnecessary repetition and confusion," even when opposed by the parties. *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972, 549 F.2d 1006, 1013*

2017 U.S. Dist. LEXIS 174512, *6

*(5th Cir. 1977)* (quoting *Gentry v. Smith, 487 F.2d 571, 581 (5th Cir. 1973))*; see also *Parker v. Hyperdynamics Corp., 126 F. Supp. 3d 830, 835 (S.D. Tex. 2015)*. Consolidation is permitted "as a matter of convenience and economy in administration," *Shafer v. Army & Air Force Exch. Serv., 376 F.3d 386, 394 (5th Cir. 2004)*, op. clarified, *2004 U.S. App. LEXIS 28846, 2004 WL 2107672 (5th Cir. 2004)* (quoting *Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496, 53 S. Ct. 721, 77 L. Ed. 1331 (1933))*, though not "if it would prejudice the rights of the parties," *St. Bernard General Hospital, Inc. v. Hospital Service Asso., 712 F.2d 978, 989 (5th Cir. 1983)*, cert. den., *466 U.S. 970, 104 S. Ct. 2342, 80 L. Ed. 2d 816 (1984)*.

There are five factors to consider in determining whether consolidation **[*7]** is appropriate: (1) same court; (2) common parties; (3) common questions of law or fact; (4) risk of prejudice or confusion versus risk of inconsistent adjudications; and (5) judicial economy. *Frazier v. Garrison I.S.D., 980 F.2d 1514, 1531 (5th Cir. 1993)*; *Parker, 126 F. Supp. 3d at 835*.

First, all three cases are in the same court, the United States District Court for the Western District of Louisiana, Monroe Division. Second, all of the plaintiffs are CenturyLink stockholders. The cases involve the same core Defendants: CenturyLink, Post, and Ewing. Scott v. CenturyLink, No. 3:17-1033 names one additional defendant, Cole, an Executive Vice President of CenturyLink. Third, all three cases involve common questions of law or fact (they allege similar complaints) — whether Defendants fraudulently inflated their stock prices to the detriment of Plaintiff stockholders, in violation of the Securities Exchange Act of 1934. Fourth, there is little risk of confusion between the different Plaintiff stockholders, but there is a risk of inconsistent adjudications in different courts. Finally, it would clearly be more economical to decide all three cases together than to do so separately, since they all involve the same issues of law and fact. All relevant factors favor consolidation

**[*8] III. Order**

Accordingly, IT IS ORDERED that Movants' Motions to Consolidate (Docs. 25, 26, 28, 29) are GRANTED and the following cases are consolidated: Craig v. CenturyLink, No. 17-1005 (LEAD CASE); Scott v. CenturyLink, No. 17-1033; Thummeti v. CenturyLink, No. 17-1065.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 19th day of October, 2017.

/s/ Joseph H.L. Perez-Montes

Joseph H.L. Perez-Montes

United States Magistrate Judge

**End of Document**

Positive
As of: October 30, 2018 2:33 PM Z

# *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative ERISA Litig.)*

United States District Court for the Southern District of Texas, Houston Division

February 7, 2007, Decided ; February 7, 2007, Filed

MDL-1446, CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES, CIVIL ACTION NO. H-04-0088, CIVIL ACTION NO. H-04-0087, CIVIL ACTION NO. H-03-5528

**Reporter**
2007 U.S. Dist. LEXIS 8812 *

In Re Enron Corporation Securities, Derivative "ERISA" Litigation; MARK NEWBY, ET AL., Plaintiffs VS. ENRON CORPORATION, ET AL., Defendants, MDL-1446; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, Plaintiffs, VS. MILBANK, TWEED, HADLEY & McCLOY, ET AL., Defendants, CIVIL ACTION NO. H-04-0088; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Individually and on behalf of all others similarly situated, Plaintiffs, VS. ROYAL BANK OF CANADA, ROYAL BANK HOLDING INC., ROYAL BANK DS HOLDING INC., RBC DOMINION SECURITIES INC., RBC DOMINION SECURITIES LTD., RBC HOLDINGS (USA) INC., AND RBC DOMINION SECURITIES CORP., Defendants, CIVIL ACTION NO. H-04-0087; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Individually and on behalf of all others similarly situated, Plaintiffs, VS. TORONTO-DOMINION BANK, ET AL., Defendants, CIVIL ACTION NO. H-03-5528

**Subsequent History:** Motion granted by *Newby v. Enron Corp. (In re Enron Corp. Sec.), 2007 U.S. Dist. LEXIS 17374 (S.D. Tex., Mar. 12, 2007)*

**Prior History:** *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.), 2007 U.S. Dist. LEXIS 5111 (S.D. Tex., Jan. 24, 2007)*

## Core Terms

consolidation, cases, discovery, lead plaintiff, parties, Securities, financial institution, transactions, motion to consolidate, damages, allegations, issues, prepay, suits, class certification, motion to dismiss, participated, contends, insists, asserting, witnesses, jury confusion, pending motion, apportionment, Non-parties, appointment, offering, Replies, motions, argues

**Counsel: [*1]** For The Regents of the University of

California, Plaintiff: Roger B Greenberg, LEAD ATTORNEY, Schwartz Junell et al, Houston, TX.

For Nathaniel Pulsifer, Plaintiff: Matthew L Tuccillo, LEAD ATTORNEY, Shapiro Haber, Boston, MA.; Roger B Greenberg, LEAD ATTORNEY, Schwartz Junell et al, Houston, TX.; Thomas G Shapiro, Shapiro Haber et al, Boston, MA.

For Milbank Tweed Hadley & McCloy LLP, Defendant: David M Morris, Julie E Kamps, William G McGuinness, LEAD ATTORNEYS, Fried Frank Harris, New York, NY.; Michael J Marando, Rodger Hurley, LEAD ATTORNEY, Fried Frank Harris Shriver, New York, NY.

For Andrews & Kurth LLP, Defendant: Murray J Fogler, LEAD ATTORNEY, McDade Fogler et al, Houston, TX.

For The Goldman Sachs Group Inc, Defendant: Charles G King, III, LEAD ATTORNEY, King & Pennington LLP, Houston, TX.; Max Gitter, LEAD ATTORNEY, Cleary Gotlieb et al, New York, NY.

For Goldman Sachs & Co, Defendant: Charles G King, III, LEAD ATTORNEY, King & Pennington LLP, Houston, TX.; Lewis J Liman, Max Gitter, LEAD ATTORNEYS, Cleary Gottieb et al, New York, NY.

**Judges:** MELINDA HARMON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MELINDA HARMON

## Opinion

OPINION AND ORDER

Pending before **[*2]** the Court in H-01-3624 is the

2007 U.S. Dist. LEXIS 8812, *2

*Newby* Financial Institution Defendants' [1]

 motion to consolidate for trial the *Newby* action and two others, H-04-0087 (the "RBC Action") and H-03-5528 (the "RBS/TD Action"), pursuant to *Fed. R. Civ. P. 42(a)* and Local Rule 7.6 (instrument # 4989). [2]


In addition, Lead Plaintiff **[*3]** the Regents of the University of California ("Lead Plaintiff" or "the Regents") has filed a motion to consolidate *Newby* and H-04-0088 for trial (# 69 in H-04-0088 (the "Goldman Sachs Action"); # 5022 in H-01-3624).

## I. Standard for Consolidation under *Federal Rule of Civil Procedure 42(a)*

*Rule 42(a)* provides,

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The district court has broad discretion in determining whether two or more actions have common questions of law and fact and whether consolidation would save time and money. *Mills v. Beech Aircraft Corp., 886 F.2d 758, 761-62 (5th Cir. 1989).* The district court may order consolidation even where the parties are opposed to it. *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972 v. Eastern Air Lines, Inc., 549 F.2d 1006, 1013 ( 5th Cir. 1977).* The court's **[*4]** determination may also "take precedence over the desires of counsel." *Id. at 1014.*

Factors for the district court to consider in deciding if consolidation is appropriate include (1) whether the actions are pending before the same court, (2) whether

common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately. *Rodriguez v. Torres, Nos. Civ. B-04-036, B-04-037, and B-04-043, 2004 WL 2952612, *1 (S.D. Tex. Nov. 22, 2004),* citing *Frazier v. Garrison I.S.D., 980 F.2d 1514, 1531-32 (5th Cir. 1983)*; *Russo v. Alamosa Holdings, Inc.,* No. Civ. A. 5:03-CV-312-C, et al., 2004 WL 579378, *1 (N.D. Tex. Feb. 27, 2004). Another factor is whether the cases are at the same stage of preparation for trial. *St. Bernard General Hosp., Inc. v. Hospital Service Assoc. Of New Orleans, Inc., 712 F.2d 978, 990 (5th Cir. 1983),* **[*5]** *cert. denied, 466 U.S. 970, 104 S. Ct. 2342, 80 L. Ed. 2d 816 (1984).*

The Fifth Circuit pronounced in *Shafer v. Army & Air Force Exchange Serv., 376 F.3d 386, 395 (5th Cir. 2004),* op. clarified on other grounds, Nos. *376 F.3d 386, 2004 WL 672 (5th Cir. 2004),*

> The Supreme Court and this court, however, have stressed frequently the importance of not intermingling consolidated claims . . . . *See, e.g., Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97, 53 S. Ct. 721, 77 L. Ed. 1331 (1933)* ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge suits into a single cause or change the rights of the parties."); Frazier . . . [,] 980 F.2d [at 1532] ("[A]ctions maintain their separate identity even if consolidated."); *McKenzie v. U.S., 678 F.2d 571, 574 (5th Cir. 1982)* ("[C]onsolidation does not cause one civil action to emerge from two."). Instead, courts have emphasized that following consolidation, it is vital that "the two suits retain their separate identities" even to the point that each requires "the entry of a separate judgment." *Miller v. U.S. Postal Service, 729 F.2d 1033, 1036 (5th Cir. 1984).* **[*6]** This strict segregation of merged cases is necessary to prevent consolidation from "depriv[ing] a party of any substantial rights that he may have had if the actions had proceeded separately." *Id.*

*See also Harcon Barge Co. V. D & G Boat Rentals, Inc., 746 F.2d 278, 287 (5th Cir. 1984)*(Consolidation may not deprive the parties of any substantive rights they may have had if the actions had not been consolidated,

---

[1] The *Newby* Financial Institution Defendants bringing this motion are Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC), Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corp.), (collectively "CSFB"), and Merrill Lynch & Co., Inc. And Merrill Lynch, Pierce, Fenner & Smith, Inc. (collectively, "Merrill").

[2] The Court has previously granted an amended motion of Barclays PLC, Barclays Bank PLC and Barclays Capital Inc. (collectively, "Barclays") to join previously filed papers (# 5302), relating in part to # 4989, so it is also a Movant here.

but had proceeded separately.), *cert. denied, 479 U.S. 930, 107 S. Ct. 398, 93 L. Ed. 2d 351 (1986);* *In re Excel Corp., 106 F.3d 1197, 1201 (5th Cir. 1997)*("[C]onsolidation 'does not merge suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'"), *cert. denied, 522 U.S. 859, 118 S. Ct. 159, 139 L. Ed. 2d 104 (1997).*

## II. The Motions to Consolidate

### A. CSFB, Merrill, and Barclays Defendants' Motion to Consolidate

The CSFB, Merrill and Barclays Defendants assert that *Newby,* H-04-0087, and H-03-5528 are each class actions filed on behalf of the same class alleged in *Newby* and asserting virtually identical facts, claims, and legal theories. They further point out that Defendants **[*7]** in all three actions have participated in all the discovery in *Newby,* had an opportunity to question all the witnesses deposed and had access to all the documents in the document depository.

Defendants first emphasize that all three actions "are inextricably linked." Their complaints allege the same overarching theory of scheme liability to defraud purchasers of Enron securities and request the same damages arising from that scheme.

Second, the three suits involve common questions of fact. They claim that the Bank Defendants engaged in or participated in the implementation of manipulative or deceptive devices to inflate Enron's profits and hide debt on its financial sheets and that they participated in a scheme to defraud or a course of business that operated as a fraud or deceit on purchasers of Enron securities. Indeed the complaints in H-04-0087 and H-03-5528 incorporate by reference all of the allegations in the *Newby* complaint.

The three actions also share common questions of law, pleading the same scheme theory and basing their claims on the same statutes, i.e., *§§ 10(b)* and *20(a)* of the Securities Exchange Act of 1934 and *Rule 10b-5.*

Fourth, argue the CSFB, Merrill **[*8]** and Barclays Defendants, the three suits assert the same damages theory, i.e., joint and several liability for all damages flowing from the alleged scheme as a whole.

Defendants maintain that the provisions of the Private

Securities Litigation Reform Act of 1995 (the "PSLRA") addressing apportionment of responsibility, special interrogatories for the jury, and rights of contribution buttress the argument for consolidation of the three suits for trial. *See* # 4836 at 8-17. Separate trials could result in inconsistent conclusions about damages or apportionment of responsibility for damages.

Lead Plaintiff supports the motion to consolidate H-03-5528 and H-04-0087 with *Newby* for trial as long as the consolidation does not change the Court's prior ruling that H-04-0087 was a "new case" governed by the extended statute of limitations in the Sarbanes-Oxley Act, *28 U.S.C. § 1658(b)*(extending statute of limitations for private securities fraud suits to shorter of two years from date of discovery or five years from date of transaction). *In re Enron Corp. Sec. Litig., No. H-04-0087, 2005 U.S. Dist. LEXIS 41240, *45 (S.D. Tex. Dec. 22, 2005)*("The **[*9]** Court finds that the claims here were not time-barred under *Lampf,* [3] when Sarbanes-Oxley was enacted nor are they time barred under Sarbanes-Oxley . . . ."). [4]

---

[3] *Lampf, Playa, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991).*

[4] The *Newby* action was filed on October 22, 2001 against Enron and some of its officers and directors. After appointment of Lead Plaintiff and Lead Counsel, a consolidated complaint adding inter alia claims against CSFB, Merrill, and several financial institutions, was filed on April 8, 2002. An amended consolidated complaint was filed on May 14, 2003, again adding defendants, but not the Royal Bank of Scotland Group plc, National Westminster Bank Plc, Greenwich NatWest Structured Finance inc. (Dissolved), Greenwich NatWest Ltd., and Campsie Ltd. (collectively, "RBSG").

On December 2, 2003 the Regents filed a new action against RBSG and Toronto Dominion Bank, H-03-5528. RBSG emphasizes that RBSG was not sued until more than two years after the commencement of *Newby* and some twenty months after most of the principal defendants had been named.

On January 9, 2004 the Regents filed another action, H-04-0087, against another new participant, the Royal Bank of Canada and affiliates (collectively, "RBC"), which included Royal Bank of Canada, Royal Bank Holding Inc., Royal Band DS Holding, Inc., RBC Dominion Securities Ltd., RBC Dominion Securities, Inc., RBC Holdings (USA) Inc., and RBC Dominion Securities Cor. (collectively, the "RBC Defendants" or "RBC"). The Court has denied RBC's motion to dismiss (# 16, 43) in this action.

**[\*10]  B. Lead Plaintiff's Motion to Consolidate H-04-0088 with *Newby* for Trial**

The only claim still pending against Goldman Sachs, the sole remaining defendant in H-04-0088, is brought under *§ 11* of the Securities Act of 1933, based on the same offering as a *§ 11* claim in *Newby* against Jeffrey Skilling and other individuals. Lead Plaintiff urges that having two trials based on the same financial statements and the same registration statement with many of the same witnesses on behalf of the same class of plaintiffs would be a waste of judicial and litigant resources.

**III. Opposition**

**A. Opposition to CSFB, Merrill, and Barclays Defendants' Motion**

**1. RBSG's Opposition to Consolidation (# 5094)**

Defendants the Royal Bank of Scotland Group plc, National Westminster Bank Plc, Greenwich NatWest Structured Finance inc. (Dissolved), Greenwich NatWest Ltd., and Campsie Ltd. (collectively, "RBSG") [5]

concede that there are questions of fact and law in common and tie-ins among the cases. Nevertheless they contend that the pleading against RBSG is "a de facto amendment to the governing *Newby* complaint, with Regents filing against RBSG under a new **[\*11]** docket number solely as a stratagem to evade certain time bar implications by posturing the claim as a 'new proceeding' to get the benefit of lengthened periods of limitations and repose under the intervening Sarbanes-Oxley Act." # 5090 at 4. [6]

RBSG emphasizes that unlike in *Newby,* in the Regents' action against RBSG and Toronto Dominion Bank, [7]

H-03-5528, filed on December 2, 2003, the Regents did not seek appointment of itself as Lead Plaintiff nor

appointment of Lerach Coughlin as Lead Counsel under the PSLRA. *15 U.S.C. § 78u-4(a) (3)(B).* Nor did the Regents pursue the public notice requirements that would have been applicable under the PSLRA if it were asserting a new and different claim. *See 15 U.S.C. § 78u-4(a) (3) (A)* (public notice not required for additional **[\*12]** actions "asserting substantially the same claim or claims"). Instead the Regents merely described the case as involving claims already part of *Newby.*

RBSG Defendants oppose the motion to consolidate (# 4989) on the grounds that the case against them, H-03-5528, has been on a vastly different schedule for over two years from that in the *Newby* action against CSFB and Merrill. Still pending in H-03-5528 are motions to dismiss filed by Toronto Dominion (# 17) and RBSG (# 42). [8]

The statutory stay on discovery under *15 U.S.C. § 78u-4(b)(3)(B)* has resulted in limited and incomplete discovery in H-03-5528. Moreover, this fall Lead Plaintiff requested that the Court defer ruling on these and other motions until several weeks after the deposition of Andrew Fastow (# 5057 in H-01-3624). Furthermore the Court entered an agreed order setting a schedule for expert discovery **[\*13]** for the consolidated and coordinated cases that is different from the schedule governing the *Newby* case against the original financial institution defendants. The relevant expert discovery schedule begins as to RBSG only upon completion of fact discovery. Furthermore, no class certification has been determined with the participation of, and related to claims against, RBSG. In addition, motions for summary judgment have been filed in *Newby,* which is set for trial on April 9, 2007. Moreover, Lead Plaintiff's Trial Plan filed in *Newby* (# 4729) did not include RBSG. Consolidation now would seriously and prejudicially undermine any trial preparation that could be made by RBSG. RBSG contends that the procedural circumstances raised by Movants (apportionment/contribution issues, special jury interrogatories, etc.) cannot overcome the unfairness and prejudice to RBSG that will result from consolidation. Evidence against RBSG can still be considered by the jury even in the absence of RBSG from the trial.

---

[5] RBSG Defendants are named Defendants, along with the Toronto Dominion entities, in H-03-5528.

[6] Defendants have challenged this stratagem in a motion to dismiss, currently pending.

[7] Although some parties hyphenate "Toronto-Dominion," because that bank does not do so, the Court follows its model.

---

[8] RBSG states that its motion addresses various time bars, including whether the claims against it should be regarded as part of the *Newby* proceeding or as an entirely different proceedings, as well as the absence of a primary violation.

**[*14]  2. Non-Party** [9]

Toronto Dominion's Opposition to Consolidation (# 5091)

Non-parties the Toronto Dominion Bank, Toronto Dominion Holdings (U.S.A.), Inc., TD Securities Inc., and TD Securities (USA) LLC's (f/k/a Toronto Dominion (Texas)) (collectively "Toronto Dominion") also focus upon the different stage of litigation of H- 03-5528. Noting that the only claim against Toronto Dominion is under the 1934 Act based on its participation in six prepaid commodity swaps with Enron. Discovery has been stayed under the PSLRA by Toronto Dominion's pending motion to dismiss. Though a putative class action, no motions have been made by plaintiff as to a lead plaintiff, lead counsel, or class certification.

Contending that the motion to consolidate is premature, Toronto Dominion maintains that **[*15]** its motion to dismiss must be resolved before the court can consider the motion to consolidate and urges that its motion to dismiss is meritorious, especially in the context of the Court's ruling on Barclays' motion for partial summary judgment on the pleadings. # 4874, entered 7/20/06, also available at *In re Enron Corp. Sec. Litig., 439 F. Supp. 2d 692 (S.D. Tex. 2006)*. The Court is reconsidering on summary judgment whether a primary violation of *§ 10(b)* and *Rule 10b-5*, as opposed to mere nonactionable aiding and abetting, has been stated against Barclays because Lead Plaintiff never had an opportunity to replead after intervening and relevant cases with more specific pleading requirements were issued.

Even if the Court entertains the motion to consolidate now, like RBSG, Toronto Dominion contends that it should be denied because the more advanced procedural posture of *Newby* would cause undue prejudice to Toronto Dominion. *Mills v. Beech Aircraft Corp., 886 F.2d at 762*; *St. Bernard Gen'l Hosp., Inc. v. Hospital Serv. Ass'n of New Orleans, Inc., 712 F.2d 978, 989-90 (5th Cir. 1983)*.

Toronto Dominion additionally argues that **[*16]** *Newby* and H-03-5528 do not have sufficiently common issues of fact and law to support consolidation. The factual allegations of specific wrongdoing, though falling under the same statute and relating to the same *Ponzi*

scheme, are not identical to those against other financial institutions in *Newby*, insists Toronto Dominion. While Lead Plaintiff has charged the financial institution Defendants in *Newby* with eight or nine different kinds of transactions, it asserts only one kind of transaction against Toronto Dominion, the prepay transactions, specifically the December 1998 Truman, Jethro, Alberta, and London prepays, none of which will be at issue in the trial on *Newby* and none of which overlap with the *Newby* transactions. Nor are the counterparties [10]

in Toronto Dominion's prepay transactions also defendants in *Newby* because they have all settled, been dismissed or were never sued in *Newby*. Toronto Dominion maintains that there would be no common documents, facts, witness or other evidence between the two suits. Thus consolidation would render the litigation unmanageable and unfairly prejudice the defendants.

**[*17]**  Toronto Dominion further contends the claims are different. While the Toronto Dominion/RBS action brings only a single *Rule 10b-5* claim under the 1934 Act, *Newby* also asserts claims under *§§ 11* and *15* of the 1933 Act, while the *Goldman Sachs* action alleges only a *§ 11* claim. Such claims require proof of different elements, especially proof of scienter for the *§ 10(b)* claims. Trying the claims together risks having the jury confused or ignoring the requirement of scienter in the *§ 10(b)* claims.

Toronto Dominion also argues that the legal issues are different, as evidenced by Lead Plaintiff's conditioning its consent on the Court's prior ruling (# 43 at 31-36 in H-04-0087) that Sarbanes-Oxley's extended statute of limitations applies to the claims against RBC, and that ruling should also govern the claims against Toronto Dominion in H-03-5528. Toronto Dominion has asserted in its pending motion to dismiss that the shorter *Lampf* statute of limitations applies and the claims are time-barred by the statute of repose; it objects to any automatic application of the ruling in the RBC case to H-03-5538, without court review of its motion to dismiss, which it is confident will **[*18]** prevail. It also contends that in an earlier ruling this Court suggested that if

2007 U.S. Dist. LEXIS 8812, *18

consolidation were granted, the pre-Sarbanes-Oxley periods of limitation would apply to claims against RBC as well as the *Newby* defendants. *See* # 1999 at 54-55 in *Newby* ("[W]e doubt that Congress intended that courts would apply different sets of substantive and procedural rules to groups of plaintiffs asserting identical claims in a single action . . . .")(*quoting Gerber v. MTC Electronic Technologies Co., Ltd., 329 F.3d 297, 309-10 (2d Cir.), cert. denied, 540 U.S. 966, 124 S. Ct. 432, 157 L. Ed. 2d 311 (2003)).*

In addition, Toronto Dominion points out that *Newby* and H-03-5528 involve different parties and therefore consolidation may cause prejudice. At the time that Toronto Dominion filed its opposition, *Newby* had over fifteen defendants, including Arthur Andersen, Vinson & Elkins, and former Enron executives, while the cases against Toronto Dominion, RBS, RBC and affiliates, and Goldman Sachs had one defendant or limited defendants and their roles were as "minor participants" for whom consolidation would mean throwing them in with persons convicted of Enron-related fraud, creating **[\*19]** jury confusion, and causing Toronto Dominion undue prejudice.

Toronto Dominion disagrees with the Financial Institutions' claim that the PSLRA's rules on apportionment, jury interrogatories and contribution mean that the cases must be tried together, that separate trials bring "the virtual certainty" of inconsistencies, and that separate trials would be a waste of judicial and party resources. Neither the common law nor federal securities laws require that a plaintiff sue all alleged joint tortfeasors in a single suit. Not only is the assertion of possible jury verdict inconsistencies too speculative and remote to justify consolidation, but there is no requirement of consistency among verdicts as long as each verdict is supported by the evidence. *See, e.g., Borel v. Fibreboard Paper Prod. Corp., 493 F.2d 1076, 1094 (5th Cir. 1973)*("It has long been the rule that consistency in general verdicts is not required"; finding that internal inconsistencies in verdicts are permissible if evidence can be found to support each finding); *United States v. Espinosa-Cerpa, 630 F.2d 328, 332 (5th Cir. 1980)*(inconsistencies are permissible "even among multiple defendants **[\*20]** tried together on essentially the same evidence and charges" since "each verdict or conviction is to be reviewed wholly independently of the others"). Morever, insists Toronto Dominion, conservation of resources may be a benefit of pre-trial consolidation, but at the trial stage, the concern is focusing the jury's attention on the specific elements and specific claims against specific

defendants and in minimizing the potential for jury confusion. Lumping numerous claims and parties that have nothing to do with one another runs a serious risk of jury confusion.

### 3. Opposition of the RBC Defendants (# 5094)

Royal Bank of Canada, Royal Bank Holding Inc., Royal Bank DS Holding, Inc., RBC Dominion Securities Ltd., RBC Dominion Securities, Inc., RBC Holdings (USA) Inc., and RBC Dominion Securities Cor. (collectively, the "RBC Defendants" or "RBC") also oppose the Financial Institutions' motion to consolidate for trial. Complaining that the Regents waited almost twenty-seven months after the filing the *Newby* action before suing RBC in a complaint dated January 9, 2004 so that they are substantially behind Movants procedurally and in discovery with respect to trial preparation, **[\*21]** [11]

RBC maintains that trying the four cases together would be "unwieldy, confusing and prejudicial and inevitably would result in substantial delay in *Newby*, set for trial in April, since they do not have a trial date yet. RBC further asserts that in light of the Court's order, # 4874, there is no viable claim that RBC is a primary violator of the securities laws, and the Court should resolve the motions pending before it considers consolidation. RBC urges that consolidation is not warranted merely because claims are brought under the federal securities laws; the real issue is whether facts can be proven at trial to establish with evidence every element of each cause of action charged with respect to each defendant. RBC basically reiterates the reasons given by other parties to oppose the motion for consolidation, including that the actions are in different procedural postures, involve different transactions, different facts, different witnesses, jury confusion if tried in one mass, complicated, long trial, delay in the *Newby* trial, and application of the shorter *Lampf* statute of limitations (one year after discovery of wrongdoing or three years after the unlawful transaction **[\*22]** occurred), in effect before Sarbanes-Oxley, which would

_____

[11] Emphasizing that the *Newby* action is on an entirely different track than H-04-0087, RBC highlights the facts that the Regents waited until October 2006 to file a motion for class certification; the Court has granted an agreed motion (# 112, 115) to extend the response deadline to February 25, 2007, and the reply deadline to April 4, 2007; and that a hearing on class certification would be required. Expert discovery has not commenced. RBC has a pending motion to dismiss. Unlike *Newby*, this action has not reached summary judgment stage.

result in dismissal of claims arising from all but one transaction in which RBC was involved. RBC also argues that the Court's earlier ruling on the statute of limitations defense in the RBC case cannot be a bargaining chip for Lead Plaintiff's consent to the consolidation. Regarding Lead Plaintiff's conditional consent to consolidation, RBC contends that Lead Plaintiff did not add RBC as a defendant in *Newby* so as to avoid a limitations bar and dismissal of RBC; now Lead Plaintiff recognizes that consolidation of this action into *Newby* would reinvigorate RBC's arguments that the claims against RBC are time-barred so Lead Plaintiff cynically offers up its consent to consolidation in return for stripping RBC of its opportunity to full adjudicate the limitations issues. RBC asks the Court to rule on its pending motion for judgment on the pleadings (# 81) before considering consolidation.

### [*23] 4. Opposition of Goldman Sachs & Co. (# 85 in H-04-0088)

Insisting that consolidation would be inconsistent with the Court's certification of a "scheme class" in *Newby,* Goldman Sachs objects that H-04-0088 disclaims any allegations of fraud while *Newby* is "about nothing but fraud." # 85 at 1. The *Ponzi* scheme allegations against those in *Newby* have nothing to do with the single claim against Goldman Sachs, as evidenced by the express language of the Complaint, filed on February 6, 2004: P 92 states that "plaintiffs <u>expressly exclude and disclaim</u> any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the 1933 Act." Plaintiff Nathaniel Pulsifer claims instead that a single Registration Statement and Prospectus for a single, August 1999 underwriting of $ 255 million of Enron Notes exchangeable into common stock of Enron Oil & Gas contained false and misleading statements for which underwriter Goldman Sachs is strictly liable under *Section 11* of the Securities Act for failure to conduct appropriate due diligence. There is no allegation [*24] of a fraudulent scheme. The Trial Plan (# 4729) addressed the fraudulent scheme that does not apply to the non-fraud claim against Goldman Sachs in H-04-0088. Thus consolidation would be improper because the two cases do not share common issues of law, fact, witnesses, or other proof. It further charges that Movants have failed to meet their burden of proof to show common issues of law or fact between the cases, no less a predominance of common issues. Goldman Sachs insists that the documents recently submitted by

the Regents and others relating to the sentencing of Andrew Fastow, including Fastow's declaration (# 5048), which does not mention Goldman Sachs, reflect its non-involvement in the *Newby* scheme.

Goldman Sachs further contends that it would be greatly prejudiced and its constitutional right to a fair trial violated by consolidation. The spillover effect of evidence of fraud at trial, even though the evidence would be inadmissible as to Goldman Sachs, would irreparably taint any trial against Goldman Sachs. Goldman Sachs never had an opportunity to oppose any class certification in violation of its due process rights; the recently filed motion for class certification [*25] in H-04-0088 identifies a class much narrower than the class in *Newby* and is composed only of those that purchased Exchangeable Notes between August 1999 and November 2001.

As for practical concerns, *Pulsifer,* filed two years after *Newby,* could not be ready for trial with *Newby*. The Regents only recently filed a motion to be appointed lead plaintiff (for which appointment Goldman Sachs insists it is unqualified because it did not purchase any Exchangeable Notes), as well as the motion for consolidation. Fact discovery has just begun and expert discovery is months away.

### B. Replies and Sur-replies

### 1. Lead Plaintiff's Replies to RBC (# 5103 in *Newby*), Non-parties the Toronto Dominion Defendants (# 5104), and RBS (# 5105).

In identically worded replies, Lead Plaintiff responds that it believes Defendants should be ready to try their actions with *Newby* by April 2007 and that it is willing to shorten procedural deadlines to expedite discovery. If the Court decides against consolidation, it requests that the Court maintain the current April 9, 2007 trial date for *Newby.*

### 2. Lead Plaintiff's Reply to Goldman Sachs (# 5135 in *Newby* [*26] )

Insisting that non-fraud *§ 11* claims regarding securities offerings are already part of the *Newby* case so consolidation will not undermine the certification of the class, Lead Plaintiff points out that *Newby* Plaintiffs are pursuing a *§ 11* claim against Jeffrey Skilling and Richard Causey based on the same offering as the *§ 11*

claim against Goldman Sachs. [12]

Nathaniel Pulsifer, the proposed class representative in H-04-0088, has previously been certified as a class representative in *Newby* based on his purchase of the 7% Exchangeable Notes. Lead Plaintiff argues that since the same financial statements and the same registration statement for the offering are at issue in both cases, there is no reason not to try them at the same time. If the Court disagrees, Lead Plaintiff requests that the trial date for the *Newby* action remain on April 9, 2007.

 **[*27]** As for any prejudice that might result from introduction of evidence not admissible against Goldman Sachs, Lead Plaintiff insists that the Court can easily instruct the jury about the proper scope and use of the evidence.

As for the statutory discovery stay, the Court can issue a decision on Toronto Dominion's motion to dismiss after consolidation with *Newby* for trial.

Lead Plaintiff further points out that the scheme allegations in *Newby* have been incorporated by reference into the other complaints. All Defendants participated in the same scheme, even if in different transactions. Many of the crucial transactions involved one or more banks and one or more of the opposed Defendants. The nature of the scheme allegations, moreover, ties these transactions to one another and to other Defendants in *Newby.* Thus the scheme allegations and the need for a proportionate allocation finding makes a single trial the most expedient means for resolving claims against Defendants. (Moreover even without consolidation, there would not be simple, pared-down, independent suits because evidence would inevitably have to be presented about the involvement of multiple parties, transactions, **[*28]** and financial disclosures.) Whether tried together or separately, a jury is required under the PSLRA to determine proportionate responsibility of all parties. Efficiency and judicial economy will thus be served by consolidation. Furthermore, multiple trials could produce inconsistent

conclusions about the apportionment of responsibility or the amount of damages for which any party is responsible; conflicting judgments could prove problematic if new trials for contribution are required to resolve them, causing additional litigation on the same issues.

### 3. *Newby* Financial Institution Defendants' Reply (# 5124)

Financial Institution Defendants insist that all the objections raised in opposition to their motion are insufficient to deny consolidation. First, they insist the same facts regarding the conduct of those Defendants, as well as of other Defendants, will be presented at every trial involving the alleged scheme. The *Newby* Financial Institution Defendants, RBC, Toronto Dominion and RBS will each present that evidence in order to satisfy the allocation of fault provisions of the PSLRA, *15 U.S.C. § 78u-4(f)(3).* Thus if any Defendant proceeds **[*29]** to trial, it is clearly in the interests of judicial economy to present that mountain of evidence once, to one jury, in one trial.

Second all the cases involve the same claim for damages based on overlapping transactions that are purportedly part on the single scheme. For example, in *Newby* and H-03-5528, the complaints assert that Enron's financial statements were materially misstated as a result of the prepay transactions. Toronto Dominion, RBS, and Credit Suisse First Boston allegedly participated in such prepay transactions, even if not the same ones: the same disclosures are at issue, implicating the same accounting rules, the same review by Arthur Andersen, the same actions by Enron management, and the same claim for damages, all supporting consolidation.

Third, consolidation will not prejudice these parties because each had access to and participated in all of the discovery in *Newby* from all parties, with the only remaining discovery to be taken from RBC, Toronto Dominion, and RBSG (which is also needed for *Newby*), and given that so much discovery has been taken, they will not be prejudiced by consolidation. This Court can fashion an expedited schedule to accommodate **[*30]** discovery needs of all the parties prior to trial.

Financial Institution Defendants also observe that Lead Plaintiff's theory of damages is identical for all remaining financial institution defendants in the three cases; Lead Plaintiff alleges that all are jointly and severally liable for all damages that result from the alleged scheme, including damages caused by transactions in which a

---

[12] Financial Institutional Defendants point out that all claims for violations of §§ 11 and 15 of the Securities Act of 1933 asserted in *Newby* against the financial institutions have been settled or dismissed, leaving only § 10(b) claims against the financial institution. # 5124 at 11. Nevertheless § 11 claims remain pending against individuals in *Newby.* They note that *Rule 42(a)* does not require complete identity of legal and factual questions.

2007 U.S. Dist. LEXIS 8812, *30

given bank has no involvement and about which it had no knowledge. Thus for this reason the cases should be consolidated.

As for the argument that the cases are at different stages of litigation, Financial Institution Defendants call these claims overstated and maintain that they can be accommodated by means of a scheduling order in *Newby*. The parties have all participated in the *Newby* discovery. The limited additional discovery to be conducted in the other cases is the offering of their own party witnesses and experts on their own behalf. The lack of bank-specific discovery in the coordinated actions is to the Defendants' advantage. Similarly, just because classes have not been certified in the consolidated cases does not preclude consolidation. *Benzoni v. Greve, 54 F.R.D. 450, 452 (S.D.N.Y. 1972)* **[*31]** (consolidating cases brought on behalf of "substantially" the same classes, prior to certification). Indeed, the class certification in *Newby* is on appeal and no notice has been sent to the class. The Financial Institutions observe that if a class is finally approved, RBC, Toronto Dominion, and RBS will probably be confronted by the same class and the same class representatives and can easily be incorporated into any notice to that class. Lead Plaintiff's Trial Plan also references RBC, Toronto Dominion and RBS and Lead Plaintiff is expected to used the same Trial Plan, the same witnesses, and the same experts against them at trial. If the Court orders consolidation, insist Financial Institution Defendants, it can easily fashion a discovery and motion schedule fair to all parties, so as to avoid any prejudice to these parties On the other hand, there would be substantial prejudice to the *Newby* defendants, the Court, and the jurors if "Lead Plaintiff's allegations of a single overarching 'scheme' and a single undifferentiated pot of damages as well as the defenses to those allegations, get presented in a mish-mash of multiple trials, with shifting burdens of proof based on who **[*32]** happens to be a named defendant in each proceeding." # 5124 at 15-16.

Lead Plaintiff also argues that Toronto Dominion's pending motion to dismiss can be addressed after consolidation since it does not challenge this Court's jurisdiction.

## 4. Non-Parties the Toronto Dominion Defendants' Sur-Reply (# 5118)

Reiterating their earlier arguments against consolidation, Toronto Dominion Defendants contend

that shortening deadlines would only exacerbate the prejudice to them, especially because of the statutory stay on discovery until the Court rules on their motion to dismiss. They insist that consolidation cannot shorten the time for discovery under applicable rules and cannot prejudice a party's substantive legal rights. *Mills v. Beech Aircraft Corp., Inc., 886 F.2d 758, 762 (5th Cir 1989)*(consolidation improper where cases filed two years apart; first was ready for trial and second required additional fact and expert discovery); *In re Air Crash Disaster at Florida Everglades on December 29, 2972, 549 F.2d 1006, 1013 n.9 (5th Cir. 1977)*(finding that the "principal limitation" on the use of *Rule 42* is that district courts "must avoid prejudicing **[*33]** the rights of the parties").

## 5. RBC Defendants' Statement of Subsequent Developments (# 5232)

RBC Defendants point to post-briefing developments in *Newby* in support of denial of the *Newby* Financial Institution Defendants' motion to consolidate: (1) Movants' designation of responsible non-parties, pursuant to this Court's order (# 4836), has preserved the issue of fault allocation without jury confusion or prejudice to RBC; and (2) the deposition of Andrew S. Fastow, which only minimally dealt with RBC, reflecting RBC's minor role generally and its nonparticipation in structuring the prototype transactions or underwriting key off-balance-sheet partnerships employed by Enron to misrepresent its financial performance to investors, confirms the potential for jury confusion and prejudice to RBC if the RBC action were consolidated with *Newby* for trial.

RBC focuses on a September 2000 transaction designated "Alberta," which RBC insists is not like the other prepay transactions in the furtherance of Enron's misconduct with which Lead Plaintiff has charged RBC. RBC argues that Fastow's deposition testimony demonstrated the difference between Alberta and other prepay **[*34]** transactions. RBC contends that a jury must have the opportunity to hear and consider evidence about Alberta without having that record affected by evidence of dissimilar transactions charged in *Newby*, as would happen if consolidation is ordered.

## IV. Court's Decision

Movants have presented a number of good reasons for consolidating these cases for trial, including common

factual and legal issues, witnesses, proof, and especially the apportionment/contribution scheme under the PSLRA and the possibility of inconsistent verdicts without consolidation. Nevertheless, for whatever reason the Regents filed these coordinated and consolidated cases years later than *Newby,* they must live with the consequences of that time gap. In concurrence with the opposition presented here, the Court finds that the procedural tracks of the cases are too disparate for consolidation with *Newby* at this late date. The parties in the consolidated and coordinated cases are entitled to full discovery, an opportunity to file motions for summary judgment, and adequate trial preparation time, all of which would have to be severely curtailed if the Court consolidated the cases and retained the current **[*35]** trial date. Lead Plaintiff has made clear that it desires the April 9, 2007 trial date above all. Although those seeking consolidation glibly state that this Court can modify and expedite the scheduling order, rule on the pending motions to dismiss, motions for judgment on the pleadings, motions for appointment of Lead Plaintiff and Lead Counsel, and motions for class certification and keep the April 9, 2007 trial date, they ignore not only the extensive briefing relating to these motions, but the multi-box motions for summary judgment now pending in *Newby.* Unlike the large law firms representing parties in this litigation, the Court's staff is limited. For these reasons, the Court

ORDERS that (1) Financial Institution Defendants' motion to consolidate for trial (# 4989 in *Newby*) the *Newby* action, H-04- 0087, and H-03-5528 and (2) Lead Plaintiff's motion to consolidate *Newby* and H-04-0088 for trial (# 69 in H-04-0088; # 5022 in H-01-3624) are DENIED.

**SIGNED** at Houston, Texas, this 7th day of February, 2007.

MELINDA HARMON

UNITED STATES DISTRICT JUDGE

 Neutral
As of: October 30, 2018 2:33 PM Z

## *Firefighters Pension & Relief Fund v. Bulmahn*

United States District Court for the Eastern District of Louisiana

September 26, 2014, Decided; September 26, 2014, Filed

CIVIL ACTION NO: 13-3935; c/w 13-6083; 13-6084; 13-6233

**Reporter**
2014 U.S. Dist. LEXIS 136175 *; 2014 WL 4809449

FIREFIGHTERS PENSION & RELIEF FUND OF THE CITY OF NEW ORLEANS, Individually and on Behalf of All Others Similarly Situated VERSUS T. PAUL BULMAHN, ET AL.

**Subsequent History:** Motion granted by, Dismissed by, Without prejudice, in part *Firefighters Pension & Relief Fund v. Bulmahn, 53 F. Supp. 3d 882, 2014 U.S. Dist. LEXIS 137317 (E.D. La., 2014)*

**Prior History:** *Firefighter's Pension & Relief Fund of New Orleans v. Bulmahn, 2013 U.S. Dist. LEXIS 115538 (E.D. La., Aug. 15, 2013)*

## Core Terms

consolidation, severance motion, plaintiffs', question of law, severance

## Case Summary

### Overview

HOLDINGS: [1]-Securities fraud plaintiffs could not rely on *Fed. R. Civ. P. 21* in moving to sever claims under § 11 (*15 U.S.C.S. § 77k*) of the Securities Act of 1933 from claims under § 10(b) (*15 U.S.C.S. § 78j(b)*) of the Securities Exchange Act of 1934, as a *Rule 21* motion was an inappropriate mechanism to challenge the court's decision to consolidate under *Fed. R. Civ. P. 42(a)*; [2]-The § 11 plaintiffs failed to show that the claims were improperly consolidated. The claims shared common questions of law and fact, which was sufficient to permit consolidation, and continued consolidation would save significant time and effort, especially with regard to discovery.

### Outcome

Motion for severance denied.

## LexisNexis® Headnotes

Civil Procedure > Trials > Consolidation of Actions

Civil Procedure > Judicial
Officers > Judges > Discretionary Powers

*HN1*[ ] **Trials, Consolidation of Actions**

*Fed. R. Civ. P. 42(a)* provides that a court may order consolidation when actions before the court involve a common question of law or fact. *Fed. R. Civ. P. 42(a)*. If that threshold requirement is met, then whether to consolidate the actions is within the broad discretion of the court. In exercising its discretion, the court must balance the risk of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties and witnesses, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial and multiple-trial alternatives. *Rule 42* is a codification of a trial court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. Accordingly, the court's determination can take precedence over the desires of counsel.

Civil Procedure > Trials > Consolidation of Actions

Civil Procedure > Parties > Joinder of
Parties > Misjoinder

Civil Procedure > Pleading & Practice > Joinder of
Claims & Remedies > Misjoinder

2014 U.S. Dist. LEXIS 136175, *136175

*HN2*[⤓]  **Trials, Consolidation of Actions**

A *Fed. R. Civ. P. 21* motion to sever is the appropriate remedy when parties or claims are "misjoined" under *Fed. R. Civ. P. 18*, *19* or *20*. *Fed. R. Civ. P. 21*. Thus, a motion to sever under *Rule 21* is an inappropriate mechanism to challenge a court's decision to consolidate. It would be a mistake to assume that the standard for consolidation is the same as that governing the original joinder of parties or claims.

Civil Procedure > Trials > Consolidation of Actions

Civil Procedure > Pleading & Practice > Joinder of Claims & Remedies > Joinder of Claims

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

*HN3*[⤓]  **Trials, Consolidation of Actions**

*Fed. R. Civ. P. 42* does not apply the "transaction or occurrence" test. Even when actions are improperly joined, it is sometimes proper to consolidate them. More than one party can be joined on a side under *Fed. R. Civ. P. 20(b)* only if there is asserted on behalf or against all of them one or more claims for relief arising out of the same transaction or occurrence. But a common question itself is enough to permit consolidation, even if the claims arise out of independent transactions. *Rule 42* merely requires a common question of law or fact.

Securities Law > ... > Registration of Securities > False Registration Statements > Elements of Proof

Securities Law > ... > Elements of Proof > Materiality > General Overview

*HN4*[⤓]  **False Registration Statements, Elements of Proof**

While it is true that scienter is not required for a § 11 (*15 U.S.C.S. § 77k*) of the Securities Act of 1933 claim, many cases say that "materiality," as it is used in § 11, in effect means the same thing as it does in § 10(b) (*15 U.S.C.S. § 78j(b)*) of the Securities Exchange Act of 1934.

Civil Procedure > Trials > Consolidation of Actions

*HN5*[⤓]  **Trials, Consolidation of Actions**

If a court finds that actions share common questions of law and fact, it is for the court to weigh the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that it would cause.

**Counsel:**  **[*1]** For Firefighters Pension & Relief Fund of the City of New Orleans, Individually and on Behalf of All Others Similarly Situated, Plaintiff (2:13-cv-03935-SSV-SS): Andrew Allen Lemmon, LEAD ATTORNEY, Irma L. Netting, Lemmon Law Firm (Hahnville), Hahnville, LA; Donald A Broggi, Joseph P. Guglielmo, PRO HAC VICE, Scott & Scott LLP (New York), New York, NY.

For Plumbers and Pipefitters National Pension Fund, Lead Plaintiff per doc #63, Plaintiff (2:13-cv-03935-SSV-SS): Louis Leo Robein, III, LEAD ATTORNEY, Robein, Urann, Spencer, Picard & Cangemi, APLC, Metairie, LA; Christopher D Stewart, Danielle S Myers, PRO HAC VICE, Cody R LeJeune, Robert R. Henssler, Jr., Robbins Geller Rudman & Dowd LLP (San Diego), San Diego, CA.

For Brian M Neiman, 13-6083, Individually and on behalf of all others similarly situated, Consol Plaintiff (2:13-cv-03935-SSV-SS): William B. Federman, LEAD ATTORNEY, PRO HAC VICE, Federman & Sherwood Oklahoma City, OK; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Brian Stackhouse, 13-6084, Individually and on behalf of all others persons similarly situated, Consol Plaintiff (2:13-cv-03935-SSV-SS): Sammy Ford, IV, LEAD ATTORNEY, **[*2]**  Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX.

For Thomas J Mansfield, 13-6233, Consol Plaintiff (2:13-cv-03935-SSV-SS): Thomas J. McKenna, LEAD ATTORNEY, PRO HAC VICE, Gainey & McKenna, New York, NY.

For T Paul Bulmahn, Albert L Reese, Jr., Keith R Godwin, Defendants (2:13-cv-03935-SSV-SS): Roy Clifton Cheatwood, LEAD ATTORNEY, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA; Hamilton P Lindley, PRO HAC VICE, Dean & Lyons, LLP, Dallas, TX; James P. Sullivan, Michael J. Biles, Paul R. Bessette, Royale Price, Tyler W Highful, Yusuf Bajwa, PRO HAC VICE, King & Spalding, LLP

(Austin), Austin, TX; Matthew A. Woolf, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA.

For Chris A Brisack, Arthur H. Dilly, Gerard J. Swonke, Brent M. Longnecker, Walter Wendlandt, Burt A. Adams, George R. Edwards, Robert J. Karow, Defendants (2:13-cv-03935-SSV-SS): Omer Frederick Kuebel, III, Corby Davin Boldissar, Monique M. Lafontaine, LEAD ATTORNEY, Locke Lord (New Orleans), New Orleans, LA; Brent Benoit, PRO HAC VICE, Locke Lord (Houston), Houston, TX; Philip Guy Eisenberg, Locke Lord (Houston), Houston, TX.

For J.P. Morgan Securities Inc., Defendant [*3] (2:13-cv-03935-SSV-SS): John William Hite, III, LEAD ATTORNEY, Erika Lynn Mullenbach, Glen Mercer, Peyton C. Lambert, Salley, Hite, Mercer & Resor LLC, New Orleans, LA.

For Leland E Tate, 13-6083, 13-6084, 13-6233, Albert L Reese, Jr., 13-6083, 13-6084, 13-6233, Albert L Reese, Jr., 13-6083, 13-6084, 13-6233, Keith R Godwin, 13-6083, 13-6084, 13-6233, Consol Defendants (2:13-cv-03935-SSV-SS): Paul R. Bessette, LEAD ATTORNEY, PRO HAC VICE, King & Spalding, LLP (Austin), Austin, TX; James P. Sullivan, PRO HAC VICE, King & Spalding, LLP (Austin), Austin, TX; Matthew A. Woolf, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA; Roy Clifton Cheatwood, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA.

For Armada Advisors, Inc., Movant (2:13-cv-03935-SSV-SS): Eric J. O'Bell, LEAD ATTORNEY, Gauthier, Houghtaling & Williams, Metairie, LA.

For Summit Capital Management LLC, Movant (2:13-cv-03935-SSV-SS): Lewis Stephen Kahn, LEAD ATTORNEY, Melinda A. Nicholson, Kahn Swick & Foti, LLC, Madisonville, LA.

For Moshe Issac Foundation, 13-6083, 13-6084, Consol Movant (2:13-cv-03935-SSV-SS): James H. Gibson, LEAD ATTORNEY, Allen & Gooch (Lafayette), Lafayette, [*4] LA; Shashi H Patel, LEAD ATTORNEY, PRO HAC VICE, Ware Jackson Lee & Chambers, LLP, Houston, TX; Jeffrey W. Chambers, PRO HAC VICE, Ware, Jackson, Lee & Chambers, LLP, Houston, TX; Joshua W. Ruthizer, Lester L. Levy, Patricia I Avery, PRO HAC VICE, Wolf Popper, LLP, New York, NY; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Zohar Asher, 13-6083, Jack D Hart, 13-6083, Consol Movants (2:13-cv-03935-SSV-SS): Ronald Dean

Gresham, LEAD ATTORNEY, PayneMitchell Law Group, Dallas, TX.

For William Kruse, 13-6083, Consol Movant (2:13-cv-03935-SSV-SS): Ronald Dean Gresham, LEAD ATTORNEY, PayneMitchell Law Group, Dallas, TX; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA; William B. Federman, PRO HAC VICE, Federman & Sherwood Oklahoma City, OK.

For David Callaham, Consol Movant (2:13-cv-03935-SSV-SS): William B. Federman, LEAD ATTORNEY, PRO HAC VICE, Federman & Sherwood Oklahoma City, OK; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Thomas J Mansfield, 13-6083, 13-6084, Consol Movant (2:13-cv-03935-SSV-SS): Thomas J. McKenna, LEAD ATTORNEY, PRO HAC VICE, Gainey & [*5] McKenna, New York, NY.

For Brian M Neiman, Individually and on Behalf of All Others Similarly Situated, Plaintiff (2:13-cv-06083-SSV-SS): William B. Federman, LEAD ATTORNEY, PRO HAC VICE, Federman & Sherwood, Oklahoma City, OK; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Brian Stackhouse, (13-6084) Individually and on Behalf of All Other Persons Similarly Situated, Consol Plaintiff (2:13-cv-06083-SSV-SS): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX.

For T Paul Bulmahn, Leland E Tate, Albert L Reese, Jr., George R Morris, Keith R Godwin, Defendants (2:13-cv-06083-SSV-SS): Paul R. Bessette, LEAD ATTORNEY, King & Spalding, LLP (Austin), Austin, TX; Matthew A. Woolf, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA; Roy Clifton Cheatwood, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA.

For T Paul Bulmahn, (13-6084), Leland E Tate, (13-6084), Albert L Reese, Jr., (13-6084), George R Morris, (13-6084), Keith R Godwin, (13-6084), Consol Defendant (2:13-cv-06083-SSV-SS): Paul R. Bessette, LEAD ATTORNEY, King & Spalding, LLP (Austin), Austin, TX; Matthew A. Woolf, [*6] Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA; Roy Clifton Cheatwood, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA.

For Moshe Issac Foundation, Movant (2:13-cv-06083-SSV-SS): Shashi H Patel, LEAD ATTORNEY, PRO

2014 U.S. Dist. LEXIS 136175, *6

HAC VICE, Ware Jackson Lee & Chambers, LLP, Houston, TX; James H. Gibson, Allen & Gooch (Lafayette), Lafayette, LA; James H. Gibson, PRO HAC VICE, Allen & Gooch (Lafayette), Lafayette, LA; Joshua W. Ruthizer, Lester L. Levy, Patricia I Avery, PRO HAC VICE, Wolf Popper, LLP, New York, NY; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Zohar Asher, Jack D Hart, Movants (2:13-cv-06083-SSV-SS): Ronald Dean Gresham, LEAD ATTORNEY, PayneMitchell Law Group, Dallas, TX.

For William Kruse, David Callaham, Movants (2:13-cv-06083-SSV-SS): William B. Federman, LEAD ATTORNEY, PRO HAC VICE, Federman & Sherwood, Oklahoma City, OK; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Thomas J Mansfield, Movant (2:13-cv-06083-SSV-SS): Thomas J. McKenna, LEAD ATTORNEY, PRO HAC VICE, Gainey & McKenna, New York, NY.

For Moshe Issac Foundation, (13-6084), Consol [*7] Movant (2:13-cv-06083-SSV-SS): Shashi H Patel, LEAD ATTORNEY, PRO HAC VICE, Ware Jackson Lee & Chambers, LLP, Houston, TX; James H. Gibson, Allen & Gooch (Lafayette), Lafayette, LA; James H. Gibson, PRO HAC VICE, Allen & Gooch (Lafayette), Lafayette, LA; Joshua W. Ruthizer, Lester L. Levy, Patricia I Avery, PRO HAC VICE, Wolf Popper, LLP, New York, NY; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Thomas J Mansfield, (13-6084), Consol Movant (2:13-cv-06083-SSV-SS): Thomas J. McKenna, LEAD ATTORNEY, PRO HAC VICE, Gainey & McKenna, New York, NY.

For Brian Stackhouse, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff (2:13-cv-06084-SSV-SS): Sammy Ford , IV Abraham Watkins Nichols Sorrels Agosto & Friend Houston, TX.

For T Paul Bulmahn, Leland E Tate, Albert L Reese, Jr., George R Morris, Keith R Godwin, Defendants (2:13-cv-06084-SSV-SS): Paul R. Bessette, LEAD ATTORNEY, King & Spalding, LLP (Austin), Austin, TX; James P. Sullivan, PRO HAC VICE, King & Spalding, LLP (Austin), Austin, TX; Matthew A. Woolf, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA; Roy Clifton Cheatwood, Baker Donelson [*8] Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA.

For Moshe Issac Foundation, Movant (2:13-cv-06084-SSV-SS): Shashi H Patel, LEAD ATTORNEY, PRO HAC VICE, Ware Jackson Lee & Chambers, LLP, Houston, TX; James H. Gibson, Allen & Gooch (Lafayette), Lafayette, LA; Jeffrey W. Chambers, PRO HAC VICE, Ware, Jackson, Lee & Chambers, LLP, Houston, TX; Joshua W. Ruthizer, Lester L. Levy, Patricia I Avery, PRO HAC VICE, Wolf Popper, LLP, New York, NY; Stephen H. Kupperman, Barrasso,Usdin, Kupperman, Freeman & Sarver, LLC, New Orleans, LA.

For Thomas J Mansfield, Movant (2:13-cv-06084-SSV-SS): Thomas J. McKenna, LEAD ATTORNEY, PRO HAC VICE, Gainey & McKenna, New York, NY.

For Thomas J Mansfield, Individually and on behalf of all similarly situated, Plaintiff (2:13-cv-06233-SSV-SS): Soren Erik Gisleson, LEAD ATTORNEY, Adam H. Weintraub, Leonard A. Davis, Russ M. Herman, Herman, Herman & Katz, LLC, New Orleans, LA.

For T Paul Bulmahn, Leland E. Tate, Albert L Reese, Jr., George R. Morris, Keith R Godwin, Defendants (2:13-cv-06233-SSV-SS): Roy Clifton Cheatwood, LEAD ATTORNEY, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA; James P. Sullivan, PRO HAC VICE, King & [*9]  Spalding, LLP (Austin), Austin, TX; Matthew A. Woolf, Baker Donelson Bearman Caldwell & Berkowitz (New Orleans), New Orleans, LA.

**Judges:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SARAH S. VANCE

# Opinion

<u>ORDER AND REASONS</u>

Before the Court is Lead Plaintiff Firefighters Pension & Relief Fund's motion to sever the Section 11 action from the Section 10(b) actions. Because the Court finds that the interests of judicial economy outweighs any potential prejudice to the Section 11 plaintiffs, the motion for severance is DENIED.

## I. BACKGROUND

This is a consolidated action alleging violations of the federal securities laws under *Sections 11*, *12(a)* and *15* of the Securities Act of 1933 and *Sections 10(b)* and *20(a)* of the Securities Exchange Act of 1934. The

consolidated action involves two main plaintiff groups: the Section 11 plaintiffs and the Section 10(b) plaintiffs. Both plaintiff groups allege that ATP Oil & Gas, through its directors and/or officers ("Defendants"), "made false and misleading statements in an October 12, 2010 registration statement filed with the U.S. Securities and Exchange Commission."[1] The Section 10(b) plaintiffs contend that "Defendants issued false and misleading statements subsequent to the Registration Statement as well."[2]

Both groups of plaintiffs contend that defendants made material **[\*10]** misrepresentations or omissions with regard to the effect of the United States Department of Interior's drilling moratoria on ATP's liquidity and future business prospects in the wake of the BP oil spill.

The Section 11 plaintiffs now move the Court to sever the Section 11 action from the Section 10(b) actions. They argue that the Section 11 action arises from a different "transaction or occurrence" than the Section 10(b) actions, and that continued consolidation will unduly prejudice the Section 11 plaintiffs. Defendants do not oppose the severance "so long as steps are taken to efficiently coordinate potential discovery and other case management issues."[3]

## II. LEGAL STANDARD

The rules regarding consolidation are contained in *Rule 42 of the Federal Rules of Civil Procedure*. **HN1**[⬆] *Rule 42(a)* provides that a court may order consolidation when "actions before the court involve a common question of law or fact." *Fed. R. Civ. P. 42(a)*. If that threshold requirement is met, then whether to consolidate the actions is within the broad discretion of the court. *Alley v. Chrysler Credit Corp., 767 F.2d 138, 140 (5th Cir. 1985)*. In exercising its discretion,

> the court must balance the risk of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties and witnesses, **[\*11]** the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial and multiple-trial alternatives.

*A.F.I.K. Holding SPRL v. Fass, 216 F.R.D. 567, 570 (D.N.J. 2003)*(internal citations omitted). *Rule 42* is a codification of a trial court's inherent managerial power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re Air Crash Disaster at Fla. Everglades, 549 F.2d 1006, 1012 (5th Cir. 1977)*(citations omitted). Accordingly, the court's determination can "take precedence over the desires of counsel." *Id at 1014*.

## III. DISCUSSION

In their motion to sever, the Section 11 plaintiffs argue that the actions should be severed because (1) the actions arose out of different transactions; (2) the actions present different questions of law; (3) the consolidated action will not promote judicial economy; and (4) the Section 11 action "will likely" be ready for trial before the *Section 10(b)* actions.[4]

The Section 11 plaintiffs thus contend that severance is warranted under *Federal Rule of Civil Procedure 21*.

The Section 11 plaintiffs' reliance on Rule 21 is misguided. **HN2**[⬆] A Rule 21 motion to sever is the appropriate remedy when parties or claims are "misjoined" under Rules 18, 19 or 20. *Fed. R. Civ. P. 21*. Thus, a motion to sever under Rule 21 is an inappropriate mechanism to challenge a court's decision to consolidate. **[\*12]** See 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2382 (3d ed. 2008) ("[I]t would be a mistake to assume that the standard for consolidation is the same as that governing the original joinder of parties or claims."). Here, the Section 11 action and the *Section 10(b)* actions were consolidated under *Rule 42(a)*, not joined under Rules 18, 19 or 20. Accordingly, Rule 21 is inapplicable. *See Iskowitz v. Cessna Aircraft Co., CIV. A. Nos. 07-968, 07-971, 07-1087, 08-2437, 2009 U.S. Dist. LEXIS 40226, 2009 WL 1151956, at \*1 (D. Colo. Apr. 27, 2009)*("Of course, the Winston case is already separate from the Coffman and Iskowitz case, although all three cases have been consolidated. Because Winston is already a separate case, I conclude that severance under Rule 21 is not the proper procedural mechanism to accomplish the separation of the Winston case as sought by Coffman and Iskowitz.").

---

[1] R. Doc. 130-1 at 5.

[2] Civ. A. No. 13-06083, R. Doc. 1 at 3.

[3] R. Doc. 148 at 1.

[4] R. Doc. 130-1 at 10-14.

2014 U.S. Dist. LEXIS 136175, *12

Moreover, the Court finds that the Section 11 plaintiffs have failed to demonstrate that the *Section 11* and *Section 10(b)* claims were improperly consolidated, and finds continued consolidation more conducive to judicial economy than separation. The crux of the Section 11 plaintiffs' argument is that the Section 11 action arises from a "different transaction or occurrence" than the *Section 10(b)* actions.[5]

Even if the Court were to accept the Section 11 plaintiffs' characterization, *HN3*[⬆] *Rule 42* does not apply the "transaction or [*13] occurrence" test. *See State of Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc., 163 F.R.D. 500, 503 (S.D. Ohio 1995)*("Even when actions are improperly joined, it is sometimes proper to consolidate them."); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2382 (3d ed. 2008)("[M]ore than one party can be joined on a side under *Rule 20(b) only* if there is asserted on behalf or against all of them one or more claims for relief arising out of the same transaction or occurrence . . . . But the common question itself is enough to permit consolidation, even if the claims arise out of independent transactions."). Instead, *Rule 42* merely requires a common question of law or fact, and the *Section 11* and *Section 10(b)* actions share questions of both law and fact. For example, the falsity of ATP's statements in its prospectus is central to both actions, and the Section 11 plaintiffs readily admit that "the actions all involve allegations related to ATP's deep water drilling operations in 2010."[6]

Moreover, as defendants point out in their responsive briefing, "[m]uch of the underlying factual predicate for the *Section 11* and *Section 10(b)* actions is identical, and will require the production of identical documents and depositions of the same individuals."[7]

Finally, although there are differences in the legal standards applicable to *Section 11* and *10(b)* claims, there are [*14] nevertheless some common questions of law, such as in the application of Item 303 of Regulation S-K. *See also Kapps v. Torch Offshore, Inc., 379 F.3d 207, 215 (5th Cir. 2004)* (*HN4*[⬆] "While it is true that scienter is not required [for a Section 11 claim], many cases say that 'materiality,' as it is used in *Section 11*, in effect means the same thing as it does in *Section*

*10(b)*.")(compiling cases).

*HN5*[⬆] ] Having found that the *Section 11* and *Section 10(b)* actions share common questions of law and fact, "it is for the court to weigh the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that it would cause." *Daybrook Fisheries, Inc. v. Am. Marine Const., CIV. A No. 98-1438, 1998 U.S. Dist. LEXIS 16934, 1998 WL 748586, at *2 (E.D. La. Oct. 19, 1998)*(quoting 9 Wright & Miller, *Federal Practice and Procedure* § 2383 (2d ed. 1995)). Here, given the significant factual overlap between the *Section 11* and *Section 10(b)* actions, the Court finds that continued consolidation will save significant time and effort, especially with regard to discovery. Moreover, the Court finds that any delay, inconvenience or additional cost caused by continued consolidation will be negligible. Indeed, the Section 11 plaintiffs' contention that consolidation comes at the expense of the Section 11 action because it "will almost certainly be ready for trial long before the Section 10(b) Action" is mere conjecture.[8]

The Section 11 plaintiffs can move [*15] the Court to reconsider this order if and when such delay becomes a reality.

In sum, the Court finds that consolidation, not separation, best serves the interest of judicial economy. The Court further finds that the Section 11 plaintiffs will not suffer any prejudice if the actions remained consolidated. Accordingly, the Court denies the Section 11 plaintiffs' motion to sever the Section 11 and Section 10(b) actions. *Cf. Fed. R. Civ. P. 42(b)*.

### III. CONCLUSION

For the reasons given above, the Court finds that the most efficient and economic route to the resolution of these actions is via continued consolidation. Accordingly, plaintiffs' motion for severance is DENIED.

**New Orleans, Louisiana, this 26th day of September, 2014**.

/s/ Sarah S. Vance

**SARAH S. VANCE**

**UNITED STATES DISTRICT JUDGE**

---

[5] R. Doc. 130-1 at 10-11.

[6] R. Doc. 130-1 at 13.

[7] R. Doc. 148 at 2.

[8] R. Doc. 130-1 at 14.

**End of Document**

 Neutral

As of: October 30, 2018 2:34 PM Z

# *Lafrance v. City of New Orleans*

United States District Court for the Eastern District of Louisiana

June 19, 2017, Decided; June 19, 2017, Filed

CIVIL ACTION NO. 16-14439 SECTION "R" (2)

**Reporter**

2017 U.S. Dist. LEXIS 150446 *

JOSEPH T. LAFRANCE VERSUS CITY OF NEW ORLEANS, ET AL.

**Prior History:** *Lafrance v. New Orleans City, 2017 U.S. Dist. LEXIS 38386 (E.D. La., Mar. 17, 2017)*

## Core Terms

district court, consolidated, cases, alleges, immunity, official capacity, state court, warrants, arrest, statutes, factors, entity, oppose, statewide, arm

**Counsel:** **[*1]** For Joseph T Lafrance, Plaintiff: William Patrick Quigley, LEAD ATTORNEY, Loyola Law School Clinic, New Orleans, LA; Anna Lise Lellelid, LaBas Law Offices, APLC, Lafayette, LA.

For Marlin Gusman, Orleans Parish Sheriff, Defendant: Timothy R. Richardson, LEAD ATTORNEY, Usry, Weeks & Matthews, New Orleans, LA; Blake J. Arcuri, Orleans Parish Criminal Sheriff's Office, New Orleans, LA; Freeman Rudolph Matthews, New Orleans, LA.

**Judges:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SARAH S. VANCE

## Opinion

### ORDER AND REASONS

On March 14, 2017, the Court ordered the parties to show cause why the Court should not dismiss several claims and consolidate this case with *Cain v. City of New Orleans*, 15-4479 (E.D. La., filed Sep. 17, 2015). Plaintiff Joseph LaFrance opposes dismissal of some of his claims against the Orleans Parish Criminal District Court, Judicial Administrator Robert Kazik, and Sheriff Marlin Gusman in his official capacity. The Judicial

Defendants oppose consolidating this case with *Cain*. For the following reasons, the Court orders this case consolidated with *Cain* and dismisses the following claims:

> (1) Count One, against the City of New Orleans, the Orleans Parish Criminal District Court, Robert Kazik, **[*2]** and Sheriff Gusman in his official capacity;
> (2) Count Two, against Sheriff Gusman is his official and individual capacities;
> (3) Count Three, against the Orleans Parish Criminal District Court and Robert Kazik;
> (4) Count Four, against the Orleans Parish Criminal District Court and Robert Kazik; and
> (5) Count Five, against the Orleans Parish Criminal District Court and Robert Kazik.

### I. BACKGROUND

Plaintiff Joseph LaFrance alleges that he was arrested on an invalid warrant for unpaid fines and fees and held for three weeks in Orleans Parish Prison without being brought before a judge.[1] LaFrance further alleges that no bond was ever set in his case.[2] While incarcerated, LaFrance allegedly suffered several seizures and lost his job.[3] LaFrance names the City of New Orleans, the Orleans Parish Criminal District Court (OPCDC), Judicial Administrator Robert Kazik, and Orleans Parish Sheriff Marlin Gusman as defendants.[4]

---

[1] R. Doc. 1 at 8.

[2] *Id.*

[3] *Id.* at 9.

[4] *Id.* at 6-7.

2017 U.S. Dist. LEXIS 150446, *2

LaFrance challenges his arrest and incarceration on several grounds. Specifically, LaFrance alleges that:

1. LaFrance had, in fact, paid all fines and fees due to the court, and his warrant was therefore issued in error.[5]

2. Defendants have a policy of issuing and enforcing such nonpayment **[*3]** warrants without inquiry into the subject's ability to pay, and this practice violates the *Fourth* and *Fourteenth Amendments to the U.S. Constitution*.[6]

3. LaFrance was "indefinitely" jailed in violation of the *Due Process Clause of the Fourteenth Amendment*, and LaFrance's incarceration constitutes wrongful arrest and imprisonment under Louisiana law.[7]

4. LaFrance was deprived of his right to a neutral tribunal because the prosecutor and judicial officer that seek and approve nonpayment warrants, and conduct subsequent hearings, are financially interested in the outcome of such cases.[8]

5. Defendants imposed unduly restrictive methods of collection on LaFrance in violation of the *Equal Protection Clause of the Fourteenth Amendment*.[9]

## II. DISCUSSION

As noted, LaFrance opposes dismissal of several claims and the Judicial Defendants oppose consolidation. The parties' arguments are considered in turn.

## A. Claims Against the Orleans Parish Criminal District Court

On May 11, 2016, the Court dismissed claims against OPCDC in the *Cain* case. *Cain v. City of New Orleans, No. 15-4479, 2016 U.S. Dist. LEXIS 62391, 2016 WL 2742374, at *2 (E.D. La. May 11, 2016)*. In doing so, the Court found that, as a state court, OPCDC is immune from suit under the *Eleventh Amendment*. *Id.* at *1; *see also Jefferson v. La. State Supreme Court, 46 Fed.*

_____

[5] *Id.* at 32.

[6] *Id.* at 33.

[7] *Id.* at 33, 35.

[8] *Id.* at 33-34.

[9] *Id.* at 34-35.

*Appx. 732, *1 (5th Cir. 2002)* ("The *Eleventh Amendment* clearly bars [plaintiff's] *§ 1983* claims against the Louisiana Supreme Court, which is a branch of Louisiana's state government."); *Bourgeois v. Par. of Jefferson, 20 F.3d 465, *1 (5th Cir. 1994)* (holding that the Orleans Parish Civil District Court is "an agency of the state" **[*4]** entitled to *Eleventh Amendment* immunity). The Court later rejected the *Cain* plaintiffs' attempt to replead their claims against OPCDC on the same grounds. *Cain v. City of New Orleans (Cain, Order re. Leave to Amend), No. 15-4479, 2017 U.S. Dist. LEXIS 15124 , 2017 WL 467685, at *7 (E.D. La. Feb. 3, 2017)*.

LaFrance does not argue that he has alleged any new facts on this issue. Rather, LaFrance simply asks the Court to apply the Fifth Circuit's six-factor test for *Eleventh Amendment* immunity first articulated in *Clark v. Tarrant County, Texas. 798 F.2d 736, 744-45 (5th Cir. 1986)*. The six *Clark* factors are: (1) whether state statutes and case law view the agency as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Hudson v. City of New Orleans, 174 F.3d 677, 679 (5th Cir. 1999)* (citing *Clark, 798 F.2d at 744-45*). Consideration of the *Clark* factors confirms that OPCDC is an arm of the Louisiana state protected by the *Eleventh Amendment*.

First, state statutes and case law view OPCDC as an arm of the state. OPCDC was created by state statute. La. Stat. Ann. *§ 13:1335*. As a Louisiana District Court, the state constitution vests OPCDC with "original jurisdiction of all civil and criminal matters," including "exclusive original jurisdiction of felony cases." *La. Const. art. V, § 16*; *see also* **[*5]** *Mullins v. State, 387 So.2d 1151, 1152 (La. 1980)* ("If the office is created by the legislature, or is established in the first instance by the constitution, it is a state office.").

Second, OPCDC points out that the state legislature provides significant funds to finance the state judiciary, and under *Louisiana Revised Statutes § 13:5108.1*, the state is obligated to indemnify employees of "judicial district courts of the state [and] the offices of the judicial administrators thereof." LaFrance cites no case or statute providing that a judgment against OPCDC must be satisfied from local funds. That there is no evidence of the state being liable for a judgment against OPCDC

is not dispositive because the caselaw uniformly has held state courts immune. *See, e.g., Jefferson v. La. State Supreme Court, 46 F. App'x 732, *1 (5th Cir. 2002)* ("The *Eleventh Amendment* clearly bars [plaintiff's] *§ 1983* claims against the Louisiana Supreme Court, which is a branch of Louisiana's state government."); *Bourgeois v. Par. of Jefferson, 20 F.3d 465, *1 (5th Cir. 1994)* (holding that the Orleans Parish Civil District Court is "an agency of the state" entitled to *Eleventh Amendment* immunity; *Summers v. Louisiana, No. 13-4573, 2013 U.S. Dist. LEXIS 102023, 2013 WL 3818560, at *4 (E.D. La. July 22, 2013)* (holding that an official capacity claim against a state court judge "would in reality be a claim against the state itself, and . . . would be barred by the *Eleventh Amendment*"); *Wilkerson v. 17th Judicial Dist. Court, No. 08-1196, 2009 U.S. Dist. LEXIS 6802, 2009 WL 249737, at *4 (E.D. La. Jan. 30, 2009)* ("It is clear that the *Eleventh Amendment* bars *§ 1983* claims against a state court."); *Rackley v. Louisiana, No. 07-504, 2007 U.S. Dist. LEXIS 45227, 2007 WL 1792524, at *3 (E.D. La. June 21, 2007)* ("[T]he *Eleventh Amendment* likewise bars *§ 1983* claims against **[*6]** a state court."); *see generally Mumford v. Basinski, 105 F.3d 264, 267 (6th Cir. 1997)* (noting that state courts are not "persons" under *section 1983* and are otherwise immune from suit as an arm of the state government); *Harris v. Champion, 51 F.3d 901, 905-06 (10th Cir. 1995)* (holding that Oklahoma Court of Criminal Appeals is immune from suit under *Eleventh Amendment* as "a governmental entity that is an arm of the state"); *Landers Seed Co., Inc. v. Champaign Nat'l Bank, 15 F.3d 729, 731-32 (7th Cir. 1994)* ("The *Eleventh Amendment*, however, bars federal suits against state courts and other branches of state government[.]"); *Clark v. Clark, 984 F.2d 272, 273 (8th Cir. 1993)* ("Courts are not persons within the meaning of *42 U.S.C. § 1983*, and, if they were, the action would be barred by the *Eleventh Amendment* anyway."). Accordingly, the second factor supports a finding of immunity.

Third, OPCDC has limited local autonomy. OPCDC chiefly applies state criminal laws passed by the Louisiana legislature. Additionally, state statutes govern such minute issues as how much vacation time judges receive, La. Stat. Ann. *§ 13:1342*, how judges are reimbursed for office supplies, La. Stat. Ann. *§ 13:1341.2*, and how cases are allotted among judges. La. Stat. Ann. *§ 13:1343*.

Fourth, OPCDC is primarily concerned with statewide problems. The Court is part of a statewide system of district courts empowered to enforce state criminal statutes. The administrative choice to divide the state into several judicial districts, and place a district court in **[*7]** each, does not alter this conclusion. *See Clark, 798 F.2d 736, 745* (holding that, despite operating in only one county, the Tarrant County Adult Probation Department was primarily concerned with statewide problems because "[d]ividing the responsibilities into judicial districts is merely an administrative tool for handling a statewide, state program.").

As to the fifth and sixth *Clark* factors, LaFrance presents argument suggesting that OPCDC has the authority both to own property and to sue and be sued. These two factors, however, carry less weight than the other four. *Hudson v. City of New Orleans, 174 F.3d 677, 682 (5th Cir. 1999)* ("[W]e typically deal with the last two factors in a fairly brief fashion."). Accordingly, even accepting LaFrance's arguments at face value, the fifth and sixth factors alone cannot upend the Court's conclusion that OPCDC enjoys *Eleventh Amendment* immunity. The Court therefore finds that LaFrance's claims against OPCDC are properly dismissed.

## B. Official Capacity Claims Against Judicial Administrator Kazik

In *Cain*, the plaintiffs argued that Kazik is not entitled to quasi-judicial absolute immunity because he *seeks* rather than *issues* warrants. *Cain, Order re. Leave to Amend, 2017 U.S. Dist. LEXIS 15124, 2017 WL 467685, at *6-7*. The Court rejected this argument, and found that Kazik's alleged role in causing the *Cain* plaintiffs' injury was functionally judicial, **[*8]** and that quasi-judicial absolute immunity therefore applied. *Id.* LaFrance offers nothing new on this point, opting instead to simply repackage the *Cain* plaintiffs' failed arguments. The Court therefore finds that LaFrance's claims against Kazik are properly dismissed for the reasons stated in the Court's earlier order. *Id.*

## C. Official Capacity Claims Against Sheriff Gusman

LaFrance also opposes dismissal of Counts One and Two against Sheriff Gusman in his official capacity. In Count One, LaFrance alleges that Gusman detained LaFrance pursuant to a warrant that Gusman knew or should have known was invalid. In Count Two, LaFrance alleges that he was indefinitely detained by Gusman without due process of law. The Court dismissed analogous claims in *Cain*, and finds that both counts are properly dismissed.

2017 U.S. Dist. LEXIS 150446, *8

### i. Count One

As to Count One, the Court found in *Cain* that the plaintiffs' complaint described a facially lawful policy of executing facially valid arrest warrants. *Cain, Order re. Leave to Amend, 2017 U.S. Dist. LEXIS 15124, 2017 WL 467685, at *12-13*. Therefore, under *Monell v. Dept. of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*, the *Cain* plaintiffs could not survive a motion to dismiss absent alleged facts giving rise to a plausible inference that Gusman acted with deliberate indifference. *Id*. Because the *Cain* plaintiffs did not plausibly **[*9]** allege that Gusman *knowingly* held plaintiffs pursuant to invalid warrants, plaintiffs failed to state a claim under *Monell. Id.*

LaFrance points to two sets of allegations that purportedly distinguish his case from *Cain* and save his claim under Count One: (1) LaFrance alleges that he was detained by Gusman until September 21, 2015, four days after the *Cain* plaintiffs filed suit; and (2) LaFrance filed certain grievances with the Sheriff's office while he was held, and his girlfriend repeatedly called the Orleans Parish Prison. Neither set of allegations saves LaFrance's claim.

LaFrance argues that the *Cain* suit put Gusman on notice that the capias warrants routinely executed by his office were constitutionally defective and issued without an individualized finding of probable cause. LaFrance specifically points to a hearing transcript attached to the *Cain* complaint, in which an OPCDC Collections Agent describes her offices' practices. Even assuming that the *Cain* complaint could provide sufficient notice such that Gusman's continued enforcement would constitute deliberate indifference—and that Gusman had an *immediate* duty to stop executing facially valid warrants after he became aware **[*10]** of the suit—LaFrance's argument still fails. As made clear by the relevant return of service, the *Cain* plaintiffs did not serve Gusman until September 22, 2015, the day after LaFrance was released.[10]

*Cain v. City of New Orleans*, 15-4479 (E.D. La. Oct. 16, 2015) (proof of service of Marlin Gusman). LaFrance pleads no facts to support a finding that Gusman became aware of the suit before he was actually served. Accordingly, the filing of the *Cain* suit cannot render Gusman's conduct deliberately indifferent under *Monell*.

As to LaFrance's second argument, complaints made by LaFrance and his girlfriend are irrelevant to Count One. LaFrance alleges that he complained he was "lost in the system" and that he needed to know what his warrant was about and why he had not been to court.[11] LaFrance also alleges that his girlfriend called the Orleans Parish Prison repeatedly to try to set a hearing before a judge.[12] But these complaints plainly do nothing to inform Gusman or his staff that LaFrance was arrested pursuant to warrant issued absent probable cause. Accordingly, the Court finds that LaFrance's claim under Count One against Sheriff Gusman in his official capacity is properly dismissed.

### ii. Count **[*11]** Two

LaFrance alleges in Count Two that he was indefinitely detained by Gusman without due process of law. LaFrance concedes that the Court dismissed an analogous claim in *Cain*, but argues that his claim "differs importantly from its counterpart in *Cain* because [LaFrance] alleges that his detention violated a state law right to a timely hearing."[13]

The state law in question, Louisiana Code of Criminal Procedure article 230.1, requires that state arrestees be brought before judge for the purpose of appointing counsel within 72 hours of arrest. Arrestees who are not brought before a judge within the period established by the statue "shall be released forthwith." *La. Code Crim. P. art. 230.1*. LaFrance argues that this statute gives rise to constitutionally protected liberty interest, and that Gusman's alleged failure to comply therefore takes on a constitutional dimension.

The Fifth Circuit has repeatedly rejected constitutional claims grounded in analogous statutes, and the Court is bound by this clear precedent. *See Perry v. Jones, 506 F.2d 778, 781 (5th Cir. 1975)* ("[E]ven though the failure to take Perry before a magistrate violates Texas law, it does not rise to the status of a denial of due process"); *Scarbrough v. Dutton, 393 F.2d 6 (5th Cir. 1968)* (seven month detention in violation of Georgia statute requiring **[*12]** a preliminary hearing be held within 72 hours of arrest did not give rise to constitutional violation); *see also Stephenson v. Gaskins, 539 F.2d*

---

[10] R. Doc. 1 at 33 (alleging that "Mr. LaFrance was illegally incarcerated from September 3, 2015 until September 21, 2015").

[11] *Id.* at 9.

[12] *Id.* at 9-10.

[13] R. Doc. 25 at 14.

*1066, 1067 (5th Cir. 1976)* (thirty-eight day detention in Georgia jail without a preliminary hearing did not give rise to a constitutional claim); *Anderson v. Nosser, 438 F.2d 183, 196 (5th Cir. 1971)* ("[T]he right under the federal rules to be promptly taken before a magistrate has not been given constitutional status.") (quoting *Kulyk v. United States, 414 F.2d 139, 141 (5th Cir. 1969))*.

To resist this conclusion, LaFrance cites *Griffin v. City of Lafayette*, in which the Fifth Circuit "presume[d] without deciding" for purpose of the appeal that article 230.1 creates a liberty interest actionable under *42 U.S.C. § 1983. 166 F.3d. 340 (5th Cir. 1998).* Even accepting the doubtful premise that *Griffin* could be read to contradict *Perry* and *Scarbrough*, the Court remains bound by the earlier decisions. *See H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc., 227 F.3d 326, 330 (5th Cir. 2000)* ("When panel opinions appear to conflict, we are bound to follow the earlier opinion."). Accordingly, LaFrance's official capacity claims against Sheriff Gusman under Count Two must be dismissed.

## D. Consolidation

*Federal Rule of Civil Procedure 42(a)* provides for consolidation of actions involving "a common question of law or fact." *Fed R. Civ. P. 42(a)(2).* The rule gives district courts "broad discretion . . . to consolidate cases pending in the same district." *In re Dearborn Marine Serv., Inc., 499 F.2d 263, 270-71 (5th Cir. 1974);* see also *Luera v. M/V Alberta, 635 F.3d 181, 194 (5th Cir. 2011)* ("*Rule 42(a)* provides district courts with broad authority to consolidate **[*13]** actions that "involve a common question of law or fact.").

The Judicial Defendants oppose consolidation of this case with *Cain.* In support, the Judicial Defendants argue (1) that the legal issues are not similar in the two cases, and (2) that the parties in the two cases are different. The Court finds neither assertion compelling. As to the Judicial Defendants first argument, the Court finds that the two cases clearly share several common questions of fact and law, as demonstrated by the nearly identical complaints. Second, the Court finds that there is near-perfect overlap between the defendants in the two cases, especially following the dismissals provided for in this order. Finally, that this case is brought by a different plaintiff does not preclude consolidation. *See Bolbol v. City of Daly City, 754 F. Supp. 2d 1095, 1118-1119 (N.D. Cal. 2010)* (consolidating cases brought by different plaintiffs but

raising substantially same claims against same defendants). Accordingly, the Court orders this case consolidated with *Cain* pursuant to *Rule 42(a).*

## III. CONCLUSION

For the foregoing reasons, the following claims are DISMISSED:

> (1) Count One, against the City of New Orleans, the Orleans Parish Criminal District Court, Robert Kazik, and Sheriff Gusman in his official capacity; **[*14]**
> (2) Count Two, against Sheriff Gusman is his official and individual capacities;
> (3) Count Three, against the Orleans Parish Criminal District Court and Robert Kazik;
> (4) Count Four, against the Orleans Parish Criminal District Court and Robert Kazik;
> (5) Count Five, against the Orleans Parish Criminal District Court and Robert Kazik.

It is further ORDERED that this case be consolidated with *Cain v. City of New Orleans*, 15-4479 (E.D. La., filed Sep. 11, 2015). Pursuant to the Court's directive, all pleadings hereafter filed in this consolidated proceeding shall bear the caption of the lead consolidated case together with the docket number of all cases within the consolidation to which the document applies or the notation "ALL CASES" if it applies to all cases.

The clerk of court is directed to establish a master file and a master docket sheet for the consolidated group of cases.

All entries shall be made on the master docket sheet only, with a notation listing the cases to which the document applies, except that orders and documents terminating a party or disposing of a case will also be entered on the individual docket sheet. All documents shall be filed in the master file only, except that **[*15]** orders and documents terminating a party or disposing of a case will also be filed in the record of the individual case.

In the event that a case is separated from the consolidated group it shall be the responsibility of counsel to jointly designate the documents in the master record necessary to the continued litigation of the separated case and to file such designation with the clerk within seven days of the de-consolidation order.

New Orleans, Louisiana, this 19th day of June, 2017.

/s/ Sarah S. Vance

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

No *Shepard's* Signal™
As of: October 30, 2018 2:34 PM Z

## *Lynn v. Terrebonne General Medical Center*

United States District Court for the Eastern District of Louisiana

February 14, 1989, Filed and Entered

Civil Action No. 87-1920 C/W, 88-1109

**Reporter**
1989 U.S. Dist. LEXIS 1535 *

LOUIS T. LYNN v. TERREBONNE GENERAL
MEDICAL CENTER, ET AL.

## Core Terms

legal malpractice, plaintiff's claim, prima facie case, prescribe, former attorney, Defendants', malpractice, attorney's, damages, issues, Sever

**Opinion by:** [*1] COLLINS

## Opinion

ROBERT F. COLLINS, UNITED STATES DISTRICT
JUDGE

Defendants, Jacques F. Bezou, Individually, Jacques F. Bezou, a Professional Law Corporation, and New England Insurance Company, move this Court for dismissal of plaintiff's claims for declaratory relief and/or severance of plaintiff's claims against them. Both motions are hereby *DENIED* for the following reasons.

Defendants, by way of their Motion to Dismiss, contend that plaintiff has asserted no loss as a result of Mr. Bezou's alleged legal malpractice. Plaintiff's complaint states that he hired Mr. Bezou to prosecute a claim for medical malpractice arising from plaintiff's hospitalization at Terrebonne General Medical Center in September of 1985. Mr. Bezou filed suit against Dr. Cinnater and the hospital on behalf of the plaintiff after receiving the decision of a Medical Review Panel regarding this incident. Mr. Bezou did not file suit or institute proceedings with the Medical Review Panel against Dr. Landry or Dr. DuPont (other treating physicians) within the prescriptive period. Mr. Bezou was subsequently discharged. Retained counsel for plaintiff attempted at that time to assert claims against Dr. Landry and Dr. DuPont, [*2] but the claims had prescribed. Plaintiff now seeks to recover from Mr.

Bezou for legal malpractice.

In cases of legal malpractice, once a client proves "his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have taken a case completely devoid of merit." *Jenkins v. St. Paul Fire & Marine Insurance Co., 422 So. 2d 1109, 1110 (La. 1982)*. After plaintiff has put on a prima facie case, the attorney then has the burden of going forward with evidence to show that the client would not have succeeded on the original claim, and the jury determines the causation and damages questions. Id.

Defendant relies on the case of *Evans v. Detweiler, 466 So. 2d 800 (La. App. 4th Cir. 1985)*, in which a client's claims against his former attorney were dismissed. In that case, the attorney had allowed certain federal and state securities fraud claims to prescribe; however, the client still had a viable cause of action based on partnership law against the original defendants. Therefore, the Court concluded plaintiffs had failed [*3] to show they suffered a loss due to the attorney's malpractice.

The instant case is factually distinguishable from Evans in that the attorney in this case has allowed all claims against two defendants to prescribe. There are no remaining causes of action against these defendants which could preserve plaintiff's claim for damages. Therefore, this Court would decline to follow Evans. Based on the allegations of plaintiff's complaint, and considering them in a light most favorable to the plaintiff, the Court finds that plaintiff has set forth sufficient facts to establish a prima facie case against defendant Bezou for legal malpractice. Accordingly, defendants' Motion to Dismiss is hereby *DENIED*.

Defendants' Motion to Sever is also hereby *DENIED*. The existence of common factual and legal issues concerning the liability vel non of Dr. Cinnater, the

1989 U.S. Dist. LEXIS 1535, *3

hospital, Dr. Landry, and Dr. DuPont support this Court's earlier decision to consolidate. The risks of possible confusion and prejudice to defendants, Bezou and New England Insurance Company, are slight and are overborne by the existence of common issues of law and fact, the relative expense to all, and the time required to **[\*4]** conclude multiple lawsuits as opposed to a single one. *Arnold v. Eastern Air Lines, Inc., 681 F.2d 186 (4th Cir. 1982)*.

**End of Document**

⚠ Caution
As of: October 30, 2018 2:35 PM Z

## *Miller v. Ventro Corp.*

United States District Court for the Northern District of California

November 28, 2001, Decided ; November 28, 2001, Filed

No. C 01-01287 SBA, Related Case Nos. C-01-1322-SBA, C-01-1347-SBA, C-01-1460-SBA, C-01-1713-SBA, C-01-1790-SBA, C-01-1952-SBA, C-01-2007-SBA, C-01-2176-SBA, C-01-2177-SBA

**Reporter**
2001 U.S. Dist. LEXIS 26027 *

DAVID MILLER, Plaintiff, v. VENTRO CORPORATION, et al., Defendants.

**Subsequent History:** Motion granted by *Miller v. Ventro Corp., 2004 U.S. Dist. LEXIS 6913 (N.D. Cal., Apr. 21, 2004)*

## Core Terms

consolidation, bondholders, lead plaintiff, appointed, stockholder, co-lead, lead counsel, securities, parties, class period, investors, largest, subclass, class action, violations, Movant, cases, firms, stock, requires, financial stake, damages, class member, Approve, losses, trader, courts, issues, related case, offering

## Case Summary

### Procedural Posture

Eleven related securities class action lawsuits were pending before the court. All essentially stated the same causes of action (10 were stockholders class actions; one was a bondholders class action). Movant group filed motions to consolidate all the cases pursuant to *Fed. R. Civ. P. 42(a)* and to be appointed lead plaintiff. Movant bondholder separately moved to be appointed lead plaintiff of a subclass of bondholders.

### Overview

The cases alleged that the defendant corporation and several of its senior executives made a series of false and misleading statements during the class period about the corporation's business model and earnings for fiscal year 2000 as part of an effort to boost the price of its stock. Like the stockholder claims, the bondholder claims alleged violations of § 10(b) and § 20(a) of the Securities Act of 1934, *15 U.S.C.S. §§ 78j(b)*, 78t(a), and *17 C.F.R. § 240.10b-5* (*Rule 10b-5*). Additionally, the bondholders alleged violations of § 11, § 12(a)(2), and § 15 of the Securities Act of 1933, *15 U.S.C.S. §§ 77k, 77l, § 77o*. The court held that: (1) the additional claims and defendants (the managers of a note offering) by the bondholders did not preclude consolidation since the factual allegations were nearly identical and there was no significant prejudice to the bondholder class; (2) the group did not satisfy the requirements for lead plaintiff; (3) the differences between the stockholder and bondholder classes did not warrant separate subclasses; and (4) it was appropriate to appoint a bondholder as co-lead plaintiff in addition to a stockholder.

### Outcome

The group's motion to consolidate was granted as to consolidation and granted as to one of the individuals being appointed co-lead plaintiff, but was denied as to the other individuals or the group as a whole being appointed lead counsel and as to approval of choice of lead counsel. The court granted the bondholder in part as to his being appointed co-lead plaintiff but denied his choice of counsel.

## LexisNexis® Headnotes

Civil Procedure > Trials > Consolidation of Actions

**HN1**[⤓] **Trials, Consolidation of Actions**

*Fed. R. Civ. P. 42(a)* contains the standard for consolidating actions.

Civil Procedure > Trials > Consolidation of Actions

2001 U.S. Dist. LEXIS 26027, *26027

*HN2*[⬇] **Trials, Consolidation of Actions**

See *Fed. R. Civ. P. 42(a)*.

Civil Procedure > Trials > Consolidation of Actions

*HN3*[⬇] **Trials, Consolidation of Actions**

The district court has broad discretion in making a consolidation determination under *Fed. R. Civ. P. 42(a)*. The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. As the language of *Rule 42(a)* provides, the presence of a common question of law or fact is a threshold requirement for consolidation.

Civil Procedure > Trials > Consolidation of Actions

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

*HN4*[⬇] **Trials, Consolidation of Actions**

The Private Securities Litigation Reform Act (PSLRA) directs that cases should be consolidated where there is more than one action on behalf of a class asserting substantially the same claim or claims. *15 U.S.C.S. § 78u-4(a)(3)(B)(ii)*.

Civil Procedure > Trials > Consolidation of Actions

Evidence > Burdens of Proof > Allocation

*HN5*[⬇] **Trials, Consolidation of Actions**

Even if a common question exists, consolidation is inappropriate if it results in inefficiency, inconvenience, or unfair prejudice to a party. *Fed. R. Civ. P. 42(b)*. The party seeking consolidation bears the burden of demonstrating that convenience and judicial economy would result from consolidation.

Civil Procedure > Trials > Consolidation of Actions

Securities Law > Civil Liability Considerations > Securities Litigation Reform &

Standards > Lead Counsel

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

*HN6*[⬇] **Trials, Consolidation of Actions**

When the suits subject to consolidation involve securities fraud, a court shall not make the lead plaintiff and counsel determination until after the decision on the motion to consolidate is rendered. *15 U.S.C.S. § 78u-4(a)(3)(B)(ii)*. After the court decides the motion to consolidate, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions as soon as practicable. *15 U.S.C.S. § 78u-4(a)(3)(B)(ii)*. Thus, before the court considers whether to appoint lead plaintiff, it must determine whether to consolidate the actions.

Civil Procedure > Trials > Consolidation of Actions

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

*HN7*[⬇] **Trials, Consolidation of Actions**

Consolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports. Significantly, the existence of slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where essential claims and factual allegations are similar.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

*HN8*[⬇] **Securities Litigation Reform & Standards, Lead Plaintiff**

The selection of the lead plaintiff is governed by the Private Securities Litigation Reform Act of 1995 (PSLRA).

Securities Law > Civil Liability Considerations > Securities Litigation Reform &

2001 U.S. Dist. LEXIS 26027, *26027

Standards > Lead Plaintiff

**HN9**[⬇] **Securities Litigation Reform & Standards, Lead Plaintiff**

See *15 U.S.C.S. § 78u-4(a)(3)(B)(i)*.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

**HN10**[⬇] **Securities Litigation Reform & Standards, Lead Plaintiff**

In selecting the lead plaintiff in an action brought pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under 15 U.S.C.S. ch. 2B is the person or group of persons that: (a) has either filed the complaint or made a motion for designation as lead plaintiff; (b) in the determination of the court, has the largest financial interest in the relief sought by the class; and (c) otherwise satisfies the requirements of *Fed. R. Civ. P. 23*. *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)*.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

**HN11**[⬇] **Class Actions, Prerequisites for Class Action**

See *Fed. R. Civ. P. 23(a)*.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Typicality

**HN12**[⬇] **Prerequisites for Class Action, Adequacy**

of Representation

In the context of determining the appropriate lead plaintiffs under the Private Securities Litigation Reform Act of 1995 (PSLRA), the requirements of typicality and adequacy of representation are the crucial factors. However, the presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff: (a) will not fairly and adequately protect the interests of the class; or (b) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)*.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

**HN13**[⬇] **Securities Litigation Reform & Standards, Lead Plaintiff**

In establishing a criteria to determine which plaintiff or plaintiffs is most capable of adequately representing the interests of class members, the Private Securities Litigation Reform Act of 1995 (PSLRA) provides that the financial stake in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)*.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

**HN14**[⬇] **Securities Litigation Reform & Standards, Lead Plaintiff**

The Private Securities Litigation Reform Act of 1995 (PSLRA) states that the plaintiff can be a person or group of persons. *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)*. Many courts have interpreted this as allowing a group of people to aggregate their claims for purposes of being appointed lead plaintiffs. However, there is a dispute within the courts whether a group that has no pre-litigation relationship can aggregate their amount of loss for purposes of the PSLRA. Some courts have stated that unrelated plaintiffs--ones without a relationship existing prior to the litigation--cannot form a group or aggregate their financial stakes because that would thwart Congress' intention to prevent lawyer-driven

litigation. Other courts have concluded that the collection of plaintiffs may be comprised of previously unrelated persons, so long as that group is small and presumably cohesive. Finally, courts have opted for a third or middle option that finds no single factor dispositive, but requires the group to justify and explain its composition and structure in terms of adequacy to represent the class. The United States District Court for the Northern District of California adopts the middle approach that requires the plaintiffs to explain and justify to the court the creation and structure of the group.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

*HN15*[ ] **Securities Litigation Reform & Standards, Lead Plaintiff**

A proposed group should provide appropriate information about its members, structure, and intended functioning. Such information should include descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

*HN16*[ ] **Civil Liability Considerations, Securities Litigation Reform & Standards**

Courts have been cautious in creating subclasses for different groups in securities class actions. Courts have found that differences in class periods, pleading and evidentiary standards or differences in named defendants do not preclude consolidation or necessitate the creation of co-lead plaintiffs or subclasses. Thus none of those differences will necessarily warrant a subclass. Moreover, the fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs. However, that is not

to say that courts have not decided to create subclasses or co-lead plaintiffs if necessary to ensure that the class members interests are adequately represented.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Typicality

*HN17*[ ] **Prerequisites for Class Action, Typicality**

*Fed. R. Civ. P. 23* states that a class action is proper only where the claims or defenses of the representative parties are typical of the claims or defenses of the class. *Fed. R. Civ. P. 23(a)(3)*. Under *Rule 23*'s permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. The test is that the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. In other words, a claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) if is based on the same legal theory as their claims.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

*HN18*[ ] **Prerequisites for Class Action, Adequacy of Representation**

*Fed. R. Civ. P. 23(a)* requires that the person representing the class be able fairly and adequately to protect the interests of all members in the class. *Fed. R. Civ. P. 23(a)(4)*. The United States Court of Appeals for the Ninth Circuit has held that representation is adequate when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Counsel

*HN19*[ ] **Securities Litigation Reform & Standards, Lead Counsel**

The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. *15 U.S.C.S. § 78u-4(a)(3)(B)(v)*.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Counsel

*HN20*[ ] **Securities Litigation Reform & Standards, Lead Counsel**

*15 U.S.C.S. § 78u-4(a)(3)(B)(v)* requires some deference to the lead plaintiff's choice of counsel. The expectation is that the person or group with the largest financial stake can best prosecute the claims, and will best be able to select, negotiate with, and monitor class counsel. However, since the lead plaintiff owes fiduciary duties to the class, it is appropriate for the court to screen the selected counsel to ensure that this counsel is appropriate to represent the interests of the class. It is reasonable to conclude that the Private Securities Litigation Reform Act of 1995 (PSLRA) does not permit a court to substitute its judgment for that of the lead plaintiff regarding the selection of counsel so long as the representation arranged is reasonable and thus does not interfere with that plaintiff's presumed adequacy to represent the entire class.

**Counsel:  [*1]**  For David Miller On Behalf of Himself and All Other Similarly Situated, Laura P Menghini, John Houx, Plaintiffs: William S. Lerach, John K. Grant, Patrick J. Coughlin, Shirley H. Huang, Willow E Radcliffe, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA; Betsy C. Manifold, Francis M. Gregorek, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, CA; Stuart H. Savett, Savett Frutkin Podell & Ryan PC, Philadelphia, PA.

For Ventro Corporation, David P. Perry, James G. Stewart, Robin A. Abrams, William C. Klintworth, Jr., Charles R Burke, Brook H Byers, Paul J Nowak, John A Pritzker, Naomi O Seligman, John L Wilkerson, William C Klintworth, Jr., Defendants: Lloyd Winawer, Cynthia A. Dy, Daniel W. Turbow, Steven M. Schatz, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

For Martha D. Greer, David A. Weber, James S. Wambach, Defendants: Lloyd Winawer, Daniel W. Turbow, Steven M. Schatz, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

For Morgan Stanley & Co. Incorporated, Fleetboston Robertson Stephens Inc., Defendants: Emily V. Griffen,

Shearman & Sterling LLP, San Francisco, CA; Jeffrey S. Facter, Shearman & Sterling, San Francisco, CA.

For Chase **[*2]** Securities, Inc., Defendant: Emily V. Griffen, Stephen D. Hibbard, Shearman & Sterling LLP, San Francisco, CA.

For Deutsche Bank Securities Inc., Defendant: Emily V. Griffen, Stephen D. Hibbard, Shearman & Sterling LLP, San Francisco, CA; Jeffrey S. Facter, Shearman & Sterling, San Francisco, CA.

For Morgan Stanley & Company Inc., FleetBoston Robertson Stevens, Inc., Defendants: Emily V. Griffen, Stephen D. Hibbard, Shearman & Sterling LLP, San Francisco, CA; Jeffrey S. Facter, Shearman & Sterling, San Francisco, CA.

For Gilardi & Co., LLC Claims Administrator, Miscellaneous, Pro se, Gilardi & Co., LLC, Ventro Securities Litigation, San Rafael, CA.

**Judges:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**Opinion by:** SAUNDRA BROWN ARMSTRONG

# Opinion

ORDER

**Plaintiff's Counsel are directed to serve this order upon all other parties in this action.**

This matter comes before the Court on Menghini Group's Motion to Consolidate All Related Cases, Menghini Group's Motion to be Appointed Lead Counsel and to Approve Plaintiffs' Choice of Counsel [Civ. 01-1287-SBA, Docket Nos. 24-1, 25-1], and John Houx's Motion to be Appointed Lead Counsel and to Approve Plaintiff's Choice **[*3]** of Counsel [Civ. 01-1713-SBA, Docket No. 13-1]. The Court heard arguments on September 25, 2001, and instructed the parties to submit supplemental briefing. Having read and considered all of the briefs filed by the parties and being fully informed, the Court hereby GRANTS the Menghini Group's motion to consolidate and GRANTS in part and DENIES in part the Menghini Group's Motion to be Appointed Lead Counsel and to Approve Plaintiffs' Choice of Counsel and GRANTS in part and DENIES in Part Houx's Motion to be Appointed Lead Counsel and to Approve Plaintiff's Choice of Counsel.

## I. Background

### A. Procedural History and Parties

There are presently eleven related securities class action lawsuits pending before this Court. [1]

 The cases were all filed within a three month span and essentially state the same causes of action. All of the cases except Sunshine Wire and Cable are class actions by stockholders. Sunshine Wire and Cable is a class action by bondholders (or noteholders).

 [*4]   Laura Porcelli Menghini, Marco Carnevale, Anthony Ross, Brad Brewer, William Murphy and Glenn Aber (hereinafter "Menghini Group") move to consolidate all of the related cases and to be appointed lead plaintiff of the common class of *both* stockholders and bondholders. John Houx ("Houx") opposes the Menghini Group in so far as they seek to consolidate all

---

of the related cases including Sunshine Wire and Cable and they seek to be lead plaintiffs of the consolidated class. Houx does not oppose consolidation of the related cases minus the Sunshine Wire and Cable action or that the Menghini Group be appointed lead-plaintiffs of the stockholder class. Houx also moves to create a separate class of bondholders and to be appointed lead plaintiff of the class of bondholders in Sunshine Wire and Cable.

### B. Factual Allegations

The allegations against the Defendants Ventro Corp., et al., are nearly the same in each case. The actions have been brought against Ventro and several of its senior executives. [2]

 The cases allege that the Defendants made a series of false and misleading statements during the class period [3]

---

about   the   Company's   business   model   and

---

[1] The eleven are:

⊞ *Go to table1*

Miller v. Ventro Corp., et al.

C-01-1287-SBA

Filed: 3/30/01

Madison Trading, Inc.

C-01-1322-SBA

Filed: 4/02/01

et al. v. Ventro Corp., et al.

Schelsinger, et al. v. Ventro Corp., et al.

C-01-1347-SBA

Filed: 4/04/01

Sagerquist v. Ventro Corp., et al.

C-01-2176-SBA

Filed: 4/12/01

Clement v. Ventro Corp., et al.

C-01-1460-SBA

Filed: 4/13/01

Criswell v. Ventro Corp., et al.

C-01-2177-SBA

Filed: 4/30/01

Sunshine Wire & Cable

Defined Benefit Pension

---

Plan Trust DTD v. Ventro Corp., et al.

C-01-1713-SBA

Filed: 5/02/01

Kenna v. Ventro Corp., et al.

C-01-1790-SBA

Filed: 5/08/01

Zhang, et al. v. Ventro Corp., et al.

C-01-1952-SBA

Filed: 5/18/01

Williams v. Ventro Corp., et al.

C-01-1962-SBA

Filed: 5/18/01

Fruchter v. Ventro Corp., et al.

C-01-2007-SBA

Filed: 5/23/01

[2] As discussed later, the bondholder plaintiffs in Sunshine Wire and Cable also named the managers of the note offering as defendants.

[3] The class period in the Miller action is December 13, 1999 to December 9, 2000. The class period in all of the other actions is equal to or shorter than this period. In particular, the class period in the Sunshine Wire and Cable action is from March 29, 2000 to December 6, 2000. Thus, unless otherwise noted, references in this memorandum to the class period refer to the Miller class period because it is the most inclusive.

earnings **[*5]** for fiscal year 2000 as part of an effort to boost the price of Ventro stock.

Ventro builds and operates platforms for vertical business-to-business e-commerce marketplace companies. It attempts to provide a secure Internet-based solution which permits it to buy products from suppliers and resell them to customers while streamlining business processes. Ventro went public on July 30, 1999, trading at $ 15 per share and raising $ 104.6 **[*6]** million, excluding overallotment. At the time of the offering, Ventro, then named Chemdex, referred to itself as the leading provider of e-commerce solutions to the life sciences industry. Ventro offered equity in exchange for buyers and suppliers contracting to be a part of the electronic marketplace. Ventro's initial public offering ("IPO") was successful. By December 1999, Ventro's stock was trading at more than $ 130 per share.

The various plaintiffs allege that, at that same time, Ventro knew that its existing business model did not work and that this would severely impair Ventro's future revenue growth. The plaintiffs allege that despite this knowledge, Ventro also wanted to raise additional money through debt offering before the bottom fell out of the its stock price. Thus, Ventro allegedly continued to make false, positive statements about its business and future revenues. At one point during the class periods, Ventro's stock traded as high as $ 243 1/2 per share and the convertibly subordinated notes ("bonds" or "notes") traded as high as $ 829.40.

On December 6, 2000, Ventro announced a major restructuring, in which it closed down two of three of its main business-to-business **[*7]** marketplaces. On January 1, 2001, Ventro's Chief Executive Officer allegedly admitted in an interview that as early as December 1999 he and the other defendants realized that Ventro's business model of independent marketplaces did not make sense. On these disclosures, Ventro's stock price fell to less than $ 2 per share and its bonds declined to less than $ 169.40, inflicting billions of dollars of damages. It is estimated that over $ 4 billion in market capitalization was wiped-out as Ventro's stock fell 99% from its class period high of over $ 243 per share.

On February 20, 2001, Ventro announced its fourth quarter and year end 2000 results; reporting no revenue and a loss of $ 618 million for fiscal year 2000. Its Chief Operating Officer, Chief Financial Officer, and its Vice President of Marketing all resigned, acknowledging

Ventro had refunded millions of dollars in fees it had previously recognized as revenue. It also announced Ventro would commence a tender offer for the $ 250 million in bonds issued in April 2000 for 27% of principal. Since December 2000, the stock price of Ventro has continued to deteriorate and now trades below $ 1 per share.

## II. Discussion

**[*8] A. Consolidation**

### 1. Legal Standard

**HN1**[⬆] *Rule 42(a)* contains the standard for consolidating actions. It provides, **HN2**[⬆]

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

*Fed. R. Civ. P. 42(a)*. **HN3**[⬆] The district court has broad discretion in making this determination. *Investors Research Co. v. U.S. District Court for the Central District of California, 877 F.2d 777, 777 (9th Cir. 1989).* The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. *EEOC v. HBE Corp., 135 F.3d 543, 550 (8th Cir. 1998).* As the language of *Rule 42(a)* provides, the presence of a common question of law or fact is a threshold requirement for consolidation. *Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1064-65 (C.D. Cal. 1999).* **[*9] HN4**[⬆] "The Private Securities Litigation Reform Act ("PSLRA") directs that cases should be consolidated where … there is more than one action on behalf of a class asserting substantially the same claim or claims.'" *In re Cendant Corp. Litigation, 182 F.R.D. 476, 478 (D.N.J. 1998)*, citing *15 U.S.C. § 78u-4(a)(3)(B)(ii)*.

**HN5**[⬆] Even if such a common question exists, however, consolidation is inappropriate if it results in "inefficiency, inconvenience, or unfair prejudice to a party." *HBE Corp., 135 F.3d at 551* (citing *Fed. R. Civ. P. 42(b)*). The party seeking consolidation bears the burden of demonstrating that convenience and judicial economy would result from consolidation. *Wright v. United States, 1993 U.S. Dist. LEXIS 11385, 1993 WL 313040, *1 (N.D. Cal. Aug. 6, 1993).*

HN6[↑] "When the suits subject to consolidation involve securities fraud, 'a court shall not make the [lead plaintiff and counsel determination] until after the decision on the motion to consolidate is rendered.'" *Yousefi, 70 F. Supp. 2d at 1065*, citing *15 U.S.C. 78u-4(a)(3)(B)(ii)*. "After the court decides [*10] the motion to consolidate, 'the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions' as soon as practicable." Id., citing *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. Thus, before the Court considers whether to appoint lead plaintiff, it must determine whether to consolidate the actions.

## 2. Analysis

Movants the Menghini Group argue that the related cases present "virtually identical factual and legal issues." The Menghini Group contends that all of the related actions make allegations against substantially the same defendants -- the Defendant Ventro and several of its senior executives -- based on allegedly false and misleading statements by the Defendants during the class period. It also notes that the related actions are mostly based on violations of *§ 10(b)* of the Exchange Act, *Rule 10b-5* promulgated thereunder, and *§ 20(a)* of the Exchange Act. Further, the Menghini Group argues that the plaintiff class in the related actions are all persons who purchased or otherwise acquired Ventro securities during the class periods. Finally, the Menghini group contends that judicial economy would be served through consolidation.

[*11] Movant John Houx ("Houx") opposes consolidation of all the related cases to the extent it includes Sunshine Wire and Cable, the case brought by bondholders. Houx contends that the cases brought by stockholders are not sufficiently similar to those brought by bondholders to qualify for consolidation under *Rule 42(a)*. In particular, Houx argues the stockholder and bondholder actions differ in the following ways: (1) they allege different statutory violations; (2) they name different plaintiffs; (3) the class period differs; (4) they involve different remedies; and (5) the claims involve different evidentiary burdens.

Like the stockholder claims, the bondholder claims allege violations of § 10(b) and § 20(a) of the Securities Act of 1934 and Rule 10b-5 (*15 U.S.C. § 78j(b)*; *15 U.S.C. § 78t(a)*; *17 C.F.R. § 240.10b-5*, respectively). Houx notes that, additionally, the bondholders allege violations of § 11, § 12(a)(2), and § 15 of the Securities Act of 1933 (*15 U.S.C. § 77k*; *15 U.S.C. § 77l*; *15 U.S.C.*

*§ 77o* respectively). Houx also points [*12] out that the bondholder action names Ventro, its senior officers and directors, and *the managers of the note offering* as defendant while the stockholder suits do not include the managers of the note offering as defendants. Additionally, Houx argues that the bondholders are entitled to different remedies. For instance, the bondholders would be entitled to rescissionary damages under *§ 12(a)(2)* while such relief is not provided to the stockholders under *Rule 10b-5*. Also, the § 11 claims brought by the bondholders have a different calculation for damages than the calculation for *Rule 10b-5*.

Finally, Houx notes that there are different evidentiary and pleading burdens involved in the stockholder or bondholder actions. For instance, *§ 11* "imposes a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston, 459 U.S. 375, 381-82, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983)* (citations omitted). Thus, a plaintiff only needs to show "a material misstatement or omission" to establish his prima facie case and liability against the issuer of a security is "virtually absolute, even for innocent misstatements." Id. This standard is less [*13] rigorous than the evidentiary burden imposed to prove a claim under *Rule 10b-5* -- e.g., that the plaintiff must prove scienter and possibly reliance. Additionally, while under *Rule 9(b)* the stockholders must plead with particularity their allegations of violations of *Rule 10b-5*, this pleading standard does not apply to *§ 11* and *§ 12* of the Securities Act. [4]

As noted above, both the stockholder and bondholder actions make claims under *sections 10(b)* and *20(a)* of the Securities Act of 1934 and *Rule 10b-5* thereunder. [*14] These claims are based on the same factual allegations. Despite the apparent similarity, Houx still argues that the differences are such that the bondholder and stockholder actions are not "substantially the same" to justify consolidation. However, HN7[↑] "consolidation is often warranted where multiple securities fraud class actions 'are based on the same "public statements and reports."'" *In re MicroStrategy Inc. Sec. Litig., 110 F.*

---

[4] Houx has claimed that these differences create a prospect of conflicting interests between the stockholder and bondholder classes which precludes consolidation. However, the argument of potential conflict of interests would appear more applicable in determining whether a particular plaintiff or group of plaintiffs should be appointed lead plaintiff. The critical question for consolidation is whether the cases are substantially related. The argument about conflicting interests is addressed below.

*Supp. 2d 427, 431 (E.D.Va. 2000)*. "Significantly, the existence of slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where essential claims and factual allegations are similar." Id. (noting that while the actions contained different claims, class periods, and parties, "none of these minor differences detract from the overwhelming factual and legal similarities among the cases.").

In *Aronson v. McKesson HBOC Inc., 79 F. Supp. 2d 1146 (N.D.Cal. 1999)*, a case decided by another court in this district, Judge Whyte confronted a similar situation. All of the related actions "were predicated by the same set of misstatements by corporate officials, causing an **[*15]** artificial inflation and then a corrective drop in share prices." See *id. at 1150*. Some of the parties opposed consolidation claiming that their claims were distinct because of a legal theory pursued or type of security. [5]

**[*16]** See id. Additionally, the parties argued that different groups had claims against different defendants, e.g., some had claims against financial advisors and accounting firms while others did not. See id. The court found neither of these arguments persuasive. See id. It also rejected the opposing parties' contentions that certain groups were entitled to separate remedies. See *id. at 1151*. Finally, the court was not persuaded by the parties' argument that because different theories involved different showings of scienter and proof, consolidation was ill-advised. See id. The court found that the existence of different pleading standards did not conflict with consolidation since the underlying factual matters were the same and "there was no bar to one plaintiff alleging multiple theories of recovery." Id., citing *Fed.R.Civ.P. 8(e)(2)*. [6]

While not controlling, *Aronson* is persuasive. The

inclusion of additional claims based on violations of *§ 11*, *§ 12(a)(2)*, and *§ 15* of the Securities Act of 1933 are all based on the same factual allegations. The need to prove additional elements to a jury does not provide substantial prejudice to either the stockholders or bondholders. Differing pleading standards or evidentiary burdens may apply in any case in which a plaintiff brings multiple causes of action. Indeed, even if the bondholder action was not consolidated with the stockholder **[*17]** action, Houx would still face the same potential prejudice because he has, in addition to the violations of the 1933 Act, alleged all of the same actions as the stockholders. Thus, Houx would still be faced with different violations with different evidentiary burdens or pleading standards.

Moreover, the fact that other parties are included does not preclude consolidation. See e.g., *Aronson, 79 F. Supp. 2d at 1150*; *In re Mircostrategy Inc. Securities Litigation, 110 F. Supp. 2d at 431-32*. The cases cited by Houx do not persuade this Court otherwise. *In re Brand Name Prescription Drugs Antitrust Litig., 1995 U.S. Dist. LEXIS 9348, 1995 WL 399684 at *1 (July 7, 1995, N.D. Ill.)*, the district court declined to consolidate three actions because the various actions named different defendants. Different defendants were named in each case and thus their trial strategies differed. See id. More importantly the court found that some of the parties would be prejudiced by evidence introduced against other defendants. See id. In this case, all of the cases name the same defendants with the addition of the managers of the note offering in the Sunshine Wire and Cable. **[*18]** The allegations against the defendants are the same. Thus there does not appear to be any prejudice to the defendants, and certainly none to Houx. Houx has also provided the Court the case of Mark v. Fleming Corp., et al., Case No. Civ. 96-506-M (W.D. Okla. Mar. 26 1997). [7]

Mark denied consolidation under similar facts, in particular the difference between the claims presented by bondholders and stockholders. The district court cited all of the factors which this Court has discussed but still concluded that consolidation was inappropriate because of the differences between the bondholder and shareholder claims. For all of the reasons discussed above, this Court is not persuaded by the analysis in Mark.

---

[5] Some of the parties sought a separation of certain claims as opposed to a broader consolidation of all claims.

[6] In discussing whether consolidation was proper, the district court in Aronson evaluated some of the arguments in terms of whether more than one lead plaintiff should be appointed. The determination on consolidation overlaps with the determination of appointing lead counsel. While Judge Whyte uses terms relating to the analysis of appointing lead counsel, Judge Whyte's analysis also applies to consolidation. However, for purposes of this memorandum, the discussion of consolidation is separate from the discussion of appointment of lead counsel.

---

[7] Pursuant to *Federal Rule of Evidence 201*, the Court exercises its discretion and takes judicial notice of the opinion of the Mark decision. See *Fed.R.Evid. 201*.

The Court has reviewed all of the complaints in the related **[\*19]** cases. The factual allegations are nearly identical and all of the actions contain the same allegations of violating provisions of the 1934 Securities Act. The class periods are all equal to or less than that in the <u>Miller</u> action. The additional statutory violations under the 1933 Securities Act and the different remedies do not outweigh the significant benefits of consolidation. The same holds true for the different pleading standards and evidentiary burdens. Plaintiffs in a common action can plead more than one violation with more than one available remedy. Indeed, as noted above, the bondholders would still face differing violations and standards even if the actions were not consolidated. On balance, there is no significant prejudice to the bondholder class. The Court finds that because of the interests of avoiding unnecessary costs or delays, consolidation is proper.

For the reasons states above, the Court GRANTS Movant Menghini Group's motion to consolidate all of the related actions.

## B. Appointment of Lead Plaintiff

Having determined that the actions should be consolidated, the issue turns to whom the Court should appoint as lead plaintiff or plaintiffs.

### [\*20]  1. Legal Standard

*HN8*[↑] The selection of the lead plaintiff is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA provides that *HN9*[↑]

> The court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereafter… referred to as the 'most adequate plaintiff')…

*15 U.S.C. § 78u-4(a)(3)(B)(i)*.

*HN10*[↑] In selecting the lead plaintiff,

> The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that
> > (aa) has either filed the complaint or made a motion [for designation as lead plaintiff];
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> > (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil*

*Procedure.*

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*.

Federal *Rule 23* generally requires that,*HN11*[↑]

> (1) the class is so numerous **[\*21]** that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative class are typical of the claims and defenses of the class, and (4) the representatives of the parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*. *HN12*[↑] In the context of determining the appropriate lead plaintiffs under the PSLRA, the requirements of "typicality" and adequacy of representation are the crucial factors. See *Armour v. Network Assocs., 171 F. Supp. 2d 1044, 2001 WL 969008, \*6 (N.D. Cal. 2001)*, citing *Gluck v. CellStar Corp., 976 F.Supp. 542, 546 (N.D. Tex. 1997)*.

However, the presumption may be rebutted

> Only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-
> > (aa) will not fairly and adequately protect the interests of the class; or
> > (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

## 2. Discussion

### a. Financial  [\*22]   Stake

#### 1.) Criteria

*HN13*[↑] In establishing a criteria to determine which plaintiff or plaintiffs is most capable of adequately representing the interests of class members, the PSLRA provides that the financial stake in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. See *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. This comports with the overall focus of the PSLRA to place securities litigation in the hands of investors and not lawyers. See e.g., *Armour, 171 F. Supp. 2d 1044, 2001 WL 969008, at \*2*, citing Statement of Managers--The "Private Securities Reform Act of 1995," H.R. Conf. Report No. 104-369, 104th Cong. 1st Ses. (1995), reprinted in U.S.C.C.A.N. 730 ("The legislative history of the PSLRA reveals that

the above provisions were motivated by Congressional concerns about the prevalence of 'lawyer-driven' securities class actions."). It was hoped that including a presumption in favor of the largest stakeholder would give preference to institutional investors which would be in a better position to manage the litigation and to limit the influence of lawyers. See id.; see **[*23]** also *In re Donnkenny Inc. Securities Litigation, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)* (noting that Congress included the presumption in favor of the largest financial stakeholder to give preference to institutional investors and limit influence of lawyers creating the class).

No institutional investors have filed motions to be appointed lead plaintiff in this action. Both the Menghini Group and Houx have represented that they widely published notice to all potential plaintiffs and that no institutional investors responded. See Menghini Group's Supplemental Filing in Support of Motion for Consolidation and for Appointment of Lead Plaintiff, P. 5-7; Supplemental Filing in Response to the Court's September 25, 2001 Questions and in Further Support of John Houx's Motion for Appointment as Lead Plaintiff and for Approval of His Choice of Counsel, P. 6-7. Thus, despite the presumption in favor of large institutional investors, none has filed motions to be appointed lead counsel and, therefore, the Court will consider the individual investors who have filed the motions.

As noted above, the Menghini Group moves to be appointed lead plaintiff of the consolidated class. **[*24]** Movant Houx opposes this motion insofar as there is one, undivided class of bondholder and stockholder plaintiffs. Houx separately moves to be appointed lead plaintiff of a subclass of bondholders. The Menghini Group claims that it has the largest financial stake in the relief sought by the class. In particular, the group claims that they purchased Ventro securities at prices inflated by the Defendants' allegedly false and misleading statements which resulted in a loss of at least $ 4,385,824.30. [8]

---

[8] The total is based on the losses of the six movants in the Menghini group: Laura Porcelli Menghini's losses totaled $ 1,816,364.00; Marco Carnevale's losses totaled $ 1,059,600.00; Anthony Ross' losses totaled $ 836,210.00; Brad Brewer's losses totaled $ 325,000.00; William Murphy's losses totaled $ 324,100.00; and Glen Aber's losses totaled $ 24,550.00. See Declaration of Shirley H. Huang In Support of Motions to (1) Appoint Laura Porcelli Menghini, Marco Carnevale, Anthony Ross, Brad Brewer, William Murphy and Glenn Aber as Lead Plaintiffs Pursuant to *§ 21D(a)(3)(B)* of the Securities Exchange Act of 1934 and to Approve Lead

The group states that it believes this is the largest financial interest in the consolidated classes. This Court has no other evidence or information that any other individual or group has a larger financial stake.

**[*25]** HN14[↑] The PSLRA itself states that the plaintiff can be a person or group of persons. See *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*; see also *In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)* (finding the PSLRA contemplates that the lead plaintiff may be a "group of persons" rather than a single individual), citing *Weltz v. Lee, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001)* and *In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 45 (S.D.N.Y. 1998)*. Many courts have interpreted this as allowing a group of people to aggregate their claims for purposes of being appointed lead plaintiffs. See e.g., *Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1066-67 (C.D.Cal. 1999)*; *In re American Bank Note Holographics Secs. Litig., 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000)*. However, there is a dispute within the courts whether a group that has no pre-litigation relationship can aggregate their amount of loss for purposes of the PSLRA.

Some courts have stated that unrelated plaintiffs--ones without a relationship existing prior to the litigation-- cannot form a group or aggregate their **[*26]** financial stakes because that would thwart Congress' intention to prevent lawyer-driven litigation. See e.g., *Aronson, 79 F. Supp. 2d at 1153*; see also *In re Razorfish, 143 F. Supp. 2d at 308-309* (rejecting lead plaintiff group because the group had "no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity."); *In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 815-16 (N.D. Ohio 1999)* (noting that a large group will have less incentive to exercise control over litigation, particularly if the group members "bear no relation and have no connection with one another beyond the fact that they suffered financial loss as a result of a drop in the price of their shares of stock."). Other courts have concluded that the collection of plaintiffs may be comprised of previously unrelated persons, so long as that group is small and presumably cohesive. [9]

---

Plaintiff's Choice of Counsel and (2) to Consolidate Related Actions Against Ventro Corporation ("Huang Decl."), Ex. B.

[9] Some court have appointed a group of plaintiffs to be lead plaintiff without discussion. See e.g., *In re Oxford Health Plans, Inc., 182 F.R.D. 42, 45 (S.D.N.Y. 1998)*. In *Chill v. Green Tree Financial, 181 F.R.D. 398, 409 (D.Minn. 1998)*,

See e.g., *Weltz v. Lee, 199 F.R.D. 129, 132-133 (S.D.N.Y. 2001)*; *Baan Company Securities Litigation, 186 F.R.D. 214, 216-17 (D.D.C. 1999).* **[\*27]** Finally, courts have opted for a third or middle option that finds no single factor dispositive, but requires the group to justify and explain its composition and structure in terms of adequacy to represent the class. See e.g., *In re Microstrategy Inc., 110 F. Supp. 2d at 435*; *In re Network Assocs. Inc. Sec. Litig., 76 F. Supp. 2d 1017, 1026 (N.D.Cal. 1999)* ("If the proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied or modified as the court sees fit.").

 **[\*28]**  None of these options has been endorsed by the Ninth Circuit. However, the middle approach adopted by the court in Microstrategy seems the best option. As that court stated, "this approach, which relies on no single factor, allows a district court maximum flexibility to select a lead plaintiff who will best represent the interests of the class and exercise control of the litigation." *Microstrategy Inc. 110 F. Supp. 2d at 435* (citations omitted). This flexible approach fulfills the intent of the PSLRA to appoint the person or persons "most capable of adequately representing the interests of class members." It achieves the goal of preventing lawyers from directing the litigation by forcing the group to justify its existence and explain its structure, particularly its control over the litigation. Cf., *Donnkenny Inc., 171 F.R.D. at 158* ("Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff."). However, in situations where no institutional investor has sought to be class counsel, as in the case at bar, the approach allows for a small group of investors to step forward to control the litigation.  **[\*29]**  As intended by the PSLRA; the final analysis requires the Court's satisfaction that the group truly will represent the best interests of the larger class. Therefore, the Court adopts the approach that requires the plaintiffs to explain and justify to the court the creation and structure of the group.

In Network Associates, Inc., Judge Alsup established a criteria by which a court could assess whether the proposed group is capable of performing the lead plaintiff function. See *Network Associates, Inc. 76 F. Supp. 2d at 1026.* **HN15**[⬆] The proposed group
should provide appropriate information about its

members, structure, and intended functioning. Such information should include descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.

Id. However, in Network Associates, Inc., the court decided that none of the proposed groups met the "strict criteria [the court] set out." *Network Associates, Inc., 76 F. Supp. 2d at 1026-27.* **[\*30]**  The court found that "in this case, neither proposed group even comes close" to justifying their function as a group. See id.
Artificial aggregation of the type here proposed should never be allowed for any purpose, including to serve as lead plaintiff or to sponsor a subgroup as lead plaintiff. Therefore, the Court will attempt to identify the single candidate with the largest financial interest in the litigation and vet that candidate against the requirements of the PSLRA.

Id. [10]

 **[\*31] 2.) Analysis**

Because this Court had reservations about the Menghini Group, the Court required further briefing by the group to justify and explain the group to the Court. The

_____

[10] Similarly, in Microstrategy, the court found that a group of investors did not qualify as a lead plaintiff:

There was nothing in the record to provide any assurance that the group was cohesive, comprised of like-minded members, or otherwise likely to function as a unified group. The group failed to present evidence with respect to its formation, its operational structure, or whether the group had ever communicated with one another about their roles. Furthermore, this group retained *three* law firms to serve as co-lead counsel; this fact suggests that the group was merely a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role, allowing them to share the lead counsel role. [Citation] The only record evidence suggesting that the group would function as a group was counsel's representation that they were "cohesive," which was not sufficient in the absence of any record evidence supporting that representation.

*Microstrategy Inc., 110 F. Supp. 2d at 437* (citations omitted) (emphasis in original).

_____

the court held that there was no arbitrary limit on the number of proposed lead plaintiffs. However, in choosing a group of six with the largest financial stake, the court did not discuss whether the group chosen was in any way related.

Menghini Group has submitted information which demonstrates that the Group was essentially brought together by different law firms for the purpose of litigation. The Group has submitted declarations which state that they will represent the best interests of the class. Additionally, the Group has stated that, following the hearing before this Court, it has created a structure to control the litigation by which the six members of the Group will meet regularly and make decisions by consensus with Ms. Menghini having the final decision relating to matters concerning stockholders and Mr. Aber having the final decision-making authority for issues relating to bondholders.

Despite these assurances, the Court finds that the group of six individuals does not satisfy the requirements of the PSLRA. The Group was essentially created by three different law firms with the intention of establishing the largest financial stake; a practice which courts have disfavored. See *Network Associates, Inc., 76 F. Supp. 2d at 1026-27*; [*32] *In re Razorfish, 143 F. Supp. 2d at 304* (rejecting a group of unrelated investors as "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff."); see also *Microstrategy, 110 F. Supp. 2d at 437* (proposed appointment of three law firms as lead counsel for proposed group of lead plaintiffs suggested group was "merely a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role" and "allowing [the firms] to share the lead counsel role."). Despite the fact that the Group has created a structure to control the litigation, the Group remains a creation of the firms which they are to control. Therefore, the Court finds it appropriate to select the individual movants whose financial interest suggests that he or she will best represent the interests of the class. However, before the Court can determine that individual or individuals, it must determine whether there should be a separate subclass consisting of note or bondholders.

### 3.) Creation of Subclass or Appointment of Co-Lead Plaintiffs

[*33] Houx argues that the court should create a separate group of plaintiffs consisting of the bondholders and that he be appointed lead plaintiff because he has the greatest financial stake of the bondholders. He contends this is necessary because the Menghini Group will not adequately represent bondholders and that there is a unique defense to their representation. The Menghini Group initially opposed

the creation of a separate subclass of bondholders because this would potentially fragment the litigation. However, in both the hearing before this Court and in their briefs, the Menghini Group has stressed that Mr. Aber will represent the interest of bondholders. To underscore this point, the Menghini Group has proposed a structure which would allow Mr. Aber to have the final decision-making authority for issues concerning the bondholders. This demonstrates that the Menghini Group acknowledges that the bondholders' interests may not be co-extensive with the stockholders' interests. However, the decision to create a separate class or co-lead plaintiffs is within the discretion of the Court.

In arguing that the Menghini Group will not adequately represent the bondholders, Houx restates [*34] the arguments he made in opposition to the motion to consolidate, namely, that there are additional legal theories involved with the bondholders, that different defendants are named, and that different evidentiary and pleading standards are involved. Houx contends that these differences create a potential for intra-class conflict, and for this reason the Court should create a separate class with a separate lead plaintiff and separate counsel.

HN16[⬆] Courts have been cautious in creating subclasses for different groups in securities class actions. See e.g., *In re Cendant Corp. Litigation, 182 F.R.D. 476, 480 (D.N.J. 1998)* ("Cendant II") (creating subclass "would injure the purpose of the PSLRA by fragmenting the plaintiff class and decreasing client control."). As noted above, courts have found that differences in class periods, pleading and evidentiary standards or differences in named defendants do not preclude consolidation or necessitate the creation of co-lead plaintiffs or subclasses. See e.g., *Microstrategy Inc., 110 F. Supp. 2d 427*; *Aronson, 79 F. Supp. 2d 1146*. [11]

Thus none of those differences will necessarily warrant

---

[11] Houx has noted that the class period for the bondholders in Sunshine Wire and Cable is shorter than that in Miller. He contends that discovery might be more expansive than necessary to cover the bondholder claims. However, as the Menghini Group has noted, Houx also seeks coordination of discovery between the Note and Common Stock Actions. See Houx's Memorandum of Points and Authorities in Opposition to Consolidate All Related Actions Against Ventro Corporation at 2, n.3. Thus, it appears that Houx is not overly concerned about the expansive nature of the discovery in the stockholder suits.

a subclass. Moreover, **[*35]** the fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs. See e.g., *In re Cendant Corp. Litigation, 182 F.R.D. 144, 148 (D.N.J. 1998)* ("Cendant I"). As the court stated in Cendant Corp. I,

> More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individual interest is represented. Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over others. On the other hand, representation by a disparate group of plaintiffs, each seeking only a protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

Id.

**[*36]** However, that is not to say that courts have not decided to create subclasses or co-lead plaintiffs if necessary to ensure that the class members interests are adequately represented. See e.g., *In re Oxford Health Plans, Inc. Securities Litigation, 182 F.R.D. 42, 45 (S.D.N.Y. 1998)* (finding that the interests of proposed class best served by appointing three co-lead plaintiffs because two of the parties were large institutional investors and there was a concern over the potential cost of the litigation); cf. *Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 405-406 (D.Minn 1998)* (finding that because option holders did not have standing under the PSLRA it was necessary to consolidate stockholder claims separately from option claims). Thus the question is whether a subclass is necessary to protect the bondholders interests.

In this case, the factual allegations are identical and the same general legal theory applies for both classes. The fact that different securities are involved does not necessarily merit a separate subclass. See e.g., *Cendant I, 182 F.R.D. at 148*. The additional defendants, statutory violations, pleading and **[*37]** evidentiary standards of bondholder class are not antagonistic to any common claims between the stockholders and bondholders.[12]

The types of situations in which subclasses or co-lead plaintiffs have been created--potential problems of standing, costs of litigation, etc.--are not truly present. On balance, the differences between the stockholder and bondholder classes would appear to be not so significant as to warrant the creation of a separate subclass.

**[*38]** Nonetheless both parties have apparently conceded that there are potential differences between the bondholders and stockholders such that a bondholder must be included as a lead plaintiff. The Court is mindful that a balance must be struck in determining the appropriate lead plaintiff. See *Cendant I, 182 F.R.D. at 148*. The Court, therefore, finds its appropriate to appoint a bondholder as co-lead plaintiff in addition to a stockholder. However, to avoid fragmentation, the Court finds the model suggested by the Menghini Group to be the best structure. The bondholder representative shall be a part of a group of co-lead plaintiffs. Together this group shall represent the entire putative class of litigants. In situations in which the bondholders interests are separate and independent of the stockholders interests, the bondholder representative shall have the final decision-making authority for those issues. Equally, the stockholder representative shall have the final decision-making authority for issues concerning only the stockholders. In all other situations, the co-lead plaintiffs shall make

---

2d 715 (1999) the Supreme Court expressed concerns about intra-class conflict. However, in each of those cases dealing with asbestos related injuries, the Court was focused on whether class certification was proper for terms of settlement. See *Amchem, 521 U.S. at 620*; *Ortiz, 527 U.S. at 847*. Also important to the Court's analysis in both cases was that the putative class contained plaintiffs with past injuries as well as speculative plaintiffs with potential future injuries and that there were significant differences in both the causes of the injuries and the proof of damages. See *Amchem, 521 U.S. at 627*; *Ortiz, 527 U.S. at 824*. In each case the Court found that the context of settlement and the differences in class members prevented the certification of such a large class.

Factually neither of the cases is applicable. Moreover, in Amchem and Ortiz, the fact that an undetermined, speculative plaintiff class was involved, and the significant differences in the causes of injuries and proof of damages created the significant probability of intra-class conflict. Here, there is a determinable number of plaintiffs, all of the alleged injuries stem from the same factual allegations and are based on the same general theory of misrepresentation, albeit with additional violations under the 1933 Act. Moreover, unlike in the settlement context in Amchem and Ortiz, the Court can later create a subclass if a conflict truly does arise.

---

[12] Houx also notes that in *Amchem Products v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997)* and *Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S.Ct. 2295, 144 L. Ed.*

decisions by consensus.

#### 4.) Co-Lead Plaintiffs

##### a.) Stockholder   [*39]   Representative

Movant Laura Porcelli Menghini ("Menghini") has represented that she sustained losses of over $ 1,800,000. She is the largest financial stakeholder who has moved to be appointed lead plaintiff. As noted above, the PSLRA favors the investors with the largest financial stake as presumptively representing the best interests of the class. Thus the Court shall consider Menghini as a potential co-lead plaintiff.

##### b.) Bondholder Representative

Movant Houx claims that his loss is $ 39,400.00, which is the largest of those bondholders before the Court who suffered losses during the class period. This is in comparison to the roughly $ 25,000 loss allegedly suffered by noteholder Glen Aber ("Aber") who is a member of the Menghini Group. [13]
 Because Houx is the largest financial stakeholder of any bondholder presently moving this Court to be appointed lead plaintiff, Houx shall be vetted by the Court as the potential co-lead plaintiff.

 [*40]  Houx also notes that Aber sold his bonds in October of 2000 and did not own any other Ventro bonds during the last two months of the class period. Houx claims this gives rise to a unique defense against Aber because Aber did not sell after the "correction" in December of 2000. Essentially, Houx is arguing that Aber's status as an "in/out" [14]

 [*41]  trader disqualifies him as an adequate representative. Because the Court finds that Houx has a

---

[13] Mr. Houx disputes this amount in terms of the loss from bondholdings and puts the figure at $ 18,375.00.

[14]

An in/out trader is one who both purchases and sells stock during the same period of alleged price inflation. Unlike the typical "retention" trader who holds his or her securities throughout the class period, an in/out plaintiff recoups at least some of the loss incurred by the purchase because he both buys and sells during the period of price inflation. Thus, in awarding damages, a court will subtract from his calculated injury upon purchase, the amount of his recoupment at the time of sale.

*Welling v. Alexy, 155 F.R.D. 654, 661 (N.D.Cal. 1994)*.

larger financial interest than Aber, the Court will not decide whether a unique defense also precludes Aber from representing the best interests of the bondholders. [15]

 [*42]  **b. Federal Rule 23 Considerations**

#### 1.) Typicality

*HN17*[⬆] *Rule 23* states that a class action is proper only where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P. 23(a)(3).* "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Takeda v Turbodyne Techs., Inc., 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999)*, citing *Hanlon v. Chrysler Corp., 150 F.3d 1011,1019 (9th Cir: 1998)*. "The test is that the class representative 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Haley v. Medtronic, Inc., 169 F.R.D. 643 at 649 (1996)*, citing, *inter alia, CRLA v. Legal Services Corp., 917 F.2d 1171,1175 (9th Cir. 1990)*. "In other words, a claim is typical if it: (1)

---

[15] In *Microstrategy Inc.,* the court noted in a footnote that one party was not viable as a lead plaintiff because his status as an "in/out" trader made him potentially subject to a unique defense based on the timing of his sales. See *110 F. Supp. 2d at 437, n. 23*. However, there is not a *per se* rule against having an in/out trader as a class representative. See *Welling v. Alexy, 155 F.R.D. 654, 661-662 (N.D.Cal. 1994)*. In a thorough opinion, Judge Orrick noted that while there are some potential misgivings about having an in/out trader as a class representative, this did not mean such a person could not serve as a class representative. See id. The court noted that the Ninth Circuit had upheld certification of classes containing both in/out and retention traders. See id., citing *Black v. Barrack, 524 F.2d 891 (9th Cir. 1975)*; *Wool v. Tandem Computers, Inc. 818 F.2d 1433, 1437 (9th Cir. 1987)* ("because market forces are independent of corrective disclosures, an in-and-out trader… may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures."). The bigger problem with in/out traders is that proving reliance is made more difficult. See e.g., *Welling, 155 F.R.D. at 661* ("If… the class was fooled into purchasing Cirrus stock until the disclosure of accurate, but adverse information at the end of the class period… then it appears Welling was not duped because he sold much of his Cirrus stock before the late April disclosure."). Since Mr. Aber is not the largest financial stakeholder, the Court does not decide whether his status as an in/out trader would preclude Aber from representing the best interests of the class.

2001 U.S. Dist. LEXIS 26027, *42

arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) if is based on the same legal theory as their claims." *Haley, 169 F.R.D. at 649,* [*43] citing *Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).*

The claims of Menghini and Houx are typical of the unnamed plaintiff class. [16]
The members of the potential co-lead plaintiff group as well as all the class members acquired securities -- either stocks or bonds -- during the class period, at prices allegedly inflated by the Defendants' misconduct. The co-lead plaintiffs suffered monetary damages, again allegedly by the Defendants' misconduct. Finally, as with all of the actions filed, the potential co-lead plaintiffs allege that the Defendants violated federal securities law by publicly disseminating materially false and misleading statements about Ventro during the class period. The co-lead plaintiffs' claims can be said to be co-extensive with those of the class in that they arise out of the alleged misconduct and seek relief under the same legal theories. Therefore, the co-lead plaintiffs' claims are typical of the class.

### [*44]  (2.) Fair and Adequate Representation

---

[16] For instance, the Menghini Group lists the following questions which are common to all of the actions:

1. Whether the federal securities laws were violated by defendant's alleged misconduct;

2. Whether the defendants omitted and/or misrepresented material facts during the Class Period;

3. Whether the individual defendants caused Ventro to issue false and misleading statements during the Class Period

4. Whether defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

5. Whether the market price of Ventro securities was artificially inflated during the Class Period because of defendants' conduct complained of herein; and

6. Whether members of the class have sustained damages and, if so, what is the proper measure of damages.

Notice of Motion, Motion and Memorandum of Points and Authorities in Support Thereof to Appoint Laura Porcelli Menghini, Marco Carnevale, Anthony Ross, Brad Brewer, William Murphy and Glenn Aber as Lead Plaintiffs Pursuant to *Section 21D(a)(3)(B)* of the Securities Exchange Act of 1934 and to Approve Lead Plaintiff's Choice of Counsel.

*HN18*[↑]  Rule 23(a) requires that the person representing the class be able "fairly and adequately to protect the interests" of all members in the class. See Fed. R. Civ. P. 23(a)(4). "The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Takeda, 67 F. Supp. 2d at 1137,* citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982).* "In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Takeda, 67 F. Supp. 2d at 1137,* citing *Riordan v. Smith Barney, 113 F.R.D. 60, 64 (N.D. Ill. 1986).*

The potential co-lead plaintiff group contains both a stockholder and a bondholder. The group has the largest financial stake in the action of any movant before the Court and, therefore, it may be assumed they have a strong interest in [*45] fully prosecuting this action. See e.g., *Cendant Corp., 182 F.R.D. at 148* (public pension fund had "significant holdings in each type of security held by the putative plaintiff class and have suffered enormous losses. It is unrealistic to assume that they would not travel every avenue that could potentially enhance their potential recovery."). The potential co-lead plaintiffs have also submitted sworn declarations confirming that they are willing to serve as class representatives and to assume the responsibilities which thus adhere. The Court is satisfied that the co-lead plaintiffs will fairly and adequately represent the best interests of the class.

For all of the foregoing reasons, the Court finds that it is appropriate to appoint Laura Porcelli Menghini and John Houx as co-lead plaintiffs. Menghini will be given final decision-making authority for those issues concerning only the stockholders and Houx will be given final decision-making authority for those issues concerning only the bondholders. In all other decisions, the co-lead plaintiffs shall work as a group and make decisions by consensus. Therefore, the Court GRANTS in part and DENIES in part the Menghini [*46] Group's motion to be appointed lead plaintiffs and GRANTS Houx's motion to be appointed lead plaintiff.

### C. Approval of Lead Plaintiff's Attorney

The final determination before the Court the approval of lead counsel for the co-lead plaintiffs. The PSLRA provides that, *HN19*[↑] "the most adequate plaintiff

shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4(a)(3)(B)(v).* **HN20**[↑] This requires some deference to the lead plaintiff's choice of counsel. See *Armour, 171 F. Supp. 2d 1044, 2001 WL 969008, at *9.* "The expectation is that the person or group with the largest financial stake can best prosecute the claims, and will best be able to select, negotiate with, and monitor class counsel." *Takeda v. Turbodyne Techs., Inc., 67 F. Supp. 2d 1129, 1132 (C.D. Cal. 1999).* However, since the lead plaintiff owes fiduciary duties to the class, it is appropriate for the Court to screen the selected counsel to ensure that this counsel is appropriate to represent the interests of the class. See *Amour, 171 F. Supp. 2d 1044, 2001 WL 969008, at *9.* AS Judge Jenkins stated in Armour, "it is reasonable to conclude **[*47]** that the PSLRA does not permit a court to substitute its judgment for that of the lead plaintiff regarding the selection of counsel so long as the representation arranged is reasonable and thus does not interfere with that plaintiff's presumed adequacy to represent the entire class."

This matter is complicated by the fact that the two co-lead plaintiffs have proposed the appointment of different counsel as lead counsel. Menghini originally sought the appointment of three firms -- Milberg Weiss Bershad Hynes & Lerach, LLP; Savett Frutkin Podell & Ryan, P.C.; and Schiffrin & Barroway, LLP. Noting that the Court had strong reservations for the need for three law firms, the Menghini Group agreed that Milberg Weiss Bershad Hynes and Lerach would be the proposed firm if the Court continued to have reservations. On the other hand, Houx proposed a different firm -- Wolf, Haldenstein, Adler, Freeman and Herz LLP -- to be appointed as lead counsel. While the Court has authority to approve or disprove the selection of lead counsel, there appears no authority which would allow the Court to appoint lead counsel to a plaintiff who has not requested the appointment. In light of the Court's decision **[*48]** to appoint Menghini and Houx as co-lead plaintiffs, the Court defers its decision on the selection of lead counsel. Menghini and Houx are ORDERED to meet and confer for the purpose of proposing the appointment of lead counsel for the single putative class. The Court has reviewed the firm resumes of all of the firms proposed separately by Menghini and Houx and is satisfied that each would adequately and competently serve as counsel to the class.

Further, the Court reminds Menghini and Houx that it has strong reservations about appointing multiple co-counsel. At the hearing on September 25, 2001, the

Menghini Group's stated that the bi-coastal nature of the litigation supported the need for multiple firms. Despite possible benefits for division of labor and sharing of resources, there is also a serious drawback when multiple firms are charged with representing one group. The potential for conflict between the firms in terms of strategy is apparent. To the extent that one firm assume the leadership position in the litigation, it begs the question of the true need for additional firms. In light of these concerns, the Court reaffirms its preference for a single law firm to represent the **[*49]** group. However, if Menghini and Houx believe that more than one law firm is necessary, they must demonstrate to the Court's satisfaction the need for multiple lead counsel. In particular, the co-lead plaintiffs must demonstrate what specifically about this case requires the need for co-lead counsel, any agreement between the firms on division of labor and resources, and any history of the proposed firms working together in similar litigation. [17]

Given the need of Menghini and Houx to meet and confer about the proposed lead counsel, the Court finds it is appropriate for the parties to submit their proposed lead counsel on or before January 8, 2002.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS Movant Menghini Group's Motion to Consolidate and GRANTS in part and DENIES in part Movant Menghini's Motion to be Appointed **[*50]** Lead Plaintiffs and to Approve Lead Plaintiffs' Choice of Counsel. The Court further GRANTS in part and DENIES in part Movant John Houx's Motion to be Appointed Lead Plaintiff and to Approve Lead Plaintiff's Choice of Counsel.

Accordingly,

IT IS ORDERED THAT the following actions are CONSOLIDATED for all purposes, including, but not limited to, discovery, pretrial proceedings and trial proceedings:

[⊞] *Go to table2*

 **[*51]** The consolidated cases shall be identified as: In re Ventro Corporation Securities Litigation, Case No. Civ. 01-01287 SBA, and the files of this action shall be maintained in one file under Master File No. Civ. 01-

---

[17] To the extent the parties feel this would compromise the integrity of their trial strategy, the parties may petition the Court to file their briefs under seal.

01287 SBA. Any other actions now pending or hereafter filed in this District which are found to be related and which arise out of the same facts and claims alleged shall be consolidated for all purposes.

Every pleading in these consolidated actions, or in any separate action included therein, shall bear the following caption:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re VENTRO CORPORATION SECURITIES LITIGATION

This Document Relates To:

Master File No. Civ. 01-01287 SBA

CLASS ACTION

When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable only to some, but not all of such actions, this Court's docket number for each individual action to which the paper is intended to be applicable and the last name of the first-named plaintiff **[*52]** in said action shall appear immediately after the words "This Docket Relates To:" in the caption described above.

Lead plaintiffs shall file a consolidated amended class action complaint no later than forty- five (45) days from the date this Court approves the lead plaintiff's choice of lead counsel, unless otherwise agreed between the parties. This complaint shall be deemed the operative complaint, superseding all complaints filed in any of the actions consolidated hereunder or in any related cases. The consolidated amended class action complaint shall be treated as if it were the original complaint and all defendants shall have forty-five (45) days after the filing and service of the consolidated amended class action complaint to answer or otherwise respond. Notwithstanding the filing of the consolidated amended class action complaint, lead plaintiffs shall have the right to amend the consolidated amended class action complaint pursuant to *Rule 15(a)*. In the event that defendants file any motions directed at the consolidated amended class action complaint, counsel are to meet and confer and report to the Court with regard to an acceptable briefing and hearing schedule for such motions.

**[*53]** After the appointment of lead counsel, lead counsel and the counsel for defendants shall serve all papers on each other via overnight delivery sent on the day the parties file their papers with the Court, unless otherwise agreed upon by the parties. After the appointment of lead counsel, all other parties shall be served by lead counsel and counsel for defendants via first class mail sent on the day the parties file their papers with the Court, unless otherwise agreed to by the parties.

IT IS FURTHER ORDERED THAT Laura Porcelli Menghini and John Houx are APPOINTED co lead-plaintiffs in accordance with the requirements as described above.

IT IS FURTHER ORDERED THAT co-lead plaintiffs Menghini and Houx shall meet and confer for the purpose of proposing lead counsel. They shall submit their proposed lead counsel for approval of this Court on or before **January 8, 2002.**

IT IS SO ORDERED.

Dated: 11-28-01

SAUNDRA BROWN ARMSTRONG

United        States        District        Judge

2001 U.S. Dist. LEXIS 26027, *53

**Table1 (***Return to related document text***)**

**Table1 (***Return to related document text***)**

**Table2 (***Return to related document text***)**

| | | |
|---|---|---|
| Miller v. Ventro Corp., et al. | C-01-1287-SBA | Filed: 3/30/01 |
| Madison Trading, Inc, et al, v. Ventro Corp., et al. | C-01-1322-SBA | Filed: 4/02/01 |
| Schelsinger, et al. v. Ventro Corp., et al. | C-01-1347-SBA | Filed: 4/04/01 |
| Sagerquist v. Ventro Corp., et al. | C-01-2176-SBA | Filed: 4/12/01 |
| Clement v. Ventro Corp., et al. | C-01-1460-SBA | Filed: 4/13/01 |
| Criswell v. Ventro Corp., et al. | C-01-2177-SBA | Filed: 4/30/01 |
| Sunshine Wire & Cable Defined Benefit Pension Plan Trust DTD v. Ventro Corp., et al. | C-01-1713-SBA | Filed: 5/02/01 |
| Kenna v. Ventro Corp., et al. | C-01-1790-SBA | Filed: 5/08/01 |
| Zhang, et al, v. Ventro Corp., et al. | C-01-1952-SBA | Filed: 5/18/01 |
| Williams v. Ventro Corp., et al. | C-01-1962-SBA | Filed: 5/18/01 |
| Fruchter v, Ventro Corp., et al. | C-01-2007-SBA | Filed: 5/23/01 |

**Table2 (***Return to related document text***)**

End of Document

⚠️ Caution
As of: October 30, 2018 2:35 PM Z

## *Mitchell v. Complete Mgmt., Inc.*

United States District Court for the Southern District of New York

September 15, 1999, Decided ; September 17, 1999, Filed

99 Civ. 1454 (DAB), 99 Civ. 2087 (DAB), 99 Civ. 2342 (DAB), 99 Civ. 2660 (DAB), 99 Civ. 2846 (DAB)

**Reporter**
1999 U.S. Dist. LEXIS 14460 *; Fed. Sec. L. Rep. (CCH) P90,652

GARY MITCHELL, ALEXANDER MITCHELL, and BETSY MITCHELL, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs, -against- COMPLETE MANAGEMENT, INC., STEVEN RABINOVICI, DAVID R. JACARUSO, ARTHUR L. GOLDBERG, JOSEPH M. SCOTTI, DENNIS SHIELDS, MANUS O'DONNELL, CLAIRE A. CARDONE, LAWRENCE W. SHIELDS, M.D., NATIONAL SECURITIES CORPORATION, COMMONWEALTH ASSOCIATES, PRUDENTIAL SECURITIES, and ARTHUR ANDERSEN, LLP., Defendants.

**Disposition: [*1]** Motion to Consolidate Cases for All Purposes GRANTED; Plaintiffs' Motion to appoint the CMI Group as Lead Plaintiffs DENIED. Plaintiffs' Motion to appoint Stull, Stull, & Brody, Schatz & Nobel, P.C. and Weiss & Yourman as Co-Lead Counsel DENIED without prejudice to its renewal at such time that Plaintiffs submit a new motion for Lead Plaintiff.

## Core Terms

lead plaintiff, appoint, consolidated, securities, class member, consolidated actions, Co-Lead, class action, caption, cases, lead counsel, requirements, Plaintiffs'

## Case Summary

### Procedural Posture
On motion by plaintiffs to consolidate cases in securities fraud class action, motion by plaintiffs to be appointed co-lead plaintiffs, and motion by plaintiffs to appoint law firm as co-lead counsel.

### Overview

Plaintiffs filed class action against defendants, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 78aa*, and *Rule 10b-5*. Plaintiffs filed action on behalf of themselves and all others who purchased defendant company's common stock or convertible debentures. Plaintiffs filed motion for consolidation, motion to be appointed co-lead plaintiffs, and motion for approval of their selection of lead counsel for the class. Court granted plaintiffs' motion to consolidate cases, finding that the actions involved common questions of law and fact. Court denied plaintiffs' motion to appoint group of 141 class members as lead plaintiffs as unwieldy and directed plaintiffs to propose a lesser number of class members for appointment of lead plaintiff. Court denied plaintiffs' motion to appoint law firm as co-lead counsel without prejudice.

### Outcome
Plaintiff's motion to consolidate cases granted, as actions involved common questions of law and fact; plaintiffs' motion to appoint group of 141 class members as lead plaintiffs denied as unwieldy; plaintiffs' motion to appoint law firm as co-lead counsel denied without prejudice.

## LexisNexis® Headnotes

Civil Procedure > Trials > Consolidation of Actions

*HN1*[⤓] **Trials, Consolidation of Actions**

*Fed. R. Civ. P. 42(a)* provides: when actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

1999 U.S. Dist. LEXIS 14460, *1

Civil Procedure > Trials > Consolidation of Actions

**HN2**[ ]  **Trials, Consolidation of Actions**

In securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Civil Procedure > Special Proceedings > Class Actions > Notice of Class Action

**HN3**[ ]  **Class Actions, Prerequisites for Class Action**

The Private Securities Reform Act of 1995 requires plaintiffs filing a securities fraud class action complaint to publish notice of the pendency of the suit no later than 20 days after the filing date.  *15 U.S.C.S. § 78u-4(a)(3)*.

Civil Procedure > Special Proceedings > Class Actions > Notice of Class Action

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

Civil Procedure > Special Proceedings > Class Actions > General Overview

**HN4**[ ]  **Class Actions, Notice of Class Action**

In a securities fraud class action, no later than 60 days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff.  *15 U.S.C.S. § 78u-4 (a)(3)(A)(i)(II)*.

Civil Procedure > Special Proceedings > Class Actions > General Overview

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

**HN5**[ ]  **Special Proceedings, Class Actions**

The Private Securities Reform Act of 1995, *15 U.S.C.S. § 78u-4*, requires courts to take a more active role in supervising the process of selecting lead plaintiffs.

Civil Procedure > Special Proceedings > Class Actions > General Overview

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

**HN6**[ ]  **Special Proceedings, Class Actions**

See *15 U.S.C.S. § 78u-4(a)(3)(B)(i)*.

Antitrust & Trade Law > Clayton Act > Defenses

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

Civil Procedure > Special Proceedings > Class Actions > General Overview

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Counsel

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

**HN7**[ ]  **Clayton Act, Defenses**

Under the Private Securities Reform Act of 1995, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (a) has either filed the complaint or made a motion in response to a notice; (b) in the determination of the court, has the largest financial interest in the relief sought by the class; and (c) otherwise satisfies the requirements of *Fed. R. Civ. P. 23*.  *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)*. This presumption may be rebutted by proof by a member of the purported class that the presumptively most adequate plaintiff: (a) will not fairly and adequately

protect the interests of the class; or (b) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)*.

Civil Procedure > Special Proceedings > Class Actions > General Overview

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Counsel

*HN8*[🔽] **Special Proceedings, Class Actions**

The Private Securities Reform Act of 1995 provides that the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. *15 U.S.C.S. § 78u-4(a)(3)(B)(v)*.

**Counsel:** For GARY MITCHELL, ALEXANDER MITCHELL, BETSY MITCHELL, plaintiffs (99-CV-1454): Jules Brody, Stull, Stull & Brody, New York, NY.

For BENTON J. SELTZER, plaintiff (99-CV-2087): Jules Brody, Stull, Stull & Brody, New York, NY.

For RICHARD LOWINGER, plaintiff (99-CV-2342): Robert J. Berg, Bernstein, Liebhard & Lifshitz, L.L.P., New York, NY.

For LINDEMANN LIVING TRUST, I. JOEL FELDMAN, SUSAN FELDMAN, plaintiffs (99-CV-2660): Mark D. Smilow, Joseph H. Weiss, Weiss & Yourman, New York, NY.

For GAMEL TAYAB, plaintiff (99-CV-2846): Aaron L. Brody, Jules Brody, Stull, Stull & Brody, New York, NY.

For GAMEL TAYAB, plaintiff (99-CV-2846): Thomas G. Shapiro, Shapiro, Haber & Urmy, L.L.P., Richard J. Vita, Boston, MA.

For PRUDENTIAL SECURITIES, defendant (99-CV-1454): George Wailand, Cahill Gordon & Reindel, New York, NY.  **[*2]**

**Judges:** DEBORAH A. BATTS, United States District Judge.

**Opinion by:** DEBORAH A. BATTS

# Opinion

## MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

Gary Mitchell, Alexander Mitchell, and Betsy Mitchell (collectively "Plaintiffs") filed the instant securities fraud class action and moved to have it consolidated with four other actions against the same Defendants. Plaintiffs filed a motion to be appointed Co-Lead Plaintiffs, along with other class members, and for the approval of their selection of Co-Lead Counsel for the class. For the following reasons, the Court grants the motion to consolidate, and denies the motion for the CMI Group, as it is currently defined, to be appointed Lead Plaintiffs.

## I. BACKGROUND

On February 25, 1999, Plaintiffs filed the instant class action against Complete Management, Inc. ("CMI"), its officers, directors, underwriters and accountants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), *15 U.S.C. § 78aa* and *Rule 10b-5*. Plaintiffs filed the action on behalf of themselves and all others who purchased CMI common stock or convertible debentures between May 1, 1996 and **[*3]** August 13, 1998. (Compl. P 1.) CMI provides physician practice management services to hospitals and medical practices in the New York area. (Id. P 2.) Plaintiffs allege that Defendants omitted and/or misrepresented information regarding the financial stability of CMI and its business prospects. (Id. P 1.)

In accordance with the requirements of the Private Securities Reform Act of 1995 ("PSLRA"), *15 U.S.C. § 78u-4*, Plaintiffs published notice of the pendency of the instant action over the Business Wire on February 26, 1999. (See Brody Decl. Ex. B.) Since the filing of the instant Complaint, four other class action complaints arising out of the same facts and alleging virtually identical claims have been filed in the Southern District of New York. [1]

 Plaintiffs filed their motion for consolidation and for appointment of Lead Plaintiff and Lead Counsel on April 27, 1999. No other class members in this or any of the related actions have filed a motion for Lead Plaintiff or

---

[1] The Court has accepted the following four actions as related to the instant Complaint: [all reported at: *1999 U.S. Dist. LEXIS 14460]* Seltzer v. Complete Management, Inc., et al., 99 Civ. 2087; Lowinger v. Complete Management, Inc., et al., 99 Civ. 2342; Lindemann Living Trust, et al. v. Complete Management, Inc., et al., 99 Civ. 2660; Tayab v. Complete Management, Inc., et al., 99 Civ. 2846.

Lead Counsel.

[*4]  II. DISCUSSION

A. Motion to Consolidate

Plaintiffs move for consolidation of the five related actions, and any subsequently filed related actions, pursuant to *Rule 42(a) of the Federal Rules of Civil Procedure*. **HN1**[↑] *Rule 42(a)* provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

*Fed. R. Civ. P. 42(a).* "Courts have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85* (2d Cir.), cert. denied, *498 U.S. 920, 112 L. Ed. 2d 250, 111 S. Ct. 297 (1990).* **HN2**[↑] "In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Werner v. Satterlee, Stephens, Burke & Burke, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)* (quoting *Lloyd v. Indus. Bio-Test Lab., Inc., 454 F. Supp. 807, 812 (S.D.N.Y. 1978)).* [*5] Plaintiffs assert that the related actions involve common questions of law and fact, similar issues regarding class certification, and identical discovery. See Pls.' Mem. Law at 14.

The claims alleged in the five cases are identical. They are based on the exact same public statements and reports and they are all against the same Defendants. The only differences are in the types of securities purchased by Plaintiffs and that the putative class period in Lindemann Living Trust is slightly shorter. [2] Accordingly, the Court finds that the five actions involve common questions of law and fact, and that in the

interest of judicial economy these cases shall be consolidated.

[*6]  B. Motion For Lead Plaintiff

In 1995, Congress enacted the PSLRA in response to perceived abuses in securities fraud class actions. The purpose behind the PSLRA was to prevent "lawyer-driven" litigation, and to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998)*; see also *In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997)*.

Accordingly, the PSLRA amended the Exchange Act by altering the procedures for bringing such class actions. *In re Oxford Health Plans, 182 F.R.D. at 43.* **HN3**[↑] The PSLRA requires plaintiffs filing a securities fraud class action complaint to publish notice of the pendency of the suit no later than twenty days after the filing date. *15 U.S.C. § 78u-4(a)(3).* **HN4**[↑] No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. *15 U.S.C. § 78u-4* [*7] *(a)(3)(A)(i)(II).* If a motion for consolidation has been made, the Court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." *15 U.S.C. § 78u-4(a)(3)(B)(ii).*

In addition to amending filing procedures, **HN5**[↑] the PSLRA requires Courts to take a more active role in supervising the process of selecting lead plaintiffs. See *D'Hondt v. Digi Int'l, 1997 U.S. Dist. LEXIS 17700*, *8, Nos. Civ. 97-5, Civ. 97-295, Civ. 97-156, Civ. 97-538, Civ. 97-531, Civ. 97-440, 1997 WL 405668, at *2 (D.Minn. Apr. 3, 1997) ("the Reform Act mandates greater Court supervision in the selection of claimants, who will control the prosecution of such claims, and in the decision, by those claimants, to retain the assistance of legal counsel to prosecute their claims").

**HN6**[↑] The PSLRA provides that:

> The court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff").

---

[2] Plaintiffs in Lindemann Living Trust purchased convertible debentures; Plaintiffs in Mitchell and Lowinger purchased convertible debentures and common stock; and Plaintiffs in Tayab and Seltzer generally state that they purchased securities. The class period identified in Lindemann Living Trust is between June 6, 1996 and August 13, 1998, while the class period in the other four cases is between May 1, 1996 and August 13, 1998.

1999 U.S. Dist. LEXIS 14460, *7

*15 U.S.C. § 78u-4(a)(3)(B)(i)*. HN7[↑] Under the PSLRA, there [*8] is a rebuttable presumption that the most adequate plaintiff is "the person or group of persons that - (aa) has either filed the complaint or made a motion in response to a notice . . . (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*.

This presumption may be rebutted by proof by a member of the purported class "that the presumptively most adequate plaintiff - (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. Plaintiffs' motion for Lead Plaintiff and for approval of their selection of Co-Lead Counsel is unopposed.

Plaintiffs move to be appointed Lead Plaintiffs along with over one hundred class members. This group of 141 purchasers of CMI securities identifies itself as the CMI group and together these class members have sustained $ 11,394,836.00 in out of pocket losses. [*9] See Pls.' Mem. Law at 1 n.1. Plaintiffs argue that the CMI group should be appointed Lead Plaintiff for the following reasons: they have complied with the filing procedures under the PSLRA; they have the largest financial interest in relief sought by the Class; they satisfy the requirements of *Rule 23*; and the presumption in their favor has not been rebutted. See Pls.' Mem. Law at 8-12.

Essentially Plaintiffs argue that the CMI group should be appointed Lead Plaintiff because the PSLRA does not prohibit it from being approved. Several courts have interpreted the PSLRA to allow a group of people to be named lead plaintiff. See *In re Oxford Health Plans, 182 F.R.D. at 45 (S.D.N.Y. 1998)* (appointing three groups of investors as co-lead plaintiffs); D'Hondt, 1997 WL 405668, at *3-5 (appointing twenty-one class members as lead plaintiffs in action where class could number in the "hundreds of thousands, if not millions, [and] an arbitrary limit on the number of proposed Lead Plaintiffs would be unrealistic, if not wholly counterproductive"); but see *In re Donnkenny, 171 F.R.D. at 157* ("To allow lawyers to designate unrelated plaintiffs [*10] as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation").

Naming a group of 141 class members as lead plaintiff,

however, undermines the purpose of having a lead plaintiff. See *In re Donnkenny, 171 F.R.D. at 157* ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff"). The Court recognizes that appointing a group of people as co-lead plaintiffs is not only allowable under the PSLRA, but often beneficial. See *In re Oxford Health Plans, 182 F.R.D. at 46*, (finding that appointment of multiple lead plaintiffs would benefit the plaintiff class in costly and complex case by pooling experience and resources of counsel). The Court also acknowledges that the PSLRA does not "recommend or delimit a specific number of lead plaintiffs, [and that] the lead plaintiff decision must be made on a case-by case basis, taking account of the unique circumstances of each case." *Id. at 49*. In this case, however, Plaintiffs have not provided any reason why appointing a group of 141 unrelated investors as co-lead plaintiffs is necessary [*11] or beneficial to this litigation. The Court finds that such a large group of lead plaintiffs would prove unwieldy for making decisions about the litigation, thereby increasing the likelihood that attorneys would direct the action.

Accordingly, on this record to date, Plaintiffs' motion to appoint the CMI group as Lead Plaintiff is denied. Plaintiffs are hereby directed to propose and justify a lesser number of lead plaintiffs for selection from the consolidated group of Plaintiffs within thirty days of the date of this Order.

C. Appointment of Lead Counsel

HN8[↑] The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4(a)(3)(B)(v)*. Because the most adequate plaintiff has yet to be determined, the Court cannot at this time select lead counsel.

III. CONCLUSION

Having considered the motion for Appointment of Lead Plaintiffs and Lead Counsel Pursuant to Section 21D of the Securities Exchange Act of 1934 and for Consolidation of the Actions Pursuant to *Rule 42(a) of the Federal Rules of Civil Procedure*, IT IS HEREBY ORDERED THAT:

1. The Motion to Consolidate [*12] Cases for All Purposes is GRANTED;

2. The following actions are hereby consolidated for all purposes, including pretrial proceedings, trial and

appeal, pursuant to *Rule 42(a) of the Federal Rules of Civil Procedure*:

⊞ *Go to table1*

3. The caption of these consolidated actions shall be "In re Complete Management, Inc. Securities Litigation" and the files of these consolidated actions shall be maintained in one file under Master File No. 99 Civ. 1454 (DAB). Any other actions now pending or later filed in this district which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

4. Every pleading filed in the consolidated **[*13]** actions, or in any separate action included herein, shall bear the following caption:

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

In re COMPLETE MANAGEMENT, INC. SECURITIES LITIGATION

This Document Relates To:

99 Civ. 1454 (DAB)

5. When a pleading is intended to be applicable to all actions governed by this Order, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to only some, but not all of the consolidated actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above [*e.g.*, 99 Civ. 1454 (DAB) (Mitchell)]."

6. A Master Docket and a Master File hereby are established for the above-consolidated proceedings and for all other related cases filed in or transferred to this Court. Separate dockets shall continue to be maintained for each of the individual actions hereby consolidated, and entries shall be made in the docket **[*14]** of each individual case in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

7. When a pleading is filed and the caption shows that it is applicable to "All Actions," the clerk shall file such pleading in the Master File and note such filing on the Master Docket. No further copies need to be filed, and no other docket entries need be made.

8. When a pleading is filed and the caption shows that it is to be applicable to fewer than all of the consolidated actions, the Clerk will file such pleading in the Master File only but shall docket such filing on the Master Docket and the docket of each applicable action.

9. When a case which properly belongs as part of In re Complete Management, Inc. Securities Litigation is filed in this Court or transferred to this Court from another court and assigned to Judge Batts, the Clerk of this Court shall:

(a) Place a copy of this Order in the separate file for such action;

(b) Mail to the attorneys for the plaintiffs in the newly-filed or transferred case a copy of this Order and direct that this Order be served upon or mailed to any new defendant(s) or their counsel in the newly-filed or **[*15]** transferred case; and

(c) Make an appropriate entry on the Master Docket. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might be consolidated as part of In re Complete Management, Inc. Securities Litigation.

10. Plaintiffs' Motion to appoint the CMI Group as Lead Plaintiffs is DENIED.

11. Plaintiffs are directed to propose a lesser number of class members for appointment of Lead Plaintiff within thirty days of the date of this Order.

12. Plaintiffs' Motion to appoint Stull, Stull & Brody, Schatz & Nobel, P.C. and Weiss & Yourman as Co-Lead Counsel is DENIED without prejudice to its renewal at such time that Plaintiffs submit a new motion for Lead Plaintiff.

13. The Clerk is directed to serve a copy of this Order on all parties of record in the consolidated actions.

SO ORDERED.

DATED: New York, New York

September 15, 1999

1999 U.S. Dist. LEXIS 14460, *15

DEBORAH A. BATTS

U.S.D.J.

1999 U.S. Dist. LEXIS 14460, *15

**Table1 (**_Return to related document text_**)**

| | Abbreviated Case Name | Case Number |
|---|---|---|
| | **Date Filed** | |
| | Mitchell v. Complete Management, Inc., et al. 02/05/99 | 99 Civ. 1454 (DAB) |
| | Seltzer v. Complete Management, Inc., et al. 03/19/99 | 99 Civ. 2087 |
| | Lowinger v. Complete Management, Inc., et al. 03/30/99 | 99 Civ. 2342 |
| | Lindemann Living Trust, et al. v. Complete Management, Inc., et al. 04/13/99 | 99 Civ. 2660 |
| | Tayab v. Complete Management, Inc., et al. 04/20/99 | 99 Civ. 2846 |

**Table1 (**_Return to related document text_**)**

---

**End of Document**

 Neutral
As of: October 30, 2018 2:35 PM Z

# *Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*

United States District Court for the Eastern District of Texas, Tyler Division

June 23, 2017, Decided; June 23, 2017, Filed

CIVIL ACTION NO. 6:16-CV-01243-RWS; CIVIL ACTION NO. 6:16-CV-01391-RWS; CIVIL ACTION NO. 6:17-CV-00150-RWS; CIVIL ACTION NO. 6:17-CV-00241-RWS

**Reporter**
2017 U.S. Dist. LEXIS 186657 *

OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Plaintiff, LABORERS' LOCAL 235 BENEFIT FUNDS, WINSTON KIM, Plaintiff, SASCHA TROLL, Plaintiff, v. ADEPTUS HEALTH INC. et al., Defendants.

**Subsequent History:** Motion granted by, Motion denied by *Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc., 2017 U.S. Dist. LEXIS 140268 (E.D. Tex., Aug. 31, 2017)*

## Core Terms

consolidation, cases, lead plaintiff, above-captioned, motions, conflicting interest, question of law, occurrences, appoint, damages, series, right to relief, class period, transactions, convenience, disclosures, overlapping, plaintiffs', corrective, securities

**Counsel:** **[*1]** For Laborers' Local 235 Benefit Funds, Plaintiff (6:16-cv-01391-RWS): Shorty Craig Barrett, Shorty Barrett, Attorney At Law, Texarkana, AR.

For Adeptus Health Inc., Defendant (6:16-cv-01391-RWS): James R Nelson, Xenia Nicole Figueroa, LEAD ATTORNEYS, DLA Piper US LLP - Dallas, Dallas, TX.

For Thomas S. Hall, Timothy L. Fielding, Defendants (6:16-cv-01391-RWS): Paul Richard Bessette, LEAD ATTORNEY, Jill Rickershauser Carvalho, Michael John Biles, Srimath Saliya Subasinghe, Tyler Wayne Highful, King & Spalding LLP - Austin, Austin, TX.

For Richard Covert, Daniel W. Rosenberg, Gregory W. Scott, Ronald L. Taylor, Jeffrey S. Vender, Steven V. Napolitano, Daniel J. Hosler, Stephen M. Mengert, Defendants (6:16-cv-01391-RWS): David Dykeman Sterling, LEAD ATTORNEY, Baker Botts LLP - Houston, Houston, TX; Xenia Nicole Figueroa, LEAD ATTORNEYS, DLA Piper US LLP - Dallas, Dallas, TX; David Clarke, Jr, DLA Piper LLP (US) - Washington,

Washington, DC; John Benjamin Lawrence, Baker Botts LLP - Dallas, Dallas, TX.

For Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Evercore Group L.L.C., Morgan Stanley & Co. LLC, PIPER JAFFRAY & CO., RBC Capital Markets LLC, Dougherty & Company **[*2]** LLC, Deutsche Bank Securities, Inc., BMO Capital Markets Corp., Defendants (6:16-cv-01391-RWS): Richard Thaddeus Behrens, LEAD ATTORNEY, Daniel Howard Gold, Haynes & Boone, LLP - Dallas, Dallas, TX.

For Manchang Tian, Ning Tian, Stefanie L. Seese, Movants (6:16-cv-01391-RWS): Shorty Craig Barrett, Shorty Barrett, Attorney At Law, Texarkana, AR.

For Alameda County Employees' Retirement Association, Arkansas Teacher Retirement System, Movants (6:16-cv-01391-RWS): George L McWilliams, Texarkana, TX.

For Oklahoma Law Enforcement Retirement System, Plaintiff (6:16-cv-01243-RWS): Andrea Leigh Fair, Thomas John Ward, Jr, Claire Abernathy Henry, Ward, Smith & Hill, PLLC, Longview, TX; Mario Alba, Jr, Robbins Geller Rudman & Dowd - Melville NY, Melville, NY; Samuel H Rudman, PRO HAC VICE, Robbins Geller Rudman & Dowd - Melville NY, Melville, NY.

For Laborers' Local 235 Benefit Funds, Consolidated Civil Action 6:16cv1391, Consol Plaintiff (6:16-cv-01243-RWS): Shorty Craig Barrett, LEAD ATTORNEY, Shorty Barrett, Attorney At Law, Texarkana, AR.

For Winston Kim, Consolidated Civil Action 6:17cv150, Consol Plaintiff (6:16-cv-01243-RWS): Jacob A Goldberg, LEAD ATTORNEY, PRO HAC VICE, The Rosen Law Firm, **[*3]** PA, Jenkintown, PA; Keith Robert Lorenze, LEAD ATTORNEY, The Rosen Law Firm, PA, Jenkintown, PA; Andy Tindel, Mann, Tindel & Thompson - Attorneys at Law, Tyler, TX; Laurence Rosen, Phillip Kim, PRO HAC VICE, The Rosen Law Firm, PA, Jenkintown, PA.

For Sascha Troll, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS): Willie Charles Briscoe, The Briscoe Law Firm, Dallas, TX.

Li-Kuan Chen, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

Yvonne Chen, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

Victor Sardar, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

Michael Frick, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

For Sascha Troll, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS): Willie Charles Briscoe, The Briscoe Law Firm, Dallas, TX.

Li-Kuan Chen, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

Yvonne Chen, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

Victor Sardar, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), [*4] Pro se.

Michael Frick, Consolidated Civil Action 6:17cv241, Consol Plaintiff (6:16-cv-01243-RWS), Pro se.

For Adeptus Health Inc., Defendant (6:16-cv-01243-RWS): Xenia Nicole Figueroa, LEAD ATTORNEY, DLA Piper US LLP - Dallas, Dallas, TX.

For Thomas S. Hall, Timothy L. Fielding, Defendants (6:16-cv-01243-RWS): Jill Rickershauser Carvalho, Michael John Biles, Paul Richard Bessette, Srimath Saliya Subasinghe, Tyler Wayne Highful, King & Spalding LLP - Austin, Austin, TX.

For Richard Covert, Daniel W. Rosenberg, Gregory W. Scott, Ronald L. Taylor, Jeffery S. Vender, Steven V. Napolitano, Stephen M. Mengert, Defendants (6:16-cv-01243-RWS): David Dykeman Sterling, LEAD ATTORNEY, Baker Botts LLP - Houston, Houston, TX; Xenia Nicole Figueroa, LEAD ATTORNEY, DLA Piper US LLP - Dallas, Dallas, TX; David Clarke, Jr, DLA Piper LLP (US) - Washington, Washington, DC; John Benjamin Lawrence, Baker Botts LLP - Dallas, Dallas, TX.

For Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants (6:16-cv-01243-RWS): Richard Thaddeus Behrens, LEAD ATTORNEY, Daniel Howard Gold, Haynes & Boone, LLP - Dallas, Dallas, TX;

For Adeptus Health Inc., Consolidated Civil Action

6:16cv1391; Consolidated [*5] Civil Action 6:17cv150, Consol Defendant (6:16-cv-01243-RWS): Xenia Nicole Figueroa, LEAD ATTORNEY, DLA Piper US LLP - Dallas, Dallas, TX.

For Thomas S. Hall, Consolidated Civil Action 6:16cv1391; Consolidated Civil Action 6:17cv150; Consolidated Civil Action 6:17cv241, Consol Defendant (6:16-cv-01243-RWS): Jill Rickershauser Carvalho, Michael John Biles, Paul Richard Bessette, Srimath Saliya Subasinghe, Tyler Wayne Highful, King & Spalding LLP - Austin, Austin, TX.

For Richard Covert, Consolidated Civil Action 6:16cv1391, Daniel W. Rosenberg, Consolidated Civil Action 6:16cv1391, Gregory W. Scott, Consolidated Civil Action 6:16cv1391, Ronald L. Taylor, Consolidated Civil Action 6:16cv1391, Jeffrey S. Vender, Consolidated Civil Action 6:16cv1391, Steven V. Napolitano, Consolidated Civil Action 6:16cv1391, Daniel J. Hosler, Consolidated Civil Action 6:16cv1391, Stephen M. Mengert, Consolidated Civil Action 6:16cv1391, Consol Defendants (6:16-cv-01243-RWS): David Dykeman Sterling, LEAD ATTORNEY, Baker Botts LLP - Houston, Houston, TX; Xenia Nicole Figueroa, LEAD ATTORNEY, DLA Piper US LLP - Dallas, Dallas, TX; David Clarke, Jr, PRO HAC VICE, DLA Piper LLP (US) - Washington, Washington, [*6] DC; John Benjamin Lawrence, Baker Botts LLP - Dallas, Dallas, TX.

For Goldman, Sachs & Co., Consolidated Civil Action 6:16cv1391, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Consolidated Civil Action 6:16cv1391, Evercore Group L.L.C., Consolidated Civil Action 6:16cv1391, Morgan Stanley & Co. LLC, Consolidated Civil Action 6:16cv1391, PIPER JAFFRAY & CO., Consolidated Civil Action 6:16cv1391, RBC Capital Markets LLC, Consolidated Civil Action 6:16cv1391, Dougherty & Company LLC, Consolidated Civil Action 6:16cv1391, Deutsche Bank Securities, Inc., Consolidated Civil Action 6:16cv1391, BMO Capital Markets Corp., Consolidated Civil Action 6:16cv1391, Consol Defendants (6:16-cv-01243-RWS): Richard Thaddeus Behrens, LEAD ATTORNEY, Daniel Howard Gold, Haynes & Boone, LLP - Dallas, Dallas, TX.

For Gregory W. Scott, Consolidated Civil Action 6:17cv150, Frank R Williams, Jr., Consolidated Civil Action 6:17cv150; Consolidated Civil Action 6:17cv241, Gregory W. Scott, Consolidated Civil Action 6:17cv241, Consol Defendants (6:16-cv-01243-RWS): David Dykeman Sterling, LEAD ATTORNEY, Baker Botts LLP - Houston, Houston, TX; David Clarke, Jr, PRO HAC VICE, DLA Piper LLP (US) - Washington,

Washington, **[\*7]** DC; John Benjamin Lawrence, Baker Botts LLP - Dallas, Dallas, TX; Xenia Nicole Figueroa, DLA Piper US LLP - Dallas, Dallas, TX.

For Jason Rutherford, Movant (6:16-cv-01243-RWS): Earl Glenn Thames, Jr, Potter Minton, a Professional Corporation, Tyler, TX.

For Kui Liu, Robert Gibbons, Joel Magazine, Sohail Sattar, Movants (6:16-cv-01243-RWS): Elton Joe Kendall, Kendall Law Group, LLP, Dallas, TX.

For Laborers' Local 235 Benefit Funds, Ning Tian, Manchang Tian, Stefanie L. Seese, Movants (6:16-cv-01243-RWS): Shorty Barrett, Attorney At Law, Texarkana, AR.

For Alameda County Employees' Retirement Association, Arkansas Teacher Retirement System, Movants (6:16-cv-01243-RWS): Donald (Matt) Mattson Keil, LEAD ATTORNEY, Keil & Goodson PA, Texarkana, AR; Michael D Blatchley, LEAD ATTORNEY, Bernstein Litowitz Berger & Grossmann - New York, New York, NY; Darren J Check, KesslerTopaz Meltzer & Check, LLP, Radnor, PA; George L McWilliams, Texarkana, TX; Naumon Amjed, Ryan T Degnan, Kessler Topaz Meltzer & Check, LLP, Radnor, PA.

For Michigan Laborers Pension Fund, Movant (6:16-cv-01243-RWS): Samuel H Rudman, PRO HAC VICE, Robbins Geller Rudman & Dowd - Melville NY, Melville, NY.

For Michigan Laborers' **[\*8]** Pension Fund, Consolidated Civil Action 6:17cv150, Movant (6:16-cv-01243-RWS): Nathan R Lindell, Tricia L McCormick, Robbins Geller Rudman & Dowd LLP - San Diego, San Diego, Ca; Samuel H Rudman, PRO HAC VICE, Robbins Geller Rudman & Dowd - Melville NY, Melville, NY.

For Manchang Tian, Consolidated Civil Action 6:16cv1391, Ning Tian, Consolidated Civil Action 6:16cv1391, Stefanie L. Seese, Consolidated Civil Action 6:16cv1391, Movants (6:16-cv-01243-RWS): Shorty Barrett, Attorney At Law, Texarkana, AR.

For Alameda County Employees' Retirement Association, Consolidated Civil Action 6:16cv1391; Consolidated Civil Action 6:17cv150; Consolidated Civil Action 6:17cv241, Arkansas Teacher Retirement System, Consolidated Civil Action 6:16cv1391; Consolidated Civil Action 6:17cv150; Consolidated Civil Action 6:17cv241, Movants (6:16-cv-01243-RWS): George L McWilliams, LEAD ATTORNEY, Texarkana, TX.

For Adeptus Investor Group, Consolidated Civil Action 6:17cv150, Movant (6:16-cv-01243-RWS): Andy Tindel, Mann, Tindel & Thompson - Attorneys at Law, Tyler, TX; Jeremy A Lieberman, Joseph Alexander Hood, II, PRO HAC VICE, Pomerantz LLP - New York, New York, NY; Patrick V Dahlstrom, Pomerantz LLP, Chicago, **[\*9]** IL.

For Benjamin Bowman, Consolidated Civil Action 6:17cv150, Movant (6:16-cv-01243-RWS): Elton Joe Kendall, LEAD ATTORNEY, Kendall Law Group, LLP, Dallas, TX.

For Winston Kim, Plaintiff (6:17-cv-00150): Jacob A Goldberg, Keith Robert Lorenze, LEAD ATTORNEYS, The Rosen Law Firm, PA, Jenkintown, PA; Laurence Rosen, Phillip Kim, The Rosen Law Firm, PA, New York, NY; Andy Tindel, Mann, Tindel & Thompson - Attorneys at, Tyler, TX.

For Adeptus Health Inc., Defendant (6:17-cv-00150): Xenia Nicole Figueroa, DLA Piper US LLP - Dallas, Dallas, TX.

For Gregory W. Scott, Frank R Williams, Defendants (6:17-cv-00150): David Dykeman Sterling, LEAD ATTORNEY, Baker Botts LLP - Houston, One Shell Plaza, Houston, TX; David Clarke, Jr, DLA Piper LLP (US) - Washington, Washington, DC; John Benjamin Lawrence, Baker Botts LLP - Dallas, Dallas, TX; Xenia Nicole Figueroa, DLA Piper US LLP - Dallas, Dallas, TX.

For Thomas S. Hall, Timothy L. Fielding, Defendants (6:17-cv-00150): Paul Richard Bessette, LEAD ATTORNEY, Jill Rickershauser Carvalho, Michael John Biles, Srimath Saliya Subasinghe, Tyler Wayne Highful, King & Spalding LLP - Austin, Austin, TX; David Clarke, Jr, DLA Piper LLP (US) - Washington, Washington, **[\*10]** DC.

For Alameda County Employees' Retirement Association, Arkansas Teacher Retirement System, Movants (6:17-cv-00150): George L McWilliams, Texarkana, TX.

For Adeptus Investor Group, Movant (6:17-cv-00150): Andy Tindel, Mann, Tindel & Thompson - Attorneys at, Tyler, TX; Jeremy A Lieberman, Joseph Alexander Hood, II, Pomerantz LLP - New York, New York, NY; Patrick V Dahlstrom, Pomerantz LLP, Chicago, IL.

For Benjamin Bowman, Movant (6:17-cv-00150): Elton Joe Kendall, LEAD ATTORNEY, Kendall Law Group, LLP, Dallas, TX.

For Michigan Laborers' Pension Fund, Movant (6:17-cv-00150): Nathan R Lindell, Tricia L McCormick, Robbins Geller Rudman & Dowd LLP - San Diego, San Diego,

Ca; Samuel H Rudman, PRO HAC VICE, Robbins Geller Rudman & Dowd - Melville NY, Melville, NY.

For Sascha Troll, Plaintiff (6:17-cv-00241): Willie Charles Briscoe, The Briscoe Law Firm, Dallas, TX.

Li-Kuan Chen, Plaintiff (6:17-cv-00241), Pro se.

Yvonne Chen, Plaintiff (6:17-cv-00241), Pro se.

Victor Sardar, Plaintiff (6:17-cv-00241), Pro se.

Michael Frick, Plaintiff (6:17-cv-00241), Pro se.

For Gregory W. Scott, Frank R Williams, Jr., Defendants (6:17-cv-00241): David Dykeman Sterling, LEAD ATTORNEY, Baker Botts LLP - Houston, [*11] One Shell Plaza, Houston, TX; David Clarke, Jr, DLA Piper LLP (US) - Washington, Washington, DC; John Benjamin Lawrence, Baker Botts LLP - Dallas, Dallas, TX; Xenia Nicole Figueroa, DLA Piper US LLP - Dallas, Dallas, TX.

For Thomas S. Hall, Timothy L. Fielding, Defendants (6:17-cv-00241): Paul Richard Bessette, LEAD ATTORNEY, Jill Rickershauser Carvalho, Michael John Biles, Srimath Saliya Subasinghe, Tyler Wayne Highful, King & Spalding LLP - Austin, Austin, TX.

**Judges:** ROBERT W. SCHROEDER III, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT W. SCHROEDER III

# Opinion

## ORDER

Before the Court are several motions to consolidate the above-captioned cases, transfer the cases to the Sherman Division of the Eastern District of Texas, and to appoint a lead plaintiff and counsel. Because the Court concludes that the cases should be transferred, it defers to Judge Mazzant to decide the lead plaintiff and counsel motions.

Consolidation is sought in each of the above-captioned cases. *See, e.g.*, Docket No. 39 in Case No. 6:16-cv-1243, Docket No. 9 in Case No. 6:16-cv-1391, Docket No. 4 in Case No. 6:17-cv-150 and Docket No. 9 in Case No. 6:17-cv-241. Plaintiff Winston Kim opposes consolidation of the *Kim* and *Troll* actions with the [*12] *Oklahoma* and *Laborers*' actions on the grounds that the former involve different allegedly culpable conduct and class periods, which in turn will give rise to conflicts of interest between the *Oklahoma* and *Laborers*' plaintiffs and the *Kim* and *Troll* plaintiffs. Docket No. 10 at 3. At the hearing, Kim further argued that *In re BP, PLC Sec. Litig., 758 F.Supp.2d 428 (S.D. Tex. 2010)*, shows that plaintiffs with possibly conflicting interests should generally not be consolidated into one action.

Movants for consolidation argue that the class periods as alleged are overlapping, that some of the corrective disclosures on which plaintiffs rely in *Kim* and *Troll* are also relevant to the damages allegedly sustained by the plaintiffs in *Oklahoma* and *Laborers*', and that, in any event, the events alleged in *Kim* and *Troll* and the events alleged in *Oklahoma* and *Laborers*' are all part of a continuous series of corrective disclosures, all of which contributed to plaintiffs' alleged damages.[1]

They further argue that under *BP*, even if there are two classes of plaintiffs that may have different interests, their cases should nonetheless be consolidated, and two lead plaintiffs may be appointed.

"Persons may join in one action as plaintiffs if: (A) they assert any right [*13] to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." *Fed. R. Civ. P. 20(a)(1)*. Similarly, the Court may consolidate actions "[i]f [the] actions before the court involve a common question of law or fact." *Fed. R. Civ. P. 42(a)(2)*.

In this securities litigation, the Court is persuaded that all the Plaintiffs and Movants assert a several right to relief arising out of a common series of alleged transactions and occurrences and that the determination of all the plaintiffs' claims will involve common questions of law and fact. Under such circumstances, consolidation is appropriate. *See BP, 758 F.Supp.2d at 432-33* (consolidating cases despite "significant differences among the claims in the various cases" because they involved "substantial commonalities" including "overlapping [d]efendants and a common core of facts and legal issues.") (internal quotation omitted). Kim's arguments regarding potential conflicts of interest among plaintiffs will be more appropriately considered in the appointment of one or more lead plaintiffs. Accordingly, the Court finds that the motions for consolidation [*14] should be **GRANTED**.

---

[1] The Court recognizes that plaintiffs who purchased or sold securities at different times may have different damages.

Transfer to the Sherman Division is also sought in each of the above-captioned actions. *See, e.g.*, Docket No. 29 in Case No. 6:16-cv-1243.[2]

Transfer is opposed by Plaintiff Oklahoma Law Enforcement Retirement System, Movant Michigan Laborer's Pension Fund and Plaintiff Kim. Docket No. 37 in Case No. 6:16-cv-1243; Docket No. 12 in Case No. 6:17-cv-150. Having evaluated the private-and public-interest factors laid out in *In re Volkswagen AG, 371 F.3d 201 (5th Cir. 2004)*, in light of the parties' submissions, the Court finds that although the proximity between Tyler and Sherman makes the marginal convenience of transfer small, Defendants have shown that Sherman is a clearly more convenient forum for this dispute. Accordingly, the Court finds that the motions for transfer should also be **GRANTED**.


**CONCLUSION**

For the above-stated reasons, it is

**ORDERED** that Docket Nos. 29, 31 and 39 in Case No. 6:16-cv-1243; Docket Nos. 5, 6 and 9 in Case No. 6:16-cv-1391; Docket Nos. 4, 5, 6 and 17 in Case No. 6:17-cv-150; and Docket Nos. 8 and 9 in Case No. 6:17-cv-241 are **GRANTED**.

The Clerk of the Court is directed to consolidate the above-captioned matters under Case No. 6:16-cv-1243 and to transfer the consolidated matter to **[*15]** the Sherman Division for further proceedings.

**SIGNED this 23rd day of June, 2017**.

/s/ Robert W. Schroeder III

ROBERT W. SCHROEDER III

UNITED STATES DISTRICT JUDGE

---

*End of Document*

---

[2] The venue motions each have an accompanying Request for Judicial Notice. *E.g.*, Docket No. 31 in Case No. 6:16-cv-1243. Having reviewed these, the Court finds they should be **GRANTED**.

No *Shepard's* Signal™
As of: October 30, 2018 2:36 PM Z

## *Pemex Exploración y Producción v. BASF Corp.*

United States District Court for the Southern District of Texas, Houston Division

October 4, 2011, Decided; October 4, 2011, Filed

CIVIL ACTION NO. H-10-1997; CIVIL ACTION NO. H-11-2019

**Reporter**
2011 U.S. Dist. LEXIS 160512 *

PEMEX EXPLORACIÓN Y PRODUCCIÓN, Plaintiff, v. BASF CORPORATION; BASF FINA PETROCHEMICALS LIMITED PARTNERSHIP; MURPHY ENERGY CORPORATION; BIO-NU SOUTHWEST, INC. d/b/a VALLEY FUELS; US PETROLEUM DEPOT, INC.; ARNOLDO MALDONADO; JONATHAN DAPPEN; STEPHEN PECHENIK; TIMOTHY L. BRINK; CONTINENTAL FUELS, INC.; and HIGH SIERRA CRUDE OIL & MARKETING, LLC, Successor to PETRO SOURCE PARTNERS, LP, Defendants.PEMEX EXPLORACIÓN Y PRODUCCIÓN, Plaintiff, v. BIG STAR GATHERING LTD L.L.P.; F&M TRANSPORTATION, INC.; JAMES JENSEN; JOPLIN ENERGY, LLC f/k/a HUTCHISON HAYES ENERGY, LLC; JEFF KIRBY; PLAINS ALL-AMERICAN PIPELINE, L.P.; SAINT JAMES OIL, INC.; SUPERIOR CRUDE GATHERING, INC.; TRANSMONTAIGNE PARTNERS, L.P.; and WESTERN REFINING COMPANY, L.P., Defendants.

## Core Terms

Consolidate, parties, allegations, Saint, condensate, purposes, lawsuits, stolen, discovery, issues, Theft, natural gas, Definite, oppose, common questions of law, purchaser, unrelated, motions

**Counsel: [*1]** For Pemex Exploracion y Produccion, Plaintiff (4:11-cv-02019): Mark Edward Maney, Maney & Gonzalez-Felix PC, LEAD ATTORNEY, Houston, TX; Christopher L Register, Attorney at Law, Houston, TX.

For Big Star Gathering LTD L.L.P., Defendant (4:11-cv-02019): Ayesha Najam, Grant J Harvey, Gibbs & Bruns LLP, Houston, TX.

For F&M Transporation, Inc., Defendant (4:11-cv-02019): Charles Alfred Sturm, LEAD ATTORNEY, Sturm Law, PLLC, Houston, TX.

For Jeff Kirby, Superior Crude Gathering, Inc., Defendants (4:11-cv-02019): Paul G Kratzig, LEAD ATTORNEY, Paul G. Kratzig Assoc, Corpus Christi, TX.

For Plains All-American Pipeline, LP, Defendant (4:11-cv-02019): James Daniel Thompson, III, LEAD ATTORNEY, Phillip B Dye, Jr, Vinson Elkins LLP, Houston, TX.

For TransMontaigne Partners, L.P., Defendant (4:11-cv-02019): John Michael Dorman, LEAD ATTORNEY, Locke Lord Bissell And Liddell LLP, Houston, TX; Jesus Garcia, Jr, Garcia de la Garza LLP, Houston, TX.

For Western Refining Company, L.P., Defendant (4:11-cv-02019): J Wiley George, LEAD ATTORNEY, Kelly Spragins Sandill, Andrews Kurth LLP, Houston, TX.

For Saint James Oil, Inc., Defendant (4:11-cv-02019): Grant J Harvey, LEAD ATTORNEY, Ayesha Najam, Gibbs & Bruns **[*2]** LLP, Houston, TX; John Hooshik Kim, The Kim Law Firm, Houston, TX.

For JAG Energy USA, Inc., Movant (4:11-cv-02019): Clyde Oates Adams, IV, Pierce Skrabanek Bruera, PLLC, Houston, TX; James David Ebanks, Ebanks Taylor Horne LLP, Houston, TX. JAC Terminal Services, Inc., Movant (4:11-cv-02019): James David Ebanks, Ebanks Taylor Horne LLP, Houston, TX.

For Pemex Exploracion y Produccion, Plaintiff (4:10-cv-01997): Andrew K Meadem, LEAD ATTORNEY, Hawash Meade Gaston Neese & Cicack LLP, Houston, TX; Ileana M Blanco, LEAD ATTORNEY, DLA Piper USA LLP, Houston, TX; Brett Solberg, DLA Piper LLP, Houston, TX; Christina Elise Ponig, DLA Piper LLP (US), Houston, TX; Mark Edward Maney, Maney & Gonzalez-Felix PC, Houston, TX; Mark Allen White, Law Office of Mark A. White, Houston, TX.

For BASF Corporation, Defendant (4:10-cv-01997): Travis James Sales, LEAD ATTORNEY, Brooke Geren McNab, William Karl Kroger, Kathryn Dawson McElvy, Baker Botts LLP, Houston, TX; Jeffrey James McNabb, Patterson-UTI Management Services LLC, Houston, TX; Stephanie Coon Bauman, ACLU of Texas, Houston, TX.

For Murphy Energy Corporation, Defendant (4:10-cv-01997): Joel M Androphy, LEAD ATTORNEY, Berg

2011 U.S. Dist. LEXIS 160512, *2

Androphy, Houston, TX; **[*3]** Geoffrey Berg, Berg Feldman Johnson, LLP, Houston, TX; Kevin Michael Clark, King & Spalding LLP, Houston, TX.

For Bio-Nu Southwest Inc., doing business as, Valley Fuels, Stephen Pechenik, Defendant (4:10-cv-1997): Stewart J Alexander, LEAD ATTORNEY, Attorney at Law, San Antonio, TX.

For Donald P Schroeder, Jr., Defendant (4:10-cv-1997): Jeremy L Doyle, LEAD ATTORNEY, Reynolds Frizzell LLP, Houston, TX.

For Arnoldo Maldonado, Defendant (4:10-cv-1997): James Patrick Grissom, LEAD ATTORNEY, Attorney at Law, McAllen, TX.

Jonathan Dappen, Defendant (4:10-cv-1997), Pro se, McAllen, TX.

For Jonathan Dappen, Defendant (4:10-cv-1997): Edward Michael Rodriguez, LEAD ATTORNEY, Atlas Hall & Rodriguez LLP, Brownsville, TX; Erin Ann Hudson, Zinda and Davis PLLC, Austin, TX.

For Joshua Crescenzi, Defendant (4:10-cv-1997): Chad Joseph Castille, LEAD ATTORNEY, Deans & Lyons LLP, Houston, TX.

Continental Fuels, Inc, Defendant (4:10-cv-1997), Pro se.

For High Sierra Crude Oil & Marketing, LLC, successor to Petro Source Partners, LP, Defendant (4:10-cv-1997): Christopher Brian Payne, Attorney at Law, Autin, TX; Gregory J Casas Greenberg Trauring LLP, Austin, TX; Hugh E Hackney, Patrick William Stark, **[*4]** Greenberg Traurig LLP, Dallas, TX; Jeff Dan Weems, Staff Weems LLP, Houston, TX.

For BASF FINA Petrochemicals LP, Defendant (4:10-cv-1997): Kathrine Marie Silver, LEAD ATTORNEY, Richard Andrew Howell Jackson Walker LLP Houston, TX; Travis James Sales, Baker Botts LLP.

For TransMontaigne Partners, L.P., Defendant (4:10-cv-1997): John Michael Dorman, LEAD ATTORNEY, Locke Lord Bissell And Liddell LLP, Houston, TX.

For Plains Marketing LP, Defendant (4:10-cv-1997): James Daniel Thompson, III, LEAD ATTORNEY, Deborah Carleton Milner, Vinson Elkins LLP, Houston, TX; Phillip B Dye, Jr, Vinson & Elkins, Houston, TX; Stacy Morse Neal, Vinson and Elkins LLP, Houston, TX.

For RGV Energy Partners, LLC, Defendant (4:10-cv-1997): Charles Alfred Sturm, LEAD ATTORNEY, Sturm Law, PLLC, Houston, TX.

For Saint James Energy Operating, Inc., Defendant

(4:10-cv-1997): Grant J Harvey, Gibbs Bruns LLP, Houston, TX; Jerry M Young, Coats Rose et al, Houston, TX; John Hooshik Kim, The Kim Law Firm, Houston, TX.

For Saint James Oil, Inc., Consol Defendant (4:10-cv-1997): Grant J Harvey, LEAD ATTORNEY, Ayesha Najam, Gibbs Bruns LLP, Houston, TX.

For Big Star Gathering LTD LLP, Consol Defendant (4:10-cv-1997): Ayesha **[*5]** Najam, Grant J Harvey, Gibbs & Bruns LLP, Houston, TX. Jerry M Young, Coats Rose et al, Houston, TX; John Hooshik Kim, The Kim Law Firm, Houston, TX.

For F&M Transportation, Inc, Consol Defendant (4:10-cv-1997): Charles Alfred Sturm, Sturm Law, PLLC, Houston, TX.

For JAG Energy USA, Inc, Consol Defendant (4:10-cv-1997): Clyde Oates Adams, IV, Pierce Skrabanek Bruera, PLLC, Houston, TX; James David Ebanks, Ebanks Taylor Horne LLP, Houston, TX.

For James Jensen, Consol Defendant (4:10-cv-1997): Grant J Harvey, LEAD ATTORNEY, Ayesha Najam, Gibbs Bruns LLP, Houston, TX. Jerry M Young, Coats Rose et al, Houston, TX; John Hooshik Kim, The Kim Law Firm, Houston, TX.

For Jeff Kirby, Superior Crude Gathering, Inc, Consol Defendants (4:10-cv-1997): F Lee Butler, Adams Reese LLP, Houston, TX; Paul G Kratzig, Paul G. Kratzig Assoc, Corpus Christi, TX.

For Plains All-American Pipeline, LP, Consol Defendant (4:10-cv-1997): Deborah Carleton Milner, James Daniel Thompson, III, Vinson Elkins LLP, Houston, TX; Phillip B Dye, Jr, Vinson & Elkins, Houston, TX; Stacy Morse Neal, Vinson and Elkins LLP, Houston, TX.

For TransMontaigne Partners, LP, Consol Defendant (4:10-cv-1997): Jesus Garcia, Jr, Garcia **[*6]** de la Garza LLP, Houston, TX; John Michael Dorman, Locke Lord Bissell And Liddell LLP, Houston, TX.

For Western Refining Company, LP, Consol Defendant (4:10-cv-1997): J Wiley George, Kelly Spragins Sandill, Andrews Kurth LLP, Houston, TX.

For Sergio T. Lopez, Respondent (4:10-cv-1997): Robert Eric Reed, Reed Law Firm, Houston, TX.

For Joshua Crescenzi, Third Party Defendant (4:10-cv-1997): Chad Joseph Castille, Deans & Lyons LLP, Houston, TX.

For Murphy Energy Corporation, ThirdParty Plaintiff, Cross Defendant, Cross Claimant, Counter Claimant

(4:10-cv-01997): Joel M Androphy, LEAD ATTORNEY, Berg Androphy, Houston, TX; Geoffrey Berg, Berg Feldman Johnson, LLP, Houston, TX.

For Maxim Crude Oil, LLC, Movant (4:10-cv-01997): Robert Edward Lapin, LEAD ATTORNEY, Lapin & Landa LLP,l Houston, TX.

For FR Midstream Transport, LP, Interested Party (4:10-cv-01997): John Michael Quinlan, LEAD ATTORNEY, McElroy Sullivan et al, Austin, TX.

For SUNOCO PARTNERS MARKETING & TERMINALS, L.P., Intervenor (4:10-cv-01997): Anthony J Pruzinsky, LEAD ATTORNEY, Hill Rivkins LLP, New York, NY; Timothy R Sutherland, T.R. Sutherland Law, PLLC, Houston, TX.

For BASF Corporation, Cross Claimant (4:10-cv-01997): Stephanie **[*7]** Coon Bauman, ACLU of Texas, Houston, TX.

Jonathan Dappen, Cross Defendant (4:10-cv-01997), Pro se.

For Jonathan Dappen, Cross Defendant, Cross Claimant (4:10-cv-01997): Edward Michael Rodriguez, LEAD ATTORNEY, Atlas Hall & Rodriguez LLP, Brownsville, TX; Erin Ann Hudson, Zinda and Davis PLLC, Austin, TX.

For Donald P Schroeder, Jr., Cross Defendant (4:10-cv-01997): Jeremy L Doyle, LEAD ATTORNEY, Reynolds Frizzell LLP, Houston, TX.

For BASF Corporation, Cross Claimant (4:10-cv-01997): Kathryn Dawson McElvy, Baker Botts LLP, Houston, TX.

Jonathan Dappen, Cross Defendant (4:10-cv-01997), Pro se.

For Murphy Energy Corporation, Cross Defendant (4:10-cv-01997): Geoffrey Berg, Berg Feldman Johnson, LLP, Houston, TX.

For BASF Corporation, Cross Defendant (4:10-cv-01997): Travis James Sales, LEAD ATTORNEY, William Karl Kroger, Kathryn Dawson McElvy, Baker Botts LLP, Houston, TX; Jeffrey James McNabb, Patterson-UTI Management Services LLC, Houston, TX; Stephanie Coon Bauman, ACLU of Texas, Houston, TX.

For High Sierra Crude Oil & Marketing, LLC, successor to Petro Source Partners, LP, Cross Defendant (4:10-cv-01997): Gregory J Casas, Greenberg Trauring LLP, Austin, TX; Jeff Dan Weems, Staff Weems LLP, **[*8]** Houston, TX; Patrick William Stark, GreenbergTraurig LLP, Dallas, TX.

For Pemex Exploracion y Produccion, Counter Defendant (4:10-cv-01997): Ileana M Blanco, LEAD ATTORNEY, DLA Piper USA LLP, Houston, TX; Thomas Demitrack, Jones Day, Cleveland, OH.

For Pemex Exploracion y Produccion, Counter Defendant (4:10-cv-01997): Thomas Demitrack, Jones Day, Cleveland, OH.

For BASF Corporation, Cross Claimant, Cross Defendant (4:10-cv-01997): Travis James Sales, LEAD ATTORNEY, William Karl Kroger, Kathryn Dawson McElvy, Baker Botts LLP, Houston, TX; Stephanie Coon Bauman, ACLU of Texas, Houston, TX.

Jonathan Dappen, Cross Defendant (4:10-cv-01997), Pro se, McAllen, TX.

For Jonathan Dappen, Cross Defendant (4:10-cv-01997): Edward Michael Rodriguez, LEAD ATTORNEY, Atlas Hall & Rodriguez LLP, Brownsville, TX; Erin Ann Hudson, Zinda and Davis PLLC, Austin, TX.

For Murphy Energy Corporation, Cross Defendant, Cross Claimant, Counter Claimant (4:10-cv-01997): Joel M Androphy, LEAD ATTORNEY, Berg Androphy, Houston, TX; Geoffrey Berg, Berg Feldman Johnson, LLP, Houston, TX.

For Donald P Schroeder, Jr., Cross Defendant (4:10-cv-01997): Jeremy L Doyle, LEAD ATTORNEY, Reynolds Frizzell LLP, Houston, TX.

For BASF **[*9]** FINA Petrochemicals LP, Cross Defendant, Cross Claimant (4:10-cv-01997): Kathrine Marie Silver, Jackson Walker LLP, Houston, TX.

For Bio-Nu Southwest Inc., Cross Defendant (4:10-cv-01997): Stewart J Alexander, LEAD ATTORNEY, Attorney at Law, San Antonio, TX.

For High Sierra Crude Oil & Marketing, LLC successor to Petro Source Partners, LP, Cross Defendant (4:10-cv-01997): Christopher Brian Payne, Attorney at Law, Autin, TX; Gregory J Casas, Greenberg Trauring LLP, Austin, TX; Hugh E Hackney, Patrick William Stark, Greenberg Traurig LLP, Dallas, TX; Jeff Dan Weems, Staff Weems LLP, Houston, TX.

For Arnoldo Maldonado, Cross Defendant (4:10-cv-01997): James Patrick Grissom, LEAD ATTORNEY, Attorney at Law, McAllen, TX.

For Murphy Energy Corporation, Cross Defendant (4:10-cv-01997): Geoffrey Berg, Berg Feldman Johnson, LLP, Houston, TX.

For Trammo Petroleum, Inc., Cross Defendant (4:10-cv-01997): James W Bartlett, Jr., The Bartlett Firm,

2011 U.S. Dist. LEXIS 160512, *9

Houston, TX.

For Pemex Exploracion y Produccion, Counter Defendant (4:10-cv-01997): Andrew K Meade, LEAD ATTORNEY, Hawash Meade Gaston Neese & Cicack LLP, Houston, TX; Ileana M Blanco, LEAD ATTORNEY, DLA Piper USA LLP, Houston, TX; Thomas Demitrack, Jones Day, [*10] Cleveland, OH; Christina Elise Ponig, DLA Piper LLP (US), Houston, TX; Mark Edward Maney, Maney & Gonzalez-Felix PC, Houston, TX; Mark Allen White, Law Office of Mark A. White, Houston, TX.

**Judges:** SIM LAKE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SIM LAKE

## Opinion

### MEMORANDUM OPINION AND ORDER

Plaintiff, PEMEX Exploración y Producción (PEP), brings this action against defendants, BASF Corporation (BASF), BASF Fina Petrochemicals Limited Partnership (BFPL), Murphy Energy Corporation, Bio-Nu Southwest, Inc. d/b/a Valley Fuels, US Petroleum Depot, Inc., Arnoldo Maldonado, Jonathan Dappen, Stephen Pechenik, Timothy L. Brink, Continental Fuels, Inc., and High Sierra Crude Oil & Marketing, LLC, Successor to Petro Source Partners, LP, asserting claims against defendants arising from trade in the United States of natural gas condensate allegedly stolen from PEP in Mexico. Pending before the court are PEP's Motion to Consolidate (Docket Entry No. 217) and Saint James Oil, Inc.'s Motion to Consolidate (Docket Entry No. 258). These motions seek to consolidate this action (the BASF Action) with Civil Action No. H-11-2019, PEMEX Exploración y Producción v. Big Star Gathering, Ltd. L.L.P., F&M Transportation, Inc., James Jensen, [*11] Joplin Energy, LLC f/k/a Hutchison Hayes Energy, LLC, Jeff Kirby, Plains All-American Pipeline, L.P., Saint James Oil, Inc., Superior Crude Gathering, Inc., TransMontaigne Partners, L.P., and Western Refining Company, L.P. (the Big Star Action), currently pending before Judge Melinda Harmon. "PEP seeks to consolidate the two matters for the purposes of discovery and motions practice and, possibly, trial."[1]

Saint James Oil seeks to consolidate the two actions "for all purposes."[2]

Four defendants in the BASF Action (BASF Corp., BASF Fina Petrochemical Limited Partnership, Murphy Energy Corp., and High Sierra Crude Oil & Marketing, LLC), and three defendants in the Big Star Action (Jeff Kirby, Superior Crude Gathering, Inc., and TransMontaigne Partners, L.P.) have filed papers opposing the motions to consolidate.[3]

BASF and BFPL oppose consolidation for all purposes; the other defendants who have responded to the pending motions to consolidate oppose consolidation for purposes of trial but do not oppose consolidation for purposes of discovery and pretrial motions.[4]

———————————————————

[1] PEMEX Exploración y Producción's Motion to Consolidate, Docket Entry No. 217, p. 1.

[2] Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 258, pp. 1 and 4 n.2.

[3] See Defendant High Sierra Crude Oil & Marketing, LLC's Response in Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate, Docket Entry No. 226; Defendant BASF Corporation's Response in Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate, Docket Entry No. 233; Defendant Murphy Energy Corporation's Response in Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate, Docket Entry No. 234; Defendants High Sierra Crude Oil & Marketing, LLC's and Murphy Energy Corporation's Joint Response in Partial Opposition to Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 274; Defendant BASF's and BFLP's Response in Opposition to Plaintiff Pemex Exploración's Supplemental Motion to Consolidate and to Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 277; Defendant TransMontaigne Partners L.P.'s Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate and Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 278; Defendant Superior Crude Gathering, Inc.'s Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate and Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 284; and Defendant Jeff Kirby's Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate and Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 285.

[4] On August 30, 2011, PEP filed Docket Entry No. 276, Supplement to PEMEX Exploración y Producción's Motion to Consolidate, Docket No. 217, stating at p. 1:

    All defendants in the case PEP v. Big Star ("Big Star Defendants") that will remain in that matter have appeared by counsel. Counsel held their Rule 26(f) Conference on August 29, 2011. . . . Two Big Star Defendants—SemCrude, L.P. and Joplin Energy, LLC—have filed for bankruptcy and will not be part of the Big Star matter.

For the reasons explained below, the pending motions to consolidate will be granted and the two actions will be consolidated for **[\*12]** all purposes.

## I. <u>Factual Background</u>

On June 7, 2010, PEP filed the BASF Action. The BASF Action alleges claims arising from trade in the United States of natural gas condensate allegedly stolen from PEP in Mexico. The defendants named in the BASF Action include both parties alleged to be knowing traffickers in stolen natural gas condensate, and parties alleged to be innocent purchasers of stolen natural gas condensate. PEP asserts claims for (1) illegal possession and use of Mexican sovereign property, (2) conversion under Texas law, (3) equitable relief/constructive trust/unjust enrichment/money **[\*13]** had and received, (4) violation of the Texas Theft Liability Act, (5) civil conspiracy under Texas common law, and (6) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C. § 1962 (c)* .

On May 29, 2011, PEP filed the Big Star Action. Like the BASF Action, the Big Star Action alleges claims arising from trade in the United States of natural gas condensate allegedly stolen from PEP in Mexico, and names as defendants both parties alleged to be knowing traffickers in stolen property, and parties alleged to be innocent purchasers of stolen property. PEP asserts claims for (1) illegal possession and use of Mexican sovereign property, (2) conversion under Texas law, (3) equitable relief/constructive trust/unjust enrichment/money had and received, (4) violation of the Texas Theft Liability Act, and (5) civil conspiracy under Texas common law, but does not assert any claims based on alleged violations of RICO, *18 U.S.C. § 1962(c).*

## II. <u>Standard of Review</u>

*Federal Rule of Civil Procedure 42* provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any

or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary **[\*14]** cost or delay." *Fed. R. Civ. P. 42(a)*. This rule provides district courts with broad discretion in determining whether two or more actions have common questions of law and fact and whether to consolidate. *Mills v. Beech Aircraft Corp., Inc., 886 F.2d 758, 761-62 (5th Cir. 1989)*.

Consolidation is not precluded by the existence of some questions that are not common to both actions. <u>See</u> *Botazzi v. Petroleum Helicopters, Inc., 664 F.2d 49, 50 (5th Cir. 1981)*. "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry. Co., 289 U.S. 479, 53 S. Ct. 721, 727-28, 77 L. Ed. 1331 (1933)*. Instead, "the two suits retain their separate identities and each requires the entry of a separate judgment." *Miller v. United States Postal Service, 729 F.2d 1033, 1036 (5th Cir. 1984)*. However, "consolidation is improper if it would prejudice the rights of the parties." *St. Bernard General Hospital, Inc. v. Hospital Service Association of New Orleans, Inc., 712 F.2d 978, 989 (5th Cir. 1983)*, <u>cert. denied</u>, *466 U.S. 970, 104 S. Ct. 2342, 80 L. Ed. 2d 816 (1984)*. In deciding whether to consolidate courts consider whether: (1) the actions are pending before the same court; (2) there are common parties; (3) there are common questions of law and/or fact; (4) there is risk of prejudice or confusion if the cases are consolidated, and if so, the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; and (5) consolidation will conserve judicial resources and reduce **[\*15]** the time and cost of trying the cases separately. <u>See</u> *In re Enron Corp. Securities, Derivative & "ERISA" Litigation, Civil Action Nos. H-01-3624, H-04-0088, H-04-0087, H-03-5528, 2007 U.S. Dist. LEXIS 8812, 2007 WL 446051, at \*1 (S.D. Tex. Feb. 7, 2007)*.

## III. <u>Analysis</u>

The factors courts consider favor consolidation.

## A. Common Courts and Parties

The two actions are pending in the same district and involve common parties. For example, PEP is the plaintiff in both actions.

---

All remaining Big Star Defendants are unopposed to consolidation with this matter for all pretrial purposes, provided that the Big Star Defendants are given sufficient time to conduct document discovery (as has already occurred in this case) before depositions commence in the consolidated action.

## B. Common Questions of Fact and Law

The two actions share common questions of law and fact because they both involve complaints of the same alleged wrongdoing, i.e., PEP alleges in both actions that the defendants participated in a scheme to steal, sell, and distribute in the United States natural gas condensate stolen from PEP's Burgos Field in Mexico.[5]

### 1. Common Questions of Fact

Common questions of fact arise from PEP's allegations that defendants named in the BASF Action have interacted and/or conspired with defendants named in the Big Star Action. For example, PEP alleges that condensate sold by Arnoldo Maldonado and/or his company, Y Oil & Gas, both of whom are defendants in the BASF Action, was purchased by defendants named in both actions, e.g., by Continental Fuels named as a defendant in the BASF [*16] Action, and by Big Star named as a defendant in the Big Star Action.

Defendants who oppose consolidation express concern that PEP's

allegations that multiple people and entities are alleged to have engaged in similar behavior does not establish that the two lawsuits share common issues of fact. PEP sidesteps the likelihood that numerous Mexican criminals stole from PEP and smuggled the stolen goods into the United States at different times and locations.

PEP admits that the Burgos Field spans some three Mexican states and "covers an area of more than 70,000 square kilometers of surface land, roughly the size of Ireland." Motion, Exhibit A, ¶ 27. Thefts of condensate from one end of the massive Burgos Field are not necessarily related to thefts of condensate from another end of the Field. Similarly, thefts of condensate orchestrated by certain parties are not necessarily related to thefts of condensate orchestrated by other parties. Particularly when dealing with a hydrocarbon resource as large as the Burgos Field, allegations that certain parties engaged in certain acts in the Burgos Field are not necessarily related to allegations that other parties engaged in similar acts just because [*17] they are in the same field.[6]

These concerns arise from the fact that not all parties are common, and that there are some different fact issues. But concerns that the facts at issue are not all common neither preclude consolidation nor overcome the fact that the two actions share many common fact issues.

### 2. Common Questions of Law

Common questions of law arise from PEP's assertion of the same five claims in both actions: (1) illegal possession and use of Mexican sovereign property, (2) conversion under Texas law, (3) equitable relief/constructive trust/unjust enrichment/money had and received, (4) violation of the Texas Theft Liability Act, and (5) civil conspiracy under Texas common law. The only difference in claims alleged in the two actions is that PEP has alleged RICO claims in the BASF Action, but has not alleged any RICO claim in the Big Star Action. Common questions of law also arise from the fact that defendants in both actions have either raised, or can reasonably be expected to raise, the same affirmative defenses. For example, defendants in the BASF Action have asserted limitations defenses in response to which PEP has asserted fraudulent concealment and/or equitable tolling, [*18] and the absence of a limitations period for claims based on Mexican law. Additional affirmative defenses such as the good-faith purchaser defense and the unclean hands defense can reasonably be expected to arise in both actions.

Many of the questions of law common to both actions are questions that should be adjudicated by one court to avoid inconsistent rulings. For example, two juries might disagree about whether PEP's claims are barred under the unclean hands doctrine. Other examples of legal questions common to both actions best decided by one court to avoid inconsistent rulings include: (1) whether Mexican law applies to transactions alleged to have taken place in the United States between Texas companies and residents, and (2) whether the Mexican Constitution creates a private cause of action for such transactions.

## C. Consolidation Will Cause Little — If Any — Risk of Prejudice and/or Confusion and Will Conserve

---

[5] See PEP's Third Amended Complaint, Docket Entry No. 220 in C.A. No. H-10-1997, and PEP's Original Complaint, Docket Entry No. 1 in C.A. No. H-11-2019.

---

[6] Defendant High Sierra Crude Oil & Marketing, LLC's Response in Opposition to Plaintiff PEMEX Exploración y Producción's Motion to Consolidate, Docket Entry No. 226, pp. 3-4.

**Resources**

Defendants argue that "[t]he clear risks of prejudice and confusion and the unfair advantage to PEP necessitate leaving the two lawsuits separate for all purposes—just as PEP chose to file them."[7]

Defendants explain that "[c]onsolidating the two lawsuits would allow PEP to cloud its **[*19]** allegations against High Sierra and the other Defendants in the BASF Lawsuit with unrelated allegations against other, unrelated parties in the Big Star Lawsuit."[8] For example, citing PEP's use of the term "Conspiring Defendants," High Sierra argues that PEP defines this term differently in the two actions and that "[c]onsolidation would allow PEP to conflate its two definitions of 'Conspiring Defendants' in an attempt to confuse the Court and, ultimately, jury."[9]

Neither High Sierra nor any of the other defendants opposing consolidation have provided a factual basis for their concern about confusion, and the court is not persuaded that any difference in PEP's alleged definition of "Conspiring Defendants" will actually confuse the court or the jury. Moreover, the possibility of jury confusion at trial does not preclude consolidation, and any risk of confusion can be adequately addressed by particularized jury instructions and special verdict forms. *Fed. R. Civ. P. 42(b)*.

Defendants argue that consolidation will prejudice them because it will result in an unfair advantage to PEP. Defendants assert that

> [c]onsolidation would increase Defendants' costs by forcing them to participate in discovery and other proceedings not relevant **[*20]** to the instant lawsuit. By way of example only, PEP's allegations against High Sierra are unrelated to PEP's allegations against Joplin Energy, LLC, formerly known as Hutchison Hayes Energy, LLC, Plains All-American Pipeline, LP, and SemCrude, L.P., yet if

the two lawsuits were consolidated, High Sierra would be forced to participate in discovery and other proceedings unrelated to its defense.[10]

Defendants also argue that "consolidation would **increase** the expenses of trying the two lawsuits as each defendant in the two lawsuits would be forced to prepare for and sit through trial on issues unrelated to PEP's claims against that defendant."[11]

The court is not persuaded by these arguments. The existence of many factual and legal issues common to both actions means that consolidation will conserve time, money, and resources of both the court and the parties by reducing duplicate motions, discovery, hearings, and trials. Since the allegations in both actions are factually related, some defendants might be prejudiced if the actions were not consolidated. For example, defendants who assert a good faith purchaser defense and challenge PEP's ability to trace stolen condensate to purchases they actually **[*21]** made could be impaired by the absence of the alleged wrong doers from whom they purchased condensate. Moreover, as observed by Saint James Oil, Inc. — a defendant in the Big Star Action who favors consolidation for all purposes — consolidated discovery may dampen any potential prejudice by disproving PEP's allegations of conspiratorial connections.[12]

Because both actions are at an early stage of development, any prejudice caused by delay arising from consolidation will be slight. While consolidation might delay trial of the BASF Action, consolidation should substantially reduce the overall amount of time needed to resolve both actions. Because many of the witnesses in the two actions are likely to be identical and would have to be deposed twice if the actions were not consolidated, consolidation may reduce the expense of discovery. Consolidation may also reduce the expense of trying the cases separately. Accordingly, the court is persuaded that the benefits of increased efficiency that consolidation for all purposes offers to all parties as well as to the court outweigh any alleged prejudice to the defendants and/or undue benefits to PEP.

---

[7] Id. at 8.

[8] Id. at 4. See also Defendant Jeff Kirby's Opposition to Plaintiff Pemex Exploración y Producción's Motion to Consolidate and Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 285, p. 3.

[9] Defendant High Sierra Crude Oil & Marketing, LLC's Response in Opposition to Plaintiff PEMEX Exploración y Producción's Motion to Consolidate, Docket Entry No. 226, p. 4.

---

[10] Id. at 6.

[11] Id. at 8.

[12] Saint James Oil, Inc.'s Motion to Consolidate, Docket Entry No. 258, p. 3.

2011 U.S. Dist. LEXIS 160512, *21

## IV. Conclusions and Order

After balancing the risks **[*22]** of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and judicial resources posed by two lawsuits, and the length of time required to conclude two actions as opposed to one, the court concludes that consolidation is appropriate. Accordingly, PEP's Motion to Consolidate (Docket Entry No. 217) is **GRANTED**, and Saint James Oil, Inc.'s Motion to Consolidate (Docket Entry No. 258) is **GRANTED**. Civil Action No. H-11-2019 is hereby **CONSOLIDATED for all purposes** with Civil Action No. H-10-1997.

The Docket Control Order in H-10-1997 entered on September 17, 2010 (Docket Entry No. 65), as amended by the Hearing Minutes and Order entered on June 16, 2011 (Docket Entry No. 219), will govern the consolidated action. If this Docket Control Order does not allow the parties in H-11-2019 adequate time for discovery, the parties may confer and submit an amended docket control order.

Several defendants in C.A. No. H-11-2019 have filed motions to dismiss. The court has ruled that "[e]ach party will be allowed to file one (1) dispositive motion limited to twenty-five (25) pages. No dispositive motion will be filed **[*23]** before May 18, 2012, unless it goes to the court's subject matter jurisdiction." (Hearing Minutes and Order, Docket Entry No. 219, page 4) Pursuant to this Order, the following dispositive motions in C.A. No. H-11-2019 are **DENIED**:

> [Docket Entry No. 4] Defendant Plains All-American Pipeline, L.P.'s Motion to Dismiss Plaintiff PEMEX Exploración y Producción's Original Complaint for Failure to State A Claim Under *FRCP 12(b) (6)* and Motion in Alternative for A More Definite Statement

> [Docket Entry No. 6] Defendant Transmontaigne Partners L.P.'s Motion to Dismiss or, in the Alternative, Motion for A More Definite Statement and Joinder in Plains All-American Pipeline, L.P.'s Motion to Dismiss Under *FRCP 12(b) (6)*

> [Docket Entry No. 8] Defendant saint James Oil, Inc.'s Motion to Dismiss Pursuant to *Rule 12(b)(2)* and *(6)*, or, in the Alternative, Motion for More Definite Statement Pursuant to *Rule 12(e)*

> [Docket Entry No. 10] Defendant Western Refining Company, L.P.'s Motion to dismiss on Limitations Grounds

> [Docket Entry No. 13] Defendant Jeff Kirby's Motion to Dismiss or, in the Alternative, Motion for A More Definite Statement, and Joinder in Motions to Dismiss Filed by Other Defendants Under *FRCP 12(b)(6)*

> [Docket Entry No. 14] Defendant Superior Crude Gathering **[*24]** Inc.'s Motion to Dismiss or, in the Alternative, Motion for A More Definite Statement, and Joinder in Motions to Dismiss Filed by Other Defendants Under *FRCP 12(b)(6)*

**SIGNED** at Houston, Texas, on this 4th day of October, 2011.

/s/ Sim Lake

SIM LAKE

UNITED STATES DISTRICT JUDGE

---

**End of Document**

⬥ Positive
As of: November 7, 2018 11:12 PM Z

## *In re Plains All Am. Pipeline, L.P. Sec. Litig.*

United States District Court for the Southern District of Texas, Houston Division

December 7, 2015, Decided; December 7, 2015, Filed, Entered

Lead Case No H:15-cv-02404

**Reporter**
2015 U.S. Dist. LEXIS 163811 *; 2015 WL 8207331

IN RE PLAINS ALL AMERICAN PIPELINE, L.P. SECURITIES LITIGATION

**Subsequent History:** Motion denied by *In re Plains All Am. Pipeline, L.P. Sec. Litig., 2016 U.S. Dist. LEXIS 65601 (S.D. Tex., May 18, 2016)*

Dismissed without prejudice by *In re Plains All Am. Pipeline, L.P., 245 F. Supp. 3d 870, 2017 U.S. Dist. LEXIS 46870 (S.D. Tex., Mar. 29, 2017)*

Dismissed by, Judgment entered by *In re Plains All Am. Pipeline, L.P. Sec. Litig., 2018 U.S. Dist. LEXIS 56013 (S.D. Tex., Mar. 30, 2018)*

## Core Terms

lead plaintiff, largest, appointment, financial interest, securities, funds, requirements, class period, plaintiffs', adequacy, class member, lead counsel, typicality, losses, shares, stock, putative class, consolidated, conflicts, investors, quotation, motions, parties, argues, marks, spill

**Counsel:** **[*1]** For City of Birmingham Firemen's and Policemen's Supplemental Pension System, Plaintiff: Roger Farrell Claxton, LEAD ATTORNEY, Dallas, TX.

For Plains All American Pipeline, L.P., Defendant: Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX; Michael C Holmes, Vinson & Elkins, Dallas, TX.

For Gregory L. Armstrong, Al Swanson, Chris Herbold, Defendants: Michael C Holmes, LEAD ATTORNEY, Vinson & Elkins, Dallas, TX; Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX.

For Plains GP Holdings L.P., Harry N. Pefanis, Victor Burk, Everardo Goyanes, Gary L. Petersen, John T. Raymond, Bobby S. Shackouls, Robert V. Sinnott, Vicky Sutil, Taft Symonds, Christopher M. Temple, Consol Defendants: Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX; Michael C Holmes, Vinson & Elkins, Dallas, TX.

For Barclays Capital Inc., Citigroup Global Markets Inc., Consol Defendants: Mark K Glasser, Sidley Austin LLP, Houston, TX; Matthew J Dolan, Norman J Blears, Sidley Austin LLP, Palo Alto, CA.

For Goldman Sachs & Co., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, UBS Securities LLC, Wells Fargo Securities LLC, Consol Defendants: Mark K Glasser, Sidley Austin LLP, Houston, TX; Matthew **[*2]** J Dolan, Norman J Blears, PRO HAC VICE, Sidley Austin LLP, Palo Alto, CA.

For Inter-Marketing Group USA, Inc., Movant: William B Federman, Federman Sherwood, Oklahoma City, OK.

For The Pennsylvania State Employees' Retirement System, Movant: Carl E Singley, Joe H Tucker, LEAD ATTORNEYS, Tucker Law Group, Philadelphia, PA; Christine Donato Saler, LEAD ATTORNEY, Catherine Pratsinakis, Chimicles & Tikellis LLP, Haverford, PA; Roger B Greenberg, Thane Tyler Sponsel, III, LEAD ATTORNEYS, Sponsel Miller Greenberg PLLC, Houston, TX; Kimberly M Donaldson Smith, Nicholas E. Chimicles, PRO HAC VICE, Chimicles & Tikellis LLP, Haverford, PA.

For Houston Municipal Employees Pension System, Movant: Thomas E Bilek, LEAD ATTORNEY, The Bilek Law Firm LLP, Houston, TX; Jeffrey Haber, PRO HAC VICE, Bernstein Liebhard et al, New York, NY; Joseph R. Seidman, Jr., Bernstein Liebhard LLP, New York, NY; Stanley Bernstein, PRO HAC VICE, Bernstein Liebhard, New York, NY.

For Employees' Retirement System of Rhode Island, Police and Fire Retirement System of the City of Detroit, Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge, Movants: Gerald H Silk, LEAD ATTORNEY, Bernstein **[*3]** Litowitz Berger & Grossmann LLP, New York City, NY; Thomas Robert Ajamie, LEAD ATTORNEY, Ajamie LLP, Houston, TX.

For Jacksonville Police and Fire Pension Fund, Movant: Gerald H Silk, Bernstein Litowitz Berger & Grossmann LLP, New York City, NY; Thomas Robert Ajamie, Ajamie LLP, Houston, TX.

For IAM National Pension Fund, Movant: Andrew M Edison, LEAD ATTORNEY, Edison, McDowell & Hetherington, LLP, Houston, TX; Danielle S Myers, PRO HAC VICE, Luke O. Brooks, Robbins Geller Rudman & Dowd LLP, San Diego, CA.

**Judges:** Lee H. Rosenthal, United States District Judge.

**Opinion by:** Lee H. Rosenthal

# Opinion

**MEMORANDUM AND ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

The putative class members in this federal securities action are investors in Houston-based Plains All American Pipeline, LP ("Plains"), a crude-oil pipeline operator. On May 19, 2015, Line 901—a 10.6-mile long Plains pipeline across the Santa Barbara, California coast—ruptured and released crude oil. The plaintiffs allege that Plains made misrepresentations about the measures taken to prevent such an occurrence before the spill and after the spill about the extent of the release. They seek damages for the decline in the value of Plains stock. The defendants **[*4]** are Plains; Plains Holdings, a limited partnership formed to own an interest in Plains's general-partner and incentive-distribution rights; officers and directors at the two companies; and underwriters associated with public offerings of the shares.

Five plaintiffs moved to be appointed as lead plaintiff and for their chosen counsel to be approved as lead counsel. (Docket Entry Nos. 8, 11, 18, 19, 22). The court heard argument on the motions. At the hearing, the court dismissed as moot the Public Pension Funds' withdrawn motion and denied the Houston Municipal Employees Pension System's motion. (Docket Entry No. 56). The court took under advisement the motions filed by Inter-Marketing Group USA, Inc. ("Inter-Marketing Group"), IAM National Pension Fund ("IAM"), and the Pennsylvania State Employees' Retirement System (the "Pennsylvania System").

Based on the pleadings, the motions and responses,

and the applicable law, the court now grants IAM's motion for appointment of lead plaintiff and approval of lead counsel and denies the motions filed by the Inter-Marketing Group and the Pennsylvania System. The reasons are explained below.

**I. The Standard for Determining "the Most Adequate Plaintiff" [*5] Under the _PSLRA_**

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), _Pub. L. No. 104-67, 109 Stat. 737_, the district court must appoint the lead plaintiff "[a]s soon as practicable" after ruling on a motion to consolidate. _15 U.S.C. § 78u-4(a)(3)(B)(ii)_. On October 20, 2015, the court granted the plaintiffs' motions to consolidate this case with Case No. 4:15-cv-2540. (Docket Entry No. 30). The _PSLRA_ requires notice within 20 days after the plaintiff files a complaint that informs class members of their right to move for lead-plaintiff status within 60 days after the notice was published. _15 U.S.C. § 78u-4(a)(3)(A)(i)_. The parties do not dispute the adequacy of the notice.

In appointing the lead plaintiff,

> the court shall consider any motion made by a purported class member . . . , including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

_Id. § 78u-4(a)(3)(B)(i)_. "[T]he court shall adopt a presumption that the most adequate plaintiff **[*6]** in any private action arising under this chapter is the person or group of persons that":

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of _Rule 23 of the Federal Rules of Civil Procedure._
> . . .
> [This presumption] may be rebutted only upon proof

by a member of the purported plaintiff class that the presumptively most adequate plaintiff

    (aa) will not fairly and adequately protect the interests of the class; or

    (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id. § 78u-4(a)(3)(B)(iii)(I)—(II)*. Discovery on this issue may be conducted only if "the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *Id. § 78u-4(a)(3)(B)(iv)*. The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id. § 78u-4(a)(3)(B)(v)*.

## II. Which of the Plaintiffs Is Presumed "the Most Adequate"?

For the presumption to apply, "the lead plaintiff or plaintiffs must possess not only the largest financial **[*7]** interest in the outcome of the litigation, but must also meet the requirements of *Federal Rule of Civil Procedure 23.*" *In re Waste Management, Inc. Sec. Litigation, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000)*.

### A. The Largest Financial Interest

Courts in this district consider the four *Lax* factors to determine who has the largest financial interest. The factors are "(1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the plaintiff(s)." *Id. at 414* (citing *Lax v. First Merchants Acceptance Corp., No. 97-c-2715, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997))*. It is undisputed that IAM has the largest financial interest in the relief the putative class seeks. IAM purchased the largest number of total and net shares, spent the largest amount of total net funds, and suffered the largest loss.[1]

*Compare* (Docket Entry No. 18, Ex. C), *with* (Docket Entry No. 9); (Docket Entry No. 49, Ex. 1); *see also* (Docket Entry No. 50 at p. 10).

---

[1] There are two methods for calculating losses: first in, first out ("FIFO") and last in, first out ("LIFO"). The movants' losses are the same under either measure.

The Pennsylvania System argues that it should nonetheless be appointed as co-lead plaintiff with IAM. The argument is based on differences between **[*8]** Plains stock and Plains Holdings stock. The Pennsylvania System has the largest financial interest in the relief sought on behalf of investors in Plains Holdings, (Docket Entry No. 48 at 9-10), and argues that a co-lead plaintiff is necessary to ensure that both sets of investors are adequately represented. But IAM invested in, and lost money on, shares of both Plains and Plains Holdings during the class period. The present record shows no basis to infer that both IAM and the Pennsylvania System are needed as lead plaintiffs for adequate representation. This court rejected a similar argument for co-lead plaintiff appointment in *In re Enron Corp. Securities Litigation, 206 F.R.D. 427 (S.D. Tex. 2002)*. As in *Enron*, the Pennsylvania System's call for subclasses may be "persuasive . . . at class certification, as well as for trial." *Id. at 451*. At this stage, however, "such divisions are [not] essential." *Id*.

At oral argument, the Pennsylvania System argued that *Enron* was different because it involved only one company, while Plains and Plains Holdings are distinct corporate entities. The Pennsylvania System submitted exhibits showing that the companies are interrelated but have some differences in employees and corporate structure. This is not a persuasive basis for **[*9]** distinguishing *Enron*. Because the class relief sought encompasses losses from investments in both Plains and Plains Holdings, the losses are properly combined to determine the largest financial interest. As in *Enron*, the Pennsylvania System "may reurge or file new requests for subclasses and separate representatives" at the class-certification stage. *Id.* Until then, the differences between Plains and Plains Holdings provide no reason to appoint co-lead plaintiffs. See *Greenberg v. Bear Stearns & Co., Inc., 80 F. Supp. 2d 65, 70 (S.D.N.Y. 2000)* ("When attempting to resolve who is the most adequate plaintiff to represent the class, the Court is of the view that the largest financial interest of the class should be considered, not the largest financial interest of separate sub classes."); *cf. In Re Century Business Servs. Sec. Litigation, 202 F.R.D. 532, 536 (N.D. Ohio 2001)* (plaintiffs "cannot simply define the class they seek to represent . . . [or] shrink the kingdom until they are king.").

The Pennsylvania System also argues that it has the "broadest" financial interest in the relief sought because it also lost money on investments in Plains debt securities. (Docket Entry No. 48 at p. 11). It concedes,

however, that "the debt securities are not included in the current definition of the class." (*Id.*). And the *PSLRA* question is not which **[*10]** party has the "broadest" financial interest, but which party has the "largest" financial interest.

Although the relative difference between the losses alleged by IAM and the Pennsylvania System—$500,000, or roughly 5 percent—is not great, the *Lax* factors show that IAM "has the largest financial interest in the relief sought by the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)*.

## B. Does IAM Otherwise Satisfy the Requirements of *Rule 23*?

Because IAM has the largest financial interest, it is presumptively entitled to lead-plaintiff status unless it fails the requirements of *Federal Rule of Civil Procedure 23*.

### 1. The Legal Standard Under *Rule 23*

The *Rule 23(a)* requirements are that:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

*FED. R. CIV. P. 23*. The most relevant requirements under the *PSLRA* are adequacy and typicality. *Enron, 206 F.R.D. at 441*. "Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff **[*11]** must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *Id.*

"The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 297 n.32 (5th Cir. 2001)* (quoting *Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986))* (internal quotation marks omitted); *see also Woodard v. Andrus, 272 F.R.D. 185, 191 (W.D. La. 2010)* ("The test for typicality is not demanding and it focuses on the general similarity of the legal and remedial theories behind the plaintiffs' claims." (citing *Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir. 1993)*; *Jenkins, 782 F.2d at 472*)). The class representative's claims must "have the same essential characteristics of those of the putative class." *James v. City of Dallas, 254 F.3d 551, 571 (5th Cir. 2001)*, *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 839-41 (5th Cir. 2012)*.

"The adequacy requirement mandates an inquiry into the zeal and competence of the representatives' counsel and the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001)* (alterations omitted) (quotation marks omitted). It also "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon, 785 F.3d 1003, 1015 (5th Cir. 2015)* (quotation marks omitted).

"The **[*12]** typicality and adequacy inquiries are related in this context, as a party's lack of the same essential characteristics of those of the putative class James may result in conflicts between the named plaintiffs' interests and the class members' interests." *In re BP Sec. Litigation, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010)* (citations omitted) (quotation marks omitted). "For example, if such a party were appointed lead plaintiff, there would be potential conflicts between the party and the other class members in drafting the consolidated complaint, in defending a motion to dismiss, and in conducting discovery—the party would have an interest in pursuing its specific claims to the potential exclusion of other class members' claims." *Id.*

### 2. Analysis

The record shows that IAM lost money because it purchased Plains and Plains Holdings securities during the class period. Although not identical, IAM's legal and remedial theories have the same essential characteristics as the class claims. This is enough for typicality.

The Pennsylvania System argues that IAM's claims are not typical because it did not purchase securities during any of the public offerings that give rise to the *Securities*

2015 U.S. Dist. LEXIS 163811, *12

*Act of 1933* claims. "Nothing in the *PSLRA* indicates that district courts **[*13]** must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004)*. "[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.* Courts reject a "requirement that a different lead plaintiff be appointed to bring every single available claim" because that "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id. at 82 n.13*. And, in any event, this argument does not justify appointing the Pennsylvania System, because neither IAM nor the Pennsylvania System has standing to assert every claim advanced in the complaint. (Docket Entry No. 50 at p. 13 & n.11).

At oral argument, the Pennsylvania System relied heavily on *In re BP Securities Litigation, 758 F. Supp. 2d 428 (S.D. Tex. 2010)*. That case provides no support. The *BP* court considered a motion for appointment of lead plaintiff by state retirement funds in New York and Ohio. The case involved allegations of securities fraud relating to the April 2010 Deepwater Horizon oil spill. *Id. at 432*. The court reasoned that the New York and Ohio funds had a "theory of the case [that] differ[ed] significantly from that of [the other plaintiffs]." **[*14]** *Id. at 437*. The New York and Ohio funds alleged that BP made fraudulent statements over a five-year period, from 2005 to after the April 2010 spill. The other plaintiffs' claims focused on "the thirteen months leading up to the Deepwater Horizon explosion." *Id. at 438*. During this 13-month window, the New York and Ohio funds were net sellers of BP stock, unlike the other plaintiffs, who were investors in BP during this period. *Id*. The court's concern was that the "New York [and] Ohio [funds] might not have an interest in vigorously pursuing the claims central to the [other plaintiffs'] shorter class period, in favor of emphasizing arguments about fraud based on conduct before and after the [other plaintiffs'] thirteen-month window." *Id*. The court concluded that because the issues of the New York and Ohio funds were outside of the other plaintiffs' 13-month class period, those funds would "present different legal theories than other plaintiffs." *Id*. As a result, the funds did not make a preliminary showing of typicality and adequacy and were not entitled to the most-adequate-plaintiff presumption. *Id*.

Unlike the New York and Ohio funds in *BP*, IAM does not have interests that are potentially different from, **[*15]** much less antagonistic to, the class

interests. There is no reason to anticipate conflicts between IAM and the other plaintiffs in, for example, drafting the amended consolidated complaint or defending a motion to dismiss.[2]

   *See id. at 437*.

The Pennsylvania System correctly observes that IAM's stock purchases were limited to the final eight months of the roughly two-year class period and suggests that these "late-in-the-class-period purchases raise questions about IAM's ability to vigorously and adequately pursue claims on behalf of the purchasers of Plains's securities throughout [the class period], and particularly during the earlier months of the class period." (Docket Entry No. 48 at p. 18-19). But at this stage, the Pennsylvania System has failed to identify, and the record does not show, any reason why IAM would **[*16]** not pursue claims throughout the entire class period or why asserting early-in-the-class-period claims would run counter to IAM's interests. "A lead plaintiff owes a fiduciary duty to the class," *Enron, 206 F.R.D. at 448 n.18* (citing *Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549-50, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)*), and "[d]ifferent interests need not necessarily constitute fatal conflicts," *id*. The record reflects no apparent conflicts and no inability or unwillingness by IAM or its counsel, Robbins Geller Rudman & Dowd LLP, to pursue the class claims.

The Pennsylvania System argues that it would be the "most" adequate and typical lead plaintiff. "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *In re Cavanaugh, 306 F.3d 726, 732 (9th Cir. 2002)*. IAM satisfies the *Rule 23* requirements and is entitled to the most-adequate-plaintiff presumption.

**III. Has the Presumption Been Rebutted**?

_____

[2] There is no basis for distinguishing Plains shares from Plains Holdings shares at this time. The stock prices largely moved in tandem over the class period, even though Plains Holdings stocks had a steeper price drop after the spill. These differences are not material to the ability of one lead plaintiff and class counsel to clearly and adequately represent the interests of the class.

The Pennsylvania System has not submitted any "proof" rebutting the presumption. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. Nor has it moved to conduct discovery on this issue. *Id. § 78u-4(a)(3)(B)(iv)*. The court finds that IAM is the most adequate **[*17]** plaintiff under the *PSLRA*.

## IV. Approval of Lead Counsel

The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id. § 78u-4(a)(3)(B)(v)*. The court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." *Enron, 206 F.R.D. at 441* (quotation marks omitted). "The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy." *Id*.

Robbins Geller meets the requirements for approval of lead counsel. Robbins Geller has submitted a detailed firm resume and attorney biographies. (Docket Entry No. 18, Ex. D). It has also submitted its contingency-fee matrix, which the court has reviewed *in camera*. (Docket Entry No. 55). The record shows that Robbins Geller will adequately represent the putative class. IAM's choice of counsel is approved.

## V. Conclusion

The court grants IAM's motion for appointment of lead plaintiff and approves Robbins Geller as lead counsel. (Docket Entry No. 18). The court denies Inter-Marketing Group's and the Pennsylvania **[*18]** State Employees' Retirement System's motions for appointment of lead plaintiff and approval of lead counsel. (Docket Entry Nos. 8, 11). The amended consolidated complaint must be filed by January 29, 2016, and the motion to dismiss by March 14, 2015. A reply brief is permitted, and the filings must be within the usual page limits.

SIGNED on December 7, 2015, at Houston, Texas.

/s/ Lee H. Rosenthal

Lee H. Rosenthal

United States District Judge



Neutral
As of: October 30, 2018 2:36 PM Z

# *Turner v. ShengdaTech, Inc. (In re ShengdaTech, Inc. Secs. Litig.)*

United States District Court for the Southern District of New York

December 6, 2011, Decided; December 6, 2011, Filed

11 Civ. 1918 (TPG); 11 Civ. 1996; 11 Civ. 2064; 11 Civ. 3325

**Reporter**
2011 U.S. Dist. LEXIS 141695 *; 2011 WL 6110438

JAMES THOMAS TURNER, Individually and on Behalf of All Others Similarly Situated, Plaintiff, - against - SHENGDATECH, INC., et al., Defendants. MARLON FUND SICAV PLC, Individually and on Behalf of All Others Similarly Situated, Plaintiff, - against - SHENGDATECH, INC., et al., Defendants. ERIK S. MATHES, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, - against - SHENGDATECH, INC., et al., Defendants. DONALD D. YAW and EDWARD J. SCHAUL, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, - against - SHENGDATECH, INC., et al., Defendants.

**Subsequent History:** Dismissed by *In re Shengdatech Secs. Litig., 2013 U.S. Dist. LEXIS 121636 (S.D.N.Y., Aug. 22, 2013)*

Dismissed by *In re ShengdaTech, Inc. Sec. Litig., 2014 U.S. Dist. LEXIS 112190 (S.D.N.Y., Aug. 12, 2014)*

Motion denied by *In re ShengdaTech, Inc. Sec. Litig., 2015 U.S. Dist. LEXIS 69395 (S.D.N.Y., May 28, 2015)*

## Core Terms

notice, lead plaintiff, appointment, consolidate, Securities, class period, common stock, purported, financial interest, first-filed

**Counsel: [*1]** For Donald D. Yaw, Edward J. Schaul, Lead Plaintiffs (1:11-cv-01918-TPG): Mario Alba, Jr, LEAD ATTORNEY, Robbins Geller Rudman & Dowd LLP(LI), Melville, NY.

For James Thomas Turner, Individually and on behalf of all others similarly situated, Plaintiff (1:11-cv-01918-TPG): Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP(LI), Melville, NY.

For Erik S. Mathes, on behalf of himself and all others similarly situated, Consolidated Plaintiff (1:11-cv-01918-TPG): Donald R. Hall, Jr, Frederic Scott Fox, Sr, Hae

Sung Nam, Irina Kobylevsky, Kaplan Fox & Kilsheimer LLP (NYC), New York, NY.

For Marlon Fund SICA V PLC, Movant (1:11-cv-01918-TPG): Jeremy Alan Lieberman, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY.

For Thomas Loomis, Movant (1:11-cv-01918-TPG), (1:11-cv-02064-TPG): Irina Kobylevsky, LEAD ATTORNEY, Kaplan Fox & Kilsheimer LLP (NYC), New York, NY.

For Shadas, Movant (1:11-cv-01918-TPG): Phillip C. Kim, LEAD ATTORNEY, The Rosen Law Firm P.A., New York, NY.

For Shengdatech, Inc., Defendant (1:11-cv-01918-TPG): Robert Allen Horowitz, Greenberg Traurig, LLP (NYC), New York, NY.

For Marlon Fund SICA V PLC, Individually and on behalf of all others similarly situated, Plaintiff **[*2]** (1:11-cv-01996-TPG): Jeremy Alan Lieberman, LEAD ATTORNEY, Marc Ian Gross, Patrick Vincent Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY.

For Thomas Loomis, Movant (1:11-cv-01996-TPG): Irina Kobylevsky, LEAD ATTORNEY, Kaplan Fox & Kilsheimer LLP (NYC), New York, NY.

For Shengtech, Inc., Defendant (1:11-cv-01996-TPG): Robert Allen Horowitz, Greenberg Traurig, LLP (NYC), New York, NY.

For Erik S. Mathes, on behalf of himself and all others similarly situated, Plaintiff (1:11-cv-02064-TPG): Donald R. Hall, Jr, LEAD ATTORNEY, Frederic Scott Fox, Sr, Hae Sung Nam, Irina Kobylevsky, Kaplan Fox & Kilsheimer LLP (NYC), New York, NY.

For Shengdatech, Inc., Defendant (1:11-cv-02064-TPG): Robert Allen Horowitz, LEAD ATTORNEY, Greenberg Traurig, LLP (NYC), New York, NY.

For Donald D. Yaw, Individually and on behalf of all others similarly situated, Edward J. Schaul, Individually

and on behalf of all others similarly situated, Plaintiffs (1:11-cv-03325-TPG): Samuel Howard Rudman, LEAD ATTORNEY, Mario Alba, Jr, Robbins Geller Rudman & Dowd LLP(LI), Melville, NY.

For Shengdatech, Inc., Defendant (1:11-cv-03325-TPG): Robert Allen Horowitz, LEAD ATTORNEY, Greenberg Traurig, LLP (NYC), [*3] New York, NY.

**Judges:** Thomas P. Griesa.

**Opinion by:** Thomas P. Griesa

# Opinion

In these related cases, plaintiffs bring securities class actions on behalf of all persons who purchased the common stock of ShengdaTech, Inc. ("ShengdaTech") during certain periods of time. Plaintiffs allege that ShengdaTech and three of its senior executives violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC *Rule 10b-5*.

Plaintiffs Marlon Fund SICA V PLC ("Marlon"), Thomas Loomis ("Loomis"), Shula Shada and Aliza Peretz ("the Shadas"), and Edward Schaul and Donald Yaw ("Schaul and Yaw") now move to consolidate the various actions. In addition, each set of plaintiffs moves for appointment as lead plaintiff in the resulting action pursuant to the Private Securities Litigation Reform Act ("PSLRA"). Lastly, they seek approval of their respective counsel as lead counsel for the consolidated action.

The court grants the motion to consolidate, appoints plaintiffs Schaul and Yaw as lead plaintiffs, and approves their selection of Robbins, Geller, Rudman, and Dowd, L.L.P. ("Robbins Geller") as lead counsel.

## BACKGROUND

Between 2008 and 2011, the common stock of ShengdaTech, a Nevada corporation based in Shanghai, China, [*4] was traded on the NASDAQ Stock Market. In this time, ShengdaTech filed numerous quarterly and annual earnings reports with the Securities and Exchange Commission ("SEC") and issued many public statements related to its earnings.

On March 15, 2011, ShengdaTech announced the formation of a special committee of its Board of Directors to investigate financial discrepancies unearthed by its auditors during their examination of

records for the year ending on December 31, 2010. It also announced the hiring of independent counsel to initiate the investigation and delayed its required disclosures to the SEC. As a result, trading in ShengdaTech's common stock was suspended, and NASDAQ ultimately delisted the company on April 29, 2011.

On May 5, 2011, ShengdaTech notified the SEC that its longtime auditor, KPMG, had resigned due to the failure of ShengdaTech's board of directors to take appropriate remedial actions to address the fiscal discrepancies KPMG had previously identified. In the course of its resignation, KPMG also declared that ShengdaTech should take action to prevent future reliance on KPMG's audit reports for the years 2008 and 2009.

On March 18, 2011, plaintiff James Thomas Turner [*5] filed the first class action in this court against ShengdaTech and its senior executives on behalf of all purchasers of ShengdaTech common stock from March 15, 2010 to March 1, 2011. The complaint alleges that ShengdaTech and its officers violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, *15 U.S.C. §§ 78j(b)* and *78t(a)*, and SEC *Rule 10b-5*, *17 C.F.R. § 240.10b-5*, by materially misrepresenting the company's financial position in regulatory filings and public statements, thus artificially inflating the value of the company's common stock and causing losses to purchasers who bought and held the stock before the revelation of ShengdaTech's financial irregularities.

On March 18, 2011, plaintiff's counsel Robbins Geller, pursuant to *15 U.S.C. § 78u-4(a)(3)(A)(i)*, published notice of the Turner action in *Business Wire*. This notice specified that, pursuant to *15 U.S.C. § 78u-4(a)(3)(A)(i)(II)*, persons wishing to serve as lead plaintiff were to so move in this action within sixty days of the published notice.

During the subsequent sixty-day period, three related class actions were filed in this court: *Turner v. ShengdaTech, Inc.* (11 Civ. 1918); *Marlon Fund SICA V PLC v ShengdaTech, Inc.* (11 Civ. 1996) [*6] ; *Mathes v. ShengdaTech, Inc.* (11 Civ. 2064); and *Yaw v. ShengdaTech, Inc.* (11 Civ. 3325). The last of these— the action instituted on May 17, 2011 by plaintiffs Schaul and Yaw through Robbins Geller—alleges a class period of May 7, 2008 through March 15, 2011. On that same day, plaintiffs Marlon, Loomis, the Shadas, and Yaw and Schaul moved for consolidation and for appointment of lead plaintiff. In addition, the Shadas argue that the court—unless it appoints them lead

2011 U.S. Dist. LEXIS 141695, *6

plaintiff—should stay the consolidated action on the ground that the expansion of the class period in the Yaw complaint is so substantial as to require a second round of notice under the PSLRA followed by another sixty-day waiting period to permit other potential lead plaintiffs to come forward.

**Discussion**

Motion to Consolidate

 *Fed. R. Civ. P. 42(a)* provides that the court may consolidate questions that involve common questions of law and fact. It is clear that the actions currently before the court should be consolidated, as each employs the same facts to make substantially similar allegations. While the Schaul and Yaw complaint reaches a longer class period, it employs the same legal theories that underlie **[*7]** the suits with a shorter class period.

Request for New Notice

As already described, the Shadas argue that the Schaul and Yaw complaint so expands the class period of the first-filed case as to warrant a stay in this action for a second round of PSLRA notice.

The PSLRA lays out a detailed regime governing the form and timing of notice for securities class actions:

> i) Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. (ii) Multiple actions. If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause **[*8]** (i).

*15 U.S.C. § 78u-4(a)(3)(A) (2011)*.

Courts, however, disfavor republication of notice under

PSLRA when a class period is extended beyond the period contained in the first-filed securities class action. See *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., No. 05 Civ. 1898, 2005 U.S. Dist. LEXIS 10780, 2005 WL 1322721 at *2 (S.D.N.Y. June 1, 2005)*; *Lax v. First Merchs. Acceptance Corp., No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)*. This antagonism derives from the text of the law, which specifies that where a later action asserts substantially the same claim as a first-filed action, "only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published." *15 U.S.C. § 78u-4(a)(3)(A)(ii) (2011)*.

Here, the Schaul and Yaw action proceeds against the same defendants as the first-filed Turner action, relies on the same legal theories as that action, and concerns the same type of securities as that action. All told, potential lead plaintiffs in this case were adequately notified of the nature of the claims against ShengdaTech by the notice of the Turner action published on March 18, 2011 in *Business Wire*, despite the shorter purported class period **[*9]** of that action. Consequently, the court holds that the Schaul and Yaw action is substantially similar to the first-filed Turner action, such that the March 18, 2011 notice satisfied the requirements of the PSLRA. Accord *Greenberg v. Bear Stearns & Co., Inc., 80 F.Supp.2d 65, 69 (E.D.N.Y. 2000)*.

Appointment of Lead Plaintiff

The court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *15 U.S.C. § 78u-4(a)(3)(B)*. The PSLRA subsequently refers to this party as "the most adequate plaintiff." Id. Under the law, the most adequate plaintiff is rebuttably presumed to be:

> the person or group of persons that (aa) has either filed the complaint or made a motion in response to notice...; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*.

Id.

*Rule 23*, of course, provides that a class member may sue to represent a class when:

> (1) the class is so numerous that joinder of all

members is impracticable; (2) there **[\*10]** are questions of law or fact common to the class;(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.
*Fed. R. Civ. Proc. 23(a)* (2011).

When appointing a lead plaintiff pursuant to the PSLRA, courts focus on the typicality and adequacy prongs of *Rule 23*. See *In re Fuwei Films, 247 F.R.D. 432, 437 (S.D.N.Y. 2008)*. A plaintiff's claim is typical when it arises from the same events and is pursued under the same legal theories as the claims of all class members. See *Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986)*. Secondly, the "adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class...and has retained counsel that is capable and qualified to vigorously represent the interests of the class...." *Glauser v. EVCI Center Colleges Holding Corp., 236 F.R.D. 184, 189 (S.D.N.Y. 2006)*.

Finally, even if the PSLRA's requirements are met, the presumptively most adequate plaintiff can be disqualified upon a showing that it "(aa) will not fairly and adequately protect **[\*11]** the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (2011)*.

In this case, a single factor—the extent of the possible lead plaintiffs' financial interest in this litigation—is dispositive. All possible lead plaintiffs satisfy the other criteria for most adequate plaintiff. As purchasers of Shengdatech common stock on the liquid and efficient NASDAQ stock exchange, all plaintiffs assert substantially identical fraud-on-the-market claims, all of which satisfy the typicality requirement. Moreover, it appears that the potential lead plaintiffs have chosen counsel who can vigorously represent the class and are not conflicted with respect to it. Lastly, no movant claims that another is incapable of representing the class or is subject to a unique defense. Hence, the most adequate plaintiff in this case is that with the largest financial interest in the relief sought by the class.

The PSLRA does not specify how a court is to determine which plaintiff possesses the largest financial interest in the litigation. Courts naturally take the position that usually financial interest **[\*12]** relates to the total amount of loss suffered. See *In re Espeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005)*. Marlon

and Loomis concede that, under any calculation, they lost less than Schaul and Yaw. While the Shadas initially claimed to have suffered greater losses than Schaul and Yaw, they have withdrawn this claim in their most recent filings with the court and instead base their opposition to the appointment of Schaul and Yaw on the notice argument addressed above. For reasons indicated above, the court will not base its decision on this factor. Consequently, Schaul and Yaw are appointed lead plaintiffs.

In addition, the court approves Schaul and Yaw's choice of Robbins Geller as lead counsel, since the firm has substantial experience and expertise in this sort of litigation.

## Conclusion

For the foregoing reasons, the motions to consolidate are granted. Schaul and Yaw's motion to be appointed lead plaintiffs is granted, and their counsel Robbins, Geller, Rudman, and Dowd, L.L.P. will be lead counsel.

The docket in Case No. 11-CV-1918 (TPG) will constitute the Master Docket for this action, and the consolidated action will bear the name *In re* **[\*13]** *ShengdaTech, Inc. Securities Litigation*.

Dated: New York, New York

December 6, 2011

/s/ Thomas P. Griesa

Thomas P. Griesa

# US District Court Civil Docket

## U.S. District - New York Southern
### (Foley Square)

## 1:16cv6728

## In re Signet Jewelers Limited Securities Litigation

This case was retrieved from the court on Thursday, November 01, 2018

| | | | |
|---|---|---|---|
| **Date Filed:** | 08/25/2016 | **Class Code:** | OPEN |
| **Assigned To:** | Judge Colleen McMahon | **Closed:** | |
| **Referred To:** | | **Statute:** | 15:78m(a) |
| **Nature of suit:** | Securities (850) | **Jury Demand:** | Plaintiff |
| **Cause:** | Securities Exchange Act | **Demand Amount:** | $0 |
| **Lead Docket:** | None | **NOS Description:** | Securities |
| **Other Docket:** | 1:16cv06861 1:17cv02845 1:17cv02846 1:17cv09853 | | |
| **Jurisdiction:** | Federal Question | | |

| Litigants | Attorneys |
|---|---|
| Public Employees Retirement System of Mississippi Lead Plaintiff | Gerald H. Silk LEAD ATTORNEY;ATTORNEY TO BE NOTICED Bernstein Litowitz Berger & Grossmann LLP 1251 Avenue Of The Americas New York, NY 10020 USA 212 554 1282 Fax: 212-554-1444 Email:Jerry@blbglaw.Com<br><br>John James Rizio-Hamilton LEAD ATTORNEY;ATTORNEY TO BE NOTICED Bernstein Litowitz Berger & Grossmann LLP 1251 Avenue Of The Americas New York, NY 10020 USA (212) 554-1505 Fax: (212)-554-1444 Email:Johnr@blbglaw.Com<br><br>Ross Mitchell Shikowitz LEAD ATTORNEY;ATTORNEY TO BE NOTICED Bernstein Litowitz Berger & Grossmann LLP 1251 Avenue Of The Americas New York, NY 10020 USA (212)-554-1429 Fax: (212)-552-1444 Email:Ross@blbglaw.Com |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

Susan Dube
Plaintiff

Austin Patrick Van
ATTORNEY TO BE NOTICED
Pomerantz LLP (NYC)
600 Third Avenue, 20th Floor
New York, NY 10016
USA
(212)-661-1100
Fax: (212)-463-1044
Email:Avan@pomlaw.Com

Garth Avery Spencer
ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
230 Park Avenue, Suite 530
New York, NY 10169
USA
(212)-682-5340
Fax: (212)-884-0988
Email:Gspencer@glancylaw.Com

Jeremy Alan Lieberman
ATTORNEY TO BE NOTICED
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, NY 10016
USA
(212)-661-1100
Fax: (212)-661-8665
Email:Jalieberman@pomlaw.Com

Lesley Frank Portnoy
ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
USA
310-201-9150
Fax: 310-201-9160
Email:Lportnoy@glancylaw.Com

Robert Vincent Prongay
ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
USA
(310) 201-9150
Fax: (310) 201-9160
Email:Rprongay@glancylaw.Com

Tamar Aliza Weinrib
ATTORNEY TO BE NOTICED
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, NY 10016
USA
(212) 661-1100 X248
Fax: (212) 661-8665
Email:Taweinrib@pomlaw.Com

Lyubomir Spasov
Plaintiff

Austin Patrick Van
ATTORNEY TO BE NOTICED
Pomerantz LLP (NYC)
600 Third Avenue, 20th Floor
New York, NY 10016
USA
(212)-661-1100
Fax: (212)-463-1044
Email:Avan@pomlaw.Com

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

Garth Avery Spencer
ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
230 Park Avenue, Suite 530
New York, NY 10169
USA
(212)-682-5340
Fax: (212)-884-0988
Email:Gspencer@glancylaw.Com

Jeremy Alan Lieberman
ATTORNEY TO BE NOTICED
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, NY 10016
USA
(212)-661-1100
Fax: (212)-661-8665
Email:Jalieberman@pomlaw.Com

Joseph Alexander Hood , II
ATTORNEY TO BE NOTICED
Pomerantz LLP
600 Third Avenue
New York, NY 10016
USA
(212)-661-1100
Email:Ahood@pomlaw.Com

Lesley Frank Portnoy
ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
USA
310-201-9150
Fax: 310-201-9160
Email:Lportnoy@glancylaw.Com

Robert Vincent Prongay
ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
USA
(310) 201-9150
Fax: (310) 201-9160
Email:Rprongay@glancylaw.Com

Tamar Aliza Weinrib
ATTORNEY TO BE NOTICED
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, NY 10016
USA
(212) 661-1100 X248
Fax: (212) 661-8665
Email:Taweinrib@pomlaw.Com

Nebil Aydin
Plaintiff

Lesley Frank Portnoy
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
USA
310-201-9150
Fax: 310-201-9160
Email:Lportnoy@glancylaw.Com

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| | |
|---|---|
| Heather   Salway<br>Movant | Phillip C. Kim<br>ATTORNEY TO BE NOTICED<br>The Rosen Law Firm P.A.<br>275 Madison Avenue<br>New York, NY 10016<br>USA<br>(212) 686-1060<br>Fax: (212) 202-3827<br>Email:Pkim@rosenlegal.Com |
| Norfolk County Council as Administering Authority of The<br>Norfolk Pension Fund<br>Movant | David Avi Rosenfeld<br>ATTORNEY TO BE NOTICED<br>Robbins Geller Rudman & Dowd LLP(LI)<br>58 South Service Road Suite 200<br>Melville, NY 11747<br>USA<br>631-367-7100<br>Fax: 631-367-1173<br>Email:Drosenfeld@rgrdlaw.Com<br><br>Samuel Howard Rudman<br>ATTORNEY TO BE NOTICED<br>Robbins Geller Rudman & Dowd LLP (LI)<br>58 South Service Road Suite 200<br>Melville, NY 11747<br>USA<br>(631) 367-7100<br>Fax: (631) 367-1173<br>Email:Srudman@rgrdlaw.Com |
| Signet Jewelers Limited<br>Defendant | Joseph S. Allerhand<br>ATTORNEY TO BE NOTICED<br>Weil, Gotshal & Manges LLP (NYC)<br>767 Fifth Avenue, 25th Fl.<br>New York, NY 10153<br>USA<br>(212) 310-8000<br>Fax: (212) 833-3148<br>Email:Joseph.Allerhand@weil.Com<br><br>Stacy Nettleton<br>ATTORNEY TO BE NOTICED<br>Weil, Gotshal & Manges LLP (NYC)<br>767 Fifth Avenue, 25th Fl.<br>New York, NY 10153<br>USA<br>(212)-310-8442<br>Fax: (212)-310-8007<br>Email:Stacy.Nettleton@weil.Com |
| Mark Light<br>Defendant | Joseph S. Allerhand<br>ATTORNEY TO BE NOTICED<br>Weil, Gotshal & Manges LLP (NYC)<br>767 Fifth Avenue, 25th Fl.<br>New York, NY 10153<br>USA<br>(212) 310-8000<br>Fax: (212) 833-3148<br>Email:Joseph.Allerhand@weil.Com<br><br>Stacy Nettleton<br>ATTORNEY TO BE NOTICED<br>Weil, Gotshal & Manges LLP (NYC)<br>767 Fifth Avenue, 25th Fl.<br>New York, NY 10153<br>USA<br>(212)-310-8442<br>Fax: (212)-310-8007<br>Email:Stacy.Nettleton@weil.Com |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.<br>***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

Michele Santana
Defendant

Joseph S. Allerhand
ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153
USA
(212) 310-8000
Fax: (212) 833-3148
Email:Joseph.Allerhand@weil.Com

Stacy Nettleton
ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153
USA
(212)-310-8442
Fax: (212)-310-8007
Email:Stacy.Nettleton@weil.Com

Michael Barnes
Defendant

Joseph S. Allerhand
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue
New York, NY 10153
USA
(212) 310-8000
Fax: (212) 833-3148
Email:Joseph.Allerhand@weil.Com

Stacy Nettleton
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue
New York, NY 10153
USA
(212)-310-8442
Fax: (212)-310-8007
Email:Stacy.Nettleton@weil.Com

Ronald Ristau
Defendant

Joseph S. Allerhand
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153
USA
(212) 310-8000
Fax: (212) 833-3148
Email:Joseph.Allerhand@weil.Com

Stacy Nettleton
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153
USA
(212)-310-8442
Fax: (212)-310-8007
Email:Stacy.Nettleton@weil.Com

Virginia C. Drosos
Defendant

Joseph S. Allerhand
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153
USA
(212) 310-8000
Fax: (212) 833-3148
Email:Joseph.Allerhand@weil.Com

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

Maria Mikolchak
Interested Party

Phillip C. Kim
ATTORNEY TO BE NOTICED
The Rosen Law Firm P.A.
275 Madison Avenue
New York, NY 10016
USA
(212) 686-1060
Fax: (212) 202-3827
Email:Pkim@rosenlegal.Com

Irving Firemen's Relief & Retirement System
Intervenor

David Avi Rosenfeld
ATTORNEY TO BE NOTICED
Robbins Geller Rudman & Dowd LLP(LI)
58 South Service Road Suite 200
Melville, NY 11747
USA
631-367-7100
Fax: 631-367-1173
Email:Drosenfeld@rgrdlaw.Com

Samuel Howard Rudman
ATTORNEY TO BE NOTICED
Robbins Geller Rudman & Dowd LLP(LI)
58 South Service Road Suite 200
Melville, NY 11747
USA
(631) 367-7100
Fax: (631) 367-1173
Email:Srudman@rgrdlaw.Com

| Date | # | Proceeding Text |
|------|---|-----------------|
| 08/25/2016 | 1 | COMPLAINT against Mark Light, Michele Santana, Signet Jewelers Limited. (Filing Fee $ 400.00, Receipt Number 0208-12692047)Document filed by Susan Dube, Individually and On Behalf of All Others Similarly Situated.(Portnoy, Lesley) (Entered: 08/25/2016) |
| 08/25/2016 | 2 | REQUEST FOR ISSUANCE OF SUMMONS as to SIGNET JEWELERS LIMITED, MARK LIGHT, and MICHELE SANTANA, re: 1 Complaint. Document filed by Susan Dube, Individually and On Behalf of All Others Similarly Situated. (Portnoy, Lesley) (Entered: 08/25/2016) |
| 08/25/2016 | 3 | CIVIL COVER SHEET filed. (Portnoy, Lesley) (Entered: 08/25/2016) |
| 08/26/2016 | | ***NOTICE TO ATTORNEY REGARDING CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Lesley Frank Portnoy. The following case opening statistical information was erroneously selected/entered: County code XX Out of U.S.;. The following correction(s) have been made to your case entry: the County code has been modified to XX Out of State. (rch) (Entered: 08/26/2016) |
| 08/26/2016 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Lesley Frank Portnoy. The party information for the following party/parties has been modified: Susan Dube. The information for the party/parties has been modified for the following reason/reasons: party role was entered incorrectly. (rch) (Entered: 08/26/2016) |
| 08/26/2016 | 4 | ELECTRONIC SUMMONS ISSUED as to Mark Light, Michele Santana, Signet Jewelers Limited. (rch) (Entered: 08/26/2016) |
| 08/26/2016 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Jesse M. Furman. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (rch) (Entered: 08/26/2016) |
| 08/26/2016 | | Magistrate Judge Ronald L. Ellis is so designated. (rch) (Entered: 08/26/2016) |
| 08/26/2016 | | Case Designated ECF. (rch) (Entered: 08/26/2016) |
| 08/31/2016 | 5 | ORDER: On August 25, 2016, Plaintiff filed a class action lawsuit on behalf of the public stockholders of Signet Jewelers Limited. The Complaint alleges violations of Sections 10(b) and |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5, promulgated thereunder. Section 78u-4(a)(3)(A) of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. ? 78u-4(a)(3)(A), requires that: Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class - (I) of the pendency of the action, the claims asserted therein, and the purported class period.... 15 U.S.C. ? 78u-4(a)(3)(A)(i). No later than September 16, 2016, Plaintiff shall advise the Court in writing of the date and manner in which it published this notice. (Signed by Judge Jesse M. Furman on 8/31/2016) (tn) (Entered: 08/31/2016)

| | | |
|---|---|---|
| 08/31/2016 | 6 | RESPONSE re: 5 Order,,,, . Document filed by Susan Dube. (Attachments: # 1 Exhibit A - PSLRA Notice)(Portnoy, Lesley) (Entered: 08/31/2016) |
| 09/01/2016 | 7 | ORDER: Plaintiff's counsel notified the Court in the attached letter that the required notice was published on August 25, 2016. Members of the purported class therefore have until October 24, 2016, to move the Court to serve as lead plaintiffs. Accordingly, it is hereby ORDERED that a conference shall be held on November 22, 2016, at 4:00 p.m. in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York to consider any motions for appointment of lead plaintiff and lead counsel and for consolidation. It is further ORDERED that opposition to any motion for appointment of lead plaintiff shall be served and filed by November 7, 2016. It is further ORDERED that the named plaintiffs shall promptly serve a copy of this Order on each of the defendants. (As further set forth in this order), ( Motions due by 10/24/2016., Responses due by 11/7/2016.), ( Status Conference set for 11/22/2016 at 04:00 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman.) (Signed by Judge Jesse M. Furman on 9/1/2016) (lmb) Modified on 9/2/2016 (lmb). (Entered: 09/02/2016) |
| 09/07/2016 | | Magistrate Judge Ronald L. Ellis is so designated. (ad) (Entered: 09/07/2016) |
| 09/08/2016 | 8 | ORDER: On August 25, 2016, Plaintiff Susan Dube filed a complaint in 16-CV-6728. On August 31, 2016, Plaintiff Lyubomir Spasov filed a similar complaint in 16-CV-6861. As of this Order, no motion for consolidation has been filed, but 16-CV-6861 has been accepted by the Court as related to 16-CV-6728, and the cases appear to involve common questions of law and fact. The parties in each case are directed to file letters no later than September 15, 2016, not to exceed three single-spaced pages each, indicating their views on whether the cases should be consolidated and, if so, whether the Court should proceed as previously ordered (16-CV-6728, Docket No. 7) with respect to the motion deadlines and the hearing date in appointing a lead plaintiff. If the parties do not file letters opposing consolidation, the Court may consolidate the two cases without further notice to the parties. It is further ORDERED that the named plaintiffs shall promptly serve a copy of this Order on each of the defendants and file proof of service on the docket. (Signed by Judge Jesse M. Furman on 9/8/2016) (tn) (Entered: 09/08/2016) |
| 09/09/2016 | 9 | CERTIFICATE OF SERVICE served on Defendants Signet Jewelers Limited, Mark Light, and Michele Santana on September 9, 2016. Service was made by Mail. Document filed by Susan Dube. (Portnoy, Lesley) (Entered: 09/09/2016) |
| 09/14/2016 | 10 | RESPONSE re: 8 Order,,,, . Document filed by Susan Dube. (Portnoy, Lesley) (Entered: 09/14/2016) |
| 09/16/2016 | 11 | ORDER: that pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, they are consolidated under the case number 16-CV-6728. The motion deadlines and the hearing date in appointing a lead plaintiff will proceed as previously ordered. (16-CV-6728, Docket No. 7). It is further ORDERED that the named plaintiffs shall promptly serve a copy of this Order on each of the Defendants and file proof of service on the docket. The Clerk of court is directed to consolidate 16-CV-6728 and 16-CV-6861 under case number 16-CV-6728, and to close 16-CV-6861. (Signed by Judge Jesse M. Furman on 9/16/2016) (tn) (Entered: 09/19/2016) |
| 09/27/2016 | 12 | NOTICE OF APPEARANCE by Joseph S. Allerhand on behalf of Mark Light, Michele Santana, Signet Jewelers Limited. Filed In Associated Cases: 1:16-cv-06728-JMF, 1:16-cv-06861-JMF(Allerhand, Joseph) (Entered: 09/27/2016) |
| 09/27/2016 | 13 | NOTICE OF APPEARANCE by Stacy Nettleton on behalf of Mark Light, Michele Santana, Signet Jewelers Limited. Filed In Associated Cases: 1:16-cv-06728-JMF, 1:16-cv-06861-JMF(Nettleton, Stacy) (Entered: 09/27/2016) |
| 09/27/2016 | 14 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Mark Light, Michele Santana, Signet Jewelers Limited.Filed In Associated Cases: 1:16-cv-06728-JMF, 1:16-cv-06861-JMF(Allerhand, Joseph) (Entered: 09/27/2016) |
| 09/29/2016 | 15 | STIPULATION AND ORDER: IT IS HEREBY STIPULATED AND AGREED, subject to the Court's approval, by and among the undersigned counsel to the parties in the above-captioned actions, as |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

follows: 1. Defendants Signet Jewelers Limited, Mark Light, and Michele Santana's ("Defendants") time to answer, move, or otherwise respond to the complaints filed by plaintiffs Susan Dube and Lyubomir Spasov is extended until after the Court Appoints a lead plaintiff and lead counsel for lead plaintiff and such lead plaintiff either serves a consolidated amended complaint or designates a complaint as the operative complaint. 2. After the Court appoints a lead plaintiff and lead counsel, counsel for Defendants shall confer with lead plaintiff's counsel and agree to a stipulation, subject to court approval, putting in place a schedule setting forth the lead plaintiffs' time to file a consolidated amended complaint or otherwise designate an operative complaint and Defendants' time to answer or otherwise respond to the operative complaint in this action. (Signed by Judge Jesse M. Furman on 9/28/2016) (cla) (Entered: 09/29/2016)

| 10/24/2016 | 16 | MOTION to Appoint Counsel Glancy Prongay &amp; Murray LLP and Pomerantz LLP. MOTION to Appoint Lyubomir Spasov and Susan Dube to serve as lead plaintiff(s) . Document filed by Susan Dube, Lyubomir Spasov. (Attachments: # 1 Text of Proposed Order)(Portnoy, Lesley) Modified on 7/27/2017 (ap). Modified on 8/8/2017 (ap). (Entered: 10/24/2016) |
|---|---|---|
| 10/24/2016 | 17 | MEMORANDUM OF LAW in Support re: 16 MOTION to Appoint Counsel Glancy Prongay &amp; Murray LLP and Pomerantz LLP. MOTION to Appoint Lyubomir Spasov and Susan Dube to serve as lead plaintiff(s) . . Document filed by Susan Dube, Lyubomir Spasov. (Portnoy, Lesley) (Entered: 10/24/2016) |
| 10/24/2016 | 18 | DECLARATION of Lesley F. Portnoy in Support re: 16 MOTION to Appoint Counsel Glancy Prongay &amp; Murray LLP and Pomerantz LLP. MOTION to Appoint Lyubomir Spasov and Susan Dube to serve as lead plaintiff(s) .. Document filed by Susan Dube, Lyubomir Spasov. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Portnoy, Lesley) (Entered: 10/24/2016) |
| 11/02/2016 | 19 | MOTION for Robert V. Prongay to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-12945535. Motion and supporting papers to be reviewed by Clerk's Office staff. Document filed by Susan Dube, Lyubomir Spasov. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit - Certificate of Good Standing)(Prongay, Robert) (Entered: 11/02/2016) |
| 11/03/2016 | | &gt;&gt;&gt;NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 19 MOTION for Robert V. Prongay to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-12945535. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb) (Entered: 11/03/2016) |
| 11/03/2016 | 20 | ORDER granting 19 Motion for Robert V. Prongay to Appear Pro Hac Vice (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 11/03/2016) |
| 11/09/2016 | 21 | ORDER: On October 24, 2016, Lyubomir Spasov and Susan Dube filed a motion for appointment as lead plaintiffs pursuant to Section 78-u(a)(3)(B) of the Private Securities Litigation Reform Act ("PSLRA"). (Docket No. 16). The filing also included a motion for approval of Glancy Prongay &amp; Murray LLP and Pomerantz LLP as co-lead counsel for the class. Despite the fact that no opposition was filed, the Court has an independent duty under the PSLRA to assure itself that Spasov and Dube satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. ? 78-u(a)(3)(B)(iii)(I)(bb)-(cc). Where, as here, the movant is a group rather than an individual person or entity, the question of whether the group can fairly and adequately represent the interests of the class includes consideration of "the way in which a group seeking to become lead plaintiff was formed" and "the extent of the prior relationships and/or connection between the members of a movant group." In re Cendant Corp. Litig., 264 F.3d 201, 266 (3d. Cir. 2001). Accordingly, no later than November 14, 2016, Spasov and Dube shall file a supplemental letter addressing those considerations and their bearing on the motion for appointment as lead plaintiff. The letter should address the propriety or need to have two firms serve as co-lead counsel rather than a single firm. Upon review of the letter, the Court will determine whether there is need to hold the hearing presently scheduled for November 22, 2016. (Signed by Judge Jesse M. Furman on 11/9/2016) (mro) (Entered: 11/09/2016) |
| 11/14/2016 | 22 | LETTER addressed to Judge Jesse M. Furman from Lesley F. Portnoy dated November 14, 2016 re: Appointment as Lead Plaintiff and Approval of Lead Counsel. Document filed by Susan Dube, Lyubomir Spasov.(Portnoy, Lesley) (Entered: 11/14/2016) |
| 11/21/2016 | 23 | Vacated as per Judges Order dated 7/27/2017, Doc. # 84 ORDER granting 16 Motion to Appoint Counsel; granting 16 Motion to Appoint. Spasov and Dube are appointed as Lead Plaintiffs. The Court finds that they satisfy the requirements for Lead Plaintiff set forth in Section 78u-4(a) (3)(B). Lead Plaintiffs, pursuant to Section 78u-4(a)(3)(B)(v), have selected and retained Glancy Prongay &amp; Murray LLP and Pomerantz LLP as Co-Lead Counsel. In light of the foregoing, the hearing scheduled for November 22, 2016, is CANCELLED. The Clerk of Court is directed to terminate Docket No. 16. (Signed by Judge Jesse M. Furman on 11/21/2016) (kgo) Modified on 8/8/2017 (ap). (Entered: 11/21/2016) |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| 11/23/2016 | 24 | NOTICE OF APPEARANCE by Tamar Aliza Weinrib on behalf of Susan Dube, Lyubomir Spasov. (Weinrib, Tamar) (Entered: 11/23/2016) |
|---|---|---|
| 11/30/2016 | 25 | STIPULATION AND ORDER: Lead Plaintiffs are granted leave to file a consolidated amended complaint (the "Amended Complaint") on or before January 30, 2017. Defendants shall answer and otherwise respond to Lead Plaintiffs' Amended Complaint by March 16, 2017. If Defendants move to dismiss the Amended Complaint, Lead Plaintiffs shall file any opposition to such motion on or before May 1, 2017, and Defendants shall file any reply in support of such motion on or before June 7, 2017. The proposed schedule is adopted. The parties should not expect any extensions of the deadlines given their generosity. ( Amended Pleadings due by 1/30/2017., Motions due by 3/16/2017., Responses due by 5/1/2017, Replies due by 6/7/2017.) (Signed by Judge Jesse M. Furman on 11/29/2016) (mro) Modified on 1/9/2017 (mro). (Entered: 11/30/2016) |
| 01/10/2017 | 26 | NOTICE OF APPEARANCE by Austin Patrick Van on behalf of Susan Dube, Lyubomir Spasov. (Van, Austin) (Entered: 01/10/2017) |
| 01/10/2017 | 27 | NOTICE OF CHANGE OF ADDRESS by Austin Patrick Van on behalf of Susan Dube. New Address: Pomerantz LLP, 600 Third Avenue, 20th Floor, New York, New York, USA 10016, 212-661-1100. (Van, Austin) (Entered: 01/10/2017) |
| 01/30/2017 | 28 | AMENDED COMPLAINT amending 1 Complaint against Mark Light, Michele Santana, Signet Jewelers Limited with JURY DEMAND.Document filed by Susan Dube, Lyubomir Spasov. Related document: 1 Complaint filed by Susan Dube.(Lieberman, Jeremy) Modified on 1/31/2017 (pc). (Entered: 01/30/2017) |
| 03/01/2017 | 29 | LETTER MOTION for Leave to File Second Amended Complaint   addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated March 1, 2017. Document filed by Susan Dube, Lyubomir Spasov.(Lieberman, Jeremy) (Entered: 03/01/2017) |
| 03/01/2017 | 30 | ORDER granting 29 Letter Motion for Leave to File Second Amended Complaint. Lead Plaintiffs are granted leave to file a second amended complaint on or before April 3, 2017. The parties' proposed briefing schedule for Defendants' anticipated motion to dismiss is hereby adopted. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 03/01/2017) |
| 03/30/2017 | 31 | LETTER MOTION for Leave to File Letter regarding Intervention and PSLRA notice   addressed to Judge Jesse M. Furman from Samuel H. Rudman dated March 30, 2017. Document filed by Irving Firemen's Relief &amp; Retirement System.(Rudman, Samuel) (Entered: 03/30/2017) |
| 03/31/2017 | 32 | ORDER with respect to 31 Letter Motion regarding intervention and PSLRA notice. Lead Plaintiffs and - if they wish - Defendants shall file any response to proposed Intervenor's letter no later than April 6, 2017. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 03/31/2017) |
| 04/03/2017 | 33 | SECOND AMENDED COMPLAINT amending 28 Amended Complaint, against Mark Light, Michele Santana, Signet Jewelers Limited, Michael Barnes, Ronald Ristau with JURY DEMAND.Document filed by Susan Dube, Lyubomir Spasov. Related document: 28 Amended Complaint, filed by Lyubomir Spasov, Susan Dube.(Lieberman, Jeremy) Modified on 4/4/2017 (pc). Modified on 4/4/2017 (pc). (Entered: 04/03/2017) |
| 04/03/2017 | 34 | REQUEST FOR ISSUANCE OF SUMMONS as to Michael Barnes, re: 33 Amended Complaint,. Document filed by Susan Dube, Lyubomir Spasov. (Lieberman, Jeremy) (Entered: 04/03/2017) |
| 04/03/2017 | 35 | REQUEST FOR ISSUANCE OF SUMMONS as to Ronald Ristau, re: 33 Amended Complaint,. Document filed by Susan Dube, Lyubomir Spasov. (Lieberman, Jeremy) (Entered: 04/03/2017) |
| 04/04/2017 | 36 | ELECTRONIC SUMMONS ISSUED as to Ronald Ristau. (pc) (Entered: 04/04/2017) |
| 04/04/2017 | 37 | ELECTRONIC SUMMONS ISSUED as to Michael Barnes. (pc) (Entered: 04/04/2017) |
| 04/04/2017 | 38 | LETTER MOTION for Extension of Time to Respond to the Dube Plaintiffs' Second Amended Complaint and in Response to the March 30, 2017 Letter Motion Filed by the Irving Firemen's Relief &amp; Retirement System addressed to Judge Jesse M. Furman from Joseph S. Allerhand dated April 4, 2017. Document filed by Mark Light, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 04/04/2017) |
| 04/05/2017 | 39 | ORDER with respect to 31 Letter Motion for Leave to File Letter regarding Intervention and PSLRA notice; and 38 Letter Motion for Extension of Time to Respond to the Dube Plaintiffs' Second Amended Complaint and in Response to the March 30, 2017 Letter Motion Filed by the Irving Firemen's Relief &amp; Retirement System. The parties and proposed Intervenor shall appear for a conference with the Court on April 7, 2017, at 1:15 p.m. in Courtroom 1105 of the Thurgood |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

Marshall U.S. Courthouse, 40 Centre Street, New York, NY. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 04/05/2017)

04/06/2017   40   NOTICE OF APPEARANCE by David Avi Rosenfeld on behalf of Irving Firemen's Relief &amp; Retirement System. (Rosenfeld, David) (Entered: 04/06/2017)

04/06/2017   41   NOTICE OF APPEARANCE by Phillip C. Kim on behalf of Maria Mikolchak. (Kim, Phillip) (Entered: 04/06/2017)

04/06/2017   42   LETTER addressed to Judge Jesse M. Furman from Phillip Kim dated 4/6/2017 re: Irving Firemen's Relief &amp; Retirement System's Letter Motion for Leave to File Letter regarding Intervention and PSLRA notice. Document filed by Maria Mikolchak.(Kim, Phillip) (Entered: 04/06/2017)

04/06/2017   43   NOTICE OF APPEARANCE by Garth Avery Spencer on behalf of Susan Dube, Lyubomir Spasov. (Spencer, Garth) (Entered: 04/06/2017)

04/06/2017   44   LETTER RESPONSE in Opposition to Motion addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated April 6, 2017 re: 31 LETTER MOTION for Leave to File Letter regarding Intervention and PSLRA notice   addressed to Judge Jesse M. Furman from Samuel H. Rudman dated March 30, 2017. . Document filed by Susan Dube, Lyubomir Spasov. (Lieberman, Jeremy) (Entered: 04/06/2017)

04/07/2017        Minute Entry for proceedings held before Judge Jesse M. Furman: Pretrial Conference held on 4/7/2017. Jeremy Lieberman, Garth Spencer, and Austin Van present for Plaintiffs. Joseph Allerhand, Stacy Nettleton, and Robert Ruff present for Defendants. David Rosenfeld present for Intervenor Irving Firemen's Relief &amp; Retirement System. Court reporter present. (ab) (Entered: 04/27/2017)

04/10/2017   45   AFFIDAVIT OF SERVICE. Michael Barnes served on 4/5/2017, answer due 4/26/2017. Service was accepted by Michael Barnes, Defendant. Document filed by Susan Dube; Lyubomir Spasov. (Lieberman, Jeremy) (Entered: 04/10/2017)

04/14/2017   46   MEMORANDUM OPINION AND ORDER: Thus, the only possible way for Lead Plaintiffs to avoid the need for republication (and the revisiting of the lead plaintiff and lead counsel selection that might follow) is to revert to the claims and allegations in the original Complaint, which formed the basis for the original PSLRA notice. (See Docket Nos. 1, 6). If, in light of the Court's ruling, Lead Plaintiffs wish to strike the new claims and allegations in both the First and Second Amended Complaints and revert to the claims and allegations in the original Complaint, they shall file a letter brief to that effect within one week of the date of this Order, showing cause why the Court should permit them to do so; within three days of any such letter brief, any interested party including Defendants and IFRRS shall file any response. The Clerk of Court is directed to add IFRRS to the docket as an Intervenor and to terminate Docket Nos. 31 and 38. As discussed on the record at the April 7, 2017 conference, Defendants need not answer or otherwise respond to Lead Plaintiffs' complaints at present; the Court will set a deadline to answer or otherwise respond when the questions of lead plaintiff and the operative complaint have been clarified. (Signed by Judge Jesse M. Furman on 4/14/2017) (ap) (Entered: 04/14/2017)

04/17/2017   47   FILING ERROR - DEFICIENT DOCKET ENTRY (SEE 48 Affidavit) - AFFIDAVIT OF SERVICE. Ronald Ristau served on 4/10/2017, answer due 5/1/2017. Service was accepted by Ronald Ristau, Defendant. Document filed by Susan Dube; Lyubomir Spasov. (Lieberman, Jeremy) Modified on 4/18/2017 (db). (Entered: 04/17/2017)

04/17/2017   48   AFFIDAVIT OF SERVICE of Summons and Amended Complaint,. Ronald Ristau served on 4/7/2017, answer due 5/1/2017. Service was accepted by Ronald Ristau, defendant. Document filed by Susan Dube; Lyubomir Spasov. (Lieberman, Jeremy) (Entered: 04/17/2017)

04/20/2017   49   TRANSCRIPT of Proceedings re: CONFERENCE held on 4/7/2017 before Judge Jesse M. Furman. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/11/2017. Redacted Transcript Deadline set for 5/22/2017. Release of Transcript Restriction set for 7/19/2017.(McGuirk, Kelly) (Entered: 04/20/2017)

04/20/2017   50   NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 4/7/17 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 04/20/2017)

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| | | |
|---|---|---|
| 04/21/2017 | 51 | LETTER MOTION for Leave to File Third Amended Complaint   addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated April 21, 2017. Document filed by Susan Dube, Lyubomir Spasov.(Lieberman, Jeremy) (Entered: 04/21/2017) |
| 04/24/2017 | 52 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jesse M. Furman from Joseph S. Allerhand dated April 24, 2017 re: 51 LETTER MOTION for Leave to File Third Amended Complaint addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated April 21, 2017. . Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 04/24/2017) |
| 04/24/2017 | 53 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jesse M. Furman from David A. Rosenfeld dated April 24, 2017 re: 51 LETTER MOTION for Leave to File Third Amended Complaint addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated April 21, 2017. . Document filed by Irving Firemen's Relief &amp; Retirement System. (Rosenfeld, David) (Entered: 04/24/2017) |
| 05/04/2017 | 54 | MEMORANDUM OPINION AND ORDER re: 51 LETTER MOTION for Leave to File Third Amended Complaint addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated April 21, 2017 in 16cv6728. Upon review of the parties' submissions, Lead Plaintiffs' motion is DENIED, substantially for the reasons set forth in IFRRS's letter. Thus, the Court adheres to its prior conclusions and denies Lead Plaintiffs' motion for leave to amend the operative Second Amended Complaint. Instead, Lead Plaintiffs shall republish notice in this action to reflect the asserted class and class periods in the Second Amended Complaint, after which the Court will revisit the question of who should be appointed as lead plaintiff and lead counsel under the PSLRA. Typically, plaintiffs are required to publish PSLRA notice no more than twenty days after a complaint is filed. See 15 U.S.C. ? 78u-4(a)(3)(A). Taking its cue from that provision, the Court orders that, no later than May 24, 2017, Lead Plaintiffs shall advise the Court in writing of the date and manner in which they published notice. As of this Order, no motion for consolidation has been filed, but the Court accepted the two new cases as related to 16-CV-6728, and the cases appear to involve certain common questions of law and fact. Accordingly, the parties in each case are directed to file letters no later than May 11, 2017, not to exceed three single-spaced pages each, indicating their views on whether the cases should be consolidated. If the parties do not file letters opposing consolidation, the Court intends to consolidate the three cases without further notice to the parties. The Clerk of Court is directed to terminate 16-CV-6728 Docket No. 51, and as further set forth. (Signed by Judge Jesse M. Furman on 5/4/2017) (ras) Modified on 5/25/2017 (ras). (Entered: 05/04/2017) |
| 05/08/2017 | 55 | LETTER addressed to Judge Jesse M. Furman from Jeremy A. Lieberman dated 05/08/2017 re: Pursuant to the Order of the Court daed May 4, 2017. Document filed by Susan Dube, Lyubomir Spasov.(Lieberman, Jeremy) (Entered: 05/08/2017) |
| 05/09/2017 | 56 | LETTER addressed to Judge Jesse M. Furman from Samuel H. Rudman dated May 9, 2017 re: clarification of due dates for lead plaintiff motions. Document filed by Irving Firemen's Relief &amp; Retirement System.(Rudman, Samuel) (Entered: 05/09/2017) |
| 05/10/2017 | 57 | LETTER addressed to Judge Jesse M. Furman from Joseph S. Allerhand dated May 10, 2017 re: consolidation and clarification of due dates for lead plaintiff motions. Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 05/10/2017) |
| 05/12/2017 | 58 | ORDER: As the above-captioned actions involve common questions of law and fact and Plaintiffs agree that consolidation is appropriate, it is hereby ordered that pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, they are consolidated under the case number 16-CV-6728. Any motions to serve as lead plaintiffs and lead counsel shall be filed by July 5, 2017. It is further ORDERED that opposition to any motion for appointment of lead plaintiff and lead counsel shall be filed by July 19, 2017. Plaintiffs Irving Firemens Relief and Retirement System and Maria Mikolchak shall promptly provide supplemental notice of the new deadline to their purported classes. Finally, it is hereby ORDERED that a conference shall be held on August 1, 2017, at 3 p.m. in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York to consider any motions for appointment of lead plaintiff and lead counsel The Clerk of court is directed to consolidate 16-CV-6728, 17-CV-2845, and 17-CV-2846 under case number 16-CV-6728, and to close 17-CV-2845 and 17-CV-2846, and as further set forth herein. (Motions due by 7/5/2017, Responses due by 7/19/2017, Status Conference set for 8/1/2017 at 03:00 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman.) (Signed by Judge Jesse M. Furman on 5/12/2017) (ras) (Entered: 05/12/2017) |
| 05/23/2017 | 59 | NOTICE OF CHANGE OF ADDRESS by Garth Avery Spencer on behalf of Susan Dube, Lyubomir Spasov. New Address: Glancy Prongay &amp; Murray LLP, 230 Park Avenue, Suite 530, New York, NY, USA 10169, 212-682-5340. Filed In Associated Cases: 1:16-cv-06728-JMF, |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

1:16-cv-06861-JMF, 1:17-cv-02845-JMF, 1:17-cv-02846-JMF(Spencer, Garth) (Entered: 05/23/2017)

| 06/08/2017 | 60 | WAIVER OF SERVICE RETURNED EXECUTED. Document filed by Irving Firemen's Relief &amp; Retirement System. (Rosenfeld, David) (Entered: 06/08/2017) |
|---|---|---|
| 06/08/2017 | 61 | WAIVER OF SERVICE RETURNED EXECUTED. Document filed by Irving Firemen's Relief &amp; Retirement System. (Rosenfeld, David) (Entered: 06/08/2017) |
| 06/08/2017 | 62 | WAIVER OF SERVICE RETURNED EXECUTED. Document filed by Irving Firemen's Relief &amp; Retirement System. (Rosenfeld, David) (Entered: 06/08/2017) |
| 07/05/2017 | 63 | MOTION to Appoint Counsel The Rosen Law Firm., MOTION to Appoint Heather Salway to serve as lead plaintiff(s) . Document filed by Heather Salway. (Attachments: # 1 Text of Proposed Order)(Kim, Phillip) (Entered: 07/05/2017) |
| 07/05/2017 | 64 | MEMORANDUM OF LAW in Support re: 63 MOTION to Appoint Counsel The Rosen Law Firm. MOTION to Appoint Heather Salway to serve as lead plaintiff(s) . . Document filed by Heather Salway. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Kim, Phillip) (Entered: 07/05/2017) |
| 07/05/2017 | 65 | MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) . Document filed by Public Employees Retirement System of Mississippi.(Silk, Gerald) (Entered: 07/05/2017) |
| 07/05/2017 | 66 | MOTION to Appoint Norfolk County Council as Administering Authority of the Norfolk Pension Fund to serve as lead plaintiff(s) , MOTION to Appoint Counsel .( Return Date set for 8/1/2017 at 03:00 PM.) Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Attachments: # 1 Text of Proposed Order)Filed In Associated Cases: 1:16-cv-06728-JMF, 1:16-cv-06861-JMF, 1:17-cv-02845-JMF, 1:17-cv-02846-JMF(Rosenfeld, David) (Entered: 07/05/2017) |
| 07/05/2017 | 67 | MEMORANDUM OF LAW in Support re: (15 in 1:17-cv-02846-JMF, 15 in 1:17-cv-02846-JMF, 12 in 1:17-cv-02845-JMF, 12 in 1:17-cv-02845-JMF, 66 in 1:16-cv-06728-JMF, 66 in 1:16-cv-06728-JMF, 16 in 1:16-cv-06861-JMF, 16 in 1:16-cv-06861-JMF) MOTION to Appoint Norfolk County Council as Administering Authority of the Norfolk Pension Fund to serve as lead plaintiff(s) . MOTION to Appoint Counsel . . Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. Filed In Associated Cases: 1:16-cv-06728-JMF, 1:16-cv-06861-JMF, 1:17-cv-02845-JMF, 1:17-cv-02846-JMF(Rosenfeld, David) (Entered: 07/05/2017) |
| 07/05/2017 | 68 | MEMORANDUM OF LAW in Support re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) . . Document filed by Public Employees Retirement System of Mississippi. (Silk, Gerald) (Entered: 07/05/2017) |
| 07/05/2017 | 69 | DECLARATION of David A. Rosenfeld in Support re: (12 in 1:17-cv-02845-JMF, 12 in 1:17-cv-02845-JMF, 66 in 1:16-cv-06728-JMF, 66 in 1:16-cv-06728-JMF, 16 in 1:16-cv-06861-JMF, 16 in 1:16-cv-06861-JMF, 15 in 1:17-cv-02846-JMF, 15 in 1:17-cv-02846-JMF) MOTION to Appoint Norfolk County Council as Administering Authority of the Norfolk Pension Fund to serve as lead plaintiff(s) . MOTION to Appoint Counsel .. Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Attachments: # 1 Exhibit A - PSLRA Notice, # 2 Exhibit B - Sworn Certification, # 3 Exhibit C - Estimate of losses, # 4 Exhibit D - Robbins Geller Rudman &amp; Dowd LLP firm resume)Filed In Associated Cases: 1:16-cv-06728-JMF, 1:16-cv-06861-JMF, 1:17-cv-02845-JMF, 1:17-cv-02846-JMF(Rosenfeld, David) (Entered: 07/05/2017) |
| 07/05/2017 | 70 | DECLARATION of Gerald H. Silk in Support re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) .. Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit A - Certification, # 2 Exhibit B - Loss Charts, # 3 Exhibit C - Notice, # 4 Exhibit D - Firm Resume)(Silk, Gerald) (Entered: 07/05/2017) |
| 07/18/2017 | 71 | NOTICE of of Withdrawal of Lead Plaintiff Motion re: 63 MOTION to Appoint Counsel The Rosen Law Firm. MOTION to Appoint Heather Salway to serve as lead plaintiff(s) .. Document filed by Heather Salway. (Kim, Phillip) (Entered: 07/18/2017) |
| 07/19/2017 | 72 | NOTICE OF CHANGE OF ADDRESS by Lesley Frank Portnoy on behalf of Susan Dube, Lyubomir Spasov. New Address: Glancy Prongay &amp; Murray LLP, 230 Park Ave., Ste. 530, New York, New York, United States 10169, (212) 682-5340. (Portnoy, Lesley) (Entered: 07/19/2017) |
| 07/19/2017 | 73 | MEMORANDUM OF LAW in Opposition re: 65 MOTION to Appoint Public Employees Retirement |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

System of Mississippi to serve as lead plaintiff(s) ., 63 MOTION to Appoint Counsel The Rosen Law Firm. MOTION to Appoint Heather Salway to serve as lead plaintiff(s) . . Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Rudman, Samuel) (Entered: 07/19/2017)

| 07/19/2017 | 74 | MEMORANDUM OF LAW in Support re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) . . Document filed by Public Employees Retirement System of Mississippi. (Silk, Gerald) (Entered: 07/19/2017) |
|---|---|---|
| 07/19/2017 | 75 | DECLARATION of Samuel H. Rudman in Opposition re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) ., 63 MOTION to Appoint Counsel The Rosen Law Firm. MOTION to Appoint Heather Salway to serve as lead plaintiff(s) .. Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H - Part 1, # 9 Exhibit H - Part 2 a, # 10 Exhibit H - Part 2 b, # 11 Exhibit O - George Neville Letters)(Rudman, Samuel) (Entered: 07/19/2017) |
| 07/20/2017 | 76 | DECLARATION of Samuel H. Rudman in Opposition re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) ., 63 MOTION to Appoint Counsel The Rosen Law Firm. MOTION to Appoint Heather Salway to serve as lead plaintiff(s) .. Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Attachments: # 1 Statement Regarding Technical Difficulties, # 2 Exhibit A - 2/24/16 Forbes article, # 3 Exhibit B - 9/13 U.S. Chamber Institute article, # 4 Exhibit C - 4/11/16 Y'all Politics article, # 5 Exhibit D - 11/2/09 RespondMississippi article, # 6 Exhibit E - 2/29/16 U.S. Chamber Institute article, # 7 Exhibit F - 12/4/10 RespondMississippi article, # 8 Exhibit G - Bernstein Complaint, # 9 Exhibit H - 2008 Annual Report of Receipts of Disbursements, # 10 Exhibit I - 2009 Annual Report of Receipts and Disbursements, # 11 Exhibit J - 2010 Annual Report of Receipts and Disbursements, # 12 Exhibit K - 2011 Periodic Report of Receipts and Disbursements, # 13 Exhibit L - 2013 Annual Report of Receipts and Disbursements, # 14 Exhibit M - 2015 Periodic Report of Receipts and Disbursements, # 15 Exhibit N - 2016 Annual Report of Receipts and Disbursements, # 16 Exhibit O - 5/20/13 and 5/29/13 Letters from George Neville)(Rudman, Samuel) (Entered: 07/20/2017) |
| 07/21/2017 | 77 | DECLARATION of Samuel H. Rudman in Opposition re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) ., 63 MOTION to Appoint Counsel The Rosen Law Firm. MOTION to Appoint Heather Salway to serve as lead plaintiff(s) .. Document filed by Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Rudman, Samuel) (Entered: 07/21/2017) |
| 07/21/2017 | 78 | ORDER with respect to 65 Motion to Appoint the Mississippi Public Employees' Retirement System ("MPERS") as Lead Plaintiff. MPERS is granted leave to file a reply, no later than July 25, 2017, and not to exceed seven pages, addressing the Norfolk Pension Fund's arguments that MPERS is not adequate to serve as lead plaintiff and is presumptively barred from serving as lead plaintiff. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 07/21/2017) |
| 07/25/2017 | 79 | MEMORANDUM OF LAW in Support re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) . . Document filed by Public Employees Retirement System of Mississippi. (Silk, Gerald) (Entered: 07/25/2017) |
| 07/25/2017 | 80 | DECLARATION of Gerald H. Silk in Support re: 65 MOTION to Appoint Public Employees Retirement System of Mississippi to serve as lead plaintiff(s) .. Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit A - Neville Declaration, # 2 Exhibit B - Chart of Recoveries, # 3 Exhibit C - Semtech Order, # 4 Exhibit D - Morgan Stanley Brief, # 5 Exhibit E - Morgan Stanley Reply Brief, # 6 Exhibit F - CVS Reply, # 7 Exhibit G - Pension Fund Forum, # 8 Exhibit H - Bernstein Statement, # 9 Exhibit I - Trinity Order, # 10 Exhibit J - Green Mountain Class Cert Order, # 11 Exhibit K - DFC Global Order, # 12 Exhibit L - KBR Docket, # 13 Exhibit M - Roadrunner Order, # 14 Exhibit N - Treehouse Order, # 15 Exhibit O - Stericycle Order, # 16 Exhibit P - Banco Bradesco Order, # 17 Exhibit Q - Green Mountain LP Order, # 18 Exhibit R - JPMorgan Acceptance Order, # 19 Exhibit S - Willbros Opposition Brief)(Silk, Gerald) (Entered: 07/25/2017) |
| 07/27/2017 | 81 | NOTICE OF APPEARANCE by Samuel Howard Rudman on behalf of Norfolk County Council as Administering Authority of the Norfolk Pension Fund. (Rudman, Samuel) (Entered: 07/27/2017) |
| 07/27/2017 | 82 | NOTICE OF APPEARANCE by John James Rizio-Hamilton on behalf of Public Employees Retirement System of Mississippi. (Rizio-Hamilton, John) (Entered: 07/27/2017) |
| 07/27/2017 | 83 | NOTICE OF APPEARANCE by Ross Mitchell Shikowitz on behalf of Public Employees Retirement |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

System of Mississippi. (Shikowitz, Ross) (Entered: 07/27/2017)

| | | |
|---|---|---|
| 07/27/2017 | 84 | ORDER: terminating 63 Motion to Appoint Counsel; terminating 63 Motion to Appoint MissPERS as Lead Plaintiff(s); granting 65 Motion to Appoint MissPERS as Lead Plaintiff(s). Accordingly, the Court hereby ORDERS that: The Court's order of October 24, 2016 (Docket No. 23), is vacated. Accordingly, the Original Lead Plaintiffs and the Original Co-Lead Counsels are no longer lead plaintiff and lead counsel in this matter. MissPERS is appointed as Lead Plaintiff. The Court finds that its satisfies the requirements for Lead Plaintiff set forth in Section 78u-4(a)(3)(B). MissPERS selection of Lead Counsel is approved, and Bernstein Litowitz Berger &amp; Grossmann LLP is appointed as Lead Counsel for the Class. Lead Plaintiff shall confer with counsel for Defendants and, no later than August 3, 2017, agree to a stipulation, subject to Court approval, putting in place a schedule setting forth Lead Plaintiffs time to file a third amended complaint or designate the existing complaint as the operative complaint and Defendants time to answer or otherwise respond to the existing complaint in this action. (Docket No. 33). In light of the foregoing, the hearing scheduled for August 1, 2017, is CANCELLED. The Clerk of Court is directed to change the caption in this action to "In re Signet Jewelers Limited Securities Litigation." The file shall be maintained under Master File No. 1:16-CV-06728 (JMF). The Clerk of Court is directed to terminate Docket Nos. 63, 65, and 66, and as further set forth in this order. (Signed by Judge Jesse M. Furman on 7/27/2017) (ap) (Entered: 07/27/2017) |
| 08/03/2017 | 85 | STIPULATION AND ORDER: ACCORDINGLY, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT: Lead Plaintiff shall file a third amended complaint (the "Third Amended Complaint") on or before September 29, 2017; Defendants shall answer or otherwise respond to Lead Plaintiff's Third Amended Complaint by December 1, 2017; If Defendants move to dismiss the Third Amended Complaint, Lead Plaintiff shall file any opposition to such motion on or before January 19, 2018, and Defendants shall file any reply in support of such motion on or before February 16, 2018. Given the generosity of the deadlines, the parties should not expect any extensions. (Amended Pleadings due by 9/29/2017. Motions due by 12/1/2017. Responses due by 1/19/2018. Replies due by 2/16/2018.) (Signed by Judge Jesse M. Furman on 8/3/2017) (ap) Modified on 8/23/2017 (ap). (Entered: 08/03/2017) |
| 09/29/2017 | 86 | THIRD AMENDED COMPLAINT amending 33 Amended Complaint, against Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited with JURY DEMAND.Document filed by Public Employees Retirement System of Mississippi. Related document: 33 Amended Complaint,.(Rizio-Hamilton, John) (Entered: 09/29/2017) |
| 11/21/2017 | 87 | CONSENT LETTER MOTION for Leave to File Excess Pages   addressed to Judge Jesse M. Furman from Stacy Nettleton dated November 21, 2017. Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Nettleton, Stacy) (Entered: 11/21/2017) |
| 11/21/2017 | 88 | ORDER granting 87 Letter Motion for Leave to File Excess Pages. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 11/21/2017) |
| 12/01/2017 | 89 | MOTION to Dismiss the Third Amended Class Action Complaint. Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 12/01/2017) |
| 12/01/2017 | 90 | MEMORANDUM OF LAW in Support re: 89 MOTION to Dismiss the Third Amended Class Action Complaint. . Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 12/01/2017) |
| 12/01/2017 | 91 | DECLARATION of Joseph S. Allerhand in Support re: 89 MOTION to Dismiss the Third Amended Class Action Complaint.. Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Attachments: # 1 Exhibit A (Part 1) - Compilation of credit disclosures, # 2 Exhibit A (Part 2) - Compilation of credit disclosures, # 3 Exhibit A (Part 3) - Compilation of credit disclosures, # 4 Exhibit A (Part 4) - Compilation of credit disclosures, # 5 Exhibit B - Compilation of arbitration disclosures, # 6 Exhibit C - Signets FY2017 10-K, # 7 Exhibit D - Signets 2016 Proxy, # 8 Exhibit E - Signets Oct. 18, 2016 letter to SEC, # 9 Exhibit F - Signets FY2014 10-K, # 10 Exhibit G - Signets FY2015 10-K, # 11 Exhibit H - Signets FY2016 10-K, # 12 Exhibit I - Select Form 3 and Form 4s, # 13 Exhibit J - Bloomberg law article, # 14 Exhibit K - New York Time article)(Allerhand, Joseph) (Entered: 12/01/2017) |
| 12/04/2017 | 92 | ORDER: On December 1, 2017, Defendants filed a motion to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. Under Rule 15(a)(1)(B), a plaintiff has twenty-one (21) days after the service of a motion under Rule 12(b) to amend the complaint once as a matter of course. Accordingly, it is hereby ORDERED that Plaintiffs shall file any amended complaint by December 22, 2017. Plaintiffs will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss. If Plaintiffs do amend, by three (3) weeks after the amended complaint is filed, Defendants shall: (1) file an answer; (2) file a new motion to dismiss; or (3) submit a letter to the Court, copying Plaintiffs, stating that they rely on the previously filed |

motion to dismiss. If Defendants file an answer or a new motion to dismiss, the Court will deny the previously filed motion to dismiss as moot. It is further ORDERED that if no amended complaint is filed, Plaintiffs shall, as the Court previously ordered (Docket No. 85), serve any opposition to the motion to dismiss by January 19, 2018. Defendants' reply, if any, shall be served by February 16, 2018. At the time any reply is served, the moving party shall supply the Court with one courtesy hard copy of all motion papers by mailing or delivering them to the United States Courthouse, 40 Centre Street, New York, New York. ( Amended Pleadings due by 12/22/2017.) (Signed by Judge Jesse M. Furman on 12/4/2017) (mro) (Entered: 12/04/2017)

12/21/2017   93   LETTER MOTION to Expedite Briefing Schedule for Motion to Consolidate and to Seek Reassignment of Aydin Case as Related addressed to Judge Jesse M. Furman from John Rizio-Hamilton dated 12/21/2017. Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit A - Aydin Cover Sheet &amp; Complaint, # 2 Exhibit B - GP&amp;M Aydin Notice, # 3 Exhibit C - Alerts)(Rizio-Hamilton, John) (Entered: 12/21/2017)

12/21/2017   94   LETTER MOTION for Extension of Time to Respond addressed to Judge Jesse M. Furman from Joseph S. Allerhand dated December 21, 2017. Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 12/21/2017)

12/22/2017   95   ORDER with respect to 93 Letter Motion to Expedite; and 94 Letter Motion for Extension of Time. The Court has accepted the Aydin action as related. No later than January 2, 2018, counsel to the Aydin Plaintiff shall show cause in writing (1) why Aydin should not be consolidated with In re Signet Jewelers Limited Securities Litigation, 16-CV-6728, and (2) why sanctions should not be imposed for failure to designate Aydin as related to 16-CV-6728. Any response to that show cause filing shall be filed by January 5, 2018, and the parties - including counsel to the Aydin Plaintiff - shall appear for a conference with the Court on January 9, 2018, at 4 p.m. At that conference, the Court will address whether and when Defendants need to respond to the forthcoming amended complaint. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 12/22/2017)

12/22/2017   96   FOURTH AMENDED COMPLAINT amending 86 Amended Complaint, against Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited, Virginia C. Drosos with JURY DEMAND.Document filed by Public Employees Retirement System of Mississippi. Related document: 86 Amended Complaint,.(Rizio-Hamilton, John) (Entered: 12/22/2017)

01/02/2018   97   RESPONSE re: 95 Order on Motion to Expedite, Order on Motion for Extension of Time,,,,,, . Document filed by Nebil Aydin. (Murray, Brian) (Entered: 01/02/2018)

01/05/2018   98   RESPONSE re: 97 Response, 95 Order on Motion to Expedite, Order on Motion for Extension of Time,,,,,, . Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit Exhibit A - Proposed Corrected Notice)(Rizio-Hamilton, John) (Entered: 01/05/2018)

01/05/2018   99   LETTER addressed to Judge Jesse M. Furman from Joseph S. Allerhand dated January 5, 2018 re: (i) Your Honor's December 22, 2017 Order to Show (ECF No. 95) and (ii) the recent submission by the Aydin Plaintiff (ECF No. 97). Document filed by Michael Barnes, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 01/05/2018)

01/07/2018   100   ORDER re: 97 , 98 , and 99 Responses to the Court's Order To Show Cause. As all parties agree that Aydin v. Signet Jewelers Ltd. et al., 17-CV-9853, should be consolidated with this action, it is hereby consolidated for all purposes. The PSLRA notice issued by counsel for the Aydin Plaintiffs is hereby vacated, and Lead Counsel is authorized to issue the proposed corrective notice. The Clerk of Court shall close 17-CV-9583; all future filings shall be made in this case. Defendants shall file any motion to dismiss the Fourth Amended Consolidated Complaint no later than January 26, 2018; any opposition shall be filed by February 23, 2018; and any reply shall be filed by March 9, 2018. The parties are granted up to 40 pages for their principal briefs; and Defendants are granted up to 15 pages for their reply. Although the Court believes that counsel for the Aydin Plaintiffs should have alerted the Court to the filing of the Aydin Complaint and preemptively explained their view why the case was not related (prior to the filing of the Fourth Amended Consolidated Complaint), the Court declines to impose sanctions. Finally, in light of the foregoing, the Court sees no reason for the conference on January 9, 2018. Accordingly, the conference is hereby cancelled. SO ORDERED. (Signed by Judge Jesse M. Furman on 1/7/2018) (Text Only Order)(Furman, Jesse) (Entered: 01/07/2018)

01/07/2018         Set/Reset Deadlines: Motions due by 1/26/2018. Responses due by 2/23/2018. Replies due by 3/9/2018. (ras) (Entered: 01/08/2018)

01/26/2018   101   MOTION to Dismiss The Fourth Amended Class Action Complaint. Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 01/26/2018)

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

| 01/26/2018 | 102 | MEMORANDUM OF LAW in Support re: 101 MOTION to Dismiss The Fourth Amended Class Action Complaint. . Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 01/26/2018) |
|---|---|---|
| 01/26/2018 | 103 | DECLARATION of Joseph S. Allerhand in Support re: 101 MOTION to Dismiss The Fourth Amended Class Action Complaint.. Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Attachments: # 1 Exhibit A - Part 1 - Compilation of credit disclosures, # 2 Exhibit A - Part 2 - Compilation of credit disclosures, # 3 Exhibit B - Compilation of arbitration disclosures, # 4 Exhibit C - Signets FY2017 10-K, # 5 Exhibit D - Signets 2016 Proxy, # 6 Exhibit E - Signets Oct. 18, 2016 letter to SEC, # 7 Exhibit F - Signets FY2014 10-K, # 8 Exhibit G - Signets FY2015 10-K, # 9 Exhibit H - Signets FY2016 10-K, # 10 Exhibit I - Select Form 3 and Form 4s, # 11 Exhibit J - New York Time article, # 12 Exhibit K - FASB 310-10-50)(Allerhand, Joseph) (Entered: 01/26/2018) |
| 02/23/2018 | 104 | MEMORANDUM OF LAW in Opposition re: 101 MOTION to Dismiss The Fourth Amended Class Action Complaint. . Document filed by Public Employees Retirement System of Mississippi. (Rizio-Hamilton, John) (Entered: 02/23/2018) |
| 02/23/2018 | 105 | DECLARATION of John Rizio-Hamilton in Opposition re: 101 MOTION to Dismiss The Fourth Amended Class Action Complaint.. Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit Summary of Class Period Stock Sales and Purchases)(Rizio-Hamilton, John) (Entered: 02/23/2018) |
| 03/09/2018 | 106 | REPLY MEMORANDUM OF LAW in Support re: 101 MOTION to Dismiss The Fourth Amended Class Action Complaint. . Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 03/09/2018) |
| 03/09/2018 | 107 | DECLARATION of Joseph S. Allerhand in Support re: 101 MOTION to Dismiss The Fourth Amended Class Action Complaint.. Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Attachments: # 1 Exhibit L - Table of Puffery or Opinion Statements, # 2 Exhibit M - Signet Jewelers 2016 Code of Conduct, # 3 Exhibit N - Signet Jewelers 2016 Code of Ethics, # 4 Exhibit O - Barrons article)(Allerhand, Joseph) (Entered: 03/09/2018) |
| 03/16/2018 | 108 | LETTER MOTION for Leave to File Amended Complaint   addressed to Judge Jesse M. Furman from John Rizio-Hamilton dated 03/16/2018. Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit A - Redline Against Fourth Amended Complaint, # 2 Exhibit B - Proposed Fifth Amended Complaint)(Rizio-Hamilton, John) (Entered: 03/16/2018) |
| 03/19/2018 | 109 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jesse M. Furman from Joseph S. Allerhand dated March 19, 2018 re: 108 LETTER MOTION for Leave to File Amended Complaint addressed to Judge Jesse M. Furman from John Rizio-Hamilton dated 03/16/2018. . Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 03/19/2018) |
| 03/20/2018 | 110 | ORDER denying as moot 89 Motion to Dismiss the Third Amended Complaint; denying without prejudice 101 Motion to Dismiss the Fourth Amended Complaint; and granting 108 Letter Motion for Leave to File the Fifth Amended Complaint. In the Court's judgment, Defendants' primary argument in opposition to Plaintiff's request to file another amended complaint - futility - is better addressed in the context of Defendants' motion to dismiss, with full briefing. Defendants' other arguments in opposition to the request for leave to amend are unpersuasive. Accordingly, the motion for leave to amend is GRANTED. The Court, however, agrees with Defendants that it would be better to file new motion papers altogether than to file supplemental papers. Accordingly, Plaintiff shall file the Fifth Amended Complaint by March 22, 2018; Defendants shall renew their motion to dismiss by March 30, 2018; Plaintiff shall file its opposition to the motion to dismiss by April 9, 2018; and Defendants shall file their reply by April 13, 2018. The parties may not make new arguments in their motion papers, except to the extent that they pertain to the amendment of the Complaint. To ensure that the parties heed that limitation, they shall file, at the same time as their motion papers, a declaration attaching a redline showing the differences between the prior brief and the new brief. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 03/20/2018) |
| 03/22/2018 | 111 | FIFTH AMENDED COMPLAINT amending 96 Amended Complaint, against Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited with JURY DEMAND.Document filed by Public Employees Retirement System of Mississippi. Related document: 96 Amended Complaint,.(Rizio-Hamilton, John) (Entered: 03/22/2018) |
| 03/30/2018 | 112 | MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint. Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited.(Allerhand, Joseph) (Entered: 03/30/2018) |

| 03/30/2018 | 113 | MEMORANDUM OF LAW in Support re: 112 MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint. . Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 03/30/2018) |
|---|---|---|
| 03/30/2018 | 114 | DECLARATION of Joseph S. Allerhand in Support re: 112 MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint.. Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Attachments: # 1 Exhibit A (Part 1) - Compilation of credit disclosures, # 2 Exhibit A (Part 2) - Compilation of credit disclosures, # 3 Exhibit B - Compilation of arbitration disclosures, # 4 Exhibit C - Signet's FY2017 10-K, # 5 Exhibit D - Signet's 2016 Proxy, # 6 Exhibit E - Signet's Oct. 18, 2016 letter to SEC, # 7 Exhibit F - Signet's FY2014 10-K, # 8 Exhibit G -Signet's FY2015 10-K, # 9 Exhibit H - Signet's FY2016 10-K, # 10 Exhibit I - Select Form 3 and Form 4s, # 11 Exhibit J - New York Times article, # 12 Exhibit K - FASB 310-10-50, # 13 Exhibit L - FAS 114, # 14 Exhibit M - AICPA SOP 01-6, # 15 Exhibit N - Redline)(Allerhand, Joseph) (Entered: 03/30/2018) |
| 04/09/2018 | 115 | MEMORANDUM OF LAW in Opposition re: 112 MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint. . Document filed by Public Employees Retirement System of Mississippi. (Rizio-Hamilton, John) (Entered: 04/09/2018) |
| 04/09/2018 | 116 | DECLARATION of John Rizio-Hamilton in Opposition re: 112 MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint.. Document filed by Public Employees Retirement System of Mississippi. (Attachments: # 1 Exhibit A - Summary of Class Period Stock Sales and Purchases, # 2 Exhibit B - Excerpts from 10-Q Filed May 23, 2013, # 3 Exhibit C - Excerpts from 10-Q Filed December 1, 2017, # 4 Exhibit D - Redline of Memorandum)(Rizio-Hamilton, John) (Entered: 04/09/2018) |
| 04/13/2018 | 117 | REPLY MEMORANDUM OF LAW in Support re: 112 MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint. . Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Allerhand, Joseph) (Entered: 04/13/2018) |
| 04/13/2018 | 118 | DECLARATION of Joseph S. Allerhand in Support re: 112 MOTION to Dismiss [Dkt. No. 111] the Fifth Amended Class Action Complaint.. Document filed by Michael Barnes, Virginia C. Drosos, Mark Light, Ronald Ristau, Michele Santana, Signet Jewelers Limited. (Attachments: # 1 Exhibit O - FAS 107, # 2 Exhibit P - FAS 157, # 3 Exhibit Q - Table of Puffery or Opinion Statements, # 4 Exhibit R - Barrons article, # 5 Exhibit S - Signets 2016 Code of Ethics, # 6 Exhibit T - Signets 2016 Code of Conduct, # 7 Exhibit U - Redline)(Allerhand, Joseph) (Entered: 04/13/2018) |
| 05/23/2018 | | NOTICE OF CASE REASSIGNMENT to Judge Colleen McMahon. Judge Jesse M. Furman is no longer assigned to the case. (jc) (Entered: 05/23/2018) |
| 05/29/2018 | 119 | ENDORSED LETTER addressed to to all counsel in In re: Signet Jewelers Limited Securities Litigation from Chief Judge McMahon dated 5/29/2018 re: The above-captioned case has been reassigned to Chief Judge McMahon. The judge is aware that there is a pending fully briefed motion. Please deliver one courtesy copy of the brief and any exhibits filed in support of or in opposition to the motion to Judge Chief Judge McMahon's chambers, 2550, at 500 Pearl Street. ENDORSEMENT: So Ordered. (Signed by Judge Colleen McMahon on 5/29/2018) (rro) (Entered: 05/29/2018) |

Copyright © 2018 LexisNexis CourtLink, Inc.   All Rights Reserved.
***THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY***

 Cited

As of: October 30, 2018 2:36 PM Z

## *Stitt v. On Deck Capital, Inc.*

United States District Court for the Southern District of New York

February 17, 2016, Decided; February 17, 2016, Filed

15 Civ. 6126 (AT); 15 Civ. 6187 (AT)

### Reporter
2016 U.S. Dist. LEXIS 30507 *

CARL STITT, individually and on behalf of all others similarly situated, Plaintiff, -against- ON DECK CAPITAL, INC., NOAH BRESLOW, HOWARD KATZENBERG, JAMES ROBINSON III, DAVID HARTWIG, SANDY MILLER, JANE J. THOMPSON, RON VERNI, NEIL WOLFSON, MORGAN STANLEY & CO. LLC, BANK OF AMERICA MERRILL LYNCH, J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., and JEFFRIES LLC, Defendants.ISAAC MALAFSKY, individually and on behalf of all others similarly situated, Plaintiff, -against- ON DECK CAPITAL, INC., NOAH BRESLOW, HOWARD KATZENBERG, DAVID HARTWIG, J. SANFORD MILLER, JAMES D. ROBINSON III, JANE J. THOMPSON, RONALD F. VERNI, NEIL E. WOLFSON, MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., JEFFERIES LLC, STIFEL, NICOLAUS & COMPANY, INC., NEEDHAM & COMPANY, LLC, and RAYMOND JAMES & ASSOCIATES, INC., Defendants.

## Core Terms

Securities, lead plaintiff, consolidated, appointed, company's, cases, stock

**Counsel:**  **[*1]** For Carl Stitt, Individually, Lead Plaintiff (1:15-cv-06126-AT): Jeremy Alan Lieberman, Pomerantz LLP, New York, NY.

For Carl Stitt, On behalf of all others similarly situated, Lead Plaintiff (1:15-cv-06126-AT): Joseph Alexander Hood, II, Tamar Aliza Weinrib, Jeremy Alan Lieberman, Pomerantz LLP, New York, NY.

For Isaac Malafsky, Individually, Isaac Malafsky, On behalf of all others similarly situated, Consolidated Plaintiffs (1:15-cv-06126-AT): Samuel Howard Rudman, LEAD ATTORNEY, Robbins Geller Rudman & Dowd LLP(LI), Melville, NY.

For Franklin Kliewer, Ryan Farber, Laris Family Trust, Movants (1:15-cv-06126-AT): Lesley Frank Portnoy, Glancy Prongay & Murray LLP, New York, NY.

For On Deck Capital, Inc., Noah Breslow, Howard Katzenberg, James Robinson III, David Hartwig, Sandy Miller, Jane J. Thompson, Jane J. Thompson, Neil Wolfson, Defendants (1:15-cv-06126-AT): Andrew James Ehrlich, LEAD ATTORNEY, Gregory Frederick Laufer, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY; Leslie Gordon Fagen, LEAD ATTORNEY, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY.

For Isaac Malafsky, Individually, Isaac Malafsky, On behalf of all others similarly situated, Plaintiffs **[*2]** (1:15-cv-06187-AT): Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP(LI), Melville, NY.

For On Deck Capital, Inc., Noah Breslow, Howard Katzenberg, J. Sanford Miller, James D. Robinson, III, Jane J. Thompson, Ronald F. Verni, Neil E. Wolfson, Defendants (1:15-cv-06187-AT): Andrew James Ehrlich, LEAD ATTORNEY, Gregory Frederick Laufer, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY; Leslie Gordon Fagen, LEAD ATTORNEY, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY.

**Judges:** ANALISA TORRES, United States District Judge.

**Opinion by:** ANALISA TORRES

## Opinion

### MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

Plaintiff, Carl Stitt ("Stitt"), filed this securities class

action on August 4, 2015, alleging violations of Sections 11 and 15 of the Securities Exchange Act of 1933 ("Exchange Act") by defendants. On Deck Capital, Inc., Noah Breslow, Howard Katzenberg, James Robinson III, David Hartwig, Sandy Miller, Jane J. Thompson, Ron Verni, Neil Wolfson, Morgan Stanley & Co., LLC, Bank of America Merrill Lynch, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc., and Jefferies LLC. A related case was filed on August 6, 2015. *See* Complaint, *Malafsky v. On Deck Capital, Inc.*, No. 15 Civ. **[*3]** 6187 (S.D.N.Y. Aug. 6, 2015). On October 5, 2015, Franklin Kliewer, Ryan Farber, and the Laris Family Trust (the "Kliewer Plaintiffs") moved to consolidate the cases under *Federal Rule of Civil Procedure 42(a)*, appoint themselves as lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. § 78u-4(a)(3)*, and for approval of their selection of lead class counsel pursuant to *15 U.S.C. § 78u-4(a)(3)(B)(v)*. ECF No. 25. Also on October 5, 2015, Stitt filed a similar, competing motion. ECF No. 28. By notice filed on October 12, 2015, the Kliewer Plaintiffs withdrew their motion and expressed their support for Stitt's motion. ECF No. 31. For the reasons stated below, Stitt's motion is GRANTED.

## BACKGROUND

Defendant On Deck Capital, Inc. ("On Deck" or "the company") is a publicly-traded Delaware corporation that provides financing to small businesses in the United States, offering fixed term loans and revolving lines of credit. Stilt Compl. ¶ 2. On Deck was incorporated in 2006 and is headquartered in New York City. *Id.* Defendants Noah Breslow, Howard Katzenberg, James Robinson III, David Hartwig, Sandy Miller, Jane J. Thompson, Ron Verni, and Neil Wolfson were, during the relevant period, officers and/or directors of On Deck. *Id.* ¶¶ 15-23. **[*4]** The remaining defendants provided underwriting services for On Deck in connection with the company's filings with the Securities Exchange Commission ("SEC") in advance of its initial public offering ("IPO"). *Id.* ¶¶ 25-29.

On December 16, 2014, On Deck issued its IPO, selling 11,500,000 shares of common stock at the price of $20 a share, raising a total of $230 million. *Id.* ¶ 3. On Deck's common stock began trading on the New York Stock Exchange the following day. *Id.* In advance of the IPO, on December 15, 2014, On Deck filed an amended Registration Statement with the SEC. *Id.* ¶ 1, 3. On December 17, 2014, On Deck filed its Prospectus for

the IPO. *Id.* ¶ 34. These documents included, in relevant part, a warning that "[w]orsening economic conditions may result in decreased demand for [On Deck's] loans, cause [On Deck's] customers' default rates to increase," and negatively affect the company's profitability. *Id.*

Plaintiffs allege that these statements were materially false and misleading because in them On Deck misrepresented and failed to disclose pertinent information, specifically that "the true rate of default for [On Deck's] loan portfolio was steadily increasing," and that the value of the loan **[*5]** portfolio was "materially in decline." *Id.* ¶ 35. In the months following the IPO, media sources reported that On Deck's stock was overvalued, due in part to the company's poor rate of default and other factors. *Id.* ¶¶ 36-38. In May, 2015, On Deck reported to the SEC a net loss of $5.34 million. *Id.* ¶ 40. Two months later, On Deck common stock traded at a low of $11.15 per share, a decline of "more than 60%" from the high following the IPO. *Id.* ¶ 41. Plaintiffs seek to represent a class of individuals who acquired On Deck securities "pursuant and/or traceable to" the company's "false and misleading" documents filed in connection with its IPO. *Id.* ¶ 43.

## DISCUSSION

### 1. Case Consolidation

All movants argue in favor of consolidation of the related cases.[1]

*Federal Rule of Civil Procedure 42(a)* allows for consolidation of actions if they involve "common questions of law or fact." *Accord. Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 190 (S.D.N.Y. 2008)* (consolidating securities class actions seeking similar relief for similar classes based on same series of events). The complaints seek similar relief, alleging the same violations of the Exchange Act, by similar parties, and based on the same conduct. Accordingly, the actions are consolidated.

### II. Appointment of Lead Plaintiff

---

[1] Defendants On Deck, Breslow, Katzenberg, Robinson, Hartwig, **[*6]** Miller, Thompson, Verni, and Wolfson support consolidation of the cases, but take no position on the appointment of lead plaintiff or counsel. ECF No. 34. The remaining defendants have expressed no position on either matter.

The PSLRA governs the process for appointing a lead plaintiff in a private securities class action. Under the PSLRA, the Court must adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*15 U.S.C. § 78u-4(a)(3)(B)(3)(iii)(I)*. Once the presumption is established, it may only be rebutted with proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

Stitt filed the complaint and made a timely motion with the Court, satisfying the first requirement. The PSLRA does not prescribe a method by which a court should determine **[*7]** the movant with the largest financial interest. That said, the Court will generally consider. (1) the number of shares purchased during the class period: (2) the number of net shares purchased during the class period (i.e.[,] the number of shares retained during the period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *Janbay v. Canadian Solar, Inc., 272 F.R.D. 113, 118 (S.D.N.Y. 2010)* (citing *Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 104 (S.D.N.Y. 2007))*. The fourth factor, the movant's approximate loss, is the most important. *Reimer v. Ambac Fin. Grp., Inc., No. 08 Civ. 411, 2008 U.S. Dist. LEXIS 38729, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008)*.

Stitt alleges that he suffered a loss of $180,320. Lieberman Decl., Ex. C, ECF No. 30. This is greater than the loss of $147,117 claimed by the Kliewer Plaintiffs, Portnoy Decl., Ex. C, ECF No. 27, who agree that Stitt "appears to be the presumptive lead plaintiff given his substantial financial loss." Notice of Withdrawal, ECF No. 32. The Court agrees that Stitt has suffered the greatest loss and thus has the largest financial interest.

Finally, a potential lead plaintiff must make a preliminary showing that he satisfies the requirements of *Federal Rule of Civil Procedure 23. Peters v. Jinkosolar Holding*

*Co., No. 11 Civ. 7133, 2012 U.S. Dist. LEXIS 38489, 2012 WL 946875, at *11 (S.D.N.Y. Mar. 19, 2012)*. At this stage, a lead plaintiff need only show that he meets: (1) the "typicality" requirement, meaning his claims are **[*8]** typical of the class such that they arise from the same course of events, and the other class members make similar legal arguments to prove liability, and (2) the "adequacy" requirement, meaning he can fairly and adequately represent the interests of the class, his interests are not antagonistic to those of the class, and he has retained capable counsel who is qualified to pursue the litigation. *See id.* (citations omitted).

Stitt appears to meet both requirements. He. like other members of the proposed class, claims that On Deck issued false and misleading statements that caused the company's shares to trade at an inflated price. Additionally, Stitt's claims arise from the same course of conduct affecting each member of the proposed class. Finally, there is no indication that Stitt has a conflict of interest with any member of the proposed class, or has selected counsel that cannot capably represent the proposed class. Therefore, Stitt is the presumptive lead plaintiff. As no other movant has provided evidence to rebut this presumption, the Court appoints Stitt as lead plaintiff.

III. Appointment of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval **[*9]** of the court, select and retain counsel to represent the class" *15 U.S.C. § 78u-4(a)(3)(B)(v)*. Stitt has selected Pomerantz LLP to represent the class, a firm that has significant experience in securities litigation as lead plaintiff's counsel. *See Elstein v. Net I UEPS Techs., Inc., No. 13 Civ. 9100, 2014 U.S. Dist. LEXIS 100574, 2014 WL 3687277, at *8 (S.D.N.Y. July 23, 2014)* ("Courts in this Circuit have previously approved the Pomerantz Firm as lead plaintiffs' counsel in securities class actions on a number of occasions."). Accordingly, Pomerantz LLP is appointed lead class counsel.

**CONCLUSION**

For the reasons stated above, *Stitt v. On Deck Capital, Inc.*, No. 15 Civ. 6126 (S.D.N.Y. Aug. 4, 2015) and *Malafsky v. On Deck Capital, Inc.*, No. 15 Civ. 6187 (S.D.N.Y. Aug. 6, 2015) are consolidated. Carl Stitt is appointed as lead plaintiff. Pomerantz LLP is appointed as lead class counsel. By **March 18, 2016**, Plaintiffs shall file a consolidated complaint. Within **30 days** of the filing of any consolidated complaint, Defendants shall

2016 U.S. Dist. LEXIS 30507, *9

answer the complaint or submit a letter requesting a pre-motion conference pursuant to Rule III of this Court's Individual Practices in Civil Cases. All other deadlines set forth in the August 30, 2015 scheduling order, ECF No. 20, remain in effect.

The Clerk of Court is directed to:

   1. consolidate the related cases under **[*10]**   15 Civ. 6126 and to amend the caption to read: "In re On Deck Capital, Inc. Securities Litigation"; and
   2. terminate all pending motions in each of the related actions.

SO ORDERED.

Dated: February 17, 2016

New York, New York

/s/ Analisa Torres

ANALISA TORRES

United States District Judge

---

⚠ Caution
As of: October 30, 2018 2:37 PM Z

# *In re Sunbeam Sec. Litig.*

United States District Court for the Southern District of Florida, Miami Division

December 4, 1998, Decided ; December 7, 1998, Filed

Case No. 98-8258-CIV-MIDDLEBROOKS

**Reporter**
1998 U.S. Dist. LEXIS 21490 *; Fed. Sec. L. Rep. (CCH) P90,735; 1998 WL 1990884

IN RE SUNBEAM SECURITIES LITIGATION

**Disposition: [*1]** Objections to Consolidation of Plaintiffs in Stapleton, et al. v. Sunbeam, et al., Case No. 98-1676 OVERRULED. Stapleton's Motion for Appointment of Lead Plaintiffs or Co-Lead Plaintiffs DENIED. Stapleton Groups' Motion for Approval of Lead Plaintiffs' Selection of Lead Counsel (DE # 39) DENIED. Motion for Affirmation of Prior Order Appointing Lead Plaintiffs in the Consolidated Cases and all Subsequently Filed Cases, Including the Stapleton Action, or in the Alternative, Appointing Additional Lead Plaintiffs (DE # 40) GRANTED. Motion for Stay of Filing DENIED AS MOOT.

## Core Terms

lead plaintiff, Consolidation, Appointment, lead counsel, amended complaint, Motions, consolidated actions, Cases, Affirmation, Securities, parties

## Case Summary

**Procedural Posture**
Plaintiff group of investors filed objections to consolidation of class actions against defendant corporation alleging violations of federal securities law; plaintiff group also moved for appointment of lead plaintiffs and approval of lead plaintiffs' selection of lead counsel; lead plaintiffs filed a motion for affirmation of the order appointing lead plaintiffs in the consolidated cases.

**Overview**
Eleven securities actions were brought against defendant corporation and its officers, alleging defendants committed violations of federal securities law through false and misleading statements concerning its business operations and financial condition. The 11 actions were consolidated. Plaintiff group of investors filed objections to the consolidation and moved to alter the lead plaintiff and lead counsel structure established by the court. The court overruled the objections to consolidation because the allegations stemmed from a common course of conduct by defendant corporation, its officers, and its accounting firm and the actions alleged substantially similar claims that shared common questions of fact and law. The court denied plaintiff group's motion to alter the lead plaintiff because plaintiff group did not rebut the presumption that the designated lead plaintiffs were the most adequate plaintiffs. The court also denied the motion to alter the lead counsel because plaintiff group failed to show that the current lead counsel could not adequately protect the interests of the putative class members.

**Outcome**
Objections to consolidation overruled; plaintiff group's motion for appointment of lead plaintiffs denied; plaintiff group's motion for approval of lead plaintiffs' selection of lead counsel denied. lead plaintiffs motion for affirmation of the order appointing lead plaintiffs in the consolidated cases granted.

## LexisNexis® Headnotes

Civil Procedure > Trials > Consolidation of Actions

*HN1*[⬇] **Trials, Consolidation of Actions**

See *Fed. R. Civ. P. 42(a)*.

Civil Procedure > Trials > Consolidation of Actions

*HN2*[⬇] **Trials, Consolidation of Actions**

1998 U.S. Dist. LEXIS 21490, *1

The Private Securities Litigation Reform Act refers to consolidation where more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed. *15 U.S.C.S. § 78u-4(a)*.

Civil Procedure > Trials > Consolidation of Actions

*HN3*[↓] **Trials, Consolidation of Actions**

Consolidation pursuant to *Fed. R. Civ. P. 42* and *15 U.S.C.S. § 78u-4(a)* does not require that the actions in question be identical.

Civil Procedure > Trials > Consolidation of Actions

*HN4*[↓] **Trials, Consolidation of Actions**

In evaluating the appropriateness of consolidation in a specific context, the district court considers whether specific risks of prejudice and possible confusion are overborne by risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Civil Procedure > Trials > Consolidation of Actions

*HN5*[↓] **Trials, Consolidation of Actions**

Consolidation of related complex actions, and securities cases in particular, is commonplace and an effective use of judicial resources.

Civil Procedure > Trials > Consolidation of Actions

Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

Antitrust & Trade Law > Clayton Act > Defenses

*HN6*[↓] **Trials, Consolidation of Actions**

Under the Private Securities Litigation Reform Act, a potential lead plaintiff meeting the criterion set forth in *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)* is entitled to a rebuttable presumption that this person or group of persons is the most adequate plaintiff. Once this presumption is in place, and the "most adequate plaintiff" has been designated, the presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)*.

Civil Procedure > Trials > Consolidation of Actions

*HN7*[↓] **Trials, Consolidation of Actions**

See *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)*.

Civil Procedure > Trials > Consolidation of Actions

*HN8*[↓] **Trials, Consolidation of Actions**

In the context of determining the most adequate plaintiff under *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)*, speculation that conflicts may arise at the damages stage of the litigation is not sufficient to prove that the named plaintiffs cannot fairly and adequately represent the interests of the class.

Civil Procedure > Trials > Consolidation of Actions

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Lead Plaintiff

*HN9*[↓] **Trials, Consolidation of Actions**

See *15 U.S.C.S. § 78u-4(a)(3)(B)(v)*.

**Counsel:** For Plaintiffs: Berger & Montague, P.C., Milberg Weiss Bershad Hynes & Lerach LLP, Wolf Popper LLP, and Barrack, Rodos & Bacine, designated

as Co-Lead Counsel, Burt & Pucillo, LLP, and Goodkind Labaton Rudoff & Sucharow LLP, designated as Co-Liaison Counsel.

For SUNBEAM CORPORATION, RUSSELL A. KERSH, DONALD R. UZZI, defendants: Richard E. Berman, Robert Charles Grady, Katz Barron Squitero Faust & Berman, Miami, FL.

For SUNBEAM CORPORATION, defendant: Thomas J. Allingham, II., Robert Saunders, Kevin M. Maloy, Skadden Arps Slate Meagher & Flom, Wilmington, DE.

For ALBERT J. DUNLAP, RUSSELL A. KERSH, defendants: [*2] Paul Samuel Berger, Fowler White Burnett Hurley Banick & Strickroot, Miami, FL.

For ALBERT J. DUNLAP, defendant: Richard E. Berman, Katz Barron Squitero Faust & Berman, Miami, FL.

For ALBERT J. DUNLAP, RUSSELL A. KERSH, defendants: Donald S. Zakarin, James S. O'Brien, Pryor Cashman Sherman Ryan, New York, NY.

For DONALD R. UZZI, defendant: Brian Rosner, King & Spalding, New York, NY.

**Judges:** DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DONALD M. MIDDLEBROOKS

# Opinion

## ORDER ON PENDING MOTIONS

This Cause comes before the Court upon pending motions filed in this consolidated litigation. Plaintiffs in *Stapleton, et. al. v. Sunbeam, et al.*, Case No. 98-1676, filed Objections to Consolidation on August 28, 1998 (DE # 13 in Case No. 98-1676) [1]

; Motion for Appointment of Lead Plaintiffs and Approval of Lead Plaintiffs' Selection of Lead Counsel on September 14, 1998 (DE # 39); and Motion to Stay Filing of the Amended Complaint (DE # 84). Lead Plaintiffs in the consolidated *In Re Sunbeam Litigation*, Case No. 98-8258, filed a Motion for Affirmation of Prior Order Appointing Lead Plaintiffs in the Consolidated Cases and All Subsequently-Filed Cases, Including [*3]

the Stapleton Action, Or, In the Alternative, Appointing Additional Lead Plaintiffs (DE # 40). The Court has reviewed the pertinent portions of the record and is otherwise fully informed in the premises.

## I. Background

In order to address the pending Motions, the Court briefly states relevant procedural background in this already complex class action litigation. This Court entered a Consolidation Order on June 17, 1998 (DE # 30), consolidating eleven actions that allege Sunbeam Corporation and its officers committed violations of federal securities law through false and misleading statements concerning the business operations and financial condition of Sunbeam. These actions were brought by various persons and entities who purchased common stock, stating similar, but not identical, allegations, proposed class periods, and claimed injuries. *See Sunbeam Lead Plaintiffs' Mem. In Opposition To Stapleton's Obj. to Consolidation* [*4] at 5-7.

The Consolidation Order, Paragraph 6, states in pertinent part:

> This Order shall apply to each action that is subsequently filed in or transferred to this Court that arises out of or relates to the same facts and claims alleged in the complaints in the consolidated actions, unless a party objecting to the consolidation of such case . . . shall within ten (10) days after the date upon which a copy of this Order is mailed to counsel for such party, file an application for relief from this Order or any provision herein and this Court shall apply to such an action pending the Court's ruling on the application.

Plaintiff Patrick J. Stapleton, III, filed suit in the Southern District of Florida on June 16, 1998, on behalf of himself and all other similarly situated against Sunbeam Corporation, various officers (Dunlap, Kersh, Fannin, and Gluck), and Arthur Andersen, L.L.P. (Accountant for Sunbeam Corporation). *See Case No. 98-1676-CIV-MIDDLEBROOKS.* Counsel for Stapleton has filed objections to consolidation of the Stapleton action into the *In Re Sunbeam Litigation.*

Stapleton has also moved to alter the Lead Plaintiff and Lead Counsel structure established by [*5] the Court's Order Dated July 21, 1998. This Order named the Smith and CWA/ITU groups as lead Plaintiffs and appointed four firms as Co-Lead counsel. Stapleton has also moved to stay the filing of the amended complaint

---

[1] All other citations are to Docket Entries in Case No. 98-8258-CIV-MIDDLEBROOKS.

1998 U.S. Dist. LEXIS 21490, *5

pending the resolution of the above motions. Lastly, the Sunbeam Lead Plaintiffs have moved for affirmation of the Lead Plaintiff and Lead Counsel Order, or in the alternative to have additional Co-Lead Plaintiffs appointed to this consolidated action. The Court will address these Motions in turn.

## II Consolidation

Counsel for Stapleton has filed Objections to the Consolidation Order [2]

 [*7] which have been fully briefed. This question has been fully briefed by the Sunbeam Lead Plaintiffs and Stapleton; Defendant Arthur Andersen, L.L.P., and individual Defendants Dunlap and Kersh have submitted Responses as well. HN1[↑] Pursuant to *Rule 42(a) of the Federal Rules of Civil Procedure*, when "actions involving a common question of law or fact are pending before the court . . . it may order all the actions consolidated [,] and it may make such orders concerning proceedings therein that may tend to avoid unnecessary costs or delay." HN2[↑] The Private Securities Litigation Reform [*6] Act refers to consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." *15 U.S.C. § 78u-4(a)*. HN3[↑] The plain language of these authorities establishes that consolidation pursuant to *Fed. R. Civ. P. 42* and PSLRA does not require that the actions in question be identical. *See, e.g., Johnson v.*

---

[2] Pursuant to the Consolidation Order as stated above, Stapleton must file Objections within ten days after the date upon which a copy of the Consolidation Order was mailed to him. Sunbeam states that its counsel mailed copies of the Consolidation Order and the Lead Plaintiff Order to counsel for Stapleton on August 13, 1998 (*Mem. In Opposition* at 9), though both Plaintiff groups parties state discussions between counsel had transpired in July. Technically, this Motion is timely filed, though the Stapleton Group clearly had knowledge of the Consolidation Order in July, if not earlier. Because of the importance of how this litigation will be structured, the Court has thoroughly considered the merits of the arguments raised in the Objections. Furthermore, the Court agrees with the district court in *Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866* at *14 (N.D. Ill. Aug. 6, 1997) that the PSLRA intended to have the "most adequate lead plaintiffs" appointed as soon as practicable in the litigation, and that filing of subsequent actions alleging different class periods did not require publication of new notices or start a new 60-day period for the filing of motions to appoint lead plaintiff or lead counsel.

*Celotex, 899 F.2d 1281, 1284* (2nd Cir.), *cert. denied*, *498 U.S. 920, 112 L. Ed. 2d 250, 111 S. Ct. 297 (1990)*. [3]

HN4[↑] In evaluating the appropriateness of consolidation in a specific context, the district court also shall consider "whether specific risks of prejudice and possible confusion are overborne by risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985)*. *See generally* Manual for Complex Litigation, 3d ed. (Federal Judicial Center 1995) at § 21.631. HN5[↑] Consolidation of related complex actions, and securities cases in particular, is commonplace [*8] and an effective use of judicial resources. *See, e.g., In Re Equity Funding Corp. of Amer. Sec. Litigation, 416 F. Supp. 161 (C.D. Cal. 1976)*.

Upon consideration of the claims presented and facts alleged in the consolidated actions and in the Stapleton action, we find that the allegations stem from a common course of conduct by Sunbeam, its officers, and its accounting firm. The Stapleton action alleges substantially similar claims that share common questions of fact and law. Furthermore, the Amended Complaint, which has yet to be filed, purportedly will state a class period that encompasses the periods of both the prior consolidated actions (pre-April 3, 1998) and the Stapleton action (post-April 3, 1998) and will join additional defendants, including those alleged in the Stapleton action. Therefore, the Consolidation Order entered by this Court is proper and binding on the Stapleton action.

Accordingly, it is hereby ORDERED AND ADJUDGED that Objections to Consolidation of Plaintiffs in Stapleton, et al. v. Sunbeam, et al., Case No. 98-1676 are hereby OVERRULED. This case is considered a consolidated action in "*In Re Sunbeam Securities Litigation*," and shall bear the following [*9] caption: "*In Re Sunbeam Securities Litigation*" Case No. 98-8258-

---

[3] Sunbeam Lead Plaintiffs state that they will name additional defendants in the Amended Complaint; to the extent that the named Defendants in the actions to be consolidated now differ, the Court finds that this does not preclude consolidation given the facts and circumstances of the allegations in this case.

1998 U.S. Dist. LEXIS 21490, *9

CIV-MIDDLEBROOKS. Plaintiff shall consult the Consolidation Order for further details on specific filing requirements and procedures.

## III. Lead Plaintiff Structure

The Consolidation Order establishes the procedure for the selection of Lead Plaintiff and Lead Counsel in this case. It states that in pertinent part:

> Plaintiffs shall, on or before June 22, 1998, file any and all motions for or stipulations regarding selection of Lead Plaintiff(s) and Lead Counsel. To the extent possible, the Court encourages counsel to work together to arrive at a mutually acceptable selection of Lead Plaintiff(s) and Lead Counsel and to provide to this Court a proposed stipulation thereto. Said stipulation shall include the lead Plaintiff(s); the lead counsel; the organizational structure of lead counsel; and the duties and responsibilities of lead counsel.

On June 22, 1998, the CWA/ITU Plaintiff Group and Smith Plaintiff Group each filed a separate Motion for Appointment of Lead Plaintiffs and for Approval of Selection of Lead Counsel. [4]

In keeping with the Court's Order, these parties then agreed upon and submitted [*10] a Stipulation and Order Regarding Appointment of Lead Plaintiffs and Selection of Co-Lead Counsel; upon review, the Court entered this Stipulation on July 16, 1998 (DE # 29), thus establishing the Lead Plaintiff structure currently in place. [5]

---

[4] See Motion for Appointment as Lead Plaintiff filed by CWA/ITU Group and Motion for Appointment as Lead Plaintiff filed by Smith Group for further identification of potential Lead Plaintiffs and articulation of Plaintiffs' arguments for Lead Plaintiff status.

[5] As stated in Order, "the initial notices of pendency of the action that were published on April 23, 1998 are found to be in compliance with § 78u-4(a)(3)(A)(I) of the PSLRA." It further states that "the following persons are found to satisfy the provisions of § 78u-4(a)(3)(B) of the PSLRA and are appointed Lead Plaintiffs in the Consolidated Actions: CWA/ITU Negotiated Pension Plan, Alan L. Sarnoff, Generic Trading Associates, LLC, Robert Kaufman, Christopher M. Lynch, Feivel Gottlieb, Stephen M. Weiss, Smith Asset Management, Sonny Iwamoto, Ray Bornert, Benjamin Butera, Karen Gabiner, Jared Gabiner, Dawn Devine, Tom Jacques, Curt Kosow, Gary Maggio, Susan Mintz, Stephen Noteboom, John Palmour, Richard Petersen, Martha Roldan, Frank Roldan,

The Lead Plaintiff's appointed by that Order are hereinafter referred to as "Sunbeam Lead Plaintiffs."

[*11] This Court ruled based on the procedures and standards governing the appointment of the Lead Plaintiffs established in the PSLRA. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. [6]

HN6[↑] Under the PSLRA, a potential lead plaintiff meeting the criterion set forth in the subsection is entitled to a rebuttable presumption that this person or group of persons is the most adequate plaintiff. Once this presumption is in place, and the "most adequate plaintiff" has been designated, the presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

[*12] This is the stage of the litigation at which the Stapleton group's Motion for Appointment as Lead Plaintiff or Co-Lead Plaintiff is filed. The relevant question before the Court on this Motion by Stapleton is to evaluate whether the Stapleton group presents proof to rebut this presumption-- that is, proof that the Sunbeam Lead Plaintiffs either will not fairly and adequately protect the interests of the class or are subject to unique defenses that preclude adequate representation of the class. Stapleton does not argue the second prong; rather the question before the Court on the Lead Plaintiff Motion is whether the Sunbeam Lead Plaintiffs will fairly and adequately protect the interests of the class. Based on a review of the

---

Mary Ann Tilley, Cindy Wilson, Ira Blacker, Richard Fisher, Bob Grosnoff, Kathryn Grosnoff, Tom Kinan, Steven Sacks, Leonard Steinberg, Frederick Steinberg, Roy Schwarz, Saul Spitz."

[6] HN7[↑] *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)* states that, subject to certain other relevant provisions, "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that--

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of **Rule 23 of the Federal Rules of Civil Procedure**."

1998 U.S. Dist. LEXIS 21490, *12

arguments of counsel, the caselaw (particularly that interpreting the PSLRA), and the facts alleged in this case, the Court finds that Stapleton has not rebutted the presumption that the Sunbeam Lead Plaintiffs are the most adequate plaintiffs.

First, the Court notes that consistent with the decision to consolidate these cases, they are based on a common nucleus of facts alleging misrepresentation of the financial condition and prospects of the Sunbeam Corporation. **[*13]** All of the potential plaintiffs in these actions are shareholders of common stock. The Court credits Sunbeam Lead Plaintiffs' argument that there is commonality of interest among shareholders who are potential plaintiffs in this action, despite variations in the class periods alleged and the specific misleading statements upon which the shareholders relied. *See In Re Cendant Corporation Litigation, 182 F.R.D. 476, 1998 WL 748501 (D.N.J. 1998).* **HN8[↑]** Speculation that conflicts may arise at the damages stage of the litigation (or sooner) is not sufficient to prove that the Plaintiffs named here cannot fairly and adequately represent the interests of the class. *See Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D.Cal. 1985)* (stating that "potential conflicts arising from differences in the date of purchase and therefore in proof of damages [do not] preclude plaintiff's representative status at this point"); *cf. Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816, 50 L. Ed. 2d 75, 97 S. Ct. 57 (1986)* (in considering class certification under *Fed. R. Civ. P. 23*, stating "potential conflict [between early and late purchasers] is present in most prolonged classes involving a series of misrepresentations"). **[*14]** Lastly, the Amended Complaint that will allege a broader class period has yet to be filed in this litigation, which may result in a resolution of some of the potential problems and conflicts that the Stapleton group contemplates. [7]

The Court reserves the question, if truly divergent interests were to emerge, of potential grounds for certifying a sub-class at the class certification stage, or other appropriate measures, if the facts of this case so dictate after further development. *See Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2nd Cir. 1995)* (stating that "ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court").

---

[7] Furthermore, the Stapleton Group has not demonstrated that it presently holds a greater financial interest than the Sunbeam Lead plaintiffs. The pending filing of the Amended Complaint also will affect any such evaluation.

Accordingly, it **[*15]** is hereby ORDERED AND ADJUDGED that Stapleton's Motion for Appointment of Lead Plaintiffs or Co-Lead Plaintiffs is DENIED.

## IV. Lead Counsel Structure

In the above mentioned Order, pursuant to *§ 78u-4(a)(3)(B)(v)* of the PSLRA, the law firms of Berger & Montague, P.C., Milberg Weiss Bershad Hynes & Lerach LLP, WolfPopper LLP, and Barrack, Rodos & Bacine were designated as Co-Lead Counsel. The law firms of Burt & Pucillo, LLP, and Goodkind Labaton Rudoff & Sucharow LLP were designated as Co-Liaison Counsel.

Under **HN9[↑]** *15 U.S.C. § 78u-4(a)(3)(B)(v)*, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." The Court sees no reason to contravene this provisions of this PSLRA on the facts presented. Because the Sunbeam Lead Plaintiff structure is not altered at this time, and because Stapleton has not shown that the current Lead Counsel cannot adequately protect the interests of the putative class members, the Lead Counsel shall also remain as established by prior Order.

Accordingly, it is hereby ORDERED AND ADJUDGED that Stapleton Groups' Motion for Approval of Lead Plaintiffs' Selection of Lead Counsel (DE # **[*16]** 39) is DENIED.

## V. Affirmation of Prior Order

Sunbeam Lead Plaintiffs have filed a Motion for Affirmation of Prior Order Appointing Lead Plaintiffs in the Consolidated Cases and all Subsequently Filed Cases, Including the Stapleton Action, or in the Alternative, Appointing Additional Lead Plaintiffs (DE # 40). To the extent that the Motion for Affirmation is consistent with the foregoing analysis, it is hereby ORDERED AND ADJUDGED that this Motion is GRANTED.

## VI. Filing of the Amended Complaint

Plaintiff also moves for a Stay of Filing the Amended Complaint pending the resolution of the above Motions. Given the resolution of said Motions, it is hereby ORDERED AND ADJUDGED that the Motion for Stay of Filing is hereby DENIED AS MOOT.

1998 U.S. Dist. LEXIS 21490, *16

Plaintiffs shall file the Amended Complaint within fifteen days after the date that Sunbeam Corporation files its restated results with the SEC, in accordance with Stipulation of the Parties filed on November 10, 1998 (DE # 98).

## VII. Administration of this Action

Given the large number of parties in this action, the Court establishes an abbreviated service list for Orders from this Court. The Counsel listed on the service **[*17]** list below (Plaintiff Co-Liaison Counsel and one local counsel for each Defendant) will receive Orders of the Court and shall be responsible for distribution to all co-counsel. [8]
 The Court requests that Counsel listed below inform the Court of any objections, inaccuracies, or necessary counsel not included in the list below.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of December, 1998.

DONALD M. MIDDLEBROOKS

UNITED STATES DISTRICT JUDGE

---

End of Document

---

[8] Counsel for the Stapleton Group are included on this service list, but will not be listed hereinafter.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/7/09

THE POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT, on behalf
of itself and all others similarly situated,

               Plaintiffs,

   -v-

UBS AG, *et al.*,

               Defendants.

No. 09 Civ. 2191 (RJS)
ORDER

NEW ORLEANS EMPLOYEES' RETIREMENT
SYSTEM, on behalf of itself and all others similarly
situated,

               Plaintiffs,

   -v-

UBS AG, *et al.*,

               Defendants.

No. 09 Civ. 893 (RJS)
ORDER

IN RE UBS AG SECURITIES LITIGATION

No. 07 Civ. 11225 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

     As ordered by the Court at the conference held before it on April 7, 2009, the above-

captioned matters shall be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil

Procedure, and no republication of notice under the Private Securities Litigation Reform Act, 15

U.S.C. § 78u-4(a)(3)(A) is required under these circumstances. Accordingly, Lead Plaintiffs and Lead Plaintiffs' counsel appointed by the Stipulation and Order dated March 6, 2008 will continue to be Lead Plaintiffs and Lead Plaintiffs' counsel for this newly consolidated action.

The cases shall be referred to collectively as *In re UBS AG Securities Litigation*, Master File No. 07 Civ. 11225 (RJS). Every pleading or other document filed in the Consolidated Action shall bear the following caption:

| | |
|---|---|
| IN RE UBS AG SECURITIES LITIGATION | No. 07 Civ. 11225 (RJS) |

As further ordered by the Court at the April 7, 2009 conference, the Parties shall submit a joint status letter, to be *received* no later than Friday, April 17, 2009, informing the Court (1) whether Lead Plaintiffs intend to file an Amended Consolidated Class Action Complaint, and if so; (2) whether additional briefing is necessary with respect to the pending motions to dismiss. If additional briefing is requested, the joint letter should also include a proposed briefing schedule.

The Clerk of the Court is directed to terminate the following motions: in Case No. 07 Civ. 11225, the motion located at docket number 92; in Case No. 09 Civ. 893, the motions located at docket numbers 5, 8, 11, 15, and 20; in Case No. 09 Civ. 2191, the motions located at docket numbers 5, 8, 11, and 17.

SO ORDERED.

Dated:      April 7, 2009
             New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

3