**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MONA ABOUZIED, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:17-cv-02399 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LAWRENCE ROUGIER'S MOTION FOR LEAVE TO AMEND THE**
<u>**FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**</u>

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY OF ARGUMENT ......................................................................................... 4

III. NATURE AND STAGE OF PROCEEDINGS ................................................................. 5

IV. STATEMENT OF THE ISSUES....................................................................................... 5

V. STANDARDS ................................................................................................................... 6

VI. ARGUMENT .................................................................................................................... 6

   A. Lead Plaintiff Should Be Permitted to Amend the FAC to Include Allegations Concerning the Newly Revealed Corrective Disclosures That Directly Relate to Plaintiff's Claims ........................................................................................................ 6

      1. There Is No Undue Delay, Dilatory Motive, or Undue Prejudice to Defendants ............ 6

      2. There Is No Evidence of Bad Faith or Repeated Failure to Cure Previous Deficiencies ................................................................................................................... 9

      3. The Proposed Amendment Is Not Futile .................................................................... 10

   B. Lead Plaintiff Has Standing to Assert Claims in the Proposed Class Period .................... 11

VII. CONCLUSION ................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*,
   No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) .......................... 12

*Auster Oil & Gas, Inc. v. Stream,*
   764 F.2d 381 (5th Cir.1985) ..................................................................................................... 8

*Benbow v. Aspen Tech., Inc.*,
   No. 02-2881, 2003 U.S. Dist. LEXIS 6568 (E.D. La. Apr. 11, 2003) ........................................ 7

*Blake Partners, Inc. v. Orbcomm, Inc.*,
   Nos. 07-4517 (WHW), 07-4590 (WHW), 2008 U.S. Dist. LEXIS 43061
   (D.N.J. June 2, 2008) ............................................................................................................... 10

*Crowell v. Ionics, Inc.*,
   343 F. Supp. 2d 1 (D. Mass. 2004) .......................................................................................... 12

*Dueling v. Devon Energy Corp.*,
   623 F. App'x. 127 (5th Cir. 2015) ............................................................................................. 4

*Foman v. Davis*,
   371 U.S. 178, 83 S. Ct. 227 (1962) ........................................................................................... 6

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ...................................................................................................... 11

*In re BP p.l.c. Sec. Litig.*,
   No. 4:10-cv-4214, 2015 U.S. Dist. LEXIS 27138 (S.D. Tex. Mar. 4, 2015) ........................... 11

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
   No. H-14-3428, 2017 U.S. Dist. LEXIS 34437 (S.D. Tex. Mar. 10, 2017) ............................. 11

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) .................................................................................... 12

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................................. 11

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
   No. H:15-cv-02404, 2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015) ...................... 12

*In re Veeco Instruments, Inc.,*
   233 F.R.D. 330 (S.D.N.Y. 2005) ............................................................................................. 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................... 12

*Jacobsen v. Osborne*,
   133 F.3d 315 (5th Cir. 1998) ........................................................................................ 6

*Makhlouf v. Tailored Brands, Inc.*,
   No. H-16-0838, 2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017) .............................. 13

*Mayeaux v. La. Health Serv. & Indem. Co.*,
   376 F.3d 420 (5th Cir. 2004) ........................................................................................ 6

*McDade v. Wells Fargo Bank,*
   No. H-10-3733, 2011 U.S. Dist. LEXIS 118219 (S.D. Tex. Oct. 13, 2011) .............................. 8

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
   898 F.3d 461 (5th Cir. 2018) ........................................................................................ 6

*Norman v. Apache Corp.*,
   19 F.3d 1017 (5th Cir. 1994) ........................................................................................ 6

*Onasset Intelligence, Inc. v. Freightweight Int'l (USA), Inc.*,
   No. 3:11-CV-3148-G, 2012 U.S. Dist. LEXIS 158734 (N.D. Tex. Nov. 6, 2012) ..................... 7

*Smallwood v. Bank of Am.*,
   No. 3:11-CV-1283-D, 2011 U.S. Dist. LEXIS 119301 (N.D. Tex. Oct. 17, 2011) ................... 11

*Smith v. EMC Corp.*,
   393 F.3d 590 (5th Cir. 2004) ........................................................................................ 9

*Stein v. Match Grp., Inc.*,
   No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995 (N.D. Tex. June 9, 2016) .......................... 11

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-02204-PHX-FJM, 2009 U.S. Dist. LEXIS 61145 (D. Ariz. July 17, 2009) .......... 12

*United States CFTC v. Fin. Robotics, Inc.*,
   No. H-11-2446, 2013 U.S. Dist. LEXIS 90635 (S.D. Tex. June 27, 2013) .............................. 9

*Wimm v. Jack Eckerd Corp.*,
   3 F.3d 137 (5th Cir. 1993) ............................................................................................ 6

**Statutes**

15 U.S.C. §78j ................................................................................................................... 5

15 U.S.C. §78t ................................................................................................................... 5

15 U.S.C. §78u ......................................................................................................... 7, 11, 12

17 C.F.R. §240.10b-5 ............................................................................................................. 5

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................. 4, 6

Court-appointed Lead Plaintiff Lawrence Rougier ("Rougier" or "Lead Plaintiff") respectfully submits this Memorandum of Law in support of his Motion for Leave to Amend the First Consolidated Amended Class Action Complaint ("Amended Complaint" or "FAC") to file his Proposed Second Consolidated Amended Class Action Complaint ("Proposed Second Amended Complaint" or "Proposed SAC").

## I.  INTRODUCTION

This securities class action is currently brought individually and on behalf of all persons or entities who purchased or otherwise acquired publicly traded common stock and/or call options of Applied Optoelectronics, Inc. ("AOI" or the "Company") or sold put options of AOI from February 23, 2017 through February 21, 2018, both dates inclusive, (the "Current Class Period") and were damaged thereby. Lead Plaintiff, through his accompanying Motion, seeks leave to amend his FAC to: (1) extend the Current Class Period through and including September 27, 2018 (the "Proposed Class Period"); and (2) add allegations related to Defendants' most recent corrective disclosures,[1] admissions, and revelations that directly relate to the allegations in the FAC. *See* Dkt. No. 48 (FAC); *see also* Declaration of Jamie McKey ("McKey Decl."), Ex. A (Proposed SAC and Redline Comparison of FAC and Proposed SAC).

The FAC alleges that Defendants AOI, Chih-Hsiang (Thompson) Lin ("Lin"), and Stefan J. Murry ("Murry", and collectively the "Defendants") engaged in a scheme to mislead investors by touting AOI's internal "vertically integrated" manufacturing process as providing AOI with a

---

[1] Mr. Rougier also seeks, via a motion filed on November 7, 2018, to consolidate three related actions also filed in this District against the Defendants. On October 1, 2018, the first of three related actions, *Taneja v. Applied Optoelectronics*, *Inc*. *et al*., Case No. 4:18-cv-03544 (S.D. Tex.) was filed against AOI alleging a class period of August 7, 2018 through September 27, 2018 (the "*Taneja* Action"). Two other nearly identical actions were later filed. *See Pokoik v. Applied Optoelectronics, Inc. et al*., Case No. 4:18-cv-03722 (S.D. Tex.), and *McGrath v. Applied Optoelectronics, Inc. et al*., Case No. 4:18-cv-03914 (S.D. Tex.) (altogether with the *Taneja* Action, the "Related Actions").

decisive competitive advantage to "quickly transition production between 40G and 100G products" with a "faster time to market and the ability to quickly scale and adjust our throughput to meet growing demand" at a lower cost and with better quality control. FAC at ¶3. All the while, Defendants concealed from investors that the 25G laser chips at the heart of the 100G transceiver suffered from latent defects that caused it to fail after short periods of use, quality control issues resulting in low yield and AOI shipping faulty transceivers to its customers, including its then largest customer–Amazon. *Id.* at ¶71. Thus, AOI was not able to quickly transition from the 40G to the 100G transceiver and scale up to meet demand, as represented.

The FAC further alleges that the truth about AOI's manufacturing and defective 25G chips and 100G transceivers trickled out over several partially corrective disclosures. AOI initially disclosed a loss of business to Amazon on August 3, 2017, but falsely attributed the collapse to a "recent development" of Amazon's "softer than expected demand" for 40G transceivers, rather than an "AOI-specific" problem and promised an offsetting increase in 100G sales. FAC at ¶¶77, 125, 139. Then, in October 2017, AOI disclosed that Amazon's decline in demand extended to both 40G *and* 100G transceivers, not just the 40Gs as AOI had claimed in August 2017. *Id.* at ¶¶170-71. Finally, in February 2018, AOI disclosed that the Company's issues were due to undisclosed issues on AOI's side. *Id.* at ¶¶149-53. Each of these alleged corrective disclosures caused a material decline in AOI's stock price. *Id.* at ¶¶80, 82, 89.

The Proposed SAC alleges that the same Defendants continued to mislead investors by touting AOI's vertical integration manufacturing process, concealing the problems with the manufacturing and defective 100G transceivers and by claiming AOI's revenues from another major customer, Facebook, would stem the tide and offset losses incurred from sales to Amazon. The Proposed SAC alleges that the same manufacturing problems related to the 25G laser chips

2

and defective 100G transceivers alleged in the FAC that caused Amazon to go elsewhere to fill its transceiver orders also caused Facebook to significantly reduce the transceivers it purchased from AOI. The impact of the product and manufacturing issues specifically relating to Facebook first came to light when, on September 27, 2018, Loop Capital Markets reported that "AAOI is having product quality issues in 100G CWDM4 transceivers" and on September 28, 2018, when AOI admitted that "we identified an issue with a small percentage of 25G lasers within a specific customer [known by the market to be Facebook] environment" and slashed its expected third quarter 2018 revenues to $55-58 million from $82-92 million, or about 37%.[2] *See* McKey Decl. at Ex. B (9/27/2018 Loop Capital Markets Report). These revelations confirm the 25G laser chip issues with the 100G transceivers alleged in the FAC filed in March 2018.

AOI would largely confirm its September 28th admissions on November 7, 2018 when it reported third quarter 2018 results, stating "our third quarter results were impacted by a temporary delay in 100G transceiver shipments to a datacenter customer." AOI also reported total revenue of $56.4 million, down from $88.9 million in the third quarter of 2017 and a net loss of $0.19 per diluted share.[3]

In their Response to Plaintiff's Notice of Related Filings ("Response"), Defendants mischaracterize and seek to narrow the FAC's allegations to being solely about one customer—Amazon—and its changing demand for AOI's transceivers. Dkt. No. 66 at pp. 2-3, (Response). Defendants' self-serving motive, before even seeing a draft of the proposed amendment, is clear. They seek to eliminate any damages claims during the gap period of nearly six months from February 21, 2018 (the last day of the Current Class Period) to August 7, 2018 (the first day of the

---

[2] September 28, 2018 Press Release, *available at* http://investors.ao-inc.com/news-releases/news-release-details/applied-optoelectronics-updates-third-quarter-2018-revenue
[3] November 7, 2018 Press Release, *available online at* http://investors.ao-inc.com/news-releases/news-release-details/applied-optoelectronics-reports-third-quarter-2018-results

3

class period alleged in the Related Actions). However, as demonstrated herein and in Plaintiff's proposed SAC, this case is about more than one customer. It is about AOI's global problems with its vertical integration manufacturing process resulting in low yields, defective 100G transceivers, significant delays in production, lost customers and lost sales.

## II. SUMMARY OF ARGUMENT

Rule 15 of the Federal Rules of Civil Procedure contemplates amendment of pleadings once as a matter of right, and thereafter with either the opposing party's written consent or the court's leave—which should be "freely give[n] when justice so requires." Leave to amend should be granted unless there is a "substantial reason" to deny it, including "undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party." *Dueling v. Devon Energy Corp.*, 623 F. App'x. 127, 128-29 (5th Cir. 2015). Here, Lead Plaintiff seeks leave to amend the FAC to include additional facts and admissions by Defendants relating to the problems with the vertical integration manufacturing process and 100G transceiver product issues, which had ***not been disclosed*** until months after he filed the FAC in March 2018. As such, there can be no argument for delay, bad faith, or dilatory motive. Indeed, after additional facts were disclosed on September 27 and 28, Plaintiff reviewed and analyzed the reports and promptly filed a Notice of Related Cases ("Notice"). Dkt. No. 64, (Notice). Lead Plaintiff then promptly filed this motion attaching the SAC on November 8, 2018, one day after AOI announced third quarter earnings.[4]

---

[4] Lead Plaintiff had intended to file both this instant motion and the motion to consolidate related cases on November 2, 2018. However, on November 1, 2018, Jun Zhang, an analyst at Rosenblatt reported that product quality issues with Facebook had resurfaced. McKey Decl. at Ex. C (StreetInsider.com Article Quoting Rosenblatt Report on AOI) ("AAOI will not be able to continue shipping to Facebook, resulting in the company's revenues from Facebook being very small in Q4."). Lead Plaintiff decided to wait until AOI released its third quarter earnings and held its third quarter conference call, which was held after market hours on November 7, 2018, to include Defendants' statements regarding the information contained in the Rosenblatt report.

Moreover, Defendants cannot seriously claim undue prejudice, as the new allegations in the Proposed SAC *were entirely within their control*.

### III.  NATURE AND STAGE OF PROCEEDINGS

Plaintiff Mona Abouzied filed the first complaint on August 5, 2017 and several related actions were filed thereafter. On January 22, 2018, the Court consolidated *Ludwig v. Applied Optoelectronics, Inc. et al.*, Case No. 4:17-cv-02512 (S.D. Tex.) with *Abouzied v. Applied Optoelectronics*, *Inc.*, *et al.*, Case No. 4:17-cv-02399 (S.D. Tex.) and appointed Mr. Rougier as Lead Plaintiff of the consolidated Action. On March 6, 2018, Lead Plaintiff filed the Amended Complaint seeking damages to recover for Defendants' violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j (the "Exchange Act") and 15 U.S.C. §78t, and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder. Defendants have since filed a Motion to Dismiss the Amended Complaint on April 4, 2018, to which Lead Plaintiff opposed on May 4, 2018, and Defendants filed a reply in support of on May 21, 2018. On October 11, 2018, Lead Plaintiff filed the Notice informing the Court of the Related Actions and requested a pre-motion conference to which Defendants responded on November 1, 2018 opposing any effort by Lead Plaintiff to consolidate or amend, despite not having even seen the Proposed SAC. In a separate motion filed on November 7, 2018, Lead Plaintiff also moves to consolidate the Related Actions.

### IV.  STATEMENT OF THE ISSUES

Whether Lead Plaintiff should be granted leave to amend the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to: (a) include relevant and previously-undisclosed factual allegations; and, relatedly (b) extend the Current Class Period through and including September 27, 2018.

## V. STANDARDS

Leave to amend under Rule 15(a) "shall be freely given when justice so requires; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) (internal citations omitted).[5] The decision to grant or deny leave to amend pleadings is "entrusted to the sound discretion of the district court." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). "[Leave to amend] should not be denied unless there is a ***substantial reason*** to do so." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Rule 15(a) "evinces a bias in favor of granting leave to amend" and leave to amend should only be denied in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, and futility of amendment." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). In other words "district courts must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

## VI. ARGUMENT

### A. Lead Plaintiff Should Be Permitted to Amend the FAC to Include Allegations Concerning the Newly Revealed Corrective Disclosures That Directly Relate to Plaintiff's Claims

#### 1. There Is No Undue Delay, Dilatory Motive, or Undue Prejudice to Defendants

This action is still in its preliminary stages as there has not been any decision on the merits of the claims contained in the FAC. Pursuant to the mandatory discovery stay established by the Private Securities Litigation Reform Act ("PSLRA"), no discovery has been permitted: there have

---

[5] Unless otherwise specified, all internal citations are omitted and emphasis is added.

6

been no requests for production of documents; no depositions; no requests for responses to interrogatories or requests for admissions. *See Benbow v. Aspen Tech., Inc.*, No. 02-2881, 2003 U.S. Dist. LEXIS 6568, at *13 (E.D. La. Apr. 11, 2003) ("all discovery and other proceedings are stayed as a matter of law until the Court determines whether the plaintiffs' pleadings pass PSLRA muster"). This action is still years away from trial and amendment at this early stage does not require the parties to reopen discovery. *See Onasset Intelligence, Inc. v. Freightweight Int'l (USA), Inc.*, No. 3:11-CV-3148-G, 2012 U.S. Dist. LEXIS 158734, at *5-6 (N.D. Tex. Nov. 6, 2012) (no undue delay where neither party has taken discovery and noting "usual case in which undue delay supports a court's denial of leave to amend is where a party waits until the eve of trial to assert a new claim.").

Lead Plaintiff is also not acting with any dilatory motive. In accordance with the Order Granting Lead Plaintiff's Unopposed Motion for an Extension of Time to File an Amended, Consolidated Complaint and Associated Filings (Dkt. No. 47), Lead Plaintiff filed the FAC on March 6, 2018. Additional information directly relating to the allegations in the FAC have come to light through recent disclosures made by analysts and admissions by Defendants after the FAC was filed confirming the allegations in the FAC regarding the problems CW1 identified with AOI's vertical integration manufacturing and 100G transceivers. This new information confirms AOI's undisclosed manufacturing problems and that they affected more than just the products sold to Amazon.

As soon as this new information came to light on September 27 and 28, 2018, Lead Plaintiff quickly analyzed the reports and promptly filed the Notice. Lead Plaintiff then filed this Motion attaching the Proposed SAC the day after AOI's November 7, 2018 earnings announcement confirming that the Company had "identified [an issue] with a small percentage of 25G lasers,

7

which led to a temporary delay in 1 of digital receiver shipments to a datacenter customer…. The delay [] resulted in softer-than-expected datacenter revenue of $39 million." McKey Decl. at Exs. A (Proposed SAC), D (Q3 2018 AOI Earnings Call Transcript). Lead Plaintiff waited until November 8, 2018 to file to incorporate the Company's third quarter 2018 results to avoid amending for a second time in a short time period. Lead Plaintiff is therefore not acting with any dilatory motive because he ***could not have*** brought allegations related to the most recent corrective disclosures at the time he filed the FAC. Moreover, Lead Plaintiff has not acted dilatorily, having promptly notified the Court of his intention to file the instant Motion. *See Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 391 (5th Cir.1985) (holding that the district court abused its discretion by denying leave to amend where movant "asked for amendment promptly upon discovering the basis for new allegations"); *c.f. McDade v. Wells Fargo Bank,* No. H-10-3733, 2011 U.S. Dist. LEXIS 118219, at *15-16 (S.D. Tex. Oct. 13, 2011) (denial of motion for leave to amend where "facts underlying the amended complaint were known to the party when the original complaint was filed.").

There can be no serious claim for undue prejudice here, where Defendants will have more than an adequate opportunity to respond to the Proposed SAC and because the parties have not engaged in discovery on the current Class Period and claims alleged in the FAC. Courts generally find undue prejudice if an added claim forces the defendant to "reopen discovery and prepare a defense for a claim different from the [one]… that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004). Here, the additional claims in the Proposed Second Amended Complaint are nearly identical to those asserted in the FAC and seek to expand on them through Defendants' own post-Current Class Period statements and admissions. *See United States CFTC v. Fin. Robotics, Inc.*, No. H-11-2446, 2013 U.S. Dist. LEXIS 90635, at *7-9 (S.D. Tex. June 27,

2013) (no undue prejudice where "[s]ome of the issues raised by the proposed amendments overlap with those already present in this litigation" despite requirement of "[s]ome additional discovery").

Defendants, in their Response, argue that amendment at this early stage in litigation results in undue delay. Defendants' ignore that this action is still in its infancy and a pending motion to dismiss hardly justifies denying leave to amend. By Defendants' flawed logic, Lead Plaintiff should *wait* until *after* the Court analyzes the briefing on motion to dismiss and renders a decision to then request leave to amend. This approach would cause even more delay and waste judicial and party resources. Moreover, if Lead Plaintiff had done as Defendants' suggested and waited until after the motion to dismiss was decided, or after the Related Actions proceeded past the appointment of lead plaintiff, Defendants' would cry foul that he did not act sooner. Finally, making this argument even more meritless is the fact that Defendants would have to brief another motion to dismiss on the same allegations and class period once the Related Actions progress to that stage in litigation. Defendants' effort is nothing more than a transparent attempt to eliminate the claims of thousands of potential class members during the six-month gap between the Current Class Period and the start of the class period in the Related Actions.

### 2. There Is No Evidence of Bad Faith or Repeated Failure to Cure Previous Deficiencies

This Court has not yet ruled on the sufficiency of Lead Plaintiff's FAC and thus has not found any deficiencies therein. In fact, this Motion is not the product of a failure to plead a claim upon which relief can be granted, but rather to include allegations related to developments that occurred after the FAC was filed. There is no evidence of bad faith and Lead Plaintiff is not seeking to cure any Court-perceived deficiencies in the allegations concerning the recent disclosures which Lead Plaintiff seeks to cure.

Defendants argue this Motion is an attempt to "bootstrap this litigation" to cure pleading deficiencies in the FAC. Not so. As Defendants are quick to highlight, there has not been any decision on the sufficiency of the FAC. Lead Plaintiff does not seek to bolster allegations that have been dismissed, but rather to include information that was unavailable to him when he filed the FAC. Also, for this reason, Defendants are not prejudiced by Lead Plaintiff filing his Proposed SAC. In making these unmeritorious arguments, Defendants recognize that it will be much easier to defend against two splintered class actions with disjointed class periods rather than one class action where earlier misrepresentations and indications of scienter correspond with later corrective disclosures and admissions. *See Blake Partners, Inc. v. Orbcomm, Inc.*, Nos. 07-4517 (WHW), 07-4590 (WHW), 2008 U.S. Dist. LEXIS 43061, at *10-12 (D.N.J. June 2, 2008) (noting that defendants "do not have the best interest of the members of the class at heart" when challenging appointment of lead plaintiff).

### 3. The Proposed Amendment Is Not Futile

Similarly, there can be no finding that the amendments contained in the Proposed SAC are futile. As noted, there has not been a ruling on the sufficiency of the FAC and the Proposed SAC does not seek to cure a prior deficiency, but rather add allegations related to recent developments. Moreover, the Court need not determine, on a motion for leave to amend, whether the Proposed SAC states a claim—that determination is appropriately made in the context of a motion to dismiss. *See In re Cobalt Int'l Energy, Inc. Sec. Litig.,* No. H-14-3428, 2017 U.S. Dist. LEXIS 34437, at *7-8 (S.D. Tex. Mar. 10, 2017) (directing defendants in securities class action to file a motion to dismiss the new claim and "follow the standard briefing procedure"); *Smallwood v. Bank of Am.*, No. 3:11-CV-1283-D, 2011 U.S. Dist. LEXIS 119301, at *4 (N.D. Tex. Oct. 17, 2011) ("the court's almost unvarying practice when futility is raised is to address the merits of the claim . . . in

the context of a Rule 12(b)(6) or Rule 56 motion . . . where the procedural safeguards are surer"); *In re BP p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2015 U.S. Dist. LEXIS 27138, at *119-20 (S.D. Tex. Mar. 4, 2015) (granting leave to amend over objections of futility and directing defendants to challenge the additional allegations through Rule 12 motion); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 125 n.11 (S.D.N.Y. 2002) (where "alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss ***unless the amendments' futility is readily apparent***.").

### B. Lead Plaintiff Has Standing to Assert Claims in the Proposed Class Period[6]

It is well settled that in order to pursue claims on behalf of a class, a lead plaintiff need only to have suffered damages pursuant to one claim to act as a class representative on behalf of class members with multiple or different claims. *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."); *see also Stein v. Match Grp., Inc.*, No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995, at *21-22 (N.D. Tex. June 9, 2016) (same).

Rougier was appointed as Lead Plaintiff by this Court after finding, *inter alia*, that he was the presumptive "most adequate plaintiff" having "demonstrated he purchased shares of [AOI] during the class period . . . which subsequently lost significant value as a result of Defendants' alleged conduct." *Abouzied v. Applied Optoelectronics, Inc.*, No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801, at *17 (S.D. Tex. Jan. 22, 2018). Lead Plaintiff has satisfied the requirements of the PSLRA to show he has the largest financial interest at stake due to Defendants' conduct.

---

[6] The PSLRA requires that lead plaintiff movants submit a signed certification with their transactions in the subject company indicating that they are willing to act as class representatives. Mr. Rougier's certification (Dkt. No. 9, Ex. A) remains accurate as he confirmed he has not made trades in AOI since being appointed as lead plaintiff to litigate claims against the Company.

11

Moreover, he need not have suffered losses from *all* revelations of Defendants' fraud to assert standing to recover damages for class members who bought or sold shares at different times. *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. H:15-cv-02404, 2015 U.S. Dist. LEXIS 163811, at *15-16 (S.D. Tex. Dec. 7, 2015) (rejecting argument that lead plaintiff who only purchased shares in final eight months of two year class period "would not pursue claims throughout the entire class period" as a "lead plaintiff owes a fiduciary duty to the class"); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007) (with respect to standing "it is well established that where, as here, plaintiffs allege that their losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who purchased his shares prior to the close of the class period"); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13 (D. Mass. 2004) ("numerous courts have stated that class representatives do have standing to assert claims under §10(b) which arise from statements made after the class representative purchased shares.").[7]

Moreover, this is not an instance where a class representative purchased and sold all shares before *any* revelation of misconduct by defendants. *C.f. In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (potential lead plaintiff that bought and sold all shares prior to issuance of corrective disclosure subject to unique defense for failure to show loss).

Despite the well-established precedent above confirming Mr. Rougier has standing and may represent class members in the extended class period asserted in the Proposed SAC, Defendants claim in their Response, citing no legal authority, that Plaintiff cannot represent the

---

[7] *See also, In re Connetics Corp. Sec. Litig.,* 542 F. Supp. 2d 996, 1003-04 (N.D. Cal. 2008) (lead plaintiffs have standing to sue to recover damages from of all stock drops even when they sold before final corrective disclosures); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 U.S. Dist. LEXIS 61145, at *14 (D. Ariz. July 17, 2009) (finding "no basis for defendants' claim that named plaintiff would not vigorously represent the interest of those who sold [] stock [after named plaintiff sold theirs]").

interests of all class members because he did not hold his AOI stock throughout the entirety of the Class Period. As discussed above, that argument is plainly false. In any event, Defendants do not have standing to make such arguments. *Makhlouf v. Tailored Brands, Inc.*, No. H-16-0838, 2017 U.S. Dist. LEXIS 41872, at *7 (S.D. Tex. Mar. 23, 2017) ("defendants . . . lack standing to challenge the plaintiffs' motions to appoint Lead Plaintiff [and] may subsequently in a class certification hearing object to the adequacy of any proposed person or group of persons as Lead Plaintiff.").

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant him leave to amend his Amended Complaint and to file the Proposed Second Amended Complaint.

Respectfully submitted,

Dated: November 8, 2018

*/s/ Jamie J. McKey*
**KENDALL LAW GROUP, PLLC**
JAMIE J. MCKEY
Texas Bar No. 24025262
JOE KENDALL
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Tel.: (214) 744-3000
Fax: (214) 744-3015
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

*Liaison Counsel for Lead Plaintiff and Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
733 Summer Street, Suite 304
Stamford, Connecticut 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
shopkins@zlk.com

*Lead Counsel for Lead Plaintiff and Class*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, November 8, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Jamie J. McKey*
Jamie J. McKey