**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| MONA ABOUZIED, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br><br>                    Defendants. | Case No. 4:17-cv-02399 |

**DECLARATION OF JAMIE J. MCKEY IN SUPPORT OF MOTION OF LAWRENCE**
**<u>ROUGIER FOR LEAVE TO AMEND</u>**

I, JAMIE J. MCKEY, declare and state as follows:

1.    My name is Jamie J. McKey. I am over the age of 18, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein and they are true and correct to the best of my knowledge.

2.    I am an attorney at Kendall Law Group, PLLC, liaison counsel for Lead Plaintiff Lawrence Rougier in the above-captioned action, and a member of the Bar of the State of Texas.

3.    I respectfully submit this Declaration in support of Lead Plaintiff Lawrence Rougier's Motion for Leave to Amend the First Consolidated Amended Class Action Complaint, dated November 8, 2018, attaching true and correct copies of the following:

4.    Attached hereto as Exhibit A is a true and correct copy of the Proposed Second Consolidated Amended Class Action Complaint ("Proposed Second Amended Complaint" or "Proposed SAC") and a redline comparison of the First Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws with the Proposed SAC.

5.    Attached hereto as Exhibit B is a true and correct copy of the September 27, 2018, Loop Capital Markets Report on Applied Optoelectronics, Inc.

6.    Attached hereto as Exhibit C is a true and correct copy of a November 1, 2018 StreetInsider.com article quoting Rosenblatt analyst Jun Zhang's report on Applied Optoelectronics, Inc.

7.    Attached hereto as Exhibit D is a true and correct copy of the Applied Optoelectronics, Inc. (AAOI) CEO Thompson Lin on Q3 2018 Results – Earnings Call Transcript held after market close on November 7, 2018.

8.    Attached hereto in a compendium are true and correct copies of the following:

2

| 1. | *Abouzied v. Applied Optoelectronics, Inc.*, No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) | 5-10 |
|---|---|---|
| 2. | *Benbow v. Aspen Tech., Inc.*, No. 02-2881, 2003 U.S. Dist. LEXIS 6568 (E.D. La. Apr. 11, 2003) | 11-17 |
| 3. | *Blake Partners, Inc. v. Orbcomm, Inc.*, Nos. 07-4517 (WHW), 07-4590 (WHW),  2008 U.S. Dist. LEXIS 43061 (D.N.J. June 2, 2008) | 18-25 |
| 4. | *In re BP p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2015 U.S. Dist. LEXIS 27138 (S.D. Tex. Mar. 4, 2015) | 26-64 |
| 5. | *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 U.S. Dist. LEXIS 34437 (S.D. Tex. Mar. 10, 2017) | 65-67 |
| 6. | *Makhlouf v. Tailored Brands, Inc.*, No. H-16-0838, 2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017) | 68-76 |
| 7. | *McDade v. Wells Fargo Bank*, No. H-10-3733, 2011 U.S. Dist. LEXIS 118219 (S.D. Tex. Oct. 13, 2011) | 77-82 |
| 8. | *Molina v. Caliber Home Loans, Inc.*, No. 3:15-CV-757-P, 2016 U.S. Dist. LEXIS 193552 (N.D. Tex. Mar. 15, 2016) | 83-88 |
| 9. | *Onasset Intelligence, Inc. v. Freightweight Int'l (USA), Inc.*, No. 3:11-CV-3148-G, 2012 U.S. Dist. LEXIS 158734 (N.D. Tex. Nov. 6, 2012) | 89-91 |
| 10. | *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. H:15-cv-02404, 2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015) | 92-97 |
| 11. | *Robertson v. Sun Life Fin.*, No. 17-2148, 2017 U.S. Dist. LEXIS 155081 (E.D. La. Sep. 22, 2017) | 98-102 |
| 12. | *Smallwood v. Bank of Am.*, No. 3:11-CV-1283-D, 2011 U.S. Dist. LEXIS 119301 (N.D. Tex. Oct. 17, 2011) | 103-105 |
| 13. | *Stein v. Match Grp., Inc.*, No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995 (N.D. Tex. June 9, 2016) | 106-113 |
| 14. | *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 U.S. Dist. LEXIS 61145 (D. Ariz. July 17, 2009) | 114-121 |
| 15. | *United States CFTC v. Fin. Robotics, Inc.*, No. H-11-2446, 2013 U.S. Dist. LEXIS 90635 (S.D. Tex. June 27, 2013) | 122-126 |

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 8th of November, 2018, in Dallas Texas.

/s/ *Jamie J. McKey*
Jamie J. McKey

 Neutral
As of: October 30, 2018 2:32 PM Z

## *Abouzied v. Applied Optoelectronics, Inc.*

United States District Court for the Southern District of Texas, Houston Division

January 22, 2018, Decided; January 22, 2018, Filed, Entered

CASE NO. 4:17-CV-2399

**Reporter**

2018 U.S. Dist. LEXIS 16801 *; 2018 WL 539362

MONA ABOUZIED, Plaintiff, v. APPLIED OPTOELECTRONICS, INC, CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY, Defendants.

## Core Terms

lead plaintiff, Investor, appointment, movants, financial interest, asserts, largest, financial loss, individuals, parties, notice, rule requirements, pre-litigation, securities, unrelated, shares, class member, group member, satisfies, sole-lead, contends, courts, losses

**Counsel: [*1]** For Mona Abouzied, Plaintiff: Laura Kirstine Rogers, R. Dean Gresham, Steckler Gresham Cochran PLLC, Dallas, TX.

For Chad Ludwig, Consol Plaintiff: Willie C Briscoe, LEAD ATTORNEY, The Briscoe Law Firm, PLLC, Dallas, TX; Joseph Alexander Hood, II, Pomerantz LLP, New York, NY.

For Applied Optoelectronics, Inc., Chih-Hsiang Thompson Lin, Stefan J. Murry, Defendants: Michael C Holmes, LEAD ATTORNEY, Vinson & Elkins, Dallas, TX; Amy Tankersley Perry, Vinson Elkins, Dallas, TX; Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX.

For Amir Fakharzadeh, Patricia Fakharzadeh, Thomas Edmons, Gregory Knight, Kristen Knight, Stephen Rakower, Amnuey Chiemprabha, Helen Chiemprabha, Movants: Phillip Kim, LEAD ATTORNEY, The Rosen Law Firm, P.A., New York, NY; R. Dean Gresham, Steckler Gresham Cochran PLLC, Dallas, TX.

For Lawrence Rougier, Movant: Jamie J McKey, LEAD ATTORNEY, Kendall Law Group LLP, Dallas, TX; Joe Kendall, Kendall Law Group, LLP, Dallas, TX; Shannon L. Hopkins, PRO HAC VICE, Levi & Korsinsky, LLP, Stamford, CT.

For Philip R. Deubler, Jr., Movant: Andrew M Edison, LEAD ATTORNEY, Edison, McDowell & Hetherington, LLP, Houston, TX.

For Daniel Sisto, Movant: Thomas E Bilek, LEAD ATTORNEY, The **[*2]** Bilek Law Firm LLP, Houston, TX.

For Jay C. Weenig, Movant: Roger B Greenberg, LEAD ATTORNEY, Sponsel Miller Greenberg PLLC, Houston, TX.

**Judges:** VANESSA D. GILMORE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** VANESSA D. GILMORE

## Opinion

### ORDER

Pending before the Court are Applied Investor Group's Motion for Appointment of Lead Plaintiff and Lead Counsel, **(Instrument No. 5)**, and Lawrence Rougier's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel. **(Instrument No. 8)**. The Court held the motion hearing on January 19, 2018 at 9:30 a.m.

I.

A.

Defendant Applied Optoelectronics, Inc. ("Optoelectronics") develops and manufactures advanced optical products for use in broadband and fiber access networks. (Instrument No. 1 at 3). Optoelectronics is incorporated in Delaware and headquartered in Sugar Land, Texas. *Id.* The companies securities trade on the NASDAQ Global Market under the ticker symbol "AAOI." *Id.*

2018 U.S. Dist. LEXIS 16801, *2

Plaintiff Mona Abouzied filed a security class action suit on behalf of a proposed class of purchasers of AAOI securities between July 13, 2017 through August 3, 2017, inclusive of both dates ("Class Period"). (Instrument No. 1 at 2). The Complaint alleges that on July 13, 2017, Optoelectronics **[*3]** issued a press release announcing its preliminary financial results for the second quarter of 2017. *Id.* at 4. The Complaint alleges that Defendants made false and/or misleading statements and/or failed to disclose: (1) a major customer (Amazon) was reducing its purchases of Optoelectronic's 40G receivers; (2) the loss of Amazon's business would have a severe negative impact on Optoelectronic's financial performance; and (3) as a result of the foregoing, Optoelectronic's public statements were materially false and misleading at all relevant times. (Instruments No. 1 at 6; No. 14 at 4). After trading hours had ended on August 3, 2017, Optoelectronics announced its final financial results which included the negative news about Amazon. (Instrument No. 1 at 6-7). As a result, Optoelectronic's shares fell by $33.39 per share from its previous closing price, or more than 34%, to close at $64.60 per share on August 4, 2017. *Id.* at 7.

**B**.

Plaintiff Mona Abouzied filed the class action suit on August 5, 2017. (Instrument No. 1). On August 16, 2017, a related action was filed, *Ludwig v. Applied Optoelectronics, Inc. et al.*, No. 4:17-cv-2512 (S.D. Tex.) (Miller, J.). (Instrument No. 9 at 4). On October 3, 2017, **[*4]** the Court consolidated the *Ludwig* Action with the present action, *Abouzied v. Applied Optoelectronics, Inc. et al.*, No. 4:17-cv-2399. Another similar action was filed on September 11, 2017 before the U.S. District Court for the Eastern District of New York: *Rizzo v. Applied Optoelectronics, Inc., et al.*, No. 1:17-cv-5313. (Instrument No. 18 at 6 n.2). That case was later dismissed on October 17, 2017. *Id.*

On October 4, 2017, five different parties moved for appointment as lead plaintiffs and approval of lead plaintiffs' selection of counsel. The first movant is Applied Investor Group which consists of movants Amir and Patricia Fakharzadeh, Kristen and Gregory Knight, Stephen Rakower, and Amnuey and Helen Chiemprabha. (Instrument No. 5 at 1). The group consists of three married couples and one unrelated individual. (Instrument No. 18 at 7 n.4). Moreover, Kristen Knight moves on behalf of five entities: (1) the Dale E. Bartch Irrevocable Life Insurance Trust; (2) the Dale and Cheryl Bartch Family Trust; (3) the Kristen L. Bartch Family Ltd. Partnership; (4) the Fiona Carolyn Knight Trust; and (5) the Elisabeth Valerie Knight Trust. (Instrument No. 7-2).

The second party moving for appointment **[*5]** as lead plaintiff is Lawrence Rougier ("Rougier"). (Instrument No. 8). The third party to move for appointment as lead plaintiff was Philip R. Deubler, Jr. ("Deubler"). (Instrument No. 10). On January 19, 2018, Deubler withdrew his motion. The fourth party to move for appointment as lead plaintiff was Daniel Sisto ("Sisto"). (Instrument No. 11). On January 19, 2018, the Court denied Sisto's motion for want of prosecution. The fifth party to move for appointment as lead plaintiff was Jay C. Weenig ("Weenig"). (Instrument No. 14). On October 25, 2017, Weenig withdrew his motion. (Instrument No. 17).

**II**.

The Private Securities Litigation Reform Act ("PSLRA") establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *15 U.S.C. §78u-4(a)(1)*. The plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of his right to file a motion for appointment as lead plaintiff. *15 U.S.C. §78u-4(a)(3)(A)(i)*. The notice must advise that any member of the purported class mut file a motion for appointment as lead plaintiff within **[*6]** 60 days after the date on which the notice is published. *15 U.S.C. §78u-4(a)(3)(A)(i)*. Plaintiff Mona Abouzied published such a notice in *Business Wire* on August 5, 2017. (Instrument No. 9-5). The notice announced that the statutory deadline to submit applications for appointment as lead plaintiff was October 4, 2017. *Id.*

The PSLRA states that as soon as practicable after consolidation, a court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. The PSLRA provides a "rebuttable presumption" that the most adequate plaintiff to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint of made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*.

A member of the potential class can rebut the presumption by providing proof that the presumptively most adequate plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

Moreover, the party moving for appointment **[*7]** as lead plaintiff must "otherwise satisfy the requirements of *Rule 23 of the Federal Rules of Civil Procedure*." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)*. *Rule 23(a)* provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of common law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the lead plaintiff satisfies the requirements of *Rule 23*, a court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that the movant satisfies the requirements of *Rule 23* is sufficient. *In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 439 (S.D.N.Y. 2008)*. Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *Id. at 437*; *Gluck v. Cellstar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997)*.

**A**.

Each of the movants filed motions for appointment as lead plaintiff within 60 days after the date on which Plaintiff Abouzied published the notice to potential class members. Moreover, each of the movants has submitted sworn shareholder certifications asserting **[*8]** that they are willing to serve as representatives of the class and are willing to provide testimony at deposition and trial, if necessary. Accordingly, the moving parties satisfy the first requirement to serve as lead plaintiffs for the class.

**B**.

The PSLRA does not specify how a court should decide which plaintiff has the "largest financial interest" in the relief sought. *In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008)*. Some courts apply a four-factor inquiry first proposed in *Lax v. First Merch. Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11 1997)*; *In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. Feb. 15, 2002)* (Harmon, J.). The four factors relevant to the inquiry are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *In re Enron, 206 F.R.D. at 440*. Of these four factors, courts tend to place the greatest emphasis on the financial loss suffered by the plaintiffs. *Id.*; *In re Fuwei Films, 247 F.R.D. at 436*; *In re Bally Total Fitness Sec. Litig., 2005 U.S. Dist. LEXIS 6243, 2005 WL 627960 at *4 (N.D. Ill. Mar. 15, 2005)* ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").

Applied Investor Group alleges total losses of $2,049,571.35 in connection with the all of the group members' purchases of Optoelectronics securities. (Instrument No. 19 at 2). Rougier alleges total losses of $417,690. (Instrument No. 9 at 8). Applied Investor **[*9]** Group also purchased more total shares and expended more net funds than Lawrence Rougier. (Instruments No. 7-3; No. 9-3). Therefore, Applied Investor Group has the largest financial interest in the relief sought.

**C**.

The parties do not dispute that their claims are typical of the claims or defenses of the class as required by *Rule 23*. Rougier challenges, however, the adequacy of Applied Investor Group and asserts that Applied Investor Group constitutes an impermissible group of unrelated individuals. (Instrument No. 18 at 7). Specifically, Applied Investor Group is made up of seven individuals who, besides the married couples, lack a pre-litigation relationship. (Instrument No. 18 at 9). Rougier contends that Kristen Knight moved for appointment as co-lead plaintiff although she is the representative of four trusts and a limited partnership, which the court should regard as separate and distinct interests from Kristen Knight for the purposes of defining "largest financial interests." (Instrument No. 24 at 5).

2018 U.S. Dist. LEXIS 16801, *9

Rougier further asserts that Applied Investor Group is too large and unwieldy to serve as a cohesive group and cannot therefore meet the adequacy requirement of *Rule 23.* (Instrument No. 18 at **[*10]** 15-16). Rougier also contends that any request by individuals from Applied Investor Group to be broken down into a subgroup makes the group inadequate because it demonstrates that those members would not hesitate to make a decision for their own benefit. *Id.* at 17.

Applied Investor Group contends that its movants purchased more shares of Optoelectronics during the class period and suffered the greatest financial loss by a large margin. (Instrument No. 19 at 4). Applied Investor Group further asserts that grouping is a nonissue in this case because two members of the Applied Investor Group, Kristen and Gregory Knight and Stephen Rakower have the top two largest *individual* financial interests in this action, respectively. *Id.* at 5. Applied Investor Group asserts that Kristen and Gregory Knight, in their individual capacities, suffered a financial loss of approximately $420,000, and Stephen Rakower suffered a financial loss of $522,573. *Id.* at 2. Applied Investor Group further contends that the movants have filed a Joint Declaration attesting to their understanding of the responsibilities as lead plaintiff and their agreement to work together as a group prior to the filing of the motion. *Id.* at 5.

The Fifth Circuit case, *Berger v. Compaq Comput. Corp., 257 F.3d 475 (5th Cir. 2001)*, raises **[*11]** this concern about the appointment of a group of investors to serve as lead plaintiffs:

Although the appointment of such a large group [39 individuals] to serve as lead plaintiff is not before this court, it is notable that the Securities and Exchange Commission has taken the position that a group of investors appointed to serve as lead plaintiffs ordinarily should comprise no more than three to five persons. *See In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999)*. In that case, the district court refused to appoint a twenty-member group, citing the "particular concern [which] arises when lead plaintiff status is sought by a 'group' of persons who were previously unaffiliated, each of whom have [*sic* ] suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation." *Id.* Likewise, in *In re Waste Mgmt., Inc. Sec. Litig., 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000)*, the court concluded that "the strictest approach, requiring at maximum a small

group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the [PSLRA] and serves the purpose behind its enactment[.]"

*Id. at 478 n.2*. Although the case law within the Fifth Circuit is sparse, there is some precedent **[*12]** in the Southern District of Texas following the "strictest approach," which requires that a group appointed as lead plaintiff should consist of no more than five individuals. *In re Waste Mgmt., Inc. Sec. Litig., 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000)* (Harmon, J.) ("[T]his Court finds that the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment."); *In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 442 (S.D. Tex. 2002)* (Harmon, J.) ("The SEC has indicated that generally a group of investors appointed as Lead Plaintiffs should be no larger than three to five persons."); *see also In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999)* ("[A] court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers . . . . ordinarily this should be no more than three to five persons, a number that will facilitate joint decisionmaking and also help to assure that each group member has a sufficiently large stake in the litigation.").

Additionally, some courts "permit a group Lead Plaintiff only where it involves a 'small number of members that share such an identity of characteristics, distinct from those **[*13]** of almost all other class members, that they can almost be seen as being the same person.'" *In re Landry's Seafood Rest., Inc., 2000 U.S. Dist. LEXIS 7005, 2000 WL 33999467 at *4 (S.D. Tex. Mar. 30, 2000)* (Harmon, J.) (quoting *Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1153-54 (N.D. Cal. 1999))*. Where unrelated members of a group move for appointment as lead plaintiff, courts consider: (1) the existence of a pre-litigation relationship among the members; (2) the group members' participation in the litigation so far; (3) plans for cooperation; (4) the sophistication of the group members; and (5) whether the group members chose outside counsel, and not vice versa. *See Marcus v. J.C. Penney Co., Inc., 2014 U.S. Dist. LEXIS 197529, 2014 WL 11394911 at *6 (E.D. Tex. 2014)*. The general rationale behind a small, cohesive group is to prevent "lawyer-driven" litigation with counsel recruiting members that have no

relationship to each other and less of a stake in the litigation. *Enron, 206 F.R.D. at 442*; *Baan, 186 F.R.D. at 224*. The movant must demonstrate the cohesiveness of its purported group. *Buettgen v. Harless, 263 F.R.D. 378, 381 (N.D. Tex. 2009)*; *Enron, 206 F.R.D. at 441*.

Applied Investor Group currently consists of twelve movants: three married couples and one unrelated individual. Moreover, Kristen Knight, one of the movants, moves as a representative for five different entities. The three couples and the one individual have no pre-litigation relationship with each other based on more than the losing investments at issue in this case. The movants have filed a Joint Declaration attesting **[*14]** that they agree to function as a cohesive group and provide a basic plan for working together in this litigation. (Instrument No. 20-1). For instance, the Joint Declaration states that the movants "have a dedicated conference call line for this case. We also have a group email list available to us in order to communicate with each other with or without counsel present." *Id.* at 4. However, Applied Investor Group admits that the movants "agreed to proceed together because we each suffered significant losses in our investments in Applied Optoelectronics, Inc. and would like the opportunity to participate in this action as Lead Plaintiffs." *Id.* at 5. Based on the evidence provided and the statements by counsel at the hearing, it appears that legal counsel for the group cobbled the movants together. *See Tsirekidze v. Syntax-Brillian Corp., 2008 U.S. Dist. LEXIS 118562, 2008 WL 942273 at *3 (D. Ariz. Apr. 7, 2008)* ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

Applied Investor Group argues that if the Court is inclined to appoint only one member of the Applied Investor Group as Lead Plaintiff, each member of the group stands ready and willing to serve as sole-Lead Plaintiff. (Instruments No. 23 at 7; No. 20-1 at 5). **[*15]** Applied Investor Group has specifically noted that member Stephen Rakower, who suffered a total financial loss of $522,573, and member Kristen and Gregory Knight, who individually suffered a total financial loss of approximately $420,000, both have a larger financial interest than any other competing movant. (Instrument No. 19 at 3).

Rougier asserts that since the individual members of the Applied Investor Group have moved together, the Court should not allow them to desert the remainder of the group and seek lead plaintiff appointment independently. (Instrument No. 18 at 17). Rougier

further contends that no individual member of Applied Investor Group moved for appointment as sole-lead plaintiff by the October 4, 2017 deadline. *Id.* at 18.

Both members of Applied Investor Group, Stephen Rakower and Kristen and Gregory Knight, each have greater financial losses than Rougier. However, within the Fifth Circuit, courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff. *See Marcus v. J.C. Penney Co., Inc., 2014 U.S. Dist. LEXIS 197529, 2014 WL 11394911 at *6 (E.D. Tex. Feb. 28, 2014)* ("Because Mr. Webb [a group member] did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group."); *Buettgen, 263 F.R.D. at 382* ("[T]he Buettgen **[*16]** Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate. Such a 'willingness to abandon the group only suggests how loosely it was put together.'" (quoting *Tsirekidze, 2008 U.S. Dist. LEXIS 118562, 2008 WL 942273 at *3))*. Neither Stephen Rakower nor the Knights has moved for appointment as sole-lead plaintiff. Therefore, the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group.

The PSLRA operates to ensure that plaintiffs control the litigation, not the lawyers. *Enron, 206 F.R.D. at 442*. The Applied Investor Group has failed to show that its group has a pre-litigation relationship based on more than the losing investments at issue in this case. Instead, counsel for the Applied Investor Group cobbled together a group of unrelated people and gave them a common name. While members of the group submitted a Joint Declaration asserting their desire to together litigate the case as lead plaintiffs, the Joint Declaration provides no mechanism for resolving disputes. Indeed, the movants assert that each stands ready and willing to abandon the group and serve as sole-lead **[*17]** plaintiff. The Court finds that Applied Investor Group is not the most adequate plaintiff.

Lawrence Rougier is the movant with the next highest financial interest. The Court finds that Rougier meets the typicality and adequate representation requirements of *Rule 23*. Rougier demonstrated he purchased shares of Optoelectronics during the class period, as did the other class members, which subsequently lost significant value as a result of Defendants' alleged conduct. Rougier asserts that he is not subject to any special defenses which Defendants might assert against

him nor has Applied Investor Group noted any. Finally, there is no evidence of any conflicts between Rougier and other class members. Rougier has established that he is the presumed most adequate plaintiff.

Accordingly the Court GRANTS Lawrence Rougier's Motion for Appointment as Lead Plaintiff. (Instrument No. 6).

**III**.

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4(a)(3)(B)(v)*. The Court should only interfere with a lead plaintiff's selection when necessary to "protect the interests of the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)*. Rougier seeks to appoint Levi & Korsinsky, **[*18]** LLP as lead counsel and Kendall Law Group, PLLC as liaison counsel. (Instrument No. 9 at 10). Rougier has submitted the resumes of the firms that attest to the firms' experience in the area of securities litigation. The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action.

**IV**.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Applied Investor Group's Motion for Appointment of Lead Plaintiff and Lead Counsel is **DENIED, (Instrument No. 5)**, and Lawrence Rougier's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel **(Instrument No. 8)** is **GRANTED**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 22nd day of January, 2018, at Houston, Texas.

/s/ Vanessa D. Gilmore

**VANESSA D. GILMORE**

**UNITED STATES DISTRICT JUDGE**

*End of Document*

 Positive
As of: October 30, 2018 2:07 PM Z

## *Benbow v. Aspen Tech., Inc.*

United States District Court for the Eastern District of Louisiana

April 11, 2003, Decided ; April 11, 2003, Filed, Entered

CIVIL ACTION NO. 02-2881 SECTION "A" (3)

**Reporter**

2003 U.S. Dist. LEXIS 6568 *; 2003 WL 1873910

MICHAEL S. BENBOW, ET AL VERSUS ASPEN
TECHNOLOGY, INC.

**Subsequent History:** Motion granted by, in part, Motion
denied by, in part, Dismissed by, in part *Benbow v.
Aspen Tech., Inc., 2003 U.S. Dist. LEXIS 10572 (E.D.
La., June 6, 2003)*

**Disposition:** **[*1]** Plaintiffs' motion to compel discovery
denied since all discovery and other proceedings stayed
pending resolution of defendant's motion to dismiss.
Defendant's request for fees and costs denied.

## Core Terms

discovery, plaintiffs', Securities, state law claim, motion
to dismiss, federal securities, proceedings, undue
prejudice, automatic stay, particularized, state court,
lawsuits, circumstances, automatic stay provision,
legislative history

## Case Summary

**Procedural Posture**

Plaintiffs, shareholders, sued defendant corporation in
state court under federal securities law and state law.
The corporation removed to federal court. It then moved
to dismiss. The shareholders, knowing their federal
securities claim was subject to the automatic stay of
discovery provided by *15 U.S.C.S. § 78u-4(b)(3)(B)*,
while the corporation's motion to dismiss was pending,
filed a motion to compel. The corporation moved for
fees and costs.

**Overview**

The shareholders argued that their state law claims
were not subject to the Private Securities Litigation
Reform Act of 1995 (PSLRA) provision for automatic
stay, and that discovery pertinent their state law claims

could proceed. But their claims, state and federal, arose
from the same factual circumstances, and therefore
required the same discovery generally. Thus, lifting the
mandatory stay as to the state law claims was
tantamount to lifting the stay as to the federal securities
claim. There was nothing in the legislative history or the
text of the PSLRA that suggested Congress intended to
exempt federal securities actions in which there
happened to be diversity of citizenship complementing
the shareholders' state law claims. The shareholders
failed to demonstrate that the outstanding discovery was
anything other than general discovery applicable to all of
their claims, as opposed to particularized discovery
purposefully aimed at eliminating a problem in proof
created by the automatic stay. Finally, the shareholders
had not demonstrated that they would suffer any undue
prejudice.

**Outcome**

The shareholders' motion to compel discovery was
since all discovery and other proceedings were pending
the resolution of the corporation's motion to dismiss.
The corporation's request for fees and costs was
denied.

## LexisNexis® Headnotes

Securities Law > Civil Liability
Considerations > Securities Litigation Reform &
Standards > General Overview

*HN1*[↧] **Civil Liability Considerations, Securities
Litigation Reform & Standards**

See *15 U.S.C.S. § 78u-4(b)(3)(B)*.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

**HN2[⬇]** **Civil Liability Considerations, Securities Litigation Reform & Standards**

The *15 U.S.C.S. § 78u-4(b)(3)(B)* automatic stay is clearly triggered in the circumstances, where there is (1) a private action, (2) which arises under Securities Exchange Act of 1934 ch. 2B, and (3) in which a motion to dismiss is pending.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

**HN3[⬇]** **Civil Liability Considerations, Securities Litigation Reform & Standards**

Under *15 U.S.C.S. § 78u-4(b)(3)(B)* discovery is stayed from the filing of the complaint until the court has determined the sufficiency of the plaintiff's pleading, unless the plaintiff can establish one of the exceptions to the stay provision.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

**HN4[⬇]** **Civil Liability Considerations, Securities Litigation Reform & Standards**

See *15 U.S.C.S. § 78u-4(b)(3)(D)*.

Civil Procedure > Special Proceedings > Class Actions > Voluntary Dismissals

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Stays of Discovery

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

**HN5[⬇]** **Class Actions, Voluntary Dismissals**

Reading *15 U.S.C.S. § 78u-4(b)(3)(B)* and *15 U.S.C.S.*

*§ 78u-4(b)(3)(D)* in pari materia compels the conclusion that the former, contemplates a stay of all discovery and other proceedings in the federal court during the pendency of a motion to dismiss. In the case of a class action, *§ 78u-4(b)(3)(D)* provides the contingency available for liberal use as necessary to reach out and enjoin parallel state court proceedings used to circumvent the former provision (i.e., *15 U.S.C.S. § 78u-4(b)(3)(B)*'s automatic stay).

Governments > Legislation > Interpretation

**HN6[⬇]** **Legislation, Interpretation**

It is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.

Civil Procedure > ... > Entry of Judgments > Stays of Judgments > Automatic Stays

Governments > Federal Government > US Congress

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > General Overview

**HN7[⬇]** **Stays of Judgments, Automatic Stays**

Nothing in the language of the Private Securities Litigation Reform Act of 1995 or its legislative history supports giving more weight to the delay inherent in the automatic stay provision because a case is unusually complex. It is well-known that securities actions vary in size from small lawsuits to large consolidations and that motions to dismiss might not be resolved for many months, or years, after the initial complaint is filed. Congress could have enacted a law that considered the amount of delay and the size of the litigation when determining whether a stay of discovery should be imposed. But Congress did not enact such a law and it is beyond the authority of a court to rewrite the statute in order to take such policy considerations into account.

Securities Law > Civil Liability Considerations > Securities Litigation Reform & Standards > Stays of Discovery

2003 U.S. Dist. LEXIS 6568, *1

Securities Law > Civil Liability
Considerations > Securities Litigation Reform &
Standards > General Overview

*HN8*[ ] **Securities Litigation Reform & Standards,
Stays of Discovery**

"Undue prejudice" is defined as improper or unfair
treatment amounting to something less than irreparable
harm. Prejudice caused by the delay inherent in the
discovery stay of the Private Securities Litigation
Reform Act of 1995 cannot be "undue" prejudice
because it is prejudice which is neither improper nor
unfair. Undue prejudice has been found where the
defendants might be shielded from liability in the
absence of the requested discovery. Even if exceptional
circumstances exist, the movant must also show that
particularized discovery is necessary to remedy a
problem. General requests to open all discovery do not
satisfy this burden.

**Counsel:** For MICHAEL S BENBOW, JAMES B
BASSICH, ROBERT W PHILLPOTT, KENNETH P
CALLOWAY, plaintiffs: Eugene G. Taggart, Terrence
George O'Brien, Melvin I. Schwartzman, Taggart,
Morton, Ogden, Staub, Rougelot, & O'Brien, LLC, New
Orleans, LA.

For ASPEN TECHNOLOGY INC, defendant: Glenn
Michael Farnet, Kean, Miller, Hawthorne, D'Armond,
McCowan & Jarman, LLP, Baton Rouge, LA.

For ASPEN TECHNOLOGY INC, defendant: Julie
Parelman Silbert, Kean, Miller, Hawthorne, D'Armond,
McCowan & Jarman, LLP, New Orleans, LA.

For ASPEN TECHNOLOGY INC, defendant: Justin J.
Daniels, Skadden, Arps, Slate, Meagher & Flom, LLP,
Boston, MA.

**Judges:** DANIEL E. KNOWLES, III, UNITED STATES
MAGISTRATE JUDGE.

**Opinion by:** DANIEL E. KNOWLES, III

# Opinion

## MEMORANDUM RULING

Plaintiffs' Motion to Compel Discovery (Rec. Doc. No.
23) came on for hearing before the undersigned on
Wednesday, April 9, 2003. Defendant Aspen
Technology, Inc. ("Aspen") filed formal opposition to

which the defendant filed a formal reply. Having [*2]
considered the memoranda, the argument of counsel
and the applicable law, the Court denies the plaintiffs'
motion to compel for the following reasons.

## BACKGROUND

Initially, plaintiffs filed suit in state court against Aspen
pursuant to Federal securities law and state law,
claiming that it lured the plaintiffs into selling it a
computer software company by making fraudulent
misrepresentations that its securities would be
immediately registered by the Securities and Exchange
Commission ("SEC"), and thus, immediately marketable.
Aspen removed the matter to this Court on the basis of
federal question and diversity jurisdiction. The
defendant filed a motion for more definite statement, [1]

[*3] the Court entered a scheduling order, [2]
and plaintiffs filed a Supplemental and Amended
Complaint. [3]

Thereafter on December 20, 2002, Aspen filed a Motion
to Dismiss Plaintiffs' Supplemental and Amended
Complaint premised upon lack of standing, failure to
sufficiently allege scienter, and failure to sufficiently
allege detrimental reliance, *inter alia*. [4]
Aspen's motion to dismiss is presently under
submission pending determination by the district judge.

## CONTENTIONS OF THE PARTIES

--------------------------

[1] *See* Defendant's Motion for More Definite Statement filed
October 17, 2002 [Rec. Doc. No. 4]; Order dated November
20, 2002 (granting Aspen's Motion for More Definite Statement
[Rec. Doc. No. 10].

[2] *See* Scheduling Order dated November 19, 2002 [Rec. Doc.
No. 19].

[3] *See* Plaintiffs' Amended Complaint filed November 27, 2002
[Rec. Doc. No. 12].

[4] *See* Aspen's Motion and Memorandum in Support of Motion
to Dismiss and Aspen's Reply filed January 31, 2003 (*citing*
the *Private Securities Litigation Reform Act of 1995*
("PSLRA"), Pub. L. No. 104-67, 109 Stat. 7 and *Nathenson v.
Zonagen, Inc., 267 F.3d 400, 406 (5th Cir. 2001)* for the
proposition that Congress passed the PSLRA for the purpose
of preventing the abuse of federal securities laws by private
plaintiffs) [Rec. Doc. Nos. 16 and 22].

2003 U.S. Dist. LEXIS 6568, *3

Plaintiffs recognize that their claim pursuant to Federal securities laws is subject to the automatic stay of discovery provided by *15 U.S.C. § 78u-4(b)(3)(B)* of the PSLRA while Aspen's Motion to Dismiss remains pending. However, plaintiffs argue that their state law claims of fraudulent/negligent misrepresentation and breach of contract are not subject to the PSLRA's provision for automatic stay, and **[*4]** that discovery pertinent their state law claims may proceed. Plaintiffs cite the *Lapicola v. Alternative Dual Fuels, Inc., 2002 U.S. Dist. LEXIS 5941, 2002 WL 531545 (N. D. Tex April 5, 2001)* (Kaplan, M.J.) and argue that they have already responded to the motion to dismiss, the matter is under submission, and thus, discovery relative to their state law claims cannot be used to defeat Aspen's motion to dismiss. Moreover, plaintiffs submit that their requests are particularized and responses are necessary to prevent undue prejudice. In support of their claim of undue prejudice, plaintiffs refer to the pretrial scheduling order which sets an expert report deadline of April 23, 2003, a discovery deadline of June 23, 2003, and an August 4, 2003 trial date.

For its part, Aspen highlights that plaintiffs' state law claims parrot their federal counterparts inasmuch as the federal and state claims arise out of precisely the same conduct. Aspen submits that the plaintiffs' lawsuit is the type of baseless litigation that Congress sought to curtail by enacting the PSLRA and that one of the legislation's procedural barriers is the "Stay of Discovery Provision." The defendant contends that this is not an **[*5]** exceptional case involving particularized discovery necessary to preserve evidence or to prevent undue prejudice, and thus, its motion to dismiss triggers imposition of the stay all discovery. *See 15 U.S.C. § 77z-1(b)(1)and 78u-4(b)(3)(B)*. Aspen notes that the discovery requests propounded on December 19, 2001, prior to the filing of plaintiff's motion to dismiss, are hardly particularized, but rather contemplate the plaintiffs' state and federal claims, which arise out of a common set of facts. Aspen's position is that the plaintiffs' motion to compel discovery with regard to their state law claims is tantamount to an "end run" around the PSLRA's automatic stay provision.

## ANALYSIS

The relevant section of the PSLRA provides that:

> *HN1*[⤒] In any private litigation arising under this chapter, *all discovery* and *other proceedings* shall be stayed during the pendency of any motion to

dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent *undue prejudice* to that party.

*15 U.S.C. § 78u-4(b)(3)(B)* (emphasis added). *HN2*[⤒]
The **[*6]** *§ 78u-4(b)(3)(B)* automatic stay is clearly triggered in the circumstances, where there is (1) a private action, (2) which arises under Chapter 2B of the 1934 Securities Act, and (3) in which a motion to dismiss is pending. All three requirements of the statute are met in this case, and thus, the filing of Aspen's motion to dismiss on December 20, 2002 triggered the imposition of *§ 78u-4(b)(3)(B)*'s automatic stay.

The sole issue before the undersigned is whether *discovery at issue regarding the plaintiffs' state law claims* are stayed. The Court observes that in addition to staying *all discovery,* the quoted language of the provision clearly contemplates a stay of *other proceedings.*

In *Newby v. Enron Corporation, 188 F. Supp. 2d 684 (S.D. Tex. 2002),* Judge Rosenthal observed that:

> *HN3*[⤒] Discovery is stayed from the filing of the complaint *until* the court has determined the sufficiency of the plaintiff's pleading, unless the plaintiff can establish one of the exceptions. *See* S. Rep. 104-94, at 14 (1995), *reprinted in* 1995 U.S.S.C.A.N. 679, 693 (discovery should "be permitted in securities class actions only after the court has sustained the **[*7]** legal sufficiency of the complaint"); *In re Carnegie Int'l Corp. Secs. Litig., 107 F. Supp. 2d 676, 681 (D. Md. 2000)* ("Until the opportunity to test the sufficiency of the complaint has passed, the congressional intent in clear -- no discovery should commence.").

*Id. at 709* (emphasis in original).

Indeed, the *Securities Litigation Uniform Standard Act of 1998* provides, in part that:

> *HN4*[⤒] [A] court may stay discovery proceedings in any private action in State court, as is necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in action subject to a stay of discovery pursuant to this paragraph.

*15 U.S.C. § 78u-4(b)(3)(D)*. The legislative history of the above-quoted section indicates that Congress enacted *§ 78u-4(b)(3)(D)* as a tool to be used as necessary to stay proceedings/discovery in *state court* used to circumvent

the automatic stay provisions of the PSLRA. House Report 105-640 explains that:

*[Section 78u-4(b)(3)(D)]* amends Section 27(b) of the Securities Act of 1933 to include a provision to prevent plaintiffs from circumventing the stay of discovery under the **[*8]** *Reform Act* by using State court discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, to protect or effectuate its judgments …. Because circumvention of the stay of discovery of the *Reform Act* is a key abuse that this litigation is designed to prevent, the Committee intends that the courts use this provision liberally, so that the preservation of the State court jurisdiction of limited individual securities fraud claims does not become a loophole through which the trial bar can engage in discovery not subject to the stay of the *Reform Act*.

H. R. Rep. 105-640. *HN5*[⬆] Reading *§ 78u-4(b)(3)(B)* and *§ 78u-4(b)(3)(D)* *in pari materia* compels the conclusion that the former, contemplates a stay of *all* discovery and *other proceedings* in the federal court during the pendency of a motion to dismiss. In the case of a class action, *§ 78u-4(b)(3)(D)* provides the contingency available for liberal use as necessary to reach out and enjoin parallel state court proceedings used to circumvent the former provision (*i.e.,* *§ 78u-4(b)(3)(B)*'s automatic stay).

The Court is not persuaded by the argument that the automatic stay operates unfairly **[*9]** in this instance because it effectively penalizes the plaintiffs for alleging a federal securities law claim in conjunction with their state law claims. It is true that had plaintiffs chosen to forego filing a federal securities law claim and to proceed solely with their state law claims, the PSLRA, by its own terms, would not apply and there would be no automatic stay of discovery in this case. However, plaintiffs chose to invoke the Act and claim a violation of federal securities laws, and therefore, plaintiffs necessarily subject themselves to the dictates of the PSLRA.

This Court finds nothing in the text of the statute or its legislative history, that suggests that Congress intended to except federal securities actions in which there happens to be both diversity of citizenship and pendent state law claims. To the contrary, "legislative history indicates that the purpose of the PSLRA is to shield parties from baseless lawsuits and prevent plaintiffs from filing frivolous lawsuits with the aim of conducting

discovery with the hope of finding a sustainable claim." [5]

**[*10]** The Court now turns to plaintiffs' argument the automatic stay provision has no application in this relatively uncomplicated lawsuit involving individual private litigation. Essentially plaintiffs contend that because this is not a consolidation of uniquely massive proportion or complex class action litigation, the PSLRA's stay provision, the purpose of which was diffuse the abuses attendant to complex federal securities litigation of class action proportion, is not applicable to the instant private litigation. Although class action litigation was one of Congress' concerns in enacting the PSLRA, the text does not support plaintiffs' interpretation. For instance, subsection 21D(a) (*i.e.,* *15 U.S.C. § 78u-4(a)*) of the PSLRA is specifically limited to class actions. However, subsection 21D(b) contains no such limitation. *HN6*[⬆] "It is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another," [6]

and therefore, plaintiffs' suggestion that the automatic stay provision of subsection 21D(b) should not apply here because this case does not involve either complex or class **[*11]** action litigation must be rejected. Moreover, the observations of the district judge in *In re Initial Pub. Offering Sec. Litig., 236 F. Supp. 2d 286 (S. D. N. Y. 2002)* are on point, to wit:

*HN7*[⬆] Nothing in the language of the PSLRA or its legislative history supports giving more weight to the delay inherent in the automatic provision because the case is unusually complex. It is well-known that securities actions vary in size from small lawsuits to large consolidations and that motions to dismiss might not be resolved for many months, or years, after the initial complaint is filed. Congress could have enacted a law that considered the amount of delay and the size of the litigation when determining whether a stay of discovery should be imposed. But Congress did not enact such a law and it is beyond the authority of this Court to rewrite

---

[5] *In re CFS-Related Securities Fraud Litigation, 213 F.R.D. 435, 2003 U.S. Dist. LEXIS 2644, 2003 WL 546680 (N. D. Ok. 2003).*

[6] *See Peavy v. WFAA-TV, Inc., 221 F.3d 158, 169 (5th Cir. 2000) (quoting BFP v. Resolution Trust Corporation, 511 U.S. 531, 537, 128 L. Ed. 2d 556, 114 S. Ct. 1757 (1994))* (internal quotation marks omitted).

2003 U.S. Dist. LEXIS 6568, *11

the statute in order to take such policy considerations into account. *See Artuz v. Bennett, 531 U.S. 4, 10, 148 L. Ed. 2d 213, 121 S. Ct. 361 (2000)* ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them.").

[*12]   *In re: Initial Public Offering, 236 F. Supp. 2d at 287.*

Although plaintiffs characterize their discovery requests as particularized, a review of the record reveals that the discovery was propounded prior to the filing of the defendant's Motion to Dismiss, and thus, constitutes general discovery addressing all of the plaintiffs' claims against Aspen (*i.e.,* state and federal claims). Plaintiffs' motion does not list any specific discovery items or categories of discovery that are in danger of being destroyed or that must be produced in order to prevent undue prejudice. Review of the plaintiffs' Supplemental and Amending Complaint reveals that the facts underlying the plaintiffs' state law claims similarly constitute the *res gestae* of the federal securities' [*13] law violation alleged against Aspen. Currently, the district judge is in the midst of determining the sufficiency of the core allegations of securities fraud in this case, *inter alia,* In the absence of an exception to the automatic stay provision, all discovery and other proceedings are stayed as a matter of law until the Court determines whether the plaintiffs' pleadings pass PSLRA muster. The purpose of the PSLRA is, in part, to prevent the defendant from incurring any discovery costs until there has been a judicial determination of the sufficiency of the pleadings. [7]

Addressing the exceptions to *§ 78u-4(b)(3)(B)'s* automatic stay, the court in *Sarantakis v. Frank Dominic Gruttadauria, 2002 U.S. Dist. LEXIS 14349, 2002 WL 1803750 (N. D. Ill. August 5, 2002)* aptly characterized "undue prejudice" and "particularized discovery," as follows:

   *HN8*[ ] "Undue prejudice" has been defined as "'improper or unfair treatment' amounting to something less than irreparable [*14] harm.'" *Vacold LLC v. Cerami, 2001 U.S. Dist. LEXIS 1589, 2001 WL 167704, at * 6 (S. D. N. Y. February 16, 2001)* (*quoting Medical Imaging Ctrs. of Am., Inc. v.*

*Lichtenstein, 917 F. Supp. 717, 720 (S. D. Cal. 1996))*. "Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair." *In re CFS, 179 F. Supp. 2d 1260, 1265 (N. D. Okla. 2001)*. Undue prejudice has been found "where defendants might be shielded from liability in the absence of the requested discovery." *Vacold, 2001 U.S. Dist. LEXIS 1589, [WL], at * 6; see In re CFS, 179 F. Supp. 2d at 1266-67; see also Global Intellicom, Inc. v. Thomson Kernaghan & Co., 1999 U.S. Dist. LEXIS 5439, 99 CIV 342, 1999 WL 223158, at * 1-2 (S. D. N. Y. April 16, 1999)* (allowing the plaintiff corporation to obtain discovery related to the defendant's efforts to take over the plaintiff, because those actions, if successful, would moot the plaintiff's lawsuit).

   Even if exceptional circumstances exist, the movant must also show that particularized discovery is necessary to remedy a problem. General requests to open all discovery do [*15] not satisfy this burden.

*Sarantakis, 2002 U.S. Dist. LEXIS 14349, [WL] at * 1-2.* [8]

The plaintiffs in this case rely primarily on several district court cases in which the automatic stay was lifted, to wit: *Lapicola v. Alternative Dual Fuels, Inc., 2002 U.S. Dist. LEXIS 5941, [WL] (N. D. Tex.), Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162 (S. D. N. Y. 2001),* and *Fazio v. Lehman Bros., Inc., 2002 U.S. Dist. Lexis 15157 (N. D. Ohio May 16, 2002)*. The Court has reviewed these cases and find them unpersuasive.

Specifically, *Lapicola* is inapposite both factually and *sub judice*. The issue presented [*16] in *Lapicola* was the applicability of *§ 78u-4(b)(3)(D)* to private individual lawsuits brought in state court. Moreover, unlike the case at bar, because the plaintiffs' state law claims pending in state court did not mirror the federal securities' claim pending in federal court, the court refused to stay proceedings in the parallel state court

---

[7] *See, e.g., In Re CFS, 2003 U.S. Dist. LEXIS 2644, [WL] at * 11.*

---

[8] *See also In re: CFS-Related Securities Fraud Litigation, 179 F. Supp. 2d at 1265* (Simple delay inherent in the PSLRA's discovery stay "is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation, including the plaintiff's need to collect and preserve evidence.").

proceeding. *Lapicola, 2002 U.S. Dist. LEXIS 5941, [WL]* at * 1. [9]

Assuming *arguendo* that the rationale underpinning the holding of the *Tobias Holdings* case stands on firm ground, the decision does not support plaintiffs' argument under the circumstances of this particular case. *Tobias Holdings* stands for the proposition **[*17]** that *§ 78u-4(b)(3)(B)*'s stay provision does not apply to *distinct* state law claims with their own jurisdictional basis (diversity jurisdiction). *Tobias Holdings, 177 F. Supp. 2d at 166-67*. It is apparent that, in large part, the court's decision turned upon the fact that the plaintiff's state law claims were distinct from and not merely state analogs to the plaintiff's alleged federal securities violations.

The *Fazio* case appears to be in conflict with then overwhelming majority view. Moreover, the decision ignores the clear and precise language of the statute, which requires stay of all discovery and other proceedings pending the determination of the sufficiency of the plaintiff's pleadings, permitting only particularized discovery, and then, only after a showing of exceptional circumstances.

**CONCLUSION**

It is clear that plaintiffs' claims, state and federal, arise from precisely the same factual circumstances, and therefore require the same discovery generally. Thus, lifting the mandatory stay as to the closely related if not substantially similar State claims would be tantamount to lifting the stay as to the federal securities claim. There is nothing **[*18]** in either the legislative history or the text of the PSLRA that suggests Congress intended to exempt federal securities actions in which there happens to be diversity of citizenship complementing plaintiffs' state law claims. Plaintiffs have failed to demonstrate that the outstanding discovery is anything other than general discovery applicable to all of their claims against Aspen, as opposed to particularized discovery purposefully aimed at eliminating a problem in proof created by the automatic stay. Finally, plaintiffs

have not articulated any prejudice, aside from that which is inherent in the fact that the PSLRA imposes a stay in this case (*i.e.,* simple delay). In the absence of exceptional circumstances, plaintiff's have failed demonstrate that they will suffer any *undue* prejudice.

Accordingly and for all of the foregoing reasons, (1) plaintiffs' motion to compel discovery is DENIED since all discovery and other proceedings are STAYED pending the resolution of the defendant's Motion to Dismiss and (2) defendant's request for fees and costs is DENIED.

**IT IS SO ORDERED.**

New Orleans, Louisiana this 11 day of April, 2003.

**DANIEL E. KNOWLES, III**

**UNITED STATES  [*19]   MAGISTRATE JUDGE**

---

*End of Document*

---

[9] *See also Newby v. Enron Corporation, 2002 U.S. Dist. LEXIS 486 [WL]* * 2-3 (S. D. Tex. May 1, 2002) (rejecting the rationale of the court in *Lapicola,* and finding the Eighth Circuit's decision in *In re Bankamerica Corporation Securities Litigation, 263 F.3d 795.802-03 (8th Cir. 2001)* to be the better reasoned approach).

Positive
As of: November 6, 2018 7:57 PM Z

## *Blake Partners, Inc. v. Orbcomm, Inc.*

United States District Court for the District of New Jersey

June 2, 2008, Decided; June 2, 2008, Filed

Civ. Action No. 07-4517 (WHW), Civ. Action No. 07-4590 (WHW)

**Reporter**

2008 U.S. Dist. LEXIS 43061 *; Fed. Sec. L. Rep. (CCH) P94,740

BLAKE PARTNERS, INC., Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. ORBCOMM, INC., JEROME B. EISENBERG and ROBERT G. COSTANTINI, Defendants. LORRAINE DOWDEN, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. ORBCOMM, INC., JEROME B. EISENBERG, and ROBERT G. CONSTANTINI, JOHN DOES (1-100), and ABC, INC. (1-100), Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

lead plaintiff, appointment, common stock, Securities, shares, per share, consolidate, class member, purported, lead counsel, adequacy, courts, movant, offering, class action, typicality, expending, largest, registration statement, financial interest, million shares, Declaration, requirements, liaison, notice

**Counsel:** **[*1]** For THE WEICHEL GROUP, (2:07-cv-04517-WHW-CCC), Movant: PETER S. PEARLMAN, LEAD ATTORNEY, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLP, SADDLE BROOK, NJ.

For BLAKE PARTNERS, INC., Individually and On Behalf of All Others Similarly Situated, (2:07-cv-04517-WHW-CCC), Plaintiff: JEFFREY W. HERRMANN, LEAD ATTORNEY, PETER S. PEARLMAN, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLC, SADDLEBROOK, NJ.

For LORRAINE DOWDEN, (2:07-cv-04517-WHW-CCC), Consol Plaintiff: EVAN J. SMITH, LEAD ATTORNEY, BRODSKY & SMITH, LLC, CHERRY HILL, NJ.

For ORBCOMM, INC., (2:07-cv-04517-WHW-CCC), Defendant: CARL GREENBERG, LEAD ATTORNEY, BUDD LARNER, PC, SHORT HILLS, NJ; SAMUEL KADET, LEAD ATTORNEY, SKADDEN, ARPS, SLATE, MEAGHER & FLOM. LLP, NEW YORK, NY; WILLIAM

F. CLARKE, JR., LEAD ATTORNEY, SKADDEN, ARPS, SLATE, MEAGHER & FLOM. LLP, NEW YORK, NJ.

For JEROME B. EISENBERG, ROBERT G. COSTANTINI, (2:07-cv-04517-WHW-CCC), Defendants: SAMUEL KADET, LEAD ATTORNEY, SKADDEN, ARPS, SLATE, MEAGHER & FLOM. LLP, NEW YORK, NY; WILLIAM F. CLARKE, JR., LEAD ATTORNEY, SKADDEN, ARPS, SLATE, MEAGHER & FLOM. LLP, NEW YORK, NJ.

For THE WEICHEL GROUP, (2:07-cv-04590-WHW-CCC), Movant: PETER S. PEARLMAN, COHN, LIFLAND, PEARLMAN, HERRMANN **[*2]** & KNOPF, LLP, SADDLE BROOK, NJ.

For LORRAINE DOWDEN, Individually and On Behalf of All Others similarly Situated, (2:07-cv-04590-WHW-CCC), Plaintiff: EVAN J. SMITH, LEAD ATTORNEY, BRODSKY & SMITH, LLC, CHERRY HILL, NJ.

**Judges:** William H. Walls, United States Senior District Judge.

**Opinion by:** William H. Walls

## Opinion

### *Walls, Senior District Judge*

Erwin Weichel, David Peterson, and William Hunt (the "Weichel Group") move for (1) consolidation of *Blake Partners, Inc. v. Orbcomm, Inc.,* Civ. Action No. 07-4517, and *Dowden v. Obcomm, Inc.,* Civ. Action No. 07-4590, (2) appointment as Lead Plaintiff under *section 27* of the Securities Act of 1933 (the "Securities Act"), and (3) approval of their selection of the law firms of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Abraham Fruchter & Twersky LLP ("Abraham Fruchter") to serve as lead counsel and the law firm of Cohn Lifland Pearlman Herrmann &

Knopf LLP ("Cohn Lifland") to serve as liaison counsel. Pursuant to _Federal Rule of Civil Procedure 78_, the Court decides this motion without oral argument. The Court grants Weichel Group's motion in its entirety.

### FACTS AND PROCEDURAL HISTORY

On September 20, 2007, Plaintiff Blake Partners, Inc. ("Blake Partners") **[*3]** filed a putative class action "on behalf of a class of all persons other than defendants who purchased the common stock of [Orbcomm, Inc. ("Orbcomm")] pursuant and/or traceable to [Orbcomm's] initial public offering ("IPO") on or about November 3, 2006 through August 14, 2007," (Compl. (Civ. Action No. 07-4517) ("_Blake Partners_ Compl.") P 1), alleging violations of _section 11_ of the Securities Act, (_id._ PP 28-37), and _§ 15_ of the Securities Act, (_id._ PP 38-41). Blake Partners named as Defendants Orbcomm - "a satellite-based data communication company that operates a two-way wireless data messaging system optimized for narrowband data communication worldwide," (_id._ P 7) - Jerome B. Eisenberg - "Chief Executive Officer, President and Director of [Orbcomm]," (_id._ P 8(a)) - and Robert G. Costantini - "Chief Financial Officer and Vice President of [Orbcomm]," (_id._ P 8(b)) (collectively, the "Defendants"). Blake Partners states that "[o]n or about October 30, 2006, [Orbcomm] filed with the SEC a Form S-1/A Registration Statement for the IPO," (_id._ P 18), and that "[o]n or about November 3, 2006, the Prospectus with respect to the IPO . . . became effective and, including the exercise of **[*4]** the over-allotment, more than 9.2 million shares of [Orbcomm's] common stock were sold to the public, thereby raising more than $ 101 million," (_id._ P 19). According to Blake Partners, however, "[t]he Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation," (_id._ P 19). Blake Partners alleges that certain specific statements contained within the Registration Statement, (_see id._ PP 20-22), "were each inaccurate statements of material fact because they failed to disclose that demand for [Orbcomm's] products was weakening as certain end-users were delaying purchases and international sales were being negatively impacted by delays in modifying regional applications," (_id._ P 23). Moreover, Blake Partners states that on May 25, 2007, Orbcomm held a secondary offering of common, selling "7 million shares of [Orbcomm] common stock for $ 11.50 per share," but asserts that the secondary offering registration statement also "did not disclose the facts that were

omitted from the IPO filings." (_Id._ P 25.) Blake **[*5]** Partners claims that "on August 14, 2007, [Orbcomm] issued a press release announcing its financial results for the second quarter of 2007," wherein and thereafter Orbcomm "revealed that it was experiencing weakening demand for its products and services and was not adding subscribers at the rates it had anticipated." (_Id._ P 26.)

On September 25, 2007, Plaintiff Lorraine Dowden filed a putative class action "on behalf of purchasers of the common stock of [Orbcomm], who purchased or otherwise acquired [Orbcomm's] common stock pursuant or traceable to [Orbcomm's] November 3, 2006 [IPO] . . . through August 14, 2007," (Compl. (Civ. Action No. 07-4590) ("_Dowden_ Compl.") P 1), alleging violations of _§ 11_ of the Securities Act, (_id._ PP 41-50), _§ 12(a)(2)_ of the Securities Act, (_id._ PP 51-59), and _§ 15_ of the Securities Act, (_id._ PP 60-64). The named Defendants consist of Orbcomm, Eisenberg, and Constantini. (_Id._ PP 12-15.) According to Dowden, "[o]n November 3, 2006, [Orbcomm] conducted its IPO," upon which it "filed a Registration Statement and Prospectus . . . with the SEC." (_Id._ P 18.) Quoting the same allegedly inaccurate Registration Statement statements found in the Blake Partners Complaint, **[*6]** (_id._ PP 19-21; _see Blake Partners_ Compl. PP 20-22), Dowden asserts:

> The statements . . . were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that demand for [Orbcomm's] products was softening; (2) that certain end-users were delaying purchases; (3) that international sales were being negatively impacted due to delays in developing and modifying regional applications; and (4) that [Orbcomm's] definition of billable subscriber communicators would have to be revised to reflect a more accurate gauge of when communicators were activated and billing.

(_Dowden_ Compl. P 22.) Dowden also notes Orbcomm's secondary equity offering on May 25, 2007, during which "[Orbcomm] and certain selling stockholders [including Eisenberg, Eisenberg's son, and Constantini] sold an additional 7 million shares of [Orbcomm's] stock to investors at a price of $ 11.50 per share, for gross proceeds of over $ 80 million." (_Id._ P 23.) Dowden then quotes from Orbcomm's August 14, 2007 press release entitled "ORBCOMM Reports Record Revenues and Narrows Net Loss in Second Quarter 2007," (_id._ P 24), and its August 14, 2007 earnings conference call with investors **[*7]** and financial analysts, (_id._ P 25), after

which Orbcomm's stock allegedly "declined $ 3.32 per share, or 29.7 percent, to close on August 14, 2007 at $ 7.86 per share, on unusually heavy trading volume," (*id.* P 26).

The Weichel Group filed its motion for consolidation, appointment as lead plaintiff and for approval of selection of lead and liaison counsel on November 19, 2007. [1] Defendants filed a response to this motion on December 6, 2007, and on December 17, 2007, the Weichel Group filed a reply.

## DISCUSSION

### I. Consolidation

Consolidation is appropriate where there are actions involving common questions of law or fact. *Fed. R. Civ. P. 42(a)*; *see Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990)*, cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 250 (1990). Where there are multiple class actions filed under the Private Securities Litigation Reform Act of 1995 [2]

("PSLRA"), a court shall not appoint lead plaintiff until after it decides the motion for [*8] consolidation. The PSLRA provides that:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this subchapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (I) [regarding appointment of lead plaintiff] until *after* the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this

subparagraph.

*15 U.S.C. § 77z-1(a)(3)(B)(ii)* (emphasis added).

Both actions, *Blake Partners* Compl. and the *Dowden* Compl., seek relief against the same defendants, Orbcomm, Eisenberg, and Constantini, for violations of sections 11, 12(a)(2) and 15 of the Securities Act. *15 U.S.C. §§ 77k, 77l(a)(2)* and *77o*. Both actions allege that plaintiffs purchased Orbcomm securities during the same time [*9] period, November 3, 3006 through August 14, 2007. Both actions present the same or similar theories for recovery, namely, that plaintiff investors purchased Orbcomm securities based on Defendants' materially false and misleading public statements and concealment of material information. The Court notes that Defendants have not opposed Weichel Group's motion to consolidate but opposes Weichel Group's appointment as lead plaintiff and selection of lead counsel. Finding that these actions arise from the same facts, the Court grants Weichel Group's motion to consolidate.

### II. Appointment of Lead Plaintiff

Weichel Group has timely filed its motion for appointment as lead plaintiff under *15 U.S.C. § 77z-1(a)(3)(A)* and *(B)*. Blake Partners published the first notice regarding the pendency of these Actions on Business Wire, a national, business-oriented newswire service on September 20, 2007 in compliance with *15 U.S.C. § 77z-1(a)(3)(A)(I)*, which requires that a plaintiff who filed first to publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. "Not later than 60 days after the date on which [*10] the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *15 U.S.C. § 77z-1(a)(3)(A)(i)(II)*. Weichel moved for appointment as Lead Plaintiff within the 60-day period.

After Copper Rock withdrew its motion for appointment as lead plaintiff on November 29, 2007, no other potential class member has moved or opposed Weichel Group's motion for appointment as lead plaintiff. Only Defendants oppose this motion.

### A. Standing

As a threshold matter, Weichel Group argues that

---

[1] Additionally, on November 19, 2007, Class member Copper Rock Capital Partners, LLC ("Copper Rock") filed a motion to consolidate the actions, be appointed as lead plaintiff, and approve its choice of counsel, but withdrew that motion on November 29, 2007.

[2] The PSLRA governs "each private action arising under this subchapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *15 U.S.C. § 77z-1(a)(1)*.

Defendants do not have standing to oppose their motion for appointment of lead plaintiff. The Third Circuit noted, in dicta, a split of authority among the district courts as to whether a defendant has standing to challenge the adequacy of a lead plaintiff and his chosen counsel. *In re Merck & Co. Sec. Litig., 432 F.3d 261, 267 (3d Cir. 2005).* [3]

Despite the split, the Third Circuit explained that the weight of authority denying standing made "sense because defendants will rarely have the best interests of the class at heart." *In re Merck Sec. Litig., 432 F.3d at 267* (citing *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)* (allowing only "a member of the purported plaintiff **[*11]** class" to rebut the lead plaintiff presumptions)).

While several district courts in the District of New Jersey have held that defendants lack standing to challenge a plaintiff's motion for appointment as lead plaintiff, one district court in the District of New Jersey considered the issues raised by defendants sua sponte while denying standing for the defendants. *Fields v. Biomatrix, Inc., 198 F.R.D. 451 (D.N.J. 2000)* (citing *Takeda v. Turbodyne Technologies, Inc., 67 F. Supp. 2d 1129, 1138 (C.D. Cal.1999)* (denying standing to defendants **[*12]** but noting that "[n]evertheless, the court may sua sponte raise and address certain of the concerns addressed in defendants' statement"); *see also In re The First Union Corp. Securities Litigation, 157 F. Supp. 2d 638, 2000 U.S. Dist. LEXIS 2267, *5 (W.D.N.C. 2000)* ("Regardless of whether Defendants formally have standing (in which case this Court is obligated to consider their arguments), nothing in the Reform Act prevents this Court from considering the arguments raised and authorities cited by Defendants")).

Accordingly, the Court agrees with Weichel Group that Defendants lack standing to formally oppose their motion for appointment as lead counsel. However, the Court will consider the issues raised by Defendants for the Court's benefit with the appropriate skepticism that

---

[3] *Compare King v. Livent, Inc., 36 F. Supp. 2d 187, 190-91 (S.D.N.Y. 1999)* (granting the defendant standing to challenge a motion to appoint a lead plaintiff and lead counsel), *with Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 127 F. Supp. 2d 572, 575 n.2 (D.N.J. 2001)* (stating that the majority of courts have denied defendants the right to challenge "the adequacy of lead plaintiffs and their chosen counsel" and citing cases), *Gluck v. CellStar Corp., 976 F. Supp. 542, 550 (N.D. Tex. 1997)* (deciding that defendants could not challenge the appointment of a lead plaintiff), and *Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60 (D. Mass. 1996)* (same).

Defendants do not have the best interest of the members of the class at heart.

## B. Standard of Review for Appointment of Lead Plaintiff

The PSLRA has established standards and procedures for selecting lead plaintiffs in securities fraud class actions. It instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing **[*13]** the interests of class members." *15 U.S.C. § 77z-1(a)(3)(B)(i)*. The PSLRA then creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.. [4]

*15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)*.

This presumption may be "rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)*. The Third **[*14]** Circuit has explained that in reviewing rebuttal evidence, courts should only consider whether anyone can prove that the presumptive lead will not fairly and adequately represent the interests of the class and not whether another movant is preferable. *In re Cendant Corp. Litig., 264 F.3d 201, 268 (3d Cir. 2001)*.

## C. Analysis

### 1. Member Who Filed Complaint or Moved for Appointment

---

[4] *Federal Rule of Civil Procedure 23(a)* sets forth the following prerequisites for a class action: (1) numerosity, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) fair and adequate representation of the class by the representative parties. *Fed. R. Civ. P. 23(a)*.

Weichel Group satisfies the first requirement for establishing presumptive adequacy under *15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)* ("most adequate plaintiff . . . is the person or group of persons that has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)"). Weichel Group is one of two purported class member who has moved for appointment as Lead Plaintiff within the time frame required by *15 U.S.C. § 77z-1(a)(3)(A)(i)*. The other purported class member, Copper Rock, has withdrawn its motion.

## 2. Largest Financial Interest

The Court cannot determine that the Weichel Group "has the largest financial interest in the relief sought by the class." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).* The Third Circuit has directed the district courts to consider, "among other things: (1) the number **[*15]** of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant Corp. Litig., 264 F.3d at 263.* The class period is between November 3, 3006 and August 14, 2007. On November 3, 3006, Orbcomm sold 9.2 million shares of common stock to the public and raised more than $ 101 million in its initial public offering. (*Blake Partners* Compl. at P 18.) On May 25, 2007, Orbcomm sold an additional 7 million shares of common stock in its second equity offering at about $ 11.50 per share and raised about $ 80 million. (*Dowden* Compl. at P 23.) On August 14, 2007, Orbcomm issued a press release, revealing that it was experiencing weakening demand for its products and services and was not adding subscribers at the rates it had anticipated. (*Blake Partners* Compl. at P 26.) As a result of this announcement, the price of Orbcomm common stock declined from about $ 11.18 per share to $ 7.86 per share on extremely heavy trading volume. (*Id.* at P 27.)

Blake Partners allege that it had purchased 2,000 shares of Orbcomm securities on November 3, 2006 at $ **[*16]** 11.00 per share. It had sold 2,000 shares of Orbcomm securities on December 4, 2006 at $ 7.57. (*See* Attachment A to *Blake Partners* Compl.) Blake Partners had lost about $ 6,860 during the class period. Dowden did not allege how many shares she had purchased nor at what price.

Weichel Group states that they "collectively purchased 6,000 shares of ORBCOMM common stock and 30

ORBCOMM call options, expending $ 111,520 during the relevant time period." Weichel's Brief in Support of Motion for Appointment As Lead Counsel, at 6-7 (Dkt. 11-2, filed Nov. 19, 2007) ("Weichel's Br."). Erwin Weichel purchased 3,000 shares of Orbcomm common stock on June 28, 2007 at $ 16.86 per share, expending about $ 50,580. *See* Exhibit B to the Declaration of Peter S. Pearlman ("Pearlman Decl."). David Peterson purchased 1,000 shares of Orbcomm common stock on July 3, 2007 at $ 16.00 per share and purchased 30 call options at $ 3.90 per option, expending about $ 16,117. *Id.* William Hunt purchased 2,000 shares of Orbcomm common stock on July 2, 2007 at $ 16.62 per share, expending about $ 33,240. The total expenditure is about $ 99,937. The Court cannot account for the difference of $ 11,583 between Weichel Group's **[*17]** claim that it expended $ 111,520 and the evidence provided by the Pearlman declaration that the individual members expended $ 99,937.

Another reason why this Court is skeptical towards Weichel Group's claim that they satisfy the second requirement of having "the largest financial interest in the relief sought by the class" is that their loss is minuscule compared with the loss suffered by Copper Rock. [5]

 Submitting under penalty of perjury, Copper Rock declared that it "purchased 1,997,627 shares of ORBCOMM common stock and suffered losses of $ 5,994,130." *See* DePalma Decl., at Exs. A and C. At most, the Weichel suffered a loss of about $ 49,037. [6]

---

[5] Although Copper Rock had withdrawn its motion for appointment as lead plaintiff, the Court finds it beneficial to review everything in the record. Jeffrey Gates, a vice president at Copper Rock, provided in a sworn statement and declared under penalty of perjury all transactions for the purchase of Orbcomm common stock that is the subject of this action. *See* Exhibit A to the Declaration of Joseph J. DePalma ("DePalma's Decl.").

[6] There is no indication that Erwin Weichel sold his shares. David Peterson sold 1,000 shares of Orbcomm common stock on August 10, 2007 at $ 11.75 **[*18]** per share, suffering a loss of $ 4,250. William Hunt sold 2,000 shares of Orbcomm on September 24, 2007 at $ 7.83, suffering a loss of $ 17,580. Assuming that Erwin Weichel sold his shares at the same price that William Hunt sold his shares (which is the lowest price presented by the group) and that David Peterson was entitled to claim total loss on his call options, Erwin Weichel would have suffered a loss of $ 27,090. David Peterson would have suffered an additional loss of $ 117. The total estimated loss for the group would be $ 49,037.

A third reason why this Court is skeptical is that Weichel Group's investment is minuscule. Orbcomm issued about 16.2 million shares of common stock between its initial public offering and its secondary offering. Weichel Group only purchased about 6,000 shares.

That Weichel Group exaggerated its expenditure, that its losses pale in comparison to another purported class member, that its investment is minuscule, the Court does not determine that the Weichel Group "has the largest financial interest in the relief sought by the class." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb)*.


**3. Federal Rule of Civil Procedure 23**

The PSLRA also **[*19]** requires that the Lead Plaintiff "otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*" in order to gain the presumption of being the "most adequate plaintiff." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc)*. *Rule 23(a)* provides that a party may serve as a class representative only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*.

Only two prerequisites for class certification, typicality and adequacy, under *Rule 23(a)* directly address whether Weichel Group is the "most adequate plaintiff." Weichel Group must make a prima facie showing that they satisfy the typicality and adequacy requirements of *Rule 23*. See *Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir. 1992)*.

The typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct **[*20]** by defendants, and (3) their claims are based on the same legal issues. *Weiss v. York Hosp., 745 F.2d 786, 809 & n.36 (3d Cir. 1984)*. Where the claims asserted by the movant are based on the same legal theories and arise from the "same event or practice or course of conduct that gives rise to the claims of the class members," the typicality requirement is satisfied. *Grasty v. Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC, 828 F.2d 123, 130 (3d Cir. 1987)*.

The "fairly and adequately protect the interests of the class" prong is modified by *Section 21D of the PSLRA* which directs the Court to limit its inquiry to the existence of any conflict with the interests of the other members of the class. This prong is satisfied when both the class representative and its attorney are capable of satisfying their obligations, and neither has interests conflicting with those of other Class members. *See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. The Third Circuit explained that when assessing the adequacy of representation, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] **[*21]** has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig., 264 F.3d at 265* (quoting *Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988)*).

Further, the Third Circuit instructs courts to consider two additional factors in making its initial adequacy assessment. First, the court should consider "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Id. at 265-66*. The second consideration is only applicable when the movant is a group, rather than an individual. Specifically, "[i]f the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id. at 266*. Courts should also consider whether a movant group is too large to adequately represent the class. *Id.* Finally, the Third Circuit recognizes that **[*22]** there may be other reasons to justify a court's decision that the adequacy or typicality requirement has not been satisfied. *See id. at 268*.

The Court agrees with Weichel Group that at this stage of appointing lead plaintiff pursuant to PSLRA, the Weichel Group has demonstrated typicality and adequacy.

Weichel Group purchased shares of Orbcomm common stock and lost money because of Orbcomm's alleged misrepresentations and concealment of material information. Weichel Group's claims are based on the

same set of facts and legal theories as absent class members.

The three individuals of the Weichel Group have represented that they will "endeavor to continue to provide fair and adequate representation and to continue to work together and with counsel to obtain the largest recovery for the class consistent with good faith and sound judgment." (*See* Joint Declaration to Weichel Group's Reply Brief.) Although there is no requirement in the PSLRA that a group be related, the court could disqualify a movant if "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff" leads [*23] the court to conclude that the group "will not fairly and adequately represent the interests of the class." *In re Cendant Corp. Litig., 264 F.3d at 266.* "The twin goals of the PSLRA are to 'curb frivolous, lawyer-driven litigation, while preserving the investors' ability to recover on meritorious claims.'" *Winer Family Trust v. Queen, 503 F.3d 319, 326 (3d Cir. 2007)* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd., --- U.S. ----, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007)*).

Here, there is a logical relationship between the three individuals in the Weichel Group that does not necessarily implicate that the group was formed by their lawyers. "As a result [of a lack of guidance by the PSLRA in the selection the lead plaintiff], the courts have wrestled with the interpretation of the lead plaintiff provisions in light of the legislative goal to remedy lawyer-driven lawsuits." Ann. Manual Complex Lit. § 31.31 (4th ed.) In their joint declaration, Weichel Group stated that David Peterson is a financial planner and broker and that Erwin Weichel and William Hunt are Peterson's clients. (*See* Joint Declaration to Weichel Group's Reply Brief.) That David Peterson has experience and knowledge with financial [*24] investments help Weichel Group's case that they have skills and expertise to monitor a case involving securities fraud.

Despite the Court's skepticism towards Weichel Group's claim that it suffered the "largest financial interest in the relief sought by the class," Weichel Group has provided enough support that entitles them the presumption of "most adequate plaintiff." Noting no opposition by any member of the purported plaintiff class, the Court grants Weichel Group's motion for the appointment as lead counsel. *15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)* ("The presumption described in subclause (I) [regarding the "most adequate plaintiff"] may be rebutted *only* upon

proof by a member of the purported plaintiff class") (emphasis added).

In response to Defendants' objection, the Court notes that this determination will not preclude Defendants from objecting to the issue of lead plaintiff at the class certification stage. *See In re Lucent Techs., Inc., Sec. Litig., 194 F.R.D. 137, 150 (D.N.J. 2000).*

### III. Approval of Lead Counsel

Under the PSLRA "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 77z-1(a)(3)(B)(v).* [*25] This language makes clear that the lead plaintiff's "power to 'select and retain' lead counsel belongs, at least in the first instance, to the lead plaintiff, and the court's role is confined to deciding whether to 'approv[e]' that choice." *In re Cendant Corp. Litig., 264 F.3d at 274.* Both the Conference Committee Report and the Senate Report indicate that the court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734; S. Rep. No. 104-98 at 11-12 (1995) reprinted in 1995 U.S.C.C.A.N. 679, 690.

Weichel Group selected the law firms of Coughlin Stoia and Abraham Fruchter as lead counsel. They also selected Cohn Lifland as liaison counsel. These firms have provided resumes that evidence substantial experience in the prosecution of shareholder and securities class actions. (See Pearlman Decl., Exs. C-E.) Noting no opposition by any purported class plaintiffs, the Court grants Weichel Group's motion for selection of Coughlin Stoia and Abraham Fruchter as Lead Counsel and Cohn Lifland as liaison counsel.

Similarly, [*26] in response to Defendants' objection, the Court notes that this determination will not preclude Defendants from objecting to the issue of the appointment of class counsel under *Rule 23(g) of the Federal Rules of Civil Procedure* at the class certification stage.

### CONCLUSION

Accordingly, Weichel Group's motion for consolidation, appointment as lead plaintiff and selection of lead and liaison counsel is granted.

June 2nd, 2008

**/s/ William H. Walls**

United States Senior District Judge

---

🔴 Warning
As of: October 30, 2018 2:07 PM Z

# *In re BP p.l.c. Sec. Litig.*

United States District Court for the Southern District of Texas, Houston Division

March 4, 2015, Decided; March 4, 2015, Filed

MDL No. 10-md-2185; Civil Action No. 4:10-cv-4214

**Reporter**

2015 U.S. Dist. LEXIS 27138 *; 2015 WL 1781727

IN RE: BP p.l.c. SECURITIES LITIGATION;IN RE: BP p.l.c. ERISA LITIGATION

**Subsequent History:  [*1]** As Amended March 6, 2015.

Motion granted by, Dismissed by, in part *In re BP P.L.C. Sec. Litig., 2015 U.S. Dist. LEXIS 147819 (S.D. Tex., Oct. 30, 2015)*

Reversed by, Remanded by *Whitley v. BP, P.L.C., 2016 U.S. App. LEXIS 17501 (5th Cir. Tex., Sept. 26, 2016)*

**Prior History:** *Whitley v. BP, P.L.C., 575 Fed. Appx. 341, 2014 U.S. App. LEXIS 13450 (5th Cir. Tex., 2014)*

## Core Terms

fiduciary, Plaintiffs', insider, disclosure, stock fund, allegations, stock, participants, disclose, prudent, Plans, plan participant, amend, documents, fiduciary duty, plausibly, securities, omission, futile, options, leave to amend, securities law, monitoring, Deepwater, misrepresentation, imprudent, loyalty, cases, duties, alternatives

## Case Summary

### Overview

HOLDINGS: [1]-ERISA plan participants' proposed amendment to their complaint for breach of fiduciary duty under *29 U.S.C.S. § 1104(a)* was futile to the extent that it was based on alleged nondisclosures. A valid nondisclosure claim could only be based on a specific violation of *29 U.S.C.S. §§ 1021-1031*, and the participants did not plausibly state such a claim; [2]-The participants' claim for breach of the duty of prudence was not plausible to the extent that it was based on allegations that defendants knew or should have known that the employer's stock was overvalued based on

public information; [3]-The participants were allowed to amend their prudence claims based on insider information, as it could not be said that no prudent fiduciary would have concluded that removing the employer stock fund as an investment option or disclosing the information would do more good than harm.

### Outcome

Motion for leave to file amended complaint denied in part and granted in part.

## LexisNexis® Headnotes

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

Evidence > Inferences & Presumptions > Presumptions > Particular Presumptions

*HN1*[⬇]  **Amendment of Pleadings, Leave of Court**

*Fed. R. Civ. P. 15(a)* declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. Accordingly, district courts in the Fifth Circuit must entertain a presumption in favor of granting parties leave to amend. Leave to amend may be denied, however, in the case of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN2*[↧] **Amendment of Pleadings, Leave of Court**

Futility is shown by amendments which advance a claim or defense that is legally insufficient on its face, or fail to include allegations to cure defects in the original pleading. In other words, plaintiffs will be denied leave to amend only if the amended complaint would fail to state a claim upon which relief could be granted.

> Civil
> Procedure > ... > Pleadings > Complaints > Requirements for Complaint

*HN3*[↧] **Complaints, Requirements for Complaint**

A complaint fails to state a claim if it does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. The plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully. A pleading need not contain detailed factual allegations, but must set forth more than labels and conclusions or a formulaic recitation of the elements of a cause of action.

> Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN4*[↧] **Amendment of Pleadings, Leave of Court**

In deciding whether to grant leave to amend, ultimately, the court must decide whether the plaintiffs' proposed amended pleading states at least one valid claim when viewed in the light most favorable to the plaintiffs. In making this determination, the court will accept the complaint's well-pleaded facts as true, but will not imbue legal conclusions with the same assumption of truth. Nor will the court strain to find inferences favorable to the plaintiffs or accept conclusory allegations or unwarranted deductions. The court will confine its analysis to the contents of the proposed amended pleading; documents provided by the parties will be disregarded, unless they are referenced in the proposed amended pleading and are central to the plaintiffs' claims. Importantly, the court is not concerned, at this juncture, with the merits of the plaintiffs' claims. It need only decide whether those claims are adequately pled and legally cognizable. If the plaintiffs meet this standard—if their claims are not obviously, facially futile—leave to amend will be granted.

> Business & Corporate
> Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Loyalty

*HN5*[↧] **Fiduciary Responsibilities, Duty of Loyalty**

Employee Retirement Income Security Act of 1974 (ERISA) fiduciaries, in making fiduciary communications, are forbidden from lying to plan participants. Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in § 404(a)(1) (*29 U.S.C.S. § 1104(a)(1)*) of ERISA. An ERISA fiduciary may not knowingly present false information regarding a plan investment option to plan participants. There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock.

> Business & Corporate
> Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Loyalty

> Business & Corporate
> Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

*HN6*[↧] **Fiduciary Responsibilities, Duty of Loyalty**

See *29 U.S.C.S. § 1104(a)(1)(A)-(B)*.

> Business & Corporate
> Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Loyalty

> Business & Corporate
> Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

*HN7*[↧] **Fiduciary Responsibilities, Duty of Loyalty**

Section 404(a)(1)(A) (*29 U.S.C.S. § 1104(a)(1)(A)* of the Employee Retirement Income Security Act of 1974 (ERISA) is known as the "duty of loyalty." Section 404(a)(1)(B) (*§ 1104(a)(1)(B)*) of ERISA is known as the "duty of prudence."

> Pensions & Benefits Law > ... > Fiduciary Responsibilities > Plan

2015 U.S. Dist. LEXIS 27138, *1

Administration > Diversification Rule

Pensions & Benefits Law > Employee Benefit
Plans > Pension Benefit Plans > Eligible Individual
Account Plans

### HN8[⬇] Plan Administration, Diversification Rule

Section 404(a)(1)(C) (*29 U.S.C.S. § 1104(a)(1)(C)*) of
the Employee Retirement Income Security Act of 1974
contains a duty to diversify. Pursuant to § 404(a)(2) (*§
1104 (a)(2)*), the duty to diversify does not apply in the
case of Eligible Individual Account Plans.

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Loyalty

Pensions & Benefits Law > ... > Fiduciary
Responsibilities > Plan Administration > Adherence
to Plan

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Prudence

### HN9[⬇] Fiduciary Responsibilities, Duty of Loyalty

Section 404(a)(1)(D) (*29 U.S.C.S. § 1104(a)(1)(D)*) of
the Employee Retirement Income Security Act of 1974
instructs fiduciaries to discharge their duties in
accordance with the documents and instruments
governing the plan insofar as such documents and
instruments are consistent with the provisions of this
subchapter and subchapter III of this chapter. Case law
acknowledges that this requirement is subordinate to
the overriding duties of loyalty and prudence.

Governments > Legislation > Interpretation

Pensions & Benefits
Law > ... > Fiduciaries > Fiduciary
Responsibilities > General Overview

Pensions & Benefits Law > ERISA > Disclosure,
Notice & Reporting > General Overview

Pensions & Benefits Law > ERISA > Plan
Amendments

### HN10[⬇] Legislation, Interpretation

Section 404(a) (*29 U.S.C.S. § 1104(a)*) of the Employee
Retirement Income Security Act of 1974 (ERISA)
contains no explicit duty of disclosure, and previous
ERISA plaintiffs' efforts to imbue the statute with such a
duty have generally been unsuccessful at the Fifth
Circuit. For example, the U.S. Court of Appeals for the
Fifth Circuit has rejected an argument that § 404(a)
encompasses a duty to disclose information not
specifically included in the detailed disclosure and
reporting requirements of *ERISA §§ 101*-111 (*29
U.S.C.S. §§ 1021-1031*). The Fifth Circuit relied, in part,
on the general principle of statutory construction that
more specific provisions in a statute govern over those
generally worded. Similarly, the Fifth Circuit has found
that ERISA fiduciaries are under no obligation to
disclose prospective plan changes because ERISA
itself, which includes broad disclosure duties on the part
of an employer-administrator, omits mention of any duty
on the part of an employer-administrator to disclose that
it is considering amending the plan. There appear to be
exceptions to this general rule, although the exceptions
are more theoretical than defined in the case law.

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Loyalty

Pensions & Benefits Law > ERISA > Disclosure,
Notice & Reporting > General Overview

### HN11[⬇] Fiduciary Responsibilities, Duty of Loyalty

A non-enumerated disclosure requirement based on §
404 (*29 U.S.C.S. § 1104*) of the Employee Retirement
Income Security Act of 1974 (ERISA) may exist if a plan
participant makes specific inquiry, or if there is some
other kind of "special circumstance." The U.S. Court of
Appeals for the Fifth Circuit has explicitly refused to
judicially engraft onto ERISA's duty of loyalty a broad
duty to disclose that would apply regardless of special
circumstance or specific inquiry. The phrase "special
circumstances" is necessarily amorphous, but may be
limited to circumstances that threaten an "extreme
impact" on the plan as a whole.

Pensions & Benefits Law > ERISA > Disclosure,
Notice & Reporting > General Overview

Pensions & Benefits
Law > ... > Fiduciaries > Fiduciary

Responsibilities > General Overview

*HN12*[↓]  **ERISA, Disclosure, Notice & Reporting**

The U.S. Court of Appeals for the Fifth Circuit noted in Kujanek v. Houston Poly Bag I, Ltd. that trust principles impose a duty of disclosure upon an Employee Retirement Income Security Act of 1974 (ERISA) fiduciary when there are material facts affecting the interest of the beneficiary which the fiduciary knows the beneficiary does not know but needs to know for his protection. It is not clear why the Fifth Circuit relied upon undefined "trust principles" in Kujanek as the foundation for defendant's "duty of disclosure," as the non-disclosure in that case would appear to be covered by ERISA's disclosure and reporting scheme. Perhaps the court meant to signal that any violation of ERISA's disclosure and reporting scheme would also constitute a breach of fiduciary duty under § 404(a) (*29 U.S.C.S. § 1104(a)*). This would be supported by language in Ehlmann v. Kaiser Foundation Health Plan of Texas, which acknowledges that the disclosure obligations found in the common law of trusts—the baseline law onto which ERISA was grafted—were deliberately altered by Congress when it created the detailed disclosure and reporting scheme in §§ 101-111 (*29 U.S.C.S. §§ 1021-1031*). In enacting the specific disclosure provisions of ERISA, Congress has made the modifications it deems appropriate. Thus, the Fifth Circuit will not add a specific disclosure requirement to those already enumerated.

Pensions & Benefits Law > ERISA > Disclosure, Notice & Reporting > General Overview

Pensions & Benefits Law > ... > Fiduciaries > Fiduciary Responsibilities > General Overview

*HN13*[↓]  **ERISA, Disclosure, Notice & Reporting**

Although Ehlmann v. Kaiser Foundation Health Plan of Texas and Kopp v. Klein contemplate that there could be a fiduciary duty of disclosure in the presence of "specific inquiry" or "special circumstance," and although "trust principles" formed the basis of a fiduciary duty of disclosure in Kujanek v. Houston Poly Bag I, Ltd., it appears that the opening for disclosure claims based in § 404 (*29 U.S.C.S. § 1104*) of the Employee Retirement Income Security Act of 1974 (ERISA) in the Fifth Circuit is narrow indeed. Specifically, it would seem that the duty of disclosure is confined to disclosure of

plan-related information—that is, information outlined in ERISA's detailed disclosure and reporting scheme—as opposed to information specific to a particular investment option.

Pensions & Benefits Law > ... > Fiduciaries > Fiduciary Responsibilities > General Overview

Pensions & Benefits Law > ERISA > Disclosure, Notice & Reporting > General Overview

*HN14*[↓]  **Fiduciaries, Fiduciary Responsibilities**

The U.S. Court of Appeals for the Second Circuit has declined to create a duty under the Employee Retirement Income Security Act of 1974 (ERISA) to provide participants with nonpublic information pertaining to specific investment options. The U.S. Court of Appeals for the Eleventh Circuit has agreed with the Second Circuit's decision because an alternative rule would convert fiduciaries into investment advisors. While the U.S. Court of Appeals for the Fifth Circuit has not been so direct as the Second and Eleventh Circuits, it has declared, in an ERISA case involving employer stock, that no general duty to disclose non-public information exists under ERISA or under Fifth Circuit precedents. And Kujanek v. Houston Poly Bag I, Ltd., which recognized a duty of disclosure based on *ERISA § 404(a)* (*29 U.S.C.S. § 1104(a)*), involved the withholding of plan-related documents likely covered by ERISA's detailed disclosure and reporting scheme. Thus, in the absence of a specific violation of §§ 101-111 (*29 U.S.C.S. §§ 1021-1031*), plaintiffs cannot allege a valid disclosure claim.

Pensions & Benefits Law > ... > Disclosure, Notice & Reporting > Required Reports > Annual Reports

*HN15*[↓]  **Required Reports, Annual Reports**

Section 103 (*29 U.S.C.S. § 1023*) of the Employee Retirement Income Security Act of 1974 mandates the components of a plan's annual report. Section 103(b)(3)(A) provides that a statement of the assets and liabilities of the plan aggregated by categories and valued at their current value must be attached to the annual report. *29 U.S.C.S. § 1023(b)(3)(A)*. This disclosure obligation inures to the plan administrator only. *29 U.S.C.S. § 1024(b)* requires the plan

administrator to provide summary plan descriptions and annual reports to plan participants according to a specific schedule; *§ 1023(a)(2)* requires third parties to timely transmit to the administrator information necessary to enable the administrator to comply with the requirements of the subchapter.

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Prudence

*HN16*[⤓]   **Fiduciary   Responsibilities,   Duty   of Prudence**

Where a stock is publicly traded, allegations that an Employee Retirement Income Security Act of 1974 (ERISA) fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule. ERISA fiduciaries, who could reasonably see little hope of outperforming the market based solely on their analysis of publicly available information, may, as a general matter, prudently rely on the market price. The U.S. Supreme Court has not fully closed the door on prudence claims based on public information; it has allowed that a "special circumstance" could affect the reliability of the market price in a way that would make reliance on the market's valuation imprudent. But it has given no hint whatsoever of what such a "special circumstance" might be.

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Prudence

*HN17*[⤓]   **Fiduciary   Responsibilities,   Duty   of Prudence**

Employee Retirement Income Security Act of 1974 fiduciaries may, as a general matter, prudently rely on the market price as an unbiased assessment of the security's value in light of all public information. This suggests that employer stock, widely traded in a public marketplace, is an imprudent investment option only if the market is inefficient for some reason.

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Prudence

*HN18*[⤓]   **Fiduciary   Responsibilities,   Duty   of Prudence**

There are two hurdles that must be cleared before "insider information" prudence claims under the Employee Retirement Income Security Act of 1974 are plausible. First, the plaintiffs must plausibly allege that the defendants had knowledge of the relevant insider information which would indicate that the stock price is distorted. Second, the plaintiffs must plausibly allege that the defendants had a viable, prudent alternative course of action available to them.

Business & Corporate
Compliance > ... > Fiduciaries > Fiduciary
Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Pension Benefit
Plans > Eligible Individual Account
Plans > Employee Stock Ownership Plans

Evidence > Inferences &
Presumptions > Presumptions > Particular
Presumptions

*HN19*[⤓]   **Fiduciary   Responsibilities,   Duty   of Prudence**

For purposes of a breach of fiduciary duty claim under the Employee Retirement Income Security Act of 1974 (ERISA), the U.S. Supreme Court in Fifth Third Bancorp v. Dudenhoeffer explicitly rejected the notion that employer stock is presumptively prudent except in cases of imminent financial disaster. The Supreme Court does not believe that the Moench presumption is an appropriate way to weed out meritless lawsuits or to provide the requisite "balancing." The proposed presumption makes it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious, unless the employer is in very bad economic circumstances. Such a rule does not readily divide the plausible sheep from the meritless goats. That important task can be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations. The law does not create a special presumption of prudence for employee stock ownership plan fiduciaries. Dudenhoeffer has no effect, however, on the common sense requirement that ERISA fiduciaries cannot be liable for failing to prevent investment in employer securities which they did not know, and had no reason to know, were overvalued.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Securities Law > ... > Implied Private Rights of Action > Elements of Proof > General Overview

*HN20*[ ] **Fiduciary Responsibilities, Duty of Prudence**

If alleged misrepresentations and omissions, scienter, and resulting decline in share price are sufficient to state a claim that the defendants violated their duties under § 10(b) of the Securities Exchange Act of 1934, the alleged misrepresentations and omissions, scienter, and resulting decline in share price are sufficient to state a claim that the defendants violated their more stringent duty of care under the Employee Retirement Income Security Act of 1974.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

*HN21*[ ] **Fiduciary Responsibilities, Duty of Prudence**

For purposes of an Employee Retirement Income Security Act of 1974 (ERISA) breach of fiduciary duty claim, at the same time the U.S. Supreme Court took away the defense-friendly Moench presumption, it articulated a "new" defense which could, theoretically, be deployed at the pleading stage. Specifically, the Supreme Court directed lower courts to carefully screen ERISA complaints involving employer stock funds to determine whether they plausibly allege that the defendant "acted imprudently." In cases based on insider information, the plaintiff has not stated a claim unless he plausibly alleges an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Pension Benefit Plans > Eligible Individual Account Plans > Employee Stock Ownership Plans

Securities Law > ... > Securities Exchange Act of 1934 Actions > Insider Trading > General Overview

*HN22*[ ] **Fiduciary Responsibilities, Duty of Prudence**

The Employee Retirement Income Security Act of 1974's duty of prudence cannot require an employee stock ownership plan fiduciary to perform an action— such as divesting the fund's holding of the employer's stock on the basis of insider information—that would violate the securities laws.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

*HN23*[ ] **Fiduciary Responsibilities, Duty of Prudence**

For purposes of an Employee Retirement Income Security Act of 1974 breach of fiduciary duty claim, the U.S. District Court for the Southern District of Texas, Houston Division, cannot accept that the difficult question posed by Fifth Third Bancorp v. Dudenhoeffer—i.e., what would or could a prudent fiduciary in these circumstances have done—is answerable by purely cosmetic efforts.

Pensions & Benefits Law > ERISA > Disclosure, Notice & Reporting > General Overview

*HN24*[ ] **ERISA, Disclosure, Notice & Reporting**

The Employee Retirement Income Security Act of 1974 requires fiduciaries to inform plan participants of any material modification in the terms of the plan. *29 U.S.C.S. §§ 1022(a)*, *1024(b)(1)*.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Require

ments for Complaint

<u>HN25</u>[⬚] **Motions to Dismiss, Failure to State Claim**

Although Twombly and Iqbal require plaintiffs to present more than labels and conclusions or a formulaic recitation of the elements, dismissing an action on the basis of the pleadings alone remains a draconian measure, viewed with disfavor and rarely granted.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

<u>HN26</u>[⬚] **Motions to Dismiss, Failure to State Claim**

A district court, resolving a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, may consider documents referred to in the plaintiff's complaint and central to her claim.

**Counsel:** For Robert Ludlow, Individually and on behalf of all others similarly situated, Plaintiff (4:10md2185): Jordanna G Thigpen, LEAD ATTORNEY, Cotchett Pitre McCarthy, Burlingame, CA USA; Richard Warren Mithoff, Jr, LEAD ATTORNEY, Mithoff Law Firm, Houston, TX USA; Aron K Liang, Cotchett Pitre and Carthy, Burlingame, CA USA; Bryan M. Payne, PRO HAC VICE, Cotchett Pitre et al, Burlingame, CA USA; Hester H. Cheng, PRO HAC VICE, Garcia & Gurney, ALC, Pleasanton, CA USA; James P Roy, Domengeaux Wright et al, Lafayette, LA USA; Joseph W Cotchett, Cotchett Pitre et al, Burlingame, CA USA; Mark C Molumphy, Cotchett Pitre et al, Burlingame, CA USA; Matthew K. Edling, Cotchett, Pitre & McCarthy, Burlingame, CA USA; Nancy L Fineman, Cotchett Pitre et al, Burlingame, CA USA; Victor S Elias, Cotchett Pitre & McCarthy LLP, Burlingame, CA USA.

For Alan R Higgs, Individually and on behalf of all other similarly situated, Plaintiff (4:10md2185): Ana M Cabassa, Zwerling Schachter & Zwerling LLP, New York, NY USA; Anthony Chu, Capretz & Associates, Newport Beach, CA USA; Don K Ledgard, Capretz & Associates, Newport Beach, CA USA; James T Capretz, Attorney at Law, Newport Beach, CA [*2] USA; Robert S Schachter, Zwerling Schachter & Zwerling, New York, NY USA; Sona R Shah, Zwerling Schachter & Zwerling LLP, New York, NY USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Thomas P Dinapoli, Comptroller of the State of New York, Plaintiff (4:10md2185): Autry W Ross, Yetter

Coleman, Houston, TX USA; Daniel S Sommers, Cohen Milstein et al, Washington, DC USA; Eric R Nowak, Harrell and Nowak, New Orleans, LA USA; Jason M Leviton, Berman DeValerio, Boston, MA USA; Jeffrey C Block, Berman DeValerio, Boston, MA USA; Joseph Alan Callier, Callier & Garza, Houston, TX USA; Joseph J Tabacco, Jr, Berman DeValerio, San Francisco, CA USA; Joshua S Devore, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Joshua M Kolsky, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Julie Reiser, Cohen Milstein Sellers & Toll PLLC, Washington, Dc; Matthew Keith Handley, PRO HAC VICE, Cohen Milstein et al, Washington, DC USA; Matthew D Pearson, Berman DeValerio, San Franicsco, CA USA; R Paul Yetter, Yetter Coleman LLP, Houston, TX USA; Richard Warren Mithoff, Jr, Mithoff Law Firm, Houston, TX USA; Steven J Toll, Cohen Milstein et al, Washington, DC USA; Glen DeValerio, Berman DeValerio et al, Boston, MA USA; Kristin J. Moody, Berman DeValerio, Boston, MA USA; Mark Delaney, Berman DeValerio, One Liberty Sq, Boston, MA USA.

For Johnson Investment Counsel Inc, [*3] Individually and on behalf of all others similarly situated, Plaintiff (4:10md2185): Dianne M Nast, Nast Law LLC, Philadelphia, PA USA; Richard J Arsenault, Neblett Beard et al, Alexandria, LA USA; Stanley M Chesley, Waite Schneider Bayless Chesley Co LPA, Cincinnati, OH USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Wilbert B Markovits, Markovits, Stock & DeMarco LLC, Cincinnati, OH USA.

For Thomas Yuen, Individually and on behalf of all others similarly situated, Plaintiff (4:10md2185): Deborah R Gross, Law Offices of Bernard M Gross PC, Philadelphia, PA USA; Kirk B Hulett, Hulett Harper Stewart LLP, San Diego, CA USA; Robert P Frutkin, Law Offices of Bernard M Gross PC, Philadelphia, PA USA; Sarah P Weber, Hulett Harper Stewart LLP, San Diego, CA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Sunmi Ahn, individually and on behalf of all other similarly [*4] situated, Plaintiff (4:10md2185): Deborah R Gross, Law Offices of Bernard M Gross PC, Philadelphia, PA USA; Kirk B Hulett, Hulett Harper Stewart LLP, San Diego, CA USA; Robert P Frutkin, Law Offices of Bernard M Gross PC, Philadelphia, PA USA; Sarah P Weber, Hulett Harper Stewart LLP, San Diego, CA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For John P Miles, Plaintiff (4:10md2185): Albert M

Myers, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Gregory Anthony Gelderman, III, Bernstein, Litowitz, Berger & Grossmann, LLP (New Orleans), New Orleans, LA USA; Lewis Kahn, Kahn Swick & Foti LLC, Madisonville, LA USA; Michael A. Swick, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Paul S Balanon, Ogletree Deakins, New Orleans, LA USA; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Louisiana Municipal Police Employees' Retirement System, Plaintiff (4:10md2185): Albert M Myers, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Gregory Anthony Gelderman, [*5] III, Bernstein, Litowitz, Berger & Grossmann, LLP (New Orleans), New Orleans, LA USA; John Alden Meade, Bernstein Litowitz Berger & Grossmann LLP, New Orleans, LA USA; Lewis Kahn, Kahn Swick & Foti LLC, Madisonville, LA USA; Michael A. Swick, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Paul S Balanon, Ogletree Deakins, New Orleans, LA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For City of New Orleans Employee's Retirement System, Plaintiff (4:10md2185): Albert M Myers, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Gregory Anthony Gelderman, III, Bernstein, Litowitz, Berger & Grossmann, LLP (New Orleans), New Orleans, LA USA; Lewis Kahn, Kahn Swick & Foti LLC, Madisonville, LA USA; Michael A. Swick, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Paul S Balanon, Ogletree Deakins, New Orleans, LA USA; Robert B Weintraub, Wolf Haldenstein et al, New York, NY USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Frances O. Goldman, Plaintiff [*6] (4:10md2185): Albert M Myers, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Gregory Anthony Gelderman, III, Bernstein, Litowitz, Berger & Grossmann, LLP (New Orleans), New Orleans, LA USA; Lewis Kahn, Kahn Swick & Foti LLC, Madisonville, LA USA; Michael A. Swick, Kahn Swick & Foti, LLC (Madisonville), Madisonville, LA USA; Paul S Balanon, Ogletree Deakins, New Orleans, LA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA.

For Lore Greenfield, Individually and on behalf of all other similarly situated, Plaintiff (4:10md2185): W Mark

Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Alameda County Employees Retirement Association, Plaintiff (4:10md2185): Emma Gilmore, Pomerantz Grossman Hufford Dahlstrom Gross, New York, NY USA; Jeffrey M. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA; Jeremy A Lieberman, Pomerantz LLP, New York, NY USA; Marc I Gross, Pomerantz Grossman Hufford Dahlstrom & Gross, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Mitchell J. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA; Sammy Ford, IV, Abraham [*7] Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA; Serena E. Pollack, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA.

Eugene Mcclurg, Individually and on behalf of all others similarly situated, Plaintiff (4:10md2185), Pro se.

For Victor Skomedal, Derivatively on Behalf of BP PLC, Plaintiff (4:10md2185): Bryan L Clobes, Cafferty Faucher LLP, Philadelphia, PA USA; Jarrell Edward Godfrey, Jr., Godfrey Firm, PLC, New Orleans, LA USA; Jessica A. DeNisi, Milling Benson Woodward, LLP, New Orleans, LA USA; Vincent J. Esades, Heins, Mills & Olson, PLC, Minneapolis, MN USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Ellen Meriwether, Cafferty Faucher LLP; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Cody A Nedved, Derivatively on Behalf of BP PLC, Plaintiff (4:10md2185): Lionel Howard Sutton, III, Lionel Sutton, III, Attorney at Law, New Orleans, LA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For The Oklahoma Police Pension & Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff (4:10md2185): Eric R Nowak, Harrell and Nowak, [*8] New Orleans, LA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Ohio Police & Fire Pension Fund, Plaintiff (4:10md2185): Daniel E Barenbaum, PRO HAC VICE, Berman DeValerio; Jason M Leviton, Berman DeValerio, Boston, MA USA; Jeffrey C Block, Berman DeValerio, Boston, MA USA; Joshua S Devore, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Matthew D Pearson, Berman DeValerio, San Francisco,

CA USA; R Paul Yetter, Yetter Coleman LLP, Houston, TX USA; Steven Buttacavoli, Berman DeValerio, Boston, MA USA; Brian P Muething, Keating Muething and Kllekamp PLL, Cincinnati, OH USA; Glen DeValerio, Berman DeValerio et al, Boston, MA USA; Gregory M Utter, Keating Muething & Klekamp PC; J Pierre Tismo, Dyer Garofolo Mann & Schultz; Julie Reiser, Cohen Milstein Sellers & Toll PLLC, Washington, Dc; Kristin J. Moody, Berman DeValerio, Boston, MA USA; Mark Delaney, Berman DeValerio, One Liberty Sq, Boston, MA USA; Paul V Muething; Steven J Toll, Cohen Milstein et al; W Jeffrey Sefton, Keating Muething & Klekamp, Cincinnati, OH USA; Whitney Street, PRO HAC VICE, Berman DeValerio, Boston, MA USA.

For School Employees [*9]  Retirement System of Ohio, Plaintiff (4:10md2185): Jason M Leviton, Berman DeValerio, Boston, MA USA; Jeffrey C Block, Berman DeValerio, Boston, MA USA; Joshua S Devore, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Matthew D Pearson, Berman DeValerio, San Franicsco, CA USA; R Paul Yetter, Yetter Coleman LLP, Houston, TX USA; Steven Buttacavoli, Berman DeValerio, Boston, MA USA; Brian P Muething, Keating Muething and Kllekamp PLL, Cincinnati, OH USA; Glen DeValerio, Berman DeValerio et al, Boston, MA USA; Gregory M Utter, Keating Muething & Klekamp PC; J Pierre Tismo, Dyer Garofolo Mann & Schultz; Julie Reiser, Cohen Milstein Sellers & Toll PLLC, Washington, Dc; Kristin J. Moody, Berman DeValerio, Boston, MA USA; Mark Delaney, Berman DeValerio, One Liberty Sq, Boston, MA USA; Paul V Muething; Steven J Toll, Cohen Milstein et al, Washington, DC USA; W Jeffrey Sefton, Keating Muething & Klekamp, Cincinnati, OH USA; Whitney Street, PRO HAC VICE, Berman DeValerio, Boston, MA USA.

For State Teachers Retirement System of Ohio, Plaintiff (4:10md2185): Jason M Leviton, Berman DeValerio, Boston, MA USA; Jeffrey C Block, Berman DeValerio, Boston, MA USA; Joshua S Devore, Cohen Milstein [*10]  Sellers & Toll PLLC, Washington, DC USA; Matthew D Pearson, Berman DeValerio, San Franicsco, CA USA; R Paul Yetter, Yetter Coleman LLP, Houston, TX USA; Brian P Muething, Keating Muething and Kllekamp PLL, Cincinnati, OH USA; Glen DeValerio, Berman DeValerio et al, Boston, MA USA; Gregory M Utter, Keating Muething & Klekamp PC; J Pierre Tismo, Dyer Garofolo Mann & Schultz; Julie Reiser, Cohen Milstein Sellers & Toll PLLC, Washington, Dc; Kristin J. Moody, Berman DeValerio, Boston, MA USA; Mark Delaney, Berman DeValerio, One Liberty Sq, Boston, MA USA; Paul V Muething;

Steven J Toll, Cohen Milstein et al, Washington, DC USA; W Jeffrey Sefton, Keating Muething & Klekamp, Cincinnati, OH USA; Whitney Street, PRO HAC VICE, Berman DeValerio, Boston, MA USA.

For Taylor Safe, Individually and on behalf of all others similarly situated, Plaintiff (4:10md2185): Donald Amamgbo, Amamgbo & Associates, Culver City, CA USA; Reginald Von Terrell, The Terrell Law Group, Oakland, CA USA; W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Clay Dietrich, Plaintiff (4:10md2185): W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary [*11]  K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Robert Freedman, Plaintiff (4:10md2185): W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Rene Rogers, Plaintiff (4:10md2185): W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Southeast Pennsylvania Transportation Authority, Plaintiff (4:10md2185): W Mark Lanier, The Lanier Law Firm, Houston, TX USA; Mary K Blasy, Robbins Geller Rudman & Dowd LLP, Melville, NY USA.

For Robert R Glenn, on behalf of himself and all others similarly situated, Plaintiff (4:10md2185): Jacob S Gill, Stoll Stoll et al, Portland, OR USA; Jennifer S Wagner, PRO HAC VICE, Austin, TX USA; Keith A Ketterling, Stoll Stoll et al, Portland, OR USA; Seth R Lesser, Klafer Olsen & Lesser LLP, Rye Brook, NY USA; Steve D Larson, Stoll Stoll et al, Portland, OR USA; Mark Wesley Collmer, Collmer Law Group.

For City of Philadelphia Board of Pensions And Retirement, Plaintiff (4:10md2185): Matthew L Mustokoff, Kessler Topaz, Radnor, PA USA; Bernardo S Garza, Attorney at Law; Darren Check, Kessler Topaz et al, Radnor, [*12]  PA USA; David Kessler, Kessler Topaz, Radnor, PA USA; Gregory M Castaldo, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA; Margaret E. Onasch, Kessler Topaz, Radnor, PA USA; Michelle M. Newcomer, Kessler Topaz Meltzer & Check, LLP, Radnor, PA USA; Naumon A Amjed, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA.

For Connecticut Retirement Plans And Trust Funds, Plaintiff (4:10md2185): Matthew L Mustokoff, Kessler Topaz, Radnor, PA USA; Bernardo S Garza, Attorney at

Law; Darren Check, Kessler Topaz et al, Radnor, PA USA; David Kessler, Kessler Topaz, Radnor, PA USA; Gregory M Castaldo, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA; Margaret E. Onasch, Kessler Topaz, Radnor, PA USA; Michelle M. Newcomer, Kessler Topaz Meltzer & Check, LLP, Radnor, PA USA; Naumon A Amjed, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA.

For North Carolina Department of State Treasurer, Plaintiff (4:10md2185): Matthew L Mustokoff, Kessler Topaz, Radnor, PA USA; Bernardo S Garza, Attorney at Law; Darren Check, Kessler Topaz et al, Radnor, PA USA; David Kessler, Kessler Topaz, Radnor, PA USA; Gregory M Castaldo, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA; Margaret E. Onasch, Kessler **[*13]** Topaz, Radnor, PA USA; Matthew M. Mustokoff, Kessler Topaz Meltzer & Check, LLP; Michelle M. Newcomer, Kessler Topaz Meltzer & Check, LLP, Radnor, PA USA; Naumon A Amjed, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA.

For Public Employees Retirement Association of Colorado, Plaintiff (4:10md2185): Matthew L Mustokoff, Kessler Topaz, Radnor, PA USA; Bernardo S Garza, Attorney at Law; Darren Check, Kessler Topaz et al, Radnor, PA USA; David Kessler, Kessler Topaz, Radnor, PA USA; Gregory M Castaldo, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA; Margaret E. Onasch, Kessler Topaz, Radnor, PA USA; Matthew M. Mustokoff, Kessler Topaz Meltzer & Check, LLP; Michelle M. Newcomer, Kessler Topaz Meltzer & Check, LLP, Radnor, PA USA; Naumon A Amjed, Kessler Topaz Meltzer and Check LLP, Radnor, PA USA.

For Employees' Retirement System of The City of Providence, Plaintiff (4:10md2185): Marc I Gross, Pomerantz Grossman Hufford Dahlstrom & Gross, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Ohio Public Employees Retirement System, Plaintiff (4:10md2185): R Paul Yetter, Yetter Coleman LLP, Houston, TX USA; Richard Warren Mithoff, **[*14]** Jr, Mithoff Law Firm, Houston, TX USA; Steven Buttacavoli, Berman DeValerio, Boston, MA USA; Brian P Muething, Keating Muething and Kllekamp PLL, Cincinnati, OH USA; Daniel E Barenbaum, Berman DeValerio; Gregory M Utter, Keating Muething & Klekamp PC; J Pierre Tismo, Dyer Garofolo Mann & Schultz; Paul V Muething; W Jeffrey Sefton, Keating Muething & Klekamp, Cincinnati, OH USA.

For South Yorkshire Pensions Authority, Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins

Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Mondrian All Countries World Ex-Us Equity Fund, L.P., Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Mondrian All Countries World Ex-Us Equity Fund, L.P., Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Mondrian Focused International Equity Fund, L.P., Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Mondrian Global Equity Fund, L.P., Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Mondrian Group Trust, Plaintiff (4:10md2185): **[*15]** Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Mondrian International Equity Fund, L.P., Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Stichting Aandelenfonds MN Services Europa, Plaintiff (4:10md2185): Emma Gilmore, Pomerantz Grossman Hufford Dahlstrom Gross, New York, NY USA; Jeremy A Lieberman, Pomerantz LLP, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Stichting Aandelenfonds MN Services Europa III, Plaintiff (4:10md2185): Emma Gilmore, Pomerantz Grossman Hufford Dahlstrom Gross, New York, NY USA; Jeremy A Lieberman, Pomerantz LLP, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Stichting Pensioenfonds Metaal EN Techniek, Plaintiff (4:10md2185): Emma Gilmore, Pomerantz Grossman Hufford Dahlstrom Gross, New York, NY USA; Jeremy A Lieberman, Pomerantz LLP, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols **[*16]** Sorrels Agosto & Friend, Houston, TX USA.

For Stichting Pensioenfonds Van DE Metalelektro, Plaintiff (4:10md2185): Emma Gilmore, Pomerantz Grossman Hufford Dahlstrom Gross, New York, NY USA; Jeremy A Lieberman, Pomerantz LLP, New York,

NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Hesta Super Fund, Plaintiff (4:10md2185): Emma Gilmore, Pomerantz Grossman Hufford Dahlstrom Gross, New York, NY USA; Jeremy A Lieberman, Pomerantz LLP, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For Shell Pension Trust, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For The Houston Municipal Employees Pension System, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; [*17] Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Jamie J McKey, Kendall Law Group LLP, Dallas, TX USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Kbc Asset Management NV, Plaintiff (4:10md2185): Daniel Hume, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Kathryn Bale Allen, Kirby McInerney LLP, Dripping Spring, TX USA.

For Union Asset Management Holding AG, Plaintiff (4:10md2185): Daniel Hume, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA.

For State-Boston Retirement System, Plaintiff (4:10md2185): Jeremy A Lieberman, Pomerantz LLP, New York, NY USA; Marc I Gross, Pomerantz Grossman Hufford Dahlstrom & Gross, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA; Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA.

For New York City Board of Education Retirement System, [*18] Plaintiff (4:10md2185): Inga Van Eysden, New York City Law Department, New York, NY;

Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For New York City Employees' Retirement System, Plaintiff (4:10md2185): Sammy Ford, IV, Abraham Watkins Nichols Sorrels Agosto & Friend, Houston, TX USA; Inga Van Eysden, New York City Law Department, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For New York City Fire Department Pension Fund, Plaintiff (4:10md2185): Inga Van Eysden, New York City Law Department, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For New York City Group Trust, Plaintiff (4:10md2185): Inga Van Eysden, New York City Law Department, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For New York City Police Pension Fund, Plaintiff (4:10md2185): Inga Van Eysden, New York City Law Department, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For Teachers Variable Annuity Funds, Plaintiff (4:10md2185): Inga Van Eysden, New York City Law Department, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For Teachers' Retirement System of The City of New York, Plaintiff (4:10md2185): [*19] Inga Van Eysden, New York City Law Department, New York, NY USA; Matthew L Tuccillo, Pomerantz LLP, New York, NY USA.

For Avalon Holdings, Inc., Plaintiff (4:10md2185): Jamie J McKey, Kendall Law Group LLP, Dallas, TX USA; Andrew D Abramowitz, Spector Roseman et al; Daniel J Mirarchi, Spector Roseman Kodroff et al; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC; Robert M Roseman, Spector Roseman et al.

For Bnp Paribas Investment Partners Belgium Nv/Sa, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Bayerninvest Kapitalanlagegesellschaft, Mbh, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA;

Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert **[*20]** M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Caisse DE Depot EL Placement DU Quebec, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For City of Westminster Council Superannuation Fund, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Cumbria County Council, as Administering Authority of the Cumbria Local Government Pension Scheme, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff **[*21]** & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Inter-Local Pension Fund of The Graphic Communications Conference of The International Brotherhood of Teamsters, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Jacksonville Police & Fire Pension Fund, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Lincolnshire County Council, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector

Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; **[*22]** Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For London Borough of Redbridge Pension Fund, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Metzler Investment Gmbh, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Nomura Trust And Banking Co., Ltd., Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff **[*23]** & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Northern Ireland Local Government Officers' Superannuation Committee, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Northwestern Mutual Life Insurance Co., Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Nykredit Asset Management, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe

Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis **[*24]** PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Ontario Pension Board, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Orange County Employees Retirement System, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Premier Ltd, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, **[*25]** Philadelphia, PA USA.

For San Mateo County Employees' Retirement Association, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For The Municipal Employees' Retirement System of Michigan, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For The Royal Borough of Kensington And Chelsea, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA;

Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman **[*26]** et al, Philadelphia, PA USA.

For Utah Retirement Systems, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Verizon Investment Management Corp., Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Xerox Pensions Limited, Plaintiff (4:10md2185): Andrew D Abramowitz, Spector Roseman et al, Philadelphia, PA USA; Daniel J Mirarchi, Spector Roseman Kodroff et al, Philadelphia, PA USA; Joe Kendall, Kendall Law Group, LLP, Dallas, TX USA; Mark S Willis, Spector Roseman Kodroff & Willis PC, Washington, DC USA; Robert M Roseman, Spector Roseman et al, Philadelphia, PA USA.

For Deutsche Asset Management **[*27]** Investmentgesellschaft Mbh, Plaintiff (4:10md2185): John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Kathryn Bale Allen, Kirby McInerney LLP, Dripping Spring, TX USA.

For Gic Private Limited, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland and McFarland LLP, Houston, TX USA; Ira M Press, Kirby McInerney LLP, New York, NY USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA.

For Helaba Invest Kapitalanlagegesellschaft Mbh, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland and McFarland LLP; John Brandon Walker, Kirby McInerney LLP; Ira M Press, Kirby McInerney LLP.

For Lbbw Asset Management Investmentgesellschaft Mbh, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland and McFarland LLP, Houston, TX USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA.

2015 U.S. Dist. LEXIS 27138, *27

For Landesbank Berlin Investment Gmbh, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland and McFarland LLP, Houston, TX USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA.

For Lnsfrskringar AB, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland **[*28]** and McFarland LLP, Houston, TX USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA.

For Sgss Deutschland Kapitalanlagegesellschaft Mbh, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland and McFarland LLP, Houston, TX USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA.

For Universal-Investment-Gesellschaft Mbh, Plaintiff (4:10md2185): Benjamin C Wickert, Joyce McFarland and McFarland LLP, Houston, TX USA; John Brandon Walker, Kirby McInerney LLP, New York, NY USA; Ira M Press, Kirby McInerney LLP, New York, NY USA.

For Washington State Investment Board, Plaintiff (4:10md2185): Andrew M Edison, Edison, McDowell & Hetherington, LLP, Houston, TX USA.

For Pension Reserves Investment Management Board of Massachusetts, Plaintiff (4:10md2185): Joseph Alan Callier, Callier & Garza, Houston, TX USA; Joshua S Devore, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Joshua M Kolsky, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Steven J Toll, Cohen Milstein et al, Washington, DC USA.

For Indiana Public Retirement System, Plaintiff (4:10md2185): **[*29]** Damon Joseph Chargois, Mashayekh & Chargois, P.C., Houston, TX USA.

For Public Employee Retirement System of Idaho, Plaintiff (4:10md2185): Damon Joseph Chargois, Mashayekh & Chargois, P.C., Houston, TX USA.

For Public School And Education Employee Retirement Systems of Missouri, Plaintiff (4:10md2185): Damon Joseph Chargois, Mashayekh & Chargois, P.C., Houston, TX USA.

For The Nebraska Investment Council, Plaintiff (4:10md2185): Damon Joseph Chargois, Mashayekh & Chargois, P.C., Houston, TX USA.

For Virginia Retirement System, Plaintiff (4:10md2185): Damon Joseph Chargois, Mashayekh & Chargois, P.C., Houston, TX USA.

For Ing (L) Sicav, for and on behalf of ING (L) Invest Energy, Ing (L) Invest Europe High Dividend, ING (L) Invest Europe Opportunities, and ING (L) Invest Global High Dividend, Plaintiff (4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP.

For Ing Bewaar Maatschappij I B.V., for and on behalf of ING Energy Basis Fonds, ING Europa Basis Fonds, ING Divident Aandelen Basis Fonds, ING Global Equity Basis Fonds, **[*30]** ING Institutioneel Dividend Aandelen Basis Fonds, Plaintiff (4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Ing Fund Management B.V., Plaintiff (4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Louisiana State Employees' Retirement System, Plaintiff (4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Norges Bank, Plaintiff (4:10md2185): David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA; Blair A Nicholas, Bernstein Litowitz Berger & Grossman.

For Stichting Bewaarneming Apg-Is 1, Plaintiff (4:10md2185): **[*31]** Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Stichting Depositary Apg Developed Markets Equity Pool, Plaintiff (4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Stichting Pensioenfonds Abp, Plaintiff

(4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Stichting Tot Bewaring Cordares Subfonds Aandelen Europa Actief Beheer, Plaintiff (4:10md2185): Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Teacher Retirement System of Texas, Plaintiff (4:10md2185): [*32] Blair A Nicholas, Bernstein Litowitz Berger & Grossman; David R Kaplan, Bernstein Litowitz Berger & Grossman LLP; Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP; Thomas Robert Ajamie, Ajamie LLP, Houston, TX USA.

For Deka International S.A. Luxemburg, Plaintiff (4:10md2185): Alexander Reus, Diaz Reus & Targ LLP; David M Haendler, Grant & Eisenhofer P.A., Wilmington, DE USA; Geoffrey C Jarvis, Grant & Eisenhofer, P.A., Wilmington, DE USA; Kent A Schaffer, Bires Schaffer & DeBorde.

For Deka Investment Gmbh, Plaintiff (4:10md2185): Alexander Reus, Diaz Reus & Targ LLP; David M Haendler, Grant & Eisenhofer P.A., Wilmington, DE USA; Geoffrey C Jarvis, Grant & Eisenhofer, P.A., Wilmington, DE USA; Kent A Schaffer, Bires Schaffer & DeBorde.

For International Fund Management S.A., Plaintiff (4:10md2185): Alexander Reus, Diaz Reus & Targ LLP; David M Haendler, Grant & Eisenhofer P.A., Wilmington, DE USA; Geoffrey C Jarvis, Grant & Eisenhofer, P.A., Wilmington, DE USA; Kent A Schaffer, Bires Schaffer & DeBorde.

For Bp Plc, Defendant (4:10md2185): Robert "Mike" Brock, LEAD ATTORNEY, Covington & Burling LLP, Washington, DC USA; Scott W Fowkes, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, [*33] IL USA; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Diane Lee McGimsey, Sullivan and Cromwell LLP, Los Angeles, CA USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Lois O Rosenbaum, Stoel Rives LLP, Portland, OR USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Frances Floriano Goins, Ulmer & Berne LLP, Cleveland, OH USA; Isaac J Eddington, Ulmer & Berne - Cleveland, Cleveland, OH USA.

For Bp America Inc, Defendant (4:10md2185): Scott W Fowkes, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL USA; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; George Denegre, Jr, Liskow [*34] & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Frances Floriano Goins, Ulmer & Berne LLP, Cleveland, OH USA; Isaac J Eddington, Ulmer & Berne - Cleveland, Cleveland, OH USA; Lois O Rosenbaum, Stoel Rives LLP, Portland, OR USA.

For Anthony Hayward, Defendant (4:10md2185): Scott W Fowkes, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL USA; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Diane Lee McGimsey, Sullivan and Cromwell LLP, Los Angeles, CA USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Morgan D Hodgson, [*35] Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Frances Floriano Goins, Ulmer & Berne LLP, Cleveland, OH USA; Isaac J Eddington, Ulmer & Berne - Cleveland, Cleveland, OH USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Andy Inglis, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth,

2015 U.S. Dist. LEXIS 27138, *35

Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Kathleen Goodhart, Cooley LLP, San Francisco, CA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA; Stephen C. Neal, Cooley Godward Kronish.

For Carl-Henric Svanberg, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, **[*36]** LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For H Lamar Mckay, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For William Castell, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan **[*37]** & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Paul Anderson, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell

Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Antony Burgmans, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; **[*38]** Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Cynthia Carroll, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Erroll B Davis, JR, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Iain C Conn, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and **[*39]** Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Robert W Dudley, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY

USA.

For Byron E Grote, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For George David, Defendant (4:10md2185): **[*40]** Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Ian Davis, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Douglas J Flint, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Deanne S Julius, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Paul J Ondrasik, **[*41]** Jr, Steptoe & Johnson LLP, Washington, DC USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Ian MG Prosser, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C

Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Bp Exploration & Production Inc, Defendant (4:10md2185): Scott W Fowkes, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL USA; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Frances Floriano Goins, Ulmer & Berne LLP, Cleveland, OH USA; George Denegre, Jr, Liskow & Lewis; Isaac J Eddington, Ulmer & Berne - Cleveland, Cleveland, OH USA; Lois O Rosenbaum, Stoel Rives LLP, Portland, OR USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Tom Mckillop, Defendant **[*42]** (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Lord Edmund John Philip Browne, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Russell Keith Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Peter Sutherland, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; George Denegre, Jr, Liskow & Lewis, New Orleans, LA USA; John C. Anjier, Liskow & Lewis, New Orleans, LA USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Russell Keith **[*43]** Jarrett, Liskow Lewis, New Orleans, LA USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Transocean Deepwater Inc, Defendant (4:10md2185): Campbell Edington Wallace, Frilot L.L.C., New Orleans, LA USA; Carl J Hebert, Preis &

Roy, New Orleans, LA USA; Edward F Kohnke, IV, Preis & Roy, New Orleans, LA USA; Edwin G Preis, Jr, Preis Roy PLC, Lafayette, LA USA; Evans Martin McLeod, Phelps Dunbar LL, New Orleans, LA USA; Everett R. Fineran, Frilot L.L.C., New Orleans, LA USA; George M Gilly, Phelps Dunbar LLP, New Orleans, LA USA; Joseph E Lee, III, Preis & Roy, PLC, New Orleans, LA USA; Kerry J. Miller, Frilot L.L.C., New Orleans, LA USA; Miles Paul Clements, Frilot L.L.C., New Orleans, LA USA; Paul C. Thibodeaux, Frilot L.L.C., New Orleans, LA USA; Richard J Hymel, Preis Roy, Lafayette, LA USA; Robert M Kallam, Preis Roy, Lafayette, LA USA.

For Transocean Offshore Deepwater Drilling Inc, Defendant (4:10md2185): Campbell Edington Wallace, Frilot L.L.C., New Orleans, LA USA; Carl J Hebert, Preis & Roy, New Orleans, LA USA; Edward F Kohnke, IV, Preis & Roy, New Orleans, LA USA; Edwin G Preis, Jr, Preis Roy **[*44]** PLC, Lafayette, LA USA; Evans Martin McLeod, Phelps Dunbar LL, New Orleans, LA USA; Everett R. Fineran, Frilot L.L.C., New Orleans, LA USA; George M Gilly, Phelps Dunbar LLP, New Orleans, LA USA; John Daniel Johnson, Sutherland Asbill Brennan LLP, Houston, TX USA; Joseph E Lee, III, Preis & Roy, PLC, New Orleans, LA USA; Kerry J. Miller, Frilot L.L.C., New Orleans, LA USA; Miles Paul Clements, Frilot L.L.C., New Orleans, LA USA; Paul C. Thibodeaux, Frilot L.L.C., New Orleans, LA USA; Richard J Hymel, Preis Roy, Lafayette, LA USA; Robert M Kallam, Preis Roy, Lafayette, LA USA.

For Halliburton Energy Services Inc, Defendant (4:10md2185): Adelaida J Ferchmin, Chaffe McCall LLP, New Orleans, LA USA; Alan R. Davis, Chaffe McCall LLP, New Orleans, LA USA; Bruce W Bowman, Jr, Godwin Lewis PC, Dallas, TX USA; Daniel A Tadros, Chaffe McCall et al, New Orleans, LA USA; Derek A Walker, Chaffe McCall LLP, New Orleans, LA USA; Donald Everett Godwin, Godwin Lewis PC, Dallas, TX USA; Floyd Richard Hartley, Jr, Godwin Lewis PC, Dallas, TX USA; Gavin Eugene Hill, Godwin Lewis PC, Dallas, TX USA; Jenny LaNell Martinez, Godwin Ronquillo PC, Dallas, TX USA; Katharine Rachael Colletta, Chaffe McCall, LLP, **[*45]** New Orleans, LA USA; Robert Alan York, Godwin Lewis PC, Houston, TX USA.

For Richard J. Dorazil, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan

Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For The Savings Plan Investment Oversight Committee, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Marc De Leeuw, Sullivan & Cromwell, New York, NY USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA; Daryl A Libow, Sullivan & Cromwell LLP, Washington, DC USA; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY USA.

For Stephanie C. Atkins, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & **[*46]** Ellis LLP (Chicago), Chicago, IL USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA.

For Bp Corporation North America Inc, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Bp Corporation North America Inc. Savings Plan Investment Oversight Committee, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Neil Shaw, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Thomas L Taylor, Defendant **[*47]** (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington,

DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Gregory T. Williamson, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For The Investment Committee, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA.

For Bp Corporation North America, Inc.'S Board of Directors, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX **[*48]** USA.

For Bp Corporation North America, Inc. Savings Plan Investment Oversight Committee, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA.

For Robert A Malone, Defendant (4:10md2185): Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA.

For Lamar Mckay, Defendant (4:10md2185): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL USA; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Corey Correnti, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Marvin Damsma, **[*49]** Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For James Dupree, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Patrick Gower, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Jeanne M. Johns, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Patricia H. Miller, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, **[*50]** DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Stephen J. Riney, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Brian D. Smith, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Lord John Browne, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA;

Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Stephanie C Moore, Defendant (4:10md2185): Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC USA; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, **[*51]** DC USA; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For Douglas J Suttles, Defendant (4:10md2185): Scott W Fowkes, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL USA; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX USA; Patrick J Somers, Paul Weiss Rifkind Wharton Garrison, New York, NY USA; Roberto Finzi, Paul Weiss et al, New York, NY USA; Theodore V Wells, Jr., Paul Weiss et al, New York, NY USA; Frances Floriano Goins, Ulmer & Berne LLP, Cleveland, OH USA; Isaac J Eddington, Ulmer & Berne - Cleveland, Cleveland, OH USA.

For Andrew G Inglis, Defendant (4:10md2185): Frances Floriano Goins, Ulmer & Berne LLP, Cleveland, OH USA; Isaac J Eddington, Ulmer & Berne - Cleveland, Cleveland, OH USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA.

For David Rainey, Defendant (4:10md2185): Brian M Heberlig, Steptoe and Johnson LLP, Washington, DC USA; Patrick Francis Linehan, Steptoe and Johnson LLP, Washington, DC USA; Reid H Weingarten, Steptoe Johnson LLP, Washington, DC USA; Savannah E. Marion, Steptoe Johnson LLP, Washington, DC USA; Thomas W Taylor, Andrews and Kurth, Houston, TX USA; Lara Denise **[*52]** Pringle, Jones Walker LLP; Michael W Manger, Jones Walker LLP, New Orleans, LA USA.

For Richard A Cordray, Ohio Attorney General, Movant (4:10md2185): Autry W Ross, Yetter Coleman, Houston, TX USA; Eric R Nowak, Harrell and Nowak, New Orleans, LA USA; Joseph J Tabacco, Jr, Berman DeValerio, San Francisco, CA USA; Joshua S Devore, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Matthew D Pearson, Berman DeValerio, San Franicsco, CA USA; R Paul Yetter, Yetter Coleman LLP, Houston, TX USA; Daniel S Sommers, Cohen Milstein et al; Glen DeValerio, Berman DeValerio et al, Boston, MA USA; Jason M Leviton, Berman DeValerio, Boston, MA USA; Jeffrey C Block, Berman DeValerio, Boston, MA USA; Joshua M Kolsky, Cohen Milstein Sellers & Toll PLLC, Washington, DC USA; Julie Reiser, Cohen Milstein Sellers & Toll PLLC, Washington, Dc; Kristin J.

Moody, Berman DeValerio, Boston, MA USA; Mark Delaney, Berman DeValerio, One Liberty Sq, Boston, MA USA; Matthew Keith Handley, PRO HAC VICE, Cohen Milstein et al, Washington, DC USA; Steven J Toll, Cohen Milstein et al, Washington, DC USA; Whitney Street, PRO HAC VICE, Berman DeValerio, Boston, MA USA.

For Sacramento County Employees Retirement System, **[*53]** Movant (4:10md2185): Jeffrey M. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA; Mitchell J. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA; Serena E. Pollack, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA.

For Fresno County Employees Retirement Association, Movant (4:10md2185): Jeffrey M. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA; Mitchell J. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA; Serena E. Pollack, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA USA.

For Peter D. Lichtman, Movant (4:10md2185): James P Roy, Domengeaux Wright et al, Lafayette, LA USA; Richard Warren Mithoff, Jr, Mithoff Law Firm, Houston, TX USA.

For Leslie J. Nakagiri, Movant (4:10md2185): James P Roy, Domengeaux Wright et al, Lafayette, LA USA; Richard Warren Mithoff, Jr, Mithoff Law Firm, Houston, TX USA.

For Paul Huyck, Movant (4:10md2185): James P Roy, Domengeaux Wright et al, Lafayette, LA USA; Richard Warren Mithoff, Jr, Mithoff Law Firm, Houston, TX USA.

For Ralph Whitley, Individually and on behalf of all others similarly situated, Plaintiff (4:10-cv-04214): **[*54]** Arvind B. Khurana, LEAD ATTORNEY, PRO HAC VICE, Milberg LLP, New York, NY; Gregory M. Egleston, LEAD ATTORNEY, Egleston Law Firm, Brooklyn, NY; Lori G Feldman, LEAD ATTORNEY, PRO HAC VICE, Milberg LLP, New York, NY; Sanford P. Dumain, LEAD ATTORNEY, PRO HAC VICE, Milberg LLP, New York, NY; Stephen J Fearon, Jr, LEAD ATTORNEY, Squitieri & Fearon LLP, New York, NY; W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Amber M. Nesbitt, Wexler Wallace LLP, Chicago, IL; Joseph Goljan, Squitieri & Fearon, New York, NY; Kenneth A. Wexler, Wexler Wallace LLP, Chicago, IL; Olga Anna Posmyk, Squitieri & Fearon LLP, New York, NY.

Frankie Ramirez, Plaintiff (4:10-cv-04214), Pro se.

For David M. Humphries, Consol Plaintiff (4:10-cv-04214): James E. Miller, LEAD ATTORNEY, Shepherd Finkelman Miller & Shah LLP, Chester, CT; Thomas Robert Ajamie, LEAD ATTORNEY, Ajamie LLP, Houston, TX; W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Dona Szak, Ajamie LLP, Houston, TX; Kim Zeldin, Liner LLP, Los Angeles, CA; Laura Elizabeth Towbin, Novack and Macey, LLP, Chicago, IL; Mitchell L. Marinello, Novack & Macey, Chicago, IL; Ronald S Kravitz, Shepherd Finkelman Miller & Shah LLP, San [*55] Francisco, CA.

For Charis Moule, Consol Plaintiff (4:10-cv-04214): W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Arvind B. Khurana, PRO HAC VICE, Milberg LLP, New York, NY; Charles Robert Watkins, Guin, Stokes & Evans, LLC, Chicago, IL; Evan M Janush, PRO HAC VICE, The Lanier Law Firm PLLC, New York, NY; Jennifer J. Sosa, PRO HAC VICE, Milberg Llp, New York, NY; Lori G Feldman, PRO HAC VICE, Milberg LLP, New York, NY; Marvin Alan Miller, Miller Law LLC, Chicago, IL; Matthew E Van Tine, Miller Law LLC, Chicago, IL; Robert I Harwood, Harwood Feffer LLP, New York, NY; Sanford P. Dumain, PRO HAC VICE, Milberg LLP, New York, NY; Scott Foglietta, Milberg LLP, New York, NY; Tanya Korkhov, Harwood Feffer LLP, New York, NY; Todd L Kammerman, Milberg Weiss Bershad, New York, NY.

For Edward F. Mineman, Consol Plaintiff (4:10-cv-04214): W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Bruce C Howard, Wheaton, IL; Edwin J Mills, Stull Stull, New York, NY; Michael J. Klein, Stull Stull, New York, NY; Patrice Lyn Bishop, PRO HAC VICE, Stull, Stull & Brody, Beverly Hills, CA; Robert D. Allison, Robert D. Allison & Associates, Chicago, IL; Steven Paul Schneck, Robert [*56] D. Allison & Associates, Chicago, IL.

For Syed Arshadullah, Consol Plaintiff (4:10-cv-04214): W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Charles Robert Watkins, Guin, Stokes & Evans, LLC, Chicago, IL; Robert A Izard, Jr, Izard Nobel LLP, West Hartford, CT; William W Thomas, Behn Wyetzner Chtd., Evanston, IL.

For Ron Pierce, Consol Plaintiff (4:10-cv-04214): W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Charles Robert Watkins, Guin, Stokes & Evans, LLC, Chicago, IL; Robert A Izard, Jr, Izard Nobel LLP, West Hartford, CT; William W Thomas, Behn Wyetzner Chtd., Evanston, IL.

For Jerry T. McGuire, Consol Plaintiff (4:10-cv-04214): Jennifer J. Sosa, LEAD ATTORNEY, PRO HAC VICE, Milberg Llp, New York, NY; W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Evan M Janush, PRO HAC VICE, The Lanier Law Firm PLLC, New York, NY; Jeffrey M Norton, Newman Ferrara LLP, New York, NY; Marvin Alan Miller, Miller Law LLC, Chicago, IL; Matthew E Van Tine, Miller Law LLC, Chicago, IL; Robert I Harwood, Harwood Feffer LLP, New York, NY; Scott Foglietta, Milberg LLP, New York, NY; Tanya Korkhov, Harwood Feffer LLP, New York, NY; Todd L Kammerman, Milberg Weiss [*57] Bershad, New York, NY.

For Maureen S. Riely, Consol Plaintiff (4:10-cv-04214): Jennifer J. Sosa, LEAD ATTORNEY, PRO HAC VICE, Milberg Llp, New York, NY; W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Scott Foglietta, Milberg LLP, New York, NY; Todd L Kammerman, Milberg Weiss Bershad, New York, NY.

For Thomas P Soesman, Consol Plaintiff (4:10-cv-04214): W Mark Lanier, LEAD ATTORNEY, The Lanier Law Firm, Houston, TX; Charles Robert Watkins, Guin, Stokes & Evans, LLC, Chicago, IL; Thomas J McKenna, Gainey and McKenna, New York, NY; William W Thomas, Behn Wyetzner Chtd., Evanston, IL.

For BP P.L.C., Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Richard C Pepperman, II, Sullivan & Cromwell LLP, New York, NY; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC.

For Anthony Hayward, Defendant (4:10-cv-04214): Daryl A Libow, LEAD [*58] ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Iain C. Conn, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Robert W. Dudley, Defendant (4:10-cv-04214):

2015 U.S. Dist. LEXIS 27138, *58

Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY.

For Bryon E. Grote, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Andy G. Inglis, Defendant (4:10-cv-04214): **[*59]** Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Carl-Henric Svanberg, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Paul M Anderson, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Antony Burgmans, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Cynthia B. Carroll, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Sir William M. Castell, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell **[*60]** LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For George David, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Ian Davis, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell,

New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Douglas J. Flint, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For Deanne S. Julius, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC.

For The Savings Plan Investment Oversight Committee, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Kristopher S. **[*61]** Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Richard J. Dorazil, Defendant (4:10-cv-04214): Daryl A Libow, LEAD ATTORNEY, Sullivan & Cromwell LLP, Washington, DC; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

John Does 1-20, Defendant (4:10-cv-04214), Pro se.

For Corey Correnti, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Marvin Damsma, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan **[*62]** & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For James Dupree, Defendant (4:10-cv-04214): Marc

De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Patrick Gower, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Jeanne M. Johns, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, **[*63]** DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Patricia H. Miller, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Stephen J. Riney, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Brian D. Smith, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Lord John Browne, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe **[*64]** & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Stephanie C Moore, Defendant (4:10-cv-04214): Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For BP Corporation North America, Inc., Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For BP America, Inc., Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, **[*65]** DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Lamar McKay, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Gregory T. Williamson, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Stephanie C. Atkins, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Thomas **[*66]** W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Neil Shaw, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For Thomas L Taylor, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For State Street Bank and Trust, Consol Defendant (4:10-cv-04214): Aron J Frakes, McDermott Will Emery LLP, Chicago, IL; Wilber H Boies, McDermott Will & Emery, Chicago, IL.

John Does 1-10, Consol Defendant (4:10-cv-04214), Pro se.

For The Investment Committee, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis [*67] LLP (Chicago), Chicago, IL; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

For BP Corporation North America, Inc.'s Board of Directors, Consol Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX; William W Thomas, Behn Wyetzner Chtd., Evanston, IL.

For Robert A Malone, Consol Cross Defendant (4:10-cv-04214): Kristopher S. Ritter, Kirkland & Ellis LLP (Chicago), Chicago, IL; Marc De Leeuw, Sullivan & Cromwell, New York, NY; Morgan D Hodgson, Steptoe & Johnson LLP, Washington, DC; Paul J Ondrasik, Jr, Steptoe & Johnson LLP, Washington, DC; Ryan Thomas Jenny, Steptoe & Johnson LLP, Washington, DC; Thomas W Taylor, LEAD ATTORNEY, Andrews and Kurth, Houston, TX.

**Judges:** HON. KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** KEITH P. ELLISON

# Opinion

**AMENDED MEMORANDUM AND ORDER**

Plaintiffs in this derivative / putative class action seek leave to amend their complaint, brought [*68] pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"). They allege that certain corporate entities and individuals associated with the BP Group violated their fiduciary duties to the participants of four employee benefits plans offered before and after the disastrous Deepwater Horizon explosion on April 20, 2010.

Upon consideration of Plaintiffs' Motion (Doc. Nos. 152, 153), Defendants' opposition (Doc. Nos. 154, 155), Plaintiffs' reply (Doc. Nos. 160, 161), Plaintiffs' notice of recent authority (Doc. No. 162), and Defendants' sur-reply (Doc. No. 166), and having heard oral argument, the Court **GRANTS IN PART** Plaintiffs' Motion for Leave to File Amended Complaint (Doc. Nos. 152, 153). At the conclusion of this order, the Court provides guidelines as to the claims which Plaintiffs may replead.

## I. BACKGROUND

Plaintiffs are participants in two of four employee benefits plans (the "Plans") offered by Defendant BP Corporation North America Inc. ("BP North America" or "BPNAI") between January 16, 2007 and June 24, 2010. (Doc. Nos. 152-1, 153-1 "CAC", at ¶¶ 1-2, 29-37, 41-42.) Each Plan featured the option of investing in the "BP Stock Fund," a fund comprised entirely [*69] of BP American Depository Shares ("ADSs") with a minimal cash component "to facilitate daily transactions."[1]

(Id. ¶ 3.) During the time period in question, the BP Stock Fund comprised approximately one-third of the Plans' assets. (Id. ¶ 106.)

Plaintiffs allege that certain corporate entities and

---

[1] Because the Plans authorized investment in employer stock, they are Eligible Individual Account Plans ("EIAPs"), as defined in *ERISA § 407(d)(3)*, *29 U.S.C. § 1107(d)(3)*.

individuals associated with the BP Group violated their fiduciary duties to the Plans during the relevant time period.[2]

The Court has recounted the specifics of Plaintiffs' allegations in prior written orders and will not repeat itself here. Broadly, however, Plaintiffs assert three theories of liability under ERISA:

(1) Defendants violated their duties of prudence and loyalty by permitting Plan participants to invest in the BP Stock Fund;

(2) Defendants violated their duties of prudence and loyalty, as well as their ERISA-based disclosure obligations, by misrepresenting or omitting information relevant to participants' decisions to invest in the BP Stock Fund; and

(3) Certain defendants failed to adequately monitor other fiduciaries who engaged in activity which violated [*70] their duties of prudence and loyalty.

According to Plaintiffs, Defendants' actions and/or inaction cost Plan participants hundreds of millions of dollars in losses following the Deepwater Horizon explosion. (CAC ¶ 317.)

On March 30, 2012, the Court dismissed Plaintiffs' first consolidated pleading—the Consolidated Complaint—in its entirety. (Doc. No. 116 (the "2012 MTD Order").) The Court ruled that Plaintiffs' first theory of liability failed, under the so-called "*Moench* presumption of prudence,"[3]

because (1) Plaintiffs had not adequately alleged that Defendants [*71] possessed knowledge of "inside information" which showed that the market was overvaluing BP stock and (2) Plaintiffs had not adequately alleged that BP was in such dire straits as to call into question its continued viability. (*Id.* at 28-36.) The Court also dismissed Plaintiffs' disclosure claims because SEC filings containing alleged misrepresentations and omissions were too many steps removed from the plan documents to be considered fiduciary communications. (*Id.* at 36-42.) Finally, the Court held that Plaintiffs' monitoring claims necessarily failed because they are a form of secondary liability only, requiring a primary violation to be viable. (*Id.* at 42.) Later that year, the Court denied Plaintiffs' request to amend their complaint, because the proposed amendments would have been futile. (Doc. No. 132-1 (the "2012 MLA Order"). Plaintiffs timely appealed to the Fifth Circuit.

The Supreme Court scuttled the *Moench* presumption in *Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014)*, which issued June 25, 2014. The Supreme Court ruled that the presumption had no basis in ERISA's statutory language. *See id. at 2467*. Accordingly, the Fifth Circuit vacated this Court's judgment in favor of Defendants and remanded for reconsideration in light of *Dudenhoeffer*. (Doc. No. 147.)

Plaintiffs once again seek leave to amend their complaint. Although Defendants acknowledge that *Dudenhoeffer* changed the landscape for certain claims against EIAP fiduciaries, they oppose the request for leave to amend. They argue that Plaintiffs' proposed amendments are still futile, and that leave to amend should once again be denied.

## II. LEGAL STANDARD

Plaintiffs move for leave to amend their complaint under *Rule 15(a)(2) of the Federal Rules of Civil Procedure*. HN1[⬆] "*Rule 15(a)* declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. Accordingly, district courts in the Fifth Circuit "must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. Louisiana Health Service and Indem. Co., 376 F.3d 420, 425 (5th Cir. 2004)*. Leave to amend may be denied, however, in the case of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

---

[2] Defendants in the ERISA action are:

• Three corporate entities (BP North America; BP p.l.c.; and BP America Inc.);

• Two deliberative bodies found within Defendant BP North America (the Board of Directors and the Savings Plan Investment Oversight Committee); and

• Seventeen individuals employed by various corporate entities within the BP Group (Lord John Browne; Corey Correnti; Marvin L. Damsma; Richard J. Dorazil; James Dupree; Patrick Gower; Anthony Hayward; Jeanne M. Johns; Robert A. Malone; Lamar McKay; Patricia H. Miller; Stephanie C. Moore; Stephen J. Riney; Brian D. Smith; Neil Shaw; Thomas L. Taylor; and Gregory T. Williamson).

[3] The *Moench* presumption provided that company stock was a presumptively prudent investment for employee benefit plans. *Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 254 (5th Cir. 2008)*. To overcome the presumption, a plaintiff had to allege "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." [*72] *Id. at 256*.

allowed, undue **[\*73]** prejudice to the opposing party, [or] futility of amendment." *Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir.1993)*.

The Court has already indicated that leave to amend will be denied in this case only if the proposed amendment is futile. **HN2[↑]** Futility is shown by amendments which "advance[e] a claim or defense that is legally insufficient on its face, or . . .fail[] to include allegations to cure defects in the original pleading." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. and Proc. § 1487 (3d ed.). In other words, Plaintiffs will be denied leave to amend only if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000)*; *see also Landavazo v. Toro Co., 301 Fed. Appx. 333, 337 (5th Cir. 2008)* (affirming denial of leave to amend after determining that "[a] review of the amended complaint leaves the reader speculating as to what conduct, even if taken as true, occurred that would give rise to a right to relief").

**HN3[↑]** A complaint fails to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not **[\*74]** contain detailed factual allegations, but must set forth more than "labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Twombly, 550 U.S. at 555* (citation omitted).

**HN4[↑]** Ultimately, the Court must decide whether Plaintiffs' proposed amended pleading—the Consolidated Amended Complaint ("CAC")—states at least one valid claim when viewed in the light most favorable to Plaintiffs. In making this determination, the Court will accept the complaint's well-pleaded facts as true, but will not imbue legal conclusions with the same assumption of truth. *Iqbal, 556 U.S. at 678* (citation omitted). Nor will the Court "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations [or] unwarranted deductions.'" *R2 Investments LDC v. Phillips, 401 F.3d 638, 642 (5th Cir. 2005)* (quoting *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004))*. The Court will confine its analysis to the contents of the CAC; documents provided by the parties will be

disregarded, unless they are referenced in the CAC and are central to Plaintiffs' claims. *See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)*. Importantly, the Court is not concerned, at this juncture, with the merits of Plaintiffs' claims. It need only decide whether those claims are adequately pled and legally cognizable. *United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004)*. If Plaintiffs meet this standard—if their claims are not obviously, facially futile—leave **[\*75]** to amend will be granted.

## III. ANALYSIS

## A. The disclosure claims ("Count II")

Plaintiffs acknowledge that *Dudenhoeffer* did not change the pleading standards for Plaintiffs' disclosure claims, denominated "Count II" in the proposed CAC. (Doc. Nos. 152, 153 ("Mot."), at 8.) As pled in the CAC, the disclosure claims can be divided into three types:

> (1) An "omission" theory: that Defendants failed to disclose specific insider information that was necessary for Plan participants to understand the true value and risks of the BP Stock Fund. (CAC ¶¶ 371-72, 374, 376; Mot. at 8-9.) The insider information alleged in the CAC includes: (1) the actual status of safety reforms within BP, including the implementation of recommendations made by the Baker Panel and BP's new Operating Management Systems ("OMS"); (2) BP's inability to respond to deepwater oil spills; and (3) the actual magnitude of the oil spill post-explosion. (CAC ¶¶ 5, 376.) The only Defendants alleged in the CAC to have insider information are BP North America, Anthony Hayward, Neil Shaw, James Dupree, and Lamar McKay. (*Id.* ¶ 22.)

> (2) A "Plan documents misrepresentation" theory: that "the Plan Administrator filed financial statements **[\*76]** for the Plans containing values for the Stock Fund that did not reflect the impaired value of the BP ADSs resulting from the violations of the securities laws about which Defendants knew or should have known."[4]

---

[4] Although Plaintiffs lump this theory in with their "omission" claims, it is more accurately described as a "misrepresentation" than an omission. There is no dispute that **HN5[↑]** ERISA fiduciaries, in making fiduciary

(CAC ¶ 374; Doc. Nos. 160, 161 ("Reply"), at 10-12.)

(3) A "SEC filings misrepresentation" theory: that Plan documents incorporated by reference and encouraged participants to consult BP's SEC filings which contained affirmatively misleading statements.[5]

(CAC ¶¶ 374-75.)

In their motion for leave to amend, Plaintiffs claim to have abandoned their "SEC filings misrepresentation" theory. (Mot. at 2, 8-9.) This decision is mandated by the Court's 2012 ruling that the SEC filings were not "fiduciary communications" actionable under ERISA. (2012 MTD Order at 36-42; 2012 MLA Order at 16-18.) Plaintiffs intend to pursue, however, their "omission" and "Plan documents misrepresentation" theories, which they lump together in their briefing to the Court. (Mot. at 8-9; Reply at 10-12.) Both are framed as violations of Defendants' fiduciary duties of prudence and loyalty, as well as of ERISA-specific disclosure requirements set by statute and regulation.[6]

(CAC ¶ 371.)

As noted by Defendants, Plaintiffs' "omission" theory of liability is not new. **[*78]** The Consolidated Complaint also alleged that Defendants failed to disclose relevant information to Plan participants, in violation of ERISA. (*E.g.*, Doc. Nos. 57, 58, at ¶ 396.) Moreover, Plaintiffs' legal arguments regarding the actionability of Defendants' "omissions" under ERISA—predicated

communications, are forbidden from lying to Plan participants. See *Varity Corp. v. Howe, 516 U.S. 489, 506, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)* ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in *section 404(a)(1) of ERISA*.") (internal quotation marks and citation omitted); *see also In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003)* ("An ERISA fiduciary may not knowingly present false information regarding a plan investment option to plan participants. There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock.").

[5] These alleged misstatements are, by and large, the same alleged **[*77]** misstatements at issue in the MDL 2185 securities fraud cases.

[6] As an aside, neither claim is credibly pled against Defendants not alleged to be privy to the relevant insider information. Although Plaintiffs broadly assert that the Defendants "should have known" about the insider information (*e.g.*, CAC ¶ 374), this boilerplate, conclusory allegation is not sufficiently substantiated to meet the plausibility standard of *Twombly* and *Iqbal*.

largely on *Sections 101 et seq.*, which set forth disclosure and reporting requirements for plans covered by ERISA—were presented to the Court in 2012, both in the context of Plaintiffs' opposition to Defendants' motion to dismiss and in the context of Plaintiffs' request for leave to amend their complaint. (Doc. No. 138, at 50; Doc. No. 118, at 6-7.)

The Court's order dismissing the Consolidated Complaint addressed the "omission" theory of Count II in the following footnote:

Plaintiffs do not allege any violation of [ERISA's disclosure and reporting scheme.] Instead, they argue Defendants breached ERISA's general duty of loyalty through their failure to disclose "investment risks of employer stock." (Doc. No. 102, at 24.) As the Fifth Circuit has recognized, "the express language of ERISA 'provides little indication as to whether there is ever a fiduciary duty to disclose information to participants and beneficiaries.'" **[*79]** *Kujanek v. Houston Poly Bag I, Ltd., 658 F.3d 483, 488 (5th Cir. 2011)* (quoting *Martinez v. Schlumberger, Ltd., 338 F.3d 407, 412 (5th Cir. 2003))*. Looking to the law of trusts, the Circuit has noted that an ERISA fiduciary has a duty to disclose "material facts affecting the interest of the beneficiary which the fiduciary knows the beneficiary does not know but needs to know for his protection." *Id.* However, the Fifth Circuit has confined application of this principle to cases in which a fiduciary withholds material information *related to the plan. See, e.g., Kujanek, 658 F.3d at 488* (finding violation of fiduciary duty where employer withheld plan documents and rollover form); *see also Citigroup, 662 F.3d 128, at 143* ("We decline to broaden the application . . . to create a duty to provide participants with nonpublic information pertaining to specific investment options.").

(2012 MTD Order at 37 n.17 (emphasis original).) Plaintiffs assert that the Court has never addressed the "omission" theory of liability. (Mot. at 9.) They are mistaken. For purposes of clarity, however, the Court will address at greater length why Plaintiffs' ERISA-based disclosure claims are futile in light of Fifth Circuit case law.

*Section 404(a) of ERISA* sets forth the fiduciary duties required of plan fiduciaries:

HN6[↑] (a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a [*80] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

_29 U.S.C. § 1104(a)(1)(A)-(B)_.[7]

_HN7_[⬆] _Section 404(a)(1)(A)_ is known as the "duty of loyalty." _Section 404(a)(1)(B)_ is known as the "duty of prudence."

_HN10_[⬆] _Section 404(a)_ contains no explicit duty of disclosure, and previous ERISA plaintiffs' [*81] efforts to imbue the statute with such a duty have generally been unsuccessful at the Fifth Circuit. For example, in _Ehlmann v. Kaiser Foundation Health Plan of Texas_, the Fifth Circuit rejected an argument that _Section 404(a)_ encompassed a duty to disclose information not specifically included in the detailed disclosure and reporting requirements of _Sections 101-111_. _See 198 F.3d 552, 554-56 (5th Cir. 2000)_. The Fifth Circuit relied, in part, on the "general principle of statutory construction that more specific provisions in a statute govern over those generally worded." _Id. at 555_. Similarly, in _Martinez v. Schlumberger, Ltd._, the Fifth Circuit found that ERISA fiduciaries were under no obligation to

---

[7] _Section 404(a)(1)_ contains two more provisions, not relevant here:

- _HN8_[⬆] _Section 404(a)(1)(C)_ contains a duty to diversify. Pursuant to _Section 404(a)(2)_, the duty to diversify does not apply in the case of EIAPs.

- _HN9_[⬆] _Section 404(a)(1)(D)_ instructs fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." Case law acknowledges that this requirement is subordinate to the overriding duties of loyalty and prudence. _See, e.g., Dudenhoeffer, 134 S. Ct. at 2468_.

disclose prospective plan changes because "ERISA itself, which includes broad disclosure duties on the part of an employer-administrator, omits mention of any duty on the part of an employer-administrator to disclose that it is considering amending the plan." _338 F.3d 407, 429 (5th Cir. 2003)_.

There appear to be exceptions to this general rule, although the exceptions are more theoretical than defined in the case law. In _Ehlmann_, for example, the Fifth Circuit suggested that _HN11_[⬆] a non-enumerated, _Section 404_-based disclosure requirement may exist if a plan participant made "specific inquiry," or if there [*82] were some other kind of "special circumstance." _198 F.3d at 556_; _see also Kopp v. Klein, 722 F.3d 327, 342 (5th Cir. 2013)_ ("We have explicitly refused . . . to judicially engraft onto ERISA's duty of loyalty a 'broad duty to disclose that would apply _regardless of special circumstance or specific inquiry._'") (quoting _Ehlmann, 198 F.3d at 556_) (emphasis added). The phrase "special circumstances" is necessarily amorphous, but may be limited to circumstances that threaten an "'extreme impact' on the plan as a whole." _In re Enron Corp. Secs., Deriv., & ERISA Litig., 284 F. Supp. 2d 511, 559 (S.D. Tex. 2003)_; _see also McDonald v. Provident Indem. Life Ins. Co., 60 F.3d 234, 237 (5th Cir. 1995)_ (recognizing a _Section 404_-based obligation to disclose a new rate schedule which "would have resulted in prohibitive premiums for any small employer experiencing a single catastrophic claim").

Despite this near-universal refusal to superimpose a duty of disclosure on top of the fiduciary duties established by _Section 404(a)_, the Fifth Circuit appears to have done just that in _Kujanek v. Houston Poly Bag I, Ltd., 658 F.3d 483 (5th Cir. 2011)_. In _Kujanek_, the defendant—the plaintiff's former employer—never provided him with plan documents or the forms necessary to complete a "roll-over" distribution of his vested benefits pursuant to a profit-sharing plan, despite explicit requests for the information. _See id. at 485_. _HN12_[⬆] The Fifth Circuit noted that "'trust principles impose a duty of disclosure upon an ERISA fiduciary when there are material facts [*83] affecting the interest of the beneficiary which the fiduciary knows the beneficiary does not know but needs to know for his protection.'" _Id. at 488_ (quoting _Martinez, 338 F.3d at 412_). It is not clear why the Fifth Circuit relied upon undefined "trust principles" in _Kujanek_ as the foundation for defendant's "duty of disclosure," as the non-disclosure in that case would appear to be covered by ERISA's disclosure and reporting scheme. _See id. at 490_ (instructing lower court to consider whether

defendant's alleged failure to provide plan documents violated *ERISA Section 104(b)(1))*. Perhaps the court meant to signal that any violation of ERISA's disclosure and reporting scheme would also constitute a breach of fiduciary duty under *Section 404(a)*. This would be supported by language in *Ehlmann*, which acknowledges that the disclosure obligations found in the common law of trusts—the baseline law onto which ERISA was grafted—were deliberately altered by Congress when it created the detailed disclosure and reporting scheme in *Sections 101-111*. *See 198 F.3d at 556* ("In enacting the specific disclosure provisions of ERISA, Congress has made the modifications it deems appropriate. Thus, this court will not add a specific disclosure requirement to those already enumerated.").

In any event, **HN13**[↑] although *Ehlmann* [*84] and *Kopp* contemplate that there could be a fiduciary duty of disclosure in the presence of "specific inquiry" or "special circumstance," and although "trust principles" formed the basis of a fiduciary duty of disclosure in *Kujanek*, it appears that the opening for *Section 404*-based disclosure claims in the Fifth Circuit is narrow indeed. Specifically, it would seem that the duty of disclosure is confined to disclosure of *Plan-related* information—that is, information outlined in ERISA's detailed disclosure and reporting scheme—as opposed to information specific to a particular investment option. The Second Circuit has expressly drawn this line:

Plaintiffs . . . argue that defendants violated ERISA's more general duty of loyalty, *29 U.S.C. § 1104(a)(1)*, by failing to provide participants with information regarding the expected future performance of Citigroup stock. They rely on cases stating, in broad terms, that fiduciaries must disclose to participants information related to the participants' benefits. *See, e.g., Dobson v. Hartford Fin. Servs. Grp., Inc., 389 F.3d 386, 401 (2d Cir. 2004)* ( "A number of authorities assert a plan fiduciary's obligation to disclose information that is material to beneficiaries' rights under a plan . . .").

The cases cited by plaintiffs are inapposite for two reasons. First, in many of them, the court imposed a duty to inform at least in part because further information was necessary to correct a previous misstatement or to avoid misleading participants. *See, e.g., Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 10 (2d Cir. 1997)* (relying in part on the "materially misleading information" provided by a "benefits counselor" to conclude "that Kodak breached its fiduciary duty to provide Becker with

complete and accurate information about her retirement options"). Second, all of the cases cited by plaintiffs relate to administrative, not investment, matters such as participants' eligibility for defined benefits or the calculation of such [*85] benefits; none require plan fiduciaries to disclose nonpublic information regarding the expected performance of a plan investment option. *See, e.g., Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88-89 (2d Cir. 2001)* (holding that an employer may be liable for misstatements or omissions about the availability of lifetime life insurance benefits); *Estate of Becker, 120 F.3d at 9-10* (imposing liability based on an employer's providing misleading information about participants' eligibility for lump-sum retirement benefits).

**HN14**[↑] ] *We decline to broaden the application of these cases to create a duty to provide participants with nonpublic information pertaining to specific investment options.*

*In re Citigroup ERISA Litig., 662 F.3d 128, 142-43 (2d Cir. 2011)* (emphasis added); *see also Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1284-86 (11th Cir. 2012)* (agreeing with Second Circuit's decision in *In re Citigroup* because alternative rule would "convert[] fiduciaries into investment advisors"). While the Fifth Circuit has not been so direct as the Second and Eleventh Circuits, it recently declared, in an ERISA case involving employer stock, that "[n]o general duty to disclose non-public information exists under ERISA or under our precedents." *See Kopp, 722 F.3d at 343*.[8]

 And *Kujanek*, which recognized a *Section 404(a)*-based duty of disclosure, involved the withholding of *Plan-related* documents likely covered by ERISA's detailed disclosure and reporting scheme. Thus, in the absence of a specific violation of *Sections 101-111*, Plaintiffs cannot allege a valid disclosure claim, and amendment

---

[8] Plaintiffs have provided one district court case outside the Fifth Circuit which suggests a different conclusion. *See In re Williams Cos. ERISA Litig., 271 F. Supp. 2d 1328, 1343 (N.D. Okla. 2003)* (denying motion to dismiss plaintiffs' disclosure claims because "the duty to disclose, duty to eliminate inappropriate investment options, and duty to avoid a conflict of interest are in effect different aspects of a single fiduciary duty" and "parsing of the alleged actions by the Committee Defendants [i.e., into breaches of the three alleged duties] is not useful at [*86] this stage of the litigation"). In light of *Ehlmann*, *Kujanek*, and *Kopp*, the Court does not find *In re Williams* persuasive.

2015 U.S. Dist. LEXIS 27138, *86

would be futile.

Plaintiffs have identified only one alleged violation of ERISA's disclosure requirements—that Defendants did not provide Plan participants with an accurate assessment of the value of the BP Stock Fund, because they relied upon the market's erroneous, misinformed valuation. Plaintiffs argue that this reliance—at a time when Defendants "knew or should have known" that violations of the securities laws had "impaired" the market price of BP ADSs—is actionable as a violation of ERISA's fiduciary duties and its disclosure scheme. (CAC ¶ 374; Reply at 10-12.) This theory is described above as the "Plan documents misrepresentation" theory. It was not included in the Consolidated Complaint, and was not addressed in the Court's 2012 orders. Leave to amend to add the theory should be denied, however, because it does not plausibly state a claim against any Defendant.

The disclosure obligation at issue is found in *HN15*[↑] *Section 103*, which mandates the components of a plan's annual report. Section 103(b)(3)(A) provides that a "statement of the assets and liabilities of the plan aggregated by categories *and valued [*87] at their current value"* must be attached to the annual report. *29 U.S.C. § 1023(b)(3)(A)* (emphasis added). Defendants note, correctly, that this disclosure obligation inures to the Plan Administrator only. *See 29 U.S.C. § 1024(b)* (requiring the Plan Administrator to provide summary plan descriptions and annual reports to Plan participants according to a specific schedule); *see also generally id. § 1023(a)(2)* (requiring third parties to timely transmit to the administrator "information necessary *to enable the administrator to comply with the requirements of this subchapter"*) (emphasis added). Plaintiffs have not alleged that any other Defendant participated in the preparation, publication, or distribution of the allegedly misleading financial statements. And the only Plan Administrators named as Defendants—Richard Dorazil and Patricia Miller—are not alleged to have been privy to the insider information which purportedly cast doubt on the accuracy of the market price of BP ADSs. (CAC ¶¶ 22, 90.) Therefore, even assuming that it would be plausible to state a claim against a fiduciary with insider knowledge because he or she directed, caused, or permitted Plan communications to cite a market value known to be inaccurate because of that insider [*88] knowledge, Plaintiffs have not adequately alleged such circumstances here.[9]

---

[9] Defendants dispute that even this set of allegations could be

**B. The prudence claims ("Count I")**

Plaintiffs allege that Defendants breached their fiduciary duties of prudence and loyalty by "offer[ing], hold[ing], and acquir[ing]" BP stock at a time when BP ADSs were an "imprudent" investment for Plan participants. (CAC ¶ 4.) They claim the Defendants knew or should have known of the imprudence of the investment because of "publicly available information" as to the riskiness of the ADSs and because of "material non-disclosed information relating to BP's serious mismanagement, securities and environmental violations, and criminal misconduct that caused the BP ADSs to be artificially inflated in price." (*Id.*) The "material non-disclosed information" at issue will be referred to as insider information, and includes: (1) the actual status of safety reforms within BP, including the implementation [*89] of recommendations made by the Baker Panel and BP's new Operating Management Systems ("OMS"); (2) BP's inability to respond to deepwater oil spills; and (3) the actual magnitude of the oil spill postexplosion. (CAC ¶¶ 5, 376.) To the extent that Defendants were unaware of the imprudence of the BP Stock Fund option, Plaintiffs fault them for failing to exercise "procedural prudence"—i.e., for failing to adequately scrutinize the Fund in order to determine if it was prudent to offer it as an investment option. (*Id.* ¶¶ 4, 21.)

Before addressing the plausibility or, conversely, the futility of these articulated theories of liability, it is helpful to view the allegations in factual context. As with the securities fraud cases, the relevant time period here is long: from January 2007 until June 2010. Additionally, as in the securities fraud cases, the April 20, 2010 explosion can be viewed as an inflection point in the timeline. Specifically, Plaintiffs' motion papers hint at how their pre-explosion and post-explosion theories and arguments differ. The graph below depicts the three types of claims across the relevant time period, with citations to Plaintiffs' motion papers.

---

the basis of liability under ERISA. They argue that ERISA required the statement of Plan assets to be valued at "current value"—a term explicitly defined elsewhere in ERISA to mean "fair market value where available." *29 U.S.C. § 1002(26)*. (Doc. Nos. 154, 155 ("Opp."), at 22-23.)



### 1. "Public information" [*90]  prudence claims

To the extent that Plaintiffs allege that Defendants knew or should have known BP ADSs were overvalued based on public information, their claims are not plausible. As explained by the Supreme Court in *Dudenhoeffer:*

> In our view, **HN16**[↑] where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule . . . ERISA fiduciaries, who . . . could reasonably see 'little hope of outperforming the market . . . based solely on their analysis of publicly available information," may, as a general matter, . . . prudently rely on the market price.

*134 S. Ct. at 2471* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.,     U.S.    , 134 S. Ct. 2398, 2411, 189 L. Ed. 2d 339 (2014))* (citations omitted). The Supreme Court did not fully close the door on prudence claims based on public information; it allowed that a "special circumstance" could "affect[] the reliability of the market price" in a way that would "make reliance on the market's valuation imprudent." *Id. at 2472.* But it gave no hint whatsoever of what such a "special circumstance" might be.

In their motion for leave to amend, Plaintiffs invoke *Dudenhoeffer*'s "special circumstance" loophole. (Mot. at 3.) But, like the Supreme **[*91]** Court, they have not put any content behind the talismanic phrase. In other words, they offer no coherent theory as to why the market's valuation of BP based on public information was unreliable—i.e., why the market for BP ADSs was inefficient.

Plaintiffs also urge another theory for imprudence based

on public information—not that BP ADSs were incorrectly valued by the market, but that they were "excessively risky" and "inappropriate" as an investment for retirement accounts. Pre-explosion, this was due to the fact that BP was allegedly more prone to "mishaps" than its peers in the oil and gas industry—making it probable that the Plans would suffer "large losses" in the event of "yet another mishap." (Mot. at 2, 4-5.) Post-explosion, "the sheer risk of the unknown quantity of the spill, BP's inability to determine the quantity of oil being spilled, the ineffective efforts to cap the well, and the vast uncertainty of future liability" made the BP Stock Fund "an intriguing play for speculation" but an imprudent retirement investment. (*Id.* at 5; Reply at 10.)

Defendants argue that risk profile alone is not sufficient to make an investment option imprudent. (Doc. Nos. 154, 155 ("Opp."), **[*92]** at 10.) Although there is language to this effect promulgated by the Department of Labor and included in a Federal Register entry dated June 26, 1979,[10]

such authority is hardly decisive.

Defendants' best authority is *Dudenhoeffer* itself. In that case, plaintiffs asserted that the company's stock was "overvalued" and "excessively risky" because "publicly available information . . . provided early warning signs that subprime lending, which formed a large part of [the company's] business, would soon leave creditors high and dry as the housing market collapsed and subprime borrowers became unable to pay off their mortgages." *134 S. Ct. at 2464.* The Supreme Court indicated that these allegations were implausible because **HN17**[↑] "ERISA fiduciaries . . . may, as a general matter, . . . prudently rely on the market price" as "'an unbiased assessment of the security's value in light of all public information.'" *Id. at 2471-72* (quoting *Halliburton, 134 S. Ct. at 2411*). This passage **[*93]** suggests that employer stock, widely traded in a public marketplace, is an imprudent investment option only if the market is inefficient for some reason.[11]

---

[10] "[G]enerally, the relative riskiness of a specific investment or investment course of action does not render such investment or investment course of action either *per se* prudent or *per se* imprudent." Rules and Regulations for Fiduciary Responsibility; Investment of Plan Assets under the "Prudence" **Rule, 44 Fed. Reg. 37,221, 37,222 (June 26, 1979)**.

[11] *But see* *Gedek v. Perez, 66 F. Supp. 3d 368, 2014 U.S. Dist. LEXIS 174338, 2014 WL 7174249, at *9-10 (W.D.N.Y. Dec. 17, 2014)* (finding that plaintiffs had stated a viable claim

And, as stated above, Plaintiffs have no plausible allegations that the market for BP ADSs was inefficient. Consequently, amendment of Plaintiffs' "public information" prudence claims would be futile, and leave to amend such claims is denied.

## 2. "Insider information" prudence claims

Plaintiffs also posit that Defendants knew, or should have known, that the market price of BP ADSs was distorted due to non-public company information. *HN18*[↑] There are two hurdles that must be cleared before such **[\*94]** "insider information" prudence claims are plausible. First, Plaintiffs must plausibly allege that Defendants had knowledge of the relevant insider information which would indicate that the stock price is distorted. Second, Plaintiffs must plausibly allege that Defendants had a viable, prudent alternative course of action available to them, as outlined by the Supreme Court in *Dudenhoeffer*.

### a. Defendants' knowledge of insider information

In 2012, the Court dismissed Plaintiffs' original iteration of Count I due, in part, to insufficient allegations of Defendants' knowledge of the relevant insider information. (2012 MTD Order at 28-31.) Several months later, in response to Plaintiffs' motion for leave to amend, the Court acknowledged that Plaintiffs' proposed amendments include "new factual allegations suggesting that at least some Defendants were privy to non-public information regarding systemic problems with process safety, company-wide and specifically regarding operations in the Gulf of Mexico, prior to the Deepwater Horizon accident." (2012 MLA Order at 13.) The Court, however, did not address whether those amendments were sufficient to survive scrutiny under *Rule 12*, because another deficiency remained **[\*95]** unaddressed: that BP was never at the brink of financial ruin, as required to overcome the *Moench* presumption. (*Id.*) *HN19*[↑] *Dudenhoeffer* explicitly rejected the notion that employer stock is presumptively prudent

that ESOP fiduciaries breached the duty of prudence when they "chose to remain invested in Kodak stock" which was "on a long, steady, virtually unstoppable downhill slide [and] no prescience or inside knowledge was needed to realize that it would continue to do so"). Even if *Gedek* can be reconciled with *Dudenhoeffer*, the Court finds it to be of limited usefulness. The alleged riskiness of BP's stock simply does not conjure the inevitability of "default, bankruptcy, or worse" present in *Gedek*. *2014 U.S. Dist. LEXIS 174338, [WL] at \*10*.

except in cases of imminent financial disaster:

> [W]e do not believe that the [*Moench* presumption] is an appropriate way to weed out meritless lawsuits or to provide the requisite "balancing." The proposed presumption makes it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious, unless the employer is in very bad economic circumstances. Such a rule does not readily divide the plausible sheep from the meritless goats. That important task can be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations. We consequently stand by our conclusion that the law does not create a special presumption of prudence for [employee stock ownership plan] fiduciaries.

*134 S. Ct. at 2470-71*. *Dudenhoeffer* had no effect, however, on the common sense requirement that ERISA fiduciaries cannot be liable for failing to prevent investment in employer securities which they did not know, and had no reason to know, were overvalued.

The Defendants alleged in the CAC to **[\*96]** have insider information are BP North America, Mr. Hayward, Mr. Shaw, Mr. Dupree, and Mr. McKay. (CAC ¶ 22.) The allegations relevant to each are detailed below. As will become clear, with only one exception, the insider information allegations relate primarily to the theory that BP failed to fully implement the recommendations of the Baker Panel—most importantly, the new "Operating Management System," or "OMS"—despite public assurances to the contrary. Plaintiffs here, as in the securities cases, allege that these misrepresentations and omissions led the market to underestimate BP's risk profile and exposure to catastrophic risk. The other theory present in the securities cases—that BP misrepresented its internal estimates of the oil spill following the Deepwater Horizon explosion—seems not as prominent in this case, if it is present at all.

**ANTHONY HAYWARD.** The allegations against Mr. Hayward—one of the few individual defendants still implicated in the MDL 2185 securities cases—are very familiar to this Court. Beginning in May 2007, Mr. Hayward was the Group Chief Executive of BP p.l.c. (CAC ¶ 61.) He served as Chairman of the BP Group Operations Risk Committee ("GORC")—a cross-business-segment **[\*97]** committee which held monthly meetings and was regularly briefed on accidents and safety breaches across the Group—and as executive liaison to the Safety and Ethics Environment Assurance Committee ("SEEAC")—a committee of Directors tasked

with ensuring that BP's safety protocols were implemented and followed, including the Baker Panel recommendations. (*Id.* ¶ 62.) Due to his position within the Company, Mr. Hayward oversaw development and implementation of BP's new OMS. (*Id.* ¶ 63.) He was aware that OMS was not in place on contractor-owned sites such as the Deepwater Horizon, and that implementation of OMS was not complete as of the date of the explosion. (*Id.* ¶¶ 209-10.) Based on this knowledge and/or access to information, Mr. Hayward has been accused of misleading the market in violation of the securities laws.

According to the CAC, Mr. Hayward was an "Investment Named Fiduciary" and a "Designated Officer" of the Plans.[12]

(CAC ¶ 59.) Given that Mr. Hayward is simultaneously accused of violating the securities laws—which require materiality, scienter, and loss causation—he is adequately alleged to have had the type of insider information which would implicate the ERISA duty of prudence. [*98] *See Harris v. Amgen, Inc., 770 F.3d 865, 877 (9th Cir. 2014)* (HN20 ) "If the alleged misrepresentations and omissions, scienter, and resulting decline in share price in *Connecticut Retirement Plans* [i.e., the securities companion case to *Harris*] were sufficient to state a claim that defendants violated their duties under *Section 10(b)*, the alleged misrepresentations and omissions, scienter, and resulting decline in share price in this case are sufficient to state a claim that defendants violated their more stringent duty of care under ERISA.").

**LAMAR McKAY**. Mr. McKay was the Chairman and President of BP America during [*99] the relevant period, as well as President of BP North America from 2009 until the present. As BP's "lead representative in the United States," he was responsible for U.S-based operations; for implementation of the Baker Report

recommendations in the U.S.; and for compliance with U.S. safety, regulatory, and environmental laws. (CAC ¶¶ 6, 47.) Like Mr. Hayward, he has admitted that he was aware that OMS was not in place on contractor-owned sites such as the Deepwater Horizon. (*Id.* ¶ 209.)

According to the CAC, Mr. McKay acted as a fiduciary for the Plans through most of the relevant period, specifically as a result of his service on the "Savings Plan Investment Oversight Committee," or "SPIOC," and because, as President of BP North America, he was an "Appointing Officer" and "Designated Officer." (CAC ¶ 46.) Although Mr. McKay is not alleged to have himself engaged in public misstatements regarding the Baker Panel or OMS, he is adequately alleged to have knowledge that the Baker-Panel- and OMS-related public representations of others—such as Mr. Hayward—were exaggerated.

**NEIL SHAW**. Mr. Shaw was Senior Vice-President and Strategic Performance Unit ("SPU") Leader in charge of the Gulf of [*100] Mexico division from 2007-2009. Mr. Shaw was also Chief Operating Officer of Developments in the executive office of Global Exploration and Production ("E&P") Unit through the end of the relevant period. (CAC ¶ 84.) Like Mr. Hayward and Mr. McKay, he was allegedly aware that OMS was not in place on contractor-owned sites such as the Deepwater Horizon. (*Id.* ¶ 209.)

Mr. Shaw was a SPIOC member from May 15, 2008 through February 1, 2010. (CAC P 83.) Although Mr. Shaw is not alleged to have himself engaged in public misstatements regarding the Baker Panel or OMS, he is adequately alleged to have knowledge that the Baker-Panel- and OMS-related public misrepresentations of others—such as Mr. Hayward—were exaggerated.

**JAMES DUPREE**. Mr. Dupree followed Mr. Shaw in November 2009 as the Senior VP and SPU Leader of the Gulf of Mexico division; he remained in that position through the remainder of the relevant period. He was also a Board Member of BP America. (CAC ¶¶ 74-75.) Mr. Dupree was a SPIOC member from February 1, 2010 until the end of the relevant period. (CAC ¶¶ 6, 73.)

The Court cannot discern, on the face of the CAC, whether Mr. Dupree is alleged to have been privy to insider [*101] information in the pre-explosion period, the post-explosion period, or both. For instance, although Mr. Dupree is alleged to have been the highest ranking officer responsible for the implementation of OMS in the Gulf (*id.* ¶¶ 74, 211), he is not alleged to

---

[12] Where the Plans authorized BP North America to act, they gave BP North America's Board of Directors and each Designated Officer the authority to act on BP North America's behalf. (CAC ¶ 122.) "Designated Officer" means the President of BP North America; the Vice-President of BP North America; or any other officer to whom BP North America has granted authority to act on its behalf. (*Id.* ¶¶ 126, 131.) Designated Officers are either "Investment Named Fiduciaries" or "Administrative Named Fiduciaries." (*Id.* ¶ 128.) The CAC does not indicate any functional or practical difference between these types of fiduciaries. (*Compare id.* ¶ 129 *with id.* ¶ 130.)

have known that OMS was not in place on contractor-owned rigs (*id.* ¶ 209). Thus, it is unclear whether Plaintiffs believe him to have had insider information relevant in the pre-explosion period. Similarly, as to the post-explosion period, Mr. Dupree is alleged to have been part of BP's post-explosion business support team and to have headed up BP's source control efforts: attempts to locate and control the source of hydrocarbons. (*Id.* ¶¶ 218-19.) But he is not specifically alleged to have had insider knowledge relevant to the purported "spill rate" fraud.

Given these ambiguities, the Court finds the "insider information" allegations against Mr. Dupree much less compelling than those against Mr. Hayward, Mr. McKay, and Mr. Shaw. In response to the Court's questioning at oral argument, Plaintiffs specified that Mr. Dupree *should have known* that OMS was not implemented, based upon his leadership position in the Gulf of Mexico. (Transcript of December **[*102]** 17, 2014 Hearing ("Trans.") at 25.) But this allegation is not clearly stated in the CAC. Likewise, to the extent Plaintiffs contend that Mr. Dupree knew or should have known that the public statements regarding BP's internal spill rate estimates were inaccurate, based upon his role on the post-explosion response team, they must include specific allegations to that effect in their amended pleading.

The other defendants are not alleged to have specific insider information. Nonetheless, Plaintiffs indicate they wish to pursue "insider information" prudence claims against them, based on a theory that they *would have known* about the relevant information if they had adequately investigated the prudence of the BP Stock Fund investment option. (Trans. at 29-30.) The Court will address the merits of this argument in the section devoted to Plaintiffs' "procedural prudence" claims, below.

**b. Availability of legal, "prudent" alternatives**

**HN21**[⬆] At the same time the Supreme Court took away the defense-friendly *Moench* presumption in *Dudenhoeffer*, it articulated a "new" defense which could, theoretically, be deployed at the pleading stage. Specifically, the Supreme Court directed lower courts to carefully **[*103]** screen ERISA complaints involving employer stock funds to determine whether they plausibly allege that the defendant "acted imprudently." *134 S. Ct. at 2471.* The Supreme Court clarified that, in cases based on insider information, the plaintiff has not

stated a claim unless he "plausibly allege[s] an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id. at 2472.* Defendants' opposition to Plaintiffs' motion for leave to amend focuses heavily on this aspect of *Dudenhoeffer*, arguing that "the fundamental deficiency of Plaintiffs' proposed amended complaint is that there are no well pleaded factual allegations that the fiduciaries here 'could not have concluded that' potential alternative actions 'would do more harm than good to the fund.'" (Doc. No. 166 ("Sur-Reply"), at 5 (quoting *Dudenhoeffer, 134 S. Ct. at 2473*).)

Plaintiffs have included a new "Causation" section in the CAC which details the alternative actions allegedly available to Defendants.[13] These include:

- **Freezing, Limiting, or Restricting Company Stock Purchases**. BP North America, acting through the Designated **[*104]** Officers and SPIOC, had authority to add, delete, freeze, or liquidate the BP Stock Fund if it determined that BP ADSs were no longer a prudent investment. (CAC ¶ 341.) Additionally, the BP Stock Fund was permitted under the Investment Strategy Guidelines to include cash equivalents, short term lines of credit, other public and private debt and equities securities, options, and future contracts. (*Id.* ¶ 343.) Plaintiffs contend that Defendants should have directed all contributions to the BP Stock Fund be held in cash rather than used to purchase ADSs, because such a decision would not have implicated the insider trading laws and would not have required any public disclosures that could negatively affect the stock price. (*Id.* ¶¶ 344-46.) Alternatively, Plaintiffs allege that Defendants should have closed the BP Stock Fund to further contributions and directed funds to other investment

---

[13] The CAC periodically references the possible "divestment" of the BP Stock Fund (CAC ¶¶ 157, 310, 317, 366), but does not include it as an available alternative under the "Causation" **[*106]** section. The omission is necessary under *Dudenhoeffer. See 134 S. Ct. at 2472* (**HN22**[⬆]) "ERISA's duty of prudence cannot require an [employee stock ownership plan] fiduciary to perform an action—such as divesting the fund's holding of the employer's stock on the basis of insider information—that would violate the securities laws.") (citations omitted).

alternatives. (*Id.* ¶ 347.)

• **Disclosure**. Plaintiffs allege that Defendants should have made a complete and accurate disclosure of negative insider information, so the BP ADS market price could accurately reflect its value. Plaintiffs suggest that the stock price drop that would have accompanied the disclosure **[*105]** would have been less severe than what occurred during the Deepwater Horizon disaster. Plaintiffs also allege that the stock price would not have suffered from market distrust of BP, as allegedly occurred during the Deepwater Horizon disaster. (CAC ¶¶ 348-49.)

• **Hedging**. Plaintiffs allege that Defendants should have engaged in various hedging strategies to protect against the risk of holding a concentrated position in what was, based on publicly known information, a risky investment. (CAC ¶ 350.)

• **Other options**. Plaintiffs allege that Defendants could have:
  • Sought guidance from governmental agencies (such as the Department of Labor or the Securities and Exchange Commission);
  • Resigned as fiduciaries of the Plan;
  • Retained outside experts to serve as investment advisors or independent fiduciaries;
  • Retained outside experts in oil and gas and deepwater exploration to serve as advisors or independent fiduciaries; or
  • Limited participant accounts to a maximum percentage investment in the BP Stock Fund. (CAC ¶ 351.)

The Court will focus its attention on the first two alternatives: freezing, limiting, or restricting company stock purchases, and disclosure.[14]

---

[14] The Court does not find plausible the other alleged alternatives. To summarize briefly:

• Defendants argue, and the Court agrees, that it would have violated the insider trading laws to have hedged against an anticipated drop in BP's stock price *based on insider information*. (Opp. at 18-19.)

• Plaintiffs' suggestion that Defendants should have retained outside investment advisors is perplexing, given that State Street Global Advisors ("SSgA") was employed in exactly that capacity throughout the relevant period. To the extent that Plaintiffs fault Defendants for not providing SSgA with insider information, they have simply shifted the question, rather than answered it. SSgA was as

*Dudenhoeffer* states, first, that any alleged alternative must be consistent with the securities laws (and, ostensibly, ERISA). There is no question that it would have been consistent with the securities laws to remove the BP Stock Fund as an investment option, so long as Plan participants (and, by extension, the public) were so informed. (Opp. at 15-17.) Similarly, there is no question that it would have been consistent with the securities law—if unorthodox—to disclose insider information to the market and allow it to be priced into the value of the stock. (*Id.* at 13-15.) The only dispute, then, is whether Defendants could have used the previously-disclosed liquidity buffer in the BP Stock Fund to prevent further investment **[*107]** in BP stock without disclosure to Plan participants (and, by extension, the public).

As described in the Investment Options Guide, the BP Stock Fund included "cash and short-term investments"—and could include "other public and private debt and equity derivatives"—in order to "provide liquidity to handle participant transactions on a daily basis." (Doc. Nos. 92-2—92-6 (the "IOG"), at 35.)[15]

This liquidity buffer was disclosed as being, generally, less than 5% of the value of the Fund. (*Id.*) Plaintiffs argue that Defendants could have directed participants' contributions to the BP Stock Fund to the liquidity buffer, thereby avoiding the purchase of BP ADSs at inflated prices, without informing participants of that decision.

---

constrained by the securities laws as Defendants.

• The Court also agrees with Defendants that imposing a "cap" on participants' investment in the BP Stock Fund would be contrary to *ERISA § 404(a)(2)*, which exempts EIAP fiduciaries from any duty to diversify. (Opp. at 19.) Moreover, although the alleged harm would have been *limited*, it would not have been *eliminated*. The same fundamental question would have remained: should the BP Stock Fund have **[*108]** been available as an investment option?

• Finally, the remaining proposed alternatives are not adequately alleged to have produced any tangible benefits to Plan participants. **HN23[↑]** The Court cannot accept that the difficult question posed by *Dudenhoeffer*—i.e., what would or could a prudent fiduciary in these circumstances have done—is answerable by purely cosmetic efforts.

[15] The Court relies upon the contents of the Investment Options Guide because it is central to Plaintiffs' claim that Defendants could have kept Participants' contributions to the BP Stock Fund in cash without necessitating public disclosure. *See Collins, 224 F.3d at 498-99.*

Plaintiffs acknowledge that _HN24_[↑] ERISA required Defendants to inform Plan participants of "any material modification in the terms of the [Plans]," _29 U.S.C. §§ 1022(a)_, _1024(b)(1)_, but contend that the Investment Options **[*109]** Guide already informed participants that an undisclosed percentage of the Fund would be invested in non-ADS assets. According to Plaintiffs, a decision to direct further contributions be held in cash would not have been a material alteration of the Plans. (Trans. at 34-35.)

The Court cannot agree. Although the Investment Options Guide disclosed that the investment manager would have discretion to "determine[] the appropriate level of liquidity," it also noted that the discretion would be exercised "while attempting to meet the Fund's investment objective"—to "match the investment return of BP American Depository Shares (ADSs)." (IOG at 35.) Funneling participants' contributions to the liquidity buffer would have fundamentally changed the nature of the investment, and systematically following this course of action—particularly over the roughly three-and-a-half-year period that Plaintiffs contend the price of BP ADSs was inflated—without informing **[*110]** the Plan participants would have been inconsistent with Defendants' disclosure obligations under ERISA. Thus, while Defendants could have directed further contributions to the BP Stock Fund be held in cash or other assets, they would have had to disclose the decision to Plan participants and, by extension, the public marketplace. In effect, this option would have been no different than removing the BP Stock Fund as an investment option.

The Court concludes that Plaintiffs have identified alternatives to inaction which were consistent with the securities laws and ERISA, but that each alternative would have required public disclosure. It is undisputed that public disclosure would have led to _some_ negative effect on the price of BP ADSs. (_E.g._, CAC ¶ 348.) This brings into focus the second, more difficult _Dudenhoeffer_ requirement: that any alleged alternatives must be "prudent." Defendants argue that Plaintiffs have not plausibly alleged any alternative that a prudent fiduciary "_could not have concluded_ . . . would have done more harm than good to the BP Plans as a whole . . . given the undisputed adverse impact that [it] would have had on the Plans' large, pre-existing holdings of BP **[*111]** stock." (Opp. at 2 (emphasis original).)

Defendants' argument is based on the following excerpt from _Dudenhoeffer_:

[L]ower courts faced with [these] claims should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position _could not_ have concluded that [the alternative action] would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.

_134 S. Ct. at 2473_ (emphasis added). Defendants believe that this wording effectively puts a thumb on the scale in EIAP fiduciaries' favor. In other words, Defendants read _Dudenhoeffer_ as creating a new kind of presumption—a presumption that alternatives such as freezing the company stock fund or disclosing insider information "would cause more harm than good," which Plaintiffs must "plausibly allege otherwise to avoid dismissal." (Sur-Reply at 5.) Defendants contend that Plaintiffs' allegations are insufficient to overcome the baseline presumption of "more harm than good."

Not surprisingly, Plaintiffs offer a different interpretation of _Dudenhoeffer_. Plaintiffs suggest that they need only plausibly allege that a prudent fiduciary in the **[*112]** same circumstances _would have_ viewed the proposed alternative as more likely to help the Fund than harm it. (Reply at 3.) They emphasize that, in the context of a Rule 12(b)(6) motion to dismiss, all reasonable inferences must be drawn in their favor. (_Id._)

The Court has struggled with the relevant language in _Dudenhoeffer_. To the extent that the semantics of "would not have" versus "could not have" actually matter—to the extent that they even signal a different level of pleading—_Dudenhoeffer_ itself is inconsistent. _Compare 134 S. Ct. at 2472_ ("[A] plaintiff must plausibly allege an alternative action . . . that a prudent fiduciary in the same circumstances _would not have_ viewed as more likely to harm the fund than help it." (emphasis added)) _with id. at 2473_ ("[T]he complaint [must] plausibly allege[] that a prudent fiduciary in the defendant's position _could not have_ concluded that [the alternative action] would do more harm than good to the fund." (emphasis added)). More importantly, however, the Court is not sure how to meaningfully deploy _either_ construction on the face of the pleading. The Supreme Court clearly anticipated that its decision in _Dudenhoeffer_ would assist lower courts as they attempt to separate the "plausible **[*113]** sheep from the meritless goats." _Id. at 2470_. The question of how a fiduciary would have or could have weighed relative harm to relative good, however, is difficult—if not impossible—to resolve on the pleadings. As Plaintiffs

note, in the context of the proposed alternative of freezing the BP Stock Fund:

> Company stock funds may be frozen for many reasons. When a fund should be frozen and/or disclosures made, the contents of disclosures and the impact on the stock price are subject to expert proof. These matters should not be decided on a pleading motion based entirely on Defendants' speculation of whether freezing the stock fund may cause more harm than good.

(Reply at 6.)

The Court feels caught between two untenable positions. If it adopts Defendants' construction of *Dudenhoeffer*, the standard is virtually insurmountable for all future plaintiffs—"plausible sheep" included. Defendants' counsel conceded as much at oral argument, postulating that one of the only situations in which a EIAP fiduciary "could not have" concluded that public disclosure of insider information would do more harm than good is when the company is so new that the employee benefit plans have not accumulated large amounts **[*114]** of pre-existing stock. (Trans. at 53-55.)

Plaintiffs' position is also problematic. The alternatives they propose—freezing the company stock fund, or disclosing insider information—would be available in almost any case. And in any case, the weighing of harm versus good is inherently fact-specific and subject to expert analysis. In other words, Plaintiffs would turn the filter of *Dudenhoeffer* into a tap, forcing EIAP fiduciaries to wait until summary judgment for relief from meritless lawsuits.

With some consternation, then, the Court resorts to the general pleading guidance of *Twombly* and *Iqbal*. As noted above, the CAC plausibly alleges that—at a minimum—Mr. Hayward, Mr. McKay, and Mr. Shaw were aware that the public relations campaign surrounding the Baker Panel recommendations and OMS was overselling the safety reforms which were enacted. For Mr. Hayward, alleged to have had a starring role in the campaign, the proposed alternative of disclosing insider information is not an extraordinary or unorthodox measure; it is, in the words of the Ninth Circuit, a point of harmony between ERISA and the securities laws:

> If defendants had revealed material information in a timely fashion to the general **[*115]** public (including plan participants), thereby allowing informed plan participants to decide whether to invest in the [company stock fund], they would have

simultaneously satisfied their duties under both the securities laws and ERISA.

*Harris, 770 F.3d at 878-79*.

Mr. McKay and Mr. Shaw present a more difficult case. The Court is sensitive to its responsibility not to let claims against Mr. McKay and Mr. Shaw continue on the "sheer possibility" that they violated their fiduciary obligations to the Plans. *See Iqbal, 556 U.S. at 678*. But it also cannot determine, on the basis of the pleadings alone, that *no* prudent fiduciary would have concluded that removing the BP Stock Fund as an investment option, or fully disclosing the state and scope of BP's safety reforms, would do more good than harm. **HN25**[↑] Although *Twombly* and *Iqbal* require Plaintiffs to present more than "labels and conclusions" or a "formulaic recitation of the elements," dismissing an action on the basis of the pleadings alone remains a draconian measure, "'viewed with disfavor'" and "'rarely granted.'" *Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011)* (quoting *Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009))*. The Court will allow amendment of the prudence claims against Mr. Hayward, Mr. McKay, and Mr. Shaw, as well as the corporate and organizational defendants on behalf **[*116]** of which they acted in their fiduciary capacity.[16]

## 3. Procedural prudence claims

Finally, the CAC alleges that Defendants failed to exercise "procedural prudence"—specifically, Defendants never engaged in a good faith review of the prudence of the BP Stock Fund, which was a violation of their fiduciary duties. (*E.g.*, CAC ¶¶ 4, 21.) Defendants have vigorously attacked the accuracy of this allegation.[17]

---

[16] If Plaintiffs are able to address the deficiencies in their allegations regarding Mr. Dupree's knowledge of insider information, *see* Section III(B)(2)(a) above, the insider information prudence claims against him may also be amended.

[17] They also dispute its premise—that Defendants bore "'responsibility for managing' the BP Stock Fund"— because **[*117]** "complete" investment authority had been delegated to State Street Global Advisors. (Opp. at 5.) Plaintiffs counter that "[u]nder the Plans' terms, Defendants unequivocally retained the ultimate responsibility for the Fund and the discretion to freeze, restrict, or eliminate the Fund."

They note that BP employed an independent investment advisor—State Street Global Advisors ("SSgA")—throughout the relevant time period. (Opp. at 5.) Additionally, Defendants have filed SPIOC meeting minutes; reports from SSgA; and other documents from before and after the explosion which suggest that the prudence of the BP Stock Fund was a regular topic of discussion at the SPIOC and between the SPIOC and SSgA. (*Id.;* Doc. Nos. 154-2, 154-3 ("Opp. Ex. A").)

Oddly, this theory is not directly addressed in Plaintiffs' reply. But case law is clear that the Court must confine its analysis to the CAC and limited outside documents. *See* Collins, 224 F.3d at 498-99 (indicating that **HN26**[⬆] a district court, resolving a Rule 12(b)(6) motion to dismiss, may consider documents "referred to in the plaintiff's complaint and . . . central to her claim") (internal quotation marks and citation omitted).

Although there are periodic references to "the minutes of the SPIOC" throughout the CAC, such minutes are never directly cited as the foundation of Plaintiffs' allegations **[*118]** of procedural imprudence. At a minimum, those allegations are found in the following two paragraphs of the CAC:

> • "[T]he Plan Administrator and the SPIOC knew they should periodically evaluate investment options, they knew they had authority to change investment options, and they exercised that authority. They did not, however, subject the BP Stock Fund to the scrutiny given to other investment options." (CAC ¶ 139.)

> • "To the Plaintiffs' detriment, the SPIOC did not monitor or evaluate the BP Stock Fund as an investment option." (*Id.* ¶ 140.)

Because the SPIOC minutes are not "central" to Plaintiffs' allegations that Defendants failed to exercise procedural prudence, the Court will not consider the documents filed as "Exhibit A" to Defendants' opposition brief.

Defendants' only other argument is that Plaintiffs have not met the pleading standards established in *Dudenhoeffer*. (Trans. at 5-6.) *Dudenhoeffer*, however, did not address procedural prudence claims, to the extent such claims were present in the case.

Defendants' point may be that Plaintiffs cannot proceed on their procedural theory without first identifying a prudent alternative, consistent with the securities laws, which would have **[*119]** been available to Defendants, had they subjected the BP Stock Fund to scrutiny and realized that it was an improvident investment. Defendants may well be correct. But, as noted above, the Court finds that Plaintiffs have met this requirement of *Dudenhoeffer*. Having been given no other authority for the futility of Plaintiffs' procedural prudence claims, the Court will allow the amendment.

## C. The monitoring claims ("Count III")

Finally, the CAC alleges that certain Defendants failed to adequately "monitor other persons to whom responsibility for management and administration of Plans' assets was delegated, including [SSgA.]" (CAC ¶¶ 25, 383-93.) Defendants argue that amendment of the monitoring claims is futile because the law regarding these claims has not changed, and because the allegations specific to the monitoring claims is identical to those found deficient by the Court in 2012. (Opp. at 24.) But the Court's prior dismissal of the monitoring claims was based upon the lack of a "primary" violator who had not been properly monitored. (2012 MTD Order at 42.) This deficiency has been rectified, at least on the face of the amended pleading. Because the Court has allowed Plaintiffs to amend their **[*120]** prudence claims, it cannot accept Defendants' argument for the futility of their monitoring claims. Leave to amend Count III will be granted, and Defendants may challenge the viability of Plaintiffs' monitoring allegations through a successive Rule 12 motion, if they so desire.

## IV. *SECTION 1292(b)* CERTIFICATION

For the reasons stated in the Court's order granting Defendants' Motion to Certify Interlocutory Appeal (Doc. No. 171), also issued this day, the Court certifies this amended memorandum and order for immediate appeal under *28 U.S.C. § 1292(b)*. The Court respectfully identifies the following question as appropriate for interlocutory appellate review pursuant to *Section 1292(b)*:

> What plausible factual allegations are required to meet the "more harm than good to the fund" pleading standard articulated by the Supreme Court in *Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2472-73, 189 L. Ed. 2d 457 (2014)*.

---

(Doc. Nos. 160, 161 ("Reply"), at 3.) This is a factual dispute; either Defendants had concurrent discretionary authority with SSgA, or they fully delegated that authority to SSgA. Plaintiffs allege the former. (*E.g.,* CAC ¶¶ 109, 112-21.) Because Defendants have given no credible reason to disregard this factual allegation, it must be accepted as true.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Leave to File Amended Complaint (Doc. Nos. 152, 153) insofar as it requests leave to amend Count II, denominated as the "disclosure claims" against all Defendants. In light of Fifth Circuit case law, amendment of Count II would be futile. As to Counts I and III—denominated as the "prudence claims" and "monitoring claims," respectively—Plaintiffs' **[*121]** Motion (Doc. Nos. 152, 153) is **GRANTED IN PART**. Plaintiffs have twenty-eight days to file an amended complaint in accordance with this memorandum and order. Defendants may then move to dismiss the amended complaint within the time allotted by *Federal Rule of Civil Procedure 12*, but may not raise any arguments addressed and resolved in the course of this order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the fourth day of March, 2015.

/s/ Keith P. Ellison

KEITH P. ELLISON

UNITED STATES DISTRICT JUDGE

---

 Neutral
As of: October 30, 2018 2:07 PM Z

## *In re Cobalt Int'l Energy, Inc. Sec. Litig.*

United States District Court for the Southern District of Texas, Houston Division

March 10, 2017, Decided; March 10, 2017, Filed; Entered

CIVIL ACTION NO. H-14-3428

**Reporter**
2017 U.S. Dist. LEXIS 34437 *

IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION

**Prior History:** *In re Cobalt Int'l Energy, Inc. Sec. Litig., 2016 U.S. Dist. LEXIS 5702 (S.D. Tex., Jan. 19, 2016)*

## Core Terms

motion to amend, deadline, Amend, substantial reason, district court, leave to amend, file a motion, new claim, Securities, discovery, amendment of a pleading, amended pleading, general practice, undue prejudice, undue delay, deny leave, bad faith, automatic, briefing, dilatory, opposing, promptly, parties, futile, motive, Reply

**Counsel:** **[*1]** St. Lucie County Fire District Firefighters' Pension Trust Fund, Plaintiff, Pro se.

For Fire and Police Retiree Health Care Fund, San Antonio, on behalf of themselves and all others similarly situated, Plaintiff: Gerald T Drought, Martin & Drought PC, San Antonio, TX.

For KBC Asset Management NV, Universal Investment Gesellschaft m.b.h., Plaintiffs: Matthew Christopher Matheny, LEAD ATTORNEY, Provost Umphrey, Beaumont, TX.

For Equity-League Pension Trust Fund, Plaintiff: Allan Brent Diamond, LEAD ATTORNEY, Diamond McCarthy LLP, Houston, TX.

GAMCO Global Gold, Natural Resources & Income Trust, Plaintiff, Pro se.

GAMCO Natural Resources, Gold & Income Trust, Plaintiff, Pro se.

Sjunde AP-Fonden, Plaintiff, Pro se.

For Joseph H Bryant, James W Farnsworth, John P Wilkirson, Peter R Coneway, Henry Cornell, Jack E Golden, N John Lancaster, Jon A Marshall, Kenneth W Moore, J Hardy Murchison, Michael G France, Kenneth

A Pontarelli, Scott L Lebovitz, Myles W Scoggins, D Jeff Van Steenbergen, Martin H Young, Jr., Kathryn Bailey Hutchison, William P Utt, Cobalt International Energy Inc., Defendants: Daniel David, David D Sterling, LEAD ATTORNEYS, Russell Carter Lewis, Baker Botts LLP, Houston, TX; Amy **[*2]** Pharr Hefley, Baker Botts, Houston, TX.

For Goldman Sachs Group, Inc., Defendant: Adam D Gold, George T Conway, III, LEAD ATTORNEYS, Wachtell, Lipton, Rosen & Katz, New York, NY; Ronald L. Oran, Jr, LEAD ATTORNEY, Strasburger & Price LLP, Houston, TX; Scott Musoff, LEAD ATTORNEY, PRO HAC VICE, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY.

For Riverstone Holdings LLC, First Reserve Corporation, KERN Partners Ltd., GS Capital Partners V Fund, L.P., GS Capital Partners V Offshore Fund, L.P., GS Capital Partners V Institutional, L.P., GS Capital Partners V GmbH & Co. KG, GS Capital Partners VI Fund, L.P., Defendants: Adam D Gold, George T Conway, III, LEAD ATTORNEYS, Wachtell, Lipton, Rosen & Katz, New York, NY; Ronald L. Oran, Jr, LEAD ATTORNEY, Strasburger & Price LLP, Houston, TX.

For The Carlyle Group, Defendant: Robert A Van Kirk, LEAD ATTORNEY, George Anthony Borden, John Sievert Williams, Williams and Connolly LLP, Washington, DC.

For GS Capital Partners VI Offshore Fund, L.P., GS Capital Partners VI Parallel, L.P., GS Capital Partners VI GmbH & Co. KG, Carlyle/Riverstone Global Energy and Power Fund III, L.P., C/R Energy III Cobalt Partnership, L.P., C/R Energy Coinvestment **[*3]** II, L.P., First Reserve Fund XI, L.P., FR XI Onshore AIV, L.P., KERN Cobalt Co-Invest Partners AP LP, Defendants: Adam D Gold, George T Conway, III, LEAD ATTORNEYS, Wachtell, Lipton, Rosen & Katz, New York, NY; Ronald L. Oran, Jr, LEAD ATTORNEY, Strasburger & Price LLP, Houston, TX.

Fpr Riverstone Energy Coinvestment III, L.P.,

Defendant: Adam D Gold, LEAD ATTORNEYS, Wachtell, Lipton, Rosen & Katz, New York, NY; Ronald L. Oran, Jr, LEAD ATTORNEY, Strasburger & Price LLP, Houston, TX.

For Carlyle Energy Coinvestment III, L.P., Defendant: Robert A Van Kirk, LEAD ATTORNEY, George Anthony Borden, John Sievert Williams, Williams and Connolly LLP, Washington, DC.

For C/R Cobalt Investment Partnership, L.P., Defendant: Adam D Gold, George T Conway, III, LEAD ATTORNEYS, Wachtell, Lipton, Rosen & Katz, New York, NY; Ronald L. Oran, Jr, LEAD ATTORNEY, Strasburger & Price LLP, Houston, TX; Russell Carter Lewis, Baker Botts LLP, Houston, TX.

For Goldman Sachs & Co., Defendant: Jay B. Kasner, LEAD ATTORNEY, PRO HAC VICE, Skadden, Arps, Slate, Meagher & Flom LLP (NYC), New York, NY; Noelle M Reed, LEAD ATTORNEY, Skadden Arps et al, Houston, TX.

For Morgan Stanley **[*4]** & Co. LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities LLC, Tudor, Pickering, Holt & Co. Securities, Inc., Deutsche Bank Securities Inc., RBC Capital Markets, LLC, UBS Securities LLC, Stifel, Nicolaus & Company, Incorporated, Capital One Southcoast, Inc., Lazard Capital Markets LLC, Defendants: Jay B. Kasner, LEAD ATTORNEY, PRO HAC VICE, Skadden, Arps, Slate, Meagher & Flom LLP (NYC), New York, NY; Noelle M Reed, LEAD ATTORNEY, Skadden Arps et al, Houston, TX; Scott Musoff, LEAD ATTORNEY, PRO HAC VICE, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY.

For Citigroup Global Markets Inc., Howard Weil Incorporated, Defendants: Noelle M Reed, LEAD ATTORNEY, Skadden Arps et al, Houston, TX; Scott Musoff, LEAD ATTORNEY, PRO HAC VICE, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY.

For Sjunde AP-Fonden, Movant: Johnston de Forest Whitman, Jr, LEAD ATTORNEY, PRO HAC VICE, Kessler Topaz Meltzer & Check, LLP, Radnor, PA; Naumon A Amjed, LEAD ATTORNEY, PRO HAC VICE, Kessler Topaz Meltzer and Check LLP, Radnor, PA.

For GAMCO Global Gold, Natural Resources & Income Trust, GAMCO Natural Resources, Gold & Income Trust, Movants: Jonathan H Beemer, Jordan A Cortez, LEAD ATTORNEYS, **[*5]** Entwistle & Cappucci LLP, New York, NY; Vincent R Cappucci, LEAD ATTORNEY, Entwistle & Cappucci, New York, NY; David R Stickney, PRO HAC VICE, Bernstein Litowitz et al, San Diego,

CA; Jonathan D. Uslaner, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA; Matthew P. Jubenville, Bernstein Litowitz Berger & Grossman LLP, San Diego, CA; Thomas Robert Ajamie, Ajamie LLP, Houston, TX.

**Judges:** NANCY F. ATLAS, SENIOR UNITED STATES DISTRICT JUDGE.

**Opinion by:** NANCY F. ATLAS

# Opinion

### <u>MEMORANDUM AND ORDER</u>

This securities case is before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint ("Motion to Amend") [Doc. # 191], seeking to add a new claim under *Section 20A of the Securities Exchange Act of 1934* against existing Defendants Goldman Sachs Group, Inc., Riverstone Holdings LLC, The Carlyle Group, L.P., First Reserve Corporation, and Kern Partners Ltd. (n/k/a ACM Ltd.) (collectively, "Control Defendants"). The Control Defendants filed responses [Docs. # 196 and # 197] opposing Plaintiffs' Motion to Amend, and Plaintiffs filed a Reply [Doc. # 198]. Having reviewed the record and applicable legal authorities, the Court grants the Motion to Amend.

Plaintiffs filed their Motion to Amend by the January 30, 2017, **[*6]** deadline for amendments to pleadings. *Rule 15(a)* provides that leave to amend pleadings "shall be freely given when justice so requires." *FED. R. CIV. P. 15(a)*; *United States ex rel. Marcy v. Rowan Companies, Inc., 520 F.3d 384, 392 (5th Cir. 2008)*. *Rule 15(a)* "evinces a bias in favor of granting leave to amend." *Carroll v. Fort James Corp., 470 F.3d 1171, 1175 (5th Cir. 2006)* (citation omitted). However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GmbH & Co., 688 F.3d 214, 232 (5th Cir. 2012)*. In deciding whether to grant leave to file an amended pleading, the district court "should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Am. Intern. Refinery, Inc., 676 F.3d 455, 466 (5th Cir. 2012)* (quoting *In re Southmark, 88 F.3d 311, 315 (5th Cir. 1996))*. If the district court lacks a "substantial reason" to deny leave, its discretion is not

broad enough to permit denial. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014)* (quoting *Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 994 (5th Cir. 2005))*; *Mayeaux v. Louisiana Health Serv. and Indem. Co., 376 F.3d 420, 425 (5th Cir. 2004)*.

The Court's general practice is to allow an amendment if either the amendment or a motion to amend is filed by the deadline for amendments to pleadings. In this case, the Court does not find a substantial reason to deviate from that general practice, or from the general rule, and deny the Motion to Amend. It was filed by the amendments deadline and, therefore, **[*7]** there is no undue delay. There is no indication that Plaintiffs have engaged in bad faith or dilatory motive. Although this would be Plaintiffs' second amended pleading, the first amendment was the original Consolidated Class Action Complaint [Doc. # 72]. There would be no undue prejudice to the Control Defendants. The deadline to complete fact discovery is currently May 25, 2017, but it is clear that the deadline will need to be extended because the parties, including Control Defendants, have repeatedly obtained extensions of the briefing schedule for the Motion for Class Certification. The original December 9, 2016 deadline for Defendants' response has been extended three times, and is now March 22, 2017. Plaintiffs' reply is now due May 26, 2017.

Defendants' primary argument in opposition to Plaintiffs' Motion to Amend is that the amendment to add the *Section 20A* claim would be futile. It is unclear, however, whether or not the claim would be subject to dismissal under *Rule 12(b)(6)*. Defendants may, if appropriate in light of the Court's prior Memorandum and Order [Doc. # 108], file a Motion to Dismiss the new claim. The parties would then follow the standard briefing procedure and the Court will rule promptly. If the **[*8]** Control Defendants file a Motion to Dismiss the new claim, discovery relating to that claim will be stayed automatically pursuant to the Private Securities Litigation Reform Act. Should any party file a motion seeking to stay discovery on claims other than the new *Section 20A* claim, the Court will rule promptly on such a motion.

Absent a "substantial reason" to deny Plaintiffs' Motion to Amend, it is hereby

**ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. # 191] is **GRANTED**. Counsel for Plaintiffs is directed to file the Second Amended Complaint as a separate docket entry.

SIGNED at Houston, Texas, this **10th** day of **March, 2017**.

/s/ Nancy F. Atlas

NANCY F. ATLAS

SENIOR UNITED STATES DISTRICT JUDGE

**End of Document**

Positive
As of: November 6, 2018 7:58 PM Z

## *Makhlouf v. Tailored Brands, Inc.*

United States District Court for the Southern District of Texas, Houston Division

March 23, 2017, Decided; March 23, 2017, Filed, Entered

CIVIL ACTION NO. H-16-0838

**Reporter**

2017 U.S. Dist. LEXIS 41872 *; 2017 WL 1092311

PETER MAKHLOUF, Individually and on Behalf of all others Similarly situated, Plaintiff, VS. TAILORED BRANDS, INC. and DOUGLAS S. EWERT, Defendants.

## Core Terms

pension fund, lead plaintiff, Funds, Pension, appointment, sur-reply, largest, Declaration, securities, financial interest, lead counsel, investments, investors, class action, class member, requirements, Retirement, parties, outcome of litigation, named plaintiff, purported, adequacy, atypical, brochure, cohesive, defenses, engage[d, Brands, losing, movant

**Counsel:  [*1]** For Peter Makhlouf, Plaintiff: Thomas E Bilek, The Bilek Law Firm LLP, Houston, TX.

For Tailored Brands, Inc., Douglas S. Ewert, Defendants: Anthony J O'Malley, LEAD ATTORNEY, Rajeev K Adlakha, Vorys, Sater, Seymour & Pease LLP, Cleveland, OH; Monica Fitzgerald Oathout, Vorys Sater Seymour and Pease, LLP, Houston, TX.

For The Employees' Retirement System of the Puerto Rico Electric Power Authority, Oakland County Voluntary Employees' Benefit Assoc., Oakland County Employees' Retirement System, Movants: Jeffrey W Chambers, Ware Jackson Lee & Chambers LLP, Houston, TX.

For Jacksonville Police and Fire Pension Fund, Movant: Stanley D Bernstein, LEAD ATTORNEY, Bernstein Liebhard, New York, NY; Thomas E Bilek, The Bilek Law Firm LLP, Houston, TX.

For Oklahoma Police Pension and Retirement System, Movant: Thomas E Bilek, The Bilek Law Firm LLP, Houston, TX.

For Strathclyde Pension Fund, Movant: Andrew J Brown, LEAD ATTORNEY, Danielle S Myers, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Helen J Hodges, LEAD ATTORNEY, Robbins Geller Rudman

Dowd LLP, San Diego, CA; Patrick J Coughlin, LEAD ATTORNEY, Coughlin Stoia et al, San Diego, CA; Andrew M Edison, Edison, McDowell & Hetherington, LLP, Houston, **[*2]**  TX.

**Judges:** MELINDA HARMON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MELINDA HARMON

## Opinion

OPINION AND ORDER

Pending before the Court in the above referenced *Federal Rule of Civil Procedure 23(a)* and *(b)(3)* securities class action on behalf of all persons who purchased or otherwise acquired Tailored Brands, Inc.[1]

("TLRD") securities between June 18, 2014 and December 9, 2015 (the "Class Period"), alleging violations of *Sections 10(b)* and *20(a)* of the Securities Exchange Act ("Exchange Act") of 1934 against TLRD and its CEO, Douglas S. Ewert, are the following motions: (1) motion of Jacksonville Police and Fire Pension Fund ("Jacksonville") and Oklahoma Police Pension and Retirement System's ("OPPRS'," collectively, the "Funds'") motion for appointment of the Funds to serve as Lead Plaintiffs and for approval of Bernstein Liebhard, LLP as Lead Counsel, and of The

---

[1] On January 29, 2016, Men's Warehouse, Inc. announced publicly that on February 1, 2016 it would convert to a hold-company structure to be called Tailored Brands, Inc. In this restructuring, Men's Warehouse shareholders exchanged their shares one-for-one for shares of the new company, which trades on the New York Stock Exchange under the symbol, "TLRD." Although during the Class Period the Company was known as Men's Warehouse, for clarity, to avoid confusion, the Court refers to the entity throughout this opinion as "TLRD."

Bilek Law Firm, LLP to serve as Liaison [local] Counsel, pursuant to _15 U.S.C. § 78u-4_, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (instrument #7); (2) Strathclyde Pension Fund's (the "Pension Fund's") motion for appointment of the Pension Fund as Lead Plaintiff and approval of the Pension Fund's selection of Robbins Geller Rudman & Dowd, LLP as Lead Counsel and Edison McDowell & Hetherington LLP **[*3]** as Local Counsel (#10); and (3) The Pension Fund's motion to strike the sur-reply [titled "Supplemental Submission," #40] or, in the alternative, for leave to respond to the sur-reply (#41).

This federal securities suit arises out of the contentious acquisition by TLRD of one-time rival Joseph A. Bank Clothiers, Inc. ("JOS") and optimistic, but allegedly misleading, statements made during it. Ultimately TLRD purchased JOS, which was subsequently determined to be a deeply troubled company, at an excessive price, with the integration not proceeding as materially misrepresented to TLRD shareholders and with adverse facts not disclosed to them during the Class Period. TLRD's stock became artificially inflated, Class members purchased it at highly inflated prices, and they suffered economic loss when revelations of its actual financial situation reached the market.

**Applicable Law: the PSLRA**

Pursuant to _15 U.S.C. § 78u-4(a)(3)(B)(I)_ of the PSLRA, which amended the Exchange Act by adding _Section 21D, 15 U.S.C. § 78u-4_, in class actions under the federal securities laws "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff or proposed small, cohesive group of plaintiffs **[*4]** to oversee the class action. _In re Waste Management, Inc. Securities Litigation, 128 F. Supp. 2d 401, 409 (S.D. Tex. 2000)_. Initially there is a presumption that the plaintiff or cohesive group of plaintiffs with the largest financial interest in the outcome of the litigation is the "most adequate" Lead Plaintiff, _15 U.S.C. § 78u-4(a)(3)(B)(iii)_. _Id._ That presumption may be rebutted if a member of the purported plaintiff class proves that the proposed individual or entity will not fairly and adequately protect the interests of the class or that the proposed Lead Plaintiff is subject to unique defenses that make him, her, it or them incapable of adequately representing the class. _Id._, citing _15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)_.

Moreover, the Lead Plaintiff or Plaintiffs must not only

have the largest financial interest in the outcome of the suit, but must also meet the four requirements of _Federal Rule of Civil Procedure 23(a)_:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

_Id. at 411_. The plaintiff seeking appointment as Lead Counsel or certification as class representative bears the burden of affirmatively **[*5]** proving that it satisfies the requirements of _Rule 23_. _Berger v. Compaq Computer, 257 F.3d 475, 481 (5th Cir. 2001)_. Nevertheless the distinction between a Lead Plaintiff, the prerequisites for which or whom are set out in the PSLRA, and a _Rule 23_-qualified class representative, is clarified by the Second Circuit:

Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim. _See In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 123 (S.D.N.Y. 2002)_("[T]he fact that the lead plaintiff is to be selected in accordance with objective criteria that have nothing to do with the nature of the claims . . . strongly suggests the need for named plaintiffs in addition to any lead plaintiff.")

_Hevesi v. Citigroup Inc., 366 F.3d 70, 82 (2d Cir. 2003)_; see also _Tanne v. Autobytel, Inc., 226 F.R.D. 659, 669 (C.D. Cal. 2005)_(quoting _Hevesi_)("Irrespective of the lead plaintiff's standing . . ., the class may pursue any claim that at least one named plaintiff has standing to pursue."); _Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewellers, Inc., No. 04 C 1107, 2005 U.S. Dist. LEXIS 376, 2005 WL 61480, *7 (N.D. Ill. Jan. 10, 2005)_(quoting _Hevesi_). The Second Circuit further noted,

Also, considering that the role of the lead plaintiff is "to empower investors so that they--not their lawyers exercise **[*6]** primary control over private securities litigation." S. Rep. No. 104-98, at 4 (1995), _reprinted_ in 1995 U.S.C.A.A.N. 679, 683, any requirement that a different lead plaintiff be

appointed to bring every single available claim would contravene the main purpose of having a lead-plaintiff--namely to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole. *See In re Initial Pub. Offering Sec. Litig., 214 F.R.D. at 123* ("The only other possibility--that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action--has been rejected repeatedly by courts in the Circuit and undermines the purpose of the PSLRA"). . . .

*Id. at 82 n.13*. The Second Circuit further observed, "[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Id. at 83. See also In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267, 286 (S.D.N.Y. 2003)*("The PSLRA does not prohibit the addition of named plaintiffs to aid Lead Plaintiff in representing the class. . . . The PSLRA lead plaintiff provisions ensure that the securities litigation is driven by investors; it is not . . . a substitute for the class certification process."), *appeal granted in part on other grounds, Hevesi, 366 F.3d 70*.

Thus, "[w]hile . . . *lead* plaintiffs **[*7]** appointed pursuant to the PSLRA need not satisfy all elements of standing with respect to the entire lawsuit, the selection of lead plaintiffs does not remove the basic requirement that at least one *named* plaintiff must have standing to pursue each claim alleged." *In re Salomon Analyst Level 3 Litig., 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004)*(*citing the following cases: In re Global Crossing Sec. Litig., 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003)*("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses who may be determined . . . to have distinct interests or claims"); *In re WorldCom Sec. Litig., 294 F. Supp. 2d at 422; In re IPO Sec. Litig., 214 F.R.D. 117, 122-23 (S.D.N.Y.); Lewis v. Casey, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)*(plaintiffs with one sort of injury lack standing to challenge a different, though perhaps related, injury because "standing is not dispensed in gross"); *Griffin v. Dugger, 823 F.2d 1476, 1483 (11th Cir. 1987)*("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.").

While defendants at this stage of the litigation lack standing to challenge the plaintiffs' motions to appoint Lead Plaintiff, they may subsequently in a class

certification hearing object to the adequacy of any proposed person or group of persons as Lead Plaintiff. *Waste Management, 128 F. Supp. 2d at 409-10*. Under the PSLRA the Court has supervisory power and may *sua sponte* consider the adequacy of any **[*8]** proposed Lead Plaintiff, and it has an independent duty to evaluate the appointment of lead counsel. *Id. at 410*.

Under *15 U.S.C. § 78u-4(a)(3)(B)(v)*("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."), the Lead Plaintiff selects and retains Lead Counsel to represent the class, subject to court approval, but the Court should not alter the Lead Plaintiff's choice of Lead Counsel unless it is necessary to "protect the interests of the [plaintiff] class." *Waste Management, 128 F. Supp. 2d at 411*. Plaintiff bears the burden of demonstrating his and his attorneys' adequacy. *Berger, 257 F.3d at 480-81*.

After the filing of a complaint under *§ 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(A)(I)*, a Plaintiff moving for appointment as Lead Plaintiff

> shall cause to be published in a widely-circulated national business-oriented publication or wire service, a notice advising members of the purported class--
> (I) of the pendency of the action, the claims asserted therein, and the purported class period;
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

Thus a plaintiff need not be the first to file a complaint to be appointed Lead **[*9]** Plaintiff. If more than one suit is filed with nearly the same claims, only the plaintiff in the first-filed action is required to publish notice. *15 U.S.C. § 78u-4(a)(3)(A)(ii)*.

The complaint in this action was filed on March 29, 2016, establishing the deadline for applying to be Lead Plaintiff as May 31, 2016. The first two motions for appointment of Lead Plaintiff and Approval of Selection of Lead Counsel were timely filed on May 31, 2016 (#4 and 5) by The Employees' Retirement System of the Puerto Rico Electric Power Authority and by Peter Makhlouf, Oakland County Volunteer Benefit Association, and Oakland County Employees' Retirement System, respectively. Both motions were subsequently withdrawn. #20 and 21. The two still pending motions from the Funds and from the Pension Fund were also timely filed on May 31, 2016.

After the 60-day period expires, the district court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereinafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

*Section 21D(a)(3)(B)* of the amended Exchange Act requires the Court **[*10]** to adopt a rebuttable presumption that

the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).*

The PSLRA does not set out a procedure for determining the "largest financial interest" among the proposed class members. This Court, *inter alia*, has applied a four-factor inquiry first established in *Lax v. First Merchants Acceptance Corp., No. 97 C 2715, et al., 1997 U.S. Dist. LEXIS 12432 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)*: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *In re Waste Management, 128 F. Supp. 2d 401, 409 n.4 (S.D. Tex. May 8, 2000); In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. 2002).*

Where the motion for appointment seeks to appoint more than one Lead Plaintiff, "that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest interest in the outcome of the litigation, but also a pre-litigation relationship based on more than **[*11]** the losing investments at issue in the securities fraud class action." *Enron, 206 F.R.D. at 442* ([T]o satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of the lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be permitted. Instead, where a movant seeks appointment of a group of Lead Plaintiffs, that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest financial interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in a securities fraud action."), *citing In Re Waste Management, 128 F. Supp. 2d at 412-13*, and *Berger, 257 F.3d at 478 n.2. See also In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999)*("[T]he context and structure of the PSLRA evince the intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common *other than* the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreement with the same attorney or attorneys.").

**Motion to Strike Sur-Reply**

The Pension Fund moves to strike the Funds' improper sur-reply, entitled "Supplemental Submission to address **[*12]** Strathclyde's Pension Fund's New Evidence" (#40), filed without leave of Court, or alternatively moves for leave of Court to respond to it. #41. The Funds contend that in the Pension Fund's reply brief the Pension Fund relied on a newly submitted investment brochure ("Investing Responsibly" (#36-1, 36-2, 36-3), and a Declaration of Richard Keery (#36-4) to support its motion. Furthermore on July 5, 2016, in support of a separate motion for appointing itself as part of a three-member lead plaintiff group in a different case,[2] with connections between group members similar to those between Jacksonville and OPPRS, the Pension Fund submitted briefing and another Declaration from Richard Keery.

While the Federal Rules of Civil Procedure and this Court's Local Rules do not expressly permit the filing of a sur-reply by a non-movant to a movant's rebuttal brief, "[a] sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts

_____

[2] *Melbourne Municipal Firefighters' Pension Trust Fund v. Express Scripts Holding Co.*, 1:16-cv-03338-KMW (S.D.N.Y.) ("*Express Scripts*"). The Keery Declaration filed in *Express Scripts* is attached as Ex. A to #40 ("Joint Declaration in Support of Motion of the LGPS Investor Group for Appointment As Lead Plaintiff"), referred to as the "*Express Scripts* Keery Decl." The Memorandum of Law in support of the Strathclyde Group's motion in *Express Scripts*, attached to #40 as Exhibit B, is referred to as the "*Express Scripts* Mem."

to present new evidence at the reply stage." *Murray v. TXU Corp., No. Civ. A. 3:03CV0888P, 2005 U.S. Dist. LEXIS 10298, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005).* **[\*13]** *In accord, e.g., Austin v. Kroger Texas L.P., No. 3:11 CV 1169 B, 2016 U.S. Dist. LEXIS 45781 2016 WL 1322248, at *1-2 (N.D. Tex. Apr. 5, 2016); Brackens v. Dallas Indep. Sch. Dist., No. 3:09 CV 0642 D, 2010 U.S. Dist. LEXIS 138207, 2010 WL 5464823, at *4-5 (N.D. Tex. Sept.20, 2010),* report and recommendation adopted, *2010 U.S. Dist. LEXIS 137506, 2010 WL 5485886 (N.D. Tex. Dec. 30, 2010); Elwood v. Cobra Collection Agency, No. CIVA2:06CV91KSJMR, 2006 U.S. Dist. LEXIS 90555, 2006 WL 3694594, at *7 (S.D. Miss. Dec. 14, 2006); Simmons v. T Mobile USA, Inc., Civ. A. No. H-06-1820, 2006 U.S. Dist. LEXIS 89374, 2006 WL 3447684, *1 (S.D. Tex. Nov. 22, 2006)..* Leave to file a surreply is not appropriately granted where the proposed surreply does not include new arguments or evidence or merely restates arguments in the movant's response. *Lombardi v. Bank of America, Civ. Action No. 3:13-cv-1464-O, 2014 U.S. Dist. LEXIS 32344, 2014 WL 988541, at *3 (N.D. Tex. Mar. 13, 2014).*

The Pension Fund claims that the Funds do not even try to, and cannot, suggest that the Pension Fund's reply brief raised a new argument for the first time on reply, but they simply want to have the last word in opposing the Pension Fund's motion. *See generally Lacher v. West, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)*("Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on the matter.").

## Court's Decision

The Court has carefully reviewed all submissions of the Funds and of the Pension Fund, which are all institutional investors. **[\*14]** [3]

As a threshold matter, the Court finds that both the Funds and the Pension Fund, each a proposed Lead Plaintiff, and their proposed Lead and Liaison Counsel are highly sophisticated, qualified, and experienced for the positions that they seek here and are able to prosecute this class action vigorously. Both sides satisfy adequacy and typicality requirements of *Rule 23*, having suffered the same or substantially the same injuries as the class members as a result of the same course of conduct and misrepresentations by the named Defendants, and the proposed Lead Plaintiffs' claims are based on the same, or substantially the same, legal theories under *Sections 10(b)* and *20(a)* of the Exchange Act.

The central issue here is "which is the most adequate plaintiff" and has the "largest financial interest in the relief sought by the class" for this class action.

Jacksonville, established in 1937 and, as of September 30, 2015, holding over $1.43 billion in assets, provides retirement allowances and other benefits for current and retired police officers and firefighters for the City of Jacksonville, Florida. OPPRS, as of September 15, 2014 holding over $2.2 billion in net assets, is an agency of the government **[\*15]** of Oklahoma that manages the public pension system for municipal police officers in Oklahoma, providing pension benefits such as normal retirement, disability retirement, surviving spouse benefits, and a death benefit. The Funds claim they are a cohesive "group" of two institutional investors.

Nevertheless the Court notes that only when the two are aggregated together, however, do they have the largest financial interest in the outcome of the litigation. Neither Fund alone has the largest financial interest in the outcome of the litigation; individually, the Pension Fund has the greatest financial interest of the class members in the outcome of the litigation. Jacksonville lost $1,943,593 under the LIFO ("last-in-first-out) and FIFO (first-in-first-out) accounting methods, while OPPRS lost $1,166,502 under LIFO and $962,023 under FIFO. Together, the Funds lost $3,110,095 under LIFO and $2,905,617 under FIFO. #8 at p.5 and Ex. 4; Seidman Decl. #9-2 and #9-3. The Pension Plan's individual estimated loss is $2.1 million. #22 at p. 8.

While both Jacksonville and OPPRS have acted as co-Lead Plaintiffs in a number of federal securities class actions, they have not done so with each other, **[\*16]** but only with third parties. #8 at p. 9 (listing cases where one or the other has recovered substantial funds from class actions).

The Pension Fund, which was established in 1974 in

---

[3] A number of courts have found that the legislative history of the PSLRA reveals a strong preference for institutional investors to serve as Lead Plaintiffs, based on H.R. Rep. No. 104-369 at 3 (1995)(Conference Report)("The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs . . . ."). *See, e.g., In re BP, PLC Sec. Litig., 758 F. Supp. 2d 428, 439-40 (S.D. Tex. 2010)*(citing cases).

2017 U.S. Dist. LEXIS 41872, *16

Glasgow, Scotland, has over 21,000 members and assets exceeding 15 billion pounds, thereby one of the top United Kingdom pension funds, states that it bought over 64,500 shares of TLRD stock at artificially inflated prices and was holding nearly 50,000 shares at the end of the Class period. As noted, it suffered losses of approximately $2.1 million under both FIFO and LIFO accounting methods as a result of Defendants' alleged wrongdoing. #10 at p. 6 Edison Decl., Exs. B-C. It claims it is well suited to serve as Lead Plaintiff because it is a single institution with prior experience in serving as a Lead Plaintiff with significant financial interest in the relief sought by the class here, and is represented by a single competent and resourceful financial firm. *Enron, 206 F.R.D. at 458*; *id.*

The Pension Fund contends that the Funds are unrelated entities artificially paired together by their manipulative counsel, solely in hopes of attaining the largest aggregated financial interest. It points out that the Funds' Joint Declaration **[*17]** (#8-11 at ¶6) proclaims that they "believe our joint leadership will benefit the class through our ability to share resources and engage in joint decision-making." Such a statement, lacking all specifics, fails to satisfy the Funds' burden to show a pre-litigation relationship based on more than the losing investments at issue in this class action and provides "no clear or persuasive reason why [these funds] have joined together to apply for Lead Plaintiff in this litigation other than an effort to amalgamate their losses to be greater than their competitors' or to detract from obstacles that one would face as a single applicant." *Enron, 206 F.R.D. at 455*. Their Joint Declaration also asserts that the Funds' "common interest also arises out of [their] shared goals as public safety funds." #8-1 at ¶7. The Pension Fund argues that "the same thing could be said for any of the dozens of safety pension funds in Florida, Georgia, Kansas, Louisiana, Mississippi, New Mexico or Texas—or *any* pension fund, for that matter." #22 at p. 5. The Joint Declaration also states that the Pension Funds "each belong to the National Conference on Public Employee Retirement Systems ('NCPERS') and, as representatives of their respective **[*18]** funds, have attended numerous professional and education conferences and meetings together . . . [and] we are familiar with each other's organizations." #8-1 at ¶7. NCPERS "is the largest trade association for public sector pension funds, representing more than 550 funds throughout the United States and Canada." *See* http://www.ncpers.org/media (last visited June 16, 2016). The Pension Fund maintains that it is not believable that membership in a 550-member

organization with thousands of individual participants constitutes a meaningful relationship. This Court agrees. In fact this Court rejected similar state pension fund movants in *Enron* that identified mutual membership in the Councils of Institutional Investors and National Association of Public Pension Attorneys because the Funds "fail to provide any details about the size of these groups, the specific work they did together and the nature of their involvement and its relevance to their relationship in this securities fraud action. They do not demonstrate that they have any prior mutual litigation experience." *206 F.R.D. at 455*. Judge Hoyt denied Jacksonville's motion in *Local 210 Unity Pension and Welfare Funds v. McDermott*, No. H-13-CV-2393, where Jacksonville also identified **[*19]** its common membership in NCPERS with yet another pension fund. #23, Myers Decl. Ex. 1-3. The Funds have failed to cite a single case where the two have worked together as co-Lead Plaintiffs; instead the only preexisting relationship evidenced in the Joint Declaration is between each entity and its counsel. Aside from their losing investment in TLRD and the same counsel, there is no relationship between the two Funds.

The Funds' Memorandum of Law (#24) raises two final objections: (1) that The Pension Fund is subject to several unique defenses that renders it atypical of and inadequate to serve on behalf of the other class members; and (2) that if the Pension Fund is appointed Lead Plaintiff, because it is located in Scotland and executes its investment strategies through numerous foreign, third-party investment managers and consultants, international discovery will be required, unduly increasing costs, causing delays, and wasting Defendants' funds available for discovery. The Funds claim that the Pension Fund's investment strategy requires it to invest in companies only if they satisfy certain labor, safety and human rights protocols. In 2012 the Pension Fund hired Global Engagement **[*20]** Services ("GES") to work with companies and decide if they satisfied these protocols in the garment district, an industry often criticized as the site of human rights violations or safety concerns, such as in Bangladesh, where some TLRD clothing is manufactured. The Funds argue that these goals make the Pension Fund atypical of other class members in its unique motivations for investing in TLRD.

The Funds assert that as an example of a pre-litigation relationship based on more than their losing investments in TLRD, because both Funds protect pensions of police officers, they have a common bond as protectors of first responders, in addition to belonging

to NCPERS and attending conferences and meetings together.

In reply (#34), the Pension Fund emphasizes that the Funds fail to cite a single case for their speculative charges that the Pension Fund's responsible investment strategy renders it atypical and that its location in Scotland will increase litigation costs and require disqualification of it as a presumptive lead plaintiff for such reasons.[4]

Instead the Pension Fund points out, courts have declined to disqualify the presumptive lead plaintiff based on conjecture as to increased costs [*21] due to foreign location and rejected baseless speculations as proof of inadequacy. *See, e.g.,* Foley v. Transocean Ltd., 272 F.R.D. 126, 133 (S.D.N.Y. 2011)(rejecting challenge that Danish pension fund would "saddle the class with unnecessary and additional costs"; "courts in this District and others have routinely appointed foreign investors as lead plaintiff"), and Teran v. Subaye, Inc., Nos. 11 Civ. 2614 (NRB) and 3886(NRB), 2011 WL 4357362, at *8 (S.D.N.Y. Septs. 16, 2011)("[B]aseless conjecture cannot serve as 'proof' of [a party's] inadequacy."). The Pension Fund emphasizes that the Funds do not argue that the Pension Fund's claims arise from a different event or course of conduct than the other class members', nor that the Pension Fund and its counsel have a conflict of interest. Before making such bald representations about the Pension Fund's motivations in deciding to invest in TLRD, the Funds' counsel should have at least checked the Pension Fund's website for information about its investment strategy because the brochure publicly available on it would have shown two key statements: (1) "Strathclyde Pension Fund does not seek to influence our external managers' investment processes, but rather acts as an active owner and engages in depth with portfolio companies in regard to international norms."; [*22] and (2) "Strathclyde Pension Fund did not engage with Tailored Brands during 2014-2015 regarding environmental, social, or governance issues." Myers

Reply Decl., Ex. A at 2, 21. The Pension Fund's Investment Manager, Richard Keery, has also confirmed that "GES has nothing whatsoever to do with SPF's investment decision making process," that "GES never has had any role in recommending any investment to SPF," and that "[n]either SPF nor to my knowledge, GES has ever engaged with Tailored Brands." *Id.*, #36-4, Ex. B at ¶¶5-7. None of the articles that the Funds quote extensively in their opposition even mentions Tailored Brand; instead they discuss responsible investing generally, another clothier, H&M, and the collapse of a building in Bangladesh that killed hundreds of garment workers. #24 at p.9. The Funds do not explain how the Bangladesh building collapse and engagement with H&M, publicly disclosed by the Pension Fund, "somehow creates a unique defense involving J.P. Morgan's decision to purchase Tailored Brands stock" for the Pension Fund, "a leap too far-fetched to qualify as 'proof.'"

This Court concurs with the Pension Fund that it has the largest individual loss of any entity in this securities [*23] fraud action and that it satisfies *Rule 23*'s typicality and adequacy requirements. It has demonstrated that it is entitled to the most adequate plaintiff presumption. At the same time, for the reasons argued by the Pension Fund with evidentiary support, the Court is unpersuaded by the Funds' efforts to present itself as a cohesive "group" of pension funds with a meaningful pre-litigation relationship based on more than their losing investment.

In their Supplemental Submission/Sur-reply (#40) the Funds object to the Pension Fund's "newly submitted" brochure (#36-1 through 36-3) and Declaration of Richard Keery (#36-4), as well as another Keery declaration in support of a separate motion (#40, Ex. A, with Memorandum of Law, Ex. B) for appointment of The Pension Fund as one of a three-member lead plaintiff group in a different case, *Melbourne Municipal Firefighters' Pension Trust Fund v. Express Scripts Holding Co.*, 1:16-cv-03338-KMW (S.D.N.Y.). The Funds argue that the brochure (#36-1 through #36-3) and the Declaration, as new evidence, further support the Funds' contention that the Pension Fund is atypical of the class members.

The Court agrees with the Pension Fund that the Funds "Supplemental [*24] Submission" is in the nature of a surreply. Because the Pension Fund has introduced new evidence in its Reply, because full briefing is fair and useful to the adjudication of the case, the Court denies the Pension Fund's motion to strike, grants its

---

[4] The failure to cite case law in support of one's argument "is insufficient to rebut the presumption" to which a Lead Plaintiff is entitled under the PSLRA. Baughman v. Pall Corp., 250 F.R.D. 121, 128 (E.D.N.Y. 2008). "[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject." Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004).

2017 U.S. Dist. LEXIS 41872, *24

alternative request for retroactive leave to file surreply, and considers the arguments it puts forth in its Supplemental Submission.

The Funds highlight that the brochure (#36-1 at p. 2) states, "In order to implement the [ESG[5]

 ] Principles . . . GES works with [the Pension Fund] to monitor [its] investment managers' engagement activities and monitor how the information from these activities feeds into [its] managers' investment processes." In addition, they state that the Pension Fund "will incorporate ESG issues into investment analysis and decision-making processes." *Id.* In turn, the Keery Declaration (#36-4 at ¶7) states that J.P. Morgan ("JPM") "engage[d]" with TLRD on ESG issues and "incorporate[d]" that information in its decision to buy TLRD for the Pension Fund. #36-1 at p. 2. Therefore, insist the Funds, the Pension Fund's investment is atypical of most class members' who did not investigate or rely on TLRD's ESC record. The Funds assert that the Pension **[*25]** Plain failed to demonstrate that GES did not engage TLRD: it did not submit a declaration from GES or JPM regarding the extent to which either engaged TLRD. Keery's Declaration states that "to the best of [Keery's] knowledge[,]" GES did not engage TLRD (#36-4 at ¶ 7), but, in contrast, the brochure reports that GES "direct[ly] engage[d] with many of the international brands involved in Bangladesh," including at least seven clothing companies like TLRD. #36-3 at p. 17.

The Pension Fund responds that the brochure "confirms neither it nor GES 'seeks to influence [the] external managers' investment processes," (#34 at p.1), but instead unambiguously states, "We [the Pension Fund] do not seek to influence . . . [external managers]," and states nothing about GES.

The Funds also claim that in the *Express Scripts* case, the Pension Fund's motion for appointment as one of a group of three pension funds that are affiliated by their membership in an approximately 100-member pension scheme existing throughout the United Kingdom known as LGPS, also demonstrates the Funds are a proper lead plaintiff "group." LGPS is "one of the largest defined benefit schemes in the world" with more that 5.1

million members. #40, Ex. **[*26]** A (*Express Scripts* Keery Decl.) at ¶5. The proposed lead plaintiff group is part of an "organization comprised exclusively of LGPS Funds . . . [which] seeks to protect the long-term investment interests of beneficiaries by promoting the highest standards of corporate governance and corporate responsibility among investee companies." *Id.* at ¶ 6. The Funds conclude that the Pension Fund has changed its view from its earlier argument that the two pension funds' membership in a 550-member organization with thousands of individual participants and attendance at numerous professional meetings and education conferences together, where they interacted, constituted a meaningful, cohesive relationship. Now it argues that view was not credible nor persuasive. #22 at p.6. The Funds reiterate that they have a common bond in representing police officers charged with protecting the public and they both belong to NCPERS. In *Express Scripts*, the Pension Fund did not attest to any interactions with other LGPS group members before that litigation.

After considering the Pension Fund's argument in its motion to strike or for leave to respond to surreply (#41), in the interests of justice, the Court denies **[*27]** the motion to strike and grants the leave to respond.

First the Pension Fund points out that, speculating again, the Funds claim that "it is reasonable to ***assume*** that as [the Pension Fund's] 'investment manager[],' JPM 'engage[d] with TLRD on ESG issues and 'incorporate[d]' such information in its decision to buy TLRD" for the Pension Fund. #40 at p. 2(emphasis added). The Pension Fund reiterates that "[b]lind assumptions—contradicted by the facts--are not 'proof.'" #34 at p. 2; *Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 105 (S.D.N.Y. 2007)*("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration."); *Constance Sczesny Trust, 223 F.R.D. at 324-25* ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.").

Regarding the issue of whether the Pension fund's advisor, GES, engaged TLRD, #40 at pp. 2-3, the Pension Fund proclaims "that information is totally irrelevant to [the] Pension fund's stock ownership because 'GES never has had any role in recommending any investment to SPF'" and "[n]either SPF nor, to my knowledge, GES has ever had any role in

---

[5] "ESG" stands for environmental, social and corporate governance issues, which the Pension Fund believes "can affect the performance of investment portfolios (to varying degrees across companies, sectors, regions, asset classes and through time)." #36-1 at p.2.

recommending **[*28]** any investment to SPF." #36-4 (Keery Decl. sworn under oath). The only pertinent information would be if the Pension Plan engaged TLRD, but it did not. *Id.* at ¶7; #36-3 at 21 (brochure--chart showing Pension Fund's "holdings engaged on during 2014/15"). Furthermore, even if the Funds' hypothesis were correct, but it is not, the Funds have failed to cite any authority that, let alone articulate how, the Pension Fund could be atypical or distracted by an advisor's use of environmental, social, and governance-based factors, in addition to stock price (and the factual information reflected in that price) to make an investment decision. The Pension Fund insists it could not be, citing *In re Petrobras Sec. Litig., 312 F.R.D. 354, 360-61 (S.D.N.Y. 2016)*(rejecting defendants'"claim that USS's trading decisions were based on atypical considerations" because it "followed a special investment strategy that 'look[s] at extra financial factors' that 'the market does not accurately reflect' and finding that "[s]uch general statements do not seriously call the typicality of USS's claims into question" as "it is common practice for money managers to claim they have some special strategy that will deliver insights--and returns--superior to the wider market"). Moreover, the PSLRA **[*29]** does not require the Pension Fund to submit additional declarations to negate repeated theories that the factual record shows have been refuted. The burden of proof is on the members of the class "to come forward with some proof that the unique defenses raised are legitimate issues that will likely be litigated at trial" and it is improper to shift that burden to the presumptive lead plaintiff. *OFI Risk Arbitrages v. Cooper Tire & Rubber Co. 63 F. Supp. 3d 394, 403 (D. Del. 2014)*. Once the court identifies the presumptive lead plaintiff as (1) the person or group that filed the complaint or made a motion for appointment as lead plaintiff, (2) has the largest financial interest in the relief sought, and (3) satisfies *Rule 23* typicality and adequacy requirements, *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc)*, that presumption may be rebutted by opposing parties "only upon proof" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or that the presumptive lead plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb)*.

As for the Pension Fund's role in a different case (*Express Scripts*) in a different court and different circuit involving different facts and different relationships among different parties **[*30]** represented by different counsel, the Funds' suggestion that the Pension Fund

somehow conceded that the Funds' informal grouping in the instant case before this Court is misplaced. The Court agrees.

The Court concurs with the Pension Fund that it should be appointed Lead Plaintiff and its chosen attorneys, Robbins Geller Rudman & Dowd, LLP be appointed as Lead Counsel and Edison McDowell & Hetherington LLP as Liaison Counsel. It is clear that individually the Pension Fund has the largest financial interest in the outcome of the litigation. Lead Plaintiff has submitted evidence and case law showing that it is not subject to unique defenses that make it incapable of representing the class and that the Funds lack a pre-litigation relationship based on more than the losing investments at issue here.

Accordingly, for the reasons stated above, the Court

ORDERS the following:

(1) the Pension Fund's motion to strike (#41) the sur-reply [titled "Supplemental Submission," #40] is DENIED but its alternative motion for leave to respond to the sur-reply (#41) is GRANTED;

(2) the Funds' motion for the appointment of the Funds to serve as Lead Plaintiffs and approval of their selected attorneys as Lead **[*31]** Counsel and Liaison Counsel (#7) is DENIED; and

(3) the Pension Fund's motion for appointment of the Pension Fund as Lead Plaintiff and approval of the Pension Fund's selection of Robbins Geller Rudman & Dowd, LLP as Lead Counsel and Edison McDowell & Hetherington LLP as Local Counsel (#10) is GRANTED.

**SIGNED** at Houston, Texas, this 23nd day of March, 2017.

/s/ Melinda Harmon

UNITED STATES DISTRICT JUDGE

MELINDA HARMON

---

**End of Document**

✚ Positive
As of: October 30, 2018 2:08 PM Z

## *McDade v. Wells Fargo Bank, N.A.*

United States District Court for the Southern District of Texas, Houston Division

October 13, 2011, Decided; October 13, 2011, Filed

CIVIL ACTION NO. H-10-3733

**Reporter**
2011 U.S. Dist. LEXIS 118219 *; 2011 WL 4860023

MICHAEL A. MCDADE, Plaintiff, v. WELLS FARGO BANK, N.A., Defendant.

## Core Terms

amended complaint, original complaint, motion to dismiss, allegations, notice, amend, summary judgment, leave to amend, regulations, violations, foreclosure, fail to state a claim, motion for leave, Procedures, provisions, futility, cause of action, medical leave, pleadings

**Counsel:** [*1] For Michael A. McDade, Plaintiff: Sonya Chandler-Anderson, LEAD ATTORNEY, Attorney at Law, Houston, TX; Ray L Shackelford, State Bar Information, Houston, TX.

For Wells Fargo Bank, N.A., Defendant: Chalon Nichole Clark, Richard A Illmer, Brown McCarroll LLP, Dallas, TX.

**Judges:** KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** KEITH P. ELLISON

## Opinion

### MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Pursuant to *Rule 12(b)(6)* or in the Alternative Motion for Summary Judgment ("Defendant's Motion") (Doc. No. 14) and Plaintiff's Motion and Memorandum in Support for Leave to File Amended Second Petition and Jury Demand ("Plaintiff's Motion for Leave") (Doc. No. 26). After considering the motions, all responses thereto, and the applicable law, the Court finds that Defendant's motion to dismiss should be granted. The

Court also denies Plaintiff's motion for leave to file Plaintiff's Second Amended Complaint.

### I. BACKGROUND

Plaintiff Michael McDade filed his complaint in state court on September 3, 2010 to "enjoin and restrain a foreclosure proceeding scheduled . . . for Tuesday, September 7, 2010." (Compl. at 2.) The Complaint alleged that Defendant Wells Fargo provided inadequate notice, [*2] and mentioned provisions of the Real Estate Settlement Procedures Act, the Fair Debt Collection Practices Act, and the Texas Property Code. Plaintiff requested a temporary injunction or temporary restraining order to prevent Defendant from foreclosing on the property. Defendant filed an answer in state court on September 22, 2010, and removed the case to this Court on October 8, 2010.

Defendant moved to dismiss this action, or, in the alternative, for summary judgment on May 12, 2011. Plaintiff responded on June 13, 2011 (Doc. No. 15). Subsequently, Plaintiff moved for a continuance of all matters regarding this case due to the medical leave of Plaintiff's counsel (Doc. No. 19). The Court issued an Order on July 27, 2011, holding that Plaintiff's claims must be dismissed with prejudice but staying final judgment until Plaintiff's counsel was able to return from medical leave (Doc. No. 20). The Order noted that Plaintiff's response did not address the causes of action alleged in the original petition. In fact, Plaintiff's attorney simply copied most of the text from her response to a motion to dismiss in another case before this court, *Acosta v. J.P. Morgan Bank*, Case No. 4:10-cv-4820 (S.D. Tex.) [*3] . The response recited the incorrect procedural history (that of *Acosta*), and discussed numerous causes of action not at issue in this case, including breach of contract, breach of the duty of good faith and fair dealing, and negligence.

Upon Plaintiff's counsel's return from medical leave, the

Court allowed Plaintiff to file an amended response to Defendant's Motion. Plaintiff then filed his First Amended Complaint on September 2, 2011 (Doc. No. 23) without requesting leave of court. [1]

At a status conference that day, the Court told the parties that it would not consider the amended complaint until after consideration of the motion to dismiss or for summary judgment, and directed Plaintiff to file an amended response to Defendant's motion by September 9, 2011. Plaintiff filed an amended response ("Plaintiff's Amended Response") (Doc. No. 24) minutes before the status conference on September 2, and did not file any additional responses or supplements regarding the motion to dismiss after the status conference. Defendant filed a reply on September 9, 2011.

Plaintiff filed his Motion and Memorandum in Support for Leave to File Amended Second Petition and Jury Demand on September 9, 2011, along with Plaintiff's First [sic] Amended Complaint [2] (Doc. No. 27) and Plaintiff's Second Amended Complaint Supplement (Doc. No. 28). The Second Amended Complaint contains additional facts and brings claims against Defendant for violations of the Truth in Lending Act (TILA), fraudulent omissions, breach of contract, violations of Housing and Urban Development (HUD) regulations, breach of the implied covenant of good faith and fair dealing, and violations of the Texas Property Code. Defendant opposes Plaintiff's motion for leave to file an amended complaint, stating that it would surprise and highly prejudice Defendant and cause unnecessary expense and delay.

## II. MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### A. Legal Standard

A court may dismiss a complaint **[*5]** for "failure to state a claim upon which relief can be granted." *Fed. R. Civ.*

---

[1] Plaintiff's response to the motion to dismiss, filed later that day, asked for leave to file the amended complaint. **[*4]** (Resp. at 1.)

[2] The Court will refer to Doc. No. 27 as Plaintiff's Second Amended Complaint. Although it is entitled First Amended Complaint, it was filed concurrently with Plaintiff's motion for leave to file Second Amended Complaint, and therefore the Court believes this document was the subject of that motion.

*P. 12(b)(6)*. "To survive a *Rule 12(b)(6)* motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007)* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly, 550 U.S. at 556*). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not detailed factual allegations, but must set forth more **[*6]** than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555* (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal, 129 S. Ct. at 1950* (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips, 401 F.3d 638, 642 (5th Cir. 2005)* (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc., 365 F.3d 353, 362 (5th Cir. 2004)).* A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 499 (5th Cir. 2000).* Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that **[*7]** plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004).* "Motions to dismiss under *Rule 12(b)(6)* are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009)* (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli, 748 F. Supp. 2d 656 (S.D. Tex. 2010).*

Under *Federal Rule of Civil Procedure 12(d)*, a motion to dismiss must be treated as a *Rule 56* motion for summary judgment if the court considers matters outside the pleadings in deciding the motion. Before a *Rule 12(b)(6)* motion may be converted to a *Rule 56* motion, a court must be satisfied that the nonmoving party "has . . . had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. As the Court finds that Plaintiff's claims should be dismissed under *Rule 12(b)(6)*, it does not consider Defendant's alternative arguments for summary judgment or the evidence attached to the motion.

## B. Analysis

Plaintiff asserts that the original complaint contained claims under the Real Estate Settlement Procedures Act, the **[*8]** Fair Debt Collection Practices Act, and the Texas Property Code. Plaintiff's Amended Response to the motion to dismiss incorrectly states that Defendant's motion did not address Plaintiff's claims under the Federal Debt Collect Practice Act and the Texas Property Code. (Pl.'s Am. Resp. at 3.) However, Defendant alleges that "Plaintiff fails to state any factual allegations or recognized causes of action" and that "Plaintiff has not stated how he is entitled to relief under any theory." (Def.'s Mot. ¶¶ 3, 8.) Defendant's Reply to Plaintiff's Amended Response further identifies defects with Plaintiff's claims under the Texas Property Code and Fair Debt Collection Practices Act. (Reply ¶¶ 4, 8.) Therefore, the Court will analyze whether the complaint states a claim under each of the three claims Plaintiff has identified.

### 1. The Real Estate Settlement Procedures Act

The original complaint mentions the Real Estate Settlement Procedures Act in only one sentence, which states that Plaintiff forwarded a "'Qualified Written Request' (QWR) pursuant to the *12USC 2605(e)* of the REAL ESTATE SETTLEMENT Procedures Act (RESPA) in order to review and evaluate her [sic] loan and payment history in order **[*9]** to continue to perform his obligations under the aforementioned loan." (Compl. ¶ 5.) The complaint does not allege wrongdoing under any provision of this act, and therefore the Complaint does not put the Defendant on notice as to how its actions allegedly violated RESPA or why its August 9,

2010 letter was a deficient response. [3]

 Moreover, the remedy for failure to comply with any provision of *Section 2605* is actual damages sustained as a result of the failure or additional damages in the case of a pattern or practice of noncompliance. *12 U.S.C. § 2605(f)*. Plaintiff's original complaint did not explicitly request damages or even identify any damages Plaintiff had suffered. The Court finds that, with respect to any claims under RESPA, the original complaint does not put Defendant on notice of the nature of the claims against it.

### 2. Claims under the Fair Debt Collection Practices Act

The original complaint mentions the Fair Debt Collection Practices Act in two sentences, but again fails to state a claim. The Complaint states, "Because of the 'ARM' contravention to the notice provisions of the *Texas Property Code § 51.002* and the FEDERAL FAIR DEBT COLLECTION PRACTICES ACT as Plaintiff has been preventing from exercising his rights to dispute and correct any discrepancies prior to acceleration." (Compl. ¶ 6.) The Complaint further provides that "counsel for Plaintiff would show that the actions and conduct of Defendant in responding so late to the 'QWR' request are in direct contravention to the notice provisions of the *Texas Property Code§ 51.002* and the FEDERAL FAIR DEBT COLLECTION PRACTICES ACT AS as [sic] Plaintiff has been prevented from exercising his rights to dispute and correct any discrepancies prior to acceleration. (Comp. ¶ 9.) Plaintiff again fails to name any particular provisions of the act that Defendant may have violated or identify the actions **[*11]** taken by Defendant that constitute a violation of this act. The Court thus finds that the complaint fails to state a claim under the Federal Fair Debt Collection Practices Act.

### 3. Claims under the Texas Property Code

Similarly, Plaintiff has failed to state a claim under the Texas Property Code. The Texas Property Code is mentioned twice (*see* Part II.B.2., *supra*), but Plaintiff again fails to identify the conduct that places Defendant

———————————————————

[3] Plaintiff's Amended Response provides further information about this alleged violation, including the fact that Defendant never provided the escrow analysis that it promised in the August 9, 2010 letter. (Pl.'s Am. Resp. at 3-4.) However, these allegations are not contained in the complaint itself. Even though Plaintiff seeks leave to amend the complaint, he **[*10]** does not seek to include any allegations under RESPA in his amended complaint. Therefore, the Court finds it appropriate to dismiss this claim with prejudice.

in violation of this statute. Furthermore, *Section 51.002* only contains recitation provisions required in order to conduct a foreclosure sale. However, Plaintiff admits that no foreclosure sale has occurred, and does not identify how this provision applies to the circumstances of his case. Therefore, these claims must be dismissed.

## III. MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff seeks leave to amend his complaint in order to add allegations of violations of the Truth in Lending Act (TILA), fraudulent omissions, breach of contract, violations of Housing and Urban Development (HUD) regulations, and breach of the implied covenant of good faith and fair dealing. He also seeks to abandon all of the initial claims from his original complaint, with the exception **[*12]** of the violations of notice requirements under *Texas Property Code Section 51.002*.

### A. Legal Standard

A party may amend its pleadings once as a matter of course. *Fed. R. Civ. P. 15(a)(1)*. Thereafter, pleadings may be amended "only with the opposing party's written consent or the court's leave." *Fed. R. Civ. P. 15(a)(2)*. The court should consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Overseas Inns S.A. PA. v. United States, 911 F.2d 1146, 1150-51 (5th Cir. 1990)*. In the absence of any of these reasons, leave should be "freely given." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*; *Fed. R. Civ. P. 15(a)(2)*. "Leave to amend, however, is by no means automatic." *Little v. Liquid Air Corp., 952 F.2d 841, 845-46 (5th Cir. 1992)*, rev'd on other grounds, *37 F.3d 1069 (5th Cir. 1994)*.

The Fifth Circuit has interpreted "futility" in the context of *Rule 15* to mean that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000)*. **[*13]** Therefore, to determine futility, a court must apply the same standard of legal sufficiency as applies under *Rule 12(b)(6)*. *Id.*

### B. Analysis

The Court believes that leave to amend should be denied. The *Rule 15(a)* factors do not favor granting leave to amend, as the amended complaint would cause undue delay and prejudice Defendant. The majority of the new claims are not derived from the same set of facts as the original complaint; they involve the underlying Adjustable Rate Mortgage (ARM) loan rather than the allegations of inadequate notice before initiating foreclosure proceedings that were asserted in the original complaint. Furthermore, while the Texas Property Code Claims and the HUD regulation violations are more closely related to the facts asserted in the original complaint regarding the foreclosure actions, the proposed amendments are futile.

#### 1. Additional claims regarding Plaintiff's ARM loan

Plaintiff's amended complaint provides additional facts and four new causes of action relating to Defendant's sale of the ARM loan and failure to disclose the correct interest rate. Plaintiff alleges that Defendant violated multiple provisions of the Truth in Lending Laws, provided fraudulent **[*14]** omissions, breached its contract with Plaintiff, and breached the implied covenant of good faith and fair dealing. The Court finds that allowing Plaintiff leave to amend would cause undue delay and prejudice to Defendant.

These additional claims are based on an entirely different set of facts and request distinct relief from the initial complaint. "A defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court.'" *Smith v. EMC Corp., 393 F.3d 590, 596 (5th Cir. 2004)* (quoting *Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999))*. As in *Little*, "[t]he amendment that the plaintiff[] requested was not merely clerical or corrective. It would have established an entirely new factual basis for the plaintiff['s] claims." *Little, 952 F.2d at 846*.

"Although *Rule 15(a)* contains no time limit for permissive amendment, at some point, time delay on the part of a plaintiff can be procedurally fatal." *Whitaker v. City of Houston, Tex., 963 F.2d 831, 836 (5th Cir. 1992)* (quoting *Gregory v. Mitchell, 634 F.2d 199, 203*) (internal quotations omitted). "In such a situation, **[*15]** the plaintiff must meet the burden of showing that the delay was due to oversight, inadvertence, or excusable neglect, a burden which properly shifts to the party seeking to amend where apparent lack of diligence exists." *Id.* Plaintiff has not offered any explanation for the delay in filing for leave to amend, despite waiting over one year since the filing of this case

to ask for leave to amend. Additionally, the deadline for discovery has passed, and Plaintiff has failed to serve Defendant with any discovery requests or disclose any experts. [4]

Moreover, Plaintiff must have known the additional facts forming the basis for his new claims at the time the lawsuit was filed. "[I]n exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts **[*16]** underlying the amended complaint were known to the party when the original complaint was filed." _Matter of Southmark Corp., 88 F.3d 311, 316 (5th Cir. 1996)_ (citing _Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1098 (5th Cir. 1979)_, cert. denied, 446 U.S. 939, 100 S. Ct. 2161, 64 L. Ed. 2d 793 (1980)); see also _Barrett v. Independent Order of Foresters, 625 F.2d 73, 75 (5th Cir. 1980)_ (affirming denial of leave to amend where the motion was not filed until nearly ten months after the original complaint and "there would appear to be no matters . . . which could not have been raised initially"). Plaintiff seeks to amend his complaint more than four years after purchasing the ARM home loan in 2007. Plaintiff also appears to have first realized the effect of the adjustable rate when his note changed drastically in 2007. (Second Am. Compl. ¶ 21.)

Plaintiff does not contend that any of the additional facts in the amended complaint were unknown to him at the time of filing the complaint or that they were discovered recently. In fact, the only reason Plaintiff provides to explain the amendment is that "the original petition was drafted in haste to warrant off [sic] the wrongful foreclosure actions of the defendant against **[*17]** the plaintiffs [sic] home." (Pl.'s Mot. for Leave, at 2.) In Plaintiff's Amended Response to the motion to dismiss, Plaintiff also alleges that "the attorney of record at that time did not act as any reasonable attorney would have in drafting and pleading the various claims against the respondent Wells Fargo." (Pl.'s Am. Resp. at 2.) However, Plaintiff waited six months after retaining new counsel to draft an amended complaint.

Additionally, Defendant has already filed a motion to dismiss or, in the alternative, motion for summary

judgment. The Fifth Circuit has noted that "the fact that a defendant has filed a motion for summary judgment is significant in the determination whether a plaintiff's subsequent motion to amend is timely." _Little, 952 F.2d at 846 n.2_. "[M]uch of the value of the summary judgment procedure . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." _Id._ (quoting _Freeman v. Continental Gin Co., 381 F.2d 459, 469-70 (5th Cir. 1967)_.

2. Texas Property Code Claims

Plaintiff's amended complaint **[*18]** again fails to state a claim under _Texas Property Code Section 51.002_, for the same reasons noted by the Court in dismissing the actions in Part II.B.3., _supra_. Plaintiff does not specify any conduct of Defendant that allegedly violates this provision. Plaintiff's Second Amended Complaint quotes _Section 51.002(b)_, which mandates notice 21 days before a foreclosure sale. However, Plaintiff admits that no foreclosure sale has occurred. (Pl.'s Am. Resp. at 3.) Therefore, Plaintiff has failed to state a claim, and his motion for leave to amend his complaint with respect to the Texas Property Code Claims will be denied on futility grounds.

3. HUD Regulation Claims

The Court also denies, on futility grounds, Plaintiff's request to add claims under the National Housing Act regulations. Neither the National Housing Act nor its implementing regulations, promulgated by the Housing and Urban Development ("HUD") provide a private right of action. _See Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 758-59 (5th Cir. 1987)_; _Roberts v. Cameron-Brown Co., 556 F.2d 356, 361 (5th Cir. 1977)_; _Castrillo v. American Home Mortg. Servicing, Inc., 670 F.Supp.2d 516, 526-27 (E.D. La. 2009)_; _Mitchell v. Chase Home Finance, LLC, No. 3:06-CV-2099-K, 2008 U.S. Dist. LEXIS 17040, 2008 WL 623395, at *3 (N.D. Tex. March 4, 2008)_ **[*19]** .

Plaintiff also asserts that Defendant's alleged violations of the HUD regulations constitute a breach of contract. Plaintiff states that "[p]aragraph 9(d) of the Deed of Trust incorporates the rules and regulations of the Secretary of Housing and Urban Development." (Second Am. Compl. ¶ 110.) However, there is no paragraph labeled 9(d) in the deed of trust. (Exhibit G, Doc. No. 23-7.) Paragraph 9 does not mention the applicable law under the contract or name the

---

[4] While Plaintiff's counsel requested a continuance, she never specified new deadlines under the Court's scheduling order. Rather, she asked for a continuance only "until she return[ed] from her medical leave." (Attorney's Notice of Medical Leave, and Motion for a Continuance/or in the Alternative Extension of Time, Doc. No. 19, at 2.)

2011 U.S. Dist. LEXIS 118219, *19

Department of Housing and Urban Development, but rather contains the parties' agreements regarding a wholly unrelated topic—the actions to be taken in the event of a governmental taking of the property. Therefore, the Court finds that Plaintiffs Second Amended Complaint has failed to state a claim for violation of HUD regulations, and Plaintiffs motion for leave to amend will be denied on these claims.

## IV. CONCLUSION

For the reasons discussed in this order, Defendant's Motion to Dismiss Pursuant to *Rule 12(b)(6)* (Doc. No. 14) is **GRANTED.** Plaintiffs Motion and Memorandum in Support for Leave to File Amended Second Petition and Jury Demand (Doc. No. **[*20]** 26) is **DENIED.** Plaintiffs claims against Defendant are hereby **DISMISSED WITH PREJUDICE**

**IT IS SO ORDERED**

**SIGNED** at Houston, Texas, on this the 13th day of October, 2011.

/s/ Keith P. Ellison

KEITH P. ELLISON

UNITED STATES DISTRICT JUDGE

---

**End of Document**

 Cited
As of: October 30, 2018 2:08 PM Z

## *Molina v. Caliber Home Loans, Inc.*

United States District Court for the Northern District of Texas, Dallas Division

March 15, 2016, Decided; March 15, 2016, Filed

No: 3:15-CV-00757-P

**Reporter**
2016 U.S. Dist. LEXIS 193552 *; 2016 WL 3660621

MARY MOLINA, Plaintiff, v. CALIBER HOME LOANS, INC.; HSBC MORTGAGE SERVICES INC.; BENEFICIAL I, INC.; HOUSEHOLD FINANCE CORPORATION III; and U.S. BANK, TRUST, N.A., AS TRUSTEE FOR VOLT ASSET HOLDINGS TRUST XVI, Defendants.

## Core Terms

pleadings, amended complaint, Defendants', alleges, amend, motion for judgment, fails, renew a motion, motion to dismiss, cause of action, state court, limitations, collection, futile, Consumer, days, deed, cease and desist, leave to file, responded, mortgage, motions, records, moots

**Counsel:** [*1] For Mary Molina, Plaintiff: Leroy Brenardo Scott, LEAD ATTORNEY, Scott Law, PLLC, Houston, TX USA.

For Caliber Home Loans Inc, US Bank Trust NA, As Trustee for VOLT Asset Holdings Trust XVI, Defendants: J Allen Smith, LEAD ATTORNEY, Byron L Kelley, Lauren Nicole Beverly, SettlePou, Dallas, TX USA.

For Hsbc Mortgage Services Inc, Beneficial Financial I Inc, Household Finance Corporation III, Defendants: Peter Samir Wahby, LEAD ATTORNEY, Greenberg Traurig, Dallas, TX USA; Joseph P Griffith, Greenberg Traurig LLP, Dallas, TX USA.

**Judges:** Jorge A. Solis, United States District Judge.

**Opinion by:** Jorge A. Solis

## Opinion

### ORDER

Now before the Court are 1) The HSBC Defendants' Renewed Motion to Dismiss and Brief in Support; 2) Defendants Caliber Home Loans, Inc. and U.S. Bank Trust, N.A., as Trustee for Volt Asset Holdings Trust XVI's 12(c) Motion for Judgment on the Pleadings, and Brief in Support; 3) Plaintiff's Response to the HSBC Defendants' Renewed Motion to Dismiss & Motion for Leave to Amend Complaint; 4) Amended Complaint & Jury Demand; 5) Plaintiff's Response to the Caliber Defendants' Motion for Judgment on the Pleadings, Plaintiffs Supplemental Response to the HSBC Defendants' Motion to Dismiss, and Plaintiffs Motion [*2] for Judgment on the Pleadings Against the Caliber Defendants; 6) The HSBC Defendants' Response to Plaintiff's Motion for Leave to Amend Complaint and Motion to Strike Plaintiffs Amended Complaint; 7) The HSBC Defendants' Reply in Support of Their Renewed Motion to Dismiss; and 8) Defendants Caliber Home Loans, Inc. and U.S. Bank Trust, N.A., as Trustee for Volt Asset Holdings Trust XVI's Response to Plaintiffs Motion for Judgment on the Pleadings.

After considering the argument and authorities, and the case as a whole, the Court hereby **GRANTS** Plaintiff's Motion for Leave to File Amended Complaint; **DENIES WITHOUT PREJUDICE** both the HSBC Defendants' Renewed Motion to Dismiss and the Caliber Defendants' 12(c) Motion for Judgment on the Pleadings; **DENIES** Plaintiff's Motion for Judgment on the Pleadings Against the Caliber Defendants; and **DENIES** HSBC's Motion to Strike Plaintiff's Amended Complaint.

### BACKGROUND

According to her Amended Complaint (ECF Doc. 16), Plaintiff Molina borrowed funds in 2004 from Ameriquest Mortgage Company to purchase a home. The parties executed a deed of trust therefor, and her mortgage subsequently was transferred to one or more of the

defendants which Molina identifies [*3] as the "HSBC Defendants"—namely, HSBC Mortgage Services, Inc.; Household Finance Corporation III; and Beneficial I, Inc..[1]

On May 3, 2006, Molina deeded to her then-husband an undivided one-half (1/2) interest in and to the property. She alleges that this title was transferred back to her pursuant to a decree of annulment of her marriage on March 13, 2007, and that neither the lender nor any subsequent servicer of the mortgage opted to exercise any remedy under the deed of trust in regards thereto. By 2009, Molina became unable to make her mortgage payments and agreed to execute a deed in lieu of foreclosure ("DIL") on or about February 11, 2010, transferring ownership of the property to the HSBC Defendants. The promissory note referenced in the DIL was for the principal amount of $89,600.00. The DIL is alleged to have been filed and recorded in the Dallas County property records on March 8, 2010. On or about March 5, 2010, the HSBC Defendants took possession of the property, placed a safeguard lock on the front door and monitored access to the property. On or before June 20, 2010, the HSBC Defendants requested cancellation of lender-placed insurance on the property with an effective [*4] date of August 4, 2010.

Molina alleges that after the DIL was executed and filed, the HSBC Defendants nonetheless made multiple collection calls and sent correspondence demanding payments on the underlying note. Molina alleges that she repeatedly explained to customer service representatives of the HSBC Defendants that she owed nothing by virtue of the DIL. Molina asserts that on numerous occasions, the representatives would concede that there was a DIL on file and that Molina should simply ignore any correspondence while the computer system updated to reflect the existence of the DIL. Molina alleges that the representative(s) assured her that once the system was updated, collection efforts would cease.

At an undetermined time during this process, Molina sent a complaint letter to the HSBC Defendants, which they acknowledge receiving on August 17, 2011 in their responsive letter dated August 26, 2011. HSBC's letter indicates that after the DIL had been signed, returned and forwarded to the County Recorder's Office, it was discovered that Molina previously had deeded a portion of the property to her ex-husband. Because his signature was required to complete the DIL process, on July 5, [*5] 2010, HSBC's counsel sent a Special Warranty Deed to him for execution by July 20, 2010. However, because Molina's ex-husband did not sign and return the document, HSBC stated the DIL was invalid and was not, therefore, recorded. HSBC's letter indicates that, as no payments had been made on the account since October of 2009, HSBC considered the account delinquent and that it was being handled by their Loss Mitigation Department. HSBC asserted that Molina was contractually liable for the debt and that if her ex-husband were willing to sign the DIL, that process could be started again. Otherwise, the account would go through their normal foreclosure process. Finally, the letter indicated that HSBC's records had been updated to cease telephone communication with Molina, and that billing statements and correspondence would be sent via email. HSBC invited Molina to contact their Loss Mitigation and Customer Service departments directly.

Molina alleges that in 2011, the City of Garland refused her request to turn on the utilities at the property because she was not the owner according to the official property records of Dallas County. On December 12, 2012, HSBC'S attorney sent Molina a letter [*6] indicating that she owed $141,212.73. On April 5, 2013, HSBC sent Molina a Notice of Default and Intent to Accelerate her Texas Nonrecourse Loan, indicating that $62,283.47 was past due and that the loan would be accelerated if the past due amount was not paid in 30 days.

Molina alleges that in 2013, the HSBC Defendants sold, transferred or assigned the note to the Caliber Defendants for collection, because that was when she started receiving correspondence and phone calls from Caliber, which Molina characterizes generally as threatening and coercive. Molina alleges that during this time she disputed the debt and requested verification from Caliber, that Caliber responded by sending her copies of another borrower's loan documents (including personal and financial information about that borrower), and that Caliber never sent her evidence that she owed the debt at issue, yet continued to call her and mail

---

[1] Molina's pleading states: "The events complained of herein involved numerous related and unrelated corporate entities, which not only caused confusion and frustration to Plaintiff, but also makes it difficult to identify the responsible corporate entities." Plaintiff attributes responsibility to the HSBC Defendants for actionable conduct occurring in or before 2013. Responsibility for actionable conduct occurring thereafter Plaintiff attributes to the "Caliber Defendants" (i.e., Caliber Home Loans, Inc. and U.S. Bank Trust, N.A., as Trustee for Volt Asset Holdings Trust XVI).

statements therefor.

Molina alleges that Caliber suggested she "short sell" the property, and assisted her in attempting to do so, but that she was told by two real estate agents that she couldn't because the property was not hers and that she could be jailed for trying. She contends **[*7]** that Caliber continued to call her about the debt and threatened her with foreclosure action. On February 2, 2014, Molina complained to the Consumer Financial Protection Bureau which responded by stating it reviewed Molina's complaint and Caliber's response, and that its investigators reached out to Caliber to determine whether Caliber completed Molina's DIL and updated her credit report accordingly, and that Caliber reported it had on both counts.

Molina asserts that on November 25, 2014, Defendant U.S. Bank Trust attempted to foreclose on the property by filing an Application for Expedited Order under *Rule 736* on a Home Equity or Home Equity Line of Credit Loan. Molina alleges she was unaware of the action against her and a default judgment was obtained by U.S. Bank Trust on January 16, 2015.

Between the time the DIL was executed and the date this action was filed, Molina alleges generally that "the Defendants made one or more debt collection calls per day several times per month." Regarding the Caliber Defendants specifically, Molina alleges they called her "several times per day, several days per week" between the unidentified time in 2013 that they acquired the account and the time suit **[*8]** was filed in January of 2015. Molina alleges that the Defendants' collective conduct caused her to develop severe physical and psychological ailments, including fibromyalgia, depression and Post Traumatic Stress Disorder. She asserts that she now becomes fearful and physically ill whenever her phone rings. She characterizes the past few years as "unbearable" given the "torment" she has experienced.

On January 16, 2015, Molina filed her Original Petition in state court, seeking $1 million in damages. On February 5, 2015, she filed her First Amended Petition, adding U.S. Bank Trust as a Defendant. On March 5, 2015, she amended her petition again to add a cause of action. On March 6, 2015, Defendant Caliber timely removed the case, with the consent of all Defendants, because Molina had asserted federal causes of action under the *Fair Debt Collection Practices Act* (*15 U.S.C. § 1601, et seq.*,) and the *Telephone Consumer Protection Act* (*47 U.S.C. § 227*).

On March 23, 2015, The HSBC Defendants moved to dismiss the action on the grounds that, *inter alia*, Molina's claims are barred by the applicable statute of limitations. In response, on April 7, 2015, Molina filed her Complaint and Jury Demand (ECF Doc. 9), which she asserted amended **[*9]** and replaced "all her previously filed state court petitions" and which purported to address and moot the issues raised in the pending Motion to Dismiss. On April 21, 2015 The HSBC Defendants' filed their Renewed Motion to Dismiss, now before the Court. On May 1, 2015, the Caliber Defendants filed a Motion for Judgment on the Pleadings against Molina. On May 12, 2015, Molina responded to both pending motions by filing an amended pleading, seeking leave to file it in its Response to the Renewed Motion to Dismiss. Molina contends, again, that her latest amended complaint addresses and moots the issues raised in both pending motions. Concomitant with her Response to the Caliber Defendants' 12(c) motion, Molina moves the court for Judgment on the Pleadings as to the Caliber Defendants based on the contention that their Answer (filed in state court before removal) does not comply with *Federal Rule of Civil Procedure 8(b)* and, therefore, all of Molina's allegations against them are deemed admitted entitling Molina to judgment on the pleadings. Lastly, the HSBC Defendants have moved to strike Molina's Amended Complaint.

## ANALYSIS

### A. HSBC'S Renewed Motion to Dismiss

The HSBC Defendants move the Court to dismiss Molina's causes of **[*10]** action against them[2]

on the bases that: 1) Molina fails to state a claim for breach of contract in that her claim is time-barred and her pleadings fail to raise some basis for tolling the statute of limitations; 2) Molina has failed to state sufficient facts to support her claim for violations of the *Texas Debt Collection Act* based on violations of the Texas Finance Code because she a) fails to allege any threats, coercion or attempts to coerce, any misrepresentations regarding Molina's willful refusal to pay, and/or specific facts regarding any reports to credit agencies; b) fails to allege facts that HSBC Defendants threatened to take any action without appropriate court proceedings; c) fails to allege sufficient facts to show the

---

[2] This motion relies on the factual allegations made in Molina's Complaint (ECF Doc. 9).

HSBC Defendants used threats or coercion and/or that foreclosure of the property was prohibited by law; d) fails to allege that the HSBC Defendants made any phone calls after 2010, fails to allege specific facts regarding the date, time or frequency of calls, and is subject to a 2-year statute of limitations; e) fails to identify fees or penalties incidental to her loan that the HSBC Defendants imposed and attempted to collect; and f) fails to allege any **[*11]** misrepresentations made by the HSBC Defendants to Molina with respect to the character, extent or amount of debt that led her to think differently about her debt; 3) Molina fails to state a claim for violation of the *Texas Deceptive Trade Practices Act (DTPA)* because she lacks standing as she is not a consumer within the meaning of the statute; 4) Because Molina is not a consumer under the DTPA, her "tie-in" claim under the Texas Debt Collection Act (TDCA) fails as a matter of law; 5) Molina fails to state a claim for violations of the Telephone Consumer Protection Act because she fails specifically to identify which Defendant made calls and when calls were made; that Molina fails to allege that the HSBC Defendants made *any* calls after receiving her cease and desist letter; and that her TCPA claims are subject to a two-year statute of limitations; and finally 6) Molina's request for declaratory relief fails because its underlying cause of action (breach of contract) is time-barred.

Molina responds by seeking leave to file her Amended Complaint to correct an error concerning the date she sent the HSBC Defendants her cease and desist letter and to add or clarify facts showing her entitlement **[*12]** to relief. Molina contends that the amendment will moot the relief requested by the HSBC Defendants. The HSBC Defendants contest Molina's arguments and her right to amend [which the Court addresses in detail *infra*], and move the Court to strike her Amended Complaint.

### B. The Caliber Defendants' 12(c) Motion for Judgment on the Pleadings

The Caliber Defendants move the Court to dismiss all of Molina's claims against them because her pleadings fail to meet Federal *Rule 8(a)(2)* standards. Most notably, they argue that Molina is not a consumer under the DTPA, and she cannot save her Complaint from dismissal by merely reciting the elements of causes of actions with conclusory and vague allegations.

Molina responds by a) contesting the Caliber Defendants right for judgment on the pleadings; b) arguing that her Amended Complaint (for which she seeks leave to file) moots the Caliber Defendants'

motion; c) asking the Court to allow her to file yet another amended complaint if the one for which she now seeks leave to file is insufficient; and d) moving the Court to enter judgment on the pleadings against the Caliber Defendants [which the Court addresses *infra*].

### C. Plaintiff's Motion for Leave to Amend Complaint **[*13]**

Molina seeks leave to file her Amended Complaint for two reasons. First she seeks to correct an error concerning the date she alleges she sent a cease and desist letter to the HSBC Defendants, which originally she had pleaded took place in 2010. Molina states she "has since rediscovered [sic] a letter from the HSBC Defendants that more accurately estimates the date the letter was actually sent." Second, she argues that her Amended Complaint adds or clarifies facts tending to show her entitlement to relief. As both the former and latter are responsive to matters raised in the pending motion to dismiss and motion for judgment on the pleadings against her, Molina contends her Amended Complaint moots those motions. She argues that she was entitled, pursuant to *Federal Rule of Civil Procedure 15(a)(1)(B)*, to file her Amended Complaint as a matter of course within 21 days of a motion to dismiss under *Rule 12(b)(6)*, and inasmuch as the HSBC Defendants filed their renewed motion to dismiss on April 21, her May 12 filing should be allowed. Moreover, she argues that *Rule 15(a)(2)* directs that leave to amend a pleading should be freely given when justice so requires. Finally, she argues that if the underlying facts or circumstances relied upon by a plaintiff may **[*14]** be a proper subject of relief, she ought to be afforded the opportunity to test her claims on the merits pursuant to *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*.

The HSBC Defendants argue that Molina's request to amend her pleading is simply an attempt to circumvent the clear statute of limitations issues raised in their motion(s) to dismiss. They characterize the Amended Complaint as Molina's fifth attempt to plead a cause of action against them the first three attempts having been the pleadings filed in state court, the fourth being the Complaint and Jury Demand (ECF Doc. 9) which Molina filed after removal, and the fifth being the Amended Complaint now under consideration. They contend that Molina fails to explain "her clear lack of diligence" regarding the timing of the cease and desist letter, that the HSBC Defendants have "expended significant time and money to brief not one, but two, motions to dismiss," and that the amendment would cause them

2016 U.S. Dist. LEXIS 193552, *14

undue prejudice and only operate to delay the "inevitable dismissal" of Molina's time-barred claims. They argue that, while *Rule 15* evinces a bias in favor of granting leave to amend, the decision is not automatic, citing *Matter of Southmark Corp., 88 F.3d 311, 314-15 (5th Cir. 1996)* (*quotation omitted*). A decision to grant leave is within the discretion [*15] of the trial court. *Id.* They argue that denial is appropriate when the Court has a substantial reason for denial. *Id.* In reaching its decision, the Court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.*

The HSBC Defendants argue that the Court should consider whether Molina "failed to take advantage of earlier opportunities to amend" per *Quintanilla v. Tex. Television Inc., 139 F.3d 494, 499 (5th Cir. 1998)*(*citation omitted*) and that she has already amended her complaint three times, including once with the benefit of their motion to dismiss "outlining the deficiencies" in her pleadings, specifically as to the statute of limitations. Moreover, they argue that the amendment is nothing more than a dilatory tactic that ultimately would be futile as, regardless of the date Molina now claims to have sent her cease and desist letter, the relevant inquiry for purposes of the statute of limitations is when the cause of action for breach of contract occurred. *Barker v. Eckman, 213 S.W.3d 306, 311 (Tex. 2006)*; *Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002)*. The HSBC Defendants contend Molina's breach of contract claim accrued in 2010 and she still has failed to plead [*16] an applicable tolling provision for the 4 year statute of limitations, so her amendment is futile. *See Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 518 (Tex. 1988)*. Finally, they argue that allowing Molina to amend her pleadings, which is deficient due to unexcused lack of diligence, would be unduly prejudicial to the HSBC Defendants as they have already expended substantial time and money in drafting the prior motions to dismiss.

After considering the foregoing arguments, the law and the procedural status of the case, the Court determines that it is in the interest of justice—not to mention the litigants—to have before it both accurate facts and a more-detailed factual exposition, particularly at this point in the proceedings. Regarding Defendants' futility argument, the Court notes [without commenting on its merits] that while amendment could possibly be futile for Plaintiff to avoid dismissal on some claims against some defendants, it may not be futile as to all claims against all defendants. This is relevant insofar as it would be burdensome and potentially premature at this juncture for the Court to decide on a piecemeal basis which amended factual allegations to allow and which to deny. Judicial economy and the interests of justice support [*17] amendment *in toto*. Moreover, if amendment is indeed futile, granting leave to amend should have no prejudicial effect on defendants' legal position. As to being unduly prejudiced because of time and money already expended in filing two motions to dismiss, while the Court desires and supports litigation economy, it also recognizes that justice may require some repetition of effort and notes the probability that much of the work already done likely can be resubmitted with minimal additional expense and effort.

As to the number of times Molina has amended her pleadings, the Court notes that the rules in state court regarding amendment are far more lenient than in federal court, so is not persuaded that Molina's first three pleadings (each amended roughly one month apart from each other) should work against her here in the manner urged. At same time, the Court reminds Molina that amendment of pleadings in federal court is more stringent. In the interests of justice, the Court has exercised its discretion to allow her to file her Amended Complaint. It will, however, look with disfavor upon any future requests for leave to amend in response to any dispositive motions. At this point, Plaintiff [*18] has had ample opportunity to flesh out her pleadings, particularly with having had the benefit of the defendants' previous motions.

D. Plaintiff's Motion for Judgment on the Pleadings Against the Caliber Defendants

Molina moves the Court to enter judgment against the Caliber Defendants pursuant to *Rule 12(c)* on the basis that their responsive pleading filed in state court prior to removal, which generally denies and demands proof of Plaintiff's allegations, is insufficient under Federal *Rule 8(b)*, and that all Plaintiff's allegations should, therefore, be deemed admitted against them.

The Caliber Defendants respond by citing Federal *Rule 81(c)(2)*--which states "[a]fter removal, repleading is unnecessary unless the court orders it"--and the cases of *In re Amerijet, 785 F.3d 967, 2015 WL 1965828, at *6 (5th Cir. 2015)* and *Holloway v. ITT Educational Services, Inc., No. H-13-1317, 2014 U.S. Dist. LEXIS 120044, 2014 WL 4273896, at *2 (S.D. Tex. Aug. 28, 2014)* to support their position that their state court pleading is sufficient, and that Plaintiff is not entitled to

judgment on the pleadings on the basis of deemed admissions.

The Court agrees with the Caliber Defendants and declines to order repleading. Molina's motion for judgment on the pleadings is **DENIED**.[3]

<u>CONCLUSION</u>

Plaintiff's Motion for Leave to Amend Complaint is **GRANTED [*19]** . The Amended Complaint will be deemed filed as of the date of this order. The HSBC Defendants' Motion to Strike Plaintiffs Amended Complaint is **DENIED**. Plaintiff's Motion for Judgment on the Pleadings Against the Caliber Defendants is **DENIED**. The HSBC Defendants' Renewed Motion to Dismiss is **DENIED WITHOUT PREJUDICE**. The Caliber Defendants' 12(c) Motion for Judgment on the Pleadings is **DENIED WITHOUT PREJUDICE**. All defendants have 14 days from the entry of this order to submit any motions to dismiss and/or for judgment on the pleadings. Any responses thereto must be filed within 7 days thereafter, and any replies must be filed within 3 days of any response.

SO ORDERED this 15th day of March, 2016.

/s/ Jorge A. Solis

Jorge A. Solis

United States District Judge

---

**End of Document**

---

[3] Moreover, inasmuch as the Court is granting Molina leave to amend her pleadings, she is not well-positioned to argue entitlement to judgment on a pleading technicality. On the facts at hand, the interests of justice would warrant the Caliber Defendants an opportunity to amend as well.

⚠️ Caution
As of: October 30, 2018 2:09 PM Z

## *Onasset Intelligence, Inc. v. Freightweight Int'l (USA), Inc.*

United States District Court for the Northern District of Texas, Dallas Division

November 6, 2012, Decided; November 6, 2012, Filed

CIVIL ACTION NO. 3:11-CV-3148-G

**Reporter**
2012 U.S. Dist. LEXIS 158734 *; 2012 WL 5409660

ONASSET INTELLIGENCE, INC., Plaintiff, vs. FREIGHTWEIGHT INTERNATIONAL (USA), INC., Defendant.

## Core Terms

amend, patent, infringement, docket entry, denial of leave, settlement, motion for leave, undue delay

**Counsel:  [*1]** For OnAsset Intelligence Inc, Plaintiff, Counter Defendant: Christopher M Joe, LEAD ATTORNEY, Monica Tavakoli, Niknaz F Bukovcan, Buether Joe & Carpenter LLC, Dallas, TX.

For FreightWatch International (USA), Inc., Defendant: Jonathan R Spivey, LEAD ATTORNEY, Bracewell & Giuliani LLP, Houston, TX; Daniel T Conrad, Jones Day, Dallas, TX; Daniel Thomas O'Brien, Jones Day LLP, Dallas, TX; Jason A Wietjes, Bracewell & Giuliani LLP, Dallas, TX; Kenneth Scott Luchesi, Jones Day, Cleveland, OH.

For FreightWatch International (USA), Inc., Counter Claimant: Daniel T Conrad, LEAD ATTORNEY, Jones Day, Dallas, TX; Daniel Thomas O'Brien, Jones Day LLP, Dallas, TX; Jason A Wietjes, Bracewell & Giuliani LLP, Dallas, TX; Kenneth Scott Luchesi, Jones Day, Cleveland, OH.

**Judges:** A. JOE FISH, Senior United States District Judge.

**Opinion by:** A. JOE FISH

## Opinion

### MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's motion for leave to amend its complaint (docket entry 49). For the reasons stated below, the motion is granted.

### I. BACKGROUND

On November 15, 2011, OnAsset Intelligence, Inc. ("OnAsset") filed a complaint against FreightWatch International (USA), Inc. ("FreightWatch"), alleging patent infringement, trademark infringement,  **[*2]** and other violations of the Lanham Act. More specifically, OnAsset alleged infringement of United States Patent No. 7,791,455 (the "'455 patent"). *See* Original Complaint ¶¶ 10-14 (docket entry 1). On January 10, 2012, FreightWatch filed a motion to dismiss, *see* FreightWatch's Motion to Dismiss for Failure to Join a Party or to Sever and Stay the Patent Claim and Supporting Brief (docket entry 10), which the court denied as moot on June 21, 2012. *See* Order of June 21, 2012 (docket entry 27). On July 25, 2012, OnAsset reached a settlement agreement with respect to the '455 patent with FreightWatch and its suppliers (Moog Inc. and Crossbow Technology, Inc.). *See* OnAsset Intelligence, Inc.'s Motion for Leave to Amend its Complaint ("Motion") at 2 (docket entry 49). OnAsset claims that it was during these settlement negotiations that it first learned of FreightWatch's (and Moog's and Crossbow's) infringement of another patent, United States Patent No. 7,652,576 (the "'576 patent"). *Id.* OnAsset also reached a settlement with Moog and Crossbow concerning the '576 patent on July 25, 2012, but it was unable to settle with FreightWatch with respect to this patent. *Id.* Counsel for OnAsset could  **[*3]** not reach agreement with counsel for FreightWatch regarding an amended complaint. *Id.* Thereafter, OnAsset filed the instant motion on September 19, 2012.

### II. ANALYSIS

### A. Legal Standard

*Federal Rule of Civil Procedure 15(a)* instructs the court to "freely give leave" to a party to amend its pleading "when justice so requires." A motion to amend a

pleading "should not be denied unless there is a substantial reason to do so." See *Jacobsen v. Osborne, 133 F.3d 315, 318 (5th Cir. 1998)* (internal quotations omitted). In determining whether to grant leave to amend, the court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." See *In re Southmark Corporation, 88 F.3d 311, 314-15 (5th Cir. 1996)*, *cert. denied*, 519 U.S. 1057, 117 S. Ct. 686, 136 L. Ed. 2d 611 (1997).

B. Application

FreightWatch contends that OnAsset unduly delayed in moving to amend its complaint and that FreightWatch will suffer undue prejudice as a result. *See* FreightWatch International (USA), Inc.'s Opposition to Plaintiff's Motion for Leave to Amend its Complaint ("Response") at [*4] 2-4 (docket entry 51). The court will analyze each of these factors in turn.

1. *Undue delay*

FreightWatch maintains that OnAsset could and should have known of the possibility of FreightWatch's alleged infringement of the '576 patent before this suit was filed.
*

*Id.* at 3. FreightWatch therefore asserts that OnAsset's move to amend its complaint at this stage in the litigation constitutes undue delay. *Id.* OnAsset responds that, whatever it could have known at the outset of the case, it only *actually* discovered the alleged infringement during settlement negotiations concerning the '455 patent. *See* OnAsset Intelligence, Inc.'s Reply in Support of its Motion for Leave to Amend its Complaint ("Reply") at 3 (docket entry 55). OnAsset insists that it diligently pursued settlement with respect to the '576 patent, and after conferring with FreightWatch about its motion to amend, filed the motion in a timely fashion and within the deadlines set by this court's Scheduling Order. *Id.*

The court agrees with OnAsset that, upon its discovery during settlement negotiations [*5] of the alleged infringement of the '576 patent, it has acted diligently and without delay in pursuing the amendment of its complaint. The court is also of the opinion that

---

* For the purpose of this motion, the court will assume that FreightWatch's factual account of what OnAsset "should have" known is true.

OnAsset's failure to pursue this claim from the onset of litigation does not constitute sufficient undue delay to support a denial of leave to amend. This is particularly so in light of the following analysis of prejudice.

2. *Undue prejudice*

FreightWatch claims that OnAsset's failure to pursue its infringement claim from the onset of litigation has created an inefficient process that will unnecessarily cost it greater time, money, and disruption of business activities than would have been spent had the claim been brought initially. *See* Response at 4. OnAsset responds that the litigation is in its early stages, noting that (1) "neither party has engaged in any discovery activities"; (2) trial is set for a date over a year from now (January 6, 2014); and (3) the current discovery cutoff date of June 30, 2013 is well over six months from now. *See* Reply at 3-4. In addition, OnAsset contends that FreightWatch did not make any argument that the '576 patent infringement claim is futile (implicitly admitting it would survive [*6] a motion to dismiss), so that OnAsset will surely simply file a new action should its motion be denied. *Id.* at 4.

The plaintiff correctly notes that "[m]erely because a claim was not presented as promptly as possible . . . does not vest the district court authority to punish the litigant." See *Carson v. Polley, 689 F.2d 562, 584 (5th Cir. 1982)*; *see also* Reply at 1-2. Rather, the usual case in which "undue delay" supports a court's denial of leave to amend is where a party waits until the eve of trial to assert a new claim. See, *e.g.*, *Daly v. Sprague, 675 F.2d 716, 720, 723 (5th Cir. 1982)*, *cert. denied*, 460 U.S. 1047, 103 S. Ct. 1448, 75 L. Ed. 2d 802 (1983) (upholding a district court's denial of leave to amend a complaint where the amendment was requested 20 days before trial and 16 months after the initiation of litigation); *Daves v. Payless Cashways, Inc., 661 F.2d 1022, 1025 (5th Cir. 1981)* (upholding a district court's denial of leave to amend a complaint where the amendment was requested on the eve of trial and after a 19-month delay). Other cases reflect a similar seriousness of harm to an opponent from a party's delay. See, *e.g.*, *Mayeaux v. Louisiana Health Service and Indemnity Company, 376 F.3d 420, 425-28 (5th Cir. 2004)* [*7] (upholding a district court's denial of leave to amend where the amendment was sought six years after the original complaint was filed and after extensive discovery and pretrial activity had been conducted).

While FreightWatch has shown that there has been some delay, and that it will experience some further cost from this delay, the court concludes that the prejudice to

2012 U.S. Dist. LEXIS 158734, *7

FreightWatch does not rise to the level of seriousness displayed in the above cases. Any prejudice to FreightWatch is not sufficiently "undue" to support a denial of leave to amend.

III. <u>CONCLUSION</u>

For the reasons stated above, OnAsset's motion for leave to amend its complaint is **GRANTED.**

**SO ORDERED.**

November 6, 2012.

/s/ A. Joe Fish

**A. JOE FISH**

**Senior United States District Judge**

---

End of Document

 Positive
As of: November 6, 2018 7:59 PM Z

## *In re Plains All Am. Pipeline, L.P. Sec. Litig.*

United States District Court for the Southern District of Texas, Houston Division

December 7, 2015, Decided; December 7, 2015, Filed, Entered

Lead Case No H:15-cv-02404

**Reporter**
2015 U.S. Dist. LEXIS 163811 *; 2015 WL 8207331

IN RE PLAINS ALL AMERICAN PIPELINE, L.P. SECURITIES LITIGATION

**Subsequent History:** Motion denied by *In re Plains All Am. Pipeline, L.P. Sec. Litig., 2016 U.S. Dist. LEXIS 65601 (S.D. Tex., May 18, 2016)*

Dismissed without prejudice by *In re Plains All Am. Pipeline, L.P., 245 F. Supp. 3d 870, 2017 U.S. Dist. LEXIS 46870 (S.D. Tex., Mar. 29, 2017)*

Dismissed by, Judgment entered by *In re Plains All Am. Pipeline, L.P. Sec. Litig., 2018 U.S. Dist. LEXIS 56013 (S.D. Tex., Mar. 30, 2018)*

## Core Terms

lead plaintiff, largest, appointment, financial interest, securities, funds, requirements, class period, plaintiffs', adequacy, class member, lead counsel, typicality, losses, shares, stock, putative class, consolidated, conflicts, investors, quotation, motions, parties, argues, marks, spill

**Counsel:** **[*1]** For City of Birmingham Firemen's and Policemen's Supplemental Pension System, Plaintiff: Roger Farrell Claxton, LEAD ATTORNEY, Dallas, TX.

For Plains All American Pipeline, L.P., Defendant: Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX; Michael C Holmes, Vinson & Elkins, Dallas, TX.

For Gregory L. Armstrong, Al Swanson, Chris Herbold, Defendants: Michael C Holmes, LEAD ATTORNEY, Vinson & Elkins, Dallas, TX; Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX.

For Plains GP Holdings L.P., Harry N. Pefanis, Victor Burk, Everardo Goyanes, Gary L. Petersen, John T. Raymond, Bobby S. Shackouls, Robert V. Sinnott, Vicky Sutil, Taft Symonds, Christopher M. Temple, Consol Defendants: Jeffrey S Johnston, Vinson Elkins LLP, Houston, TX; Michael C Holmes, Vinson & Elkins, Dallas, TX.

For Barclays Capital Inc., Citigroup Global Markets Inc., Consol Defendants: Mark K Glasser, Sidley Austin LLP, Houston, TX; Matthew J Dolan, Norman J Blears, Sidley Austin LLP, Palo Alto, CA.

For Goldman Sachs & Co., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, UBS Securities LLC, Wells Fargo Securities LLC, Consol Defendants: Mark K Glasser, Sidley Austin LLP, Houston, TX; Matthew **[*2]** J Dolan, Norman J Blears, PRO HAC VICE, Sidley Austin LLP, Palo Alto, CA.

For Inter-Marketing Group USA, Inc., Movant: William B Federman, Federman Sherwood, Oklahoma City, OK.

For The Pennsylvania State Employees' Retirement System, Movant: Carl E Singley, Joe H Tucker, LEAD ATTORNEYS, Tucker Law Group, Philadelphia, PA; Christine Donato Saler, LEAD ATTORNEY, Catherine Pratsinakis, Chimicles & Tikellis LLP, Haverford, PA; Roger B Greenberg, Thane Tyler Sponsel, III, LEAD ATTORNEYS, Sponsel Miller Greenberg PLLC, Houston, TX; Kimberly M Donaldson Smith, Nicholas E. Chimicles, PRO HAC VICE, Chimicles & Tikellis LLP, Haverford, PA.

For Houston Municipal Employees Pension System, Movant: Thomas E Bilek, LEAD ATTORNEY, The Bilek Law Firm LLP, Houston, TX; Jeffrey Haber, PRO HAC VICE, Bernstein Liebhard et al, New York, NY; Joseph R. Seidman, Jr., Bernstein Liebhard LLP, New York, NY; Stanley Bernstein, PRO HAC VICE, Bernstein Liebhard, New York, NY.

For Employees' Retirement System of Rhode Island, Police and Fire Retirement System of the City of Detroit, Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge, Movants: Gerald H Silk, LEAD ATTORNEY, Bernstein **[*3]** Litowitz Berger & Grossmann LLP, New York City, NY; Thomas Robert Ajamie, LEAD ATTORNEY, Ajamie LLP, Houston, TX.

For Jacksonville Police and Fire Pension Fund, Movant: Gerald H Silk, Bernstein Litowitz Berger & Grossmann LLP, New York City, NY; Thomas Robert Ajamie, Ajamie LLP, Houston, TX.

For IAM National Pension Fund, Movant: Andrew M Edison, LEAD ATTORNEY, Edison, McDowell & Hetherington, LLP, Houston, TX; Danielle S Myers, PRO HAC VICE, Luke O. Brooks, Robbins Geller Rudman & Dowd LLP, San Diego, CA.

**Judges:** Lee H. Rosenthal, United States District Judge.

**Opinion by:** Lee H. Rosenthal

# Opinion

**MEMORANDUM AND ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

The putative class members in this federal securities action are investors in Houston-based Plains All American Pipeline, LP ("Plains"), a crude-oil pipeline operator. On May 19, 2015, Line 901—a 10.6-mile long Plains pipeline across the Santa Barbara, California coast—ruptured and released crude oil. The plaintiffs allege that Plains made misrepresentations about the measures taken to prevent such an occurrence before the spill and after the spill about the extent of the release. They seek damages for the decline in the value of Plains stock. The defendants **[*4]** are Plains; Plains Holdings, a limited partnership formed to own an interest in Plains's general-partner and incentive-distribution rights; officers and directors at the two companies; and underwriters associated with public offerings of the shares.

Five plaintiffs moved to be appointed as lead plaintiff and for their chosen counsel to be approved as lead counsel. (Docket Entry Nos. 8, 11, 18, 19, 22). The court heard argument on the motions. At the hearing, the court dismissed as moot the Public Pension Funds' withdrawn motion and denied the Houston Municipal Employees Pension System's motion. (Docket Entry No. 56). The court took under advisement the motions filed by Inter-Marketing Group USA, Inc. ("Inter-Marketing Group"), IAM National Pension Fund ("IAM"), and the Pennsylvania State Employees' Retirement System (the "Pennsylvania System").

Based on the pleadings, the motions and responses,

and the applicable law, the court now grants IAM's motion for appointment of lead plaintiff and approval of lead counsel and denies the motions filed by the Inter-Marketing Group and the Pennsylvania System. The reasons are explained below.

## I. The Standard for Determining "the Most Adequate Plaintiff" [*5]  Under the _PSLRA_

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), _Pub. L. No. 104-67, 109 Stat. 737_, the district court must appoint the lead plaintiff "[a]s soon as practicable" after ruling on a motion to consolidate. _15 U.S.C. § 78u-4(a)(3)(B)(ii)_. On October 20, 2015, the court granted the plaintiffs' motions to consolidate this case with Case No. 4:15-cv-2540. (Docket Entry No. 30). The _PSLRA_ requires notice within 20 days after the plaintiff files a complaint that informs class members of their right to move for lead-plaintiff status within 60 days after the notice was published. _15 U.S.C. § 78u-4(a)(3)(A)(i)_. The parties do not dispute the adequacy of the notice.

In appointing the lead plaintiff,

> the court shall consider any motion made by a purported class member . . . , including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

_Id._ _§ 78u-4(a)(3)(B)(i)_. "[T]he court shall adopt a presumption that the most adequate plaintiff **[*6]** in any private action arising under this chapter is the person or group of persons that":

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of _Rule 23 of the Federal Rules of Civil Procedure._
> . . .
> [This presumption] may be rebutted only upon proof

by a member of the purported plaintiff class that the presumptively most adequate plaintiff

    (aa) will not fairly and adequately protect the interests of the class; or

    (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* *§ 78u-4(a)(3)(B)(iii)(I)—(II)*. Discovery on this issue may be conducted only if "the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *Id.* *§ 78u-4(a)(3)(B)(iv)*. The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* *§ 78u-4(a)(3)(B)(v)*.

## II. Which of the Plaintiffs Is Presumed "the Most Adequate"?

For the presumption to apply, "the lead plaintiff or plaintiffs must possess not only the largest financial **[*7]** interest in the outcome of the litigation, but must also meet the requirements of *Federal Rule of Civil Procedure 23*." *In re Waste Management, Inc. Sec. Litigation, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000)*.

### A. The Largest Financial Interest

Courts in this district consider the four *Lax* factors to determine who has the largest financial interest. The factors are "(1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the plaintiff(s)." *Id. at 414* (citing *Lax v. First Merchants Acceptance Corp., No. 97-c-2715, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997))*. It is undisputed that IAM has the largest financial interest in the relief the putative class seeks. IAM purchased the largest number of total and net shares, spent the largest amount of total net funds, and suffered the largest loss.[1]

 *Compare* (Docket Entry No. 18, Ex. C), *with* (Docket Entry No. 9); (Docket Entry No. 49, Ex. 1); *see also* (Docket Entry No. 50 at p. 10).

The Pennsylvania System argues that it should nonetheless be appointed as co-lead plaintiff with IAM. The argument is based on differences between **[*8]** Plains stock and Plains Holdings stock. The Pennsylvania System has the largest financial interest in the relief sought on behalf of investors in Plains Holdings, (Docket Entry No. 48 at 9-10), and argues that a co-lead plaintiff is necessary to ensure that both sets of investors are adequately represented. But IAM invested in, and lost money on, shares of both Plains and Plains Holdings during the class period. The present record shows no basis to infer that both IAM and the Pennsylvania System are needed as lead plaintiffs for adequate representation. This court rejected a similar argument for co-lead plaintiff appointment in *In re Enron Corp. Securities Litigation, 206 F.R.D. 427 (S.D. Tex. 2002)*. As in *Enron*, the Pennsylvania System's call for subclasses may be "persuasive . . . at class certification, as well as for trial." *Id. at 451*. At this stage, however, "such divisions are [not] essential." *Id*.

At oral argument, the Pennsylvania System argued that *Enron* was different because it involved only one company, while Plains and Plains Holdings are distinct corporate entities. The Pennsylvania System submitted exhibits showing that the companies are interrelated but have some differences in employees and corporate structure. This is not a persuasive basis for **[*9]** distinguishing *Enron*. Because the class relief sought encompasses losses from investments in both Plains and Plains Holdings, the losses are properly combined to determine the largest financial interest. As in *Enron*, the Pennsylvania System "may reurge or file new requests for subclasses and separate representatives" at the class-certification stage. *Id.* Until then, the differences between Plains and Plains Holdings provide no reason to appoint co-lead plaintiffs. *See Greenberg v. Bear Stearns & Co., Inc., 80 F. Supp. 2d 65, 70 (S.D.N.Y. 2000)* ("When attempting to resolve who is the most adequate plaintiff to represent the class, the Court is of the view that the largest financial interest of the class should be considered, not the largest financial interest of separate sub classes."); *cf. In Re Century Business Servs. Sec. Litigation, 202 F.R.D. 532, 536 (N.D. Ohio 2001)* (plaintiffs "cannot simply define the class they seek to represent . . . [or] shrink the kingdom until they are king.").

The Pennsylvania System also argues that it has the "broadest" financial interest in the relief sought because it also lost money on investments in Plains debt securities. (Docket Entry No. 48 at p. 11). It concedes,

---

[1] There are two methods for calculating losses: first in, first out ("FIFO") and last in, first out ("LIFO"). The movants' losses are the same under either measure.

2015 U.S. Dist. LEXIS 163811, *9

however, that "the debt securities are not included in the current definition of the class." (*Id.*). And the *PSLRA* question is not which **[*10]** party has the "broadest" financial interest, but which party has the "largest" financial interest.

Although the relative difference between the losses alleged by IAM and the Pennsylvania System—$500,000, or roughly 5 percent—is not great, the *Lax* factors show that IAM "has the largest financial interest in the relief sought by the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)*.

## B. Does IAM Otherwise Satisfy the Requirements of *Rule 23*?

Because IAM has the largest financial interest, it is presumptively entitled to lead-plaintiff status unless it fails the requirements of *Federal Rule of Civil Procedure 23*.

### 1. The Legal Standard Under *Rule 23*

The *Rule 23(a)* requirements are that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23*. The most relevant requirements under the *PSLRA* are adequacy and typicality. *Enron, 206 F.R.D. at 441*. "Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff **[*11]** must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *Id.*

"The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 297 n.32 (5th Cir. 2001)* (quoting *Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th*

*Cir. 1986))* (internal quotation marks omitted); *see also Woodard v. Andrus, 272 F.R.D. 185, 191 (W.D. La. 2010)* ("The test for typicality is not demanding and it focuses on the general similarity of the legal and remedial theories behind the plaintiffs' claims." (citing *Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir. 1993)*; *Jenkins, 782 F.2d at 472*)). The class representative's claims must "have the same essential characteristics of those of the putative class." *James v. City of Dallas, 254 F.3d 551, 571 (5th Cir. 2001)*, *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 839-41 (5th Cir. 2012)*.

"The adequacy requirement mandates an inquiry into the zeal and competence of the representatives' counsel and the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001)* (alterations omitted) (quotation marks omitted). It also "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon, 785 F.3d 1003, 1015 (5th Cir. 2015)* (quotation marks omitted).

"The **[*12]** typicality and adequacy inquiries are related in this context, as a party's lack of the same essential characteristics of those of the putative class James may result in conflicts between the named plaintiffs' interests and the class members' interests." *In re BP Sec. Litigation, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010)* (citations omitted) (quotation marks omitted). "For example, if such a party were appointed lead plaintiff, there would be potential conflicts between the party and the other class members in drafting the consolidated complaint, in defending a motion to dismiss, and in conducting discovery—the party would have an interest in pursuing its specific claims to the potential exclusion of other class members' claims." *Id.*

### 2. Analysis

The record shows that IAM lost money because it purchased Plains and Plains Holdings securities during the class period. Although not identical, IAM's legal and remedial theories have the same essential characteristics as the class claims. This is enough for typicality.

The Pennsylvania System argues that IAM's claims are not typical because it did not purchase securities during any of the public offerings that give rise to the *Securities*

_Act of 1933_ claims. "Nothing in the _PSLRA_ indicates that district courts **[\*13]** must choose a lead plaintiff with standing to sue on every available cause of action." _Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004)_. "[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." _Id_. Courts reject a "requirement that a different lead plaintiff be appointed to bring every single available claim" because that "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." _Id. at 82 n.13_. And, in any event, this argument does not justify appointing the Pennsylvania System, because neither IAM nor the Pennsylvania System has standing to assert every claim advanced in the complaint. (Docket Entry No. 50 at p. 13 & n.11).

At oral argument, the Pennsylvania System relied heavily on _In re BP Securities Litigation, 758 F. Supp. 2d 428 (S.D. Tex. 2010)_. That case provides no support. The _BP_ court considered a motion for appointment of lead plaintiff by state retirement funds in New York and Ohio. The case involved allegations of securities fraud relating to the April 2010 Deepwater Horizon oil spill. _Id. at 432_. The court reasoned that the New York and Ohio funds had a "theory of the case [that] differ[ed] significantly from that of [the other plaintiffs]." **[\*14]** _Id. at 437_. The New York and Ohio funds alleged that BP made fraudulent statements over a five-year period, from 2005 to after the April 2010 spill. The other plaintiffs' claims focused on "the thirteen months leading up to the Deepwater Horizon explosion." _Id. at 438_. During this 13-month window, the New York and Ohio funds were net sellers of BP stock, unlike the other plaintiffs, who were investors in BP during this period. _Id_. The court's concern was that the "New York [and] Ohio [funds] might not have an interest in vigorously pursuing the claims central to the [other plaintiffs'] shorter class period, in favor of emphasizing arguments about fraud based on conduct before and after the [other plaintiffs'] thirteen-month window." _Id_. The court concluded that because the issues of the New York and Ohio funds were outside of the other plaintiffs' 13-month class period, those funds would "present different legal theories than other plaintiffs." _Id_. As a result, the funds did not make a preliminary showing of typicality and adequacy and were not entitled to the most-adequate-plaintiff presumption. _Id_.

Unlike the New York and Ohio funds in _BP_, IAM does not have interests that are potentially different from, **[\*15]** much less antagonistic to, the class

interests. There is no reason to anticipate conflicts between IAM and the other plaintiffs in, for example, drafting the amended consolidated complaint or defending a motion to dismiss.[2]

   _See id. at 437_.

The Pennsylvania System correctly observes that IAM's stock purchases were limited to the final eight months of the roughly two-year class period and suggests that these "late-in-the-class-period purchases raise questions about IAM's ability to vigorously and adequately pursue claims on behalf of the purchasers of Plains's securities throughout [the class period], and particularly during the earlier months of the class period." (Docket Entry No. 48 at p. 18-19). But at this stage, the Pennsylvania System has failed to identify, and the record does not show, any reason why IAM would **[\*16]** not pursue claims throughout the entire class period or why asserting early-in-the-class-period claims would run counter to IAM's interests. "A lead plaintiff owes a fiduciary duty to the class," _Enron, 206 F.R.D. at 448 n.18_ (citing _Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549-50, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)_), and "[d]ifferent interests need not necessarily constitute fatal conflicts," _id_. The record reflects no apparent conflicts and no inability or unwillingness by IAM or its counsel, Robbins Geller Rudman & Dowd LLP, to pursue the class claims.

The Pennsylvania System argues that it would be the "most" adequate and typical lead plaintiff. "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." _In re Cavanaugh, 306 F.3d 726, 732 (9th Cir. 2002)_. IAM satisfies the _Rule 23_ requirements and is entitled to the most-adequate-plaintiff presumption.

**III. Has the Presumption Been Rebutted**?

---

[2] There is no basis for distinguishing Plains shares from Plains Holdings shares at this time. The stock prices largely moved in tandem over the class period, even though Plains Holdings stocks had a steeper price drop after the spill. These differences are not material to the ability of one lead plaintiff and class counsel to clearly and adequately represent the interests of the class.

2015 U.S. Dist. LEXIS 163811, *16

The Pennsylvania System has not submitted any "proof" rebutting the presumption. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. Nor has it moved to conduct discovery on this issue. *Id. § 78u-4(a)(3)(B)(iv)*. The court finds that IAM is the most adequate **[\*17]** plaintiff under the *PSLRA*.

## IV. Approval of Lead Counsel

The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id. § 78u-4(a)(3)(B)(v)*. The court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." *Enron, 206 F.R.D. at 441* (quotation marks omitted). "The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy." *Id.*

Robbins Geller meets the requirements for approval of lead counsel. Robbins Geller has submitted a detailed firm resume and attorney biographies. (Docket Entry No. 18, Ex. D). It has also submitted its contingency-fee matrix, which the court has reviewed *in camera*. (Docket Entry No. 55). The record shows that Robbins Geller will adequately represent the putative class. IAM's choice of counsel is approved.

## V. Conclusion

The court grants IAM's motion for appointment of lead plaintiff and approves Robbins Geller as lead counsel. (Docket Entry No. 18). The court denies Inter-Marketing Group's and the Pennsylvania **[\*18]** State Employees' Retirement System's motions for appointment of lead plaintiff and approval of lead counsel. (Docket Entry Nos. 8, 11). The amended consolidated complaint must be filed by January 29, 2016, and the motion to dismiss by March 14, 2015. A reply brief is permitted, and the filings must be within the usual page limits.

SIGNED on December 7, 2015, at Houston, Texas.

/s/ Lee H. Rosenthal

Lee H. Rosenthal

United States District Judge

**End of Document**

 Neutral
As of: October 30, 2018 2:09 PM Z

# *Robertson v. Sun Life Fin.*

United States District Court for the Eastern District of Louisiana

September 22, 2017, Decided; September 22, 2017, Filed

CIVIL ACTION NO. 17-2148 SECTION "R" (1)

**Reporter**
2017 U.S. Dist. LEXIS 155081 *

LEVI E. ROBERTSON, on behalf of himself and all other similarly situated VERSUS SUN LIFE FINANCIAL, ET AL.

**Prior History:** *Robertson v. Sun Life Fin., 187 So. 3d 473, 2013 La. App. LEXIS 1854 (La.App. 1 Cir., Sept. 13, 2013)*

## Core Terms

racketeering, amended complaint, doctrine of relation back, allegations, notice, amended petition, fraudulent, statute of limitations, factual allegations, amend, plaintiff's claim, occurrence, petitions

**Counsel:** **[\*1]** For Levi E. Robertson, on behalf of himself and all other similarly situated, Plaintiff: Eric R. Nowak, LEAD ATTORNEY, Harrell & Nowak, LLC, New Orleans, LA; Byard Edwards, Jr., Edwards & Knight, LLC, Hammond, LA.

For Delaware Life Insurance Company, formerly known as Sun Life Assurance Company of Canada U.S., Defendant: Edward Winter Trapolin, LEAD ATTORNEY, Kelly Juneau Rickard, Irwin Fritchie Urquhart & Moore, LLC (New Orleans), New Orleans, LA; Andrea J. Robinson, Ian David Coghill, PRO HAC VICE, Wilmer, Cutler, Pickering, Hale & Dorr, LLP (Boston), Boston, MA; Tim J. Perla, PRO HAC VICE, WilmerHale, Boston, MA.

**Judges:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SARAH S. VANCE

## Opinion

### ORDER AND REASONS

Defendant Sun Life Assurance Company of Canada (U.S.) moves to dismiss plaintiff's claims under the *Racketeer Influenced and Corrupt Organizations Act* and the *Louisiana Racketeering Act*.[1] Because these claims are barred by the statute of limitations, the Court grants the motion.

### I. BACKGROUND

This case arises out of allegedly fraudulent withdrawals from Plaintiff Levi Robertson's annuity account.[2]

Plaintiff asserts that he entered into a ten-year annuity contract with Defendant Sun Life Assurance Company **[\*2]** of Canada (Sun Life) in July 2005.[3] Plaintiff alleges that, beginning in October 2005, money was fraudulently withdrawn from his account.[4]

On October 9, 2008, plaintiff filed a petition for damages in state court.[5] This petition alleged that Defendant Matthew Pizzolato forged a check for $99,999.99 in plaintiff's name, and that Sun Life negligently permitted a withdrawal in this amount from plaintiff's account without contacting plaintiff to verify the transaction.[6] Plaintiff amended his petition three times between April 2009 and March 2012 to include additional allegations

---

[1] R. Doc. 23.

[2] R. Doc. 1-1 at 2-3; R. Doc. 1-6 at 3.

[3] R. Doc. 1-4 at 3. Plaintiff's petition also names as defendants Sun Life Financial and Sun Life Administrators (U.S.). These defendants have since been dismissed from the litigation. *See* R. Doc. 1-10 at 4.

[4] R. Doc. 1-1 at 2-3; R. Doc. 1-6 at 3.

[5] R. Doc. 1-1.

[6] *Id.* at 2-3.

regarding Pizzolato's fraudulent activities and Sun Life's breach of contract and negligence in failing to monitor plaintiff's account properly.[7]

On February 27, 2017, the state court granted plaintiff leave to file a fourth amended petition.[8] This amended petition includes class action allegations and adds claims against Sun Life under the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Louisiana Racketeering Act.[9] On March 15, 2017, Sun Life removed the case to this Court on the basis of federal question jurisdiction under *28 U.S.C. § 1441(a)* and class action jurisdiction under *28 U.S.C. § 1332(d).*[10]

Sun Life now moves to dismiss plaintiff's **[*3]** racketeering claims.[11]

## II. LEGAL STANDARD

To survive a *Rule 12(b)(6)* motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at 678.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).*

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal, 556 U.S. at 678.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim. *Lormand, 565 F.3d at 257.* The claim must be

dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly, 550 U.S. at 555,* or if it is apparent from the face of the complaint that there is an insuperable **[*4]** bar to relief, *Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).*

## III. DISCUSSION

### A. Statute of Limitations

Sun Life argues that plaintiff's RICO and state law racketeering claims are barred by the applicable statutes of limitations.[12]

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987).* The limitations period for civil actions under the Louisiana Racketeering Act is five years. *See La. R.S. 15:1356(H).* Plaintiff's fourth amended petition was filed in February 2017, and it alleges acts of racketeering occurring in October 2005, January 2006, and November 2007.[13] Plaintiff does not contest that his racketeering claims are untimely unless they relate back to his earlier petitions.[14]

*Federal Rule of Civil Procedure 15* allows an amended complaint to relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Fed. R. Civ. P. 15(c)(1)(B).* A state law claim may also relate back to the original pleading if relation back would be permitted under state law. *See Fed. R. Civ. P. 15(c)(1)(A). Louisiana Code of Civil Procedure article 1153* sets forth the same "conduct, transaction, or occurrence" test as *Rule 15(c),* and does not afford plaintiff a more liberal relation back standard than the federal rule. *See McGregor v. La. State Univ. Bd. of Supervisors, 3 F.3d 850, 863 n.22 (5th Cir. 1993)* (noting that the federal and Louisiana **[*5]** rules on relation back are the same); *Giroir v. South La. Med. Ctr., 475 So. 2d 1040, 1042 (La. 1985)* (explaining that *article 1153* is based on *Rule 15(c)).* The same analysis

---

[7] R. Doc. 1-2; R. Doc. 1-3; R. Doc. 1-4.

[8] R. Doc. 1-7 at 2.

[9] R. Doc. 1-6.

[10] R. Doc. 1.

[11] R. Doc. 23.

[12] R. Doc. 23.

[13] R. Doc. 1-6 at 3.

[14] R. Doc. 28.

therefore applies to determine the timeliness of both plaintiff's federal and state racketeering claims.

A claim first brought in an amended complaint "will not relate back if it asserts new and distinct conduct, transactions, or occurrences as the basis for relief" and attempts "to add a new legal theory unsupported by factual claims raised in the original complaint." *McGregor, 3 F.3d at 863-64*; *see also* *In re Coastal Plains, 179 F.3d 197, 216 (5th Cir. 1999)* (finding no relation back where claim in amended complaint related to a separate transaction); 6A Wright & Miller, *Federal Practice and Procedure* § 1497 (3d. ed. 2017) ("[I]f plaintiff attempts to allege an entirely different transaction by amendment, *Rule 15(c)(1)(B)* will not authorize relation back."). Plaintiff's fourth amended petition presents a different factual scenario from his earlier pleadings, and the facts contained in prior petitions do not support his newly added federal and state racketeering claims.

To state a claim under RICO, plaintiff must allege the existence of "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." **[*6]** *Abraham v. Singh, 480 F.3d 351, 355 (5th Cir. 2007)*. A pattern of racketeering activity "consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Id.* (internal quotation marks and citation omitted). The Louisiana Racketeering Act is based on RICO, and similarly requires a connection to an enterprise and at least two predicate racketeering acts. *See* *La. R.S. 15:1352-53*; *State v. Nine Sav. Accounts, 553 So. 2d 823, 825 (La. 1989)*.

Plaintiff's earlier petitions did not allege, or even suggest, that Sun Life engaged in racketeering activities. The first four petitions described fraud by Matthew Pizzolato related to a single forged check for $99,999.99, and negligence and breach of contract by Sun Life for failing to detect the fraudulent transfer.[15] Plaintiff's fourth amended petition now alleges criminal rather than negligent conduct by Sun Life, details additional fraudulent transactions, and introduces a new key actor, Sherel Pizzolato, linking Sun Life with Matthew Pizzolato.[16] In contrast to earlier allegations that Sun Life merely failed to monitor plaintiff's account, Sun Life is now

accused of conducting or acquiring a racketeering enterprise.[17]

The transaction or occurrence at issue has metamorphosed from a single fraudulent withdrawal **[*7]**[18] to a series of withdrawals constituting a pattern of racketeering activity.[19]

Given these fundamental changes in plaintiff's factual allegations, his racketeering claims do not arise out of "the same pattern of conduct identified in the original complaint." *FDIC v. Conner, 20 F.3d 1376, 1386 (5th Cir. 1994)*.

The Fifth Circuit and the Louisiana Supreme Court have made clear that relation back is appropriate only when the defendant had fair notice of the claims brought in the amended complaint. *See, e.g.,* *Flores v. Cameron Co., Tex., 92 F.3d 258, 273 (5th Cir. 1996)* ("Notice is the critical element involved in *Rule 15(c)* determinations.") (internal citation and quotation marks omitted); *Winford v. Conerly Corp., 897 So. 2d 560, 568-69 (La. 2005)* (allowing relation back when the original petition provided defendant "fair notice of the factual situation out of which the amended petition arose"); *see also* 6A Wright & Miller § 1497 (explaining that "a failure of notice will prevent relation back"). Because plaintiff's earlier filings did not indicate any basis for a racketeering cause of action against Sun Life, Sun Life received no notice of these potential claims.[20]

---

[17] *Id.* at 2.

[18] R. Doc. 1-1 at 3.

[19] R. Doc. 1-6 at 3.

[20] Plaintiff argues that he previously alleged that Sun Life was liable for participating in a complex scheme of fraudulent behavior because his first amended petition asserted that "[d]efendants named above are liable to plaintiff *in solido* for the reasons set out herein below ans [sic] as more fully describe in the case of Lea P. Kobuszewksi, et. Al. v. W. Carey Scriber et al." *See* R. Doc. 28 at 6; R. Doc. 1-2 at 2. The petition appears to cite *Kobuszewski* for the proposition that defendants are solidarily liable, and does not provide any specific notice that plaintiff was alleging Sun Life's direct participation in a fraudulent scheme. Moreover, the *Kobuszewski* case involved warranty claims against the bank defendants, and is consistent with plaintiff's original negligence and breach of contract claims against Sun Life. *See* *Kobuszewski v. Scriber, 518 So. 2d 524 (La. App. 2 Cir. 1987)*.

---

[15] R. Doc. 1-1; R. Doc. 1-2; R. Doc. 1-3; R. Doc. 1-4.

[16] R. Doc. 1-6.

2017 U.S. Dist. LEXIS 155081, *7

Plaintiff cites to several federal court decisions allowing relation back under *Rule 15(c)*, but each of these cases involved much **[*8]** greater factual similarities between the original and amended complaints. In *FDIC v. Bennett*, the Fifth Circuit found that relation back was appropriate because the plaintiff "did not allege any new operative facts in the amended complaint, but only [a] new legal theory for recovery." *898 F.2d 477, 478 (5th Cir. 1990)*. The original and amended complaints in *Bennett* were based on the same transaction, the sale of a particular piece of land. *Id. at 478-79*. Plaintiff's reliance on RICO cases from outside the Fifth Circuit is similarly unavailing. In *Benfield v. Mocatta Metals Corp.*, the Second Circuit concluded that the amended complaint related back because the allegations in the original and amended complaints "would require evidence of the same or similar wrongful acts," and the defendant "was placed on notice that a RICO claim, based in large part on the fraud already alleged, might be made against it." *26 F.3d 19, 23 (2d Cir. 1994)*; *see also In re Olympia Brewing Co. Sec. Litig., 612 F. Supp. 1370, 1374 (N.D. Ill. 1985)* (allowing relation back where the evidence supporting RICO claims was "intimately tied up with the originally alleged predicate acts of fraud"). Because plaintiff made no allegations of fraud against Sun Life until the fourth amended petition, Sun Life had no similar notice of a potential RICO claim against it.

This **[*9]** case more closely mirrors the facts of *Tho Dinh Tran v. Alphonse Hotel Corp.*, where the Second Circuit held that a RICO claim does not relate back if the original complaint did not allege that the defendant committed any predicate racketeering acts. *281 F.3d 23, 36 (2d Cir. 2002)*, *overruled on other grounds by Slayton v. Am. Express Corp., 460 F.3d 215 (2d Cir. 2006)*. As in this case, the amended complaint in *Tho Dinh Tran* "introduced a significant new factual allegation that fundamentally changed the nature of the allegations, both factual and legal, that the plaintiff was asserting against the defendants." *Id.*; *see also Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir. 1973)*. Other circuits have similarly rejected the relation back of claims when the amended complaint asserted a different set of factual allegations. *See Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 962 (10th Cir. 2012)* (finding that the amended complaint did not relate back because it was based on "factual allegations that were new and discrete from the facts she originally pled"); *Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 866, 382 U.S. App. D.C. 385 (D.C. Cir. 2008)* (explaining that defendants lacked adequate notice of an antitrust conspiracy claim when the original complaint focused on

the misconduct of a single firm).

Accordingly, the Court finds that plaintiff's federal and state racketeering claims do not arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the **[*10]** original pleading." *Fed. R. Civ. P. 15(c)(1)*; *see also La. Code Civ. Proc. art. 1153*. These claims do not relate back to plaintiff's earlier petitions and are therefore barred by the statute of limitations.

## B. Leave to Amend

Plaintiff requests leave to amend his complaint if Sun Life's motion is granted.[21]

The Court will "freely give leave [to amend] when justice so requires." *Fed. R. Civ. P. 15(a)*. The Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. Leave to amend, however, "is by no means automatic." *Halbert v. City of Sherman, 33 F.3d 526, 529 (5th Cir. 1994)*. The Court considers multiple factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman, 371 U.S. at 182*. Upon consideration of these factors, the Court denies leave to amend. Because plaintiff's claims are barred by the statute of limitations, amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Sun Life's partial motion to dismiss. Plaintiff's claims under the Racketeer Influenced **[*11]** and Corrupt Organizations Act and the Louisiana Racketeering Act are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 22nd day of September, 2017.

/s/ Sarah S. Vance

---

21 R. Doc. 28 at 18.

2017 U.S. Dist. LEXIS 155081, *11

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

**End of Document**

⬥ Positive
As of: October 30, 2018 2:09 PM Z

# *Smallwood v. Bank of Am.*

United States District Court for the Northern District of Texas, Dallas Division

October 17, 2011, Decided; October 17, 2011, Filed

Civil Action No. 3:11-CV-1283-D

**Reporter**
2011 U.S. Dist. LEXIS 119301 *; 2011 WL 4941044

ERNEST C. SMALLWOOD, et al., Plaintiffs, vs. BANK OF AMERICA, et al., Defendants.

**Subsequent History:** Motion granted by *Smallwood v. Bank of Am., 2012 U.S. Dist. LEXIS 1428 (N.D. Tex., Jan. 6, 2012)*

**Prior History:** *Smallwood v. Bank of Am., 2011 U.S. Dist. LEXIS 117201 (N.D. Tex., Oct. 3, 2011)*

## Core Terms

amend, motion for leave, parties, second amended complaint, realign, motion to dismiss

**Counsel:** **[*1]** Ernest C Smallwood, Plaintiff, Pro se, Coppell, TX.

Eartha Smallwood, Plaintiff, Pro se, Coppell, TX.

For Bank of America NA, Bank of New York, as Trustee for the Certificateholders of Asset-Backed Certificates, Series 2004-33, Defendants: Jason D Clark, LEAD ATTORNEY, Akerman Senterfitt, Dallas, TX; C Charles Townsend, Jelena Kovacevic, Akerman Senterfitt LLP, Dallas, TX.

**Judges:** SIDNEY A. FITZWATER, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** SIDNEY A. FITZWATER

## Opinion

MEMORANDUM OPINION AND ORDER

Defendants Bank of America, N.A. and Bank of New York move to dismiss plaintiffs' first amended complaint. Plaintiffs Ernest C. Smallwood and Eartha Smallwood move to realign the parties and for leave to file a second

amended complaint. The court grants the Smallwoods' motion for leave to amend their complaint and denies their motion for realignment. Because the court is granting the Smallwoods leave to amend their complaint, it denies defendants' motion to dismiss without prejudice as moot. [1]

I

The court considers first the Smallwoods' motion for leave to file second amended complaint. [2]

"It is settled that the grant of leave to **[*3]** amend the pleadings pursuant to *Rule 15(a)* is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971)*. "The court should freely give leave when justice so requires." *Fed. R. Civ. P. 15(a)(2)*. Granting leave to amend, however, "is by no means

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned **[*2]** explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly. Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[2] Defendants responded to this motion on October 3, 2011. The Smallwoods' reply brief is not due until October 17, 2011. As permitted by N.D. Tex. Civ. R. 7.1(f), the court in its discretion is deciding this motion prior to receipt of a reply brief. *See Solomon v. Godwin & Carlton, P.C., 898 F. Supp. 415, 416 n.2 (N.D. Tex. 1995)* (Fitzwater, J.) (applying former Local Rule 5.1(f)).

2011 U.S. Dist. LEXIS 119301, *2

automatic." *Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993)* (quoting *Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A July 1981))*. The court can consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962))*. The Smallwoods filed their motion for leave to amend on September 12, 2011, before the September 14, 2011 deadline specified in the scheduling order. When, as here, a party files a motion for leave to amend by the court-ordered deadline, there is a "presumption of timeliness." *Poly-Am., Inc. v. Serrot Int'l Inc., 2002 U.S. Dist. LEXIS 2078, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002)* (Fitzwater, J.).

Defendants oppose the Smallwoods' motion, contending [*4] that the proposed amendments are futile for several reasons. But as this court has frequently noted,

> the court's almost unvarying practice when futility is raised is to address the merits of the claim . . . in the context of a *Rule 12(b)(6)* or *Rule 56* motion. The court only infrequently considers the merits of new causes of action in the context of *Rule 15(a)*. The court prefers instead to do so in the context of a *Rule 12(b)(6)* or *Rule 56* motion, where the procedural safeguards are surer.

*2002 U.S. Dist. LEXIS 2078, [WL] at *1-2* (quoting *Sells v. Six Flags Over Tex., Inc., No. 3:96-CV-1574-D, 1996 U.S. Dist. LEXIS 22741, *3-4 (N.D. Tex. Oct. 17, 1996)* (Fitzwater, J.) (internal quotation marks omitted)). Accordingly, the court will not deny the Smallwoods leave to amend based on futility.

Defendants also argue that the Smallwoods' efforts to amend their complaint "are simply an effort to delay foreclosure on a property in which [they have] not made a monthly payment since 2007," and that the proposed amendments thus "constitute bad faith, result in undue delay, and cause unnecessary expense on the part of Defendants responding to such claims." Ds. Br. 3. But the court has denied the Smallwoods' motion for a temporary restraining order [*5] to stop the October 2011 foreclosure sale, the Smallwoods filed their motion for leave to amend before the court-ordered deadline, and defendants have failed to demonstrate that permitting the Smallwoods to amend their complaint will result in undue delay or unnecessary expense.

Accordingly, the court grants the Smallwoods' motion for leave to file a second amended complaint. They must file the amended complaint within 14 days of the date this memorandum opinion and order is filed.

II

The court next addresses the Smallwoods' motion for realignment.

It is well-settled that "[p]roper alignment of parties lies within the discretion of the court." *State Farm Fire & Cas. Co. v. Woods*, 1997 WL 680844, at *1 (5th Cir. 1997) (unpublished opinion) (citing *Lloyd v. Pendleton Land & Exploration, Inc., 22 F.3d 623, 625 (5th Cir. 1994))*. "It is elemental that the party who files a lawsuit is designated as the plaintiff." *Ericsson Inc. v. Harris Corp., 1999 U.S. Dist. LEXIS 12549, 1999 WL 604827, at *2 (N.D. Tex. Aug.11, 1999)* (Fitzwater, J.). "This designation is based on the party's burden to prove the claims initially asserted in the lawsuit." *Id.* "A court normally will not realign the parties from their original designations [*6] unless the plaintiff no longer retains the burden to prove at least one of its claims or if subsequent events in the case significantly shift the ultimate burden of proof from the plaintiff to the defendant." *Id.*

The Smallwoods filed this lawsuit asserting claims under the Texas Deceptive Trade Practices-Consumer Protection Act, the Texas Consumer Credit Code/Texas Debt Collection Practices Act, and Texas common law. Defendants have not counterclaimed, and the Smallwoods will bear the burden of proof on all their claims. Accordingly, the Smallwoods have failed to demonstrate grounds to realign the parties, and their motion is denied.

III

Because the court is granting the Smallwoods leave to file a second amended complaint, defendants' motion to dismiss, which is addressed to the Smallwoods' first amended complaint, is denied without prejudice as moot. *See, e.g., Mangum v. United Parcel Servs., 2009 U.S. Dist. LEXIS 76573, 2009 WL 2700217, at *1 (N.D. Tex. Aug. 26, 2009)* (Fitzwater, C.J.) (denying as moot motion to dismiss after plaintiff filed amended complaint).

* * *

Accordingly, the court grants the Smallwoods' September 12, 2011 motion for leave to file second amended complaint, denies the Smallwoods' August 8,

**[*7]** 2011 motion for realignment, and denies without prejudice as moot defendants' August 1, 2011 motion to dismiss. The Smallwoods must file their second amended complaint within 14 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

October 17, 2011.

/s/ Sidney A. Fitzwater

SIDNEY A. FITZWATER

CHIEF JUDGE

---

**End of Document**

 Neutral
As of: November 6, 2018 7:59 PM Z

## *Stein v. Match Group, Inc.*

United States District Court for the Northern District of Texas, Dallas Division

June 9, 2016, Decided; June 9, 2016, Filed

No. 3:16-cv-549-L; (consolidated with No. 3:16-cv-668-L)

**Reporter**

2016 U.S. Dist. LEXIS 74995 *; 2016 WL 3194334

DAVID M. STEIN, individually and on behalf of all others similarly situated, Plaintiff, v. MATCH GROUP, INC., ET AL., Defendants.

**Subsequent History:** Motion denied by *McCloskey v. Match Grp., Inc., 2017 U.S. Dist. LEXIS 158508 (N.D. Tex., Sept. 27, 2017)*

Dismissed by *McCloskey v. Match Grp., Inc., 2018 U.S. Dist. LEXIS 144558 (N.D. Tex., Aug. 24, 2018)*

## Core Terms

lead plaintiff, Appointment, Securities, liaison, consolidated, losses, financial interest, lead counsel, class member, investors, co-lead, largest, class period, requirements, defenses, parties, shares, putative class, presumptive, adequacy, motions, courts, rebut a presumption, adequately protect, class action, law firm, individually, typicality, unrelated, DENIES

**Counsel:** **[1]** For David M Stein, Individually and on Behalf of all Others Similarly Situated, Plaintiff (3:16-cv-00549-L): Roger L Mandel, LEAD ATTORNEY, Lackey Hershman LLP, Dallas, TX; Bruce E Bagelman, Lackey Hershman, LLP, Dallas, TX; Gregory Egleston, Egleston Law Firm, Brooklyn, NY; Thomas J McKenna, Gainey McKenna & Egleston, New York, NY.

For Mary McCloskey, Designated as Lead Plaintiff per [28] Order, Craig Kneller, Designated as Lead Plaintiff per [28] Order, Plaintiffs (3:16-cv-00549-L): Jamie Jean McKey, Joe Kendall, Kendall Law Group LLP, Dallas, TX.

For Stephany Kam-Wan Chan, Consol Plaintiff (3:16-cv-00549-L): Willie Briscoe, LEAD ATTORNEY, Dallas, TX; Brian Schall, Michael Goldberg, Goldberg Law PC, Marina Del Rey, CA; J Alexander Hood, II, Jeremy Alan Lieberman, Marc Gorrie, Pomerantz LLP, New York, NY; Patrick V Dahlstrom, Pomerantz Haudek Block Grossman & Gross, Chicago, IL; Peretz Bronstein,

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC, New York, NY.

For Match Group Inc, Gregory R Blatt, Gary Swidler, Michael H Schwerdtman, Gregg J Winiarski, Joseph M Levin, Defendants (3:16-cv-00549-L): R Thaddeus Behrens, LEAD ATTORNEY, Haynes & Boone LLP, Dallas, TX.

For JP Morgan Securities LLC, Allen & **[2]** Company LLC, Deutsche Bank Securities Inc, BMO Capital Markets Corp, Barclays Capital Inc, BNP Paribas Securities Corp, PNC Capital Markets LLC, Cowen and Company LLC, SG Americas Securities LLC, Fifth Third Securities Inc, Oppenheimer & Co Inc, Merrill Lynch Pierce Fenner & Smith Incorporated, Defendants (3:16-cv-00549-L): Yvette Ostolaza, LEAD ATTORNEY, Penny P Reid, Yolanda Cornejo Garcia, Sidley Austin LLP, Dallas, TX.

For Kenneth Varin, Movant (3:16-cv-00549-L): Brian P Lauten, LEAD ATTORNEY, Deans & Lyons LLP, Dallas, TX.

For Adam Marigliano, Liwei Sun, Shen Shen, Movants (3:16-cv-00549-L): Jeremy Alan Lieberman, LEAD ATTORNEY, J Alexander Hood, II, Pomerantz LLP, New York, NY; Brian Schall, Michael Goldberg, Goldberg Law PC, Marina Del Rey, CA; Patrick V Dahlstrom, Pomerantz Haudek Block Grossman & Gross, Chicago, IL.

For Stephany Kam-Wan Chan, Individually and on Behalf of All Others Similarly Situated, Plaintiff (3:16cv668): Willie Briscoe, LEAD ATTORNEY, Dallas, TX USA; J Alexander Hood, II, Pomerantz LLP, New York, NY USA; Jeremy Alan Lieberman, PRO HAC VICE, Marc Gorrie, Pomerantz LLP, New York, NY USA; Patrick V Dahlstrom, Pomerantz Haudek Block Grossman & Gross, Chicago, **[3]** IL USA; Peretz Bronstein, BRONSTEIN, GEWIRTZ & GROSSMAN, LLC, New York, NY USA.

For Match Group Inc, Gregory R Blatt, Gary Swidler, Michael H Schwerdtman, Gregg J Winiarski, Joseph M

Levin, Defendants (3:16cv668): R Thaddeus Behrens, LEAD ATTORNEY, Haynes & Boone LLP, Dallas, TX USA.

For Jp Morgan Securities Llc, Allen & Company Llc, Merrill Lynch Pierce Fenner & Smith Incorporated, Bmo Capital Markets Corp, Barclays Capital Inc, Bnp Paribas Securities Corp, Pnc Capital Markets Llc, Cowen And Company Llc, Sg Americas Securities Llc, Fifth Third Securities Inc, Oppenheimer & Co Inc, Deutsche Bank Securities Inc, Defendants (3:16cv668): Yvette Ostolaza, LEAD ATTORNEY, Penny P Reid, Yolanda Cornejo Garcia, Sidley Austin LLP, Dallas, TX USA.

**Judges:** DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DAVID L. HORAN

# Opinion

## MEMORANDUM OPINION AND ORDER

These consolidated cases are two putative securities class actions brought on behalf of all persons or entities who purchased or otherwise acquired securities of Match Group Inc. ("Match Group" or the "Company") pursuant and/or traceable to the Company's Registration Statement issued in connection with Match Group's November 20, 2015 initial public offering (the "IPO"). **[*4]**

United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for determination, under *28 U.S.C. § 636(b)*, three competing motions for appointment as lead plaintiff and lead counsel: the Motion of Kenneth Varin for Appointment as Lead Plaintiff and Approval of His Selection of Counsel [Dkt. No. 6]; Mary McCloskey and Craig Kneller's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [Dkt. No. 9]; and the Motion for Appointment of Stein and Jenkins as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel [Dkt. No. 12]. *See* Dkt. No. 18.

The competing movants filed responses to the motions, *see* Dkt. Nos. 20, 21, & 22, and replies in support of their own respective motions, *see* Dkt. No. 24, 25, & 26.

The Motion of Match Investor Group for Appointment as Lead Plaintiff and Approval of Counsel [Dkt. No. 14], filed by Adam Marigliano, Liwei Sun, Stephany Kam-

Wan Chan, and Shen Shen, was voluntarily withdrawn and terminated after the other competing motions were filed. *See* Dkt. No. 19.

For the reasons explained below, the Court DENIES the Motion of Kenneth Varin for Appointment as Lead Plaintiff and Approval of His Selection of **[*5]** Counsel [Dkt. No. 6]; GRANTS Mary McCloskey and Craig Kneller's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [Dkt. No. 9]; and DENIES the Motion for Appointment of Stein and Jenkins as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel [Dkt. No. 12].

## Background

Plaintiff David M. Stein in the putative class action in Case No. 3:16-cv-549-L and Plaintiff Stephany Kam-Wan Chan in the related putative class action in Case No. 3:16-cv-668-L (collectively, "Plaintiffs"), as well as other prospective plaintiffs or class members, filed motions to consolidate the two actions. The Court granted the motions to consolidate and ordered Case No. 3:16-cv-668-L closed and consolidated under Case No. 3:16-cv-549-L. *See* Dkt. No. 17.

In the Order Consolidating Cases, the Court further explained:

> Each of the motions to consolidate also includes a request by Plaintiffs and Movants for the court to appoint or approve the appointment of a lead plaintiff and lead counsel for Plaintiff in accordance with *Federal Rule of Civil Procedure 23(a)* and the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In addition, the parties filed Stipulations in both **[*6]** actions in which they agree, subject to court approval, that Defendants' time to file an answer or otherwise respond is extended until after appointment by the court of a lead plaintiff under the PSLRA. The parties further stipulate that, upon appointment of a lead plaintiff, they will confer and present for the court's approval a proposed schedule that establishes a deadline for the filing of a consolidated complaint, a deadline for the Match Group Defendants and Underwriter Defendants to answer or otherwise respond to the consolidated complaint, and a briefing schedule governing any motions filed by Defendants with respect to the consolidated complaint. On April 15, 2016, the Underwriter Defendants in Civil Action No. 3:16-CV-668-L also filed a separate Motion to Extend Time

to Answer or Otherwise Respond (Doc. 12) seeking similar relief. This motion appears to have been filed out of an abundance of caution because the Stipulations were not filed as motions.

The court hereby approves the parties' Stipulations (Docs. 4, 9) and denies as moot the Underwriter Defendants' Motion to Extend Time to Answer or Otherwise Respond (Doc. 12). Accordingly, Defendants shall have no obligation to **[*7]** file an answer or otherwise respond until after the court appoints a lead plaintiff and lead counsel for Plaintiffs and establishes a schedule and deadlines for Plaintiffs to file a consolidated complaint and Defendants to answer or otherwise respond to the consolidated complaint.

*Id.* at 1-2.

The plaintiffs brings claims under *Sections 11*, *12(a)*, and *15* of the Securities Act of 1933, against Defendants Match Group, Inc., Gregory R. Blatt, Gary Swidler, Michael H. Schwerdtman, Gregg J. Winiarski, Joseph M. Levin, J.P. Morgan Securities LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities Inc., BMO Capital Markets Corp., Barclays Capital Inc., BNP Paribas Securities Corp., PNC Capital Markets LLC, Cowen and Company, LLC, SG Americas Securities, LLC, Fifth Third Securities, Inc., and Oppenheimer & Co. Inc.

Plaintiffs allege that Match Group operates dating products, such as Match and OkCupid, as well as, various test preparation, academic tutoring, and college counseling services. Plaintiffs allege that Defendants made inaccurate statements in the Company's Registration Statement and the Prospectus issued in connection with the IPO during the fourth quarter in late **[*8]** November 2015 and led investors to believe that the Company's Princeton Review business had turned a corner and was experiencing profitability for the first time. Plaintiffs allege that these statements were inaccurate when made because, as later revealed by Defendant Gregory Blatt during a February 3, 2016 conference call, Defendants knew and failed to disclose in late November 2015 that the 2015 fourth quarter revenue and financial results would be adversely impacted by two items. The first was a U.S. government contract that was executed two-and-a-half months later than anticipated, which delay was known to Defendants in late November 2015 when they issued the Registration Statement and the Prospectus and which

resulted in a revenue shortfall of millions of dollars. The second was a "greater than anticipated slowdown" in SAT preparation business clients during the 2015 fourth quarter due to a revamp of the test, which was also known to Defendants in late November when they issued the Registration Statement and Prospectus. *See* Dkt. No. 1.

Three groups of plaintiffs seek to be appointed as lead counsel and to obtain approval of their selection of lead and liaison counsel: (1) Kenneth **[*9]** Varin ("Varin"), who seeks approval of Levi & Korsinsky LLP as lead counsel and Deans & Lyons, LLP as liaison counsel; (2) Mary McCloskey and Craig Kneller (the "McCloskey Group"), who seek approval of Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C. as co-lead counsel and Kendall Law Group, PLLC as liaison counsel; and (3) David M. Stein and Varuna Jenkins (the "Stein Group"), who seek approval of Gainey McKenna & Egleston as lead counsel and Lackey Hershman LLP as liaison counsel.

## Legal Standards

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the district court must appoint the lead plaintiff "[a]s soon as practicable" after ruling on a motion to consolidate. *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. The PSLRA requires notice within 20 days after the plaintiff files a complaint that informs class members of their right to move for lead-plaintiff status within 60 days after the notice was published. *See 15 U.S.C. § 78u-4(a)(3)(A)(i)*. The parties here do not dispute the adequacy of the notice.

Under the PSLRA, the court must "consider any motion made by a purported class member..., including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints," and must "appoint as lead **[*10]** plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *15 U.S.C. § 78u-4(a)(3)(B)(i)*.

The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id. § 78u-4(a)(3)(B)(v)*; *accord Brown v. Bilek, 401 F. App'x 889, 893 (5th Cir. 2010)* ("[T]he PSLRA grants th[e] lead plaintiff primary responsibility for selecting and supervising the attorneys who work on behalf of the class."). "The court should not

disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the [plaintiff] class. The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy. *Izadjoo v. Kratz, No. CV H-15-2213, 2016 U.S. Dist. LEXIS 9974, 2016 WL 343989, at *3 (S.D. Tex. Jan. 28, 2016)* (internal quotation marks and citations omitted).

The Court must presume "that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that — (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, **[*11]** has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*" *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*; *accord Brown, 401 F. App'x at 893 n.7*. "[This presumption] may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

"For the presumption to apply, 'the lead plaintiff or plaintiffs must possess not only the largest financial interest in the outcome of the litigation, but must also meet the requirements of *Federal Rule of Civil Procedure 23.*'" *Izadjoo, 2016 U.S. Dist. LEXIS 9974, 2016 WL 343989, at *2* (quoting *In re Waste Management, Inc. Sec. Litig., 128 F. Supp. 2d 401, 411 (S.D. Tex.2000))*.

"In determining the largest financial interest, courts look to: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Buettgen v. Harless, 263 F.R.D. 378, 380 (N.D. Tex. 2009)* (citing cases); *accord Netsky v. Capstead Mortgage Corp., No. 3:98-cv-1716-L, 2000 U.S. Dist. LEXIS 9941, 2000 WL 964935, at *3 (N.D. Tex. July 12, 2000)* ("While the PSLRA neither defines 'largest financial interest' nor explains how such a determination should be made, **[*12]** courts have found the following factors relevant to this inquiry: 1) the number of shares purchased during the class period; 2) the number of net shares purchased during the class period; 3) the total net funds expended by the plaintiffs during the class period; and 4) the approximate losses suffered during the class period.").

And, "[i]n the selection of lead plaintiff, the only relevant factors of *Rule 23* are typicality and adequacy." *Buettgen, 263 F.R.D. at 381*; *accord Netsky, 2000 U.S. Dist. LEXIS 9941, 2000 WL 964935, at *6*. "*Rule 23* provides, in pertinent part, that the 'claims or defenses of the representative parties [must be] typical of the claims or defenses of the class' and that 'the representative parties will fairly and adequately protect the interests of the class.'" *Buettgen, 263 F.R.D. at 381* (quoting *FED. R. CIV. P. 23(a)(3)-(4)*). "The inquiry at this stage is not as searching as would follow a motion for class certification, yet the plaintiff or group of plaintiffs must make some showing that its claims are typical of the putative class and that it has the capacity to adequately represent the class." *Id.*

To rebut the presumption that a particular putative lead plaintiff is the most adequate plaintiff, a competing putative lead plaintiff must, as "a member of the purported plaintiff class," offer "proof ... that the presumptively **[*13]** most adequate plaintiff — (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. "'There is, of course, a marked difference between affirmatively demonstrating that [the presumptive lead plaintiff ] is not an adequate representative or is subject to unique defenses and simply claiming that [the presumptive lead plaintiff] might be subject to such arguments in the future.'" *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc., No. 3:15-cv-3415-D, 2016 U.S. Dist. LEXIS 54627, 2016 WL 1625774, at *5 (N.D. Tex. Apr. 25, 2016)* (quoting *Gluck v. CellStar Corp., 976 F. Supp. 542, 547 (N.D. Tex. 1997))*. "The statute requires [the challenger] to present proof of its assertions." *Gluck, 976 F. Supp. at 547-48* (internal quotation marks omitted).

## Analysis

### I. The McCloskey Group is presumed "the most adequate" plaintiff.

A. The McCloskey Group has the largest financial interest.

There is no dispute that Varin, the McCloskey Group,

and the Stein Group each timely filed a motion in response to the notice and therefore comply with *Section 78u-4(a)(3)(B)(iii)(I)(aa)*. And there is no dispute that the McCloskey Group has the largest financial interest in the relief sought by the class, and the Court finds that it does, with approximately $21,282.55 in losses from their transactions **[*14]** of Match Group securities, compared to Varin's $1,529.00 and the Stein Group's $4,826.08. Indeed, the evidence shows that both Craig Kneller ($13,900.00) and Mary McCloskey ($7,382.55) individually have the largest losses of any individual lead plaintiff movant and have losses larger than either Varin or the Stein Group, individually or combined. *See Frias v. Dendreon Corp., 835 F. Supp. 2d 1067, 1074 (W.D. Wash. 2011)* (noting a court's willingness to select a group of previously unrelated investors where it does not appear the group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any other applicants where two members had individual losses which exceeded the financial interests of all other applicants); *Lentz v. Citadel Sec. Software, Inc., No. 3:05-cv-100-D, 2005 U.S. Dist. LEXIS 10097, 2005 WL 1249441, at *2 (N.D. Tex. May 25, 2005)* (noting that one of a group's members suffered losses greater than those of any other individual seeking lead plaintiff status).

B. The McCloskey Group otherwise satisfies *Rule 23*'s requirements.

Because McCloskey and Kneller have the largest financial interest, they are presumptively entitled to lead-plaintiff status unless they fail to satisfy *Rule 23*'s typicality and adequacy requirements.

"The question in determining 'typicality' is whether the **[*15]** named plaintiff's claims have the same essential characteristics as those of the other class members; they arise from the same event or course of conduct, and are based on the same legal theory." *Buettgen, 263 F.R.D. at 381*. "Factual differences will not defeat typicality as there is no requirement the claims be identical." *Id.* And "[t]he 'adequacy' requirement is fulfilled if there are no conflicts of interests between the named plaintiff and other class members and the named party is prepared to prosecute the action vigorously." *Id.*

The McCloskey Group has made a *prima facie* showing that their claims are typical of the claims asserted by the proposed class, where, like all members of the putative class, McCloskey and Kneller allege that Defendants violated the federal securities laws by disseminating materially misleading statements concerning the operations and financial performance of Match Group and, like all of the members of the proposed class, allege that they purchased Match Group shares at prices artificially inflated by Defendants' alleged misstatements and omissions and were damaged thereby. And McCloskey and Kneller assert that they have retained counsel highly experienced in vigorously and efficiently **[*16]** prosecuting securities class actions, such as this action; that their significant financial losses demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy; and that they are not aware that any conflict exists between their claims and those asserted on behalf of the putative class.

The PSLRA allows a "group of persons" to serve as lead plaintiff. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. Courts have nevertheless explained that they "must 'consider whether an appointment of previously unrelated persons best serves the interest of the class and whether a sufficient governance structure is in place to assure that those individuals will actually manage the litigation'" and that "[a] group should not be created 'merely by counsel's giving a common name to previously unrelated people, who present no detailed structure by which they will operate.'" *Buettgen, 263 F.R.D. at 381* (quoting *In re Carreker Corp. Sec. Litig., No. 3:03-cv-250-M, 2003 U.S. Dist. LEXIS 25988, at *10-*11 (N.D. Tex. Aug. 14, 2003))*. And courts have observed, that, "[w]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.'" *Id.* (quoting *Tsirekidze v. Syntax-Brillian Corp., Nos. CV-07-2204-PHX-FJM, CV-07-2454-PHX-ROS, CV-07-2524-PHX-ROS, CV-07-2525-PHX-SRB, 2008 U.S. Dist. LEXIS 118562, 2008 WL 942273, at *3 (D. Ariz. April 7, 2008))*. **[*17]**

Varin and the Stein Group contend that the McCloskey Group will not fairly and adequately protect the interests of the class because it has failed to establish that it is a cohesive group rather than a manipulated effort by their lawyers to aggregate larger losses than other proposed lead plaintiffs. Varin and the Stein Group also assert that the McCloskey Group's selection of two law firms as co-lead counsel demonstrates the group's lawyer-driven nature.

McCloskey and Kneller have submitted a joint declaration that adequately makes the required cohesiveness showing. As a preliminary matter, as noted above, although the McCloskey Group seeks to be represented by two law firms as co-lead counsel,

their individual losses surpass those of any other putative lead plaintiff here, removing any real concern that this group of two class members was formed only "to manufacture the greatest financial interest in order to be appointed lead plaintiff." *Eichenholtz v. Verifone Holdings, Inc., No. 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, 2008 WL 3925289, at *9 (Aug. 22, 2008)*.

Further, unlike in *Buettgen*, the McCloskey Group has submitted evidence to explain how the group was formed; how its members would function collectively; how potential disputes among the **[*18]** members or counsel would be resolved; and how the group members and counsel would communicate with one another about the litigation. *See Buettgen, 263 F.R.D. at 382*.

Although McCloskey and Kneller admittedly had no pre-litigation connection, they have submitted evidence that they each understand their responsibility to keep informed of the status and progress of the action; understand the responsibilities of a lead plaintiff to monitor the action, make important litigation decisions, and direct counsel with respect to the litigation; are prepared to review pleadings and motion papers, produce documents, answer interrogatories, and/or sit for depositions; are aware that a lead plaintiff has a fiduciary duty to the entire class and are prepared to each fulfill that fiduciary duty by vigorously prosecuting the action with the goal of maximizing recovery for the class; and intend to communicate as often as necessary with counsel and with one another, separately from their attorneys, regarding major litigation events and litigation strategies recommend by their counsel. *See* Dkt. No. 25-1. They also attested to the reasons that they came together — agreeing to proceed as a group, in consultation with their counsel, **[*19]** because they would like the opportunity to serve as lead counsel and use their strengths and talents to ensure the best representation of the class — and that they have agreed on a mechanism to resolve any internal disagreements. *See id.*

"While the PSLRA aims to discourage lawyer-driven litigation, courts have recognized that 'a pre-existing relationship between [investors] that comprise a group is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation.'" *Cook v. Atossa Genetics, Inc., No. C13-1836-RSM, 2014 U.S. Dist. LEXIS 19218, 2014 WL 585870, at *6 (W.D. Wash. Feb. 14, 2014)* (quoting *Eichenholz, 2008 U.S. Dist. LEXIS 64633, 2008 WL 3925289, at *8*); *see also Netsky, 2000 U.S. Dist. LEXIS 9941, 2000 WL 964935, at *6* ("A group of 1,155 lead plaintiffs would not be able to have the type of meaningful participation in the conduct of the litigation as contemplated by the Act. The court, however, believes that a smaller select group of investors with significant holdings who have suffered significant losses will satisfy the statutory goal of the PSLRA.").

Unlike in *Buettgen* and earlier decisions that cited and followed in that decision, the Court finds that the McCloskey Group has established that it "is a small, cohesive group that will endeavor to act in the best interests of the putative class members and manage **[*20]** the course of future litigation." *Cook, 2014 U.S. Dist. LEXIS 19218, 2014 WL 585870, at *6*.

The Court likewise is persuaded that the McCloskey Group has made the required showing that it would adequately represent the class with two law firms as co-lead counsel. However commendable "a general rule [that], when all plaintiffs are similarly situated in terms of injury (as they are here), the class is best served by having one Lead Plaintiff and one Lead Counsel to minimize legal fees," the Court finds no basis to determine that the McCloskey Group is "nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser for PSLRA purposes." *Glauser v. EVCI Ctr. Colleges Holding Corp., 236 F.R.D. 184, 190 (S.D.N.Y. 2006)* (internal quotation marks omitted). With only two individuals in the group, the Court does not find under the circumstances here that allowing the McCloskey Group "to serve as lead plaintiff in this action and to be represented by two different law firms would defeat the purpose of choosing a lead plaintiff and undermine the objectives of the PSLRA," as Varin and the Stein Group suggest. *In re Gemstar-TV Guide Int'l, Inc. Secs. Litig., 209 F.R.D. 447, 451 (C.D. Cal. 2002)*.

Accordingly, McCloskey Group has demonstrated that it is entitled to the presumption that it is the most adequate plaintiff.

II. Varin and the Stein **[*21]** Group have not rebutted the presumption.

To rebut that presumption, Varin or the Stein Group must offer "proof" that the McCloskey Group "will not fairly and adequately protect the interests of the class; or ... is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

In addition to the arguments already addressed and

rejected above, the Stein Group asserts that McCloskey Group members purchased Match Group stock at various prices above the IPO price and will be subject to a motion to dismiss by Defendants that they are facially incapable of asserting a Securities Act *§ 12* claim. The Court determines that this does not rebut the presumption. As another judge in this circuit recently explained, "'[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action'"; "'[i]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim'"; and "[c]ourts reject a 'requirement that a different lead plaintiff be appointed to bring every single available claim' because that 'would contravene the main purpose of having a lead plaintiff — namely, to empower one **[*22]** or several investors with a major stake in the litigation to exercise control over the litigation as a whole.'" *In re Plains All Am. Pipeline, L.P. Sec. Litig., No. H:15-CV-02404, 2015 U.S. Dist. LEXIS 163811, 2015 WL 8207331, at *4 (S.D. Tex. Dec. 7, 2015)* (quoting *Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 & n.13 (2d Cir. 2004)*). The Court likewise follows this line of authority and rejects the assertion that "the presumptive lead plaintiff fail[s] to satisfy the typicality prong if he or she cannot assert every possible claim." *In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 438 (S.D.N.Y. 2008)* (citing *Hevesi, 366 F.3d at 82-83*).

The Stein Group also asserts that McCloskey sold some of her stock (a total of 3,268 shares) on December 2, 3, and 10, 2015 and on January 5, 2016, before the alleged disclosures, and that defenses unique to McCloskey would therefore imperil the putative class members' claims. But, as the McCloskey Group argues in reply, even if this is not mere speculation of what Defendants may assert, such a defense is not unique to McCloskey since, to the extent that Defendants will seek to limit damages based on a negative causation defense, they will seek to do so on a class-wide basis. Further, as the McCloskey Group points out, this defense would only target some of McCloskey's shares purportedly subject to the negative causation defense and does not substantively alter the financial interest analyses. **[*23]** The Court determines that this argument, too, does not rebut the presumption that the McCloskey Group is the most adequate lead plaintiff.

Varin and the Stein Group have failed to rebut the presumption that the McCloskey Group is the most adequate plaintiff. Accordingly, the Court finds that Mary McCloskey and Craig Kneller are the most adequate plaintiffs under the PSLRA and should be designated as lead plaintiff under *15 U.S.C. § 78u-4(a)(3)*.

### III. The McCloskey Group's selected lead and liaison counsel are approved.

Glancy Prongay & Murray LLP, Bragar Eagel & Squire, P.C., and the Kendall Law Group, PLLC meet the requirements for approval of lead and liaison counsel. The firms have all submitted resumes. *See* Dkt. No. 11. Each has extensive experience in securities class actions, and the Kendall Law Group, PLLC has extensive experience serving as liaison counsel. The record shows that the Glancy Prongay & Murray LLP, Bragar Eagel & Squire, P.C., and the Kendall Law Group, PLLC have the necessary competence, qualifications, and experience to adequately represent the interests of the plaintiff class, and the Court will allow these firms to serve as co-lead counsel and liaison counsel.

The Court has considered **[*24]** the objections of Varin and the Stein Group to McCloskey Group's selecting co-lead counsel but is not persuaded that lead plaintiffs' representation by two lead firms is inappropriate or unwarranted here. But, in view of those concerns, the Court "cautions the firms that representation of the putative class should be performed in such a way that there is not duplication of efforts, and that costs and expenses are not unnecessarily incurred for the representation of plaintiff[s]." *Netsky v. Capstead Mortgage Corp., No. 3:98-cv-1716-L, 2000 U.S. Dist. LEXIS 9941, 2000 WL 964935, at *8 (N.D. Tex. July 12, 2000)*.

The McCloskey Group's choice of counsel is approved pursuant to *15 U.S.C. § 78u-4(a)(3)(B)(v)*, and, accordingly, the law firms of Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C. are approved as co-lead counsel and Kendall Law Group, PLLC is approved as liaison counsel.

### Conclusion

For the reasons explained above, the Court DENIES the Motion of Kenneth Varin for Appointment as Lead Plaintiff and Approval of His Selection of Counsel [Dkt. No. 6]; GRANTS Mary McCloskey and Craig Kneller's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [Dkt. No. 9]; and DENIES the Motion for Appointment of Stein and Jenkins as Lead Plaintiffs and for Approval of Selection of Lead and **[*25]** Liaison Counsel [Dkt. No. 12]. The Court designates Mary McCloskey and Craig Kneller as lead plaintiff and approves Glancy Prongay & Murray LLP and Bragar

2016 U.S. Dist. LEXIS 74995, *25

Eagel & Squire, P.C. as co-lead counsel and Kendall
Law Group, PLLC as liaison counsel.

SO ORDERED.

DATED: June 9, 2016

/s/ David L. Horan

DAVID L. HORAN

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

 Neutral
As of: November 6, 2018 8:00 PM Z

## *Tsirekidze v. Syntax-Brillian Corp.*

United States District Court for the District of Arizona

July 17, 2009, Decided; July 17, 2009, Filed

No. CV-07-02204-PHX-FJM

**Reporter**
2009 U.S. Dist. LEXIS 61145 *; Fed. Sec. L. Rep. (CCH) P95,293

Teimuraz Tsirekidze, On Behalf of Himself and All Others Similarly Situated, Plaintiff, vs. Syntax-Brillian Corp., Man Kit (Thomas) Chow, John S. Hodgson, James Ching Hua Li, Wayne A. Pratt, Vincent F. Sollitto, Jr., Brean Murray Carret & Co., LLC, Canaccord Adams Inc., Grobstein Horwath & Company LLP, Merrill Lynch, Pierce Fenner & Smith Incorporated, Robert W. Baird & Co. Incorporated, and UBS Securities LLC, Defendants.

**Prior History:** *Tsirekidze v. Syntax-Brillian Corp., 2009 U.S. Dist. LEXIS 8464 (D. Ariz., Jan. 30, 2009)*

## Core Terms

stock, shares, plaintiffs', Underwriters, purchasers, securities, named plaintiff, lead plaintiff, Declaration, proposed class, class action, requirements, common question, defendants', parties, class member, commonality, offering, issues, proof of claim, aftermarket, predominate, adequacy, defenses, putative class member, class certification, injuries, notice, traded, violation of section

**Counsel:** **[*1]** For Teimuraz Tsirekidze, on behalf of himself and all others similarly situated, Plaintiff: Frank Lewis, LEAD ATTORNEY, Begam Lewis & Marks PA, Phoenix, AZ; Lee Squitieri , LEAD ATTORNEY, Squitieri & Fearon LLP, New York, NY; Andrew S Friedman, Bonnett Fairbourn Friedman & Balint PC, Phoenix, AZ.

For St. Clair Shores Police and Fire Retirement System, City of, Plaintiff: Daniel S Drosman, Darren J Robbins, Ramzi Abadou, LEAD ATTORNEYS, Samantha A Smith , Shannon McKenna Matera, Xavier Jay Alvarez , Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA; Ex Kano S Sams , II, Jonathan E Behar , Regina Ames Sandler, Sean K Collins , LEAD ATTORNEYS, Coughlin Stoia Geller Rudman & Robbins LLP, Los Angeles, CA; Michael Salcido, Buckley King LPA, Phoenix, AZ.

For Nagel FamilyTrust, Plaintiff: Andrew S Friedman,

LEAD ATTORNEY, Bonnett Fairbourn Friedman & Balint PC, Phoenix, AZ; Francis M Gregorek, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, CA; Gregory Mark Nespole, Gustavo Fabian Bruckner, LEAD ATTORNEYS, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY.

For Angelko Bogdanov, Plaintiff: Andrew S Friedman, LEAD ATTORNEY, Bonnett Fairbourn Friedman & Balint **[*2]** PC, Phoenix, AZ; Frank Verderame, LEAD ATTORNEY, Plattner Verderame PC, Phoenix, AZ; Kevin Michael McGee, Richard A Speirs, LEAD ATTORNEYS, Zwerling Schachter & Zwerling LLP, New York, NY.

For Paula Langley, Plaintiff: Andrew S Friedman, LEAD ATTORNEY, Bonnett Fairbourn Friedman & Balint PC, Phoenix, AZ; Hart Lawrence Robinovitch, LEAD ATTORNEY, Zimmerman Reed PLLP, Scottsdale, AZ.

For Bloomfield, Inc., on behalf of itself and all others similarly situated, Plaintiff: Frank Verderame, LEAD ATTORNEY, Plattner Verderame PC, Phoenix, AZ; Kevin Michael McGee, LEAD ATTORNEY, Richard A Speirs, Zwerling Schachter & Zwerling LLP, New York, NY.

Jonathan Lee Riches, Intervenor Plaintiff, Pro se, LEXINGTON, KY.

For Syntax-Brillian Corp., Defendant: Brian Jay Schulman, E Jeffrey Walsh, Robert A Mandel, LEAD ATTORNEYS, Laura Elizabeth Sixkiller, Greenberg Traurig LLP, Phoenix, AZ.

For Vincent F. Sollitto, Jr., also known as Vincent F. Solitto, Jr., Wayne Pratt, Defendants: Craig Varnen , Daniel P Lefler, Shaunt T Arevian , LEAD ATTORNEYS, Christopher Robert Cowan , Lillie A Werner , Irell & Manella LLP, Los Angeles, CA; Joel Philip Hoxie, Patricia Lee Refo, LEAD ATTORNEYS, Joseph G Adams, Snell & Wilmer **[*3]** LLP, Phoenix, AZ.

For James Ching Hua Li, Man Kit Chow, Defendants: Jennifer Lopez , LEAD ATTORNEY, Bingham

McCutchen LLP, Costa Mesa, CA; John David Pernick, LEAD ATTORNEY, Charlene S Shimada, Bingham McCutchen LLP, San Francisco, CA; Susan L Hoffman , LEAD ATTORNEY, Bingham McCutchen LLP, Los Angeles, CA; H Michael Clyde, Rebecca K Setlow, Perkins Coie Brown & Bain PA, Phoenix, AZ.

For James Li, Defendant: Brian Jay Schulman, E Jeffrey Walsh, Robert A Mandel, Laura Elizabeth Sixkiller, LEAD ATTORNEYS, Greenberg Traurig LLP, Phoenix, AZ.

For John S. Hodgson, Defendant: Bruce A Abbott , James Raza Lawrence , Munger Tolles & Olson LLP, Los Angeles, CA; James J Belanger , Coppersmith Schermer & Brockelman PLC, Phoenix, AZ.

For Brean Murray, Carret & Co., LLC, Canaccord Adams Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Robert W. Baird & Co. Incorporated, UBS Securities LLC, Defendants: David B Rosenbaum, Mark P Hummels, Maureen Beyers, Osborn Maledon PA, Phoenix, AZ; Jonathan Cobb Dickey , Robert F Serio , Gibson Dunn & Crutcher LLP, New York, NY; Michelle Craven , PRO HAC VICE, Gibson Dunn & Crutcher LLP, New York, NY; Rebecca Justice Lazarus , Gibson Dunn & Crutcher LLP, San Francisco,  [*4] CA.

For Grobstein, Horwath & Company LLP, Defendant: Efren A Compean, Stephen J Tully, LEAD ATTORNEYS, John L Lin , Garrett & Tully PC, Pasadena, CA; Douglas H Fitch, Jardine Baker Hickman & Houston PLLC, Phoenix, AZ.

For New Haven Policemen and Firemen's Pension Fund, City of, Movant: Ex Kano S Sams , II, Sean K Collins, LEAD ATTORNEYS, Jonathan E Behar , Coughlin Stoia Geller Rudman & Robbins LLP, Los Angeles, CA; Michael Salcido, Buckley King LPA, Phoenix, AZ.

**Judges:** Frederick J. Martone, United States District Judge.

**Opinion by:** Frederick J. Martone

# Opinion

## ORDER

Plaintiffs bring this proposed class action alleging that defendants violated the Securities Exchange Act of 1934 ("1934 Act") and the Securities Act of 1933 ("1933 Act"). We have before us lead plaintiff, City of St. Clair

Shores Police and Fire Retirement System's ("St. Clair Shores"), and named plaintiff, City of New Haven Policemen and Firemen's Pension Fund's ("New Haven") (collectively, "plaintiffs"), motion for class certification (doc. 196), declarations of Kano Sams II ("Sams") and James Kottage in support of plaintiffs' motion (docs. 191 & 197, respectively), and notices of recent authority (docs. 209, 290 & 294). We also have before us James  [*5] Ching Hua Li ("Li") and Man Kit (Thomas) Chow's ("Chow") response (doc. 260), supporting declaration of John Pernick (doc. 261), notice of recent authority (doc. 291), and response to plaintiffs' third notice of recent authority (doc. 295). The court also has before it Brean Murray, Carret & Co., LLC, Canaccord Adams Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Robert W. Baird & Co. Inc., and UBS Securities LLC's (collectively, "Underwriters") response (doc. 263) and affidavit of Vinita Juneja (doc. 264). These responses have been joined by the remaining defendants, Vincent F. Sollitto, Jr. and Wayne A. Pratt (doc. 266), John S. Hodgson (doc. 267), and Grobstein Horwath & Company LLP (doc. 259). [1]

 The court also has before it St. Clair Shores' reply (doc. 273), New Haven's reply (doc. 274), declarations of Jonathan Behar and Steven Feinstein, and affidavit of Marc Steinberg (docs. 275, 276, & 277, respectively).

We also have before us Underwriters' motion to strike the affidavit of Marc Steinberg (doc. 279), plaintiffs' response (doc. 281), and Underwriters' reply  [*6] (doc. 288). Underwriters claim that Steinberg's affidavit should be stricken as untimely because he was not disclosed as an expert until after the deadline set by the court's *Rule 16* order, and they have been prejudiced thereby. Underwriters also argue that the affidavit is improper because it raises issues not addressed in plaintiffs' initial motion.

Underwriters' motion to strike is denied. Plaintiffs' failure to disclose Steinberg as an expert witness prior to the deadline set by our *Rule 16* order has not prejudiced defendants because he is not a *Rule 26* witness upon whom they intend to rely at trial. His opinion has been offered only as rebuttal to defendants' experts for purposes of this motion. In any event, to the extent any new arguments are raised by plaintiffs' reply, they will not be considered. *See Gadda v. State Bar of Cal., 511 F.3d 933, 937 n.2 (9th Cir. 2007)*.

**I**

---

[1] Defendants Li and Chow also join in Underwriters' response to plaintiffs' motion for class certification (doc. 265).

This action is a result of the financial troubles of Syntax-Brillian Corp. ("Syntax"), which sells liquid crystal display and high definition televisions. Plaintiffs allege that defendants, former Syntax officers, underwriters, and an independent auditor, overstated profits and financial projections, concealed **[*7]** shortfalls, and otherwise misled investors, causing an artificial inflation of Syntax's stock price. Lead plaintiff, St. Clair Shores, is a public retirement fund, which had purchased more than 10,000 shares of Syntax common stock. Named plaintiff, New Haven, purchased over 3,000 shares in Syntax's Secondary Public Offering ("SPO") on May 24, 2007.

Plaintiffs bring this action alleging: (1) violation of *Section 11* of the 1933 Act, *15 U.S.C. § 77k*, against all defendants; (2) violation of *Section 12(a)(2)* of the 1933 Act, *15 U.S.C. § 77l(a)(2)*, against Li, Chow, Sollitto, Pratt, Hodgson, and Underwriters; (3) violation of *Section 15* of the 1933 Act, *15 U.S.C. § 77o*, against Li, Chow, Sollitto, Pratt, and Hodgson; (4) violation of *Section 10(b)* of the 1934 Act, *15 U.S.C. § 78j(b)*, and SEC *Rule 10b-5* promulgated thereunder, *17 C.F.R. § 240.10b-5*, against Li and Chow; and (5) violation of *Section 20(a)* of the 1934 Act, *15 U.S.C. § 78t(a)*, against Li and Chow. [2]

Plaintiffs now move to certify a class consisting of those persons or entities who purchased or otherwise acquired Syntax securities between February 9, 2007 and November 14, 2007, as well as those who purchased or otherwise acquired **[*8]** Syntax common stock in the SPO. The proposed class excludes defendants, members of individual defendants' families, any entity in which defendants have a controlling interest or is a parent or subsidiary of, or is controlled by Syntax, and the officers, directors, employees, affiliates, legal representatives, heirs predecessors, successors and assigns of defendants.

**II**

Before we consider the issue of class certification, we address a threshold jurisdictional issue. Defendants argue that plaintiffs do not have standing to bring a claim under *Section 11* or *Section 12(a)(2)* of the 1933 Act because they have failed to show that they purchased their shares in the SPO. [3]

---

[2] These are the claims that remain after our order on defendants' motions to dismiss (doc. 198).

As to lead plaintiff, we previously addressed its standing to bring 1933 Act claims in our order dated February 4, 2009, and direct defendants **[*9]** to the discussion on pages fifteen and sixteen of that order (doc. 198). While we agree that lead plaintiff does not have standing to assert either *Section 11* or *Section 12(a)(2)* claims, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *See Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004)*. As discussed in our prior order, the complaint has been crafted such that claims under the 1933 Act are brought on behalf of named plaintiffs whose shares were allegedly purchased in the SPO.

Defendants now contend that named plaintiff lacks standing to bring a *Section 12(a)(2)* claim because it cannot show that it purchased shares in the SPO. "Under *Section 12(a)(2)*, a 'claim may only be maintained by a purchaser who purchased [securities] in the public offering at issue rather than in a secondary market transaction." *Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007)* (quotation omitted). Defendants' own exhibit shows, however, that, at a minimum, named plaintiff purchased stock for $ 5.75, the SPO offering price, on May 24, 2007, the day of the offering, from Merrill Lynch, an **[*10]** underwriter of the SPO. *Underwriters Response, Ex. A* at 1. This evidence in conjunction with the allegation in the amended complaint that named plaintiff purchased shares directly from the SPO, *Consolidated Amended Complaint* P 43, is sufficient to establish standing at this stage of the proceedings.

**III**

Before we may certify a class, plaintiffs must satisfy the requirements of both *Rule 23(a)* and *(b), Fed. R. Civ. P.* "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of *Rule 23* are met." *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.*

---

[3] Although a question exists as to whether this issue is appropriately considered under an Article III standing or **Rule 23(a)(4)** adequacy of representation analysis, *see Gratz v. Bollinger, 539 U.S. 244, 263, 123 S. Ct. 2411, 156 L. Ed. 2d 257* & n.15, *539 U.S. 244, 123 S. Ct. 2411, 2423, 156 L. Ed. 2d 257 & n.15 (2003)*, we conclude that plaintiffs satisfy either test.

*Ct. 2140, 2153, 40 L. Ed. 2d 732 (1974)* (quotation omitted). We are, therefore, "bound to take the substantive allegations of the complaint as true," but may consider extrinsic evidence offered by the parties to make an informed judgment on each of *Rule 23*'s requirements. *Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975)*.

### A. *Rule 23(a)*

Under *Rule 23(a)*, plaintiffs must establish (1) numerosity of the parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses between the class **[*11]** representatives and the class; and (4) adequacy of representation. Plaintiffs maintain that all four requirements of *Rule 23(a)* are met, but defendants argue that plaintiffs are unable to show commonality, typicality, or adequacy of representation.

### 1. Numerosity

A class meets *Rule 23(a)*'s numerosity requirement if it is "so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*. The parties do not dispute that plaintiffs' proposed class satisfies the numerosity requirement of *Rule 23(a)*. Syntax's stock traded actively during the class period, with an average of over three million shares trading daily. *Sams Declaration, Ex. A* P 30. Joinder of all parties who purchased Syntax stock during the class period would be impracticable.

### 2. Commonality

A class has sufficient commonality if "there are questions of law or fact common to the class." *Fed. R. Civ. P. 23(a)(2)*. The commonality factor is construed permissively, and "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)*. Defendants **[*12]** argue that the claims of the proposed class lack commonality because the proposed class includes purchasers who sold their stock at a gain. We disagree.

Defendants argument conflates the issue of damages with commonality of legal or factual issues. The gravamen of plaintiffs' complaint is that defendants made several statements in financial filings, investor calls, and the SPO documents regarding demand for

Syntax televisions that were misleading or false, which artificially inflated the price of Syntax stock. Although members of the putative class may be entitled to different amounts of redress, and some may not be entitled to any, their claims stem from the same source - - the artificial inflation of Syntax stock prices.

### 3. Typicality

Plaintiffs must also establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P., Rule 23(a)(3)*. "We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis, 275 F.3d 849, 869 (9th Cir. 2001)* **[*13]** (citation omitted). Although lead plaintiff did not purchase shares in the SPO, and thus does not have injuries under the 1933 Act, the addition of named plaintiff ensures that a class representative's injuries resulted from the same course of conduct regarding the SPO.

Nonetheless, defendants argue that named plaintiff's claims are not typical of other putative class members because named plaintiff sold its shares on September 13, 2007, before material information regarding Syntax's alleged misconduct was disclosed. The "typicality" requirement does not, however, require that plaintiffs' claims be identical to those in the proposed class. "[D]ifferences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases." *Weinberger v. Thornton, 114 F.R.D. 599, 603 (S.D. Cal. 1986)* (citation omitted); *see also Welling v. Alexy, 155 F.R.D. 654, 662 (N.D. Cal 1994)* ("'[T]ypicality does [not] require uniformity of damages' and the fact that one proposed representative sold part of his stock before the end of the class period 'does not, in and of **[*14]** itself, affect his standing as a class representative.'") (quotation omitted). Named plaintiff's claims derive from the same legal theories and involve the same set of facts as those of the putative class. We find no basis for defendants' claim that named plaintiff would not vigorously represent the interests of those who sold Syntax stock later than September 13, 2007.

### 4. Adequacy of Representation

Finally, *Rule 23(a)* requires that representative parties are able to "fairly and adequately protect the interest of the class." Two requirements must be established to show adequate representation: (1) plaintiffs "must appear able to prosecute the class action vigorously through qualified counsel;" and (2) plaintiffs "must not have antagonistic or conflicting interests" with the putative class members. *Leverill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)* (citations omitted). Defendants do not dispute the adequacy of plaintiffs' lead counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin"), [4] and the record supports that Coughlin is qualified to litigate this matter. Defendants argue, however, that St. Clair Shores will not fairly and adequately protect the  **[\*15]** interests of the class because this is purely lawyer-driven litigation.

Defendants describe St. Clair Shores as a "serial plaintiff" with an ongoing relationship with Coughlin, and very little knowledge about the cases with which it is involved. They support their argument by citing James Haddad's, chairman of the board of directors of St. Clair Shores, deposition testimony. Haddad testified that he was not aware of the specific fraudulent misrepresentations alleged in this case, he did not read all of the interrogatory responses that he verified, and he did not know the facts of many other cases with which St. Clair Shores was involved. *Pernick Declaration, Ex. B.* Haddad also testified that he did not deal with or know about the fee arrangement between St. Clair Shores and Coughlin. *Id.*

We do not find Haddad's lack of knowledge about these matters fatal to lead plaintiff's ability to adequately represent the class. "Courts have developed a standard of 'striking unfamiliarity' to assess a representative's adequacy in policing the prosecution of his or her lawsuit." *Welling, 155 F.R.D. at 659*  **[\*16]** (citation omitted). Haddad's deposition testimony shows that he is aware of the general allegations in the complaint, although not the specific misrepresentations, as well as the amount of St. Clair Shores' stock losses. He is updated regularly regarding the case, and he monitors Coughlin's work. *Behar Declaration, Ex. C.* Moreover, Haddad understands that St. Clair Shores owes a fiduciary duty to all members of the putative class to obtain the best recovery for the class. *Id.* Although Haddad is less familiar with the facts of this action than

he should be, his unfamiliarity is not so striking that lead plaintiff is unqualified to represent the class. *See In re Nature's Sunshine Prod.'s Inc. Sec. Litig., 251 F.R.D. 656, 658 (D. Utah 2008)* ("Courts have recognized that '[i]n a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'").

In addition, lead plaintiff does not have problematic traits that cause us to conclude that it would be an inadequate class representative. *See Welling, 155 F.R.D. at 658-59; In re Cooper Cos. Secs. Litig., 254 F.R.D. 628, 636-37 (C.D. Cal. 2009)*. Haddad's testimony  **[\*17]** shows that St. Clair Shores made the decision to invest in Syntax well before this litigation and without suggestion from counsel. Also, there is no indication that lead plaintiff lacks honesty or integrity, or would be subject to defenses not typical of the class.

Accordingly, we conclude that lead plaintiff, St. Clair Shores, has shown that it will fairly and adequately represent the proposed class. For the same reasons, we also conclude that named plaintiff, whose adequacy has not been challenged, is able to fairly and vigorously represent the interests of the proposed class. *See Kottage Declaration* (affirmatively stating that New Haven independently purchased Syntax stock, understands the allegations in the complaint, remains in constant contact with counsel, reviews motions and other documents filed in this case, and accepts the obligation to fairly represent and actively work with counsel and lead plaintiff to obtain the best recovery for the proposed class).

## B. *Rule 23(b)*

Plaintiffs must also meet one of the requirements of *Rule 23(b)* for a class to be certified. They rely on *Rule 23(b)(3)*, which requires (1) that common questions "predominate over any questions affecting only  **[\*18]** individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs argue that common questions predominate because they have alleged a common course of conduct directed at all members of the proposed class. They also argue that a class action is superior to other methods of resolving this controversy because it allows common questions to be decided in a single action with binding effect on all parties.

---

[4] There is likewise no dispute that Buckley King is qualified to serve as liaison counsel in this action.

## 1. Predominance of Common Questions

Whether common questions predominate depends upon the relationship between common questions and individual interests in the litigation. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to *Rule 23(a)(2)*; thus, the presence of commonality alone is not sufficient to fulfill *Rule 23(b)(3)*." *Hanlon, 150 F.3d at 1022*.

### a. 1934 Act claims

Ordinarily, any plaintiff bringing a *Section 10(b)* and *Rule 10b-5* cause of action must show that it relied on a defendant's alleged misstatements. However, "[r]equiring proof of individualized reliance from each member of [a] proposed plaintiff class effectively would have prevented **[*19]** [plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Basic, Inc. v. Levinson, 485 U.S. 224, 242, 108 S. Ct. 978, 989, 99 L. Ed. 2d 194 (1988)*. The "fraud-on-the-market" theory evolved to address this problem. Under this theory, "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." *Id. at 247, 108 S. Ct. 978*. Plaintiffs argue that they are entitled to a presumption of reliance for their *Section 10(b)* claim because Syntax stock traded on an efficient market.

Li and Chow, the only two defendants against whom claims under the 1934 Act remain, concede that Syntax stock traded on an efficient market reflecting public information. [5] They argue, however, that plaintiffs are unable to show that the "fraud-on-the-market" presumption applies because nearly half of the putative class consists of short-sellers and market makers who did not rely on the integrity of the market. [6]

Plaintiffs contend that this conflates the concept of market efficiency with price integrity and that all investors, **[*20]** including short-sellers and market makers, rely on the integrity of the market. *See Feinstein Declaration PP 7-9, 24*. We agree.

The "fraud-on-the-market" presumption **[*21]** endorsed in *Basic* is based on the understanding that in a complex market "[t]he market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price." *Basic, 485 U.S. at 244, 108 S. Ct. 978* (quotation omitted). "Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." *Id. at 241-42, 108 S. Ct. 978* (quotation omitted). Short-sellers and market makers depend on the market to provide accurate information regarding a company and its prospects whether or not they rely on the accuracy of a specific stock price or the prognosis for that price.

We conclude, therefore, that plaintiffs are entitled to a presumption of reliance based on the "fraud-on-the-market" theory.

### b. 1933 Act claims

Defendants also argue that common questions do not predominate in plaintiffs' *Section 11* claims because most putative class members cannot trace their shares to the May 2007 SPO. Any plaintiff bringing a claim under *Section 11*, including all putative class members, must show that all stock for which damages are claimed was purchased under the **[*22]** challenged offering documents. *See Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1080 (9th Cir. 1999)*. In this case, all putative class members who purchased shares in the aftermarket [7] would have to show that their shares were actually issued in the SPO.

---

[5] Indeed, plaintiffs have sufficiently shown that Syntax stock was traded on an efficient market. The stock was traded on the NASDAQ National Market at high volumes during the class period, was followed by financial analysts, had market makers, and information about Syntax was quickly incorporated into the price of its securities. *Sams Declaration, Ex. A; see also* **Binder v. Gillespie, 184 F.3d 1059, 1065 (9th Cir. 1999)** (stating the factors that should be considered to determine if a market is efficient).

[6] "A short sale is a sale at a price fixed now for delivery later. A trader sells stock short when he thinks the price of the stock is going to fall, so that when the time for delivery arrives he can buy it at a [hopefully] lower price and pocket the difference." *Sullivan & Long, Inc. v. Scattered Corp., 47 F.3d 857, 859 (7th Cir.1995)*. "A market maker is a 'firm that maintains a firm bid and offer price in a given security by standing ready to buy or sell at publically-quoted prices.'" *Pernick Declaration, Ex. A* at 10 n.9.

[7] The term "aftermarket" here is used to refer to any shares purchased after May 24, 2007, as well as any shares purchased on that day but not purchased directly from an underwriter or participating dealer.

Tracing shares purchased in the aftermarket to a particular SPO requires a difficult, indeed sometimes impossible, individual showing of proof, particularly where a company has made more than one offering. *See Juneja Affidavit; Hertzberg, 191 F.3d at 1080* (noting that tracing shares purchased in the aftermarket to a particular registration statement "might present a problem of proof in a case in which stock was issued under more than one registration statement"). Syntax's SPO came in 2007 when there were already millions of shares of Syntax stock on the market. *See Sams Declaration, Ex. A* P 30. Plaintiffs have not provided any information regarding how class members can or will trace their aftermarket stock. [8]

 Individual questions  **[*23]** regarding standing to assert a *Section 11* claim would, therefore, overwhelm the questions common to the class if all aftermarket purchasers are included.

We will limit plaintiffs' proposed class to exclude *Section 11* claims by any person who did not purchase directly in the SPO. Defendants argue that this same limitation should apply to all *Section 12(a)(2)* claims as well. Plaintiffs do not respond to this argument, and it is clear that *Section 12(a)(2)* does not provide standing for aftermarket purchasers. *See Hertzberg, 191 F.3d at 1080-81*. We, therefore, conclude that the class for plaintiffs' 1933 Act claims must be limited to exclude all purchasers that did not buy their stock on the day of the SPO directly from an underwriter or participating dealer. [9]

**c. direct purchasers**

Defendants also contend that any class that is certified should be limited to exclude direct purchasers of Syntax stock. Specifically, defendants seek to exclude purchasers in two private offerings: (1) a March 28,

2007 transaction in which WesTech Electronics Ltd. and TCV Group, Syntax suppliers, acquired 2.1 million shares for $ 15.5 million dollars; and (2) an August 23, 2007 transaction with TECO Electronic & Machinery Co., another Syntax supplier, in which it acquired 3.1 million shares for approximately $ 20 million dollars. *Consolidated Amended Complaint* PP 148 & 164. Defendants contend these investors are subject to many individual defenses because they negotiated directly with the company and, in their position as suppliers, may have had unique information about Syntax and the television industry.

We agree that the class should be limited to exclude purchasers in the March 2007 and August 2007 direct transactions. Given their position as suppliers, these  **[*25]** purchasers are subject to individual defenses regarding their knowledge of the alleged misstatements and common questions do not, therefore, predominate. [10]

**2. Superiority of a Class Action**

Under *Rule 23*, to determine whether a class action is superior to other methods of adjudicating this controversy we should consider (1) individual class members' interests in controlling or prosecuting separate actions, (2) other litigation concerning this controversy by or against class members, (3) the desirability of concentrating the litigation in this forum, and (4) the manageability of the action. Apart from the several arguments already addressed, the parties do not dispute that consideration of these factors weighs in favor of  **[*26]** finding a class action superior to other methods of resolving this conflict. Particularly considering the large number of potential claims, a class action is superior to other methods because it allows these issues to be resolved in a single action. Moreover, this is an appropriate forum because Syntax has its principal place of business in Tempe, Arizona. *See Consolidated Amended Complaint* P 20.

Accordingly, we conclude that plaintiffs have shown the

---

[8] Plaintiffs' expert, Steinberg, opines that "[i]n seeking to establish the requisite standing under *Section 11* in this matter, materials within the possession of Underwriters and participating dealers may be very helpful." *Steinberg Affidavit* P D. The opinion does not address how these hypothetical documents could show the standing of putative class members to avoid a series of individual mini-trials on these issues.

[9] We join plaintiffs'  **[*24]** *Section 15* claim in this analysis because control-person liability is predicated upon *Section 11* or *Section 12(a)(2)* liability. *See In re Dynegy, Inc. Sec. Litig., 226 F.R.D. 263, 272 n.8 (S.D. Tex. 2005)*.

---

[10] Hodgson also argues that common questions do not predominate because of individual questions regarding the one year statute of limitations for *Section 11* and *Section 12(a)(2)* claims. *15 U.S.C. § 77m*. We disagree. It is unlikely that defendants will have many, or any, defenses regarding when a specific individual actually discovered the facts of their claim, and a determination of when plaintiffs should have discovered a claim can easily be done on a class-wide basis.

requirements for class certification under *Rule 23(a)* and *(b)(3)*. We will certify a class for this action with the limitations previously discussed.

## C. Conditions on Class Certification

Finally, defendants move to include a required proof of claim form with the class notice to provide for a more credible and accurate damages analysis. Plaintiffs oppose inclusion of the proof of claim form and argue that defendants are attempting to impose an impermissible "opt-in" procedure on class members. We agree.

Defendants' proposed proof of claim form states that "[t]o recover as a Member of the Class based on your claims . . . you must complete and . . . sign this Proof of Claim. If you fail to file a properly addressed . . . Proof of Claim, your **[*27]** claim may be rejected and you may be precluded from any recovery from the Litigation." *Underwriters' Response, Ex. B* P 1. A class member reading the first paragraph could therefore assume that if he does not submit the proof of claim form he will be excluded from the class and be free to bring his own action. Although the form later provides that a class member will be bound by any final judgment whether or not he submits a proof of claim, *Id.* P 4., by conflating recovery with class membership, this form has a strong potential to confuse class members regarding whether or not they need to "opt-in" to this action. To the extent that failure to complete and return the proof of claim form would result in the class member's dismissal, it constitutes an "opt-in" procedure, which contradicts *Rule 23. See Fed. R. Civ. P. 23(c)(2)(B);* McCarthy v. Paine Webber Group, Inc., 164 F.R.D. 309, 313 (D. Conn. 1995).

We, therefore, deny defendants' motion to include a proof of claim form with class notice.

## IV

Accordingly, **IT IS ORDERED GRANTING** plaintiffs' amended motion for class certification (doc. 196). Pursuant to *Rule 23(b)(3)* we certify a class consisting of:

> All persons or entities who purchased **[*28]** or otherwise acquired Syntax-Brillian Corporation securities between February 9, 2007 and November 14, 2007. For all claims brought under the Securities Act of 1933, as opposed to claims

under the Securities Exchange Act of 1934, only those persons or entities who purchased or otherwise acquired Syntax-Brillian securities in the company's secondary public offering on May 24, 2007 directly from an underwriter or participating dealer are included. Any purchasers in private offerings by Syntax-Brillian corporation on March 28, 2007 and August 23, 2007, all defendants, members of individual defendants' families, any entity in which a defendant has a controlling interest or is a parent or subsidiary of, or is controlled by Syntax-Brillian Corporation, the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns of defendants are excluded.

**IT IS FURTHER ORDERED DENYING** Underwriter defendants' motion to strike the affidavit of Marc Steinberg (doc. 279).

**IT IS FURTHER ORDERED** pursuant to *Rule 23(c)(2), Fed. R. Civ. P.*, that the parties shall stipulate to a form of notice to the class and file it no later than August 10, 2009.

DATED this 17th **[*29]** day of July, 2009.

/s/ Frederick J. Martone

Frederick J. Martone

United States District Judge

---

**End of Document**

 Positive
As of: October 30, 2018 2:12 PM Z

# *United States CFTC v. Fin. Robotics, Inc.*

United States District Court for the Southern District of Texas, Houston Division

June 27, 2013, Decided; June 27, 2013, Filed

CIVIL ACTION NO. H-11-2446

**Reporter**
2013 U.S. Dist. LEXIS 90635 *; 2013 WL 3280038

U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff, vs. FINANCIAL ROBOTICS, INC. and MARK E. RICE, Defendants.

**Prior History:** *United States CFTC v. Fin. Robotics, Inc., 2011 U.S. Dist. LEXIS 87339 (S.D. Tex., Aug. 8, 2011)*

## Core Terms

limitations period, applies, amend, leave to amend, disgorgement, statute of limitations, propose an amendment, entities, courts, limitations, two-year, argues, funds, discovery, Receiver, accrued, trading, futile

**Counsel:** **[*1]** For U.S. Commodity Futures Trading Commission, Plaintiff: Kevin S. Webb, LEAD ATTORNEY, PRO HAC VICE, Gretchen L. Lowe, James H. Holl, III, US CFTC, Washington, DC.

For Mark E. Rice, Defendant: Joe Alfred Izen, Jr, LEAD ATTORNEY, Attorney at Law, Bellaire, TX; Geoffrey H Bracken, Gardere Wynne et al, Houston, TX.

For Matthew Skaggs, Movant: Jeffrey Craig DeSandro, Law Office, Humble, TX.

For Bryan L Wright, Movant: Dean M Blumrosen, Attorney at Law, Houston, TX.

For Select Portfolio Servicing, Inc., Intervenor: Michael F Hord, Jr, LEAD ATTORNEY, Hirsch Westheimer PC, Houston, TX.

**Judges:** Lee H. Rosenthal, United States District Judge.

**Opinion by:** Lee H. Rosenthal

## Opinion

### MEMORANDUM AND ORDER

The plaintiff, the U.S. Commodity Futures Trading Commission (CFTC), moves for leave to file an amended complaint to add factual allegations and to assert a claim for fraud by misappropriation under the antifraud provisions of the Commodity Exchange Act, *7 U.S.C. § 6b(a)(2)(A)* and *(C)*. (Docket Entry No. 169). The CFTC's proposed amendments relate to the defendants' use of third-party entities to transfer, hide, and spend the assets of one of their investors, Robert P. Copeland. Rice opposes the motion. (Docket Entry No. 171). Based **[*2]** on the pleadings; the motion, response, and reply; the record; and the applicable law, the CFTC's motion for leave to amend is granted. The reasons are explained below.

### I. Background

On June 29, 2011, the CFTC sued Financial Robotics, Inc. (FinRob) and Mark E. Rice, alleging that since June 18, 2008, they committed fraud in connection with transactions in leveraged off-exchange foreign currency (Forex). The CFTC asserted that the defendants made material misrepresentations to Copeland about the risks of loss, guarantees of return of principal, likelihood of profitable trading and increase in value, and the general risks involved in trading Forex, in violation of "*7 U.S.C. §§ 6b(a)(2)(A)* & *(C)* and *2(a)(1)(B)*. The CFTC sought a statutory restraining order (SRO) under *7 U.S.C. § 13a-1* freezing the defendants' assets, prohibiting document destruction, appointing a receiver, and requiring expedited discovery. (Docket Entry No. 1).

On June 30, 2011, this court granted the CFTC's SRO motion and ordered Rice to produce documents and an accounting of the assets held by him and "any d/b/a, successor, affiliate, subsidiary or other entity owned, controlled, managed or held by, on behalf of or for

 [*3] the benefit of Rice." (Docket Entry No. 6). On August 8, 2011, the court entered a preliminary injunction. (Docket Entry No. 34).

On August 15, 2011, Rice was found to have failed to produce an accounting or relevant documents and was ordered to show cause why he should not be held in contempt. The show cause order provided deadlines for Rice's compliance with the SRO. (Docket Entry No. 40). On August 31, 2011, a supplemental SRO was entered finding cause to believe that Rice had used several entities to protect, hide, and, dissipate funds that the receiver had been ordered to recover. These entities were added as relief defendants. They include Aztec Oil, Inc., Bison Holdings, Inc., Commodity Futures and Options Services, Inc. ("CFOS"), Corporate Services, Inc., Deposit Capital, Inc., Global One Real Estate, Inc., Hondo, Inc., Lanxide Corporation, Nemaha, Inc., Sparen FX, S.A., Sparen Holdings, Inc., Sparen, Inc., and Texana, Inc. (Docket Entry No. 43).

On October 6, 2011, the court held Rice in civil contempt for willfully failing to comply with the SRO and supplemental SRO. (Docket Entry No. 57). On October 13, 2011, Rice was granted a furlough conditional on his compliance with the [*4] SROs. (Docket Entry No. 62). On March 19, 2012, the Receiver filed a notice stating that Rice had not complied with the SROs because he failed to produce a sufficiently detailed accounting of the defendants' assets and records for many of the relief defendants. (Docket Entry No. 103).

On March 25, 2013, the Receiver filed a status report stating that the defendants had transferred over $2.4 million of Copeland's funds to Rice-controlled entities and that Rice has failed to comply with court orders requiring him to produce relevant documents from those entities. (Docket Entry No. 167). The CFTC contends that Rice has still not produced many of the requested bank and trading records. (Docket Entry No. 169, Exs. A, B, & C).

On April 1, 2013, within the deadline set in the amended scheduling and docket control order, the CFTC moved for leave to amend its complaint. The proposed amended complaint alleges that the defendants misappropriated Copeland's funds by transferring them to Rice-controlled entities and using the money to pay for business and personal expenses, without Copeland's knowledge or authorization. (Docket Entry No. 169). The CFTC submitted declarations by Michelle Bougas, a  [*5] CFTC trading investigator, (id., Ex. D), and Copeland, (id., Ex. E).

## II. The Standard for Granting Leave to Amend

Under *Federal Rule of Civil Procedure 15(a)*, a district court "should freely give leave [to amend] when justice so requires." *Fed. R. Civ. P. 15(a)(2).* "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 994 (5th Cir. 2005)* (internal quotation marks omitted). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted). Under *Rule 15(a)*, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010).*

## III. Analysis

In ruling on a motion to amend a pleading, a court may consider "(1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to  [*6] the party when the original complaint was filed." *Matter of Southmark Corp., 88 F.3d 311, 316 (5th Cir. 1996).* "A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant." *Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003)* (quotation marks omitted). The factual allegations and claims the CFTC seeks leave to add are based on facts learned after it filed the original complaint. Rice argues that the CFTC could have moved to amend sooner. But the delay Rice faults is in part due to his own failure to comply with discovery requests or with court orders requiring him to produce documents and information relevant to the management, location, and disposition of Copeland's funds. Although the CFTC did not have to wait for all the facts relevant to its added claims to file the proposed amended pleading, CFTC's claims under the CEA's antifraud provisions are subject to *Federal Rule of Civil Procedure 9(b)*'s heightened pleading requirements. The CFTC did [*7] file its motion for leave to amend by the deadline set out in the scheduling order. Rice has not shown that the CFTC's delay in seeking leave to

amend its complaint was excessive.

The Receiver and CFTC have been diligent in seeking additional information about Copeland's funds in a complex case. Rice has frequently responded to requests for discovery slowly, partially, or not at all. (Docket Entry No. 169, Exs. A, B, C). There is no evidence of bad faith or dilatory motive.

While prior efforts to cure pleading deficiencies weigh against allowing leave to amend, tis is the CFTC's first motion for leave to amend its complaint, and the amendments it has proposed are to assert additional claims, not to cure pleading deficiencies. This factor does not apply.

Rice contends that the proposed amendments are unduly prejudicial because his counsel has already taken Michelle Bougas's deposition and granting the CFTC's motion would require him to redepose Bougas in Washington, D.C. at considerable expense, and because he has already file a summary-judgment motion. (Docket Entry No. 171 at 5). Courts may deny leave to amend when it would seriously prejudice the opposing party. A defendant is unduly **[*8]** prejudiced if an added claim would require the defendant "to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court." _Smith v. EMC Corp., 393 F.3d 590, 596 (5th Cir. 2004)_ (citing _Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999))_. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" _Minter v. Prime Equip. Co., 451 F.3d 1196, 1208 (10th Cir. 2006)_ (quoting _Patton v. Guyer, 443 F.2d 79, 86 (10th Cir. 1971))_. The party opposing amendment has the burden of proving prejudice. _Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2000)_. Rice has not shown that the proposed amendment will unfairly prejudice him. Some of the issues raised by the proposed amendments overlap with those already present in this litigation. The additional claims that the CFTC seeks to allege are based on the same statutory provisions as its original claims. The location and treatment of Copeland's funds are likely to be a central and disputed issue in this litigation regardless of whether the CFTC's motion is granted. Some additional discovery **[*9]** may be required, but not to an extent that unfairly prejudices Rice.

Rice argues that the CFTC's proposed amendments are futile because they are barred by limitations. A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted." _Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000)_. "[T]he same standard of legal sufficiency as applies under _Rule 12(b)(6)_" applies to determining futility. _Id._ (internal quotation marks omitted).

_Rule 12(b)(6)_ allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." _Fed. R. Civ. P. 12(b)(6)_. In _Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)_, and _Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)_, the Supreme Court confirmed that _Rule 12(b)(6)_ must be read in conjunction with _Rule 8(a)_, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." _Fed. R. Civ. P. 8(a)(2)_. To withstand a _Rule 12(b)(6)_ motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." _Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 372 (5th Cir. 2008)_ (quoting _Twombly, 550 U.S. at 570_). **[*10]** The "pleading standard _Rule 8_ announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Iqbal, 556 U.S. at 678_ (citing _Twombly, 550 U.S. at 555_). In addition to factual insufficiency, a complaint may be legally insufficient to state a claim for relief.

The parties acknowledge that the Commodity Exchange Act does not contain a statute of limitations that applies to the antifraud provisions. Rice argues that in the absence of an applicable federal limitations period, courts typically borrow from the most closely analogous state law. He cites the Supreme Court's decision in _DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)_:

> As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to this suit. In such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to "borrow" the most suitable statute or other rule of timeliness from some other source. We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under **[*11]** state law.

_Id. at 159_. Rice contends that Texas's blue-sky law, which has a three-year limitations period, _Tex. Civ. Stat. art. 581-33(H)(2)(a)_, and civil fraud statute, which has a four-year limitations period, _Tex. Civ. Prac. & Rem. Code § 16.004(a)_, are the most similar state laws to the

CEA's antifraud provision. Rice argues that because the newly added claims arise from financial transfers and misrepresentations made more than four years ago, those claims are barred under either limitations period.

The CFTC argues that its amended claims are timely because 28 U.S.C. § 2462, the five-year federal catch-all statute of limitations, applies. Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

The CFTC seeks to bring a civil enforcement action, not to assert a private right of action. Although the [*12] parties have not cited a case addressing whether § 2462 applies to suits by the CFTC under the CEA, courts, including the Supreme Court, have applied § 2462's five-year limitations period to similar civil enforcement actions, such as fraud suits brought by the S.E.C. under the Securities Exchange Act. See, e.g., Gabelli v. S.E.C., 133 S. Ct. 1216, 1219, 185 L. Ed. 2d 297 (2013) (noting that "[a]s part of [15 U.S.C. § 80b-9] enforcement actions, the S.E.C. may seek civil penalties . . . in which case [28 U.S.C. § 2462's] five-year statute of limitations applies." (internal citations omitted)). [1]

_____

[1] Even if the CFTC's fraud claims were brought under a private right of action, there would be no need to apply a state statute of limitations. In 1983, Congress amended the CEA to include an explicit private cause of action with a two-year limitations period under 7 U.S.C. § 25(c). See Pub. L. 97-444, Title II, § 235, 96 Stat. 2322. The 1983 amendments also provided that the two-year limitations period would only apply "with respect to causes of action accruing on or after" January 11, 1983. Rice cites **Smith v. Groover, 468 F. Supp. 105 (N.D. Ill. 1979)**, and Grosser v. Commodity Exchange, Inc., 639 F. Supp. 1293 (S.D.N.Y 1986), [*13] as supporting his position that a state statute of limitations should apply to the CFTC's amended claims. But Groover was decided before the 1983 amendments were enacted, and Grosser applied a state statute of limitations because the claims at issue accrued before January 11, 1983. See also Fustok v. Conticommodity Servs., Inc., 618 F. Supp. 1076, 1079 (S.D.N.Y. 1985) (applying a state-law limitations period to a private right of action under the CEA, because the claims accrued before the

Rice responds that, even if the CFTC is correct that § 2462 applies to its amended fraud claims under the CEA, § 2462 is limited to "the enforcement of a civil fine, penalty, or forfeiture." Rice contends that this would not include the disgorgement relief that the CFTC seeks. Several courts have held that disgorgement does not fall within § 2462. See Zacharias v. S.E.C., 569 F.3d 458, 386 U.S. App. D.C. 301 (D.C. Cir. 2009) (holding that disgorgement is not a "penalty" under § 2462); S.E.C. v. Lorin, 869 F. Supp. 1117, 1120-21 (S.D.N.Y. 1994).

This court need not resolve this issue, however, because even if the CFTC's request for disgorgement relief does not fall within § 2462's scope, it would not be barred by limitations. "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." United States v. Summerlin, 310 U.S. 414, 416-17, 60 S. Ct. 1019, 84 L. Ed. 1283, 1940-2 C.B. 435 (1940)) (citations omitted); see also Capozzi v. United States, 980 F.2d 872, 875 (2d Cir. 1992) ("[N]o statute of limitations will block federal government actions unless Congress clearly and specifically says so." (citations [*15] omitted)).

In S.E.C. v. Lorin, 869 F. Supp. 1117, the court considered whether § 2462 applies to a public enforcement action seeking disgorgement relief and, if not, whether it must "borrow" a limitations period from other federal or state statutes. Although disgorgement was not a "civil fine, penalty, or forfeiture" within § 2462, the court held that it was "incorrect in this situation to observe the regular practice of 'borrowing' a limitation period." Id. at 1127. Instead, the common-law doctrine of nullum tempus occurrit regi (or "time does not run against the king"), applies when the government pursues a public right or interest. The court found that in seeking disgorgement, the S.E.C. was pursuing a public right or interest because "its statutory authorization to

_____

1983 amendment to the CEA, in which Congress created an express private right of action with a two-year limitations period). More recent decisions have applied § 25(c)'s two-year limitations period to private claims asserted under 7 U.S.C. § 6b and accruing after 1983. See, e.g., Dyer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 928 F.2d 238, 240 (7th Cir. 1991); Kolbeck v. LIT America, 923 F. Supp. 557, 564 (S.D.N.Y.1996), aff'd 152 F.3d 918, 1998 WL 406036 (2d Cir. 1998) (holding that private actions under 7 U.S.C. § 6b are subject to § 25(c)'s two-year limitations period). But § 25(c)'s two-year limitations period does "not apply to enforcement actions brought by the CFTC under 7 U.S.C. § 13a-1." [*14] CFTC v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339, 1344 (11th Cir. 2008).

bring civil enforcement actions does not require it to turn disgorged proceeds over to the private investors who have been damaged by the violator's activity." *Id.*; *see also S.E.C. v. Commonwealth Chem. S.E.C., Inc., 574 F.2d 90, 102 (2d Cir. 1978)* ("[T]he primary purpose of disgorgement is not to compensate investors. Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly **[*16]** enriched."). Decisions by other courts have similarly implied that when the relief sought in public enforcement actions is not covered by *§ 2462*, no state or federal limitations period applies. *S.E.C. v. Bartek, 484 F. App'x 949, 956-57 (5th Cir. 2012)* (relief sought in a public enforcement action that does not fall under *§ 2462* is not subject to limitations); *Riordan v. S.E.C., 627 F.3d 1230, 1234, 393 U.S. App. D.C. 290 & n.1 (D.C. Cir. 2010)* (recognizing that no limitations period applies to disgorgement relief in public enforcement actions). Rice has not shown that the CFTC's proposed amended claims would be barred by limitations.

Rice also argues that the CFTC "judicially admitted" that the court lacks jurisdiction over claims and activities that occurred before June 18, 2008 and would not prosecute claims based on transactions that occurred before that date. Rice points to this court's ruling at a November 29, 2011 hearing that its motion to dismiss based on the CFTC's lack of jurisdiction was moot because the claims were limited to activities that occurred after June 2008. (Docket Entry No. 171, Ex. E at 33-34). The CFTC's contention that its original claims were based on activities occurring after **[*17]** June 18, 2008 is not a judicial admission of a lack of jurisdiction over claims based on activities occurring before that date. The CFTC's statements do not bar it from amending its complaint to assert additional claims occurring before June 18, 2008.

Rice has not shown that the CFTC's proposed amendments would be futile. All the Rule 15 factors weigh in favor of granting the CFTC's motion for leave to amend its complaint.

## IV Conclusion

The CFTC's motion for leave to amend, (Docket Entry No. 169), is granted.

SIGNED on June 27, 2013, at Houston, Texas.

/s/ Lee H. Rosenthal

Lee H. Rosenthal

United States District Judge

**End of Document**