UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MONA ABOUZIED, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:17-cv-2399 |
| GAURAV TANEJA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:18-cv-3544 |
| DAVIN POKOIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:18-cv-3722 |

| | |
|---|---|
| STEPHEN MCGRATH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:18-cv-3914 |

**REPLY MEMORANDUM TO RESPONSES OF GAURAV TANEJA (DKT. 69) AND STEPHEN MCGRATH (DKT. 71) REGARDING PLAINTIFF LAWRENCE ROUGIER'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS**

Three Related Actions are currently pending in this District—the first filed by Guarav Taneja ("Taneja"), the second by Davin Pokoik ("Pokoik") and the third filed by Stephen McGrath ("McGrath"). Responsive memoranda to court-appointed Lead Plaintiff Lawrence Rougier's ("Lead Plaintiff" or "Rougier") Motion for Consolidation[1] were filed on November 27, 2018 by Taneja (Dkt. 69) and on November 28, 2018 by McGrath (Dkt. 71). Each of the complaints filed in the Related Actions assert ostensibly the same class action securities fraud claims against the same defendants on behalf of purchasers of AAOI securities between August 7, 2018 and September 27, 2018 (the "Stub Class Period"). On November 30, 2018, five lead plaintiff applications were filed in *Taneja*– including by Ronaldo Borgogni ("Borgogni"), represented by Taneja's counsel, Glancy, Prongay, and Murray, LLP ("GPM"), and Rigo Caudill, represented by McGrath's counsel. Neither Taneja nor McGrath moved to be lead plaintiff in *Taneja*.

As discussed below, none of the plaintiffs in the Related Actions oppose consolidation with this action, or fail to present any cogent argument for why Lead Plaintiff's requested relief should not be granted.[2]

## I.     CONSOLIDATION IS APPROPRAITE

### A.  All Plaintiffs Do Not Oppose Consolidation of the Related Actions

Plaintiffs in the Related Actions do not, because they cannot, oppose consolidation. *See* Dkt. 69 at 2 (stating *Taneja* "does not oppose consolidation" of the Related Actions).[3] Indeed, this Action and the Related Actions involve the same claims against the same defendants asserting

---

[1] The "Motion for Consolidation" is the Motion of Laurence Rougier for Consolidation of Related Actions.  Dkt. 67.
[2] Lead Plaintiff requests the Court enter the only proposed order on file—his. *See* Dkt. 67-2. *Compare* Local Rule 7.1.C. *to* Local Rule 7.4.D.
[3] Pokoik did not file a response and, thus, concedes consolidation is appropriate. McGrath's threadbare response does not oppose consolidation.  Rather, the *pro forma* submission requests the Court reserve the issue and allow any future-appointed lead plaintiff in the *Taneja* action "to respond to Rougier's motion for consolidation."  As set forth below, it is impossible for any hypothetical lead plaintiff in *Taneja* to oppose consolidation without being antagonistic to the rights of other potential class members.  Therefore, the Court can disregard McGrath's response as there is no reason (legal, practical, or otherwise) to delay the inevitable.

AAOI misled investors about known problems with its vertical integration manufacturing process that resulted in the production and sale of defective 100G transceivers to AAOI's large data center customers causing those customers to take their business elsewhere when the transceivers inevitably failed. *See* Fed. R. Civ. P. 42(a).

While Taneja does not oppose consolidation, he simultaneously asserts the contradictory position that the Proposed SAC seeks to assert "new claims . . . based on misrepresentations regarding manufacturing quality controls." *Id.* This argument ignores the allegations in the FAC, which allege the very manufacturing quality control problems that Taneja claims are absent. *See, e.g.,* FAC, ¶ 57 ("the coating on the chips contained in the transceivers had reliability issues, which meant that the transceivers **sold to large data center customers, including Amazon**, were unreliable and **prone to failure within several years**."); *id.*, ¶15 ("There were also known but undisclosed issues with operations and quality control. In its rush to bring products to market, AOI was cutting corners in manufacturing and quality assurance."); ¶45 ("Defendants knew this was not true because AOI's vertical integration was not as seamless as claimed, leading to quality issues and the inability to keep up with demand in the face of increased competition in the 100G market."). The Proposed SAC seeks to include corrective disclosures and admissions by Defendants that occurred after the FAC was filed relating to the same manufacturing and control problems that caused the same laser chips to fail in another one of AAOI's large customers—Facebook. The FAC's and Proposed SAC's allegations are not inconsistent with those asserted in Abouzied. Abouzied alleged concealment of eroding sales from a major customer and the FAC and the Proposed SAC simply explain the reason for the decline in demand for that large data center customer and that the same manufacturing and quality control problems infected another of AAOI's large data center clients shortly thereafter.

While the FAC was *filed seven months before* the Taneja case, neither Taneja nor any other lead plaintiff movant or party has ever argued that the FAC asserted "new claims" and, thus, have waived any such argument. Courts routinely grant consolidation where, as here, the proposed amended complaint seeks to expand the class period to assert additional corrective disclosures and post-Class Period events that directly bear on the complaint but arose after the operative complaint was filed. *See, e.g.*, *Thomas v. MagnaChip Semiconductor Corp.*, 2015 U.S. Dist. LEXIS 77288 (N.D. Cal. June 15, 2015) (denying republication of notice where "the class period length has expanded" and lead plaintiffs "supplemented their allegations as additional information has come to light, [but] the SAC still centers on the same factual scenario"); *In re UBS AG Sec. Litig.*, No. 07-cv-11225-RJS, Order, Dkt. No. 97 (S.D.N.Y. Apr. 7, 2009); *In re Rite Aid Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 19753 (E.D. Pa. Dec. 20, 1999) (rejecting reopening of lead plaintiff process after amended complaint filed as "contrary to the goals of the PSLRA"); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 479-80 (D.N.J. 1998) (holding two later-filed cases with class period beginning immediately after the class period in the consolidated action should be consolidated because "the issues underlying this 'new' litigation are the same as those of the other consolidated actions" and "[l]ead counsel [in the consolidated action] has indicated that an amended and consolidated complaint will be filed which will include [the 'new'] claims [asserted by the plaintiffs challenging consolidation]).

**B. AAOI Shareholders Will Be Prejudiced If the Related Actions Are Not Consolidated With This Action**

Denying Plaintiff's request for consolidation would prejudice potential AAOI class members. Indeed, the effect of appointing a new lead plaintiff for the Stub Class Period and denying consolidation would deprive thousands of potential claimants of a remedy for Defendants' alleged securities fraud. The FAC in the Consolidated Securities Action currently runs from

3

February 23, 2017 through February 21, 2018, while the Stub Class Period runs from August 7, 2018 to September 27, 2018—leaving a gap of nearly six months that would exclude purchasers during that period.

This hostile position taken by Taneja and his counsel, GPM, are antagonistic to that of the class and GPM's other client that moved for lead plaintiff, Ronaldo Borgogni ("Borgogni") who suffered significant losses during the six-month period between the Related Actions and the FAC.[4] GPM cannot in good faith simply concede those losses without taking a position antagonistic to Borgogni. Therefore, Borgogni/GPM's assertion of losses with respect to the SAC Class Period in his lead plaintiff filing further evidences that any argument that the two cases should not be consolidated by Taneja/GPM without merit.[5] *See Marcus v. J.C. Penney Co.*, 2014 U.S. Dist. LEXIS 197529 at *22 (E.D. Tex. 2014) ("It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely . . . [what] would prohibit this Court from appointing [such person] lead plaintiff.").

To allow the lead plaintiff process to be completed and the Related Actions the related actions go forward thus would effectively deny recovery to all class members who purchased Applied Optoelectronics stock after February 21, 2018, but before August 7, 2018. For the

---

[4] Borgogni's loss chart assert's losses for AAOI purchases that occurred between the end of the FAC and beginning of the Stub Class Period. McKey Decl. at Exhibit D. Based on Lead Plaintiff's calculations those losses total $12,463.12. McKey Decl. at Exhibit E.

[5] Further, Taneja's reliance on *In re Cyberonics Inc. Sec. Litig.* and *Signet* is misplaced because, unlike the allegations in the FAC and SAC concerning systemic and continuous manufacturing failures and lost sales, the complaints' allegations were wildly dissimilar. *See Cyberonics* No. 4:05-cv-2121, 468 F. Supp. 2d 936 (S.D. Tex. 2006) and McKey Decl. Exs. C-D (first complaint's allegations concerned FDA approval and plaintiff admitted that second complaint's allegation concerning stock option grants "state[d] a different and 'new' claim); *Signet*, No. 16-CV-6728 (JMF), 2017 U.S. Dist. LEXIS 57624, at *3 (S.D.N.Y. Apr. 14, 2017) (first complaint alleged customers' jewelry was not properly secured and second complaint concerned sexual harassment and the company's credit portfolio. Taneja also misrepresents *Signet*, where the court specifically noted that the dramatic alteration of the gravamen of the claims, rather than a three-year expansion of the class period (as opposed to a mere seven months in the Proposed SAC), weighed "more significantly" on its decision to order republication. 2017 U.S. Dist. LEXIS 57624, at *4.

4

foregoing reasons, courts routinely reject requests to maintain separate class actions based on new disclosures and consolidate actions under the leadership of a previously appointed lead plaintiff. *See, e.g.*, *UBS*, Order, Dkt. No. 97; § I(A), *supra*.

### C. While Conceding Consolidation, Taneja Has Yet to Explain His Failure to Alert This Court Of His Related Action As Required By Local Rule 5.2

Local Rule 5.2 unequivocally states that "parties must advise the Court of related current or recent litigation and of directly affected non-parties." Taneja has yet to explain why, after conceding consolidation, he did not alert the Court to his related case. Although ignorance is one explanation, it is a doubtful one. In *In re Signet Jewelers Limited Securities Litigation*, No. 1:16-cv-6728 (S.D.N.Y.) ("*Signet*")[6] Taneja's counsel, GPM, recently deployed the same tactics. Although aware the *Signet* action was pending because GPM filed the original complaint (*see id.* Dkt. 1), and that the operative complaint spanned August 29, 2013 through May 24, 2017, *id.* Dkt. 97 at 2 (McKey Decl. at Exhibit B), GPM later filed a separate action *Aydin v. Signet Jewelers Ltd., et al.*, alleging a class period starting on August 24, 2017, shortly after the *Signet* class period. *Id.* Dkt. 92 at 2 (McKey Decl. at Exhibit C). Judge Furman ordered the *Aydin* plaintiff to show cause why sanctions were unwarranted for failing to relate the cases as required by local rule. *Id.* Dkt. 95. Ultimately, the Court granted consolidation and vacated the PSLRA deadline for the *Aydin* action. Dkt. 100. GPM's decision here to disregard Local Rule 5.2 after narrowly avoiding sanctions for identical conduct strongly suggests a calculated attempt to avoid consolidation and allow the lead plaintiff deadline to proceed without this Court's detection.

---

[6] The docket sheet for *Signet* is attached to the Declaration of Jamie McKey ("McKey Decl.") as Exhibit A.

## II. THE COURT SHOULD DISREGARD ALL LEAD PLAINTIFF SUBMISSIONS FILED IN *TANEJA* ON NOVEMBER 30, 2018

### A. It Would Be Improper and Inefficient to Restart the Lead Plaintiff Procedure After An Adequate Lead Plaintiff Has Been Actively Litigating The Case On Behalf of the Class For Over A Year.

Mr. Rougier, through his counsel, has aggressively litigated the case on behalf of all proposed class members and, as discussed in Section III, *infra*, has standing to bring the claims in the Proposed SAC. Neither McGrath nor Taneja argue that the FAC class and SAC class possess antagonistic interests. Furthermore, republishing of notice is disfavored in these circumstances where, as here a class period is merely extended to include later revelations. *See, e.g., Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) (subsequent actions on behalf of different class periods does not trigger a new lead plaintiff process under PSLRA); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) ("[N]othing in the PSLRA limits the class period to the period identified in the first notice."). The only effect of continuing the lead plaintiff procedure in the Related Actions would be to diminish Lead Plaintiff's authority to litigate the claims of the class members identified in the FAC and SAC. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (The PSLRA "empower[s] one or several investors . . . to exercise control over the litigation as a whole" "[a]s soon as practicable."). Accordingly, the lead plaintiff appointment process in the Related Actions should be discontinued.

### B. GPM's History of Acting Against the Interests of its Own Clients and Those of Potential Class Members For Its Own Benefit Calls Into Question GPM's Adequacy To Represent the Class.

As discussed herein, GPM has a history of acting against the interests of its own clients and those of potential class members in order to serve its own pecuniary interests.

For example, GPM/Borgogni's lead plaintiff application is potentially prejudicial to GPM's other client, Mr. Taneja, who commenced this action and the lead plaintiff process.

Although Taneja suffered over $10,000 in losses during the Stub Class Period,[7] GPM moved for lead plaintiff with Borgogni, who only asserted a Stub Class Period loss of $2,617.07—or about 25% of Taneja's losses.[8] GPM's reason is clear—Borgogni claims (incorrectly) losses of $486,236.93 for a class period of February 23, 2017 and November 7, 2018.[9] The obvious design of this maneuver was for GPM to have a client on file who allegedly suffered greater losses than Lead Plaintiff Rougier during the SAC's alleged class period. However, the effect was for GPM to potentially prejudice Taneja. It is unclear whether Taneja even knows that his attorneys filed a lead plaintiff application on behalf of an individual with smaller losses.[10]

Moreover, Borgogni represented in his lead plaintiff application that "Movant is not aware of any other class member that filed an action or filed an application for appointment as lead plaintiff that suffered greater losses due to the defendants' misconduct." Dkt. 5 at 2. But Borgogni signed a PSLRA certification stating he reviewed the initial complaint filed by Taneja. Thus, he must have been aware that Taneja had a larger loos and that Borgogni did not possess the largest financial interests. If not, then he signed a certification while being uninformed. At the very least, Borgogni's attorneys, GPM, were aware that this statement Borgogni made to the court was false since the represent both clients.

---

[7] *See* McKey Decl., Exhibit F. Taneja's transactions were taken from the certification he filed with his complaint.
[8] *See* McKey Decl., Exhibit G.
[9] *See id.* While Borgogni claims the Proposed SAC asserts a Class Period of February 23, 2017 to November 7, 2018 (Dkt. 5 at note 1, that is incorrect. The Proposed SAC's Class Period ends on September 27, 2018. Borgogni calculates his losses through November 7, 2018 rather than September 27, 2018 as alleged in the proposed SAC. November 7, 2018 is an impossible end date for the class period given that AAOI's share price *rose* on November 8, 2018. Based on Lead Plaintiff's calculations, the PSLRA "lookback" price for retained shares was lower if calculated beginning on September 28, 2018 than on November 8, 2018 and Borgogni would have suffered damages of approximately $472,878.50, or $14,000 fewer in damages. *See* McKey Decl., Exhibit E. In the same vein, Borgogni created an artificially low "lookback" price by calculating through November 29, 2018, even though he filed his lead plaintiff motion after market close on November 30, 2018. Moreover, Borgogni's trading data contains multiple share prices outside the historical trading highs and lows for the respective transactions. *See* McKey Decl., Exhibit H.
[10] If the Court is to entertain Taneja's response, Lead Plaintiff requests permission to take discovery on what Taneja and Borgogni knew about their filings, and when. The PSLRA permits "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iv).

7

### III. ROUGIER HAS STANDING TO ASSERT CLAIMS ALLEGED IN THE PROPOSED SAC

Taneja erroneously insinuates that Mr. Rougier might not have standing to represent shareholders in the Proposed Class Period because he sold his shares before the close of the Proposed Class Period. (Opp. at 4).[11] A class representative has standing and in fact has a duty to assert claims from purchasers during all times of the class period as long as they suffered damages pursuant to defendants' fraudulent scheme. *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. H:15-cv-02404, 2015 U.S. Dist. LEXIS 163811, at *15-16 (S.D. Tex. Dec. 7, 2015) (rejecting argument that lead plaintiff who only purchased shares in final eight months of two-year class period "would not pursue claims throughout the entire class period" as a "lead plaintiff owes a fiduciary duty to the class"); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007) ("[W]here, as here, plaintiffs allege that their losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who purchased his shares prior to the close of the class period").[12] Here, Rougier purchased shares during the Class Period and sold his shares **after** the first corrective disclosure in August 2017. Thus, he suffered damages as a result of Defendants' alleged fraudulent

---

[11] The one case they cite is inapposite. In *Parker*, the court stated in *dicta* that a lead plaintiff might not have standing to assert claims markedly different than those that caused his damages. 126 F. Supp. 3d 830, 835-38 (S.D. Tex. 2015) (Federal Corrupt Practices Act claims "involve a different type of wrongdoing" than claims about "budgetary shortfalls and logistical bottlenecks" of which lead plaintiff's losses stemmed). Here, by contrast, the actions all concern Defendants' concealment of declining sales caused by the delivery of faulty transceivers to major customers.

[12] *See also Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."); *Stein v. Match Grp., Inc.*, No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995, at *21-22 (N.D. Tex. June 9, 2016) (same); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13 (D. Mass. 2004) ("numerous courts have stated that class representatives do have standing to assert claims under §10(b) which arise from statements made after the class representative purchased shares."); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1003-04 (N.D. Cal. 2008) (lead plaintiffs have standing to sue to recover damages from of all stock drops even when they sold before final corrective disclosures); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 U.S. Dist. LEXIS 61145, at *14 (D. Ariz. July 17, 2009) (finding "no basis for defendants' claim that named plaintiff would not vigorously represent the interest of those who sold [] stock [after named plaintiff sold theirs]"); *In re Rhythms Sec. Litig.*, 300 F. Supp. 2d 1081, 1085-86 (D. Colo. 2004) (lead plaintiff with one purchase at beginning of class period has standing to assert all claims alleged); *c.f. In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (potential lead plaintiff that bought and sold all shares prior to issuance of corrective disclosure subject to unique defense for failure to show loss).

scheme and has standing to assert claims for the entire Class Period. Indeed, neither Defendants nor Taneja cite a single case where a plaintiff who held their stock through at least one corrective disclosure lacked standing to assert all related claims in the Class Period.

Taneja's speculation that Mr. Rougier may not be an adequate representative for the Proposed SAC's class period (Dkt. 69 at 4; Dkt. 70 at 10) is meritless. Moreover, neither Taneja, nor any other lead plaintiff movant, nor Defendants, challenged Rougier's standing when he filed the FAC back on March 6, 2018 extending the Class Period through February 2018. Indeed, Defendants then proceeded to brief a motion to dismiss and Taneja filed a new case without seeking to intervene or challenge Mr. Rougier's standing. Thus, they have waived these arguments, which are now untimely. Borgogni and his counsel knew (or were on notice) of the expansion of the FAC Class Period for over eight months before they filed their Oppositions. The Briscoe Law Firm (with Pomerantz LLP) represented *another* former AOI shareholder, Chad Ludwig, who had applied to be a lead plaintiff in the Consolidated Securities Action. Moreover, based upon his certification, the value of Mr. Borgogni's shares purportedly fell over $300,000 during the FAC Class Period, so he would have known of the pending litigation. Yet none of the Related Action plaintiffs—*nor anyone else*—sought to intervene to challenge Mr. Rougier's adequacy at any point in the seven months between the filing of the FAC (Mar. 6, 2018) and the filing of this Motion. The time to have challenged Mr. Rougier's appointment under the PSLRA thus has long passed.

Finally, both Defendants and Taneja ignore that Lead Plaintiff confirmed that he did not trade in the securities of Applied Optoelectronics after he sought to represent a class against the Company. (Dkt. 68 at n. 6). Therefore, Taneja's argument that "Rougier may have had a gain

rather than a loss in the expanded class period" and thus may be vulnerable to unique defenses (such as lack of standing) is wrong and entirely moot. *See* Taneja Opposition at 4.

**Respectfully submitted,**

Dated: December 3, 2018

*/s/ Jamie J. McKey*
**KENDALL LAW GROUP, PLLC**
JAMIE MCKEY
Texas Bar No. 24025262
JOE KENDALL
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Tel.: (214) 744-3000
Fax: (214) 744-3015
jmckey@kendalllawgroup.com
jkendall@kendalllawgroup.com

*Liaison Counsel for Lead Plaintiff and Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
733 Summer Street, Suite 304
Stamford, Connecticut 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
shopkins@zlk.com

*Lead Counsel for Lead Plaintiff and Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, December 3, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Jamie J. McKey*
Jamie J. McKey
