# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| LAWRENCE ROUGIER, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG (THOMPSON) LIN, and STEFAN J. MURRY,<br><br>Defendants. | Case No. 4:17-cv-2399-VDG-CAB |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

I.  NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.  SUMMARY OF THE ARGUMENT ................................................................................ 1

III.  STATEMENT OF THE ISSSUES ................................................................................... 4

IV.  ARGUMENT .................................................................................................................... 4

    A.  The Proposed Settlement Warrants Final Approval Under Rule 23(e) ............................. 4

        1.  Standards Governing Approval of Class Action Settlements ......................................... 4

            a.  "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)(A)-(B) Because Plaintiffs and Lead Counsel Adequately Represented the Class and the Settlement was Negotiated at Arm's Length .......................................................................... 6

            b.  The Settlement's Terms Are Adequate and Equitable Satisfying the "Substantive" Requirements of Rule 23(e)(2)(C)-(D) ........................................................... 9

                i.  The Settlement Amount Provides "Adequate" Relief Considering the Costs, Risks, and Delay of Trial and Appeal ....................................................... 10

                ii.  Other Rule 23(e)(2)(C) Factors Support Final Approval ........................................ 15

                iii.  The Settlement Terms are Equitable .................................................................... 16

        2.  The Opinions of Lead Counsel and Plaintiffs Supports Approval .................................. 17

    B.  Notice to the Settlement Class Satisfies Rule 23 and Due Process ................................... 18

    C.  The Plan of Allocation Satisfies Rule 23 and Due Process .............................................. 19

V.  Conclusion ....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   2019 WL 387409 (S.D. Tex. 2019)................................................................ 6

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009)..................................................................... 10

*Billitteri v. Sec. Am., Inc.*,
   2011 WL 3586217 (N.D. Tex. 2011) .......................................................... 4

*Buettgen v. Harless*,
   2013 WL 12303143 (N.D. Tex. 2013) ................................................. 12, 13

*City of Omaha Police & Fire Ret. Sys. v. LHC Group*,
   2015 WL 965693 (W.D.La., 2015) ........................................................ 5, 20

*Claudet v. Cytec Ret. Plan*,
   2020 WL 3128611 (E.D. La. 2020) ........................................................... 9

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977).............................................................. 5, 14

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007)......................................................... 7, 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. 2018) .......................................................... 8

*Hays v. Easton Grp. Attorneys, LLC*,
   2019 WL 427331 (M.D. La. 2019) ............................................................ 7

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   2006 WL 903236 (S.D.N.Y. 2006) ........................................................... 10

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. 2011).......................................................... 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir.2001).................................................................... 12

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982).................................................................. 19

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   424 F. Supp. 3d 456 (E.D. La. 2020) ........................................................ 6

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014)............................................................... 14

*In re Datatec Sys. Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. 2007).................................................................................. 20

*In re Dell Inc., Sec. Litig.*,
    2010 WL 2371834 (W.D. Tex. 2010) ........................................................... 10, 17, 19

*In re Giant Interactive Grp., Inc.*,
    278 F.R.D. 151 (S.D.N.Y. 2011).................................................................................. 14

*In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................................... 8

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010)....................................................................................... 18

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999) ................................................................................. 5

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. 2009) .......................................................................... 19

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007).................................................................................. 14

*In re OCA, Inc. Sec. & Deriv. Litig.*,
    2009 WL 512081 (E.D. La. 2009) .............................................................................. 11

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ........................................................................ 13

*In re Seitel Sec. Litig.*,
    245 F.R.D. 263 (S.D. Tex. 2007) .................................................................................. 7

*In re Waste Mgmt. Sec. Litig.*,
    2002 WL 35644013 (S.D. Tex. 2002).......................................................................... 17

*Jenkens v. Trustmark Nat. Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014)................................................................................. 8

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. 2019)............................................................................. 7

*Jin v. Applied Optoelectronics, Inc. et al.*,
    Case No. 4:18-2713-SL, ECF No. 34 (S.D. Tex. 2020)............................................... 13

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983)............................................................................ 5, 10, 18

*Marcus v. J.C. Penney Co., Inc.*,
    2017 WL 6590976 (E.D. Tex. 2017) ..................................................................... 17, 20

*Matrixx Initiatives, v. Siracusano*,
    563 U.S. 27 (2011) .................................................................................................. 11

*Melby v. America's MHT, Inc.*,
    2018 WL 10399004 (N.D. Tex. 2018) ..................................................................... 8

*Miller v. Glob. Geophysical Servs.*,
    2016 WL 11645372 (S.D. Tex. 2016) .................................................................... 16

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ........................................................................... 6

*ODonnell v. Harris County*,
    2019 WL 6219933 (S.D. Tex. 2019) ...................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) .......................................................................................... 12

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ......................................................................... passim

*Rodriguez v. Stage 3 Separation, LLC*,
    2015 WL 12866212 (W.D. Tex. 2015) .................................................................... 9

*Rougier v. Applied Optoelectronics, Inc.*,
    2019 WL 6111303 (S.D. Tex. 2019), *report and recommendation adopted*, 2019 WL 7020349
    (S.D. Tex. 2019) ...................................................................................................... 7

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. 2005) ...................................................... 9, 17, 19, 20

*Slipchenko v. Brunel Energy, Inc.*,
    2015 WL 338358 (S.D. Tex. 2015) ....................................................................... 10

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) .......................................................................... 11

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. 2017) ........................................................................ 8

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) .................................................................... 17

**Statutes**

15 U.S.C. § 78u-4(a)(7) .............................................................................................. 18

**Other Authorities**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2019 Review and
    Analysis*, Cornerstone Research ............................................................................. 13

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting, Jan. 29 2019..............................................14

**Rules**

Fed. R. Civ. P. 23(e) ...............................................................................................passim

Lead Plaintiff and Class Representative Lawrence Rougier ("Lead Plaintiff"), and Plaintiffs and Class Representatives Richard Hamilton, Kenneth X. Luthy, Roy H. Cetlin, and John Kugel (collectively, "Plaintiffs"), on the behalf of themselves and the Class,[1] respectfully move this Court for entry of orders: (i) granting final approval of the proposed settlement as set forth in the Stipulation and Agreement of Settlement dated August 3, 2020 (the "Stipulation") (ECF 143-2); and (ii) approving the proposed plan for allocating the settlement proceeds to Class members.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

The Hopkins Declaration is an integral part of this unopposed motion, and Plaintiffs incorporate it herein. To avoid repetition, Plaintiffs respectfully refer the Court to it for a full discussion of the factual and procedural history of the Action, the claims asserted, Plaintiffs' investigation and discovery, the negotiations leading to the Settlement, and the numerous risks and uncertainties posed by continued litigation, all of which support final approval of the Settlement.

## II.   SUMMARY OF THE ARGUMENT

After three years of adversarial litigation, a full-day mediation before a highly-experienced mediator, Michelle Yoshida, Esq., and subsequent vigorous negotiations facilitated by Ms. Yoshida, Plaintiffs reached an agreement with Defendants Applied Optoelectronics, Inc. ("AOI" or the "Company"), Chih-Hsiang (Thompson) Lin and Stefan J. Murry (collectively "Defendants"), to settle the above-captioned action (the "Action") for a total of $15,500,000 in cash (the "Settlement"). The terms of the Settlement are set forth in the Stipulation. ECF 143-2.[2]

---

[1] The "Class" for Settlement purposes is the same Class certified by the Court, being: All investors who purchased or otherwise acquired publicly-traded common stock and/or call options of AOI, or sold put options of AOI from February 23, 2017 through February 21, 2018, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are: (i) Defendants; (ii) their immediate family members; (iii) any officers or directors of AOI during the Class Period; (iii) any firm, trust, corporation, or other entity in which a Defendant has or had a controlling interest; and (iv) the legal representatives, affiliates, heirs, successors in interest, or assigns of any such excluded person or entity. Also excluded will be any person that timely and validly sought exclusion from the Class.

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation or the Declaration of Shannon L. Hopkins in Support of Unopposed Motion for: (I) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (II) Lead Counsel's Unopposed Motion for Award of

If the Court orders final approval of the Settlement, it will resolve this Action in its entirety.

The Settlement is the result of hard-fought litigation and Lead Counsel's extensive investigation that included, among other things, review and analysis of: (i) AOI's documents filed with the SEC; (ii) public information, *e.g.*, press releases, news, and other public statements issued by or concerning AOI; (iii) reports issued by financial and industry analysts concerning AOI; (iv) other public information and data concerning AOI and its subsidiaries, including information concerning AOI's customers; (v) interviews conducted with AOI's former employees; (vi) reports and exhibits prepared by Plaintiffs' experts relating to industry issues, market efficiency and damages; (vii) over 54,000 documents (over 300,000 pages) produced by Defendants in response to Plaintiffs' eighty-nine (89) document requests; (viii) Defendants' responses to interrogatories and requests for admission; (ix) Defendants' privilege logs (x) over 34,000 documents from third parties responsive to twenty-six (26) subpoenas; and (xi) the applicable law governing the claims and potential defenses in this Action, and the law as it relates to third party discovery in different jurisdictions (including enforcement proceedings in the Northern District of California and the Western District of Washington). The information gathered from this investigation resulted in a sufficiently pleaded amended complaint, a certified class, the ability of Plaintiffs and Lead Counsel to litigate the Class's claims aggressively to a favorable resolution, and the information necessary to appreciate the fairness of the Settlement before entering into it and presenting it to the Court.

Further, Lead Counsel also researched and drafted an extensive mediation statement that addressed liability, damages, Defendants' pending Rule 23(f) petition, and all other pertinent legal and factual considerations. After mediation statements were exchanged, Lead Counsel thoroughly

---

Attorneys' Fees and Reimbursement of Litigation Expenses (the "Hopkins Declaration" or "Hopkins Decl."). Unless otherwise noted, all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to the Hopkins Declaration. Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

scrutinized Defendants' statements, assertions and authorities, prepared a detailed presentation in reply, and participated in a full-day mediation on May 21, 2020. The mediation ended without agreement, yet the Parties persisted with negotiations in the following weeks. The Parties agreed to a mediator's proposal to resolve all claims in the Action on June 2, 2020. The Settlement is the result of arm's length negotiations between and among well-informed, highly experienced counsel, and mitigates the serious risks posed by further litigation, ***including the very real risk that sources of settlement funding would be depleted***. As discussed below, Plaintiffs and Lead Counsel believe that the Settlement meets the standards for final approval and is in the best interest of the Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

The $15,500,000 settlement is a particularly beneficial result in light of the litigation risks and other circumstances of this case, including: Defendants' pending Rule 23(f) petition; AOI's uncertain long-term viability given its high indebtedness, limited cash and that AOI has suffered considerable net losses for the preceding eight quarters in a row, erasing approximately $1.7 billion in market capitalization as AOI's stock price declined from a Class Period high of $99.61 to $8.66 as of the mediation; and AOI's minimal insurance coverage. When the Settlement was reached, approximately $20 million in coverage remained—making the Settlement approximately an 80% recovery of the remaining coverage. There is no doubt that AOI's financial condition and depleting insurance heightened the risk Plaintiffs might recover nothing.

Lead Counsel firmly believes this Settlement is an excellent recovery for the Class based on their investigation, past experience in litigating similar cases, the significant risk, expense, and uncertainty of continued litigation, and the serious disputes between the Parties concerning the merits of the case and damages. Class members agree. Pursuant to the Preliminary Approval Order, the Summary Notice was published in *Globe Newswire* and *Investor's Business Daily*, and

70,072 copies of the Notice have been mailed to potential Class members and nominees. ECF 144 at ¶11; Ex.1 at ¶¶6-9, ¶14. To date, not a single Class member has sought exclusion from, or objected to, any aspect of the Settlement.[3] Ex.1 at ¶¶16-17. This is strong evidence of a fair and reasonable settlement. *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, *14 (N.D. Tex. 2011) (final approval granted, noting the "very small number of objections" and that "[t]he extremely small number of opt-outs suggests a favorable opinion by the absent class members").[4]

Additionally, Plaintiffs request that the Court approve the Plan of Allocation ("POA"), which was set forth in the Notice mailed to potential Class members. The POA, which was developed by Lead Counsel in consultation with Plaintiffs' damages expert, provides a reasonable method for allocating the Net Settlement Fund among the Class members who submit valid claims based on the damages they suffered and the different categories of claims they possess. As such, Plaintiffs respectfully submit that the Court should also approve the POA.

As detailed further herein, Plaintiffs and Lead Counsel respectfully submit that the Settlement and POA are fair, reasonable, and adequate and warrant final approval by the Court.

## III.   STATEMENT OF THE ISSSUES

Should the Court grant final approval of the proposed Settlement and POA? Plaintiffs submit the Court should grant final approval of both.

## IV.   ARGUMENT

### A.   The Proposed Settlement Warrants Final Approval Under Rule 23(e)

#### 1.   Standards Governing Approval of Class Action Settlements

Rule 23(e) states that class claims may only be settled or compromised with judicial approval. Courts in this Circuit and across the country recognize a prevailing public policy in favor

---

[3] Currently, the deadlines to seek exclusion from, or object to the Settlement, is November 3, 2020. Plaintiffs have sought an extension of these deadlines until November 17, 2020. ECF 147.

[4] If any objections are received, Plaintiffs and Lead Counsel will address them in their forthcoming reply brief.

of class action settlements, especially in complex class actions such as this. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (finding "an overriding public interest in favor of settlement," because class actions "have a well deserved reputation as being most complex."). This is because settlement favorably reduces "[t]he time and cost of further litigation[.]" *Aron v. Crestwood Midstream Partners LP*, 2016 U.S. Dist. LEXIS 152427, *10-11 (S.D. Tex. 2016) (Gilmore, J.).

When a settlement, such as this one, "is reached as the result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *City of Omaha Police & Fire Ret. Sys. v. LHC Group*, 2015 WL 965693, *6 (W.D. La. 2015). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 425 (S.D. Tex. 1999) (quoting *Cotton*, 559 F.2d at 1330); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties.").

When considering final approval, courts are required to analyze the following factors of Rule 23(e)(2) to determine if the proposed settlement is fair, reasonable, and adequate:

A.   have the class representatives and class counsel adequately represented the class;

B.   was the proposed settlement negotiated at arm's length;

C.   is the relief provided for the class adequate, taking into account:

    i.   the costs, risks, and delay of trial and appeal;

    ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.   the terms of any proposed award of attorneys' fees, including timing of payment; and

    iv.   any agreement required to be identified under Rule 23(e)(3);[5] and

---

[5] In connection with the Settlement, the Parties entered into a Supplemental Agreement setting forth conditions under which AOI shall have the sole option to terminate the Settlement and render the Stipulation null and void. This option rests on the event that requests for exclusion from the Class exceed certain agreed-upon terms. This Supplemental Agreement shall remain confidential and not be filed with the Court unless a dispute of the terms arises or disclosure

D.      does the proposal treat class members equitable relative to each other.

The four Rule 23(e)(2) factors are intended to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments. Therefore, factors (A) and (B) identify *procedural* considerations, while factors (C) and (D) focus on the *substantive* review of the settlement. *Id*. However, these factors are not intended to "displace" other factors previously adopted by the courts. *In re Chinese-Manufactured Drywall Prods. Liab. Litig*., 424 F. Supp. 3d 456, 485 (E.D. La. 2020); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank*, *NA*, 2019 WL 387409, *3 (S.D. Tex. 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's *Reed* factors"). The Court should also consider the Fifth Circuit's long-standing approval factors (the *Reed* factors), which complement the Rule 23(e)(2) factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The proposed Settlement satisfies each of the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Reed* factors.

### a.   "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)(A)-(B) Because Plaintiffs and Lead Counsel Adequately Represented the Class and the Settlement was Negotiated at Arm's Length

The first two factors of Rule 23(e)(2)—i.e., the adequacy of the Class's representation, and whether the settlement was the product of arm's length negotiations—"look[] to the conduct of the

---

is ordered by the Court. The confidentiality of the Supplemental Agreement is a standard practice in securities litigation to reduce the possibility of groups being incentivized to collectively opt-out in hopes of leveraging an individual settlement. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold is typically not disclosed"). The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes to 2018 Amendments. Plaintiffs' and Lead Counsel's exemplary conduct during the litigation, as well as the negotiating process, establishes that the Settlement was a procedurally fair resolution under Rule 23(e)(2).

*First*, Plaintiffs have have adequately represented the Class through more than three years of hard-fought litigation. Plaintiffs demonstrated their adequacy by moving for appointment as Class Representatives (and in Mr. Rougier's case, seeking lead plaintiff appointment) so that they could seek to maximize the Class's recovery. *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, *5 (C.D. Cal. 2019) (granting approval because "[w]here plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between" representatives and the class).[6] Plaintiffs also adequately represented the class by selecting counsel that is highly experienced in litigating securities class actions. Lead Counsel fully understood the strengths and weaknesses of the claims and defenses of this Action and achieved the most beneficial result for the Class. *See* Hopkins Decl., ¶¶67-72; *In re Seitel Sec. Litig.*, 245 F.R.D. 263, 273 (S.D. Tex. 2007) (Gilmore, J) (counsel's past litigation experience and expertise supported adequacy).[7]

Lead Counsel also adequately protected the Class's interest by, *inter alia*, performing an exhaustive investigation of all publicly available documents concerning the claims at issue, retaining and coordinating with a private investigator who conducted numerous interviews with former employees and third parties, filing two amended complaints, defeating Defendants' motion

---

[6] The Court already found Plaintiffs are adequate Class Representatives pursuant to Rule 23(a)(4). *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, *7 (S.D. Tex. 2019), *report and recommendation adopted*, 2019 WL 7020349 (S.D. Tex. 2019).

[7] *See also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) (approving settlement given counsel's "significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Hays v. Easton Grp. Attorneys, LLC*, 2019 WL 427331, *9 (M.D. La. 2019) (settlement approved where "negotiated by experienced, informed counsel . . . with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues"); *Rougier*, 2019 WL 6111303, *7 ("[Levi & Korsinsky's] participation in the suit and their experience in complex securities class actions support" finding of adequacy).

to dismiss and Section 1292(b) motion, consulting with industry and damages experts, and successfully achieving class certification. Lead Counsel also engaged in substantial and protracted discovery including the review of over 300,000 pages of documents produced by Defendants, 34,000 documents produced by third parties, filing multiple motions to compel discovery, preparing a lengthy mediation statement, engaging in a full-day mediation and multiple follow up negotiations with Defendants facilitated by Ms. Yoshida. Hopkins Decl., ¶85. Lead Counsel have demonstrated that "they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses[.]" *In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1065 (S.D. Tex. 2012); *see also Reed*, 703 F.2d at 172 (third *Reed* factor weighs "the stage of the proceedings and the amount of discovery completed"). Therefore, Counsel's conduct adequately protected the Class and supports Settlement approval. *Id.*[8]

**Second**, the Parties' settlement negotiations were at arm's length. Negotiations were facilitated by a well-respected and highly experienced mediator. In fact, the Settlement was the product of a personal double-blind mediator's recommendation after Ms. Yoshida considered all the facts and argument advanced by the Parties. Arriving at a favorable Settlement through the perspective, experience, and knowledge of a third-party neutral satisfies Rule 23(e)(2)(B) and the first *Reed* factor that examines if there was "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, *4 (N.D. Tex. 2018) ("presence of a neutral mediator" is a factor "weighing in favor of a finding of non-collusiveness."); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, *2 (C.D. Cal. 2017) (settlement was "the outcome of an arms-length negotiation conducted with the help of ***experienced mediator***

---

[8] *Melby v. America's MHT, Inc.*, 2018 WL 10399004, *9 (N.D. Tex. 2018) (approval granted where it was obvious class attorneys were not "groping in darkness" and that the settlement was not "the product of uneducated guesswork"); *Jenkens v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307-08 (S.D. Miss. 2014) (approval granted where plaintiffs investigated claims, "served written discovery," prepared motions, responses, and mediation statements).

*Michelle Yoshida*…The Court is satisfied that the proposed settlement is not the product of collusion."); *Schwartz v. TXU Corp.*, 2005 WL 3148350 (N.D. Tex. 2005) (no collusion where counsel retained a highly regarded mediator and experts to assess the validity of the allegations).

The Parties' negotiations included a full-day mediation before Ms. Yoshida on May 21, 2020. Prior to this mediation, the Parties exchanged detailed mediation statements articulating the strengths, weaknesses, and risks of their respective positions, along with supporting exhibits and Plaintiffs prepared a detailed reply presentation in response to Defendants' statement. As the Parties were in the later stages of the discovery process, the mediation statements relied heavily on non-public evidence such that Plaintiffs, Defendants, and Ms. Yoshida had a clear understanding of the factual disputes. While the mediation ended without settlement, negotiations continued with Ms. Yoshida's assistance and the Parties agreed to the mediator's proposal to resolve the Action for $15,500,000 in cash. Plaintiffs' hard-fought negotiations weigh in favor of settlement approval. *Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, *5 (E.D. La. 2020) ("hard-fought negotiation between experienced counsel that occurred after significant discovery and motion practice" resulted in a fair, non-collusive settlement); *Rodriguez v. Stage 3 Separation, LLC*, 2015 WL 12866212, *3 (W.D. Tex. 2015) (no collusion when "parties attest that they 'engaged in arm's-length and extended settlement negotiations, including a full-day mediation.'").

### b.  The Settlement's Terms Are Adequate and Equitable Satisfying the "Substantive" Requirements of Rule 23(e)(2)(C)-(D)

When evaluating the proposed Settlement's substantive reasonableness, the Court must consider Rule 23(e)(2)(C) and 23(e)(2)(D) which ask, respectively, whether "the relief provided for the class is adequate" and if the proposed Settlement "treats class members equitably relative to each other." Here, the Settlement provides a highly favorable result for the Class, given the considerable risks posed by further litigation. Moreover, Lead Counsel, with the assistance of a

9

damages consultant, have proposed a plan for allocating the Settlement proceeds to ensure equitable treatment among Class Members relative to their respective losses.

### i. The Settlement Amount Provides "Adequate" Relief Considering the Costs, Risks, and Delay of Trial and Appeal

A key factor in deciding whether the Court should grant final approval is "whether the settlement's terms fall within a reasonable range, given the likelihood of the plaintiffs' success on the merits." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, *11 (S.D. Tex. 2015). The second, fourth, and fifth *Reed* factors, respectively, consider "the complexity, expense, and likely duration of the litigation," the "probability of plaintiffs' success on the merits," and "the range of possible recovery." *Reed*, 703 F.2d at 172. To evaluate the probability of success "the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287. Substantive adequacy, whether assessed through Rule 23(e)(2)(C) or the *Reed* factors, "strongly favors approving [a] proposed [] settlement agreement." *ODonnell v. Harris County*, 2019 WL 6219933, *13 (S.D. Tex. 2019).

**First**, there is no question that continued class action litigation is costly, risky, and lengthy. "Securities litigation on the whole is notoriously difficult and unpredictable." *In re Dell Inc. Sec. Litig.*, 2010 WL 2371834, *7 (N.D. Tex. 2010) (quoting *Maher*, 714 F.2d at 455); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, *8 (S.D.N.Y. 2006) (settlement "circumvents the difficulty and uncertainty inherent in long, costly trials" attendant to securities litigation). "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Here, Plaintiffs confronted considerable legal and practical barriers to recovery.

Moreover, if Plaintiffs did succeed at trial, a favorable verdict would need to withstand the uncertainty of post-trial motions. *C.f.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. 2011) (overturning jury verdict in plaintiffs' favor), *aff'd* 688 F.3d 713 (11th Cir. 2012). Also, it is virtually certain Defendants would appeal, further delaying a Class recovery. *In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, *11 (E.D. La. 2009) ("After trial, the parties could still expect years of appeals."); *Schwartz*, 2005 WL 3148350, *19 (even "if Plaintiffs were to succeed at trial, they could expect a vigorous appeal by Defendants and an accompanying delay"). The foregoing would pose substantial expense for the Class and delay the ability to recover damages—assuming, of course, that Plaintiffs were ultimately successful on their claims.

**Second**, while discovery to date gives Plaintiffs confidence on the Action's merits, success is never guaranteed. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case"). Plaintiffs in this Action allege violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5, promulgated thereunder. Plaintiffs, would have the burden of proving every element of their claims. The Court need look no further than Defendants' briefing on their motion to dismiss and Plaintiffs' motion for class certification to see that Defendants strongly contested, at a minimum: materiality, falsity, scienter, economic loss, and loss causation.

If the Fifth Circuit granted Defendants' 23(f) petition, it could reverse, vacate, or otherwise modify the Court's class certification order and leave all or some of the class without redress. Moreover, Plaintiffs still had to withstand summary judgment and pre-trial motions (including *Daubert* motions), prepare for and obtain a verdict in a lengthy jury trial on liability, and litigate and win bifurcated trials on damages. These hurdles are significant and could take years.

Defendants emphatically denied every substantive element of Plaintiffs' claim, asserting that: Defendants' misstatements were not materially misleading, Defendants did not act with the requisite scienter, and that the misstatements were not the cause of Plaintiffs' losses.

Specifically, Defendants have contended *throughout* the litigation that their statements were not materially false or misleading because they were inactionable puffery, protected under the PSLRA's safe harbor provision (*see* 15 U.S.C. § 78u-5(c)(1)) as forward-looking statements accompanied by meaningful cautionary language, or as inactionable statements of opinion protected under *Omnicare*.[9] *See generally* ECF 53 (Defendants' Motion to Dismiss). Defendants would raise these same legal arguments at summary judgment and trial with the benefit of a full record. If the Court or a jury agreed with Defendants' falsity arguments, certain statements would be dismissed from this Action completely. Further, although Plaintiffs believed all three corrective disclosures revealed new information related to Defendants' ongoing fraud, Defendants argued that the three alleged corrective disclosures, and specifically the latter two, were unrelated to the alleged mistatatements. *See id*. at 29 (arguing the October 12 and February 21 corrective disclosures did not "reveal[] the falsity of AOI's alleged misstatements"). These risks militate in favor of settlement because "there is no way of predicting which interpretations, inferences or testimony a jury would accept." *Buettgen v. Harless*, 2013 WL 12303143, *8 (N.D. Tex. 2013). Even on the best facts, loss causation and damages issues are an unpredictable and expensive "battle of the experts." *See In re Cendant Corp. Litig*., 264 F.3d 201, 236 (3d Cir. 2001).

Moreover, *in this particular case*, Plaintiffs and Lead Counsel cannot be certain that *even success at trial* would have obtained a better result for the Class than the Settlement, as Plaintiffs faced significant risks in collecting a future settlement or a judgment from alternative sources.

---

[9] *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1332 (2015).

AOI's long-term viability is not guaranteed as it is highly indebted and has suffered considerable net losses for the last eight quarters—erasing approximately $1.7 billion in market capitalization, and 91.3% of the stock's value, from a Class Period high of $99.61 to $8.66 as of the mediation. Hopkins Decl., ¶70. Insolvency would be a tremendous barrier to recovering a jury verdict.

Moreover, continued "litigation would also have depleted insurance proceeds that were available to fund a settlement or satisfy a judgment in this action." *Buettgen*, 2013 WL 12303143 at *7. The Settlement represented approximately 80% of the nearly $20 million in remaining insurance coverage at the time of the mediation.[10] Hopkins Decl., ¶70. If the Parties continued with depositions, the Rule 23(f) appeal, expert discovery, summary judgment briefing, motions, trial, and appeals (all of which pose significant risk), Defendants would have likely exhausted ***all*** of the coverage. Even settlement on trial's eve would likely have exhausted the coverage to an amount lower than the proposed Settlement. And if a theoretical judgment in Plaintiffs' favor was affirmed throughout every conceivable appeal (and any portion of coverage still remained), Defendants' insurers would no doubt argue that Plaintiffs' claims were excluded from coverage. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 507 (W.D. Pa. 2003) (granting final approval where the court found that "because of the nature of the Class's claims (*i.e.*, securities violations involving alleged intentional fraud) the insurer had a potentially viable argument for excluding coverage.").

***Third***, the Settlement provides an immediate cash recovery of ***$15,500,000***. This favorable result is well-within reasonableness to warrant final approval. Ex.2. Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2019 Review and Analysis*, Cornerstone Research, at Appendices 1 & 3 (median 2019 settlements nationwide were $11.5 million, and median

---

[10] A shareholder derivative action was pending against Defendants at the time of the mediation, but has tentatively settled. *See Jin v. Applied Optoelectronics, Inc. et al.*, Case No. 4:18-2713-SL, ECF No. 34 (S.D. Tex. 2020).

settlements in the 5th Circuit from 2010-19 were $9.9 million). Plaintiffs' damages expert estimates that if Plaintiffs prevailed on each of their claims at both summary judgment and trial, and if the Court and jury accepted Plaintiffs' damages theory (including proof of loss causation, which would be hotly contested) on *all three* alleged corrective disclosures—i.e., Plaintiffs' ***best case scenario***—the maximum estimated theoretical damages would be approximately $535 million. However, Rule 23(e)(2)(C) is not intended for the court to "justify each term of settlement against a hypothetical or speculative measure[.]" *Cotton*, 559 F.2d at 1330.

Under Plaintiffs' theoretical best case scenario, with no disaggregation of confounding information, the Settlement represents approximately a 3% recovery. *C.f.*, Ex.3 (Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting, Jan. 29 2019, at 35 (median settlement between 1996 and 2018 in securities cases with investor losses between $400 million and $599 million recovered 1.8% of investor losses)).[11] However, a full recovery is unlikely as Defendants argued that ***none*** of the losses incurred on the three corrective disclosures were attributable to the fraud. ECF 126 at 8 (asserting "Plaintiffs cannot possibly 'disaggregate' the portion of the stock drop that is due to the disclosure of that risk, from the portion that is due to the materialization of that risk.") (original emphasis excluded). Moreover, Defendants specifically targeted the October 12 and February 21 disclosures, by arguing they do not relate to any alleged misstatement. According to Plaintiffs' damages expert, if Defendants succeeded in removing these disclosures completely, damages would be reduced to $269 million—making the Settlement a recovery of approximately 6%.

---

[11] *See also In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approval granted because "recovery of approximately 1.3%" was "in line with the median ratio of settlement size to investor losses"); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (recovery of 3% of maximum damages was "average"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (settlement of 3% of maximum damages "is within the range of reasonableness").

Furthermore, damages of $535 million or $269 million would ***likely never*** be recoverable as it far exceeds AOI's working capital (assets minus liabilities) and cash from operations, which were $257.5 million and **(**$15.5 million**)**, respectively, for the quarter ended June 30, 2020. Ex.4.

The uncertainties of continued litigation and AOI's precarious financial condition posed a considerable risk that the Class would receive a smaller recovery or no recovery at all. While the Settlement of $15,500,000 would be a good recovery in any securities litigation case—because it provides immediacy and certainty of recovery while eliminating all risks and costs of continued litigation—it is particularly outstanding in light of AOI's consecutive net losses, minimal assets, and rapidly wasting insurance coverage.

### ii.    Other Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including time of payment," and "any agreement required to be identified under Rule 23(e)(3)." Each of these factors supports the Settlement's approval or is neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

***First***, Plaintiffs' proposed method for processing Class members' claims and distributing relief to eligible claimants is comprised of well-established, effective procedures and will efficiently distribute the Net Settlement Fund. *See* Sections III.B-III.C, *infra*. Plaintiffs' proposed POA distributes the Net Settlement Fund to Class Members who submit timely and valid Claim Forms. ECF 143-4 at 25. The Court-appointed Claims Administrator ("RG2") will then determine each Authorized Claimant's *pro rata* share based upon their respective recognized loss. This POA is an effective way of distributing the Settlement amongst a sizable Class, relative to their respective losses, while not giving preferential treatment to Plaintiffs or any other Class Member.

Therefore, the POA is an unbiased and effective method of allocating funds.

**Second**, as disclosed in the Notice, Lead Counsel will apply for attorneys' fees in the amount of one-third of the Settlement, plus reimbursement of reasonable expenses. Lead Counsel has filed an unopposed motion for an award of attorneys' fees and litigation expenses concurrently herewith. As detailed therein, one-third is consistent with awards approved in comparable class actions, and is well-supported in light of the extensive work performed and the results obtained. This amount is consistent with other awards in securities class action cases in this Circuit. *See Miller v. Glob. Geophysical Servs.*, 2016 WL 11645372, *1 (S.D. Tex. 2016) (Gilmore, J.) (one-third of the settlement was a reasonable fee given the "time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class."). Lead Counsel's motion also includes a request for payment of $167,289.09 in expenses incurred by Plaintiffs' Counsel, and $55,000 in aggregate service awards to the five class representatives.

Pursuant to the terms of the Stipulation, and as is standard in securities class actions, attorneys' fees and expenses will be paid upon any such award granted by the Court, and shall be reimbursed to the Settlement Fund if the award is reduced or reversed in any subsequent legal proceedings. Stipulation at ¶15. Most importantly, with respect to the Court's consideration of the reasonableness of the Settlement, is the fact that approval of attorneys' fees is entirely separate from approval of the Settlement, and neither Plaintiffs nor Plaintiffs' Counsel may terminate the Settlement based on the Court's or any appellate court's ruling with respect to the ultimate award of attorneys' fees or expenses. *Id.* at ¶19.

### iii.    The Settlement Terms are Equitable

Rule 23(e)(2)(D) provides that the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Under the POA, each Authorized Claimant will receive his, her or its *pro rata* share of the Net Settlement Fund. The POA does not provide preferential treatment to any Class Member, any segment of the Class, or to Plaintiffs. Accordingly, this factor supports approval of the Settlement. *In re Waste Mgmt. Sec. Litig.*, 2002 WL 35644013, at *8 (S.D. Tex. 2002) (stating each class member receiving a *pro rata* share after submitting a valid and timely claim is "treat[ing] every member of the Class in a similar manner."); *Dell*, 2010 WL 2371834 at *10 (distribution on a *pro rata* basis is reasonable and equitable).

### 2.   The Opinions of Lead Counsel and Plaintiffs Supports Approval

The final *Reed* factor to consider is "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement. *Reed*, 703 F.2d at 172. In determining if a settlement is in the best interest of the class, "[s]ignificant weight is given to the opinion of class counsel[.]" *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, *3 (E.D. Tex. 2017). Extensive investigation has made Lead Counsel a reliable source of information for the Court to rely on when deciding on approval of the Settlement. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) ("Counsel are the Court's main source of information about the settlement . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."). The Court should also consider Lead Counsel's considerable skill and experience in class-action litigations when evaluating the proposed Settlement. *See Schwartz*, 2005 WL 3148350 at *21 ("where…Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case."). Here, Lead Counsel has extensive experience in complex class action and securities litigation and has conducted an extensive investigation through voluminous document discovery and consultation with experts and other sources. Lead Counsel

believes the Settlement merits approval and Plaintiffs also support the proposed Settlement. Thus, this factor weighs in favor of final approval.

For all of the foregoing reasons, Plaintiffs respectively request that the Court approve the Settlement by finding that its terms are fair, reasonable, and adequate according to the requirements of Rule 23(e) and the *Reed* factors.

### B.   Notice to the Settlement Class Satisfies Rule 23 and Due Process

Notice to the Settlement Class, the process by which the Court has already considered and preliminary approved, satisfied the requirements of Rule 23 which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable" – i.e., it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Maher*, 714 F. 2d at 451; *see In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) ("a settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'").

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards. The Court-approved mailed Notice includes all of the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including, among other things: (i) a description of the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the POA; (v) reasons why the Parties are proposing the Settlement; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) a description of the Class members' right to request exclusion from the Class or to object to the Settlement, the POA, or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class members.

Further, Plaintiffs executed the Court-approved notice program in accordance with the provisions of the Preliminary Approval Order. Notice was given to Class members and nominees via mailed notice, the settlement website, and publication. Ex.1 at ¶¶4-15. As of October 20, 2020, RG2 has mailed 70,072 copies of the Notice to potential Class members and nominees, and arranged for the mailing of an additional 15,566 Notices. *Id.* at ¶¶4-10. In addition, Lead Counsel caused the Summary Notice to be published over *Globe Newswire* on September 4, 2020, and in *Investor's Business Daily* on September 14, 2020, and RG2 maintains, and updates as required, a website dedicated to the Settlement. *Id.* at ¶¶14-15. This combination of individual mail to Class members who could be identified with reasonable effort, supplemented by notice online, over newswire, and in a widely-circulated publication was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Schwartz*, 2005 WL 3148350 at *10.

## C. <u>The Plan of Allocation Satisfies Rule 23 and Due Process</u>

Assessment of a plan of allocation in a class action is governed by the same standard of review applicable to the settlement as a whole—the plan must be "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). A plan of allocation need not be perfect—to be fair, reasonable, and adequate, "[t]he allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Dell*, 2010 WL 2371834 at *10.

Here, Plaintiffs' proposed POA is set forth in the Notice posted on the Settlement website. Ex.1 at ¶15. The POA was developed by Lead Counsel in consultation with a damages expert with the objective of equitably distributing the Net Settlement Fund. ECF 143-4, ¶57; *see also Schwartz*, 2005 WL 3148350 at *8 (approving plan of allocation "formulated by Lead Counsel with assistance from its materiality and damages experts"); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, *13 (S.D.N.Y. 2009) ("In determining whether a plan of allocation

is fair, courts look largely to the opinion of counsel."). The POA takes into account the *pro rata* losses that Class members suffered as a result of Defendants' misconduct, which supports approval of the Settlement. *LHC Group*, 2015 WL 965693 at *15 (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses); *Marcus*, 2017 WL 6590976 at *5; *Schwartz*, 2005 WL 3148350 at *21.

The POA was developed based on financial analyses, including an event study, which calculated the estimated amount of artificial inflation in the per share closing prices of AOI stock as a result of Defendants' alleged materially false and misleading statements and omissions. Hopkins Decl. at ¶9. In calculating this estimated alleged artificial inflation, Plaintiffs' damages expert considered price changes in AOI common stock in reaction to the alleged corrective disclosures, adjusting for market or industry factors. *Id.* Under the POA, a "Recognized Loss" will be calculated for each purchase of AOI common stock or call options, and for each sale of AOI put options, for which adequate documentation is provided. ECF 143-4, ¶¶60-69. The calculation of Recognized Losses is explained in detail in the Notice and incorporates several factors, including when and for what price AOI transactions were purchased or sold, and the estimated artificial inflation in the stock's or option's respective prices at the time of purchase and sale, as determined by Plaintiffs' damages consultant. *Id.* Thus, the POA is fair and reasonable. *In re Datatec Sys. Inc. Sec. Litig.*, 2007 WL 4225828, *5 (D.N.J. 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). Moreover, no objections to the POA have been filed, suggesting that the Class also finds the POA to be fair, adequate and reasonable, which supports approval.

## V.   CONCLUSION

Plaintiffs Request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Date: October 20, 2020                    Respectfully submitted,

/s/ *Shannon L. Hopkins*
**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
Andrew W. Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Telephone (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
arocco@zlk.com

*Lead Counsel for Plaintiffs and the Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Tel.: (214) 744-3000
Fax: (214) 744-3015
jkendall@kendalllawgroup.com

*Liaison Counsel for Plaintiffs*

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore
Melissa A. Fortunato
101 California Street, Suite 2710
San Francisco, California 94111
Telephone: (415) 365-7149
Email: passmore@bespc.com
Email: fortunato@bespc.com

*Additional Counsel for Plaintiff Kugel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

/s/ *Shannon L. Hopkins*
Shannon L. Hopkins